IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                              |
LARRY KLAYMAN, *ET AL.*                       |
                                              |
            Plaintiffs,                       |
                                              |
v.                                            |        Civil Action No. 1:06-CV-00670
                                              |        Honorable Colleen Kollar-Kotelly
JUDICIAL WATCH, INC., *ET AL.*                |
                                              |
            Defendants.                       |
                                              |
—————————————————————

**ANSWER OF DEFENDANTS
JUDICIAL WATCH, INC. AND THOMAS J. FITTON
TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND COUNTERCLAIMS AGAINST PLAINTIFF KLAYMAN**

        Defendants Judicial Watch, Inc. ("Judicial Watch") and Thomas J. Fitton ("Fitton"), by

undersigned counsel, hereby answer the Amended Complaint as follows:

<u>Introduction</u>

        1.      The first and last sentences of Paragraph 1 contain a summary of the Plaintiff's

putative motives and goals for this action and do not require a response. However, to the extent that

a response is required, Defendants are without knowledge or information sufficient to either admit or

deny the allegations contained in paragraph 1, and therefore, deny the same. Defendants deny the

remaining allegations of paragraph 1.

        2.      Defendants admit that Judicial Watch has among its goals the promotion of justice

and public service ethics. Defendants deny the remaining allegations of paragraph 2. Defendants

are without knowledge or information sufficient to either admit or deny the remaining allegations

contained in paragraph 2, and therefore, deny the same.

3.      Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 3, and therefore, deny the same.

4.      Defendants admit that Judicial Watch has grown since its inception and that it now maintains satellite offices.  Defendants are without knowledge or information sufficient to either admit or deny the remaining allegations as phrased in paragraph 4, and therefore, deny the same.

5.      Defendants admit that in late 2003, Senator Bob Graham (D, Fla.) announced that he would not seek reelection for the Florida seat to the United States Senate.  Defendants are without knowledge or information sufficient to either admit or deny the remaining allegations contained in paragraph 5, and therefore, deny the same.

6.      Defendants deny that Plaintiff Klayman's motive for separation from Judicial Watch was to seak a seat in the U.S. Senate.  Defendants are without knowledge or information sufficient to either admit or deny the remaining allegations contained in paragraph 6, and therefore, deny the same.

7.      Defendants admit that negotiations relating to a Severance Agreement among Plaintiff Klayman and Judicial Watch were commenced in early 2003 and culminated in a written agreement that was executed on September 19, 2003.  Defendants deny the remaining allegations of paragraph 7.

8.      Defendants deny the allegations of paragraph 8.

9.      Defendants deny the allegations of paragraph 9.

10.      Defendants deny the allegations of paragraph 10 and aver that pursuant to ¶ 26 of the Severance Agreement, which is attached hereto as Exhibit A, the entire agreement between Klayman and the Defendants is memorialized in the Severance Agreement.

11.     Defendants deny the allegations of paragraph 11.

12.     Defendants deny the allegations of paragraph 12.

13.     Defendants deny the allegations of paragraph 13.

14.     Defendants deny the allegations of paragraph 14.

15.     Defendants deny the allegations of paragraph 15.

16.     Defendants deny the allegations of paragraph 16.

17.     Defendants deny the allegations of paragraph 17.

Parties

18.     Defendants aver that at the time the Severance Agreement was negotiated and signed, Klayman was a resident of the Commonwealth of Virginia.  Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 18, and therefore, deny the same.

19.     Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 19, and therefore, deny the same.

20.     Defendants admit that Judicial Watch is a non-profit organization formed and existing under the law of the District of Columbia, where it currently maintains its headquarters.  Defendants are without knowledge or information sufficient to either admit or deny the remaining allegations contained in paragraph 20, and therefore, deny the same.

21.     Defendants admit that Fitton is the current President of Judicial Watch.  Defendants deny the remaining allegations of paragraph 21.

22.     Defendants admit that Orfanedes is the current Secretary and a Director of Judicial Watch.  Defendants further admit that Orfanedes is the managing attorney for cases at Judicial Watch.  Defendants deny the remaining allegations of paragraph 22.

23.     Defendants admit that Farrell is a current Director of Judicial Watch and functions as a lead investigator.  Defendants deny the remaining allegations of paragraph 23.

<u>Jurisdiction and Venue</u>

24.     Paragraph 24 contains statements of law that do not require an answer.  However, to the extent that a response is required, Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 24, and therefore, deny the same.

25.     Paragraph 25 contains statements of law that do not require an answer.  However, to the extent that a response is required, Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 25, and therefore, deny the same.

26.     Defendants admit that Plaintiff Klayman was a founder of Judicial Watch and previously used the titles of chairman and general counsel.  Defendants are without knowledge or information sufficient to either admit or deny the remaining allegations contained in paragraph 26, and therefore, deny the same.

27.     Defendants admit that Judicial Watch has acted in many legal matters, including those listed in paragraph 27.  Defendants are without knowledge or information sufficient to either admit or deny the remaining allegations contained in paragraph 27, and therefore, deny the same.

28.     Defendants admit that Plaintiff Klayman executed a Severance Agreement on September 19, 2003.  Defendants deny the remaining allegations of paragraph 28.

29.     Defendants deny the allegations of paragraph 29.

4

30.     Defendants deny the allegations of paragraph 30.

31.     Defendants deny the allegations of paragraph 31.

32.     The allegations of paragraph 32 do not require a response as they are an attempt to characterize the contents of the Severance Agreement, which speaks for itself.  However, to the extent that a response is required, Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 32, and therefore, deny the same.

33.     Defendants deny the allegations of paragraph 33.

34.     Defendants deny the allegations of paragraph 34.

35.     Defendants deny the allegations of paragraph 35.

36.     Defendants deny the allegations of paragraph 36.

37.     Defendants admit that they complied with the Severance Agreement and did not disclose the reasons why Klayman was forced to leave Judicial Watch.  Defendants deny the remaining allegations of paragraph 37.

38.     Defendants admit that they complied with the Severance Agreement.  Defendants deny the remaining allegations of paragraph 38.

39.     Defendants deny the allegations of paragraph 39.

40.     Defendants deny the allegations of paragraph 40.

41.     Defendants deny the allegations of paragraph 41.

42.     Defendants admit that Klayman is a public figure.  Defendants are without knowledge or information sufficient to either admit or deny the remaining allegations contained in paragraph 41, and therefore, deny the same.

43.    Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 43, and therefore, deny the same.

44.    Defendants deny the allegations of paragraph 44.

45.    Defendants deny the allegations of paragraph 45.

46.    Defendants deny the allegations of paragraph 46.

47.    Defendants deny the allegations of paragraph 47.

48.    The allegations of paragraph 48 do not require a response as they are an attempt to characterize the contents of a document attached to the Second Amended Complaint as Exhibit A, which speaks for itself.  However, to the extent that a response is required, Defendants are without knowledge or information sufficient to either admit or deny the allegations regarding Exhibit A contained in paragraph 48, and therefore, deny the same.  Defendants deny the remaining allegations of paragraph 48.

49.    Defendants deny the allegations of paragraph 49.

50.    Defendants admit that Judicial Watch initiated a campaign to raise funds to purchase a building for its headquarters.  The allegations of paragraph 50 regarding Exhibit B to the Amended Complaint do not require a response as they are an attempt to characterize the contents of a document, which speaks for itself.  However, to the extent that a response is required, Defendants are without knowledge or information sufficient to either admit or deny the allegations regarding Exhibit B contained in paragraph 50, and therefore, deny the same.  Defendants deny the remaining allegations of paragraph 50.

51.    Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 51, and therefore, deny the same.

52.     Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 52, and therefore, deny the same.

53.     Defendants deny the allegations of paragraph 53.

54.     Defendants deny the allegations of paragraph 54.

55.     The allegations of paragraph 55 do not require a response as they are an attempt to characterize the contents of a document, which speaks for itself.  However, to the extent that a response is required, Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 55, and therefore, deny the same.

56.     Defendants deny the allegations of paragraph 56.

57.     The allegations of paragraph 57 do not require a response as they are an attempt to characterize the contents of a document, which speaks for itself.  However, to the extent that a response is required, Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in paragraph 57, and therefore, deny the same.

58.     Defendants deny the allegations of paragraph 58.

59.     Defendants deny the allegations of paragraph 59.

60.     Defendants deny the allegations of paragraph 60.

61.     Defendants deny the allegations of paragraph 61.

62.     Defendants deny the allegations of paragraph 62.

63.     Defendants deny the allegations of paragraph 63.

64.     Defendants deny the allegations of paragraph 64.

65.     The allegations of paragraph 65 do not require a response as they are an attempt to characterize the contents of documents, which speaks for themselves.  However, to the extent that a

response is required, Defendants are without knowledge or information sufficient to either admit or

deny the allegations contained in paragraph 65, and therefore, deny the same.

66.     Defendants deny the allegations of paragraph 66.

67.     Defendants deny the allegations of paragraph 67.

<u>Count One – Fraudulent Misrepresentation</u>

68-78.  This Count is the subject of Defendants' Motion to Dismiss and does not require a

response.

<u>Count Two – Breach of Contract</u>

79-88.  This Count is the subject of Defendants' Motion to Dismiss and does not require a

response.

<u>Count Three – Unjust Enrichment</u>

89-96.  This Count is the subject of Defendants' Motion to Dismiss and does not require a

response.

<u>Count Four – Violation of Section 43(a) of the Lanham Act</u>

97-106.      This Count is the subject of Defendants' Motion to Dismiss and does not

require a response.

<u>Count Five – Violation of Florida Statute 540.08</u>

107-114.      This Count is the subject of Defendants' Motion to Dismiss and does not

require a response.

<u>Count Six – Breach of Contract - Rescission</u>

115-137      This Count is the subject of Defendants' Motion to Dismiss and does not

require a response.

<u>Count Seven – Breach of Contract - Damages</u>

138.    Defendants incorporate their responses to paragraphs 1 – 137 as if set forth fully herein.

139.    Defendants deny the allegations of paragraph 139.

140.    Defendants deny the allegations of paragraph 140.

<u>Count Eight – Breach of Contract – Specific Performance</u>

141.    Defendants incorporate their responses to paragraphs 1 – 140 as if set forth fully herein.

142.    Defendants deny the allegations of paragraph 142.

143.    Defendants deny the allegations of paragraph 143.

144.    Defendants deny the allegations of paragraph 144.

145.    Defendants deny the allegations of paragraph 145.

146.    Defendants deny the allegations of paragraph 146.

147.    Defendants deny the allegations of paragraph 147.

<u>Count Nine - Defamation</u>

148-162.    This Count is the subject of Defendants' Motion to Dismiss and does not require a response.

163.    Defendants deny each and every allegation that is not expressly admitted herein.

**<u>AFFIRMATIVE DEFENSES</u>**

<u>First Affirmative Defense</u>

The Amended Complaint fails to state a claim on which relief may be granted.

<u>Second Affirmative Defense</u>

9

Plaintiffs' claims are barred by applicable statutes of limitation.

Third Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel and laches.

Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by accord and satisfaction.

Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands and the obligation to "do equity".

Sixth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of contributory negligence.

Seventh Affirmative Defense

The October 2003 newsletter was mailed at the request and with the consent of Plaintiffs.

Eighth Affirmative Defense

Plaintiffs authorized the mailing of the October 2003 newsletter.

Ninth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of release.

Tenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the terms of the Severance Agreement.

Eleventh Affirmative Defense

Defendants' performance is excused due to the Plaintiffs' prior breach of contract.

Twelfth Affirmative Defense

10

Plaintiffs' claims are barred in whole or in part by superseding and/or intervening causes.

## Thirteenth Affirmative Defense

Defendants' performance is excused because Plaintiffs failed to perform a condition precedent.

## Fourteenth Affirmative Defense

Defendants' statements meet or exceed the standard for substantial truth.

## Fifteenth Affirmative Defense

Plaintiff's claim for defamation is barred, in whole or in part, by consent.

## Sixteenth Affirmative Defense

Plaintiff's claim for defamation is barred, in whole or in part, by the absence of malice.

## Seventeenth Affirmative Defense

Plaintiff's claim for defamation is barred, in whole or in part, by privilege.

Eighteenth Affirmative Defense

Plaintiff's claim for defamation is barred, in whole or in part, as statements of opinion, future events and/or fair comments on matters of public interest.

Nineteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of fair use.

Twentieth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by innocent infringement.

Twenty-First Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the First Amendment of the United States Constitution.

Twenty-Second Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by acquiescence of use.

Twenty-Third Affirmative Defense

The Lanham Act does not apply to a non-profit organization's request for donations.

Twenty-Fourth Affirmative Defense

Defendants reserve the right to supplement the affirmative defenses as new information is obtained through discovery.

WHEREFORE, Defendants Judicial Watch, Inc. and Thomas J. Fitton respectfully requests that the Court award the following relief:

1.      Enter judgment in favor of Defendants Judicial Watch and Fitton as to all claims;

2.      Dismiss with prejudice all claims against Defendants Judicial Watch and Fitton;

3.      Enter judgment in favor of Defendants Judicial Watch and Fitton for attorney

12

fees and costs of this litigation pursuant to ¶ 19(C) of the Severance Agreement;

4.      Enter judgment in favor of Defendants Judicial Watch and Fitton for attorney fees and costs pursuant to 15 U.S.C. § 1117; and

5.      Such other and further relief as this Court deems appropriate.

### COUNTERCLAIMS OF
### <u>JUDICIAL WATCH, INC. AND THOMAS J. FITTON</u>

Defendants/Counter-Claimants Judicial Watch, Inc. ("Judicial Watch") and Thomas J. Fitton ("Fitton"), by counsel, hereby counterclaim against Plaintiff/Counter-Defendant Larry E. Klayman ("Klayman") as follows:

### <u>Parties</u>

1.      Judicial Watch is a non-profit foundation based in the District of Columbia.

2.      Fitton is an individual citizen and resident of the District of Columbia.  Fitton is president of Judicial Watch.

3.      Klayman is an individual citizen and resident of the State of Florida.  He was also the sole shareholder and officer of Klayman & Associates, P.C. ("K&A"), a law firm whose registration has since been revoked by the District of Columbia.  Upon information and belief, K&A is no longer in business anywhere.

4.      The claims asserted against Klayman arises out of the same facts, circumstances and occurrences as the subject matter of Klayman's Second Amended Complaint and therefore, constitute compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure.

### <u>Jurisdiction</u>

5.      Jurisdiction arises under 28 U.S.C. § 1332(a) because of the parties' diversity of citizenship and because the amount in controversy, exclusive of interests and costs, exceeds $75,000.

13

## Venue

6.      Venue is proper in this Court because Klayman availed himself of this forum when he filed his Second Amended Complaint here, which is now pending in this Court.  In addition, in ¶ 23 of the Severance Agreement, Klayman consented to venue in this Court.

## Facts Common to All Claims

7.      During May of 2003, Judicial Watch discovered circumstances that necessitated Klayman's resignation from the organization.  When confronted with the information, Klayman agreed to resign.  Throughout the summer of 2003, Judicial Watch and Klayman negotiated a Severance Agreement, which was ultimately signed by the parties on September 19, 2003.

8.      The Severance Agreement is a valid and enforceable contract.  A true copy of the September 19, 2003, Severance Agreement is attached hereto and made a part hereof as Exhibit 1.

9.      Judicial Watch has performed all of its obligations under the Severance Agreement, including payment of substantial compensation to Klayman.  However, Klayman has not complied with the provisions setting forth his obligations.

10.      Among the duties imposed on Klayman by the Severance Agreement is ¶ 4, which relates to confidential information and reads, in relevant part:

> A.      Confidential Information.  Klayman agrees that all non-public information and materials . . . concerning Judicial Watch, its operations, plans, programs, relationships, donors, prospective donors, clients, prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. . . . Confidential Information includes matters not generally known outside Judicial Watch, such as . . . donor lists, . . . contacts at or knowledge of . . . donors or prospective . . . donors . . . .  Klayman agrees that after the Separation Date, he shall not . . . use Confidential Information for any purpose without written approval by an officer of

14

Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman.

\*   \*   \*   \*

D.    <u>Client and Donor Information</u>. . . .  Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor . . . lists or donor . . . data.

11.    Pursuant to ¶ 10 of the Severance Agreement, Klayman agreed to reimburse Judicial Watch for personal expenses that were charged to Judicial Watch.  Paragraph 10 reads, in relevant part:

Klayman further agrees to reimburse Judicial Watch for personal costs or expenses incurred by him during his employment, if any, that Judicial Watch may determine in good faith were mistakenly charged or allocated as costs or expenses of Judicial Watch, as well as any additional expenses that Klayman has billed to Judicial Watch or charged to a Judicial Watch credit card that Judicial Watch determines in good faith are personal expenses of Klayman. Klayman shall reimburse Judicial Watch for any such amounts within seven (7) days of being notified by Judicial Watch and being presented with supporting documentation of the amount, date and category of cost or expense items for which reimbursement is sought.

12.    Pursuant to ¶ 11 of the Severance Agreement, Klayman agreed to reimburse Judicial Watch for Klayman & Associates, P.C.'s portion of shared expenses.  Paragraph 11(A) reads, in relevant part:

Klayman, and by its signature below, Klayman & Associates, P.C. ("K&A") re-affirm and acknowledge the debt of K&A to Judicial Watch, which was in the amount of $78,810 as of December 31, 2002, and agree that K&A shall pay the then full outstanding balance of the debt (including additional amounts allocated to K&A by Judicial Watch's accountants in accordance with their customary practice regarding this debt), without offset or deduction, together with accrued interest of 8% per annum, on or before May 15, 2004 . . . .  Klayman and K&A expressly acknowledge that Judicial Watch is not indebted to K&A.

15

13.     In addition to acknowledging the debt of K&A to Judicial Watch, Klayman agreed to

indemnify Judicial Watch for any damages that arise from a breach of the Severance Agreement by

K&A.  Paragraph 19(B) of the Severance Agreement reads, in relevant part:

> Klayman agrees to . . . indemnify and hold harmless Judicial Watch .
> . . from any and all . . . damages . . . which Judicial Watch . . . may
> incur . . . that arise . . . out of K&A's breach of its obligations under
> this Agreement.

14.     Pursuant to ¶ 17 of the Severance Agreement, Klayman expressly agreed:

> that he will not, directly or indirectly, disseminate or publish, or
> cause or encourage anyone else to disseminate or publish, in any
> manner, disparaging, defamatory or negative remarks or comments
> about Judicial Watch or its present or past directors, officers, or
> employees. . . .  Nothing in this paragraph is intended to, nor shall be
> deemed to, limit either party from making fair commentary on the
> positions or activities of the other . . . .

15.     Without regard to the provisions of the Severance Agreement, or his professed

affection for the entity Judicial Watch, Klayman has significantly harmed Judicial Watch by failing

to repay amounts owed for his personal expenses and for expenses that were fairly allocated to

K&A.

16.     In an effort to divert attention away from his failure to repay Judicial Watch,

Klayman has engaged in a smear campaign against Judicial Watch and Fitton in violation of the

commitments he assumed under the Severance Agreement.

17.     In an effort to fund his campaign of distortion and obfuscation, Klayman has

misappropriated confidential information belonging to Judicial Watch in the form of donor lists to

solicit funding for this litigation in violation of the Severance Agreement.

18.     Further, Klayman has wrongfully used trademarks belonging to Judicial Watch to

assist him with fund raising in violation of Federal trademark law and the common law.

16

## COUNT I -- BREACH OF CONTRACT
### Asserted by Judicial Watch
### <u>(Breach of ¶ 10 of the Severance Agreement by Klayman)</u>

19.    The allegations of paragraphs 1 through 18 of this Counterclaim are incorporated as if fully set forth herein.

20.    As provided in the Severance Agreement, Judicial Watch promptly paid Klayman substantial severance and other consideration, none of which is at issue in this action.

21.    Pursuant to ¶ 10 of the Severance Agreement, Klayman promised to reimburse Judicial Watch for personal costs and expenses he incurred during his employment.

22.    Pursuant to ¶ 10 of the Severance Agreement, Judicial Watch reviewed its records and made a good faith identification of the personal expenses Klayman had incurred but not reimbursed to Judicial Watch.  Between November 20, 2003, and December 16, 2003, Judicial Watch sent 48 itemized invoices, to Klayman, totaling nearly $75,000, specifically identifying each item of personal expense and providing supporting documentation.  Pursuant to ¶ 10, Klayman was obligated to pay each of those invoices within 7 days of receipt.  To date, he has paid only $4,572.68 of the total amount due.

23.    On or about May 31, 2004, Judicial Watch provided Klayman four more invoices, and with adjustments, his personal expense debt to Judicial Watch stood at $76,683.17.

24.    To date, he has not paid the outstanding balance of this debt, and it remains due and owing to Judicial Watch.

## COUNT II -- BREACH OF CONTRACT
### Asserted by Judicial Watch
### (Breach of ¶ 11 of the Severance Agreement by Klayman)

25.    The allegations of paragraphs 1 through 24 of this Counterclaim are incorporated as if fully set forth herein.

26.    At all times relevant, Klayman was the sole shareholder and officer of K&A.

27.    Pursuant to ¶ 11(A) of the Severance Agreement, Klayman re-affirmed and acknowledged K&A's debt to Judicial Watch in the amount of $78,810 as of December 31, 2002.

28.    On May 10, 2004, Judicial Watch notified Klayman that as a result of Judicial Watch's 2003 audit performed by its accountant, the K&A debt then stood at $134,119.

29.    Although Klayman had agreed in ¶11 of the Severance Agreement that K&A would "pay the *then full outstanding balance of the debt (including additional amounts allocated to K&A by Judicial Watch's accountants in accordance with their customary practice regarding this debt)*, without offset or deduction, together with accrued interest of 8% per annum, on or before May 15, 2004" (emphasis added), no portion of that debt has been paid.

30.    With accrued interest through May 31, 2006, the debt currently stands at $162,620.52.

## COUNT III -- INDEMNIFICATION
### Asserted by Judicial Watch
### (Indemnification by Klayman for K&A's Non-Payment)

31.    The allegations of paragraphs 1 through 30 of this Counterclaim are incorporated as if fully set forth herein.

32.     In ¶ 19(B) of the Severance Agreement, Klayman agreed to indemnify Judicial Watch for any and all claims, liabilities, costs, damages or judgments of any and every kind (including, without limitation, attorneys' fees and costs) that arise from a breach of the Severance Agreement by Klayman or K&A.

33.     As delineated in Count II of this Counterclaim, K&A has failed to make prompt payment to Judicial Watch in accordance with ¶ 11 of the Severance Agreement.  On account of this failure, Judicial Watch has suffered damages, through May 31, 2006, in the amount of $162,620.52, which loss Klayman is obligated to indemnify.  In addition, Judicial Watch has incurred other damages for which Klayman must indemnify Judicial Watch, which damages are estimated to exceed $100,000.00.

34.     Despite repeated demands, Klayman refuses to comply with his obligation to indemnify Judicial Watch, as required by the Severance Agreement.

### COUNT IV -- TRADEMARK INFRINGEMENT
### Asserted by Judicial Watch
### (Lanham Act -- 15 U.S.C. § 1114(1)(a))

35.     The allegations of paragraphs 1 through 34 of this Counterclaim are incorporated as if fully set forth herein.

36.     Judicial Watch owns the federally-registered trademarks "Judicial Watch," U.S. Registration No. 2819145 (Mar. 2, 2004), and "Because No One is Above the Law!", U.S. Registration Nos. 2797234 (Dec. 23, 2003) and 2857425 (June 29, 2004).

37.     These trademarks were filed with the U.S. Patent and Trademark Office prior to Klayman's separation from Judicial Watch.  At all relevant times, Klayman had actual knowledge of the trademark registrations.

38.    In a solicitation letter dated May 9, 2006, mailed to current Judicial Watch donors and others, Klayman used Judicial Watch's registered trademark, "Because No One Is Above the Law," without the consent of Judicial Watch.  *See* Letter from Larry Klayman dated May 9, 2006, attached hereto as Exhibit 2.  This trademark was used by Klayman in the heading of the first page of the letter and in the donation flier mailed with the letter.  *See id.*

39.    Klayman also used the "Judicial Watch" trademark, without the consent of Judicial Watch, in the pre-addressed envelope that the letter-recipient was intended to use to return a monetary contribution to Klayman.  *See id.*

40.    Klayman's unauthorized use of these trademarks is likely to cause confusion, or to cause mistake, or to deceive, and has damaged Judicial Watch as a proximate result.

**COUNT V -- TRADEMARK INFRINGEMENT**
**Asserted by Judicial Watch**
**(Lanham Act -- 15 U.S.C. § 1125(a))**

41.    The allegations of paragraphs 1 through 40 of this Counterclaim are incorporated as if fully set forth herein.

42.    Judicial Watch owns the federally-registered trademarks "Judicial Watch," U.S. Registration No. 2819145 (Mar. 2, 2004), and "Because No One is Above the Law!", U.S. Registration Nos. 2797234 (Dec. 23, 2003) and 2857425 (June 29, 2004).

43.    These trademarks were filed with the U.S. Patent and Trademark Office prior to Klayman's separation from Judicial Watch.  At all relevant times, Klayman had actual knowledge of the trademark registrations.

44.    In a solicitation letter dated May 9, 2006, mailed to current Judicial Watch donors and others, Klayman used Judicial Watch's registered trademark, "Because No One Is Above the

Law." *See* Exhibit 2. Klayman used this trademark in the heading of the first page of the letter and in the donation flier mailed with the letter. *See id.*

45. Klayman also used the "Judicial Watch" trademark in the pre-addressed envelope that the letter-recipient was intended to use to return a monetary contribution to Klayman. *See id.*

46. Klayman's use of these trademarks is likely to cause confusion or mistake, or to deceive the letter recipient as to the affiliation, connection, or association of Klayman with Judicial Watch.

47. Klayman's unauthorized use of Judicial Watch's trademarks also misrepresents the nature, characteristics, or qualities of Klayman's services or commercial activities.

48. Klayman's use of Judicial Watch's federally-registered trademarks in connection with the May 9, 2006 mailing constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation that is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of Klayman's activities, and has damaged Judicial Watch as a proximate result.

### COUNT VI -- BREACH OF CONTRACT
### Asserted by Judicial Watch
### (Breach of ¶ 17 of the Severance Agreement by Klayman)

49. The allegations of paragraphs 1 through 48 of this Counterclaim are incorporated as if fully set forth herein.

50. Paragraph 17 of the Severance Agreement requires that Klayman will not disparage, defame or utter negative remarks about Judicial Watch or its present and past directors, officers and employees.

51. On or about April 13, 2006, Klayman issued a press release, which is now posted on the Web site www.savingjudicialwatch.com, which states in relevant part: "After Klayman left Judicial Watch in the fall of 2003, the current president Tom Fitton set out to hijack the group to further his own personal interests."

52. Klayman makes the following assertions on his Web site, www.savingjudicialwatch.com:

> After I left Judicial Watch, we were betrayed by those who we had trusted to lead the organization. . . . [T]hey lied to donors and supporters, misused their monies, failed to honor their agreement with me, and disparaged my name and reputation, all in a selfish power grab.
>
> Not only have the donors and supporters of Judicial Watch been served badly, but the financial condition of Judicial Watch has worsened to the point where, if this keeps up, there will be no Judicial Watch in two or four years. The current leadership is effectively writing checks to itself, until the considerable monies which we previously raised to clean up corruption run dry.
>
> . . . . We have too many good things to accomplish together, in bringing our country back to honest and decent government, to let Judicial Watch be killed by those who would use it for their own personal agenda.

53. In a letter, dated May 9, 2006, mailed to Judicial Watch donors and others, the purpose of which was to solicit funds for his lawsuit, Klayman wrote:

> While I tried to be supportive of my former colleagues after I left, regrettably one of them in particular, Tom Fitton, Judicial Watch's current president, feared my possible return and has used every dirty trick to block it.
>
> *    *    *    *
>
> More than lying to donors and misusing their donations, Fitton did everything he could to harm both my U.S. Senate campaign and the wellbeing of my family and me.

22

    \*   \*   \*   \*

In effect, Judicial Watch became Fitton's own little toy . . . .

Last but not least, Fitton and company have tried to harm me and my family. . . .

54.    In a letter, dated May 9, 2006, mailed to Judicial Watch donors and others, the

purpose of which was to solicit funds for his lawsuit, Klayman also wrote:

Not just asleep, the guard dog has deserted its post! No longer is there any bite to Judicial Watch, Inc. . . . .

During the three years since I left, Judicial Watch sadly has weakened, ethically and otherwise. . . .

My colleagues that I left behind at Judicial Watch promised me they would bring in someone to take over as chairman. But this did not happen. Instead, they seized control of Judicial Watch for their own interests.

    \*   \*   \*   \*

Without any real successes or initiatives, other than self promotion, it's no wonder Judicial Watch is in jeopardy of going out of business. . . .

Last but not least, Fitton and company have tried to harm me and my family. . . .

    \*   \*   \*   \*

Please place a large contribution in the enclosed envelop [sic] so we, together, can retake Judicial Watch and prevent it from being destroyed.

55.    Klayman's statements on his website, in the press release and in the May 9, 2006,

letter, including those delineated above in ¶¶ 50-54, individually and collectively, disparage Judicial

Watch within the meaning of ¶ 17 of the Severance Agreement and do not constitute "fair comment"

on the positions or activities of Judicial Watch within the meaning of ¶ 17 of the Severance

Agreement.

56.    Judicial Watch has suffered substantial damages as a result of the foregoing statements.

## COUNT VII -- BREACH OF CONTRACT
### Asserted by Fitton
### (Breach of 17 of the Severance Agreement by Klayman)

57.    The allegations of paragraphs 1 through 56 of this Counterclaim are incorporated as if fully set forth herein.

58.    Paragraph 17 of the Severance Agreement requires that Klayman will not disparage, defame or utter negative remarks about Judicial Watch or its present and past directors, officers and employees.

59.    On or about April 13, 2006, Klayman issued a press release, which is now posted on the Web site www.savingjudicialwatch.com, which states in relevant part: "After Klayman left Judicial Watch in the fall of 2003, the current president Tom Fitton set out to hijack the group to further his own personal interests."

60.    Klayman also states the following on the same Web site:

> After I left Judicial Watch, we were betrayed by those who we had trusted to lead the organization. . . . [T]hey lied to donors and supporters, misused their monies, failed to honor their agreement with me, and disparaged my name and reputation, all in a selfish power grab.
>
> Not only have the donors and supporters of Judicial Watch been served badly, but the financial condition of Judicial Watch has worsened to the point where, if this keeps up, there will be no Judicial Watch in two or four years. The current leadership is effectively writing checks to itself, until the considerable monies which we previously raised to clean up corruption run dry.
>
> . . . . We have too many good things to accomplish together, in bringing our country back to honest and decent government, to let Judicial Watch be killed by those who would use it for their own

personal agenda.

61.     In a letter dated May 9, 2006 mailed to Judicial Watch donors and others, the

purpose of which was to solicit funds for his lawsuit, Klayman wrote:

> While I tried to be supportive of my former colleagues after I left,
> regrettably one of them in particular, Tom Fitton, Judicial Watch's
> current president, feared my possible return and has used every dirty
> trick to block it.
>
> \*    \*    \*    \*
>
> More than lying to donors and misusing their donations, Fitton did
> everything he could to harm both my U.S. Senate campaign and the
> wellbeing of my family and me.
>
> \*    \*    \*    \*
>
> In effect, Judicial Watch became Fitton's own little toy . . . .
>
> Last but not least, Fitton and company have tried to harm me and my
> family. . . .
>
> In effect, Fitton tried to bring me to my financial knees so I'd be too
> weak to ever come back.  He obviously feared losing control over the
> organization and felt he needed to destroy me to assure his position.

62.     Klayman's statements on his website, in the press release and in the May 9, 2006,

letter, including those delineated above in ¶¶ 59-61, individually and collectively, disparage Fitton

within the meaning of ¶ 17 of the Severance Agreement.

63.     Fitton has suffered substantial damages as a result of the foregoing statements.

### COUNT VIII -- BREACH OF CONTRACT
### Asserted by Judicial Watch
### (Breach of ¶ 4 of the Severance Agreement by Klayman)

64.     The allegations of paragraphs 1 through 63 of this Counterclaim are incorporated as if

fully set forth herein.

65.     Paragraph 4 of the Severance Agreement states in pertinent part:

    A.    <u>Confidential Information</u>.  Klayman agrees that all non-public information and materials . . . concerning Judicial Watch, its operations, plans, programs, relationships, donors, prospective donors, clients, prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. . . . Confidential Information includes matters not generally known outside Judicial Watch, such as . . . donor lists, . . . contacts at or knowledge of . . . donors or prospective . . . donors . . . . Klayman agrees that after the Separation Date, he shall not . . . use Confidential Information for any purpose without written approval by an officer of Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman.

    *    *    *    *

    D.    <u>Client and Donor Information</u>. . . .  Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor . . . lists or donor . . . data.

66.    During his employment at Judicial Watch, Klayman obtained confidential information regarding it operations, plans, programs, relationships, donors, prospective donors, clients, prospective clients, past and current employees, contracts, financial affairs and legal affairs.

67.    Subsequent to the Separation Date, Klayman used non-public Confidential Information, including but not limited to, information about direct mail solicitation operations, the identity of third-parties who assisted with direct mail solicitation operations and the terms on which such programs and operations were conducted.  Klayman used this Confidential Information without seeking or obtaining written approval of an officer of Judicial Watch, and Klayman has used such information for purposes not authorized by Judicial Watch.

68.    Subsequent to the Separation Date, Klayman also used non-public Confidential Information, including but not limited to, Judicial Watch donor lists, without written approval by an

officer of Judicial Watch.  Likewise, subsequent to the Separation Date, Klayman has retained or

had access to Judicial Watch donor lists and/or donor data.  Specifically, after the Separation Date,

Klayman obtained and/or retained, and therefore had access to, a Judicial Watch donor list or lists

from a third party or parties without written approval of an officer of Judicial Watch, and Klayman

has used such list(s) for purposes not authorized by Judicial Watch.

      69.     Klayman has also misappropriated confidential information in the form of proprietary

knowledge about Judicial Watch's operations, programs and relationships, as well as donor lists and

donor data to solicit funding for various causes in violation of the Severance Agreement.

      70.     Judicial Watch has suffered substantial damages as a result of the foregoing conduct.

**COUNT IX -- BREACH OF CONTRACT**
**Asserted by Judicial Watch**
**<u>(Breach of ¶ 5 of the Severance Agreement by Klayman)</u>**

      71.     The allegations of paragraphs 1 through 70 of this Counterclaim are incorporated as if

fully set forth herein.

      72.     As part of the Severance Agreement, Judicial Watch paid Klayman "$200,000 in

consideration of his agreement not to compete or solicit, as set forth in paragraph 5 . . . ."

(Severance Agreement ¶ 6.)

      73.     In relevant part, ¶ 5(B) of the Severance Agreement states:

> B.    <u>Covenant Not to Compete or Solicit</u>.  Klayman agrees that, in order to enable Judicial Watch to preserve and protect Judicial Watch's valuable and legitimate business interests, . . . and in exchange for the additional consideration referred to in paragraph 6 . . . (which the parties acknowledge to be separately bargained for), Klayman shall not, for a period of two (2) years following the Separation Date [September 19, 2003], directly or indirectly:
>
>     (i)    work or render advice as an individual or sole proprietor in Competition with Judicial Watch or work or render

27

advice as an employee, agent, independent contractor, consultant or representative of any person, firm or legal entity which is engaged in or has plans to enter into Competition with Judicial Watch. For purposes of this Agreement, the term "Competition" means directly or indirectly engaging in the work or advancing the mission of any ethics, anti-corruption, public integrity and government accountability watchdog or similar public interest or educational organization, or engaging in any other activities the purpose or effect of which would be to provide information, programs, publications, services or products that Judicial Watch offers, develops or sells or has plans to offer, develop or sell, as of the Separation Date . . . .

74. On June 3, 2004, Klayman issued a press release stating that on "behalf of the American public" he had filed a lawsuit in the United States District Court for the Southern District of Florida concerning the United Nations' "Oil-for-Food" program. According to Klayman's press release, the lawsuit was a demand under the Freedom of Information Act that the State Department "release all documents related to the scandal." The press release continued, "'The Oil-for-Food scandal has reached every aspect of the United Nations,' said Klayman. 'American taxpayer money has been supporting this corrupt program that rewards our enemies and enriches United Nations officials and their families. This practice must end.'"

75. In October/November 2004, an organization called RightMarch.com ran a national newspaper advertisement touting that it had retained Klayman in its effort "to ensure the integrity of the vote over and against the Democrats' attempts at voter fraud" in the then upcoming 2004 Presidential election. The advertisement stated:

RightMarch.com is not sitting idly by. We have retained THE TOP EXPERT in fighting the liberals' attempt to steal this election. His name is Larry Klayman -- and he's going to prepare at least one STRONG lawsuit for OUR side, demanding that election officials use all possible means to insure that fraudulent voting does not occur! This is the SAME Larry Klayman who, while running the conservative legal foundation "Judicial Watch" . . . , succeeded in going to court to open the ballots in Florida's 2000 presidential

28

election, and later PROVED that George W. Bush had WON the
election, fair and square. Now, Larry is in private practice and his
firm, "The Klayman Law Firm," is well positioned to assist
RightMarch.com in preventing a repeat of the 2000 election mess.

\*       \*       \*

[O]ur expert attorney Klayman will be ALL OVER the news, in the
papers, on television and radio, explaining all of our strategies to help
insure an ACCURATE vote count in the presidential election.

76.    In March/April 2005, Klayman sent a fundraising solicitation out to Judicial Watch

clients and/or donors advising that he and an individual named Paul Rodriguez had founded an

organization called "Freedom Watch." The cover letter of the solicitation stated, "[I]n the style I

perfected at Judicial Watch, Freedom Watch will not just talk, but with a no holds barred approach

act, forcefully, to preserve the rich liberties that our founding fathers bequeathed to us." In an

attached letter that describes Freedom Watch further, Klayman stated:

Utilizing a broad but targeted set of unique task forces, Freedom
Watch will target key areas of concerns among supporters . . . .
Every one of these task forces will respond with actions -- not mere
words. This is how Klayman and Rodriguez worked in the past to
expose corruption, fraud and abuses that undermine American
liberties. And this is how they are getting the job done now! . . .

America's involvement in the U.N. cannot continue under present
circumstances and Freedom Watch will be the catalyst for change. . .
. Freedom Watch will push to reform the corrupt group, and we will
bring legal and other actions to force Secretary General Kofi Annan
to step down. Furthermore, we will demand that the rule of law the
U.N. seeks to impose upon others is applied to the U.N. itself!

\*       \*       \*

We have a Constitutional right to express our faith, and we will not
accept any restrictions amongst God-loving people to practice our
religions in peace. Freedom Watch will take the fight to all those
whose work threatens to extinguish our religious rights and freedoms.
. . .

29

> Furthermore, we will work to shut down groups that use taxpayers' funds to promote acts that many consider deplorable.
>
> \*       \*       \*
>
> Protecting those from government intrusion will be a top priority for Freedom Watch, and we will stop at nothing to break down the wall of government "secrecy" that threatens us all.
>
> \*       \*       \*
>
> Using all available legal means, Freedom Watch will work to protect our borders from those that trample our country's laws. Freedom Watch will defend against those seeking to undermine our fundamental liberties.
>
> Freedom Watch also will, once and for all, light the fuse that will end in the abolishment of the IRS. No longer will individuals or groups be audited for political or improper purposes!
>
> \*       \*       \*
>
> Freedom Watch will not only ***act forcefully*** to protect your liberties, it will educate the American public through websites, publications, media appearances, seminars and conferences.

77.     These and other actions, individually and collectively, engaged in by Klayman violate ¶ 5 of the Severance Agreement.

### Prayer for Relief

WHEREFORE, Judicial Watch and Fitton ask that the Court enter an Order against Klayman as follows:

A.     One Count I, that Judicial Watch be awarded judgment in its favor in the amount of $77,399.45, plus pre- and post-judgment interest;

B.     On Count II, that Judicial Watch be awarded judgment in its favor in the amount of $162,620.52, plus additional pre- and post-judgment interest;

C.     On Count III, that Judicial Watch be awarded judgment in its favor in the amount of

$162,620.52, plus additional pre- and post-judgment interest;

D.     On Counts IV-V, that Judicial Watch be awarded judgment in its favor in an amount to be determined at the trial of this matter pursuant to 15 U.S.C. § 1117(a), and that such amount be trebled pursuant to 15 U.S.C. § 1117(a), and that Judicial Watch be awarded the costs of the action and reasonable attorney fees pursuant to 15 U.S.C. § 1117(a);

E.     On Counts IV-V, that Judicial Watch be awarded injunctive relief pursuant to 15 U.S.C. § 1116;

F.     On Count VI, that Judicial Watch be awarded judgment in its favor in an amount to be determined at the trial of this matter;

G.     On Count VII, that Fitton be awarded judgment in his favor in an amount to be determined at the trial of this matter;

H.     On Count VIII, that Fitton be awarded judgment in his favor in an amount to be determined at the trial of this matter;

I.     On Count IX, that Judicial Watch be awarded judgment in its favor in an amount to be determined at the trial of this matter;

J.     That Judicial Watch and Fitton, respectively, be awarded attorney's fees, court costs, and other expenses in accordance with ¶¶ 19(B-C) of the Severance Agreement.

K.     That the Court award such other and further relief as the Court may deem just and equitable in the circumstances.

## Demand for Jury Trial

Judicial Watch demands a jury trial on all issues so triable.

Respectfully submitted,

//s// *Richard W. Driscoll*

_____

Richard W. Driscoll (436471)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
Email: rdriscoll@driscollseltzer.com

*Counsel for Defendants Judicial Watch, Inc.,
Thomas J. Fitton, Paul Orfanedes, and Christopher
Farrell*

Dated: June 28, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of June 2006, a copy of the foregoing Answer to Second Amended Complaint and Counterclaims of Judicial Watch, Inc. and Thomas J. Fitton was served by electronic filing upon counsel listed on the Notice of Electronic Filing.

//s// *Richard W. Driscoll*

_____

Richard W. Driscoll