IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                      |                                           |
|--------------------------------------|-------------------------------------------|
| LARRY KLAYMAN, *ET AL.*              |                                           |
| Plaintiffs,                          |                                           |
| v.                                   | Civil Action No. 1:06-CV-00670            |
|                                      | Honorable Colleen Kollar-Kotelly          |
| JUDICIAL WATCH, INC., *ET AL.*       |                                           |
| Defendants.                          |                                           |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE**

Defendants, by counsel and pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, respectfully submit this motion to strike immaterial, impertinent, and scandalous material from the record in this matter, as well as Plaintiff Larry Klayman's request to be reinstated to his former positions of Chairman and General Counsel of Judicial Watch, Inc. As grounds therefor, Defendants state as follows:

**MEMORANDUM OF LAW**

**I.    Introduction**

Defendant Judicial Watch, Inc. ("Judicial Watch") is a non-profit, tax-exempt, educational organization that seeks to promote transparency, integrity, and accountability in government, politics, and the law. The organization has been in existence since 1994 and relies on mostly small, tax-deductible contributions to finance its operations. Defendant Thomas J. Fitton has served as the organization's president and as a member of its board of directors since 1998. Defendant Paul J. Orfanedes has been the organization's secretary since 1996. He also served as the organization's treasurer from 1996 to 1998 and became the treasurer again in 2003. He has served as a member of

the organization's board of directors since 1996. Defendant Christopher J. Farrell joined Judicial Watch's board of directors in 2003.

Plaintiff Larry Klayman was the organization's president from 1994 to 1998 and was a member of the board of directors from 1994 to 2003. In 1998, Klayman introduced Fitton to Judicial Watch and asked the board of directors to make Fitton the organization's president. At that time, Klayman took on the title of "Chairman," although the title carried no formal legal authority under the organization's bylaws. Klayman also served as the organization's treasurer from 1998 to 2003 and used the title of "General Counsel" as well. As with the title of "Chairman," the title of "General Counsel" carried with it no formal legal authority under the organization's bylaws.

In late September 2003, Klayman entered into a severance agreement with Judicial Watch pursuant to which he resigned voluntarily from the organization and was paid $400,000 in severance and $200,000 for agreeing not to compete with the organization for a period of two years. Klayman now sues the organization and its current officers and directors, Fitton, Orfanedes, and Farrell, for alleged breach of the severance agreement, defamation, and violations of both the Lanham Act and a Florida statute.

Plaintiff Louise Benson, who has been very devoted personally to Klayman over the years and likely only agreed to participate in this lawsuit at Klayman's prompting, asserts entirely unrelated causes of action alleging fraud, breach of contract, and unjust enrichment in connection with a charitable contribution she made to the organization in 2002 and volunteer services she claims to have provided.

While all of Plaintiffs' various causes of action are capable of being pled in a clear, concise, and straightforward manner, Plaintiffs have used their lawsuit to make a great many immaterial,

impertinent, and scandalous accusations about Judicial Watch and its current leadership, particularly Fitton. Plaintiffs accuse Fitton of acting solely to entrench himself as head of the organization to promote his personal interests and partisan, political ideology. Plaintiffs also accuse Fitton of mismanaging the organization and its finances, and they make repeated, irrelevant references to Fitton's educational background. Perhaps most bizarrely, Plaintiffs allege that Fitton purchased two resort properties in Belize and has attempted to disguise his alleged interest in these unidentified properties, intimating that Fitton has misused Judicial Watch finances for personal gain and concealed his misuse through overseas transactions.

While the inclusion of these immaterial, impertinent, and scandalous allegations in the lawsuit is troubling enough, contemporaneous with the filing of the lawsuit, Klayman issued a press release, launched a website, www.savingjudicialwatch.org, and commenced a fundraising campaign, apparently directed at Judicial Watch donors, in which he repeats many of these same outrageous allegations. *See* April 13, 2006, Press Release by Klayman, attached hereto as Exhibit 1; excerpt from www.savingjudicialwatch.com home page, attached hereto as Exhibit 2; and May 9, 2006, Fundraising Letter from Klayman to Judicial Watch donors and others, attached hereto as Exhibit 3.[1] The stated purpose of Klayman's fundraising campaign is to raise money for the lawsuit and to restore himself to Judicial Watch's leadership. For example, on his website Klayman asserts:

> Now, I face an even bigger challenge — Saving Judicial Watch! After I left Judicial Watch, we were betrayed by those who we had trusted to lead the organization. As explained in a complaint that I was forced to file, they lied to donors and supporters,

---

[1] As referenced in his press release, Klayman also apparently prompted a former Judicial Watch employee, Sandra Cobas, to file defamation, false light, and intentional infliction of emotional distress lawsuit suit against the organization, its current leadership, and another Judicial Watch employee in Miami, Florida. *See* Exhibit 1. Both this lawsuit and the Florida lawsuit were served on Judicial Watch contemporaneously.

> misused their monies, failed to honor their agreement with me, and disparaged my name and reputation, all in a selfish power grab.

*See* Exhibit 2 (emphasis added). Klayman's website also falsely claims, "The current leadership is effectively writing checks to itself, until the considerable monies which we previously raised to clean up corruption run dry." *Id.* Klayman concludes:

> I thus have been forced to step in to save "my baby," the only public interest group that, without fear, had the guts to do what was right for the American people. Read the complaint posted on this website and please support me in **Saving Judicial Watch**. We have too many good things to accomplish together, in bringing our country back to honest and decent government, to let Judicial Watch be killed by those who would use it for their own personal agenda. I need your support to save Judicial Watch for you and other supporters! The country needs a forceful and ethical Judicial Watch to keep government and the legal system honest!

*Id.* (emphasis original).

Similarly, Klayman's fundraising letter asserts that the organization's current leadership "seized control of Judicial Watch for their own interest." *See* Exhibit 3. He again singles out Fitton in particular:

> While I tried to be supportive of my former colleagues after I left, regrettably one of them in particular, Tom Fitton, Judicial Watch's current president, feared my possible return and has used every dirty trick to block it.

*Id.* Klayman concludes:

> This suit has one goal: Save Judicial Watch by getting it out of the hands of Fitton. To be successful, this legal battle must be waged most quickly and aggressively lest Judicial Watch be destroyed and cease to exist. Its costs likely will be considerable. Therefore I need your help with lawsuit's expenses (sic). I appeal to you as a supporter of me and Judicial Watch: Please donate as much as you can for this case. To be frank, it will cost close to a million dollars to litigate it to a finish. So I need to start fast in getting the funds to save the most important public interest group ever conceived . . . I need your help now, before it is too late. Please place a large contribution in the enclosed envelop so we, together, can retake Judicial Watch and prevent it from being destroyed.

*Id.*

None of the immaterial, impertinent and scandalous allegations with which Defendants take issue have any bearing on the issues raised by Plaintiffs' claims. They clearly were included in the lawsuit for no purpose other than to try to sully the reputations of Judicial Watch and its current leadership and to try to advance Klayman's media and fundraising efforts. The Court should not countenance this abuse of court process. The allegations should be stricken from the record. Likewise, the Court should strike Klayman's request to be reinstated as "Chairman" and "General Counsel" as well.

## II.   Argument

### A.   Standards Under Fed.R.Civ.P. 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike any matter that is "redundant, immaterial, impertinent, or scandalous." Fed.R.Civ.P. 12(f). While Defendants recognize that motions to strike are disfavored generally, a court has liberal discretion to strike such filings as it deems appropriate under Rule 12(f). *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (Friedman, J.). The word "scandalous" in Rule 12(f) generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court. *Id.* Allegations in a complaint that are irrelevant and prejudicial to a defendant also are subject to motions to strike. *Wiggins v. Phillip Morris, Inc.*, 853 F. Supp. 457, 457 (D.D.C. 1994) (Lamberth, J.); *see also Payne v. Howard*, 75 F.R.D. 465, 468 (D.D.C. 1977).

### B. Plaintiffs' Immaterial, Impertinent, and Scandalous Allegations Must be Stricken

Plaintiffs' Second Amended Complaint contains at least twenty-five (25) immaterial, impertinent, and scandalous allegations about Defendants. These allegations can be grouped into seven (7) categories. Defendants will address each category separately.

1. Fitton Sought to "Entrench" Himself as Head of Judicial Watch to Promote His Personal and/or Political Agenda

Numerous paragraphs of the Second Amended Complaint contain allegations to the effect that, since Klayman's departure, Fitton has acted to "entrench" himself and/or "take complete control" of Judicial Watch in order to misuse the organization for his own personal agenda and/or partisan political interest.[2] *See* ¶ 11 (Fitton "has acted solely to entrench himself as head of Judicial Watch"); ¶ 14 ("Fitton viewed Klayman's departure as an opportunity to take complete control of the organization to the detriment of Judicial Watch's donors, and employees, including many that were hired by Klayman."); ¶ 30 ("Fitton has acted to entrench himself in control of Judicial Watch and run it as his own partisan operation for his own political agenda."); ¶ 33 (Fitton caused Judicial Watch to breach the severance agreement "to further Fitton's efforts to entrench himself in power at Judicial Watch to pursue his own personal interest, as well as to take Judicial Watch in a direction wholly inconsistent with Judicial Watch's non-partisan mission — and to harm Klayman."); ¶ 34 ("Fitton breached the Severance Agreement to promote his personal agenda and political ideology"); (Fitton's improper acts were done to further his own agenda to marginalize Klayman and promote Fitton's status within the media and elsewhere."); ¶ 66 ("Fitton also caused Judicial Watch to harm

---

[2] All references herein are to the Second Amended Complaint, unless otherwise stated.

and damage Klayman, in order that they (sic) could continue to control and misuse the organization . . ."); ¶ 96 ("Because Fitton and Judicial Watch have not acted properly by deliberately misleading donors and improperly converting Judicial Watch into a partisan organization, Benson is entitled to receive the value of the services she provided."); ¶ 117 ("Fitton's deliberate and calculating steps to breach the Severance Agreement were egregious and were taken to further his personal gain to the detriment of Klayman, Judicial Watch, and the public."); ¶ 119 (alleging that Fitton breached the severance agreement "to ensure that Judicial Watch would no longer be a non-partisan organization and instead become an organization . . . that promoted Fitton's own interests and agenda without regard for the public interest."); ¶ 132 ("Fitton never intended to find a suitable successor for Klayman, and instead always intended to take over Judicial Watch for his own personal gain."); and ¶ 140 ("Fitton's deliberate and calculating steps to breach the Severance Agreement were egregious and were taken to further his personal gain to the detriment of Klayman, Judicial Watch, and the public.").

Clearly, these allegations have no relevance to Klayman's breach of contract, defamation or statutory claims. For example, whether Fitton has "entrenched himself" as head of Judicial Watch in order to misuse the organization for his own personal or partisan interests is immaterial to Klayman's mundane breach of contract allegations, such as whether Judicial Watch paid him all of the monies he was entitled to receive under the severance agreement or removed him as a guarantor on Judicial Watch's credit card. Similarly, the allegations which with Defendants take issue are immaterial to Klayman's claims that Judicial Watch defamed him in its tax returns by reporting to the IRS that Klayman owed the organization money. Likewise, such allegations are completely immaterial to Klayman's claim that Judicial Watch used his name in a fundraising letter shortly after

he left the organization. They also are immaterial to Benson's claims that she somehow was defrauded with respect to a contribution she made to Judicial Watch's building fund a year before Klayman's departure and that the organization was unjustly enriched by her volunteer services.

While the allegations have no bearing on Plaintiffs' legal claims, they are clearly harmful to Fitton and Judicial Watch. They impute to Fitton conduct that is inconsistent with the head of a legal watch dog organization, especially a tax-exempt, 501(c)(3) educational organization that is legally prohibited from participating in partisan politics. They also create the appearance of insufficient oversight of Fitton by the organization's board of directors. The allegations are immaterial, impertinent, and scandalous, and they should be stricken from the record.

2.    Alleged Mismanagement of Judicial Watch and Dissipation of Assets

Several of Plaintiffs' allegations accuse Fitton of mismanaging the organization and dissipating the organization's assets. *See* ¶ 56 ("On information and belief . . . Fitton caused Judicial Watch to commingle with Judicial Watch's operating funds, or misuse in other ways, the approximately $1.4 million raised from Benson and others. This misuse of funds further demonstrates Fitton's agenda to take over Judicial Watch for his own personal gain."); ¶ 64 ("During the period of Fitton's leadership, Judicial Watch's assets have been reduced almost fifty-percent (50%) percent (sic), based on Judicial Watch's annual submissions to the IRS. On information and belief, Judicial Watch's assets are now between $8 and $9 million dollars — down from almost $16 million in actual booked assets as of September 19, 2003, when Klayman left . . . ."); ¶ 71 and 85 ("Since Fitton has taken over Judicial Watch, Judicial Watch has not intended to, taken no steps to, and is not now, due to the dissipation of Judicial Watch assets, in a position to purchase the Building.").

As with Plaintiffs' allegations regarding Fitton "entrenching" himself as head of Judicial Watch to promote his own personal interest or partisan political agenda, there is no reason for including these allegations in this lawsuit other than to cast aspersions on Defendants and creating the false appearance that Fitton has misused Judicial Watch's assets. The allegations are immaterial, impertinent, and scandalous, and they should be struck from the record.

In a separate but related matter, Plaintiffs claims that "[s]ince Klayman's departure, Fitton has mismanaged Judicial Watch and closed regional offices or eliminated staff of the regional offices to the point that the remaining offices are shells that perform virtually no service. On information and belief, many of the employees [of Judicial Watch] were wrongfully terminated by Fitton, for reasons that include age, sex, and national origin discrimination." *See* ¶ 14. This immaterial, impertinent, and scandalous accusation is nothing more than yet another attempt by Plaintiffs to sully Fitton's reputation and make him appear odious and otherwise unfit to lead a legal watch dog organization, in this instance by raising completely unsubstantiated allegations that he violated anti-discrimination laws. It cannot be reasonably asserted that this allegation has any bearing whatsoever on any of the legal claims asserted by Plaintiffs.

      3.      <u>Fitton's Alleged Properties in Belize</u>

Plaintiffs make the following bizarre, outrageous, and completely unsubstantiated allegation about Fitton at ¶ 15 of the Second Amended Complaint:

> Moreover, upon information and belief, since Fitton took control of Judicial Watch, Fitton purchased two resort properties in Belize by using numbered accounts and limiting disclosure of his name on the sale of documents to hide the fact that Fitton was involved in the purchases (the "Belize Properties"). Fitton's attempts to "hide" his purchase of the Belize Properties raises an inference that he has committed similar acts at Judicial Watch, secreting his potentially improper or questionable conduct that is detrimental to donors, supporters, Klayman and others.

The clear purpose of this allegation, especially when considered in the context of Plaintiffs' outrageous and false allegation that Fitton has misused Judicial Watch's financial resources, is to make it appear that Fitton has been misusing Judicial Watch funds for his personal financial gain and secreting these funds offshore. This allegation not only has no basis in fact, but it also is irrelevant, immaterial, scandalous, and completely unsubstantiated. It should be struck from the record.

### 4.   Fitton's Educational Background

At least four separate paragraphs of Second Amended Complaint make reference to Fitton's educational background and whether he had obtained an undergraduate degree. *See* ¶¶ 8, 29, 128, and 132. Clearly, such allegations are completely immaterial to Klayman's breach of contract, defamation, and statutory claims. Klayman had no need to raise such allegations in order to assert, as he does in ¶ 131, that Fitton lead him to believe he would take steps to find a suitable successor for him — an allegation that apparently provides the sole basis for Klayman's assertion that the Court should rescind the severance agreement and return him to his former positions of Chairman and General Counsel of Judicial Watch.[3] Nor does it have any bearing on any of Benson's claims. There simply is no reason to include this immaterial and impertinent allegation in the lawsuit. Its

---

[3]   Defendants of course deny that such a statement was made or that it would be actionable under the facts and circumstances presented by this case if it had been made.

sole purpose appears to be an attempt by Klayman to embarrass Fitton and portray him in a negative light.

### 5. Greg Mills

The Second Amended Complaint contains only one substantive allegation with respect to Judicial Watch fundraiser Greg Mills. Specifically, Benson accuses Mills of falsely representing to her, at some unspecified date and time, that certain funds solicited by the organization to purchase a building were, in fact, being used to purchase a building. *See* ¶ 60, 61, and 72. While it was and is Judicial Watch's intention to use these funds to purchase a building for Judicial Watch's headquarters, Plaintiffs nonetheless also include a litany of other, completely immaterial and impertinent allegations about Mills that are nothing more than a transparent attempt to sully both Fitton and Mills. The lawsuit alleges:

> Fitton continued to employ Mills on behalf of Judicial Watch even though he knew or should have known that Mills' prior actions exposed Judicial Watch's reputation for non-partisan integrity to injury. For example Fitton knew, or should have known that: (a) Mills had been president of U.S. Family Network, found by the Federal Election Commission to have funneled money into attack advertisements against Democrats; (b) Mills led a nonprofit group that received millions of dollars from clients of former lobbyist Jack Abramoff; (c) Prosecutors recently subpoenaed Mills in connection with the investigation into Congressman Tom DeLay's alleged money laundering and campaign finance scandal case in Texas; and (d) Mills' refusal to take a polygraph exam in 2003 after allegations surfaced that he allegedly stole funds from another organization, which he admittedly repaid.

¶ 62. There can be no justification whatsoever for including these clearly immaterial and impertinent allegations in the lawsuit.

### 6. Removal of Other Directors

The lawsuit also alleges, again without any relevance whatsoever to the causes of action asserted by either Klayman or Benson, that all three current officers and directors of the organization

–11–

"acted in secret" during the negotiation of the severance agreement "to remove persons loyal to Klayman from Judicial Watch in order to take over and completely change the nature of Judicial Watch after his departure." ¶ 31. Like a great many of Plaintiffs' allegations in the lawsuit, this particular allegation is immaterial, impertinent, and scandalous and should be struck from the record.

       7.      <u>Miscellaneous</u>

Plaintiffs appear to allege that Fitton and Judicial Watch fundraiser Mills defrauded not only Benson, but also thousands of other individuals. *See* ¶ 76 ("Judicial Watch, Fitton, and Mills made those misrepresentations to induce Benson and the other 3,864 donors who gave money to buy the Building to refrain from demanding a refund of their donations so Judicial Watch could retain the benefit of their donations."). Again, such immaterial, impertinent, and scandalous allegations have no place in this lawsuit.

Finally, Plaintiffs assert that the ultimate purpose of this lawsuit is to "restore ethics and honesty to Judicial Watch." *See* ¶ 1. The clear implication of this allegation is that Fitton and the current leadership of Judicial Watch are not ethical or honest individuals. The only apparent purpose of the allegation is to impugn the integrity of Judicial Watch's current leadership. It has no bearing whatsoever on the causes of action asserted by Plaintiffs. The allegation is immaterial, impertinent, and scandalous, and it should be struck from the record.

      **C.**      <u>**Plaintiffs' Immaterial, Impertinent, and Scandalous Allegations Have Caused Demonstrable Harm to Judicial Watch**</u>

Since Plaintiffs filed their lawsuit containing the above-referenced immaterial, impertinent, and scandalous allegations, and since Klayman commenced his related media and fundraising efforts to "restore" himself to the organization, Judicial Watch has received a number of communications from donors clearly demonstrating the harm such allegations are causing. One new donor to the

organization wrote to Judicial Watch on or about May 27, 2006 stating, "I side with Larry Klayman. Please take me off your roles (sic)." A long term donor wrote to Judicial Watch on or about May 15, 2006 stating, "Mr. Fitton, I am going to help Larry Klayman put Judicial Watch's house back in order." A second long-term donor wrote to Judicial Watch on or about May 26, 2006, stating "I'd like to know why you refuse to negotiate with the founder of Judicial Watch . . . In my opinion, Larry Klayman should be put back in the driver's seat immediately." A third long-term donor recently wrote to Judicial Watch stating, "I am not contributing one penny to Judicial Watch until Larry Klayman is restored as president of Judicial Watch." Clearly, Plaintiffs' allegations are not only immaterial, impertinent, and scandalous, but they also are causing harm to the organization.[4] Plaintiffs should not be allowed to misuse court process to prejudice Judicial Watch, and these allegations should be struck from the record for this additional reason.

### D. Klayman's Demand to Be Reinstated Should Be Struck As Well

Included among the relief Klayman seeks from the Court is rescission of the severance agreement and reinstatement to his former position as Chairman and General Counsel of Judicial Watch. *See* ¶ 137. Presumably, this would require Klayman's reemployment by Judicial Watch.

Under District of Columbia law, specific performance usually is not granted in an employment context. *See*, *e.g.*, *Roberson v. District of Columbia Board of Higher Education*, 359 A.2d 28, 31 n.3 (D.C. App. 1976), citing 11 S. Williston, *Contracts*, § 1423 (3d ed. 1968). In addition:

> . . . reinstatement is the equivalent of specific performance of a contract for personal services. The common law traditionally disfavored specific performance of such

---

4   No finding of prejudice or harm is required under Rule 12(f).

>contracts precisely to avoid the friction and the social costs that may result when employer and employee are forcibly reunited in a relationship that has already failed. Reinstatement is, even today, not the ordinary remedy for breach of an employment contract at state law. *See Restatement (Second) of Contracts*, § 367 (1979). Indeed, "the presence of an adequate remedy at law is often given as a specific reason for denying specific performance of a contract for services, and the general rule in respect of contracts for personal services is that for breach thereof a party must avail himself of the remedy afforded at law." Am. Jur. 2d *Specific Performance*, § 164 (1973).

*Reuber v. Food Chemical News*, 750 F.2d 1039, 1066 (D.C. Cir. 1984) (Bork, J., concurring).

While Klayman clearly has an adequate remedy at law — he acknowledges as much when he asks this Court to award him damages — it would be extraordinarily difficult, if not impossible, for Judicial Watch's current leadership to be compelled to work with a reinstated Klayman in light of the immaterial, impertinent, and scandalous allegations made by Klayman in this lawsuit and in his media and fundraising efforts. Klayman has impugned the integrity of Judicial Watch's current leadership and has accused them of being dishonest, lacking ethics, violating the law, and using Judicial Watch for partisan, political purposes. He also has accused them of misusing Judicial Watch funds for their personal gain and "effectively writing checks to themselves." *See* Exhibit 2. Moreover, it would appear from Klayman's press release, website, and fundraising letters that this entire litigation, including his request to be reinstated, is nothing more than an attempt to advance his media and fundraising efforts. In his pleadings, Klayman admits, albeit in the context of purportedly "teaching" Fitton, that it is his belief that the most powerful tool for raising one's stature in the legal community is through the media outlets. *See* ¶ 42. The Court should not allow this litigation to be used for such improper purposes and should strike Klayman's demand to be reinstated.

**III.     Conclusion**

For all of the foregoing reasons, Defendants respectfully request that the following paragraphs be struck from the Second Amended Complaint in whole or in part: 1, 8, 11, 13, 14, 15, 29, 30, 31, 33, 34, 47, 56, 62, 64, 66, 71, 76, 85, 96, 117, 119, 128, 132, and 140.  Defendants also respectfully request that Plaintiff Klayman's demand to be reinstated as Chairman and General Counsel of Defendant Judicial Watch, Inc. be struck as well.

                              Respectfully submitted,

                              //s// *Richard W. Driscoll*

                              Richard W. Driscoll (436471)
                              DRISCOLL & SELTZER, PLLC
                              600 Cameron Street
                              Alexandria, Virginia 22314
                              703.340.1625 Telephone
                              703.997.4892 Facsimile
                              Email: rdriscoll@driscollseltzer.com
                              *Counsel for Defendants Judicial Watch, Inc. and Thomas J. Fitton*

Dated:  June 28, 2006