**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | | |
|---|---|---|
| Larry Klayman, *et al.* | : | |
| *Plaintiffs,* | : | Civil Action No. 1:06-CV-00670 |
| | : | |
| v. | : | Honorable Colleen Kollar-Kotelly |
| | : | |
| Judicial Watch, Inc., *et al.* | : | |
| *Defendants.* | : | **Jury Trial Demanded.** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT**
**OF ITS OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

Plaintiffs, Larry Klayman and Louise Benson by counsel, Daniel J. Dugan, Esquire of

Spector Gadon & Rosen, P.C., hereby submit this Memorandum of Law in Opposition to

Defendants' Motion to Strike the Second Amended Complaint (the "Motion to Strike") filed by

Defendants, and state as follows:

## I.     INTRODUCTION AND FACTUAL BACKGROUND

### A.     Statement of the Case

This action arises from a series of events that took place after Larry Klayman left Judicial

Watch, Inc. ("Judicial Watch") in the hands of Thomas Fitton ("Fitton").  What ensued after the

parties entered into the Severance Agreement has amounted to a pattern of fraud and misconduct

focused against Klayman and the organization that he founded, Judicial Watch.  But for

Klayman's desire to run for the United States Senate Klayman still would be involved in Judicial

Watch's affairs and the organization would be an active participant in today's political

landscape.  Second Amended Complaint ¶¶ 1-7.  The acts perpetuated against Klayman, in

breach of the Severance Agreement, are part of a larger pattern of misconduct that includes acts

against Judicial Watch donors, like Louise Benson, who was defrauded by deliberately false

statements concerning the future of Judicial Watch after Klayman departed.  This case is not

about "rewriting history" as Defendants so eagerly trumpet in their Motions, but rather is about concrete actions taken by Judicial Watch and its Board of Directors to wrongfully remove Klayman as a competitive force and prevent him from protecting the donors and the organization that he created.  Plaintiffs' Second Amended Complaint was carefully drafted to recount the pattern of misconduct that ensued when Klayman left the organization – misconduct that has harmed Klayman, Benson and others who were supportive of Klayman.

**B.      Statement of Relevant Facts**

 In 2003, a seat in the United States Senate (the "Senate") opened in Klayman's home state of Florida.  After representing many Florida citizens in legal matters, Klayman decided that he could be even more effective in his fight against corruption by being elected to the Senate. Though Judicial Watch had become a substantial organization, Klayman believed that the most effective way to effectuate a non-partisan "clean-up" of government was to transition Judicial Watch to a suitable successor while Klayman was elected to the Senate.  Klayman intended to take his "Judicial Watch" style of advocacy inside the government, while Judicial Watch continued its work as an independent non-profit organization.  Second Amended Complaint ¶¶ 5-7.  Accordingly, Klayman decided to enter into severance negotiations with Fitton, then President of Judicial Watch, and the Judicial Watch board members, including Paul Orfanedes ("Orfanedes"), to begin the transition of leadership.  Ultimately, Klayman entered into an agreement to depart from Judicial Watch and begin his Senate campaign.  (the "Severance Agreement").  Second Amended Complaint ¶7

Shortly before Klayman left Judicial Watch, he discovered that, contrary to representations Fitton made when Klayman hired Fitton, Fitton never obtained his undergraduate degree. Klayman pressed the issue, and Fitton agreed (a) to obtain his college degree and (b) to continue the process to find a qualified individual with a legal background to lead Judicial

Watch, particularly in light of Fitton's lack of qualifications.  Second Amended Complaint ¶8.  Before leaving the organization, Klayman discussed the position with, and interviewed, highly respected and qualified candidates to become Chairman of Judicial Watch. Second Amended Complaint ¶9.  As a condition to his signing the Severance Agreement and stepping down from Judicial Watch, Klayman insisted, and Fitton agreed, to have Judicial Watch hire a qualified person to become Chairman.  Klayman discussed with Fitton possible candidates that were suitable to lead Judicial Watch.  Instead of taking the steps that he promised to find a distinguished and qualified Chairman to run Judicial Watch, Fitton has solely acted to entrench himself as head of Judicial Watch.  Even today there is no Chairman, and Fitton controls Judicial Watch with the approval of Orfanedes and Farrell.  Fitton mislead Klayman and others to promote his personal agenda, interests, and political ideology to the detriment of Judicial Watch, Klayman, and Judicial Watch's donors and supporters.  Indeed, Fitton viewed Klayman's departure as an opportunity to take complete control of the organization to the detriment of Judicial Watch's donors, such as Louise Benson, and employees, including many attorneys and staff that were hired by Klayman.  Second Amended Complaint ¶¶ 10-14.  Since Klayman's departure, Fitton has mismanaged Judicial Watch and closed regional offices or eliminated the staff of the regional offices to the point that the remaining offices are shells that perform virtually no service.  On information and belief, many of the employees were wrongfully terminated by Fitton, for reasons that include age, sex and national origin discrimination. Second Amended Complaint ¶14.

From the time that Klayman stepped down from his posts at Judicial Watch, Fitton, Orfanedes and Farrell, directly and through other agents of Judicial Watch defamed, disparaged and cast Klayman in a false light to denigrate Klayman, and in an effort to undermine Klayman's ability to return to the helm of Judicial Watch or compete with Judicial Watch in the future.

Second Amended Complaint ¶16.  Judicial Watch, through Fitton, Orfanedes and Farrell and other agents and representatives engaged in a pattern of misconduct that breached the Severance Agreement and mislead donors, including but not limited to Louise Benson, and the public with their false advertisements, and solicitations and their continued defamation and disparagement of Klayman.  The continued pattern of misconduct is central to the claims asserted on behalf of Klayman and Benson as set forth in the Second Amended Complaint.

## II.    <u>LEGAL ARGUMENT</u>

### A.    **Introduction**

Defendants' filing of this Motion to Strike is a dilatory tactic to thwart Plaintiffs' ability to present their legal arguments to this Court.  There is no legal basis for Defendants to challenge the inclusion of the allegations plead in the Second Amended Complaint.  In fact, the arguments asserted in the Motion to Strike are contrary to the applicable case law because Defendants essentially request the Court to strike the factual allegations in the Second Amended Complaint <u>because</u> the allegations provide detailed statements and examples of Defendants alleged misconduct.  Simply put, there is nothing "redundant, immaterial, impertinent, or scandalous" about Plaintiffs' specific allegations of Defendants wrongdoing.  In fact, if Defendants were correct, any <u>detailed</u> factual pleading that "embarrasses" or "offends" a Defendant would be stricken without argument on the merits, simply because the allegation is too specific as to the kind of misconduct and improper behavior.  Therefore, the Defendants' Motion to Strike must be denied.

B.     **Applicable Legal Standards**

1)     Motions to Strike are Generally Disfavored and Require a Clear Showing that the Allegations have No Bearing on the Subject of the Litigation or Evidence of the Misconduct Would be Inadmissible.

A Motion to Strike is a drastic remedy that is generally disfavored by federal courts. Judicial Watch, Inc. v. United States Commerce Dep't., 224 F.R.D. 261 (D.D.C. 2004); 35 C.J.S. Fed. Civ. P. 495 (May 2006).  Rule 12(f) of the Federal Rules of Civil Procedure provides that upon a Motion to Strike, "the court may order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter."   This Court, following, almost unanimous precedent through out the federal judiciary, has routinely held that while the resolution of "motions to strike" are soundly within the Court's discretion, "such motions are generally disfavored, being regarded as time wasters."  Cobell v Norton, 224 F.R.D. 266, 282 (D.D.C. 2004); 2A Moore's Federal Practice §12.21 at 2419.  Generally, "Motions to Strike" are viewed, as it should be in this case, as a "dilatory or harassing tactic."  5C Wright and Miller  §1380 at 394 (3d. Ed).  Moreover, this Court has held that a Motion to Strike should be denied unless: 1) it is clear that the allegations in question have no possible bearing on the subject matter of the litigation; or 2) it can be shown that no evidence in support of the allegations would be admissible.  Cobell v Norton, 224 F.R.D. 266, 282 (D.D.C. 2004)(citing Ulla-Maija, Inc. v. Kivimaki, 2003 WL 169777 at *4 (S.D.N.Y. 2003), and Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).

2)     Matter Outside of the Pleadings Should Not be Considered on a Rule 12(f) Motion to Strike "Scandalous" Matter.

By its very nature a Motion to Strike allegedly "scandalous" matter requires the Court to consider whether the allegations of a pleading should be stricken.   Fed.R.Civ.P. 12(f) Accordingly, matter outside of the pleading itself is normally not considered on a Rule 12(f)

Motion. 5C Wright and Miller §1380 at 404 (3d. Ed). Unlike a Rule 12(f) motion to strike an insufficient defense, the relief sought by a Rule 12(f) motion to strike "scandalous" matter should not raise extra-pleading matters and should <u>not</u> be treated like a motion for summary judgment. <u>See</u> <u>Krauss v. Keibler-Thompson Corp.</u> 72 F.R.D. 615 (D.Del 1976). Indeed, it makes little sense to consider extra-pleading matter when the basis for the motion to strike is that the allegations themselves are "scandalous."

     3)     To be "Scandalous," Matter must be Repulsive, Cruelly Derogatory or Unnecessarily Reflect on the Moral Character.

 "Scandalous" matter is defined as "that which improperly casts a cruelly derogatory light" on a party to the action or "that which unnecessarily reflect on the moral character of an individual or state anything in repulsive language that detracts from the dignity of the Court." <u>Cobell v. Norton</u>, 224 F.R.D. 266, 282 (D.D.C. 2004). In the context of these standards, it is clear that to prevail, Defendants must show that the objectionable allegations in the Second Amended Complaint have no bearing on the subject of the claims or evidence of the misconduct will not be admissible in Court, and that the allegations are "repulsive, cruelly derogatory, or unnecessarily reflect on the moral character" of Thomas Fitton and others.

**C.    Defendants' Motion To Strike Must Be Denied Because
the Allegations Directly Bear on the Claims and are Not "Scandalous."**

Defendants' Motion to Strike is a nothing more than an attempt to delay the proceedings and punish Plaintiffs for filing this action.  Indeed, a review of the allegedly "scandalous" matter presented by Defendants reveals that even under the most liberal reading of this jurisdiction's case law, Defendants have done no more than object to allegations that are "embarrassing" or "offensive" to Defendants.    In fact, this Court has refused to strike allegations that are unquestionably more extreme and offensive than the complained of allegations.    Cobell v. Norton, 224 F.R.D. 266 (D.D.C. 2004).

In Cobell, the Court denied a motion to strike claims where the plaintiff alleged, among other things, that: 1) "government counsel [are] 'attorneys who habitually breach their ethical duties;" 2) "[r]easonably well trained monkeys would ensure a more intellectually honest an accurate accounting;" and 3) "the defendants used a court order 'as license to transmit fraudulent statements to Indian children and *non compos mentis*.'"    Cobell, 224 F.R.D. at 282-283.    In denying that these allegations were "scandalous" the Court stated that "[w]hile such statements may be inflammatory, and perhaps ill-advised, they simply do not rise to the level of "scandalous" to warrant relief under Rule 12(f).  Id. at 283.  The Court went on to note that "[a]ll of plaintiffs' allegations of dishonesty and misconduct have to do with actions taken by the individuals mentioned in the plaintiffs' motion. . ." Id.    The Court was persuaded that "inflammatory" allegations were central to the claims that defendants "continually, grossly, and sometimes intentionally mismanaged the Indian trust."  Id.  Indeed, applying the appropriate legal standard, the Court concluded that "it is certain that the plaintiffs' allegations are neither utterly devoid of an evidentiary basis nor utterly impossible to support with admissible evidence,

which is the test for Rule 12(f) "scandalous" material in this jurisdiction." <u>Cobell</u>, 224 F.R.D. at 285.

Here, all of Plaintiffs' allegations relate to the pattern of misconduct that Defendants engaged in <u>after</u> Klayman entered into the Severance Agreement and left Judicial Watch. Defendants' Motion to Strike divided the allegedly "scandalous" material into seven (7) categories. Defs. Mot. To Strike at p. 6. However, the complained of allegations can be summarized and condensed into the following subject matters: 1) Allegations that Fitton Sought to "Entrench" Himself as Head of Judicial Watch to Promote His Personal and/or Political Agenda; 2) Allegations of Mismanagement of Judicial Watch and Dissipation of Assets; 3) Fitton's Alleged "Secret" Purchase of Properties in Belize (as it relates to Judicial Watch funds and activities); 4) Fitton's Misleading Statements About his Educational Background; 5) Greg Mills' and Others Misrepresentations to Donors; and 6) Fitton's Attempts to Remove Directors and Others Loyal to Klayman. <u>See</u> Defs. Mot. to Strike at §B.

Applying the legal standards required by this Court, and virtually every other federal jurisdiction, the aforementioned categories of allegations go directly to heart of Plaintiffs' claims and are not "scandalous." None of the complained of allegations contain offensive or impertinent language. Second Amended Complaint ¶¶ 8, 11, 14, 15, 29, 30, 33, 34, 56, 60, 61, 62, 64, 66, 71, 72, 76, 85, 96, 117, 119, 128, 132, 130, 131, and 140. Indeed, each of the allegations that Defendants highlight in their Motion to Strike are carefully worded and cannot under any standard be deemed "repulsive" or "cruelly derogatory." <u>Id.</u> It is undeniable that the nature of the action is a claim that Judicial Watch and its Directors and Agents engaged in a pattern of misconduct to harm Klayman's interests, including acts to mislead donors after Klayman entered into the Severance Agreement and left Judicial Watch. Each of the allegations in the Complaint relate directly to the complained of misconduct. For example, allegations that

Fitton : 1) "took control" of Judicial Watch, 2) "had a political agenda" and  3) "deliberately mislead donors" relate to whether Fitton engaged in fraudulent and defamatory conduct in breach of the Severance Agreement and in order to harm Klayman and donors after Klayman left Judicial Watch.  It certainly can not be said that the allegations "have no possible bearing on the litigation."   Moreover, the overall nature of Plaintiffs' claim is that Fitton and others engaged in a pattern of conduct to deliberately mislead Klayman and the donors.  Thus, claims regarding mismanagement and dissipation of funds (including the allegation that Fitton secretly purchased properties in Belize potentially with Judicial Watch funds) certainly have a "bearing" on whether Fitton and others mislead Klayman and donors.  Allegations that Fitton lied about his educational background,  and that he, together with Greg Mills, a fund raiser known to have at least a "questionable background," mislead donors are certainly relevant to the overall theme of the litigation claiming breach of contract, fraud and mismanagement.  Finally, Plaintiffs claims that Fitton and others secretly acted to remove persons loyal to Klayman during the severance negotiations goes directly to Fitton's intent to harm Klayman and raises questions over whether the contract should be rescinded.  Thus, under the clear standards of this jurisdiction the complained of allegations can not be stricken; Defendants have done nothing more than highlight allegations that establish the Defendants' pattern of misconduct.

As this Court held in Cobell, allegations concerning "dishonesty and misconduct" that have a bearing on the litigation can not be "scandalous."   Moreover, the complained of allegations pale in comparison to the allegations considered by this Court in  Cobell.   In the instant matter, unlike in Cobell, Plaintiffs have refrained from using colorful and inflammatory language to describe the misconduct, rather Plaintiffs have articulated, with specificity, allegations of misconduct that establish the motive, intent, and depth of the Defendants' dishonest and improper actions.  Under any legal standard, Judicial Watch and its directors are

subject to scrutiny for their conduct.   It is improper for Defendants to move this Court to eliminate Plaintiffs' claims simply because the allegations may offend Defendants.   Additionally, each of Plaintiffs' allegations can be supported by evidence that Plaintiffs possess or that will be revealed through discovery.   Thus, at a minimum, each of the complained of allegations can be supported by discovery and are independently verifiable.   Defendants have failed to meet the test required under Rule 12(f); the allegations can not be said to "have no possible bearing on the litigation," or be "utterly impossible to support with admissible evidence."     Accordingly, Defendants have not set forth allegations that rise to the level of "scandalous" to warrant striking under the Rule 12(f) standards followed by this Court.

### D.    Defendants Improperly Attached Extra-Pleading <u>Hearsay Material That is Irrelevant to this Motion</u>

In their effort to thwart Plaintiffs' ability to have the matter tried on the merits, Defendants rely on attached fundraising letters that Klayman allegedly sent to donors, and include <u>alleged</u> "quotations" from donors that are displeased with Judicial Watch to demonstrate that Judicial Watch has been harmed by the Second Amended Complaint.   Such pleading is irresponsible and prejudicial.   Indeed, Defendants <u>admit</u> in their Motion that a showing of "harm" is <u>not</u> required or relevant to a Rule 12(f) Motion.   Defs. Mot. To Strike at 13 n.1. Moreover, Defendants have inserted unverified, unsupported hearsay as a basis to support their motion when extra-pleading material is not to be considered for purposes of determining whether allegations themselves are "scandalous."   5C Wright and Miller  §1380 at 404 (3d. Ed); <u>Krauss v. Keibler-Thompson Corp.</u> 72 F.R.D. 615 (D.Del 1976).   Given Defendants' admission that the use of such material is not required under Rule 12(f) their improper litigation tactic can only be an attempt to prejudice the trier of fact.   Defendants have provided no case law to support their highly irregular act to attach irrelevant extra pleading material to the Rule 12(f) motion.   Even if

the Court were to consider the material, it does nothing to assist Defendants in establishing that the allegations are "scandalous" as defined by this jurisdiction. Accordingly, Defendants' Motion to Strike must be dismissed.

### E.    Defendants Improperly Moved to Strike Plaintiffs' Claim for Rescission

Defendants' attempt to strike a "claim" is an improper attempt to dismiss a claim that should be the focus of a Motion to Dismiss. Like their attempt to include extra-pleading hearsay, Defendants have cited no case law that would allow this Court to strike an entire claim. A Rule 12 (f) Motion to Strike is not the proper place to argue whether a <u>claim</u> should be dismissed. 5C Wright and Miller §1379 at 391 (3d Ed.). Indeed, Defendants filed two Motions to Dismiss that should have contained this argument.

Beyond the improper practice employed by Defendants, the "merits" of their argument ignore the right of a party to plead in the alternative and to seek equitable relief. Fed. R. Civ. P. 18(a). Plaintiffs' claim for rescission is nothing more than a proper pleading of alternative relief, and an equitable remedy for Defendants' egregious misconduct. Defendants have cited no case law, because none exists, that would curtail a party's ability to plead alternative claims for relief. 35 A C.J.S. Fed. Civ. Pro. § 43. Accordingly, Defendants have failed to provide this Court with a proper motion or case law to support their request to dismiss Plaintiffs' claim for rescission.

//

//

**III.**    <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Strike be denied in its entirety.

<u>Oral Argument is Specifically Requested</u>

In accordance with Local Civil Rule 7, Plaintiff hereby respectfully requests that oral argument be heard on this Motion.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

By: _____*//s// Daniel J. Dugan*_____ (DD 1339)
Daniel J. Dugan, Esquire
1635 Market Street, Seventh Floor
Philadelphia, PA  19103

August 7, 2006                                        215.241.8872/215.241.8844(Fax)
ddugan@lawsgr.com
*Attorneys for Plaintiffs, Larry Klayman and*
*Louise Benson*

Of Counsel:

**SPECTOR GADON & ROSEN, P.C.**
Jason B. Schaeffer, Esquire
1635 Market Street, 7th Floor
Philadelphia, PA 19103
215.241.8887
215.241.8844 *fax*
Email: jschaeffer@lawsgr.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of August, 2006, a true and correct copy of Plaintiffs'

Opposition to Defendants' Motion to Strike was served via electronic filing on the following:

Richard W. Driscoll, Esquire
Driscoll & Seltzer, PLLC
600 Cameron Street
Alexandria, Virginia 22314

Counsel for Defendants

By:   _____ *//s// Daniel J. Dugan*