**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Larry Klayman, *et al.* <br>              *Plaintiffs,* <br><br> v. <br><br> Judicial Watch, Inc., *et al.* <br>              *Defendants.* | Civil Action No. 1:06-CV-00670 <br><br> Honorable Colleen Kollar-Kotelly <br><br><br> **Jury Trial Demanded.** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF ITS OPPOSITION TO DEFENDANTS' MOTION TO SEVER CLAIMS OF
PLAINTIFF BENSON FROM THE CLAIMS OF PLAINTIFF KLAYMAN**

Plaintiffs, Larry Klayman and Louise Benson by counsel, Daniel J. Dugan, Esquire of Spector Gadon & Rosen, P.C., hereby submit this Memorandum of Law in Opposition to Defendants' Motion to Sever Claims of Plaintiff Benson from the Claims of Plaintiff Klayman, (the "Motion to Sever") filed by Defendants, and state as follows:

I. **INTRODUCTION AND FACTUAL BACKGROUND**

A. **Statement of the Case**

This action arises from a series of events that took place after Larry Klayman left Judicial Watch, Inc. ("Judicial Watch") in the hands of Thomas Fitton ("Fitton"). What ensued after the parties entered into the Severance Agreement has amounted to a pattern of fraud and misconduct focused against Klayman and the organization that he founded, Judicial Watch. But for Klayman's desire to run for the United States Senate Klayman still would be involved in Judicial Watch's affairs and the organization would be an active participant in today's political landscape. Second Amended Complaint ¶¶ 1-7. The acts perpetuated against Klayman, in breach of the Severance Agreement, are part of a larger pattern of misconduct that includes acts

against Judicial Watch donors, like Louise Benson, who was defrauded by deliberately false statements concerning the future of Judicial Watch after Klayman departed. This case is not about "rewriting history" as Defendants so eagerly trumpet in their Motions, but rather is about concrete actions taken by Judicial Watch and its Board of Directors to wrongfully remove Klayman as a competitive force and prevent him from protecting the donors and the organization that he created. Plaintiffs' Second Amended Complaint was carefully drafted to recount the pattern of misconduct that ensued when Klayman left the organization – misconduct that has harmed Klayman, Benson and others who were supportive of Klayman.

B.   **Statement of Relevant Facts**

In 2003, a seat in the United States Senate (the "Senate") opened in Klayman's home state of Florida. After representing many Florida citizens in legal matters, Klayman decided that he could be even more effective in his fight against corruption by being elected to the Senate. Though Judicial Watch had become a substantial organization, Klayman believed that the most effective way to effectuate a non-partisan "clean-up" of government was to transition Judicial Watch to a suitable successor while Klayman was elected to the Senate. Klayman intended to take his "Judicial Watch" style of advocacy inside the government, while Judicial Watch continued its work as an independent non-profit organization. Second Amended Complaint ¶¶ 5-7. Accordingly, Klayman decided to enter into severance negotiations with Fitton, then President of Judicial Watch, and the Judicial Watch board members, including Paul Orfanedes ("Orfanedes"), to begin the transition of leadership. Ultimately, Klayman entered into an agreement to depart from Judicial Watch and begin his Senate campaign. (the "Severance Agreement"). Second Amended Complaint ¶7

Shortly before Klayman left Judicial Watch, he discovered that, contrary to representations Fitton made when Klayman hired Fitton, Fitton never obtained his undergraduate

degree. Klayman pressed the issue, and Fitton agreed (a) to obtain his college degree and (b) to continue the process to find a qualified individual with a legal background to lead Judicial Watch, particularly in light of Fitton's lack of qualifications.  Second Amended Complaint ¶8.  Before leaving the organization, Klayman discussed the position with, and interviewed, highly respected and qualified candidates to become Chairman of Judicial Watch. Second Amended Complaint ¶9.  As a condition to his signing the Severance Agreement and stepping down from Judicial Watch, Klayman insisted, and Fitton agreed, to have Judicial Watch hire a qualified person to become Chairman.  Klayman discussed with Fitton possible candidates that were suitable to lead Judicial Watch.  Instead of taking the steps that he promised to find a distinguished and qualified Chairman to run Judicial Watch, Fitton has solely acted to entrench himself as head of Judicial Watch.  Even today there is no Chairman, and Fitton controls Judicial Watch with the approval of Orfanedes and Farrell.  Fitton mislead Klayman and others to promote his personal agenda, interests, and political ideology to the detriment of Judicial Watch, Klayman, and Judicial Watch's donors and supporters.  Indeed, Fitton viewed Klayman's departure as an opportunity to take complete control of the organization to the detriment of Judicial Watch's donors, such as Louise Benson, and employees, including many attorneys and staff that were hired by Klayman.  Second Amended Complaint ¶¶ 10-14.  Since Klayman's departure, Fitton has mismanaged Judicial Watch and closed regional offices or eliminated the staff of the regional offices to the point that the remaining offices are shells that perform virtually no service.  On information and belief, many of the employees were wrongfully terminated by Fitton, for reasons that include age, sex and national origin discrimination. Second Amended Complaint ¶14.

From the time that Klayman stepped down from his posts at Judicial Watch, Fitton, Orfanedes and Farrell, directly and through other agents of Judicial Watch defamed, disparaged

and cast Klayman in a false light to denigrate Klayman, and in an effort to undermine Klayman's ability to return to the helm of Judicial Watch or compete with Judicial Watch in the future. Second Amended Complaint ¶16. Judicial Watch, through Fitton, Orfanedes and Farrell and other agents and representatives engaged in a pattern of misconduct that breached the Severance Agreement and mislead donors, including but not limited to Louise Benson, and the public with their false advertisements, and solicitations and their continued defamation and disparagement of Klayman.

The continued pattern of misconduct is central to the claims asserted on behalf of Klayman and Benson as set forth in the Second Amended Complaint. Among other things, Fitton and Judicial Watch employees and agents concealed information from donors and the public. Second Amended Complaint ¶¶53-59. Fitton and others misrepresented the reasons for Klayman's departure and engaged in a pattern of dishonest conduct disparaging and defamatory conduct by refusing advising people that he did not know where Klayman whereabouts and providing that he left under "questionable" circumstances. Second Amended Complaint ¶37. In connection with this pattern of dishonest and misleading conduct, Fitton and others caused Judicial Watch to cease actively pursuing the purchase of the Building, but concealed that fact from Benson and other similarly situated donors and supporters of Judicial Watch. Second Amended Complaint ¶53. Fitton and Greg Mills deliberately defrauded Benseon and failed to advise her that her money was no longer being used to purchase a building, but rather had been co-mingled into a general operating fund for Fitton's and the others self-dealing purposes. Second Amended Complaint ¶¶56-61. Just as Fitton and others mislead Klayman and the public, they also mislead Benson to believe that Judicial Watch was engaged in efforts to purchase the Building. Thus, the pattern of deceitful conduct is interrelated and directly

associated with Klayman's departure and Fitton's, Orfanedes' and Farrell's alleged attempt to take over Judicial Watch for their own personal gain.

## II.     **LEGAL ARGUMENT**

Defendants' filing of this Motion to Sever, coupled with their Rule 12(f) Motion to Strike evidences an effort simply to delay the proceedings and to thwart Plaintiffs' ability to present their legal arguments to this Court to be heard on the merits.  Indeed, there is no legal basis for Defendants to challenge the joinder of the claims of Benson and Klayman when Plaintiffs' claims arise out of the dishonest pattern of misconduct engaged in by Judicial Watch and its Board of Directors after Klayman announced he was leaving Judicial Watch to run for the United States Senate.  Indeed, the same facts underpin the Plaintiffs' claims – questions concerning false statements by Fitton, Orfanedes, Farrell, and others, misleading mailings to donors, breach of contracts and breach of agreements to honor obligations – that occurred after Klayman left Judicial Watch and were part of a greater pattern to harm Klayman, Benson and others, and take over Judicial Watch for improper self-dealing purposes.

Discovery of the facts will be common to all claims.  Indeed all depositions, interrogatories, requests for production of documents and requests for admissions will overlap and produce evidence to support the necessary proof of Defendants' self-dealing pattern of conduct derived to take over the organization.  The common questions of fact and the interests of judicial economy leave little question that the Benson and Klayman claims should be considered in the same litigation.  The matters are more than logically intertwined, they are linked by the <u>same</u> pattern of self-dealing conduct to take over Judicial Watch and improperly use donor funds. Therefore, Defendants' Motion to Sever must be denied.

### A. Permissive Joinder Of Parties Is Permitted Where Common Set Of Facts And Issues Will Arise In The Action.

Rule 20(a) of the Federal Rules of Civil Procedure provides that plaintiffs may join in an action if claims arise out of the same transaction or occurrence and "if any question of law or fact common to all these persons will arise in the action." In applying Rule 20(a), this Court has held that "[t]he well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits." Disparte v. Corporate Executive Board., 223 F.R.D. 7, 10 (D.D.C. 2004). Rule 20(a) promotes judicial economy by permitting matters to be tried together to "avoid the unnecessary loss of time and money to the court and the parties that the duplicate presentation of evidence" relating to common facts would entail if there were separate matters. 7 Wright and Miller §1652 at 397 (3d. Ed.). Additionally, Rule 20(a) permits joinder of persons "whose presence is procedurally convenient but is not regarded as essential to the court's complete disposition of any particular claims." Id. Moreover, Rule 20(a) expressly provides that a particular "plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded." Fed.R.Civ.P. 20(a). Thus, joinder of two plaintiffs is permitted when the right to relief is asserted against the same defendant for conduct relating to or arising out of the same transaction or occurrence, and some question of law or fact common to all the parties will arise in the action. Id.; 7 Wright and Miller §1653 at 401-402 (3d. Ed.).

To determine if the two prongs of Rule 20(a) are met, this Court follows the following guidelines: 1) determine whether the claims are logically related; and 2) determine if some common question of law or fact exists between plaintiffs' claims. Disparte v. Corporate Executive Board., 223 F.R.D. 7, 10-11 (D.D.C. 2004). In determining whether claims are "logically related," a Court should be flexible and entertain the "broadest possible scope of

action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." Id. at 10.

> B. **Defendants' Motion To Sever Must Be Denied Because Plaintiffs Claims Relate To The Same Pattern Of Misconduct And Logically Address Overlapping Questions Of Fact.**

Plaintiffs' claims alleged in the Second Amended Complaint relate to Defendants' dishonest misconduct that was implemented to achieve the singular goal of taking over Judicial Watch for self-dealing purposes. The various torts and breach of contracts alleged by Plaintiffs occurred from the time Klayman entered into his Severance Agreement and continue to this date. The ongoing pattern of misconduct continues to harm Plaintiffs and the merits of the claims must be addressed. Contrary to Defendants' argument, Rule 20(a) does not require that Benson and Klayman seek the same relief, but rather that Benson and Klayman be harmed by the same conduct and assert claims that overlap in questions of fact. Indeed this Court, in denying a motion to sever, has held that legal authority requires only that a party allege, not prove, a pattern of misconduct. Id. at 15-16. As alleged, Plaintiffs' claims provide that Defendants engaged in a common pattern of misstatements and intended to deceive and defraud Plaintiffs in order to further their self-dealing and to harm others.

> C. **It Is a Waste of the Parties' and Judicial Resources to Sever the Claims.**

Plaintiffs will be deposing the same individuals, asking many of the same questions, and producing the same evidence at trial to establish their right to relief. Indeed, the same witnesses will be called at trial to prove the pattern of Defendants' misconduct. The questions of whether Fitton, Orfanedes, and Farrell mislead Klayman, donors, and the public in order to take over Judicial Watch and misuse funds is central to all claims. It not only establishes elements of both parties' breach of contract claims, but also establishes Defendants' dishonest and deliberate intent to defraud and harm Plaintiffs. It would be a waste of judicial resources to require two

Judges to adjudicate the common questions presented by Plaintiffs. The policy goals of permissive joinder apply directly to this case – joinder of Plaintiffs' claims will minimize expense and expedite resolution of the suit. <u>Disparte</u>, 223 F.R.D. at 16. Moreover, if this Court were to sever the claims and order separate trials, judicial economy would suffer because of the overlap in evidence to establish the pattern of conduct. <u>Id.</u>

Defendants argue that two cases would avoid prejudicing Defendants, however, other than to delay justice, it makes little sense for Defendants to seek to sever the claims and fight the matter on two fronts when the same discovery must take place in both actions. Any prejudice to Defendants would be minimal and, if necessary, could be addressed by carefully worded jury instructions identifying that each claim "should be considered separately and should rise and fall on the evidence with respect to that plaintiff." <u>Disparte</u>, 223 F.R.D. at 12. Moreover, Defendants' only articulated "prejudice" is the "added expense" which is not logical given that the economies' of scale reduce expense when matters are consolidated. Defs. Mot. To Sever at 7. Accordingly, this Court should respectfully dismiss Defendants' Motion to Sever Plaintiffs' Claims because to do so would not only waste valuable Court resources, but the parties' resources as well.

//

//

III. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Sever be denied in its entirety.

**Oral Argument is Specifically Requested**

In accordance with Local Civil Rule 7, Plaintiff hereby respectfully requests that oral argument be heard on this Motion.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

By: ___//s// *Daniel J. Dugan*___ (DD 1339)
    Daniel J. Dugan, Esquire
    1635 Market Street, Seventh Floor
    Philadelphia, PA  19103

August 7, 2006
    215.241.8872/215.241.8844(Fax)
    ddugan@lawsgr.com
    *Attorneys for Plaintiffs, Larry Klayman and Louise Benson*

Of Counsel:

**SPECTOR GADON & ROSEN, P.C.**
Jason B. Schaeffer, Esquire
1635 Market Street, 7th Floor
Philadelphia, PA 19103
215.241.8887
215.241.8844 *fax*
Email: jschaeffer@lawsgr.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of August, 2006, a true and correct copy of Plaintiffs' Opposition to Defendants' Motion to Sever was served via electronic filing on the following:

>Richard W. Driscoll, Esquire
>Driscoll & Seltzer, PLLC
>600 Cameron Street
>Alexandria, Virginia 22314
>
>Counsel for Defendants

By: ___//s// *Daniel J. Dugan*___