**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | | |
|---|---|---|
| Larry Klayman, *et al.* | : | |
| *Plaintiffs,* | : | Civil Action No. 1:06-CV-00670 |
| | : | |
| | : | Honorable Colleen Kollar-Kotelly |
| v. | : | |
| | : | |
| Judicial Watch, Inc., *et al.* | : | |
| *Defendants.* | : | |
| | : | **Jury Trial Demanded.** |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
PAUL ORFANEDES AND CHRISTOPHER FARRELL'S MOTION TO
DISMISS COUNTS IV, V, and IX  OF THE COMPLAINT**

Plaintiffs, Larry Klayman and Louise Benson by counsel, Daniel J. Dugan, Esquire of

Spector Gadon & Rosen, P.C., hereby submit this memorandum of law in opposition to the

Defendants Paul Orfanedes and Christopher Farrell's Motion to Dismiss Counts IV, V, and IX of

the Second Amended Complaint (the "Motion to Dismiss") filed by defendants, and state as

follows:

**I.     INTRODUCTION AND FACTUAL BACKGROUND**

    **A.     Statement of the Case**

This action arises from a series of events that took place after Larry Klayman left Judicial

Watch, Inc. ("Judicial Watch") in the hands of Thomas Fitton ("Fitton").  What ensued after the

parties entered into the Severance Agreement has amounted to a pattern of fraud and misconduct

focused against Klayman and the organization that he founded, Judicial Watch.   But for

Klayman's desire to run for the United States Senate Klayman still would be involved in Judicial

Watch's affairs and the organization would be an active participant in today's political

landscape.   Second Amended Complaint ¶¶ 1-7.  The acts perpetuated against Klayman, in

breach of the Severance Agreement, are part of a larger pattern of misconduct that includes acts

against Judicial Watch donors, like Louise Benson, who was defrauded by deliberately false statements concerning the future of Judicial Watch after Klayman departed. This case is not about "rewriting history" as Defendants so eagerly trumpet in their Motions, but rather is about concrete actions taken by Judicial Watch and its Board of Directors to wrongfully remove Klayman as a competitive force and prevent him from protecting the donors and the organization that he created. Plaintiffs' Second Amended Complaint was carefully drafted to recount the pattern of misconduct that ensued when Klayman left the organization – misconduct that has harmed Klayman, Benson and others who were supportive of Klayman.

**B.    Statement of Relevant Facts**

In 2003, a seat in the United States Senate (the "Senate") opened in Klayman's home state of Florida. After representing many Florida citizens in legal matters, Klayman decided that he could be even more effective in his fight against corruption by being elected to the Senate. Though Judicial Watch had become a substantial organization, Klayman believed that the most effective way to effectuate a non-partisan "clean-up" of government was to transition Judicial Watch to a suitable successor while Klayman was elected to the Senate. Klayman intended to take his "Judicial Watch" style of advocacy inside the government, while Judicial Watch continued its work as an independent non-profit organization. Second Amended Complaint ¶¶ 5-7. Accordingly, Klayman decided to enter into severance negotiations with Fitton, then President of Judicial Watch, and the Judicial Watch board members, including Paul Orfanedes ("Orfanedes"), to begin the transition of leadership. Ultimately, Klayman entered into an agreement to depart from Judicial Watch and begin his Senate campaign. (the "Severance Agreement"). Second Amended Complaint ¶ 7

Shortly before Klayman left Judicial Watch, he discovered that, contrary to representations Fitton made when Klayman hired Fitton, Fitton never obtained his undergraduate

degree. Klayman pressed the issue, and Fitton agreed (a) to obtain his college degree and (b) to

continue the process to find a qualified individual with a legal background to lead Judicial

Watch, particularly in light of Fitton's lack of qualifications.  Second Amended Complaint ¶ 8.

Before leaving the organization, Klayman discussed the position with, and interviewed, highly

respected and qualified candidates to become Chairman of Judicial Watch. Second Amended

Complaint ¶ 9.  As a condition to his signing the Severance Agreement and stepping down from

Judicial Watch, Klayman insisted, and Fitton agreed, to have Judicial Watch hire a qualified

person to become Chairman.  Klayman discussed with Fitton possible candidates that were

suitable to lead Judicial Watch.  Instead of taking the steps that he promised to find a

distinguished and qualified Chairman to run Judicial Watch, Fitton has solely acted to entrench

himself as head of Judicial Watch.  Even today there is no Chairman, and Fitton controls Judicial

Watch with the approval of Orfanedes and Farrell.  Fitton mislead Klayman and others to

promote his personal agenda, interests, and political ideology to the detriment of Judicial Watch,

Klayman, and Judicial Watch's donors and supporters.  Indeed, Fitton viewed Klayman's

departure as an opportunity to take complete control of the organization to the detriment of

Judicial Watch's donors, such as Louise Benson, and employees, including many attorneys and

staff that were hired by Klayman.  Second Amended Complaint ¶¶ 10-14.  Since Klayman's

departure, Fitton has mismanaged Judicial Watch and closed regional offices or eliminated the

staff of the regional offices to the point that the remaining offices are shells that perform virtually

no service.  On information and belief, many of the employees were wrongfully terminated by

Fitton, for reasons that include age, sex and national origin discrimination. Second Amended

Complaint ¶ 14.

From the time that Klayman stepped down from his posts at Judicial Watch, Fitton,

Orfanedes and Farrell, directly and through other agents of Judicial Watch defamed, disparaged

and cast Klayman in a false light to denigrate Klayman, and in an effort to undermine Klayman's

ability to return to the helm of Judicial Watch or compete with Judicial Watch in the future.

Second Amended Complaint ¶ 16. Judicial Watch, through Fitton, Orfanedes and Farrell and

other agents and representatives engaged in a pattern of misconduct that breached the Severance

Agreement and mislead donors, including but not limited to Louise Benson, and the public with

their false advertisements, and solicitations and their continued defamation and disparagement of

Klayman. The continued pattern of misconduct is central to the claims asserted on behalf of

Klayman and Benson as set forth in the Second Amended Complaint.

## II.    **LEGAL ARGUMENT**

Paul Orfanedes ("Orfanedes") and Christopher Farrell ("Farrell") (collectively

"Defendants"), have presented a motion to dismiss Counts IV, V, and IX of Plaintiffs' Second

Amended Complaint for failure to sufficiently plead claims against Orfanedes and Farrell

individually. Contrary to the applicable case law, Defendants request the Court to ignore the

pleadings and address legal and factual issues at this stage in the litigation. Defendants attack

the specificity and artfulness of Plaintiffs' pleading which is not a ground to dismiss a claim

under the liberal Federal pleading standards. Indeed, under the pleading standards, Defendants

are on notice of the alleged claims; whether Plaintiffs' can prove the allegations is not a proper

basis to dismiss claims at this stage in the litigation.[1] Defendants' have not challenged whether

the "elements" of the claims have been sufficiently plead but rather whether "Orfanedes and

Farrell" have been sufficiently accused of "individual" behavior to warrant prosecution. As

acknowledged by Defendants, a plain reading of the Second Amended Complaint identifies that

---

[1] Defendants' Motion invites Plaintiffs to plead with more specificity, a requirement that is not required under the Federal Rules of Civil Procedure. If Plaintiffs allegations are taken as true, as they should be for purposes of this Motion, then there is no question that Defendants have been provided fair notice of the claim. 35A C.J.S. Fed. Civ. Pro. §301 (2006).

Plaintiffs accuse Fitton, Orfanedes and Farrell of individual conduct. Thus, the fact that

"Orfanedes and Farrell" were "added" to the Second Amended Complaint as named parties is a

non-sequitur – they are named throughout the allegations, and thus their individual conduct has

been sufficiently plead. Accordingly, Defendants' Motion to Dismiss must be denied.

> ### A.    Applicable Legal  Standards

> #### 1)    Rule 12(b) Standard of Review and the Simplified Pleading Standard of Rule 8(a)

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is strictly limited

to a test of the sufficiency of the plaintiff's complaint. See Edwards v. City of Goldsboro, 178

F.3d 231, 243 (4th Cir. 1999). Accordingly, "a 12(b) (6) motion ought not to be granted unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Dowley v. Dewey Ballantine, LLP, 2006 U.S. Dist. LEXIS 23304,

*6 (D.C. 2006)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "[A] plaintiff's complaint

need only satisfy the simplified pleading standard of Rule 8(a)." Id.; Swierkiewicz v. Sorema

N.A., 534 U.S. 506, 513 (2002), that requires a "short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In fact, the simplified pleading

requirements require the Court not to dismiss "a complaint for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Williams v. New Castle County, 970 F.2d 1260, 1266 (3rd Cir.

1992)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

In its determination, the district court must consider all well-pled allegations in a

complaint as true, Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe all factual

allegations in the light most favorable to the plaintiff. Jordan Keys v. St. Paul Fire and Marine

Ins. Co., 870 A.2d 58 (D.C. 2005); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776,

783 (4th Cir. 1999). Further, "[T]he court must disregard the contrary allegations of the

opposing party," <u>Jordan v. Alternative Res. Corp.</u>, 2005 U.S. Dist. LEXIS 2759 at *7, and

"[w]hen presented with a motion to dismiss for failure to state a claim, the court's function is

merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence

which might be offered in support thereof."  <u>Perry v. Vanteon Corp.</u>, 192 F.Supp.2d 93, 97

(W.D.N.Y. 2002).

        2)       <u>Individual Directors' Liability for Actions and Corporate Acts</u>

Defendants are correct that a corporate officer may be liable for his individual actions.

<u>Lawlor v. District of Columbia</u>, 758 A.2d 964, 976-977 (D.D.C 2000).  However, this

jurisdiction has long recognized that corporate officers "are personally liable for torts which they

commit, participate in, or inspire, even thought the acts are performed in the name of the

corporation." <u>Id.</u>, at 974 (<u>citing</u> <u>Vutich v. Furr</u>, 482 A.2d 811, 821 (D.D.C. 1984)).  Indeed, a

corporate officer may also be individually liable for an "act or omission by the officer that

logically leads to the inference that he had a share in the wrongful acts of the corporation which

constitute the offense." <u>Id.</u>   Moreover, a corporation acts through its officers and directors, thus,

liability may also attach to an individual "if the acts were done within the officer's area of

affirmative official responsibility and with the officer's consent or approval." <u>Camacho v. 1440</u>

<u>Rhode Island Ave.</u>, 620 A.2d 242, 247 (D.D.C. 1993).  The fact that actions were done "in the

name of the corporation" will not absolve directors and officers of liability.  <u>Lawlor</u>, 758 A.2d at

976; <u>See</u> <u>also,</u> <u>Polo Fashions, Inc. v. Craftex, Inc.</u>, 816 F.2d 145, 149 (4th Cir. 1987)(holding that

corporate officers may be liable for conduct even though the acts were committed primarily for

the benefit of the corporation.).

**B.**    **Plaintiffs Have Properly Stated Claims Against Orfanedes and Farrell So That The Court Must Deny Their Motion To Dismiss Counts IV, V and IX.**

Applying the above legal principles to the facts of this case, Defendants' Motion to

Dismiss Counts IV, V, and IX of the Second Amended Complaint as to Orfanedes and Farrell,

for failure to state a claim must be denied because: (1) under the simplified pleading

requirements of Rule 8(a) Defendants Orfanedes and Farrell have been placed on fair notice that

they are alleged to have committed, participated in, or inspired the complained of acts; (2) the

issue of whether Orfanedes and Farrell individually participated and are responsible for the

alleged wrongdoing is a question of fact and, therefore, not disposable under the Motion; and (3)

under the standards for a Rule 12(b) Motion, accepting Plaintiffs' allegations as true, there is no

question that Orfanedes and Farrell are identified as individual actors and participated in and

were aware of and approved the alleged misconduct.

Defendants concede, as they must for purposes of this Motion under Rule 12(b)(6), that

the allegations in the Compliant state that Orfanedes and Farrell are individually alleged as

participants in the misconduct. (Second Amended Complaint, ¶¶ 7, 103, 104, 107, 149, 150,

155, 157, 158, 159, 161). However, Defendants argue that, while they understand that Orfanedes

and Farrell are implicated for their individual conduct, the pleading is deficient because although

named individually for particular conduct (See ¶¶ identified above), they have not been separated

out from the allegations against Judicial Watch and Fitton. Defendants' insistence that the

claims must only identify behavior unique to Orfanedes and Farrell is contrary to the simple

pleading requirements of Rule 8(a). Defendants have cited no authority that requires Plaintiffs to

plead Orfanedes and Farrell' individual conduct with any more specificity. For the purposes of

the pleading and this Motion, Defendants' must concede that they are on fair notice that

Plaintiffs allege that Orfanedes and Farrell either "committed, participated in, or inspired," the misconduct even though the acts were performed "for" Judicial Watch.

Furthermore, this jurisdiction has long recognized that corporate officers "are personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation." Id., at 974 (citing Vutich v. Furr, 482 A.2d 811, 821 (D.D.C. 1984)). Whether Farrell or Orfanedes, "committed, participated in, or inspired" Judicial Watch's acts in violation of: 1) the Lanham Act by misuing Klayman's name and image (Count IV); 2) Florida Statute 540.08 by the unauthorized publication of Klayman's name and image (Count V); or 3) Klayman's individual rights by disparaging and defaming Klayman (Count IX) are questions of fact that can not be determined at this stage in the litigation. The fact that Orfanedes and Farrell argue in their Motion that they do not believe the allegations prove their individual liability must be ignored for purposes of this Motion. Indeed, the allegations specifically identify Orfanedes and Farrell as direct actors by the following descriptive terms stating that Orfanedes and Farrell: "deliberately used" (Second Amended Complaint at ¶103); participated in "false portrayal" (Second Amended Complaint at ¶104); "knew" (Second Amended Complaint at ¶111); "defamed and published" (Second Amended Complaint at ¶149 and 150); "told" (Second Amended Complaint at ¶157); "published" (Second Amended Complaint at ¶158); and "lied" (Second Amended Complaint at ¶159). Simply because it is also alleged that others and the company participated in the same acts is not a recognized basis to dismiss the claims. Lawlor, 758 A.2d at 976; See also Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. 1987)(holding that corporate officers may be liable for conduct even though the acts were committed primarily for the benefit of the corporation.). Orfanedes and Farrell can not hide behind the corporation to avoid liability. Whether they were sufficient participants in the

misconduct is a question of fact that cannot be decided at this stage of the litigation.

Accordingly, Defendants' Motion to Dismiss claims as to Orfanedes and Farrell must be denied.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to

Dismiss Counts IV, V, and IX of the Second Amended Complaint as to Orfanedes and Farrell

must be denied in its entirety.

<u>Oral Argument is Specifically Requested</u>

In accordance with Local Civil Rule 7, Plaintiff hereby respectfully requests that oral

argument be heard on this Motion.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

By: ____ //s// *Daniel J. Dugan* ____ (DD 1339)
     Daniel J. Dugan, Esquire
     1635 Market Street, Seventh Floor
     Philadelphia, PA  19103
August 7, 2006              215.241.8872/215.241.8844(Fax)
     ddugan@lawsgr.com
     *Attorneys for Plaintiffs, Larry Klayman and*
     *Louise Benson*

Of Counsel:

**SPECTOR GADON & ROSEN, P.C.**
Jason B. Schaeffer, Esquire
1635 Market Street, 7th Floor
Philadelphia, PA 19103
215.241.8887
215.241.8844 *fax*
Email: jschaeffer@lawsgr.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of August, 2006, a true and correct copy of Plaintiffs'

Opposition to Defendants' Orfanedes' and Farrell's Motion To Dismiss was served via electronic

filing on the following:

Richard W. Driscoll, Esquire
Driscoll & Seltzer, PLLC
600 Cameron Street
Alexandria, Virginia 22314

Counsel for Defendants

By:    //s// *Daniel J. Dugan*