IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, *ET AL.* | |
| Plaintiffs, | |
| v. | Civil Action No. 1:06-CV-00670 |
| | Honorable Colleen Kollar-Kotelly |
| JUDICIAL WATCH, INC., *ET AL.* | |
| Defendants. | |

**REPLY MEMORANDUM OF DEFENDANTS JUDICIAL WATCH, INC.
AND THOMAS J. FITTON IN SUPPORT OF THEIR
<u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

Defendants Judicial Watch, Inc. ("Judicial Watch") and Thomas J. Fitton ("Fitton"), by undersigned counsel, hereby submit this Joint Reply Memorandum in support of their Motions to Dismiss Second Amended Complaint filed by Plaintiffs Larry Klayman ("Klayman") and Louise Benson ("Benson").

<u>**PRELIMINARY STATEMENT**</u>

Pursuant to the Minute Entry Order, dated July 28, 2006 (Docket # 20), this Court granted the Consent Motion for Extension of All Deadlines, which set August 7, 2006 as the deadline for Plaintiffs to answer or otherwise respond to Defendants' Motions and Counterclaims. Further, the Court expressly warned the parties that there would be "NO FURTHER EXTENSIONS". Notwithstanding the several extensions of time and the Court's warning, Plaintiffs failed to file their Memorandum of Law in Support of their Opposition to Defendants' Motion to Dismiss Counts I, II, III, IV, V, VI and IX of the Complaint (Docket # 25) until August 8, 2006. Having failed to timely oppose Defendants' Motion to Dismiss, Plaintiffs' Opposition Memorandum should be disregarded.

**ARGUMENT**

**I.  BENSON'S SECOND AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED**.

    A.    <u>BENSON CANNOT STATE A CLAIM FOR FRAUDULENT MISREPRESENTATION</u>

Benson concedes that to state a claim for fraudulent misrepresentation, she must have detrimentally relied on a false representation. However, as a matter of law, her position regarding the fraudulent misrepresentations made by Judicial Watch and Fitton can not form the basis of a claim for fraudulent misrepresentation. Benson admits that representations she relied on to make her $50,000 pledge and $15,000 contribution were true and her claim is not based upon those statements. Instead, she alleges that there was detrimental reliance on statements that were made after she made her pledge and donation. Opposition, p. 8 ("the statements relied on by Benson occurred after Klayman separated from Judicial Watch and caused Benson and others to not seek return of the building donations"). Benson's detriment was not that she made the pledge and donation, but that she did not ask for her money back. Therefore, as a matter of law, Benson fails to allege a causal nexus between the alleged misrepresentation and her $15,000 donation. Indeed, the harm resulting from the putative misrepresentation is merely a delay in the timing of her request for a refund.[1] Without an allegation of legal harm, the law does not recognize a mere delay as the basis for fraudulent misrepresentation.

Benson does not, and can not, point to any representation by the Defendants setting a deadline for Judicial Watch to purchase a headquarters building. Ignoring the reality and complexity of such a purchase, Plaintiffs argue that the lack of a deadline is an invitation to deception. This

---

1    Defendants note that there is no allegation that Benson ever requested a refund of her

argument is not supported by case law, statute or treatise. Moreover, it completely ignores the very nature of such a long term fundraising effort.

    B.  <u>BENSON CANNOT STATE A CLAIM FOR BREACH OF CONTRACT</u>

In an amusing interpretation of the English language, Benson contends that her contributions and donations were not gifts. Opposition, pp. 8-11. As support for this assertion, Benson erroneously relies on <u>Murray v. Gadsden</u>, 91 U.S. App. D.C. 38, 49, 197 F.2d 194, 205 (1952), where funds deposited into a joint account were held to not be a gift because the donor retained dominance over the balance. In this case, no such retention of dominance is alleged. Instead, all references to Benson's contribution demonstrate that it was a gift to Judicial Watch, as follows: "making a pledge for $50,000" (Second Amended Complaint,[2] ¶ 51); "Benson and other similarly situated donors" (¶¶ 53, 70, 74); "Benson and other donors" (¶¶ 55, 57); "donors" (¶¶ 58, 59, 84); "her donation" (¶ 60); "Benson contributed funds" (¶ 69); "Benson and the other 3,864 donors who gave money" (¶ 76); "Benson contributed funds" (¶ 80); and "contribution" (¶ 88).

Benson's donation to Judicial Watch can only be a gift. A donor is one who gives a donation. The term donation is defined, in relevant part, as "the action of making a gratuitous gift or free contribution especially to a charity, humanitarian cause, or public institution or utility". *Webster's Third New International Dictionary, Unabridged* (Merriam-Webster, 2002). As alleged by Benson, she intended to give money to the building fund (¶ 51) and did deliver $15,000 of her $50,000 pledge to Judicial Watch (¶¶ 51, 70). Further, there is no allegation of fact to infer that the delivery of Benson's donation to Judicial Watch was under circumstances indicating a retention of dominance over the funds. On the contrary, the delivery was an absolute disposition transferring

---

donation.

title to Judicial Watch, which is not subject to a claim for breach of contract.

To the extent that this Court deems that a contract may exist, Benson can not plead a breach of contract because there is no deadline by which Judicial Watch must purchase a building and the alleged obligation to confer naming rights to Benson can not be fulfilled until a building is purchased. Moreover, Benson has not vested any right in this alleged promise because she materially breached the contract by failing to complete 70% of her pledge obligation. Essentially, Benson is complaining that the purchase of a headquarters building is taking too long for her liking. However, the law does not confer upon a donor the right to make a gift only to alter the terms of the gift at a later time.

    C.    PLAINTIFF BENSON FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Benson's Opposition fails to identify any allegation of fact showing circumstances that in good conscience would require Judicial Watch to make restitution for her voluntary services or gifts. On the contrary, to recognize Benson's claim would subject non-profit organizations that rely on volunteer service to the risk of endless lawsuits by volunteers who change their minds and seek payment after offering their services for free. As a matter of law, such circumstances fail to establish a claim for unjust enrichment. To find otherwise would amount to a "forced exchange". News World Communications, Inc. v. Thompsen, 878 A.2d 1218, 1226 (D.C. 2005).

**II.    KLAYMAN'S SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED FOR VIOLATION OF THE LANHAM ACT OR UNAUTHORIZED PUBLICATION OF NAME**

Klayman mistakes his allegation of celebrity status with the standing requirement that he allege a significant and uniquely exploitable commercial or economic value in his name to assert a

---

2    All references to the Second Amended Complaint are designated as "¶ __".

claim under § 43(a) of the Lanham Act. Mere celebrity status is not synonymous with an economic interest similar to that of a trademark holder in controlling the commercial exploitation of his identity. Kournikova v. General Media Communications, Inc., 278 F. Supp.2d 1111, 1119-1120 (C.D. Calif. 2003) (citing Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1110 (9th Cir. 1992), *cert. denied* 506 U.S. 1080, 122 L. Ed.2d 355, 13 S.Ct. 1047 (1993)).

### III. KLAYMAN'S SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED FOR VIOLATION OF FLORIDA STATUTE 540.08 BECAUSE THE STATUTE OF LIMITATIONS PREVIOUSLY EXPIRED

Klayman erroneously contends that in light of a false conflict, Florida's statute of limitations, and not the District of Columbia's, applies to his claim based on Florida Statute 540.08. Klayman's reference to a "false conflict" is not relevant. First, the alleged misuse of name and likeness are related to the respective rights of the parties under the Separation Agreement and requires application of District of Columbia law pursuant to the choice of law provision. Indeed, Klayman expressly alleges that his claims of disparagement, defamation and false light arise from the Severance Agreement. ¶¶ 118-119. Having expressly alleged such a relationship, it is patently frivolous for Klayman to assert that Florida law governs his claims. Second, even in the absence of a choice of law provision in the Severance Agreement, the District of Columbia applies its own statutes of limitations. Therefore, the claim is untimely and must be dismissed.

A federal court sitting in diversity must apply state law to the substantive issues before it. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938). In this regard, statutes of limitations are substantive and a federal court sitting in diversity applies state law to determine whether a cause of action has expired. In determining which state's limitation period applies, the federal court looks to the choice-of-law rules of the state in which it sits. Klaxon Co. v. Stentor

Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S. Ct. 1020 (1941). In the District of Columbia, statutes of limitations are deemed procedural and the District's own statutes of limitations apply to diversity actions. A.I. Trade Finance, Inc. v. Petra International Banking Corporation, 62 F.3d 1454, 1458 (D.C. Cir. 1995) (*citing* Namerdy v. Generalcar, 217 A.2d 109, 113 (D.C. App. 1966)).

As previously noted, a claim involving misappropriation of name and likeness is recognized by the District of Columbia as subject to a 1-year statute of limitations for libel and slander. Mittleman v. United States, 104 F.3d 410, 415 (D.C. Cir. 1997) (finding claim of false light invasion of privacy to be governed by one year limitation period); Grunseth v. Marriott Corp., 872 F. Supp. 1069, 1074 (D.D.C. 1995) (applying one-year defamation statute to invasion of privacy claim as "essentially a type of defamation"); see also D.C. Code, § 12-301. Therefore, Klayman had to file his statutory claim for alleged misappropriation on or before November 1, 2004. Having failed to do so, the claim is time-barred.

### IV.    KLAYMAN'S SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED FOR DEFAMATION[3]

Defendants note that Klayman does not contest the application of District of Columbia law and relies upon such law in his argument.

####    A.    KLAYMAN'S DEFAMATION CLAIM MUST BE DISMISSED BECAUSE STATEMENTS CONTAINED IN A NON-PROFIT ENTITY'S IRS FORM 990 ARE ABSOLUTELY PRIVILEGED.

Klayman acknowledges that Judicial Watch, as 501(c)(3) nonprofit organization, is required to file its Form 990 returns with the Internal Revenue Service ("IRS"), and make the return publicly

---

3    Although Klayman does not assert that choice of law principles favor Florida law, he does cite to one Florida case as support for his description of the elements of defamation. However, Klayman does acknowledge that District of Columbia law will apply. Opposition, p. 18 fn.1. With the exception of the Florida case cited for the elements of defamation, Klayman makes no other

available. Opposition, p. 19. In addition, Klayman concedes that applicable regulations require that a tax-exempt organization *shall* make its annual returns available for public inspection. Id.; see also 26 C.F.R. § 301.6104(d)-1(a). Further, Klayman agrees that regulations afford a nonprofit entity several options for making the tax return available for public inspection, including publication on the entity's website. Opposition, p. 19; see also 26 C.F.R. ¶ 301.6104(d)-2(b)(2). Notwithstanding these concessions, Klayman erroneously asserts that Judicial Watch's posting of its FY 2003 and FY 2004 returns on its website was "voluntary and broad". Opposition, p. 19. Contrary to this assertion, Judicial Watch merely complied with its legal obligation and is now immune from a defamation claim based on the contents of the Form 990 returns.

Klayman's Opposition makes clear that submittal of the Form 990 return to the IRS is not the basis of his claim. Id. In essence, Klayman contends that he is entitled to pursue a defamation claim because Judicial Watch availed itself of a publication method to the public that is not acceptable to him, even though it is expressly permitted by applicable regulations. Klayman's position ignores the legal requirement that Judicial Watch must make the return available to the public. The method of publication is not relevant, provided Judicial Watch employs one of the methods set forth in the regulations. When it does so, the content of the return falls within the safe harbor provided by Restatement (Second) of Torts § 592A: "One who is required by law to publish defamatory matter is absolutely privileged to publish it." See also Goggins v. Hoddes, 265 A.2d 302, 303 (D.C. 1970) (report to District Unemployment Compensation Board was "absolutely privileged and [could] not form the basis of an action for libel" because employer's submittal was required by law).

  B. KLAYMAN'S DEFAMATION CLAIM MUST BE DISMISSED BECAUSE STATEMENTS MADE TO EMPLOYEES AND THE PRESS CONSITUTE FAIR

---

reference to Florida law and relies entirely on District of Columbia law to support his positions.

COMMENT ON A MATTER OF PUBLIC CONCERN.

All parties agree that statements of opinion relating to matters of public concern, which do not contain provably false factual connotations, are entitled to full constitutional protection. Opposition, pp. 21-22; see also Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S. Ct. 2695, 2707-08 (1990) (stating that First Amendment provides protection for "statements that cannot reasonably [be] interpreted as stating actual facts about an individual"); Sigal Construction Corp. v. Stanbury, 586 A.2d 1204, 1210 (D.C. 1991) (stating that allowance must be made for "'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation"). Where the parties separate is in their positions regarding what is a statement of opinion.

Defendants' statements, whether to the media or to Judicial Watch employees, regarding a perceived motive for Klayman's lawsuit falls within the constitutional protection afforded to expressions of opinion regarding a matter of public concern.[4] The public nature of this dispute is well documented by Klayman and Judicial Watch. Klayman should not be permitted to fuel the public's appetite for information and comment, only to pounce on the Defendants when they respond to Plaintiffs' assertions by expressing their view regarding his motives. Such statements are perceived by all, except Klayman, as mere opinion and not as statements of fact. In this regard, the law must acknowledge the context in which the statements are made and recognize them for what they are – nothing more than imaginative expression. Fair comment of this nature and in this context must be guarded by privilege or Constitutional rights are implicated.

---

4   Klayman references allegations made in ¶¶ 66(J) regarding defamatory statements made to former clients. Opposition, p. 22. However, unsupported inferences or legal conclusions may not be considered on a motion to dismiss without factual allegations to support. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Volpone v. Caldera, 190 F.R.D. 177, 180 (E.D. Va. 1999) (finding that a Court need not accept unsupported, conclusory

      C.      <u>KLAYMAN'S DEFMATION CLAIM MUST BE DISMISSED BECAUSE THE ALLEGED PUBLICATION OF QUOTATIONS ON JUDICIAL WATCH'S WEBSITE NEITHER DEFAME NOR CONCERN KLAYMAN</u>.

It is utterly inconceivable that complimentary quotations taken from newspapers can ever be deemed defamatory as alleged in ¶ 65. Klayman agrees that a defamatory statement must tend to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community. Opposition, p. 23. He further agrees that to qualify as defamatory, the alleged statement "must make the plaintiffs appear 'odious, infamous, or ridiculous.'" <u>Id.</u>; <u>see also</u> <u>Howard University v. Best</u>, 484 A.2d 958, 989 (D.C. App. 1984) (quoting <u>Johnson v. Johnson Publishing Co.</u>, 271 A.2d 696, 697 (D.C. 1970)). What Klayman completely fails to do is explain in any comprehensible manner how such quotations make him appear "odious, infamous, or ridiculous". Indeed, the quotations do not mention Klayman or express any negative sentiment toward him whatsoever. Any claim of defamation based on ¶ 65 is patently frivolous.

**IV.   KLAYMAN'S SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED FOR RESCISSION**

Klayman's Opposition completely ignores the requirement for seeking an equitable remedy, namely, that he lacks an adequate remedy at law. Moreover, Klayman has not alleged that he offered to return the $600,000.00 in compensation received under the Separation Agreement, or that he is capable of returning such an amount. Therefore, Count VI must be dismissed.

<u>**CONCLUSION**</u>

WHEREFORE, for all of the forgoing reasons, Defendants Judicial Watch, Inc. and Thomas J. Fitton respectfully request that the Court GRANT their Motion and dismiss Counts One through Six and Nine of the Second Amended Complaint with prejudice.

---

allegations).

        Respectfully submitted,

        //s// *Richard W. Driscoll*
        _____
        Richard W. Driscoll (436471)
        DRISCOLL & SELTZER, PLLC
        600 Cameron Street
        Alexandria, Virginia 22314
        703.340.1625 Telephone
        703.997.4892 Facsimile
        Email: rdriscoll@driscollseltzer.com
        *Counsel for Defendants Judicial Watch, Inc.,*
        *Thomas J. Fitton, Paul J. Orfanedes and*
        *Christopher J. Farrell*

Dated: September 1, 2006