**EXHIBIT C**

RF # 030923040879

**Judicial Watch**™

*Because no one is above the law!*

September 23, 2003

VIA FACSIMILE

(877) 329-7275

Private Client Services
First Union/Wachovia

Re: Wire transfer to Jordan Coyne & Savits, LLP.

To Whom It May Concern:

Please process the following wire transfer immediately. Once complete, please
acknowledge the transfer to Stephen Wilson at (202) 646-5179.

Please call me at (202) 646-5163 or Paul Orfanedes at (202) 646-5165 should you need
any further authorization or have any questions.

Transfer From:    First Union/Wachovia Operating Account *check 019827*
                  Judicial Watch, Inc.   *Recorded/ faxd via A/P check VOIDED*
Account #:
ABA #:            054001220      *$200,000.00 — Payout check 1285*
Amount:           $455,445.87    *255,445.87 — Payroll check 1284*

Transfer To:      Sun Trust
Account Name:     Jordan Coyne & Savits, LLP. Attorney Trust Account #1
Account #:
ABA #:            054000522

Thank you for your attention in this matter.

Sincerely,

Thomas Fitton
President, Judicial Watch

501 School Street, SW • Suite 500 • Washington, DC 20024 • Tel: (202) 646-5172 • (888) JW-ETHIC
Fax: (202) 646-5199 • email: info@judicialwatch.org • Web Site: www.JudicialWatch.org

19827

| OUR REF. NO. | YOUR INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | AMOUNT PAID | DISCOUNT TAKEN | NET CHECK AMOUNT |
|---|---|---|---|---|---|---|
| 009901 | Wire Per Agrmnt | 9/23/2003 | 200000.00 | 200000.00 | 0.00 | 200000.00 |

**JUDICIAL WATCH**
507 SCHOOL ST. SW
SUITE 500
WASHINGTON DC 20024

FIRST UNION NATIONAL BANK

19827

| CHECK DATE | CONTROL NUMBER | AMOUNT |
|---|---|---|
| 9/23/2003 | 019827 | $*****200000.00 |

PAY   Two Hundred Thousand and 00/100 ——————————————————— Dollars

TO THE
ORDER
OF   Larry E. Klayman

*WIRE INTO TRUST ACCOUNT FOR LEK PER AGREEMENT.*

*SEE ATTACHED FOR DETAIL.*

⑃"000L9827" ⑃:054004220⑃: 203000001L983⑃"

**JUDICIAL WATCH**

19827

| Vendor | KLAYMANL | | Check Date | 9/23/2003 | Check Number | 019827 | |
|---|---|---|---|---|---|---|---|

| Ref Nbr | Invc Nbr | Invc Date | Invoice Amount | Amount Paid | Disc Taken | Net Check Amt |
|---|---|---|---|---|---|---|
| 009901 | Wire Per Agrmnt | 9/23/2003 | 200000.00 | 200000.00 | 0.00 | 200000.00 |



OTHER COMPENSATION
TO REPORT ON 1099
See AP Check No. ~019826~
019827



**Message Alert**

You have **1 message** waiting for you.

Home

Personal Calculators

Advanced Calculators

Specialized Tools

Developer Tools

Demos

Downloads

Research/Forms

FAQs

News/Info

Site Map     About us

## Paycheck Calculator Result

**Your Pay Check Results**

| | | |
|---|---|---|
| Semi-monthly Gross Pay | $400,000.00 | |
| Federal Withholding | $138,754.13 | |
| Social Security | $0.00 | |
| Medicare | $5,800.00 | |
| Florida | $0.00 | |

**Calculation Based On**

| | |
|---|---|
| Gross Pay | $400,000.00 |
| Gross Pay YTD | $204,622.07 |
| Pay Frequency | Semi-monthly |
| Federal Filing Status | Married |
| # of Federal Exemptions | 2 |
| Additional Federal W/H | $0.00 |
| State | Florida |

Net Pay     $255,445.87

New Calculation     Print Options

**Tell A Friend About PaycheckCity.com!**

©2003 Symmetry Software Corporation, All Rights Reserved
For questions about this site, please contact us. Try our sitemap.

**EXHIBIT D**



# Judicial Watch

*Because no one is above the law!*

October 20, 2003

Mr. Stuart Pechner
Director of Commercial Management
Vanguard Realty Group
7200 Wisconsin Avenue, Suite 501
Bethesda, Maryland 20814

Dear Stuart:

As we have discussed over the past few weeks, Judicial Watch has requested that Mr. Wolpe remove Mr. Klayman as the personal guarantor of its lease for the property at 501 School Street. I understand that Bob is on a cruise around the world, so I appreciate your efforts in coordinating this issue.

This is to confirm, per your voice mail message, that the best option he is thus far offering is that Judicial Watch produce a letter of credit from a bank in the amount of 3 years rent in lieu of Larry Klayman serving as guarantor. I believe that this cost for Judicial Watch, a non-profit public foundation, would be unwarranted and unwise. In light of Judicial Watch's and Larry's history as longstanding tenants of Mr. Wolpe's and Judicial Watch's strong financial health (see attached financial statements), we do not believe that such a letter of credit is commercially reasonable or appropriate and we would request that Mr. Wolpe reconsider the need for it.

Thank you.

Sincerely,

JUDICIAL WATCH, INC.

Thomas Fitton
President



# Financial Statements

*For the Year Ended December 31, 2002*
 *(With Summarized Financial Information for the Year Ended December 31, 2001)*

### and
### Report Thereon

CONFIDENTIAL



**R A F F A**

CONSULTING
ACCOUNTING
TECHNOLOGY

*Certified Public
Accountants*

## INDEPENDENT AUDITOR'S REPORT

To the Board of Directors
of Judicial Watch, Inc.

We have audited the accompanying statement of financial position of Judicial Watch, Inc. (Judicial Watch) as of December 31, 2002, and the related statements of activities, functional expenses and cash flows for the year then ended. These financial statements are the responsibility of the management of Judicial Watch. Our responsibility is to express an opinion on these financial statements based on our audit. The prior year summarized comparative information has been derived from Judicial Watch's 2001 financial statements and, in our report dated April 12, 2002, we expressed an unqualified opinion on those financial statements.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Judicial Watch, Inc. as of December 31, 2002, and the changes in its net assets and its cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.

*Raffa, P.C.*

Raffa, P.C.

Washington, DC
May 16, 2003

CONFIDENTIAL

# JUDICIAL WATCH, INC.
## STATEMENT OF FINANCIAL POSITION
### December 31, 2002
### (With Summarized Financial Information as of December 31, 2001)

|  | 2002 | 2001 |
|---|---|---|
| **ASSETS** | | |
| Cash and cash equivalents | $ 757,290 | $ 796,625 |
| Investments in marketable securities | 16,215,308 | 16,199,002 |
| Grants receivable | 1,000,000 | 1,000,000 |
| Due from Klayman & Associates | 84,221 | 69,752 |
| Cash held in escrow | 280,469 | - |
| Property and equipment, net | 969,889 | 203,915 |
| Prepaids and other assets | 160,193 | 60,308 |
| TOTAL ASSETS | $ 19,467,370 | $ 18,329,602 |
| | | |
| **LIABILITIES AND NET ASSETS** | | |
| Accounts payable and accrued expenses | $ 2,061,794 | $ 1,087,906 |
| Notes payable | 715,467 | 56,879 |
| Deferred rent | 79,694 | - |
| TOTAL LIABILITIES | 2,856,955 | 1,144,785 |
| Commitments | | |
| Net Assets | | |
| Unrestricted | 15,019,096 | 16,173,967 |
| Temporarily restricted | 1,591,319 | 1,010,850 |
| TOTAL NET ASSETS | 16,610,415 | 17,184,817 |
| TOTAL LIABILITIES AND NET ASSETS | $ 19,467,370 | $ 18,329,602 |

CONFIDENTIAL

The accompanying notes are an integral part
of these financial statements.

**JUDICIAL WATCH, INC.**

## STATEMENT OF ACTIVITIES
For the Year Ended December 31, 2002
(With Summarized Financial Information for the Year Ended December 31, 2001)

| | Unrestricted | Temporarily Restricted | 2002 | 2001 |
|---|---|---|---|---|
| REVENUE AND SUPPORT | | | | |
| Contributions | $ 10,412,874 | $ 580,469 | $ 10,993,343 | $ 14,819,753 |
| Foundation grants | 556,175 | 1,000,000 | 1,556,175 | 1,806,936 |
| Interest and dividend income | 847,392 | - | 847,392 | 810,035 |
| Settlement revenue | 200,105 | - | 200,105 | - |
| Other income | 68,677 | - | 68,677 | 50,977 |
| Realized gain on investments | 22,527 | - | 22,527 | 12,961 |
| Unrealized gain on investments | 4,941 | - | 4,941 | 233,656 |
| Net assets released from restrictions: | | | | |
| Satisfaction of time restriction | 1,000,000 | (1,000,000) | - | - |
| TOTAL REVENUE AND SUPPORT | 13,112,691 | 580,469 | 13,693,160 | 17,734,318 |
| | | | | |
| EXPENSES | | | | |
| Program services | | | | |
| Public education | 2,025,349 | - | 2,025,349 | 2,124,569 |
| Legal | 2,551,754 | - | 2,551,754 | 1,861,606 |
| Monitor/research | 422,112 | - | 422,112 | 158,336 |
| Total Program Services | 4,999,215 | - | 4,999,215 | 4,144,511 |
| | | | | |
| Management and general | 3,571,193 | - | 3,571,193 | 2,077,069 |
| Fundraising | 5,697,154 | - | 5,697,154 | 5,423,371 |
| | | | | |
| TOTAL EXPENSES | 14,267,562 | - | 14,267,562 | 11,644,951 |
| | | | | |
| Change in Net Assets | (1,154,871) | 580,469 | (574,402) | 6,089,367 |
| | | | | |
| NET ASSETS, BEGINNING OF YEAR | 16,173,967 | 1,010,850 | 17,184,817 | 11,095,450 |
| | | | | |
| NET ASSETS, END OF YEAR | $ 15,019,096 | $ 1,591,319 | $ 16,610,415 | $ 17,184,817 |

CONFIDENTIAL

The accompanying notes are an integral part
of these financial statements.

## JUDICIAL WATCH, INC.
### STATEMENT OF FUNCTIONAL EXPENSES
For the Year Ended December 31 2002
(With Summarized Financial Information for the Year Ended December 31, 2001)

| | Program Services | | | | Support Services | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Public Education | Legal | Monitor/ Research | Total Program Services | Management and General | Fundraising | 2002 Total | 2001 Total |
| Contract services | $ 947,143 | $ - | $ - | $ 947,143 | $ 70,437 | $ 2,724,818 | $ 3,742,398 | $ 4,613,085 |
| Salaries, taxes and benefits | 316,256 | 1,124,465 | 316,256 | 1,756,977 | 1,265,023 | 491,953 | 3,513,953 | 2,484,689 |
| Professional fees | 132,184 | 712,570 | 1,032 | 845,786 | 1,137,637 | 669,698 | 2,653,121 | 1,251,040 |
| Postage and delivery | 388,251 | 26,125 | 493 | 414,869 | 161,916 | 1,254,169 | 1,830,954 | 1,235,225 |
| Rent | 71,007 | 252,470 | 71,007 | 394,484 | 284,029 | 110,457 | 788,970 | 333,613 |
| Printing and copying | 82,749 | 8,573 | 846 | 92,168 | 31,051 | 211,530 | 334,749 | 364,492 |
| Travel and entertainment | 11,794 | 165,441 | 5,979 | 183,214 | 114,222 | 27,573 | 325,009 | 353,935 |
| Office supplies | 18,615 | 5,269 | 149 | 24,033 | 113,573 | 54,431 | 192,037 | 166,304 |
| Miscellaneous | 197 | 20,734 | 136 | 21,067 | 130,963 | 22,624 | 174,654 | 182,804 |
| Court costs | - | 152,557 | - | 152,557 | 1,508 | - | 154,065 | 74,457 |
| Telephone | 28,453 | 3,856 | 740 | 33,049 | 105,864 | 1,825 | 140,738 | 139,596 |
| Advertising | 8,659 | 7,946 | - | 16,605 | 8,538 | 74,822 | 99,965 | 192,223 |
| Depreciation and amortization | 8,928 | 31,745 | 8,928 | 49,601 | 35,713 | 13,890 | 99,204 | 40,251 |
| Interest | - | - | - | - | 54,220 | - | 54,220 | 1,880 |
| Equipment rental and repairs | 4,377 | 15,561 | 4,377 | 24,315 | 17,506 | 6,808 | 48,629 | 47,921 |
| Dues and subscriptions | 5,647 | 3,561 | 7,387 | 16,595 | 9,756 | 16,682 | 43,033 | 23,411 |
| Research | 589 | 18,460 | 4,782 | 23,831 | 4,394 | - | 28,225 | 30,907 |
| Recruiting | - | 1,096 | - | 1,096 | 19,130 | 3,911 | 24,137 | 32,126 |
| Convention and conferences | - | 435 | - | 435 | 245 | 7,848 | 8,528 | 70,106 |
| Licenses and fees | 500 | 890 | - | 1,390 | 2,923 | 4,115 | 8,428 | 6,640 |
| Taxes | - | - | - | - | 2,545 | - | 2,545 | 246 |
| TOTAL EXPENSES | $ 2,025,349 | $ 2,551,754 | $ 422,112 | $ 4,999,215 | $ 3,571,193 | $ 5,697,154 | $ 14,267,562 | $ 11,644,951 |

The accompanying notes are an integral part
of these financial statements

- 4 -

CONFIDENTIAL

## JUDICIAL WATCH, INC.

### STATEMENT OF CASH FLOWS
For the Year Ended December 31, 2002
(With Summarized Financial Information for the Year Ended December 31, 2001)
Increase (Decrease) in Cash and Cash Equivalents

| | 2002 | 2001 |
|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES** | | |
| Change in net assets | $ (574,402) | $ 6,089,367 |
| Adjustments to reconcile change in net assets to net cash provided by operating activities | | |
| Depreciation and amortization | 99,204 | 40,251 |
| Donated investments | (15,026) | (18,195) |
| Realized gain on investments | (22,527) | (12,961) |
| Unrealized gain on investments | (4,941) | (233,656) |
| Changes in assets and liabilities | | |
| Grants receivable | - | 200,000 |
| Due from Klayman & Associates | (14,469) | (21,216) |
| Prepaids and other assets | (99,885) | (21,467) |
| Accounts payable and accrued expenses | 973,888 | (1,985,318) |
| Deferred rent | 79,694 | - |
| NET CASH PROVIDED BY OPERATING ACTIVITIES | 421,536 | 4,036,805 |
| | | |
| **CASH FLOWS FROM INVESTING ACTIVITIES** | | |
| Purchases of investments in marketable securities | (15,046,413) | (15,047,333) |
| Proceeds from the sales of investments in marketable securities | 15,072,601 | 10,965,131 |
| Acquisition of property and equipment | (865,178) | (81,886) |
| NET CASH USED IN INVESTING ACTIVITIES | (838,990) | (4,164,088) |
| | | |
| **CASH FLOWS FROM FINANCING ACTIVITIES** | | |
| Proceeds received from note payable | 693,000 | - |
| Payments on notes payable | (34,412) | (7,758) |
| NET CASH PROVIDED BY (USED IN) FINANCING ACTIVITIES | 658,588 | (7,758) |
| | | |
| NET INCREASE (DECREASE) IN CASH AND CASH EQUIVALENTS | 241,134 | (135,041) |
| | | |
| CASH AND CASH EQUIVALENTS, BEGINNING OF YEAR | 796,625 | 931,666 |
| | | |
| CASH AND CASH EQUIVALENTS, END OF YEAR | $ 1,037,759 | $ 796,625 |
| | | |
| **NONCASH INVESTING AND FINANCING ACTIVITIES** | | |
| Donated investments | $ 15,026 | $ 18,195 |
| | | |
| **SUPPLEMENTAL CASH FLOW INFORMATION** | | |
| Interest paid | $ 54,220 | $ 1,880 |

CONFIDENTIAL

The accompanying notes are an integral part
of these financial statements.

# JUDICIAL WATCH, INC.

## NOTES TO FINANCIAL STATEMENTS

1.    Organization and Summary of Significant Accounting Policies

**Organization**

Judicial Watch, Inc. (Judicial Watch) is a publicly supported, non-profit organization established in 1994.  The primary purpose of Judicial Watch is to monitor and educate the public about the ethical conduct of government and judicial officials and undertake and publicize legal cases against such officials when appearance of unethical behavior is given.  Judicial Watch is funded primarily from public donations and foundation grants.  Its overriding goal is to restore ethics to government.

**Cash and Cash Equivalents**

Judicial Watch considers excess cash that is invested in overnight repurchase agreements to be cash equivalents.  For purposes of the statement of cash flows, cash held in escrow is included in cash and cash equivalents.

**Investments in Marketable Securities**

Investments consist of money market funds, mutual funds, common stocks, commercial paper, government securities, treasury bills, corporate bonds and various donated securities.  These investments are recorded in the financial statements at their fair market value.  Donated investments are recorded as contributions at the fair market value on the date of donation.  All investments are held for long-term purposes.

**Cash Held in Escrow**

All contributions generated through Judicial Watch's multi-media series are deposited into a separate account held by the company responsible for administering the series.  The funds deposited are used to pay professional service fees and expenses of those involved in the series. Any net proceeds are held in escrow until the end of the project, when at such time the remaining net proceeds will be remitted to Judicial Watch.

**Property and Equipment and Related Depreciation and Amortization**

Property and equipment are stated at cost and are depreciated over the estimated useful lives of three to five years using the straight-line method.  Leasehold improvements are recorded at cost and amortized using the straight-line method over the shorter of the estimated useful lives of ten years or the reminder of the lease term.  Expenditures for major repairs and improvements are capitalized; conversely, expenditures for minor repairs and maintenance costs are expensed when incurred.

CONFIDENTIAL

Continued

JUDICIAL WATCH, INC.

## NOTES TO FINANCIAL STATEMENTS

1.    Organization and Summary of Significant Accounting Policies (continued)

**Classification of Net Assets**

Net assets are reported as follows:

- Unrestricted net assets represent the portion of expendable funds that are available for support of Judicial Watch's operations.

- Temporarily restricted net assets represent amounts that are specifically restricted by donors for specific purposes and/or future use.

**Revenue Recognition**

Contributions and grants are reported as revenue in the year in which payments are received and/or unconditional promises are made.  Judicial Watch reports gifts of cash and other assets as temporarily restricted support if they are received with donor stipulations that limit the use of the donated assets for specific purposes and/or use in future periods.  When a donor restriction expires, that is, when the time or purpose restriction is met, temporarily restricted net assets are reclassified to unrestricted net assets and reported in the statement of activities as net assets released from restrictions.  Donor-restricted contributions whose restrictions are met in the same year are reported as unrestricted support.

**Functional Allocation of Expenses**

The costs of providing the various programs and other activities have been summarized on a functional basis in the accompanying statement of functional expenses.  Accordingly, certain costs have been allocated among the programs and supporting services based on the direct costs charged to each program or supporting activity.

**Estimates**

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect certain reported amounts and disclosures.  Accordingly, actual results could differ from those estimates.

2.    Grants Receivable

Grants receivable represent amounts from foundations that are restricted for use in future periods.  All amounts are due within one year and are considered fully collectible.

CONFIDENTIAL

# JUDICIAL WATCH, INC.

## NOTES TO FINANCIAL STATEMENTS

3.    Investments in Marketable Securities

Investments in marketable securities as of December 31, 2002 consist of the following:

|  | Market Value |
|---|---|
| Money market funds | $    873,853 |
| Corporate bonds | 6,772,813 |
| Government securities | 8,337,895 |
| Common stocks | 140,768 |
| Mutual funds | 89,979 |
| Total Investments | $16,215,308 |

4.    Property and Equipment

Property and equipment is comprised of the following as of December 31, 2002:

|  |  |
|---|---|
| Leasehold improvements | $    582,889 |
| Furniture and equipment | 512,360 |
| Vehicles | 59,451 |
| Total property and equipment | 1,154,700 |
| Less:  accumulated depreciation and amortization | (184,811) |
| Property and equipment, net | $    969,889 |

5.    Notes Payable

Judicial Watch entered into a $750,000 loan agreement for office renovation with a financial institution during the year ended December 31, 2002, of which $670,916 is outstanding as of December 31, 2002.  This loan is collateralized by a security interest in Judicial Watch's Investment Management Account, which must maintain a minimum balance of $1,500,000. Interest accrues on the unpaid principal balance of the note at an annual rate of 6%.  The loan is payable in consecutive monthly installments of accrued interest only for the first seven months of the loan.  The note is payable in consecutive monthly installments of principal and interest over the remainder of the term.  All principal and accrued interest are due and payable on June 29, 2007.



**JUDICIAL WATCH, INC.**

**NOTES TO FINANCIAL STATEMENTS**

5.   Notes Payable (continued)

Judicial Watch also finances two automobiles for its use in its Washington, DC and California offices.  The first automobile was financed on April 7, 2000 for $35,000, of which $19,974 is outstanding as of December 31, 2002.  The second automobile was financed on April 2, 2001 for $34,304, of which $24,577 is outstanding as of December 31, 2002.  Interest accrues on the unpaid principal balances at an annual rate of 8.25% and 3%, respectively.  The loans are payable in consecutive monthly installments of principal and interest over the remainder of the terms which expire May 2005 and June 2006, respectively.

As of December 31, 2002, future minimum principal payments under the loan agreements are as follows:

| For the Year Ending December 31, | |
|---|---|
| 2003 | $   147,709 |
| 2004 | 157,730 |
| 2005 | 164,359 |
| 2006 | 166,531 |
| 2007 | 79,138 |
| Total | $   715,467 |

6.   Temporarily Restricted Net Assets

Temporarily restricted net assets of $10,850 as of December 31, 2002 are restricted for opening an office in New York City, New York.  An additional $580,469 is restricted for Judicial Watch's building fund.  The remaining temporarily restricted net assets of $1,000,000 as of December 31, 2002 are restricted for use in future periods.

CONFIDENTIAL

Continued

# JUDICIAL WATCH, INC.

## NOTES TO FINANCIAL STATEMENTS

7.  Commitments                                CONFIDENTIAL

**Operating Leases**

In 1999, Judicial Watch entered into a ten-year lease for office space located in Washington, DC which expires in March 2009.  The lease provides for annual rent escalations over the term of the lease at an amount equal to 2% of the current base rent and a one-time step increase in the base rent in the beginning of the sixth year of the lease.

In November 2001, Judicial Watch entered into an agreement to amend this lease obligation and obtain additional space at its current location.  The new lease commenced November 17, 2001 and expires November 30, 2011, and also extends the original lease to November 30, 2011.  The amended lease also contains a fixed escalation clause for increases in the annual minimum rent at an amount equal to 2% of the current base rent and a one-time step increase in the base rent in the beginning of the sixth year of the lease.

Under accounting principles generally accepted in the United States of America, fixed rent increases and are recognized as rent expense on a straight-line basis over the term of the lease.  The difference between this expense and the required lease payments is reflected as deferred rent on the accompanying statement of financial position

Judicial Watch leases additional office space in Florida, California, Texas and Virginia.  The Florida lease commenced on June 1, 2002 and expires on May 31, 2008.  The lease provides for fixed annual rent escalations over the term of the lease.  The California lease commenced on February 1, 2002 and expires on January 31, 2004 with no annual rent escalations throughout the term of the lease.  The leases in Texas and Virginia are for periods of less than one year.

As of December 31, 2002, the total future minimum lease payments for Washington, D.C., Florida and California are as follows:

| For the Year Ending December 31, | |
|---|---|
| 2003 | $   697,595 |
| 2004 | 692,759 |
| 2005 | 708,779 |
| 2006 | 725,437 |
| 2007 | 697,946 |
| Thereafter | 2,636,187 |
| Total | $ 6,158,703 |

**JUDICIAL WATCH, INC.**

## NOTES TO FINANCIAL STATEMENTS

8. Allocation of Joint Costs

Judicial Watch conducted direct mail campaigns for the purpose of educating the public on the need for ethics and respect for the law to maintain a healthy society and these campaigns included appeals for contributions. Each mailing contained new updates and information about Judicial Watch's activities to restore morality to public life. Because the mainstream media does not report these matters, Judicial Watch uses its direct mail to do so. Judicial Watch's direct mail campaigns also are a means to identify individuals likely to assist Judicial Watch, both currently and in the future, in its public interest activities. Accordingly, while much of the direct mail was allocated as fundraising, it has a significant public education component.

These direct mail activities incurred joint costs, which have been allocated as follows:

| | |
|---|---|
| Public education | $ 1,021,499 |
| Fundraising | 2,920,595 |
| Management and general | 111,474 |
| Total | $ 4,053,568 |

9. Related Party Transactions

The current Chairman and General Counsel of Judicial Watch is the President of Klayman & Associates, P.C. (K&A), a for-profit professional law firm. In order to reduce overhead costs for both organizations, Judicial Watch and K&A agreed to share certain employees and certain general, administrative and overhead expenses, such as rent, telephone, postage and delivery, photocopying and supplies. The costs are allocated to each entity based on actual invoices, office space usage and employee time charges.

During 2002, Judicial Watch paid for general, administrative and overhead expenses totaling $8,529 on behalf of K&A. The balance due to Judicial Watch from K&A as of December 31, 2002 is $84,221 which includes a balance owed from 2001 of $69,752 and interest charged in 2002 in the amount of $5,940 calculated on the average balance owed during the year at an 8% annual interest rate. The outstanding balance, including accrued interest, is due by May 15, 2004.

10. Income Taxes

Under Section 501(c)(3) of the Internal Revenue Code, Judicial Watch is exempt from the payment of taxes on income other than net unrelated business income. For the year ended December 31, 2002, no provision for income tax was made, as Judicial Watch had no significant net unrelated business income.



**JUDICIAL WATCH, INC.**

**NOTES TO FINANCIAL STATEMENTS**

11.    Prior Year Summarized Financial Information

The financial statements include certain prior year summarized comparative information in total but not by net asset class and functional area.  Such information does not include sufficient detail to constitute a presentation in conformity with accounting principles generally accepted in the United States of America. Accordingly, such information should be read in conjunction with Judicial Watch's financial statements for the year ended December 31, 2001, from which the summarized information was derived.

12.    Reclassifications

Certain 2001 amounts have been reclassified to conform to the 2002 presentation.

CONFIDENTIAL

## **EXHIBIT E**

**Tom Fitton**

| | |
|---|---|
| **From:** | leklayman [leklayman@bellsouth.net] |
| **Sent:** | Thursday, January 12, 2006 5:22 PM |
| **To:** | Barmak, David; tfitton@judicialwatch.org; porfanedes@judicialwatch.org; sprytherch@judicialwatch.org; jkulunas@foxrothschild.com |
| **Cc:** | Larry Klayman |
| **Subject:** | Fw: Paritial Response ToLetter to Klayman re his check.DOC |

----- Original Message -----
**From:** leklayman
**To:** jroscoe@jamsadr.com ; Larry Klayman
**Cc:** adye@wc-b.com ; kraffa@raffa.com
**Sent:** Thursday, January 12, 2006 5:14 PM
**Subject:** Fw: Partial Response To Letter to Klayman re his check.DOC

----- Original Message -----
**From:** leklayman
**To:** Barmak, David
**Cc:** jroscoe@amsadr.com ; Paul Orfanedes ; tfitton@judicialwatch.org ; sprytherch@judicialwatch.org
**Sent:** Thursday, January 12, 2006 5:07 PM
**Subject:** Re: Paritial Response ToLetter to Klayman re his check.DOC

David:

I have reviewed your letter of this date responding to my letter of about two weeks ago, which I e-mailed to you and the mediator, Jerry Roscoe.

I will respond shortly to the subtance of your letter through counsel. However, in the interim, would you please send to me iimmediately any an all correspondence by or on behalf of Peter Paul and Judicial Watch with regard to the matter set forth in the next paragraph.

 As we discussed at the mediation session in December, using sworn statements about me in the false Judicial Watch IRS Form 990 for 2003, which was later modified for 2004 (albeit incorrectly and in a misleading fashion), I have learned recently that Peter Paul wrote and published an equally false and defammatory article, which appeared not just on his website but was posted on the Free Republic website, which stated that I was fired by Judicial Watch because of the expense issue, among other libelous statements. *I have been severely damaged as a result.* At the end of the article, Paul states that he is bringing suit against Judicial Watch, its current officers and me, as well as filing other complaints.

Accordingly, false and defammatory information contained on the 2003 JW Form 990 was used and published by Paul and he states that litigation and other complaints will result.. Under the Confidential Severance Agreement, I am entitled to receive  any and all documents to and from Paul and I hereby make this demand. Please provide this on an expedited basis.

Further, please advise me whether, as is required, Paul's forecast legal actions have been reported to Judicial Watch's professional liability and directors and officers insurance carriers, as well as my past enumberated claims against Judicial Watch and its current officers and directors.

Thank you for your immediate response and for providing this information and documentation right away.

Sincerely,

Larry Klayman

cc: Joseph Kulunas, Esq.
    Jerry Roscoe, Esq.
    Alan Dye, Esq.
    Kathy Raffa

----- Original Message -----
**From:** Barmak, David
**To:** leklayman@bellsouth.net
**Cc:** jroscoe@amsadr.com ; Paul Orfanedes ; tfitton@judicialwatch.org ; sprytherch@judicialwatch.org
**Sent:** Thursday, January 12, 2006 4:25 PM
**Subject:** Letter to Klayman re his check.DOC

Please see attached letter.

_____

David Barmak | Member
*Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.*
12010 Sunset Hills Road | Reston, VA 20190
Phone: 703.464.8109 | Fax: 703.464.4895
E-mail: dbarmak@mintz.com
Web: www.mintz.com

--------------------------------------------------------------

IRS CIRCULAR 230 NOTICE

In compliance with IRS requirements, we inform you that any U.S. tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax penalties or in connection with marketing or promotional materials.

--------------------------------------------------------------

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, or the person responsible for delivering the e-mail to the intended recipient, be advised you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited. Please notify Mintz, Levin, Cohn, Ferris, Glovsky and Popeo immediately at either (617) 542-6000 or at ISDirector@Mintz.com, and destroy all copies of this message and any attachments. You will be reimbursed for reasonable costs incurred in notifying us.