UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DONATO DALRYMPLE. | ) | FILED UNDER SEAL |
| et al. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No 03-20588-CIV-MOORE |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF  SANDRA COBAS' OPPOSITION TO MOTION TO STRIKE APPEARANCE AND RESPONSE TO PRO HAC VICE MOTIONS

Plaintiff, Sandra Cobas, hereby files her opposition to the Motion to Strike Larry E. Klayman's May 20, 2004, Notice of Appearance on Behalf of Plaintiff Sandra Cobas and her response to Application for Leave to Appear Pro Hac.Vice and Motion to Waive Requirement of Local Counsel of Paul Orfanedes and Dale Wilcox and Motion to Appear Pro Hac Vice of David Barmak and would show as follows:

1. Counsel for Sandra Cobas (one of the myriad of plaintiffs in this case), Larry Klayman, voluntarily stepped down as Chairman and General Counsel of Judicial Watch last September 19, 2003, a public interest group he founded and ran for nearly ten years, to run for the United States Senate from Florida and to reenter private practice .In doing so, he entered into a Confidential Severance Agreement with Judicial Watch.  With regard to Mr. Klayman's

1

departure, the Agreement acknowledged:

" Paragraph 18 - ... Larry Klayman has stepped down as Chairman and General Counsel

Of Judicial Watch, to pursue other endeavors. Tom Fitton, who is President of Judicial

Watch, said: "Larry conceived, founded and helped build Judicial Watch to the organ-

ization it is today, and we will miss his day to day involvement. Judicial Watch now has a

very strong presence and has become the leading non-partisan, public interest watchdog

seeking to promote and ensure ethics in government, and Larry leaves us well positioned to

continue our important work."

With regard to client relationships, the Agreement was drafted to conform with the Rules

Regulating The Florida Bar, Rule 4-5.6 RESTRICTIONS ON

RIGHT TO PRACTICE, since Mr. Klayman was not precluded from representing any client of

Judicial Watch who requested his legal representation after he stepped down as Chairman and

General Counsel. Accordingly, the Agreement states:

"Paragraph 5 - ... Klayman shall not, for a period of two (2) years following the

Separation Date, directly or indirectly:

(iii) solicit or in any manner encourage or induce, or attempt to solicit, encourage or

induce, any client of Judicial Watch to terminate its attorney-client relationship with

Judicial Watch; provided, however, **that Klayman shall not be precluded from**

**providing legal representation to any client, if requested by the client, in his capacity**

**as a lawyer in private practice;** (Emphasis added)."

Thus, Mr. Klayman was not precluded in representing a client of Judicial Watch, if he or she so

2

requested, even after he left its employ.  This provision of the Agreement conforms with Rule 4-5.6, which also provides as follows:

A lawyer shall not participate in offering or making:

(a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or

(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

Comment

An agreement restricting the right of partners or associates to practice after leaving a firm not only limits their professional autonomy, but also limits the freedom of clients to choose a lawyer. Subdivison (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.

Subdivision (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client.

This rule does not apply to prohibit restrictions that may be included in the terms of the sale of a law practice in accordance with the provisions of rule 4-1.17.

**This rule is not a per se prohibition against severance agreements between lawyers and law firms. Severance agreements containing reasonable and fair compensation provisions designed to avoid disputes requiring time-consuming quantum meruit analysis are not prohibited by this rule. Severance agreements, on the other hand, that contain punitive clauses, the effect of which are to restrict competition or encroach upon a client's inherent right to select counsel, are prohibited. The percentage limitations found in rule 4-1.5(f)(4)(D) do not apply to fees divided pursuant to a severance agreement. No severance agreement shall contain a fee-splitting arrangement that results in a fee prohibited by the Rules Regulating The Florida Bar. (Emphasis added). See Exhibit 1.**

**2. In his Motion to Strike, counsel for Judicial Watch seeks to prevent Mr. Klayman from representing Ms. Cobas, despite the clear terms of the Agreement, which he conspicuously**

3

fails to quote in his pleading ("Klayman shall not be precluded from providing legal representation to any client, if requested by the client, in his capacity as a lawyer in private practice"). Nor does the Motion to Strike cite from Rule 4-5.6, which prohibits any provision of any severance agreement which limits a client's right to choose counsel. See also Opinion 93-4 (February 17, 1995), attached as exhibit 2.

3. As set forth in the attached affidavit (Exhibit 3), Ms. Cobas requested that Mr. Klayman represent her because of an on-going and regrettably unresolved employment and legal representation dispute with the current national directors and officers of Judicial Watch, as well as the current director of the Miami office, Ms. Irene Garcia. Since Mr. Klayman was previously lead counsel on the case, a member of The Florida Bar who actually lives in Miami, and intimately familiar with the facts at issue, as well as being a close friend of Ms. Cobas who will zealously represent her interests, she logically asked that he represent her. Indeed, based on the law, Ms. Cobas was well within her rights to do so. See Cobas Affidavit - Exhibit 3.

4. Ironically, in their pro hac vice motions, Messrs. Orfanedes and Willcox of Judicial Watch concede that the organization no longer has any lawyer in its Miami office, and indeed no one who is admitted to The Florida Bar anywhere in the public interest firm. While Ms. Cobas does not object to their entry pro hac vice – although she certainly would have grounds to do so - it is doubly ironic that Mr. Klayman is the only counsel in Miami who is licensed to practice before this court. Indeed, his involvement should help the other plaintiffs, as he is a trial lawyer with over 27 years of experience and, unlike the counsel seeking pro hac vice entry, has practiced extensively before this court.

5. Mr. Klayman has no intention of being a distraction, only to represent Ms. Cobas. Indeed, he has been counsel of record for several months already and this has not occurred. Judicial Watch, whatever the motivation of its current officers and directors, does not have the right to choose or deny counsel for Ms. Cobas, particularly since she made her choice of counsel freely and without solicitation from Mr. Klayman. See Exhibit 3. Mr. Klayman's representation is in a pro bono capacity, thus saving Ms. Cobas the prohibitive expense of hiring other counsel, which she cannot afford.

6. Plaintiff, Ms. Cobas, has tried to resolve this motion amicably with Judicial Watch's current officers and directors, but was rebuffed. On July 14, 2004, counsel for Ms. Cobas faxed to counsel for Judicial Watch and Judicial Watch itself copies of the abovecited provisions of Rule 4-5.6 of the Rules Regulating The Florida Bar and Opinion 93-4, and asked them to withdraw the non-meritorious motion to strike, which make it crystal clear that Ms. Cobas has the right to choose her own counsel and that severance agreements (even it appilicable here, which it is not, given the express provision allowing for such representation), cannot limit this right. Despite this, counsel for Ms. Cobas, Larry Klayman, was told by counsel for Judicial Watch on July 27, 2004, that **the current directors and officers of Judicial Watch wish to have this motion resolved in confidence by the court, and will not voluntarily withdraw it**. In response, Mr. Klayman asked Judicial Watch's counsel to have his clients reconsider their position once this opposition is filed, since this will save unnecessary time and expense for the court to rule upon what is a non-meritorious motion on its face, particularly given the unequivocal prohibition

5

against barring counsel from representing a client who chooses him, as set forth in the actual

terms of the Agreement and The Rules Regulating The Florida Bar.


For all of these reasons, the Motion to Strike Mr. Klayman from entering his notice of

appearance must be respectfully denied.


Respectfully submitted,


Larry Klayman
Florida Bar. No. 0246220
540 Brickell Key Drive
#732
Miami, Florida 33131
Tel: 305-577-8944
And Fax

EXHIBIT 1



**FLABAR ONLINE**

 

Organization
Member Services
Consumer Services
Online Media Center
Legislative Info.
Regulation
  INDEX
  Rules Regulating The
    Florida Bar
  Standards for Lawyer
    Sanctions
  Ethics Information
  Lawyer Conduct
  UPL
  Advertising Rules
  Authorized House
    Counsel
  Foreign Legal
    Consultant
Professionalism
Links
Lawyers' Marketplace

StoreFront

For The Children
Dignity In Law

Full-Site Search
Contact Us
Open Sitemap
PDF Help

## ➡️Rules Regulating The Florida Bar

**4 RULES OF PROFESSIONAL CONDUCT**
**4-5 LAW FIRMS AND ASSOCIATIONS**

### *RULE 4-5.6 RESTRICTIONS ON RIGHT TO PRACTICE*

A lawyer shall not participate in offering or making:

**(a)** a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or

**(b)** an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

**Comment**

An agreement restricting the right of partners or associates to practice after leaving a firm not only limits their professional autonomy, but also limits the freedom of clients to choose a lawyer. Subdivision (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.

Subdivision (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client.

This rule does not apply to prohibit restrictions that may be included in the terms of the sale of a law practice in accordance with the provisions of rule 4-1.17.

This rule is not a per se prohibition against severance agreements between lawyers and law firms. Severance agreements containing reasonable and fair compensation provisions designed to avoid disputes requiring time-consuming quantum meruit analysis are not prohibited by this rule. Severance agreements, on the other hand, that contain punitive clauses, the effect of which are to restrict competition or encroach upon a client's inherent right to select counsel, are prohibited. The percentage limitations found in rule 4-1.5(f)(4)(D) do not apply to fees divided pursuant to a severance agreement. No severance agreement shall contain a fee-splitting arrangement that results in a fee prohibited by the Rules Regulating The Florida Bar.

EXHIBIT 2

 

**Member Services**



➡️ **Ethics Opinions Search**

Organization
Member Services
  INDEX
  Certification
  CLE
  Ethics Opinions
  LOMAS
  SCOPE
  Calendars
  Member Benefits
  Voluntary Bar News
  Judicial Polls
  Florida Lawyers
   Assistance, Inc.
Consumer Services
Online Media Center
Legislative Info.
Regulation
Professionalism
Links
  Lawyers' Marketplace

StoreFront

For The Children
Dignity In Law

Full-Site Search
Open Sitemap
PDF Help

**OPINION 93-4**
**(February 17, 1995)**

Certain provisions in a law firm-associate employment agreement violate Rule 4-5.6(a), which prohibits a lawyer from offering or making a partnership or employment agreement that restricts a lawyer's right to practice after termination of the relationship. The offending provisions create a substantial financial disincentive that would preclude the departing associate from accepting representation of firm clients, and impermissibly restricts the right of association among lawyers.

**NOTE:** This opinion was approved by the Board of Governors at it February 1995 meeting.

**RPC:** 4-1.4, 4-1.5(g), 4-5.6(a)

**Opinions:** 66-44, 69-1, 71-62, 84-1; ABA Informal Opinion 1417; Texas Opinion 459

**Cases:** Rosenberg v. Levin, 409 So.2d 1016 (Fla. 1982); Dwyer v. Jung, 336 A.2d 498 (N.J.Super. 1975); Cohen v. Graham, 722 P.2d 1388 (Wash.App. 1986)

The inquiring attorney, employed by a law firm as an associate, has been asked by the firm to sign an employment agreement containing the following provisions:

A. Employee acknowledges that the Employer has invested its trust and confidence in the Employee and a considerable amount of time and money in training and developing the skills and expertise of the Employee in the practice of law. As a condition of employment and the benefits thereof, Employee agrees that in the event Employee's Employment Agreement with the Employer is terminated, Employee will not, for a period two (2) years from date of termination, interfere with the business of the Employer by:

1. seeking, directly or indirectly, any of the Employer's clients; or

2. inducing, either directly or indirectly, any employee to quit or abandon the Employer.

B. Employee acknowledges that the above prohibitions are reasonable and necessary covenants not to interfere with the business of the Employer. In the event of a breach of any of these covenants by the Employee or in the event Employee accepts representation of a client of the Employer, it is agreed as follows:

1. Employee acknowledges that he (she) would work on any on-going case or on-going file matters for such client on behalf of and in the interest of the Employer and shall compensate to the Employer the greater of fifty percent (50%) of any fee received from said client or the Firm's quantum meruit.

2. As to subparagraph A.2. the Employer's damages are not readily calculable and that Employer is entitled to injunctive relief to enforce said covenants, there being no adequate remedy at law.

The associate is declining to sign the agreement, asserting that doing so would be contrary to Rules 4-1.4, 4-1.5(g), and 4-5.6(a) of the Rules of Professional Conduct of The Florida Bar. There being no direct authority in Florida on the ethics issues raised by this inquiry, the attorney asks for guidance from this Committee.

Rule 4-5.6 provides, in relevant part:

A lawyer shall not participate in offering or making:
(a) A partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement[.]

The prohibition contained in Rule 4-5.6 seeks to protect the professional autonomy of lawyers as well as clients' access to the lawyer of their choosing. Comment, Rule 4-5.6. As this state's highest court has noted: The "special trust and confidence" inherent in an attorney-client relationship dictates "that clients be given greater freedom to change legal representatives than might be tolerated in other employment relationships." Rosenberg v. Levin, 409 So. 2d 1016, 1021 (Fla. 1982). Thus, termination agreements among lawyers are scrutinized more closely than restrictive covenants found in traditional commercial settings. Dwyer v. Jung, 336 A. 2d 498, 500 (N.J. Super.Ct.Ch.Div. 1975).

On their face, the contract provisions in question do not expressly prohibit a lawyer who leaves the firm from thereafter representing "firm clients." Because the provisions mandate that payments be made from the departing attorney to the firm, however, the question becomes whether the contract creates a "financial disincentive" that in fact operates to preclude the departing attorney from accepting representation of such clients.

In varying contexts, courts and ethics committees from other jurisdictions have considered whether certain financial disincentive provisions in law firm partnership or employment agreements act as impermissible restrictions on an attorney's right to practice after termination of the partnership or employment relationship. In Opinion 459, for example, the Texas State Bar Professional Ethics Committee was faced with an inquiry substantially similar to the one presented here. For the same reasons given by the Texas Bar in disapproving the associate employment agreement at issue there, we find section (B)(1) of the employment contract in the instant inquiry ethically impermissible:

The interjection of a fee to a third party obviously impairs the creation of a lawyer-client relationship between the departing lawyer and clients of his former firm.... The lawyer may be unwilling to work at substantially reduced rates for even his best clients, and pressure against acceptance in favor of clients paying full value to the firm would rise within the new employer. The attorney would thus be compelled to decline employment and the client would be deprived of the attorney of his choice.

In reaching our conclusion, we do not suggest that every termination compensation clause in an employment agreement violates Rule 4-5.6(a). See

Florida Ethics Opinion 84-1, as modified. In fact, when appropriately drawn, such clauses "offer an orderly and practical transition for the dissolution of law practices." Cohen v. Graham, 722 P. 2d 1388, 1391 (Wash. Ct. App. 1986). Thus, a compensation provision that is specifically designed to avoid time-consuming, quantum meruit analyses may be contrasted with an essentially punitive clause intended to restrict competition. In our estimation the agreement presented here falls into the latter category because, by way of example, the firm would be entitled to 50% of any fee ultimately received by the departing associate from a client who came to the firm the day before the associate terminated employment. While perhaps less egregious, other examples of the restrictive nature of the termination clause could easily be imagined.

Similar concerns arise with respect to section (A)(2) of the employment agreement, at least as it applies to lawyers of the firm. By prohibiting a departing attorney from attempting to hire other lawyers from the firm, the agreement restricts the right of association between attorneys and, indirectly, the right to practice. ABA Informal Opinion 1417. In our opinion, therefore, this provision also violates Rule 4- 5.6(a) as it pertains to attorneys of the firm.

We also agree with the inquirer that Rule 4-1.4 of the Rules of Professional Conduct is implicated here. That rule provides:

**(a) Informing Client of Status of Representation.** A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**(b) Duty to Explain Matters to Client.** A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The duty to provide clients with information relevant to their case would ostensibly include the fact that the attorney is leaving the firm. See Florida Ethics Opinions 66-44; 69-1; 71-62; 84-1. The employment agreement in question prohibits a departing employee from "seeking, directly or indirectly, any of the Employer's clients." To the extent that the prohibition on "indirect" solicitation could be read to limit an attorney's duty, imposed by the above rule, to notify clients of the attorney's departure from the firm, it does not comport with the Rules of Professional Conduct.

Because we have found the employment agreement to be an impermissible restriction on an attorney's right to practice in violation of Rule 4-5.6(a); we need not address whether the agreement also violates Rule 4-1.5(g), the fee division rule.

EXHIBIT 3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

DONATO DALRYMPLE.                  )              FILED UNDER SEAL
et al.                             )
    Plaintiffs,                 )
                                )
                                )
                                )
    v.                          )      Civil Action No 03-20588-CIV-MOORE
                                )
                                )
UNITED STATES OF AMERICA,          )
                                )
    Defendant,                  )
                                )
                                )
_____    )

### Affidavit of Plaintiff Sandra Cobas

I, Sandra Cobas, being duly sworn, deposes and says:

1. I am over 18 years of age.

2. On May 4, 2004, because of an on-going and regrettably unresolved employment dispute that I have with the current directors and officers of Judicial Watch, of which Mr. Paul Orfanedes (Judicial Watch's current lead counsel in this case) is one, as well as Irene Garcia, the current director of the Miami office, which involve allegations concerning employment discrimination, defamation, other causes of action and their failure if not refusal to resolve much less address them, and what I perceived to be a lack of communication about the progress of this case, I notified Judicial Watch that I would be terminating its legal representation of me in this case. This notification was made in writing.

1

3. Therefore, I asked Larry Klayman to represent me based on a number of factors, because I trust him and admire his legal skills. Mr. Klayman did not solicit me. First, Mr. Klayman was previously lead counsel in this case and he is intimately familiar with the underlying facts, and he is much more experienced in trying cases than the other lawyers for the plaintiffs, particularly before this court. Second, I trust and have confidence in Mr. Klayman, having worked under him when he was Chairman and General Counsel of Judicial Watch. Third, he agreed to represent me pro bono, and I cannot afford to hire counsel. Fourth, Mr. Klayman is a Florida lawyer who lives in Miami.  None of the other counsel for plaintiffs is a Florida lawyer and they do not live here, where I can have quick and easy access to them. Finally, Mr. Klayman is my friend and has my best interests at heart.

4. Because of the underlying facts concerning my ongoing employment dispute with Judicial Watch's current national directors, and the director of the Miami office, I do not have confidence in them that they have my best interests at heart and I want to excercise my right to select the counsel of my choice, Mr. Klayman.

Sandra Cobas

*Sandra Cobas 7/28/04*

FURTHER AFFIANT SAYETH NOT

2.

My Commission Expires:  12/15/07



_____
Notary Public

Date: 7/28/04

**ANA WILSON**
MY COMMISSION # DD 275146
EXPIRES: December 15, 2007
Bonded Thru Budget Notary Services

3.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DONATO DALRYMPLE.                    )                FILED UNDER SEAL
et al.                               )
              Plaintiffs,            )
                                     )
                                     )
                                     )
          v.                         )        Civil Action No 03-20588-CIV-MOORE
                                     )
                                     )
UNITED STATES OF AMERICA,            )
                                     )
         Defendant,                  )
                                     )
                                     )
_____    )

## ORDER

THIS CAUSE having come on to be heard upon Judicial Watch's Motion to Strike Larry

E. Klayman's May 20, 2004 Notice of Appearance on Behalf of Plaintiff Sandra Cobas,

IT IS HEREBY ORDERED:

This Motion Is Hereby Denied.


K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    Larry Klayman
540 Brickell Drive, Suite 732
Miami, Florida 33131

Paul Orfanedes
Judicial Watch, Inc.
501 School Street
Suite 500
Washington, DC 20024

Stephen E. Handler
U.S. Department of Justice
Benjamin Franklin Station
P.O. Box 888
Washington, D.C. 20044
Attorney for the United States

David Barmak, Esq.
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC
12010 Sunset Hills Road, Suite 900
Reston, Virginia 20190

Haas A. Hatic, Esq.
Florida Bar No. 843989
GREENSPOON, MARDER, HIRSCHFELD
RAFKIN, ROSS & BERGER, P.A.
Trade Centre Smith, Suite 700
100 West Cypress Creek Road
Fort Lauderdale, FL 33309

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON July 28, 2004,  I caused to be served upon the following counsel a true and correct copy of the Plaintiff, Sandra Cobas' Opposition To Motion To Strike appearance And Response To Pro Hac Vice Motions, via First Class Mail to:

Paul Orfanedes
Judicial Watch, Inc.
501 School Street
Suite 500
Washington, DC 20024

Stephen E. Handler
U.S. Department of Justice
Benjamin Franklin Station
P.O. Box 888
Washington, D.C. 20044
Attorney for the United States

David Barmak, Esq.
Michael C. Whitticar, Esq.
MINTZ LEVIN COHN FERRIS
GLOVISKY AND POPEO, PC
12010 Sunset Hills Road, Suite 900
Reston, Virginia 20190

Haas A. Hatic, Esq.
GREENSPOON, MARDER,
HIRSCHFELD, RAFKIN, ROSS &
BERGER, P.A.
Trade Center South, Suite 700
100 West Cypress Creek Road
Ft. Lauderdale, FL 33309

Larry Klayman

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Civil Action No. 03-20588-CIV-MOORE
Magistrate O'Sullivan

DONATO DALRYMPLE,            )
                             )
and                          )
                             )
HECTOR S. ABELAIRAS, et al.  )
                             )
         Plaintiffs,         )
                             )
vs.                          )
                             )
UNITED STATES OF AMERICA,    )
                             )
         Defendant.          )
_____)

## JUDICIAL WATCH'S REPLY MEMORANDUM TO PLAINTIFF SANDRA COBAS' OPPOSITION TO MOTION TO STRIKE APPEARANCE AND RESPONSE TO PRO HAC VICE MOTIONS

Mr. Klayman's Opposition to Judicial Watch's Motion to Strike Appearance (the "Response") fails to refute the well-founded reason for striking his appearance in this case. Instead, Mr. Klayman dwells on various irrelevant and out of context portions of the Confidential Severance Agreement between him and Judicial Watch, mischaracterizing the Agreement and the circumstances surrounding it in the process.  Judicial Watch attempts herein to return the focus where it belongs, and points out briefly below that the lone Rule Mr. Klayman cites in the Response cannot be used to invalidate a private contractual provision.

Before resigning from Judicial Watch, Mr. Klayman was counsel of record for Plaintiffs, through Judicial Watch.  Mr. Klayman and Judicial Watch agreed in paragraph 12 of their Confidential Severance Agreement that "Klayman's *appearance as counsel shall be withdrawn*

*in all legal proceedings in which Judicial Watch currently is involved as party or as counsel for any person or entity."* Confidential Severance Agreement, ¶ 12 (emphasis supplied).

In clear contravention of the parties' agreement, Mr. Klayman did *not* withdraw as counsel in this matter. Instead, on May 20, 2004, Mr. Klayman filed a "Notice of Withdrawal" in which he withdrew his appearance for all other plaintiffs but purported to continue his appearance for Sandra Maria Cobas. Mr. Klayman's continued appearance for Ms. Cobas violates the Confidential Severance Agreement, which unqualifiedly required the withdrawal of his "appearance as counsel . . . in all legal proceedings in which Judicial Watch currently is involved as party or as counsel for any person or entity."

Despite the unequivocal language in the parties' agreement, Mr. Klayman argues in his Response that Judicial Watch is trying to deprive Ms. Cobas the right to choose counsel of her choice, citing Rule 4-5.6. The issue, however, is about Mr. Klayman's agreement with Judicial Watch, not about Ms. Cobas' choice of counsel. Nothing about the Agreement between Mr. Klayman and Judicial Watch violates any provision of the Rules Regulating the Florida Bar, as he remains free to represent any individual, including Ms. Cobas, in any matter *except that he has agreed to withdraw his appearance in the matters being handled by Judicial Watch at the time his employment was severed.*

Florida law is clear (and Klayman cites no authority to the contrary) that Rule 4-5.6 does not invalidate or render void a provision in a private contract between two parties. *See Lee v. Florida Dept. of Ins. and Treasurer*, 586 So.2d 1185, 1186 (Fla. 1st DCA 1991). Indeed, as the First District Court of Appeal made clear in *Lee*,

> To use 4-5.6 as the basis for invalidating a private contractual provision is manifestly beyond the stated scope of the Rules and their intended legal effect.

2

In short, Mr. Klayman made an agreement, and that agreement is binding and enforceable. Klayman's "Notice of Withdrawal" violates the parties' agreement because he has not withdrawn his appearance on Ms. Cobas' behalf, and he must do so.[1]

Accordingly, based on the foregoing, the matters set forth in the Motion, and the interests of justice and judicial economy, Mr. Klayman's notice of appearance in this case must be stricken and he should be barred from representing any of the Plaintiffs based on his agreement not to do so.

Respectfully submitted,

JUDICIAL WATCH, INC.

David Barmak, Esq.[2]
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, PC
12010 Sunset Hills Road, Suite 900
Reston, Virginia 20190
Telephone: (703) 464-4800
Facsimile: (703) 464-4895

GREENSPOON, MARDER, HIRSCHFELD,
RAFKIN, ROSS & BERGER, P.A.
100 West Cypress Creek Road, Suite 700
Fort Lauderdale, Florida 33309
Telephone: (954) 491-1121
Facsimile: (954) 343-6956
haas.hatic@greesnpoonmarder.com

By: _____
Haas A. Hatic. Esq.
Florida Bar No. 843989

---

[1] Ms. Cobas asked Judicial Watch to withdraw as her counsel and it did so, filing a Motion for Leave to Withdraw Appearance as Counsel of Record for Plaintiff Sandra Maria Cobas on May 11, 2004. On May 13, 2004, the Court conditionally granted that motion, effective only upon notice of appearance of substitute counsel. Significantly, Mr. Klayman appears to have actively solicited and induced Ms. Cobas not only to terminate her relationship with Judicial Watch but also to have him enter his appearance on her behalf. Such a solicitation is prohibited by Mr. Klayman's agreement with Judicial Watch.

[2] Pursuant to Rule 7.3 of the Local Rules for the Southern District of Florida and Rule 4B of the Special Rules Governing the Admission and Practice of Attorneys, David Barmak, Esq. filed his Motion for Admission *Pro Hac Vice* on July 13, 2004, which Motion is currently pending before this Court.

Case No.: 03-20588-CIV-MOORE

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2004, a true and correct copy of the foregoing Unopposed Motion for Enlargement of Time Within Which to Serve Reply Memorandum was served by first-class mail, postage prepaid on the following:

Larry Klayman, Esq.
Florida Bar No.: 0246220
c/o 540 Brickell Key Drive
Suite 732
Miami, FL 33131

Attorney for Plaintiff, Sandra Cobas

Stephen E. Handler
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station
P.O. Box 888
Washington, DC 20044

Attorneys for Defendant

_____
Haas A. Hatic

G:\Hah\10093\0001\pldgs\Reply Memo in Support of Motion to Strike.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DONATO DALRYMPLE,                )          FILED UNDER SEAL
et al.                           )
              Plaintiffs,        )
                                 )
                                 )
                                 )
          v.                     )     Civil Action No 03-20588-CIV-MOORE
                                 )
                                 )
UNITED STATES OF AMERICA)
                                 )
              Defendant,         )
                                 )
                                 )
_____)

MOTION TO SUPPLEMENT OPPOSITION AND FILE SURREPLY TO MOTION TO STRIKE

Based upon recent events and filings, Plaintiff, Sandra Cobas, moves this honorable court for an

order granting leave to supplement and file a surreply to her opposition to the motion to strike the

appearance of her chosen counsel, Larry Klayman, since the reply filed by counsel for

Judicial Watch again fails to cite correct law and facts.  The movant would show as follows:


1. In her opposition, Ms. Cobas demonstrated that the Rules Regulating the Florida Bar

("hereafter Rules") and the terms of the Confidential Severance Agreement signed by her counsel

and Judicial Watch allow her to choose her own counsel, Larry Klayman, without restriction.  Indeed,

both the Rules and the Confidential Severance Agreement are consistent with the ultimate arbiter of

this issue; the right to counsel as contained in the Sixth Amendment to the Constitution. Conversely,

other parties in this case cannot seek to bar Ms. Cobas from this right, and for this reason The Florida

Bar has made it crystal clear that provisions of severance agreements which seek to restrain this

1

right are illegal. See Rule 4-5.6, cited in Ms. Cobas' opposition, with attached copy of Rule and

comments.

The case cited by counsel for Judicial Watch does not apply and is inapposite, since in this case

(attached as Exhibit 1), the client itself objected to the attorney's representation based on

confidentiality concerns.  This was part of their settlement agreement preventing representation.

**And, as discussed below, the Agreement between counsel Larry Klayman and Judicial**
**Watch expressly allows him to represent Ms. Cobas.**

That counsel for the other plaintiffs would seek to ignore the absolute stricture of The Florida Bar,

and cite inapplicable case law, by filing a non-meritorious motion seeking to bar Mr. Klayman from

representing Ms. Cobas, is counterproductive and inexplicable, given their pending petitions for

admission pro hac vice into this jurisdiction. This court is regulated by the rules of ethics of The

Florida Bar embodied in the Rules, which are consistent with the court's practice.

Moreover, in Judicial Watch's recently filed reply, it again alleges, disingenuously and incorrectly,

that Larry Klayman has breached the Confidential Severance Agreement by agreeing to represent Ms.

Cobas in this case. But again, Judicial Watch withholds quoting a key provision of the Agreement

from this court, which provides explicitly, consistent with the Rules, that Klayman can represent a

client in a Judicial Watch case if the client so requests. Paragraph 5 (iii) of the Confidential Severance

Agreement provides in pertinent part **"that Klayman shall not be precluded from providing legal**

**representation to any client, if requested by the client, in his capacity as a lawyer in private**

2

practice; (Emphasis added)." **See Exhibit 2- Redacted Relevant Portion of Confidential Severance Agreement.** Counsel for Judicial Watch also inexplicably continues to argue that Mr.Klayman solicited Ms. Cobas', without any proof to this effect. To the contrary, the sworn affidavit of Ms. Cobas, attached to her opposition, states, under oath, at paragraph 3: "I asked Mr. Klayman to represent me...Mr. Klayman did not solicit me." It is regrettable that this sworn statement was ignored in the reply.

2. In the affidavit attached to her opposition, Ms. Cobas also explains how a regrettably on-going employment and related dispute has caused her to believe that the current officers and directors of Judicial Watch, of which counsel for the other plaintiffs, Mr. Paul Orfanedes' is one, do not have her best interests at heart, and that she trusts Larry Klayman, who is not only representing her pro bono but is a close friend. As Mr. Klayman was formerly the lead counsel on this case until he stepped down as Chairman and General Counsel from Judicial Watch, he is also fully versed in the issues and best suited to represent her.

3. On Wednesday, August 11, 2004, Ms. Cobas was deposed by counsel for the defendant, the United States, at the U.S. Attorney's Office in Miami. While Larry Klayman was present to defend her, counsel for the other plaintiffs, Mr. Orfanedes was not. This was surprising, since Ms. Cobas is a key plaintiff and witness and her testimony bears on the case in chief, particularly given her close personal relationship with the lead plaintiff, Donato Dalyrmple. Mr. Orfanedes was in town, but apparently chose not to attend. It was important, however, that Ms. Cobas had

3

representation other than Mr. Orfanedes, since counsel for defendant attempted to probe into the reasons why Ms. Cobas left Judicial Watch and the employment and related dispute between them. Fortunately, counsel for Ms. Cobas, Larry Klayman, and counsel for the defendant, Mr. Handler, who conducted himself in a correct and gentlemanly fashion, found a way for the government to elicit relevant testimony without reaching an impasse by delving into Ms. Cobas' confidential employment matters. This points out the importance of Ms. Cobas having her own counsel which she trusts, not the counsel from Judicial Watch, who has steadfastly refused to address the employment and related dispute for almost one year. A copy of the deposition transcript has been ordered and will be submitted to the court when received.

4. On Thursday, August 12, 2004, plaintiff, Donato Dalrymple was deposed by the defendant. Mr. Orfanedes did appear to represent him, and Mr. Klayman and Ms. Cobas were present as well. A review of the deposition transcript, which has been ordered, will show how the testimony of Mr. Dalrymple and Ms. Cobas are interrelated, since they interacted with each other on the day of the event in question – the raid on Gonzalez residence and environs. This was the reason why Mr. Klayman and Ms. Cobas were present at the Dalrymple deposition, since Mr. Dalyrmple's testimony bears on the testimony of Ms. Cobas. A review of the transcript will show that both Mr. Klayman and Ms. Cobas tried to be helpful to Mr. Dalrymple in eliciting testimony from Mr. Dalyrmple on re-direct and cross examination that bears on both witnesses' and plaintiffs' rights and claims. In so doing, Mr. Klayman suggested questions to be asked by Mr. Orfanedes during a break after the government finished its initial round of direct testimony, and the record will reflect that Mr. Orfanedes did ask these questions. Thus, the parties were able to work together in the best interests

4

of their clients. Mr. Klayman could have asked these questions himself, but chose to be deferential to Mr. Orfanedes.

5. Since July 14, over one month ago, Plaintiff, Sandra Cobas, has consistently asked counsel for Judicial Watch to withdraw its non-meritorious motion, but this has not occurred. The latest request occurred on August 5, 2004, when Mr. Klayman granted a request for extension of time of one week to counsel for Judicial Watch, and asked again that the additional time be used for counsel to have his clients reconsider withdrawing the motion.

It is regrettable that the court was inappropriately drawn into the employment dispute between the current officers and a Miami director of Judicial Watch and Ms. Cobas, and it is regrettable that its resources have been used to consider and rule on a non-meritorious motion, which is not only contrary to law, but also to the explicit terms of the Confidential Severance Agreement, that allows clients to request on-going representation by Mr. Klayman consistent with the Rules Regulating the Florida Bar. Importantly, Ms. Cobas only wishes to have counsel of her choice, and the record to date reflects that this counsel is vigorously representing her interests in a proper and deferential manner to the other parties. Importantly as well, he is doing so in a pro bono capacity, as Ms. Cobas cannot afford to hire other legal counsel, even were this her desire, which it is not.

For these are the grounds set forth in her opposition, Ms. Cobas respectfully requests that the

5

Motion To Strike be denied.

Because of the confidential nature of the Confidential Severance Agreement, and the confidential nature of the employment and related dispute between Ms. Cobas and the current officers and a Miami director of Judicial Watch, plaintiff respectfully requests that any order in this matter be kept under seal, consistent with the other pleadings which have been filed under seal in this matter.

Respectfully submitted,

Larry Klayman
Florida Bar. No. 0246220
540 Brickell Key Drive
#732
Miami, Florida 33131
Tel: 305-577-8944
And Fax

6