UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN, *et al.*,

   Plaintiffs,

    v.                                                          Civil Action No. 06-670 (CKK)

JUDICIAL WATCH, INC., *et al.*,

   Defendants.

**MEMORANDUM OPINION**
(January 17, 2007)

Plaintiffs, Larry Klayman and Louise Benson, brought this action against Defendants –

Judicial Watch, Inc. (hereinafter "Judicial Watch"), a non-profit public interest government

watchdog organization; Thomas J. Fitton, President of Judicial Watch; Paul J. Orfanedes,

Secretary and a Director of Judicial Watch; and Christopher J. Farrell, a Director of Judicial

Watch – alleging fraudulent misrepresentation, breach of contract, unjust enrichment, violation

of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), violation of Florida Statute § 540.08, and

defamation. Presently before the Court are a number of motions, including: (1) the motion to

dismiss Counts One, Two, Three, Four, Five, Six, and Nine of Plaintiffs' Second Amended

Complaint brought by Defendants Judicial Watch and Fitton; (2) Plaintiffs' motion for leave to

file a sur-reply regarding the motion to dismiss brought by Defendants Judicial Watch and Fitton;

(3) the separate motion to dismiss the Second Amended Complaint brought by Defendants

Orfanedes and Farrell; (4) the motion to strike portions of Plaintiffs' Second Amended

Complaint brought by Defendants Judicial Watch and Fitton; and (5) the motion to sever the

claims of Plaintiff Benson from those of Plaintiff Klayman, brought by Defendants Judicial

Watch and Fitton.

Upon a searching consideration of the filings currently before the Court on these motions, the attached exhibits, and the relevant statutes and case law, with respect to the motion to dismiss Plaintiffs' Second Amended Complaint brought by Defendants Judicial Watch and Fitton, the Court shall (1) dismiss without prejudice Counts One, Two, and Three of Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction; (2) deny the motion to dismiss as to Counts Four, Five, and Six; (3) as to Count Nine of Plaintiffs' Second Amended Complaint, grant-in-part the motion to dismiss brought by Defendants Judicial Watch and Fitton insofar as it relates to allegedly defamatory statements made in Judicial Watch Form 990 tax returns and allegedly doctored press quotations posted on the Judicial Watch website; and (4) as to Count Nine of Plaintiffs' Second Amended Complaint, deny-in-part the motion to dismiss brought by Defendants Judicial Watch and Fitton insofar as it is based on allegedly false statements to Judicial Watch employees and the media.[1]  To the extent that Defendants Orfanedes and Farrell have joined in Fitton and Judicial Watch's motion to dismiss as to Counts Four, Five, and Nine, the Court's conclusions with respect to those Counts apply equally to Orfanedes and Farrell. Furthermore, the Court shall (5) deny Plaintiffs' motion for leave to file a sur-reply; (6) deny the motion to dismiss Plaintiffs' Second Amended Complaint brought by Defendants Orfanedes and Farrell (insofar as it raises an additional argument not addressed in Fitton and Judicial Watch's

---

[1] In light of the Court's granting-in-part and denying-in-part the motion to dismiss brought by Defendants Judicial Watch and Fitton, Counts Four, Five, Six, Seven, Eight, and Nine (to the extent that Count Nine is based on allegedly defamatory statements made to Judicial Watch employees and the media) of the Second Amended Complaint remain viable as to Defendants Judicial Watch and Fitton.  In addition, with respect to Defendants Orfanedes and Farrell, Counts Four, Five, and Nine (to the extent that Count Nine is based on allegedly defamatory statements made to Judicial Watch employees and the media) remain viable.

motion to dismiss); (7) deny the motion to strike brought by Defendants Fitton and Judicial Watch; and (8) deny as moot the motion to sever brought by Defendants Judicial Watch and Fitton.

## I: BACKGROUND

*A.      The Parties*

Defendant Judicial Watch, Inc. is a 501(c)(3) organization formed under the laws of the District of Columbia and headquartered in the District of Columbia, which Plaintiffs describe as a "public interest government watchdog to investigate and prosecute government corruption and abuse." Second Am. Compl. (hereinafter "SAC") ¶ 20. Defendant Fitton is President of Judicial Watch, Defendant Orfanedes is the Secretary and a Director of Judicial Watch, and Defendant Farrell is a Director of Judicial Watch. *Id.* ¶¶ 21-23.

Plaintiff Larry Klayman ("Klayman") is the self-described founder and former Chairman and General Counsel of Judicial Watch, who resides in and practices law in the State of Florida. *Id.* ¶¶ 1, 18, 26. Plaintiff Louise Benson ("Benson") is a resident of California who has been a supporter of and donor to Judicial Watch. *Id.* ¶ 19.

*B.      Klayman's Tenure At and Decision to Leave Judicial Watch*

Klayman alleges that in 1994, he "conceived of, incorporated and founded Judicial Watch to restore and promote ethics in the government and in the legal profession . . . ." *Id.* ¶ 2. According to Klayman, during the ten (10) years after he founded Judicial Watch, the organization grew to a $28 million plus per year foundation with regional offices in five cities, employed about 50 employees, and planned to expand nationally and internationally. *Id.* ¶ 4. In addition, Judicial Watch had nationally syndicated radio and television shows called "The

3

Judicial Watch Report," and, according to Klayman, "achieved many notable successful verdicts or findings in courts throughout the United States." *Id.*

Klayman further alleges that in 2003, he decided to leave Judicial Watch in order to run for a seat in the United States Senate from his home state of Florida. *Id.* ¶¶ 5-6. As a result, Klayman entered into severance negotiations with Fitton, Orfanedes, and Farrell. *Id.* ¶ 7. On September 19, 2003, Klayman entered into a detailed Severance Agreement, signed by Klayman and Fitton, on behalf of Judicial Watch, and attested to by Orfanedes, as Corporate Secretary of Judicial Watch. *Id.*; Defs.' Judicial Watch and Fitton Mot. to Dismiss Second Am. Compl. (hereinafter "Fitton/JW Mot. to Dismiss"); Ex. 1 (9/19/03 Severance Agreement). In addition, Klayman alleges that before he left Judicial Watch, he discovered that, contrary to representations Fitton had previously made, Fitton had not obtained an undergraduate degree. *Id.* ¶ 8. As a result, Klayman alleges that, "[a]s a condition to his signing the Severance Agreement and stepping down from Judicial Watch, Klayman insisted, and Fitton agreed, to have Judicial Watch hire a qualified person to become Chairman." *Id.* ¶ 10.

C.    *Events Subsequent to Klayman's Departure from Judicial Watch*

Klayman alleges that, "[i]nstead of taking the steps he promised to find a distinguished and qualified Chairman to run Judicial Watch, Fitton has solely acted to entrench himself as head of Judicial Watch," and that as a result, "today there is no Chairman, and Fitton controls Judicial Watch." *Id.* ¶¶ 11-12. Klayman further alleges that, since Klayman's departure from Judicial Watch, Fitton has mismanaged Judicial Watch and misled "Klayman and others to promote his personal agenda, interests, and political ideology to the detriment of Judicial Watch, Klayman, and Judicial Watch's donors and supporters." *Id.* ¶¶ 13-14. Klayman also alleges that Judicial

4

Watch, Fitton, Orfanedes, and Farrell have "defamed, disparaged and cast Klayman in a false light to denigrate Klayman, and in an effort to undermine Klayman's ability to return to the helm of Judicial Watch or compete with Judicial Watch in the future." *Id.* ¶ 16.

In addition, Klayman alleges that, more than a month after he stepped down as Chairman and General Counsel of Judicial Watch, Fitton caused Judicial Watch to send a fund-raising letter that falsely represented that Klayman was still Chairman and General Counsel of Judicial Watch, and used Klayman's name and image without permission. *Id.* ¶ 48; Ex. A (10/03 Judicial Watch Verdict mailing). Klayman alleges that this mailing created confusion among donors, who mistakenly sent donations to Judicial Watch, believing that Klayman was still running Judicial Watch. *Id.* ¶ 49.

### D.      *Benson's Donation to Judicial Watch*

Plaintiffs allege that in November 2002, while Klayman was still Chairman and General Counsel of Judicial Watch, Judicial Watch began a campaign to raise funds to purchase the building in which Judicial Watch's headquarters was located. *Id.* ¶ 50. As a result, Judicial Watch sent solicitations to potential donors, including Benson. *Id.*; Ex. B (copy of solicitation sent to Benson). Benson alleges that, relying on representations made in that solicitation that the money raised would be used to purchase the Judicial Watch headquarters building, she pledged $50,000 to Judicial Watch and paid $15,000 up front to Judicial Watch. *Id.* ¶ 51. In addition, Benson alleges that she entered into an agreement with Judicial Watch that, as consideration for her $50,000 pledge and $15,000 up-front payment, Judicial Watch would name the President's Office in the headquarters after Benson, and that Judicial Watch further agreed that after purchasing the building, Judicial Watch would place a plaque on the President's Office

recognizing Benson's contribution.  *Id.* ¶¶ 81-83.

Benson alleges that, after Klayman's departure from Judicial Watch, "Fitton caused Judicial Watch to cease actively pursuing the purchase of the Building, but concealed that fact from Benson and other similarly situated donors and supporters of Judicial Watch."  *Id.* ¶ 53. Indeed, Benson alleges "on information and belief" that "Fitton caused Judicial Watch to commingle with Judicial Watch's operating funds, or misuse in other ways, the approximately $1.4 million raised from Benson and others."  *Id.* ¶ 56.  Nevertheless, Benson alleges, Judicial Watch published newsletters in February 2005 and September 2005 which led Benson and other donors to believe that Judicial Watch was actively pursuing the purchase of the headquarters building and maintaining donations in a segregated, interest-bearing account.  *Id.* ¶¶ 55, 57; Exs. C (2/05 Judicial Watch Verdict) and D (9/05 Judicial Watch Verdict).  Benson specifically alleges that when she questioned Judicial Watch about the status of her donation and Judicial Watch's attempts to purchase the headquarters building, Judicial Watch fund-raiser Robert G. Mills "deliberately misrepresented that Judicial Watch was actively attempting to purchase the Building."  *Id.* ¶¶ 60-61.

E.     *Plaintiffs' Second Amended Complaint*

Plaintiffs filed their initial Complaint against Defendants Judicial Watch and Fitton on April 12, 2006, and thereafter filed an Amended Complaint against Judicial Watch and Fitton on May 1, 2006.  Plaintiffs filed their Second Amended Complaint on June 14, 2006, in which they maintained the same nine Counts, but added Defendants Orfanedes and Farrell.  Counts One, through Three of Plaintiffs' Second Amended Complaint are brought by Plaintiff Benson, while Counts Four through Nine of Plaintiffs' Second Amended Complaint are brought by Plaintiff

Klayman.

In Count One, Benson claims Fraudulent Misrepresentation against Fitton and Judicial Watch, alleging that Fitton and Judicial Watch misrepresented that they intend to use Benson's money to purchase a headquarters for Judicial Watch, despite having taken no steps to purchase the building, in order to induce Benson from demanding a refund of her donation.  SAC ¶¶ 68-78.  In Count Two, Benson claims Breach of Contract solely against Judicial Watch, alleging that by not purchasing a building for Judicial Watch headquarters, Judicial Watch breached its agreement offering Benson naming rights to the President's Office in consideration for her pledge of $50,000 and contribution of $15,000.  *Id.* ¶¶ 79-88.  In Count Three, Benson claims Unjust Enrichment solely against Judicial Watch, alleging that Judicial Watch accepted and used the benefit of Benson's $15,000 contribution, which she made in the belief that Judicial Watch would purchase the headquarters building and provide her with naming rights.  Count Three further alleges that Benson "conferred a substantial benefit upon Judicial Watch in an amount in excess of $65,000" through support services she provided Judicial Watch "with the expectation that Fitton and others would act honestly and ethically toward her and to the public generally." *Id.* ¶¶ 89-96.

Counts Four and Five are brought by Klayman against all Defendants, and relate to the fund-raising mailing sent by Judicial Watch a month after Klayman's departure which allegedly misrepresented that Klayman was still Chairman and General Counsel of Judicial Watch.  Count Four alleges that the mailing constituted false designation of origin, false and misleading descriptions, false and misleading representations, false and misleading advertising, and other acts of unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

1125(a)(1)(A) and (B).  *Id.* ¶¶ 97-106.  Count Five alleges that the mailing constituted an unauthorized use of Klayman's name and likeness, in violation of Florida Statute § 540.08.  *Id.* ¶¶ 107-114.

Counts Six, Seven, and Eight are brought by Klayman solely against Judicial Watch and seek three separate remedies for Breach of Contract – rescission, damages, and specific performance.  Count Six alleges that Judicial Watch willfully breached the Severance Agreement by (1) defaming, disparaging and casting Klayman in a false light to the public and the media; (2) failing to pay Klayman the full amount due under the Severance Agreement; (3) failing to return all of Klayman's property; (4) failing to take affirmative steps to purchase the Judicial Watch headquarters building and remove Klayman as guarantor for the Judicial Watch lease; and (5) failing to find a suitable successor for Klayman as Chairman of Judicial Watch.  *Id.* ¶¶ 33-47; 115-132.  Klayman alleges that these "deliberate misrepresentations materially induced [him] to enter into the Severance Agreement," and further claims that in light of Judicial Watch's pervasive breaches of the Severance Agreement, monetary damages would be inadequate.  *Id.* ¶¶ 133-135.  As a result, Klayman claims that the Severance Agreement must be rescinded, with Klayman restored to his position as Chairman of Judicial Watch.  *Id.* ¶¶ 135-137.

Count Seven incorporates by reference Klayman's previous allegations and seeks damages for Judicial Watch's alleged breach of the Severance Agreement.  *Id.* ¶¶ 138-140. Count Eight seeks specific performance as a remedy for Judicial Watch's alleged breach of the Severance Agreement, incorporating by reference Klayman's previous allegations, and further alleging that Judicial Watch has breached the Severance Agreement by: (1) failing to remove Klayman as guarantor for all credit card accounts; and (2) failing to provide Klayman access to

documents.  *Id.* ¶¶ 141-147.

Finally, Klayman brings Count Nine against all Defendants for Defamation.  Under the heading "Count Nine" of the Second Amended Complaint, Klayman describes three allegedly defamatory publications.  First, Klayman alleges that, in its 2003 and 2004 Form 990 tax returns, Judicial Watch knowingly published false and misleading statements that Klayman owed Judicial Watch certain monies, and that Judicial Watch subsequently published the false tax returns on its website.  *Id.* ¶¶ 66, 150-151.  Second, Klayman alleges that, in response to his filing of the initial Complaint in this action, Fitton and Judicial Watch knowingly sent a false statement to Judicial Watch employees claiming that Klayman filed this action because he owed Judicial Watch a significant sum of money.  *Id.* ¶ 154.  Klayman alleges that when they published the false and misleading statement, "all Defendants knew that Klayman did not, individually, owe Judicial Watch any money."  *Id.* ¶ 155.  Third, Klayman alleges that Fitton and Judicial Watch published knowingly false statements in a number of media outlets, including *The Washington Post*, *The Washington Times*, *World NetDaily.com*, and *Slate.com*, by telling reporters that "Klayman filed his suit as a 'tactical maneuver designed to distract attention away from the fact that Klayman owes **more than a quarter of a million dollars to Judicial Watch**.'" *Id.* ¶¶ 156-157 (emphasis in original).

In addition, elsewhere in the Second Amended Complaint, under the heading "Defamation, Disparagement of Klayman and Misrepresentation," Klayman alleges that Fitton has caused Judicial Watch to disparage and defame Klayman "in violation of the Severance Agreement" by allegedly doctoring press quotations originally made about Klayman so that they refer to Judicial Watch instead, and then posting these false statements on the Judicial Watch

website. *Id.* ¶ 65.  It is unclear whether these allegations support Klayman's three Counts for breach of contract or instead relate to Count Nine, Klayman's claim for defamation.

On June 28, 2006, Defendants Fitton and Judicial Watch filed a Motion to Dismiss Counts One, Two, Three, Four, Five, Six, and Nine of Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Motion to Dismiss brought by Defendants Fitton and Judicial Watch did not address Count Seven, Klayman's claim for damages based on breach of the Severance Agreement, or Count Eight, Klayman's claim for specific performance based on breach of the Severance Agreement.[2]  Plaintiffs filed their Opposition to the motion to dismiss brought by Defendants Fitton and Judicial Watch (hereinafter "Pls' Opp'n to Fitton/JW Mot.") on August 8, 2006, and Defendants Fitton and Judicial Watch filed their reply (hereinafter "Fitton/JW Reply") on September 1, 2006.  Plaintiffs subsequently filed a motion for leave to file a sur-reply on September 14, 2006, which all Defendants opposed on September 22, 2006.

Also on June 28, 2006, Defendants Fitton and Judicial Watch filed a Motion to Sever the Claims of Plaintiff Benson from the Claims of Plaintiff Klayman, pursuant to Federal Rule of Civil Procedure 20(a) and Local Civil Rule 7.1, as well as a Motion to Strike portions of the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(f).  *See* Mot. to Sever; Mot. to Strike.  Plaintiffs opposed each of these motions on August 7, 2006, and Fitton and Judicial Watch filed their replies in further support of these motions on September 1, 2006.

Furthermore, on July 10, 2006, Defendants Orfanedes and Farrell filed a separate Motion

---

[2]  The Court notes that on December 26, 2006, all Defendants filed a Motion for Summary Judgment as to Klayman's breach of contract claims, Counts Six, Seven, and Eight of the Second Amended Complaint.  That Motion for Summary Judgment is not yet ripe.

to Dismiss the Second Amended Complaint (hereinafter "Orfanedes/Farrell Mot. to Dismiss"), in which they expressly join the Motion to Dismiss previously filed by Defendants Fitton and Judicial Watch as to the substance of those Counts in which they were named as defendants (Count Four - Violation of the Lanham Act; Count Five - Violation of Florida Statute 540.08; and Count Nine - Defamation). In addition, Defendants Orfanedes and Farrell argue that Klayman's claims against them should be dismissed because the allegations contained in the Second Amended Complaint fail to support individual liability on their parts. *See generally* Orfanedes/Farrell Mot. to Dismiss. Plaintiffs filed their Opposition to that motion on August 7, 2006 (hereinafter "Pls' Opp'n to Orfanedes/Farrell Mot."), and Defendants Orfanedes and Farrell filed their Reply on September 1, 2006 (hereinafter "Orfanedes/Farrell Reply").

## II: LEGAL STANDARDS

In evaluating a motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6), "the Court must construe the complaint in the light most favorable to plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the Court must construe the complaint in the Plaintiff's favor, it "need not accept inferences drawn by [the] plaintif[f] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the Court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*,

132 F.3d 753, 762 (D.C. Cir. 1997). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

### III: DISCUSSION

*A.    Motion to Dismiss Brought by Defendants Judicial Watch and Fitton*

Defendants Fitton and Judicial Watch argue that Counts One, Two, Three, Four, Five, Six, and Nine of the Second Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For their part, Plaintiffs contend that the allegations contained in each of the challenged counts are sufficient to state a cause of action, and that dismissal is therefore inappropriate. The Court shall address each of the challenged counts in turn.

*1.    Plaintiff Benson's Claims - Counts One, Two, and Three*

Plaintiff Benson brings claims of fraudulent misrepresentation, breach of contract, and unjust enrichment, alleging that she pledged $50,000 to Judicial Watch, $15,000 of which she donated up front, in reliance on representations made by Judicial Watch while Klayman was still Chairman and General Counsel that the money she contributed would be used to purchase the

building housing Judicial Watch's headquarters.  SAC ¶¶ 50-51.  Benson further alleges that she

entered into an agreement with Judicial Watch that, as consideration for her pledge and

contribution, she would receive naming rights to the President's Office in the headquarters

building.  *Id.* ¶¶ 81-83.  Benson alleges that Judicial Watch and Fitton have continued to

represent to her and other donors, in mailings and orally, that they are actively working to

purchase the headquarters building, despite the fact that they have ceased actively pursuing the

purchase of the building.  *Id.* ¶¶ 53-61.  In addition, Benson alleges that she provided Judicial

Watch with support services worth in excess of $65,000 "with the expectation that Fitton and

others would act honestly and ethically toward her," but that Fitton and others have failed to do

so.  *Id.* ¶¶ 89-96.  Defendants Fitton and Judicial Watch argue that Benson's allegations fail to

state a claim for fraudulent misrepresentation, breach of contract, or unjust enrichment.

### a.    Count One - Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation, Benson must show "(1) a false

representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with

the intent to deceive, and (5) an action that is taken in reliance upon the representation."  *Chedick

v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998) (citing *Hercules & Co., Ltd. v. Shama Restaurant

Corp.*, 613 A.2d 916, 923 (D.C. 1992)).  To prevail, Benson must also show that she has

"suffered some injury as a consequence of [her] reliance on the misrepresentation."  *Id.* (citing

*Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C. 1983)).  Fitton

and Judicial Watch argue that, because Benson alleges that she made her pledge and contribution

in reliance on representations made by Judicial Watch while Klayman was still Chairman and

General Counsel, *see* SAC ¶¶ 50-51, she does not allege detrimental reliance on any

misrepresentation by either Fitton or Judicial Watch.  Fitton/JW Mot. to Dismiss at 4-5.  Fitton

and Judicial Watch further argue that Benson does not allege detrimental reliance because she

does not allege any deadline by which Judicial Watch was required to purchase a headquarters

building.  *Id.*

Benson's allegations are sufficient to state a claim for fraudulent misrepresentation.

Benson specifically alleges that after Klayman left, Judicial Watch ceased actively pursuing the

purchase of a headquarters building.  SAC ¶ 53.  Nevertheless, Benson alleges, Judicial Watch

published newsletters in February and September 2005 representing that Judicial Watch was

actively pursuing the purchase of a headquarters building, and a Judicial Watch fund-raiser told

Benson that Judicial Watch was actively pursuing the purchase when Benson inquired as to the

status of her donation.  *Id.* ¶¶ 55-61.  Benson further alleges that Fitton and Judicial Watch knew

that these representations were fraudulent, and made these misrepresentations to induce Benson

and other donors not to seek a return of their donations.  *Id.* ¶¶ 75-76.  Notwithstanding the

argument made by Fitton and Judicial Watch that Judicial Watch never committed to purchase a

headquarters building by a date certain, Benson states a claim for fraudulent misrepresentation by

alleging that Judicial Watch specifically misrepresented that it was actively pursuing the

purchase of the building, when it had actually ceased to do so, in order to prevent Benson from

seeking a return of her donation.

Benson's claim for fraudulent misrepresentation is, however, limited to her allegation that

she did not seek a return of her $15,000 donation.  Benson does not allege that she ever donated

the additional $35,000 she pledged to Judicial Watch, and as such cannot demonstrate

detrimental reliance with respect to that amount.  *See* SAC; Ex. B at 40 (list of Benson donations

totaling $15,000 to Judicial Watch, indicating that last donation dated 7/24/03).

   *b.*   *Count Two - Breach of Contract*

  Fitton and Judicial Watch make three arguments with respect to Benson's claim for breach of contract. First, they argue that, rather than being consideration for an agreement, Benson's donation was a gift that was complete upon delivery. Fitton/JW Mot. to Dismiss at 5-6. Second, they argue that Benson's failure to donate the additional $35,000 she pledged to Judicial Watch constitutes a breach of contract that precludes her from enforcing the terms of the contract she alleges. *Id.* at 6-7. Finally, they argue that because Benson does not allege that Judicial Watch committed to purchase a headquarters building by a date certain, her claim for breach of contract is not yet ripe. *Id.* at 7-8. Fitton and Judicial Watch's second two arguments merit little attention. Benson has alleged that she entered into an agreement with Judicial Watch whereby she pledged $50,000 and donated $15,000 up front in order to secure naming rights to the President's Office. SAC ¶¶ 50-51, 81-83. Benson specifically alleges that she "made her pledge solely on the condition that Judicial Watch was and would continue to actively pursue the purchase of the [headquarters] Building." *Id.* ¶ 52. Construing these allegations in the light most favorable to Benson, she has alleged that she entered into a conditional agreement with Judicial Watch, which Judicial Watch breached by failing to actively pursue the purchase of a headquarters building, and further that Judicial Watch's breach relieved her of her obligation to donate the additional $35,000 she had pledged.

  Fitton and Judicial Watch's argument that Benson's $15,000 donation was a gift is more compelling, but nevertheless ultimately unsuccessful at the motion to dismiss stage. As Fitton and Judicial Watch acknowledge, under the law of the District of Columbia, the essential

elements of a valid *inter vivos* gift are donative intent, delivery, and acceptance. *Zoob v. Jordan*, 841 A2d 761, 765 (D.C. 2004); *see also Murray v. Gadsden*, 197 F.2d 194 (D.C. Cir. 1952). Moreover, "to prove donative intent, it must be shown from the evidence that the donor clearly and unmistakenly intended to permanently relinquish all interest in and control over the gift." *Zoob*, 841 A.2d at 765 (citing *Ross v. Fierro*, 659 A.2d 234, 239 (D.C. 1995)). Benson clearly alleges that she did not intend her $15,000 donation to Judicial Watch to be a gift, but rather intended it as payment in consideration for naming rights in the Judicial Watch headquarters. SAC ¶¶ 50-51, 81-83. Whether Benson, in fact, intended to make a gift is therefore a question of fact that cannot be resolved on a motion to dismiss. *See Nwaoha v. Onyeoziri*, Civ. A. No. 04-1799 (GK), 2006 WL 3361540, *3 (D.D.C. Nov. 20, 2006).

### c.     Count Three - Unjust Enrichment

Unjust enrichment is a quasi-contractual claim, which requires Benson to show that Judicial Watch was unjustly enriched at her expense and that the circumstances are such that in good conscience Judicial Watch should make restitution. *News World Commc'ns , Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (citing *Vereen v. Clayborne*, 623 A.2d 1190, 1194 (D.C. 1993)). However, where the recipient of a benefit was under no notice that the person conferring a benefit expected payment in exchange, no injustice can be shown. *See H.G. Smithy Co. v. Washington Med. Ctr.*, 374 A.2d 891, 895 (D.C. 1977). Benson alleges that she entered into an agreement with Judicial Watch whereby she would receive naming rights in the Judicial Watch headquarters. SAC ¶¶ 50-51, 81-83. Her allegations regarding her $15,000 contribution to Judicial Watch are thus sufficient to state a claim for unjust enrichment because she alleges that Judicial Watch was on notice that she expected them to actively pursue the purchase of a

headquarters building in exchange for her donation.

Benson also alleges, however, that she "conferred a substantial benefit upon Judicial Watch" by providing support services worth at least $65,000 to the organization "with the expectation that Fitton and others would act honestly and ethically toward her." *Id.* ¶ 95. Fitton and Judicial Watch correctly argue that this allegation does not state a claim for unjust enrichment because Benson does not allege that Judicial Watch had notice that she expected to be paid for her support services if Fitton and others did not live up to Benson's expectations regarding their conduct. *See* Fitton/JW Mot. to Dismiss at 7-9. Instead, Benson alleges that, at some unspecified time, she volunteered her services to Judicial Watch and that she now believes that "Fitton and Judicial Watch have not acted properly by deliberately misleading donors and improperly converting Judicial Watch into a partisan organization." SAC ¶ 96. These allegations are entirely insufficient to demonstrate that "the circumstances were such that in good conscience [Judicial Watch] should make restitution." *News World Commc'ns*, 878 A.2d at 1222; *Vereen*, 623 A.2d at 1194. As Benson cannot maintain a claim for unjust enrichment based on the support services she allegedly provided to Judicial Watch, her claim for unjust enrichment, like her claims for fraudulent misrepresentation and breach of contract, are limited to the $15,000 she allegedly donated to Judicial Watch.

### d.    This Court Lacks Jurisdiction Over Plaintiff Benson's Claims

"When it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, it shall dismiss the action." Fed. R. Civ. P. 12(h)(3). Moreover, "[i]f a court determines that it lacks subject matter jurisdiction, it therefore is duty bound to dismiss the case on its own motion." *Hawk v. Olson*, 326 U.S. 271, 272. 66 S. Ct. 116, 90 L. Ed. 61 (1945).

17

As discussed above, Benson's allegations are sufficient to state claims for fraudulent misrepresentation, breach of contract, and unjust enrichment; however, each of those claims is limited to Benson's allegations regarding the $15,000 she donated to Judicial Watch.  Benson's claims therefore do not establish that the amount in controversy exceeds $75,000, as is required for this Court to exercise diversity jurisdiction under 28 U.S.C. §1332(a).

The Court is aware that in *Exxon Mobil Corporation v. Allapattah Services, Inc.*, 545 U.S. 546, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005), the Supreme Court declared:

> If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a "civil action" within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint.  Once the court determines it has original jurisdiction over the civil action, it can turn to the question whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over the other claims in the action.

*Exxon Mobil*, 545 U.S. at __, 125 S. Ct. at 2620-21.  Here, Plaintiff Klayman alleges damages totaling at least $3,500,000.  *See* SAC at 32-33.[3]  As a result, if Klayman's claims meet the amount in controversy requirement of 28 U.S.C. § 1332(a), the Court has original jurisdiction over the instant "civil action," and may, if proper, exercise supplemental jurisdiction over Benson's claims.

Pursuant to 28 U.S.C. § 1367(a), a district court that has original jurisdiction over a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in

---

[3]  The Court shall not, at this point, address whether Klayman has, in fact, stated a claim with respect to each Count comprising his total alleged damages, but rather shall assume that Klayman's claims meet the amount in controversy requirement and continue to determine whether the Court has a "constitutional and statutory basis for exercising supplemental jurisdiction" over Benson's claims.  *Exxon Mobil*, 545 U.S. at __, 125 S. Ct. at 2620-21.

the action . . . that they form part of the same case or controversy under Article III of the United

States Constitution." 28 U.S.C. § 1367(a). The Court of Appeals for the District of Columbia

Circuit has stated that "it is clear that section 1367(a) authorizes a district court to exercise its

supplemental jurisdiction in mandatory language." *Lindsay v. Gov't Employees Ins. Co.*, 448

F.3d 416, 421 (D.C. Cir. 2006) (citing, *inter alia*, *McCoy v. Webster*, 47 F.3d 404, 406 n. 3 (11th

Cir. 1995) ("Section 1367(a) *requires* the district court to exercise supplemental jurisdiction over

claims which are closely related to claims over which the district court has original jurisdiction.")

(emphasis in *Lindsay*)). However, 28 U.S.C. § 1367(a) also provides bases on which a district

court may decline to exercise supplemental jurisdiction, including that "the 'other' claims are *not*

'so related' to the claims within the court's original jurisdiction that they constitute part of the

same 'case or controversy.'" *Lindsay*, 448 F.3d at 421 (emphasis in original).

    The Court concludes that, even if this Court properly has original jurisdiction over

Klayman's claims, Benson claims are not "so related" to Klayman's claims as to form part of the

same "case or controversy" because the two Plaintiffs' claims do not "derive from a common

nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct.

1130, 16 L. Ed. 2d 218 (1966). Benson's claims relate solely to her allegations that she donated

$15,000 to Judicial Watch based on representations that her contribution would be used to

purchase a headquarters building and that she would receive naming rights in the building. In

contrast, Klayman's claims arise out of a wide range of events, including the negotiation and

signing of the Severance Agreement, Judicial Watch's subsequent mailing of allegedly

misleading fund-raising materials, Judicial Watch's alleged efforts to defame and disparage

Klayman once he departed, and Judicial Watch's various alleged breaches of the Severance

Agreement. As such, Klayman and Benson's claims cannot be said to "derive from the same nucleus of operative fact" and are not "so related" to each other as to form part of the same "case or controversy." The Court therefore declines to exercise supplemental jurisdiction over Benson's claims and, as a result, shall dismiss without prejudice Counts One, Two, and Three of the Second Amended Complaint for lack of subject matter jurisdiction.

    2.    *Plaintiff Klayman's Claims - Counts Four, Five, Six, and Nine*

    a.    *Count Four - Violation of the Lanham Act*

Plaintiff Klayman alleges that, more than a month after he stepped down as Chairman and General Counsel of Judicial Watch, Fitton caused Judicial Watch to send a fund-raising letter which falsely represented that Klayman was still Chairman and General Counsel of Judicial Watch and used Klayman's name and image without permission. *Id.* ¶ 48; Ex. A (10/03 Judicial Watch Verdict mailing). Klayman alleges that this mailing created confusion among donors, who mistakenly sent donations to Judicial Watch, believing that Klayman was still running Judicial Watch. *Id.* ¶ 49. Furthermore, Klayman alleges that he "is a celebrity within the non-profit legal/political community" and is "widely recognized, both nationally and internationally, as the leading figure in the world of government and judicial oversight and public 'watchdog' groups." *Id.* ¶ 101. As a result, Klayman alleges that Defendants knowingly used his name and likeness on fund-raising materials a month after he stepped down as Chairman of Judicial Watch, thereby violating Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and (B). *Id.* ¶¶ 97-106.

Section 43(a) of the Lanham Act provides, in relevant part, as follows:

Any person who, in connection with any goods or services . . . uses in commerce

20

any word, term, name, symbol, or device, or any combination thereof . . . which –

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §1125(a).  In Count Four, Klayman claims that the allegedly misleading mailing violated both prongs of the Lanham Act – the "false endorsement" prong, Section 43(a)(1)(A), and the "false advertising" prong, Section 43(a)(1)(B).  SAC ¶ 98.  Although Fitton and Judicial Watch interpret Klayman's claim as one asserting false endorsement under Section 43(a)(1)(A), *see* Fitton/JW Mot. to Dismiss at 11, they do not challenge his standing to bring a cause of action under the false advertising prong, Section 43(a)(1)(B).  Nevertheless, the Court notes that this Circuit has not addressed whether a celebrity may bring a claim under Section 43(a) of the Lanham Act based on misleading or deceptive use of their name or likeness, and that the two Circuits and various District Courts that appear to have addressed the issue have allowed such claims to be brought under Section 43(a)(1)(A), the false endorsement prong of Section 43(a) of the Lanham Act.  *See, e.g.*, *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997); *Parks v. LaFace Records*, 329 F.3d 437, 445-46 (6th Cir. 2003); *Albert Fürst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, No. 04 Civ. 6107 (DAB), 2006 WL 2289847, * 10-11 (S.D.N.Y. Aug. 8, 2006).  As a result, the Court shall consider whether Klayman states a claim for false endorsement in violation of Section 43(a)(1)(A) of the Lanham Act.

"Celebrities have standing to sue under § 43(a) because they possess an economic interest in their identities akin to that of a traditional trademark holder." *Parks*, 329 F.3d at 445 (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992)). "A celebrity has a . . . commercial investment in the 'drawing power' of his or her name and face in endorsing products and in marketing a career," *Allen v. National Video, Inc.*, 610 F. Supp. 612, 625 (S.D.N.Y. 1985), which has been compared to the "property interest" of a trademark holder, *Parks*, 329 F.3d at 447. Fitton and Judicial Watch do not dispute that celebrities, in general, may bring false endorsement claims under Section 43(a) of the Lanham Act, and for purposes of their motion to dismiss they accept, as the Court must, Klayman's allegations that he is a "celebrity within the non-profit legal/political community" and is "widely recognized, both nationally and internationally, as the leading figure in the world of government and judicial oversight and public 'watchdog' groups." *See* Fitton/JW Mot. to Dismiss at 11-12 (citing SAC ¶ 101). Instead, Fitton and Judicial Watch maintain that Klayman fails to state a claim for false endorsement because he does not claim "that his name and likeness have any uniquely exploitable commercial or economic value." *Id.* at 12. However, Fitton and Judicial Watch do not cite to the Court any legal authority – nor is the Court aware of any such authority – to support their argument that Klayman is required, in addition to alleging that he is a celebrity, to allege "that his name and likeness have [a] uniquely exploitable commercial or economic value."[4]

---

[4] Fitton and Judicial Watch may have drawn the idea that Klayman is required to specifically allege "that his name and likeness have [a] uniquely exploitable commercial or economic value," Fitton/JW Mot. to Dismiss at 12, from *Allen v. National Video, Inc.*, in which the court stated that the familiarity of millions of people with Woody Allen's face and his "reputation for artistic integrity, have significant, exploitable, commercial value." *Allen*, 610 F. Supp. at 617. *Allen* does not state, however, that a plaintiff must specifically allege as much in order to maintain a claim of "false endorsement" under Section 43(a) of the Lanham Act.

The Second Amended Complaint includes the following allegations, which the Court finds sufficient to state a claim for false endorsement under Section 43(a) of the Lanham Act: (1) he is a "celebrity within the non-profit legal/political community" and is "widely recognized, both nationally and internationally, as the leading figure in the world of government and judicial oversight and public 'watchdog' groups," SAC ¶ 101; (2) Defendants "deliberately used Klayman's image and name to confuse donors into thinking that Klayman was still affiliated with Judicial Watch" and "to entice donors to continue giving donations to Judicial Watch," *id.* ¶¶ 103-104; and (3) the allegedly deceptive mailing "created confusion among donors" who "mistakenly sent donations to Judicial Watch," *id.* ¶ 49. As a result, the Court shall deny Fitton and Judicial Watch's motion to dismiss as to Count Four of the Second Amended Complaint. Furthermore, the Court's conclusion applies equally to Defendants Orfanedes and Farrell, insofar as they have joined in Fitton and Judicial Watch's motion to dismiss Count Four. The Court notes, however, that what Klayman must prove in order to succeed on a claim for false endorsement is far removed from what he must allege in order to survive a motion to dismiss. The Court does not opine at this time on whether Klayman will ultimately be required to prove that he has an economic interest in his name and likeness in order to prevail on a claim for false endorsement under Section 43(a) of the Lanham Act.

b.     *Count Five - Violation of Florida Statute § 540.08*

Count Five relates to the same mailing that forms the basis of Count Four, and alleges that the fund-raising mailing constituted an unauthorized use of Klayman's name and likeness without his "express written or oral consent." SAC ¶ 108. Klayman further alleges that these acts "were perpetrated and occurred both nationally and internationally" and that the "misuse of

23

Klayman's name and likeness were calculated to confuse donors into believing that Klayman was soliciting their donations." *Id.* at 108-109. Klayman alleges that Defendants' conduct constitutes a violation of Florida Statute § 540.08, which provides, "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by (a) such person . . . ." Fla. Stat. § 540.08.

Fitton and Judicial Watch argue that Count Five must be dismissed because, as the alleged unauthorized mailing was sent in October 2003, Klayman's claim is barred by the District of Columbia's one-year statute of limitations for actions involving libel and slander. Fitton/JW Mot. to Dismiss at 14-16. Fitton and Judicial Watch initially argue that District of Columbia law applies to Count Five because "the parties executed a Severance Agreement on September 19, 2003 that contains a choice of law provision designating the laws of the District of Columbia as governing the relationship of the parties." *Id.* at 15. As Fitton and Judicial Watch admit, however, that choice of law provision provides that the "Agreement shall be governed by and construed in accordance with the laws of the District of Columbia, without regard to its conflict of laws principles." *Id.* While Fitton and Judicial Watch argue that "determination of [Klayman's claims under Florida Statute § 540.08] will necessarily involve the rights of the parties as set forth in the Severance Agreement," *id.*, that is not actually the case. Klayman does not claim that the alleged unauthorized mailing was a breach of the Severance Agreement, but rather alleges that it constituted an entirely separate statutory violation which is actionable under Florida law. The fact that the Severance Agreement is governed by District of Columbia law is therefore irrelevant to determining whether Klayman's claim for a violation of Florida Statute

24

§ 540.08 is barred by a District of Columbia statute of limitations.

Fitton and Judicial Watch next assert that application of the District of Columbia choice of law principles demonstrates that District of Columbia law applies because the "conduct alleged in Count Five of the Second Amended Complaint is analogous to a claim of libel and slander in the District of Columbia," which is governed by a one-year statute of limitations. *Id.* A federal court sitting in diversity must apply state law to the substantive issues before it. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938). As the statute of limitations is considered substantive for this purpose, the Court looks to state law to determine whether Klayman's cause of action based on state law has expired, and applies the District of Columbia choice of law rules to determine which state's statute of limitations applies. *A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); and *Lee v. Flintkote Co.*, 593 F.2d 1275, 1278-80 (D.C. Cir. 1979)). Furthermore, the District of Columbia choice of law rules "treat statutes of limitations as procedural, and therefore almost always mandate application of the District's own statute of limitations." *Id.* (citations omitted).

However, Fitton and Judicial Watch's argument that Klayman's claim under Florida Statute § 540.08 is barred by a District of Columbia statute of limitations posits a false conflict between the District of Columbia one-year statute of limitations for libel and slander and the four-year statute of limitations for actions brought under Florida Statute § 540.08. *See Epic Metals Corp. v. Condec, Inc.*, 867 F. Supp. 1009, 1015 (M.D. Fla. 1994) ("Because section 540.08 does not provide its own limitations period and the action does not fall within any of the

25

specific categories provided in Florida Statute § 95.11, the four year all inclusive statute of

limitations is applicable.") (citing Fla. Stat. § 95.11(3)(p)).  Under District of Columbia law,

appropriation of one's name or likeness is one theory on which a plaintiff may maintain a

common law tort cause of action for invasion of privacy, a tort which is governed by a one-year

statute of limitations.  *Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1074 (D.C. Cir. 1995)

(citing *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 586 (D.C. 1985) and *Doe v.*

*Southeastern University*, 732 F. Supp. 7, 8 (D.D.C. 1990), *appeal dismissed*, 927 F.2d 1257

(D.C. Cir. 1991)).

        In contrast, Florida Statute § 540.08 specifically states, "[t]he remedies provided for in

this section shall be in addition to and not in limitation of the remedies and rights of any person

under the common law against the invasion of her or his privacy."  Fla. Stat. § 540.08(6).  The

District of Columbia one-year statute of limitations for common law claims of invasion of

privacy is therefore inapplicable to Klayman's claim under Florida Statute § 540.08 because that

statute is intended to create a cause of action above and beyond Klayman's rights under the

common law.  As a four-year statute of limitations therefore applies to Klayman's claim under

Florida Statute § 540.08, *see Epic Metals Corp.*, 867 F. Supp. at 1015, the Court shall deny

Fitton and Judicial Watch's motion to dismiss as to Count Five of the Second Amended

Complaint.[5]  Furthermore, insofar as Defendants Orfanedes and Farrell joined in Fitton and

---

        [5] The Court notes that, in proceeding with this action, it will require Klayman to provide
a satisfactory explanation as to why he should be allowed to invoke a Florida statute in this
action, when (1) the allegedly unauthorized mailing was sent from the District of Columbia; (2)
Klayman has opted to bring suit in the District of Columbia; and (3) his allegations of injury in
Florida flowing from the allegedly unauthorized mailing, while sufficient to withstand a motion
to dismiss for failure to state a claim, are sparse at best.  *Cf. Gritzke v. M.R.A. Holding, LLC*, No.
4:01CV496-RH, 2002 WL 32107540, *1 (N.D. Fla. Mar. 15, 2002) (denying motion to dismiss

Judicial Watch's motion to dismiss as to Count Five, the Court's conclusion applies equally to them.

### c.    Count Six - Rescission for Breach of Contract

In Count Six of the Second Amended Complaint, Klayman seeks rescission of the Severance Agreement, alleging various willful breaches of the Severance Agreement by Judicial Watch, and claiming that Judicial Watch's "deliberate misrepresentation" that an appropriate Chairman would be found to succeed Klayman "materially induced [him] to enter into the Severance Agreement." SAC ¶¶ 133-135. Klayman alleges that Fitton and Judicial Watch's breaches of the Severance Agreement are "so pervasive and widespread that monetary damages would be inadequate" and that as a result, the Severance Agreement must be rescinded, with Klayman restored to his position as Chairman of Judicial Watch. *Id.* ¶¶ 135-137. Fitton and Judicial Watch assert that Count Six must be dismissed for two reasons. First, they argue that Klayman cannot seek the equitable remedy of rescission because an adequate remedy at law is available to him. Fitton/JW Mot. to Dismiss at 26-27. Second, they argue that before seeking rescission, Klayman must restore Judicial Watch to its pre-contract position, a feat which Fitton and Judicial Watch maintain Klayman is not able to perform. The Court finds Fitton and Judicial Watch's arguments unavailing at the motion to dismiss stage.

Fitton and Judicial Watch correctly argue that it is a basic doctrine of equity jurisprudence that equitable relief will not be granted where the plaintiff has a complete and adequate remedy at law. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S. Ct. 2031, 119 L. Ed. 2d

---

which argued that Florida Statute § 540.08 was inapplicable where videotape was made in Louisiana because plaintiff was a Florida resident who alleged that the videotape was advertised and sold in Florida).

157 (1992) (citing *O'Shea v. Littleton*, 414 U.S. 488, 499, 94 S. Ct. 669, 677-78, 38 L. Ed. 2d 674 (1974) and *Younger v. Harris*, 401 U.S. 37, 43-44, 91 S. Ct. 746, 750-51, 27 L. Ed. 2d 699 (1971)). However, while Klayman does seek damages for Judicial Watch's alleged breach of the Severance Agreement in Count Seven of the Second Amended Complaint, in Count Six Klayman alleges that monetary damages are inadequate and that rescission is necessary to prevent continued harm to Klayman and Judicial Watch. SAC ¶¶ 135-36. The Court is bound to credit Klayman's allegations on a motion to dismiss. While the equitable remedies of rescission and specific performance may ultimately prove unnecessary or an inadvisable means of addressing Judicial Watch's alleged breach of the Severance Agreement, the Court cannot conclude at this stage of proceedings that they are entirely unavailable to Klayman.[6]

Fitton and Judicial Watch are also correct that "inherent in the remedy of rescission is the return of the parties to their pre-contract positions," such that, in order to seek rescission, Klayman must restore Judicial Watch to its position at the time the Severance Agreement was made. *Id.* at 915 (citing *Kent Homes, Inc. v. Frankel*, 128 A.2d 444, 446 (D.C. 1957). Fitton and Judicial Watch argue that "[a]s a matter of law, Klayman is not able to restore Judicial Watch to its pre-contract position" because Klayman received $600,000 pursuant to the Severance

_____

[6] In allowing Klayman to pursue his claim for rescission, the Court notes that under the law of the District of Columbia, "[w]here a party to an executed contract discovers a material misrepresentation made in the execution of the contract, that party may elect one of two mutually exclusive remedies. He may either affirm the contract and sue for damages, or repudiate the contract and recover that with which he or she has parted." *Dean v. Garland*, 779 A.2d 911, 915 (D.C. 2001) (citing *Dresser*, 465 A.2d at 840). In the end, Klayman may not "rescind for breach of contract and at the same time recover damages for the breach." *Id.* (citations omitted). Although Klayman may set forth alternative claims for relief in his Second Amended Complaint, *see* Fed. R. Civ. P. 8(e)(2), and proceed on each claim past a motion to dismiss, he cannot ultimately receive double redress for a single wrong. *Id.* at 916 (citing *Giordano v. Interdonato*, 586 A.2d 714, 717 (D.C. 1991)).

Agreement, which he has not returned, and because, according to Fitton and Judicial Watch, the "many personnel, management and other" changes that have occurred in the three years since Klayman left Judicial Watch make it impossible for him to return to his former position as Chairman.  Fitton/JW Mot. to Dismiss at 28.  Fitton and Judicial Watch's second argument lacks merit because, while it may be uncomfortable at this point for Klayman to return to his position as Chairman of Judicial Watch, it is not "impossible" merely because the organization has changed in the past three years.  Their argument as to the monetary benefit that Klayman received under the Severance Agreement, however, has merit.  If Klayman ultimately opts to pursue a claim for rescission, he will be required to return to Judicial Watch the $600,000 he received under the Severance Agreement.  Nevertheless, Fitton and Judicial Watch do not cite the Court to authority – nor is the Court aware of such authority – indicating that Klayman is required to tender the monetary benefit he received at this juncture in order to maintain a cause of action for rescission.  As such, the Court shall deny Fitton and Judicial Watch's motion to dismiss as to Count Six of the Second Amended Complaint.[7]

### d.    Count Nine - Defamation

In Count Nine of the Second Amended Complaint, Klayman claims that "Judicial Watch, through Fitton, Orfanedes, Farrell and other agents and representatives . . . have defamed Klayman, by publishing false statements to various persons and entities . . .," SAC ¶ 149, and describes three allegedly defamatory publications, *id.* ¶¶ 148-162.  First, Klayman alleges that, in its 2003 and 2004 Form 990 tax returns, Judicial Watch knowingly published false claims that

---

[7] The Court shall leave further discussion of Count Six to its consideration of Defendants' not-yet-ripe Motion for Summary Judgment as to Counts Six, Seven, and Eight of the Second Amended Complaint, filed on December 26, 2006.

Klayman owed Judicial Watch money, and subsequently published the allegedly false and misleading tax returns on its website. *Id.* ¶¶ 66, 150-151. Second, Klayman alleges that Fitton and Judicial Watch knowingly sent a false statement to Judicial Watch employees claiming that Klayman filed this action because he owed Judicial Watch a significant sum of money. *Id.* ¶ 154. Third, Klayman alleges that Fitton and Judicial Watch published knowingly false statements in a number of media outlets, including *The Washington Post*, *The Washington Times*, *World NetDaily.com*, and *Slate.com*, because Defendants falsely told reporters that "Klayman filed his suit as a 'tactical maneuver designed to distract attention away from the fact that Klayman owes **more than a quarter of a million dollars to Judicial Watch**.'" *Id.* ¶¶ 156-157 (emphasis in original).

In addition, elsewhere in the Second Amended Complaint, Klayman alleges that Fitton has caused Judicial Watch to disparage and defame Klayman "in violation of the Severance Agreement" by allegedly doctoring press quotations originally made about Klayman so that they refer to Judicial Watch instead, and then posting these false statements on the Judicial Watch website. *Id.* ¶ 65. It is unclear whether these allegations provide support for Count Nine; however, Fitton and Judicial Watch address them in that context in their motion to dismiss. *See* Fitton/JW Mot. to Dismiss at 23-25. As such, in addition to discussing the three categories of allegedly defamatory statements described by Klayman in Count Nine, the Court shall consider whether Klayman's allegations that Judicial Watch doctored press quotations to remove references to Klayman state a claim for defamation.

"A statement is actionable in defamation under District of Columbia law if it is both false and defamatory." *Weyrich v. The New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) (citing

*Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994), *rev'd in part on rhr'g*, 22

F.3d 310 (D.C. Cir. 1994).[8]  On a motion made pursuant to Federal Rule of Civil Procedure

12(b)(6), the Court must assume the falsity of any express or implied factual statements,

*Weyrich*, 235 F.3d at 623, and a statement is considered "defamatory 'if it tends to injure plaintiff

---

[8] The Court shall apply the District of Columbia law of defamation in assessing Klayman's Count Nine.  The Court notes that Defendants rely on District of Columbia law, *see* Fitton/JW Mot. to Dismiss at 16-26, and that Klayman does not actually argue that choice of law principles favor the application of Florida law, *see* Fitton/JW Reply at 6 n.3.  While Klayman does cite a single Florida case for the elements of defamation, he otherwise relies solely on District of Columbia law in opposing Fitton and Judicial Watch's motion to dismiss and states that "[a]ssuming the District of Columbia law applies to this intentional tort the required elements for the claim are the same as those required under Florida law."  Pls' Opp'n to Fitton/JW Mot. at 18 n.1.

Furthermore, although the parties have not briefed this issue, the Court concludes that applying the District of Columbia's governmental interest analysis test to determine the proper law of defamation to apply to this diversity action would likely lead as well to the application of District of Columbia law.  *See Weyrich*, 235 F.3d at 626 (citing *Klaxon*, 313 U.S. at 496, 61 S. Ct. 1020).  The governmental interest approach adheres to a two-step inquiry: 1) identifying the governmental policies underlying the applicable laws; and 2) determining which state's policy would be most advanced by having its law applied to the facts of this case.  *See Stutsman v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 546 A.2d 367, 373 (D.C. 1988); *Williams v. Williams*, 390 A.2d 4, 6 (D.C. 1978).  To evaluate which state has the stronger interest, the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145 are also considered: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and 4) the place where the relationship is centered.  *See Hercules*, 566 A.2d at 40-41.

Here, Klayman alleges various defamatory statements, including statements published by Judicial Watch on its website, presumably from its District of Columbia headquarters; statements made to members of the media, including *The Washington Post* and *The Washington Times*; and statements made to Judicial Watch employees, again presumably at the District of Columbia headquarters.  As a result, the majority of the alleged conduct causing Klayman's injury occurred in the District of Columbia.  In addition, Judicial Watch is headquartered in the District of Columbia, and the Klayman-Judicial Watch relationship is centered in the District of Columbia, where Klayman was employed by Judicial Watch.  While Klayman alleges that he is a resident of Florida and that, as such, harm to his reputation accrued in Florida, it appears that the District of Columbia's interest in this action is stronger.  The Court shall therefore apply the District of Columbia law of defamation in assessing Count Nine.  If the parties disagree with this conclusion, they are instructed to brief the issue completely in their next round of briefing.

in his trade, profession or community standing, or lower him in the estimation of the

community," *id.* at 627 (quoting *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1293-

94 (D.C. Cir. 1988)).  "An allegedly defamatory remark must be more than unpleasant or

offensive; the language must make the plaintiff appear odious, infamous, or ridiculous."

*Weyrich*, 235 F.3d at 627 (citing *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1989)).

Fitton and Judicial Watch assert, and Klayman does not contest, that the appropriate

standard for defamation to apply in this case is that of a public person.  *See* Fitton/JW Mot. to

Dismiss at 16 n.6; Pls' Opp'n to Fitton/JW Mot. at 21.  As the Supreme Court has explained,

> Those who, by reason of the notoriety of their achievements or the vigor and
> success with which they seek the public's attention, are properly classed as public
> figures . . . may recover for injury to reputation only on clear and convincing proof
> that the defamatory falsehood was made with knowledge of its falsity or with
> reckless disregard for the truth.

*Gertz v. Welch*, 418 U.S. 323, 342, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974).  However, as

Klayman correctly notes, on a motion to dismiss made under Federal Rule of Civil Procedure

12(b)(6), the Court must assume that statements were made with knowledge of their falsity or

disregard for their truth.  *Weyrich*, 235 F.3d at 623.  On this motion, the Court is therefore

required only to decide whether the allegedly defamatory statements "(1) contain[] express or

implied verifiably false statements of fact, which (2) are reasonably capable of defamatory

meaning or otherwise place appellant in an offensive false light." *Id.* (citing *Moldea*, 15 F.3d at

1142-43; *Guilford Transp. Ind., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000)).

> i.    *Statements in Form 990 Tax Returns*

Fitton and Judicial Watch argue that Klayman cannot state a claim for defamation based

on the alleged false statements made in Judicial Watch's 2003 and 2004 Form 990 tax returns

because "[a]s a matter of law and of public policy, statements contained in mandatory governmental filings are absolutely privileged against claims for defamation, regardless of the existence or absence of actual malice." Fitton/JW Mot. to Dismiss at 17.[9] In support of this assertion, Fitton and Judicial Watch point to the Restatement Second of Torts § 592A, which states that "[o]ne who is required by law to publish defamatory matter is absolutely privileged to publish it." Restatement (Second) of Torts § 592A (1977).

As Fitton and Judicial Watch explain, IRS regulations provide that a 501(c)(3) non-profit organization like Judicial Watch "shall make its annual information returns . . . available for public inspection without charge in [its offices] during regular business hours." Fitton/JW Mot. to Dismiss at 18; 26 C.F.R. § 301.6104(d)-1(a). In addition, the regulations provide that Judicial Watch "shall provide a copy without charge . . . of all or any part of any application required to made available for public inspection under this paragraph to any individual who makes a request for such copy in person or in writing." *Id.* The regulations further provide that a 501(c)(3) organization is not required to comply with requests for copies of its annual information return if "the organization has made the requested document widely available," Fitton/JW Mot. to Dismiss at 18; 26 C.F.R. § 301.6104(d)-2(a), and specifically explain that a 501(c)(3)

---

[9] The Court notes that affirmative defenses, such as privilege, may be raised on a motion made pursuant to Federal Rule of Civil Procedure 12(b) "when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Here, the Second Amended Complaint specifically alleges that Defendants published defamatory statements in their Form 990 tax returns, and made those returns available on the Judicial Watch website. SAC ¶¶ 66, 150-51. As such, it is appropriate for Fitton and Judicial Watch to raise their affirmative defense on a motion to dismiss under Rule 12(b). The Court further notes that Fitton and Judicial Watch's Seventeenth Affirmative Defense pled in their Answer to Plaintiffs' Second Amended Complaint is an affirmative defense of privilege as against Klayman's claim for defamation. *See* Ans. of Defs. JW and Fitton to Pls' Second Am. Compl. at 11.

organization may make its annual information return "widely available" by posting it on the organization's webpage, Fitton/JW Mot. to Dismiss at 18; 26 C.F.R. § 301.6104(d)-2(b)(2). Fitton and Judicial Watch thus argue that "[w]hen Judicial Watch posted its Forms 990 on its website, it did so not on its own initiative, but in order to ensure compliance with the law" and that the "privilege for this type of compulsory publication is – and as a matter of public policy, must be – absolute."  Fitton/JW Mot. to Dismiss at 18-19.  Fitton and Judicial Watch further rely on *Goggins v. Hoddes*, 265 A.2d 302 (D.C. 1970), in which the District of Columbia Court of Appeals found that a report which an employer filed with the District Unemployment Compensation Board could not form the basis of an action for libel because the employer was required by law to file the report.  *Id.* at 303.[10]

Klayman disputes Fitton and Judicial Watch's assertion that statements made in its Form 990 tax returns are absolutely privileged.  Klayman concedes that Judicial Watch is required to make its annual information returns available for public inspection, but maintains that the decision to make a return widely available by posting it on the organization's website is elective rather than mandatory.  Pls' Opp'n to Fitton/JW Mot. at 19-21  Klayman thus seeks to distinguish *Goggins* by arguing that in that case, the reports were required to be published and were to be kept confidential, whereas in the instant case, Klayman argues, the "publication was voluntary and broad."  *Id.* at 19.  However, the applicable regulations specifically provide that a

---

[10] Neither party has cited the Court to case law specifically addressing the issue of whether an absolute privilege applies to tax returns, nor did the Court locate such case law in its own research.  The Court is aware that courts in other jurisdictions, in the context of other forms required by law to be submitted, have considered a qualified privilege appropriate.  *See, e.g.*, *Dawson v. New York Life Ins. Co.*, 135 F.3d 1158 (7th Cir. 1998).  However, the Court is aware of no precedent from this jurisdiction indicating that the privilege at issue is qualified rather than absolute.

501(c)(3) may, in lieu of complying with requests for copies of its annual information return, make the document "widely available," and that one permissible means of doing so is posting the document on the organization's webpage. 26 C.F.R. §§ 301.6104(d)-2(a), 2(b)(2). As such, in filing its Form 990 tax returns and posting them on the organization's website, Judicial Watch was performing a duty required by law in a means specifically permitted by the applicable regulations. Judicial Watch was therefore acting pursuant to its legal duty, and cannot be said to have "voluntarily" published allegedly defamatory material.

Moreover, Klayman's attempt to distinguish the instant case from *Goggins* on the grounds that the forms in *Goggins* were kept confidential and never published to outside parties is unavailing. To meet the element of publication in the context of defamation, "[i]t is not necessary that the defamatory matter be communicated to a large or even a substantial group of persons. It is enough that it is communicated to a single individual other than the one defamed." Restatement (Second) of Torts § 577 cmt. b (1977); *see also Steinbuch v. Cutler*, Civ. A. No. 05-0970 (PLF), 2006 WL 3060084 (D.D.C. Oct. 30, 2006) ("as used in connection with liability for defamation . . . '[p]ublication' can mean communication to a single person.") (citing Restatement (Second) of Torts § 652D cmt. a). As a result, the fact that Judicial Watch allegedly published defamatory material to anyone who visited the organization's website, while the defendant in *Goggins* published the allegedly defamatory form only to the District Unemployment Compensation Board, is a distinction of no legal consequence.

Finally, Klayman argues that there is "no privilege known to the common law of defamation protecting the intentional publication of false material," and as such, that Judicial Watch's Form 990 tax returns cannot be absolutely privileged because Klayman alleges that the

returns contain defamatory and ancillary information.  Pls' Opp'n to Fitton/JW Mot. to Dismiss

at 20-21.  However, "the fact that the [returns were] defamatory (if [they were]) cannot determine

the applicability of the privilege, since the very purpose of the privilege is to protect against

liability for defamation."  *Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006) (addressing

statements made in complaint in connection with applicability of litigation privilege).  The Court

shall therefore grant Fitton and Judicial Watch's motion to dismiss Count Nine insofar as it is

based on allegedly defamatory statements made in Judicial Watch Form 990 tax returns.[11]

Furthermore, the Court's conclusion applies equally to Defendants Orfanedes and Farrell, who

joined in Fitton and Judicial Watch's motion to dismiss as to Count Nine.

       *ii.*      *Statement to Judicial Watch Employees*

Fitton and Judicial Watch next argue that Klayman cannot maintain a claim for

defamation based on an allegedly false statement sent by Defendants to Judicial Watch

employees claiming that Klayman filed this action because he owed Judicial Watch a significant

sum of money, SAC ¶ 154, because "such statements are mere expressions of opinion regarding a

matter of public concern, namely the dispute between a well-known public watchdog group and

---

[11] Fitton and Judicial Watch filed their reply in further support of their motion to dismiss Counts One through Six and Nine of the Amended Complaint on September 1, 2006.  Plaintiffs subsequently filed a motion for leave to file a sur-reply on September 14, 2006.  Plaintiffs proposed sur-reply is limited to the issue of whether Judicial Watch's Form 990 tax returns were subject to an absolute privilege, and Defendants opposed Plaintiffs' motion for leave to file a sur-reply on September 22, 2006.  The Court shall deny Plaintiffs' motion for leave to file a sur-reply.  "A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond."  *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002).  Here, Fitton and Judicial Watch's reply does not raise any new matters, and Plaintiffs' proposed sur-reply simply seeks to continue arguing a matter already addressed in his Opposition.  As such, it is not appropriate to permit the sur-reply to be filed.

its former chairman." Fitton/JW Mot. to Dismiss at 21. Fitton and Judicial Watch are correct that "[f]air comment or criticism on a matter of public interest is not actionable so long as the comment is not motivated by malice." *Fisher v. Washington Post Co.*, 212 A.2d 335, 337 (D.C. 1965). Indeed, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990). This "fair comment privilege" "provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our nation." *Id.* (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53-55, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988).

However, it is equally true that the "fair comment defense goes only to opinions expressed by the writer and does not extend to misstatements of fact." *Fisher*, 212 A.2d at 337 (citing *Washington Times Co. v. Bonner*, 86 F.2d 836 (D.C. Cir. 1936)). "Thus where a statement of 'opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard for the truth" and with some level of fault. *Milkovich*, 497 U.S. at 20-21, 110 S. Ct. 2695. Here, while Fitton and Judicial Watch claim that their "[s]tatements regarding the perceived motive for [Klayman's] lawsuit . . are mere expressions of opinion regarding a matter of public concern," Fitton/JW Mot. to Dismiss at 21, Klayman specifically alleges that Judicial Watch made false and defamatory statements of fact. According to Klayman, "Fitton and Judicial Watch knowingly sent a false statement to all Judicial Watch employees, which stated that Klayman filed his lawsuit because

he owed Judicial Watch a significant sum of money," and that all Defendants "knew that

Klayman did not, individually, owe Judicial Watch any money when they published the false and

misleading statement."  SAC ¶¶ 154-155.[12]  Accepting Klayman's allegations as true, it is clear

that Fitton and Judicial Watch's allegedly defamatory statements are "not the sort of loose,

figurative, or hyperbolic language which would negate the impression that" Fitton and Judicial

---

[12] Klayman's allegations that Fitton and Judicial Watch knowingly misstated to Judicial Watch employees that Klayman owed Judicial Watch a significant sum of money, while admittedly sparse, are sufficient to meet the notice pleading requirement applicable to defamation actions.  *See Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 n.2 (D.C. Cir. 1999) ("the Federal Rules of Civil Procedure impose no special pleading requirements for defamation as they do for a specified list of other matters.").  However, in addition to the allegations discussed above, in his Opposition to Fitton and Judicial Watch's motion to dismiss, Klayman argues that two additional allegations – included in Plaintiffs' Second Amended Complaint but not under the heading "Count Nine" – describe further defamatory misstatements of fact by Fitton and Judicial Watch.  Pls' Opp'n to Fitton/JW Mot. to Dismiss at 22.  Specifically, Klayman points to his allegations that Fitton and Judicial Watch (1) affirmatively told callers to Judicial Watch that "they could not discuss the 'reasons' why Klayman left Judicial Watch, contrary to the express provisions in the Severance Agreement, in order to create the erroneous impression that Klayman was forced to leave Judicial Watch," SAC ¶ 37; and (2) "[o]n information and belief . . . interfered with Klayman's relationships with . . . former clients who had offered to help Klayman in his Senate campaign, by disparaging, defaming, holding in a false light and providing false and misleading information to them to cause them to sever their relationships with Klayman." *Id.*; SAC ¶ 66J.  Klayman argues that these statements "contain verifiably false statements of fact which contain reasonable defamatory meaning" because the Severance Agreement states that "Klayman's separation shall be treated for all purposes as a voluntary resignation."  Pls' Opp'n to Fitton/JW Mot. to Dismiss at 22.
    Neither of these allegations are sufficient to state a claim for defamation.  Klayman's allegation that Fitton and Judicial Watch interfered with Klayman's relationships with former clients fails to meet even the notice pleading requirement of Federal Rule of Civil Procedure 8 because it does not actually allege a particular "false and defamatory statement" or even the general nature of any allegedly defamatory statements, and is therefore insufficient "to permit the opposing party to form responsive pleadings." *See Crowley v. N. Am. Telecomm. Ass'n.*, 691 A.2d 1169, 1172 (D.C. 1997).  Furthermore, Klayman's allegation that Fitton and Judicial Watch told callers that they "could not discuss the 'reasons' why Klayman left Judicial Watch" is not reasonably capable of having a defamatory meaning because it is not even "unpleasant or offensive," let alone "odious, infamous, or ridiculous."  *Weyrich*, 235 F.3d at 627 (citing *Howard Univ.*, 484 A.2d at 989).

38

Watch were seriously maintaining that Klayman owed Judicial Watch a significant sum of money. *Milkovich*, 497 U.S. at 21, 110 S. Ct. 2695. Moreover, the "connotation" that Klayman owed Judicial Watch money "is sufficiently factual to be susceptible of being proved true or false," *id.*, and as such Judicial Watch's allegedly defamatory statement to Judicial Watch employees may properly form the basis for Klayman's action for defamation. The Court shall therefore deny Fitton and Judicial Watch's motion to dismiss the Second Amended Complaint insofar as it relates to allegations that they knowingly misrepresented to Judicial Watch employees that Klayman owed the organization significant sums of money. Furthermore, as Defendants Orfanedes and Farrell joined in Fitton and Judicial Watch's motion to dismiss as to Count Nine, the Court's conclusion applies equally to them.

<em>iii.     Statements to the Media</em>

In their motion to dismiss, Fitton and Judicial Watch argue that Klayman's claim for defamation must be dismissed to the extent that it is based on alleged threats made by Defendants to the media "that Judicial Watch could and would take legal action against the media outlets if they permitted Klayman to appear and truthfully state he was the founder and former Chairman of Judicial Watch." Fitton/JW Mot. to Dismiss at 25-26. However, as Klayman points out in his Opposition to Fitton and Judicial Watch's motion to dismiss, Count Nine does not specifically refer to the allegations challenged by Fitton and Judicial Watch, but instead includes allegations that Fitton and Judicial Watch published knowingly false statements in media outlets, including *The Washington Post, The Washington Times*, World NetDaily.com, and Slate.com, that "Klayman filed his suit as a 'tactical maneuver designed to distract attention away from the fact that Klayman owes **more than a quarter of a million dollars to Judicial Watch**." Pls' Opp'n

to Fitton/JW Mot. to Dismiss at 25; SAC ¶¶ 156-157 (emphasis in original). Fitton and Judicial Watch appear to accept this clarification, as they do not respond to Klayman's allegations regarding threats to media outlets in their Reply in further support of their motion to dismiss.

With respect to Klayman's allegations that Fitton and Judicial Watch misrepresented to the media that Klayman owed Judicial Watch more than a quarter of a million dollars, Fitton and Judicial Watch assert that such statements were nothing more than expressions of opinion regarding a matter of public concern. Fitton/JW Mot. to Dismiss at 21. However, as discussed above, this argument is unavailing because Klayman clearly alleges misstatements of verifiable facts. Indeed, Klayman sufficiently alleges (1) that Defendants made false and defamatory statements concerning Klayman; (2) published the statements without privilege to various media outlets; (3) with knowledge of the falsity of their statements; and (4) that Defendants' false statements caused damage to Klayman. *See Crowley*, 691 A.2d at 1172 n.2 (stating elements of defamation under District of Columbia common law). The Court shall therefore deny Fitton and Judicial Watch's motion to dismiss Count Nine of the Second Amended Complaint to the extent that it is based on allegedly false statements to the media. Furthermore, insofar as Defendants Orfanedes and Farrell joined in Fitton and Judicial Watch's motion to dismiss as to Count Nine, the Court's conclusion applies equally to them.

> iv.    *Removal of Klayman's Name from Statements on Judicial Watch Website*

Finally, Fitton and Judicial Watch argue that Count Nine of the Second Amended Complaint must be dismissed insofar as it is based on Klayman's allegations that Fitton and Judicial Watch doctored press quotations originally made about Klayman so that they refer to

Judicial Watch instead, and then posted these false statements on the Judicial Watch website.

Fitton/JW Mot. to Dismiss at 23-25; SAC ¶ 65.  Although these allegations are not included

under the heading "Count Nine" in the Second Amended Complaint, Fitton and Judicial Watch

address them in that context in their motion to dismiss, and Klayman challenges Fitton and

Judicial Watch's arguments in his Opposition to their motion to dismiss.  Pls' Opp'n to

Fitton/JW Mot. to Dismiss at 23-24.  As a result, the Court considers whether such allegations

can support Klayman's claim for defamation, and concludes that they cannot.

Fitton and Judicial Watch argue that Klayman's allegations regarding doctored press

quotations cannot support a claim for defamation because on their face they are not defamatory

and do not concern Klayman.  Fitton/JW Mot. to Dismiss at 23.  In response, Klayman

unpersuasively argues that "the statements . . . are defamatory when considered in context and

taken as a whole [because the] effect of these statements on Judicial Watch's intended audience

is to undermine Klayman's ability to advocate as an attorney, represent and fundraise as a public

figure."  Pls' Opp'n to Fitton/JW Mot. to Dismiss at 24.  "[T]o satisfy the 'of and concerning'

element [of a claim for defamation], it suffices that the statements at issue lead the listener to

conclude that the speaker is referring to the plaintiff by description, even if the plaintiff is never

named or is misnamed."  *Croixland*, 174 F.3d at 216.  However, the Court cannot conclude that

Klayman has satisfied this element, based on a plain reading of the Second Amended Complaint.

The Second Amended Complaint posits as examples of Fitton and Judicial Watch's

alleged doctoring of press quotations two purportedly altered quotations.  Klayman first seeks to

compare an allegedly doctored quotation reading, "Judicial Watch appears to be the main public

interest litigator at this time, no small feat," (attributed to the *National Journal*, June 24, 2002),

41

with the purportedly original quotation, which reads "He (Klayman) appears to be the major public litigator at this time."  SAC ¶ 65.  Further, Klayman alleges that a quotation from Judicial Watch's website reading "Thanks, in part to aggressive litigation, Judicial Watch was recently named on of the top ten most effective government watchdog organizations by *The Hill* newspaper and a force in Washington by the *National Journal*" is based on a "real quote" from the *National Journal* of June 24, 2002 that reads ". . . through his challenge of secrecy rules, Klayman has become a major force in Washington."  However, on their faces, the quotations as they now read do not refer to Klayman at all, and thus cannot be said to lead anyone to conclude that they refer to Klayman by description.  As such, the quotations cannot form the basis for a defamation action because they are not "of and concerning" Klayman.  What Klayman actually alleges is that Fitton and Judicial Watch have failed to give him credit where credit is due; while Klayman make take issue with Fitton and Judicial Watch's alleged doctoring of quotations, the quotations in question, as they now read, cannot reasonably be read as defaming Klayman.  As a result, the Court shall grant Fitton and Judicial Watch's motion to dismiss Count Nine of the Second Amended Complaint insofar as it is based on the allegedly doctored quotations.  Furthermore, as Defendants Orfanedes and Farrell joined in Fitton and Judicial Watch's motion to dismiss Count Nine, the Court's conclusion applies equally to them.

> **B.**     *Defendants Orfanedes and Farrell's Motion to Dismiss*

Defendants Orfanedes and Farrell are named as individual defendants in Counts Four (Lanham Act), Five (Florida Statute 540.08), and Nine (Defamation) of the Second Amended Complaint.  Orfanedes and Farrell have filed a separate Motion to Dismiss the Second Amended Complaint, in which they join Fitton and Judicial Watch's motion to dismiss as to the substance

of Counts Four, Five, and Nine. The Court will not repeat its conclusions with respect to Fitton

and Judicial Watch's motion to dismiss Counts Four, Five, and Nine; however, as Orfanedes and

Farrell have joined in the substance of that motion, as noted above, the Court's conclusion with

respect to each Count applies equally to them.

In their separate motion to dismiss, Orfanedes and Farrell further argue that Klayman's

claims against them must be dismissed because Klayman's allegations fail to support individual

liability on their parts. Orfanedes/Farrell Mot. to Dismiss at 2. Klayman opposes Orfanedes and

Farrell's motion to dismiss by arguing that Orfanedes and Farrell are named throughout the

allegations of the Second Amended Complaint, and that this is sufficient to give Orfanedes and

Farrell notice "that they are alleged to have committed, participated in, or inspired the

complained of acts." *Id.* at 7. Moreover, Klayman argues, "the issue of whether Orfanedes and

Farrell individually participated and are responsible for the alleged wrongdoing is a question of

fact and, therefore, not disposable" on a motion to dismiss. *Id.*

"Under the law of the District of Columbia, corporate officers are not shielded by the

limited liability of the corporation for [sic] liability for their own tortious acts." *Camacho v.

1440 Rhode Island Ave. Corp.*, 620 A.2d 242, 246 (D.C. 1993). Rather, "[i]ndividual liability

attaches when a corporate officer either physically commits the tortious conduct, or participates

in 'some meaningful sense' in the tortious conduct." *Id.* at 427 (citing *Vuitch v. Furr*, 482 A.2d

811, 823 (D.C. 1984). Orfanedes and Farrell argue that Klayman has failed to allege that they

participated in "some meaningful sense" in Judicial Watch's purportedly tortious conduct, and

that as a result he has failed to demonstrate that individual liability is appropriate. In support of

this argument, Orfanedes and Farrell claim that Klayman has simply inserted their names into the

relevant paragraphs of his Amended Complaint, rather than actually alleging culpable conduct on their parts.  Orfanedes and Farrell may be correct that Klayman has simply inserted their names into the relevant paragraphs of the Amended Complaint.  However, as the Second Amended Complaint now reads, it sufficiently alleges that Orfanedes and Farrell individually participated in "some meaningful sense" in Judicial Watch's purportedly tortious behavior.  The Court agrees that these allegations are somewhat sparse, but they are nevertheless sufficient to withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).

Specifically, in Count Four, Klayman alleges that Orfanedes and Farrell, along with the other defendants, "deliberately used Klayman's image and name to confuse donors into thinking that Klayman was still affiliated with Judicial Watch" in order to "entice donors to continue giving donations to Judicial Watch."  SAC ¶¶ 103-104.  Klayman thus sufficiently alleges that Orfanedes and Farrell participated in Judicial Watch's decision to send the allegedly misleading fund-raising mailing to Judicial Watch donors in order to elicit contributions.  Likewise, in Count Five, Klayman alleges that Orfanedes and Farrell, along with the other defendants, "deliberately misrepresented and falsely advertised that Klayman was Chairman and General Counsel of Judicial Watch after he left Judicial Watch to run for the Senate," *Id.* ¶ 109; that the "misuse of Klayman's name and likeness were calculated to confuse donors into believing that Klayman was soliciting their donations," *id.* ¶ 110; and that Orfanedes and Farrell "knew that donors that received the misleading fundraising publications would be confused by the publication and use of Klayman's name and likeness."  These allegations are sufficient to plead Orfanedes and Farrell's meaningful participation in Judicial Watch's purportedly unauthorized use of Klayman's name and likeness.  Finally, in Count Nine, Klayman alleges that despite knowing that Klayman did

44

not, individually, owe Judicial Watch any money, Fitton and Orfanedes falsely told reporters that Klayman owed Judicial Watch more than a quarter of a million dollars.  SAC ¶¶ 149-150, 157-159, 161.  These allegations sufficiently plead that Orfanedes and Farrell meaningfully participated in Judicial Watch's alleged defamation of Klayman.  The Court shall therefore deny Orfanedes and Farrell's separate motion to dismiss the Second Amended Complaint to the extent that it raises an argument not addressed in the motion to dismiss brought by Defendants Fitton and Judicial Watch.

> C.    *Defendants' Motion to Strike Portions of the Second Amended Complaint*

In addition to moving to dismiss the entire Second Amended Complaint, Defendants Fitton and Judicial Watch have moved, pursuant to Federal Rule of Civil Procedure 12(f) to strike various allegations contained in the Second Amended Complaint on the grounds that they are "immaterial, impertinent, and scandalous," as well as to strike "Plaintiff Klayman's request to be reinstated to his former positions of Chairman and General Counsel of Judicial Watch, Inc." Mot. to Strike at 1.  Klayman opposes this request, arguing that the challenged allegations are not "scandalous" and bear directly on the claims of the Second Amended Complaint.  Pls' Opp'n to Mot. to Strike.

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike pleadings are generally considered a drastic remedy disfavored by courts, and the decision to deny or grant such motions is in the sound discretion of the Court. *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 7–8 (D.D.C. 2004).  In the context of Rule 12(f), the word "scandalous" "generally refers to any allegation that unnecessarily reflects

on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (citations omitted). Matter in pleadings is immaterial and impertinent where it "is not materially relevant to any pleaded claim for relief or defense." *Makuch v. Fed. Bureau of Investigation*, Civ. A. No. 99-1094 (RMU), 2000 WL 914767 (D.D.C. Jan. 7, 2000) (citations omitted).

     As an initial matter, the Court notes that, insofar as Fitton and Judicial Watch challenge allegations raised in connection with Benson's claims, such allegations are no longer operative in light of the Court's dismissal of Benson's claims for lack of subject matter jurisdiction. Furthermore, the Court finds that none of the allegations relating to Klayman's claims that Fitton and Judicial Watch seek to challenge are, in fact, "scandalous," as that term is used in the context of motions to strike. Moreover, the Court is unable at this stage of proceedings to determine whether any of the challenged allegations will ultimately prove relevant to Klayman's legal claims. As this matter progresses, the issues and claims may become more narrow and certain allegations may prove superfluous, but the Court cannot, at this point in time, determine that the allegations challenged by Fitton and Judicial Watch are either immaterial or impertinent.

     Finally, as Klayman correctly argues, a motion to strike made pursuant to Rule 12(f) is not the proper vehicle for seeking the dismissal of Klayman's demand for reinstatement as Chairman and General Counsel of Judicial Watch, nor do Fitton and Judicial Watch cite any legal authority for striking a claim for relief on a Rule 12(f) motion. *See* Pls' Opp'n to Mot. to Strike at 11 (citing Wright & Miller, *Federal Practice and Procedure: Civil 3d § 1379*). In the context of their motion to dismiss, Fitton and Judicial Watch raise a number of challenges to Klayman's claim for rescission, which they repeat in their motion to strike. However, as

46

discussed above, Klayman's claim for rescission is sufficient to survive a motion to dismiss, and the Court will not reconsider Fitton and Judicial Watch's arguments in the improper context of a motion to strike made pursuant to Federal Rule of Civil Procedure 12(f).

      D.    *Defendants Fitton and Judicial Watch's Motion to Sever is Moot*

Fitton and Judicial Watch have further moved, pursuant to Federal Rule of Civil Procedure 20(a) and Local Civil Rule 7.1, to sever the claims of Plaintiff Benson from those of Plaintiff Klayman. However, in light of the Court's dismissal of Plaintiff Benson's claims for lack of subject matter jurisdiction, Fitton and Judicial Watch's motion to sever is now moot. As such, the Court shall deny the motion to sever.

## IV: CONCLUSION

For the reasons set forth above, with respect to the motion to dismiss Plaintiffs' Second Amended Complaint brought by Defendants Judicial Watch and Fitton, the Court shall (1) dismiss without prejudice Counts One, Two, and Three of Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction; (2) deny the motion to dismiss as to Counts Four, Five, and Six; (3) as to Count Nine of Plaintiffs' Second Amended Complaint, grant-in-part the motion to dismiss brought by Defendants Judicial Watch and Fitton insofar as it relates to allegedly defamatory statements made in Judicial Watch Form 990 tax returns and allegedly doctored press quotations posted on the Judicial Watch website; and (4) as to Count Nine of Plaintiffs' Second Amended Complaint, deny-in-part the motion to dismiss brought by Defendants Judicial Watch and Fitton insofar as it is based on allegedly false statements to Judicial Watch employees and the media. To the extent that Defendants Orfanedes and Farrell have joined in Fitton and Judicial Watch's motion to dismiss as to Counts Four, Five, and Nine,

the Court's conclusions with respect to those Counts apply equally to them. Furthermore, the Court shall (5) deny Plaintiffs' motion for leave to file a sur-reply; (6) deny the motion to dismiss Plaintiffs' Second Amended Complaint brought by Defendants Orfanedes and Farrell (insofar as it raises an additional argument not addressed in Fitton and Judicial Watch's motion to dismiss); (7) deny the motion to strike brought by Defendants Fitton and Judicial Watch; and (8) deny as moot the motion to sever brought by Defendants Judicial Watch and Fitton.

An appropriate Order accompanies this Memorandum Opinion.


Date:   January 17, 2007


_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge