IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Larry Klayman,  *Plaintiff,* | : : : | Civil Action No. 1:06-CV-00670 |
| v. | : : | Honorable Colleen Kollar-Kotelly |
| Judicial Watch, Inc., *et al.*  *Defendants.* | : : : : | **Jury Trial Demanded.** |

## PLAINTIFFS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS VI, VII AND VIII OF THE COMPLAINT

Pursuant to Local Rule 7(h) and Rule 56 of the Federal Rules of Civil Procedure, Plaintiff, Larry Klayman, submits this Statement of Genuine Issues setting forth material facts as to which exist genuine issues necessary to be litigated with respect to Counts Six through Eight of the Second Amended Complaint. Plaintiff submits this Statement in connection with his opposition to the Defendants' Motion for Partial Summary Judgment on those same counts (the "Motion").

**The Circumstances Surrounding Klayman's Resignation from Judicial Watch, Including the Material Misrepresentations Made By the Defendants Are In Dispute.**

1. In connection with his resignation from Judicial Watch, the parties entered into a Severance Agreement (the "Agreement"). Plaintiff, Larry Klayman, founded Judicial Watch in 1998, and until he resigned in 2003 was Chairman, General Counsel and Treasurer of Judicial Watch. As the head of Judicial Watch, Klayman hired Judicial Watch employees, including Defendants Fitton as President, Orfanedes as Counsel, and Farrell as Investigator of Judicial Watch. Klayman Decl. ¶ 6.

319448-2

2. In 2003, Klayman chose to run for the United States Senate from the State of Florida and to step down from his position at Judicial Watch. As a result, he entered into negotiations with Defendants about the terms of his severance. *Id.*

3. Prior to execution of the Agreement, Klayman discovered that Fitton had misrepresented his educational background to Klayman when Fitton was hired years earlier. Klayman Decl ¶ 8.

4. Klayman wanted, and Defendants Judicial Watch, Fitton, Orfanedes and Farrell agreed, to replace Fitton with a qualified individual with a legal background to lead Judicial Watch as successor to Klayman. Klayman and Judicial Watch engaged in discussions regarding several qualified individuals, including ex-Congressman, Bob Barr. Klayman Decl ¶ 9.

5. Klayman would not have entered into the Agreement in the absence of the Defendants' representations. Klayman Decl ¶¶ 10, 11.

6. Defendants' misrepresentations were false and Fitton remains in control of Judicial Watch. Klayman was fraudulently induced to enter into the Agreement as he focused on his Senate campaign. *Id.*

**Judicial Watch Failed to Pay Klayman His Final Paycheck**

7. In the Agreement, Judicial Watch promised to make "payment [to Klaymen] for compensation through his last day of work." Klayman Decl. ¶ 12, Ex. A (Agreement ¶ 2).

8. Defendants admit that they still owe payment of wages to Klayman for his employment during his tenure as Chairman of Judicial Watch. (Def. Br. at 7).

9. Klayman disputes that Defendants paid his compensation in full as required by the Agreement. Defendants admit that they owe Klayman compensation, although Klayman disputes the amount, $3,194.00 as conceded in the Motion. (Def. Br. at 7); Klayman Decl. ¶ 12.

2

319448-2

10. At a minimum, discovery is necessary to determine the level of compensation owed to Klayman as well as to whether Judicial Watch failed to provide other consideration as required under the Agreement including but not limited to health insurance for Klayman and his family. *See infra* ¶¶ 22-23; *see also* Fed. R. Civ P. 56(f).

**Defendants Failed To Act In Good Faith to Remove Klayman as Guarantor of Lease on Judicial Watch's Headquarters and on Credit Cards.**

11. The Agreement requires Defendants to act in good faith to remove Klayman as the guarantor of the lease for the headquarters' building. Defendants' admit they could have, but chose not to, remove Klayman from the lease. Whether their failure to do so was in bad faith presents a factual dispute. Klayman Decl. ¶ 13, 14.

12. Moreover, Defendants admit that they have made no effort whatsoever to have Klayman removed as guarantor of the lease for the headquarters' building since October, 2003, and they further admit that they could have, but chose not to remove Klayman as guarantor. (Def. Br. p. 9). Their failure to continue to seek Klayman's removal as guarantor itself raises a factual issue of whether they have acted in good faith.

13. Klayman disputes Defendants' account. Klayman was personally told by the Landlord that no one from Judicial Watch contacted him to remove Klayman as the guarantor of Judicial Watch's lease. Klayman Decl. ¶ 13. To date, Klayman is still guarantor of Judicial Watch's lease for its Washington, D.C. headquarters. *Id.*

14. In addition, the Defendants' failure to cause Judicial Watch to purchase the building, as they represented to Klayman and thousands of donors that they would, evidence their lack of good faith and fair dealing that has kept Klayman, unnecessarily, in the status of guarantor. Klayman Decl. ¶ 15.

3

15. The enormous contingent liability has caused damage to Klayman and his family. Klayman Decl. ¶ 16.

16. At a minimum, Klayman is entitled to discovery as to Defendants' failure to remove Klayman as guarantor of Judicial Watch's lease for its Washington, D.C. headquarters, as required under the Agreement. *See* Fed. R. Civ P. 56(f).

17. The Agreement also required Defendants to timely remove Klayman as the guarantor on Judicial Watch credit card accounts. In addition to the Amercian Express account, Klayman was guarantor of several other Judicial Watch credit card accounts, including Visa and Mastercard credit card account. Klayman Decl. ¶ 17. Judicial Watch failed to timely remove him as guarantor of these credit card accounts as required under the Agreement. *Id.*

**Defendants Converted Klayman's Property, Including Artwork**

18. The Agreement provided Klayman access to remove Klayman's property anf that of his law firm, Klayman & Associates, including artwork from Judicial Watch offices, including its headquarters in Washington, D.C. and its offices in Miami, Florida. Klayman Decl. ¶ 18.

19. Judicial Watch employees maintained exclusive control over Klayman's property and Klayman & Associates' property immediately following Klayman's voluntary resignation from Judicial Watch. Klayman Decl. ¶ 19.

20. Judicial Watch greatly restricted and outright refused to allow Klayman any meaningful access to retrieve all of his personal property and that belonging to him and his firm, including corporate books for corporations Klayman owns or owned, client files, other personal documents, and also including artwork, and other items from Judicial Watch's Washington, D.C. headquarters and Miami offices. Klayman Decl. ¶ 20. Despite Klayman's repeated demands for full access to his property, Defendants maintained control over Klayman's property and only

319448-2

occasionally sent files to him, and only when they chose to do so. *Id.* Klayman did not agree to any of the so-called inventories produced by Judicial Watch, and he never agreed to pay Judicial Watch for any expenses related to his property and that belonging to his firm. *Id.*

21. Klayman is the owner of at least four significant pieces of artwork that Klayman repeatedly demanded that Judicial Watch return, or allow him access to remove the artwork from Judicial Watch's offices. Klayman Decl. ¶ 20. At every turn, Defendants refused. *Id.*

22. As a result of Defendants' failure to allow Klayman access following his voluntary resignation to remove his property and that of his law firm, Klayman & Associates from Defendants' offices, Judicial converted Klayman's property, including artwork. Klayman Decl. ¶ 21

23. At a minimum, Klayman is entitled to discovery as to Defendants' failure to allow Klayman access to retrieve his property from Judicial Watch offices of Klayman's property and that of his law firm, Klayman & Associates as required under the Agreement. *See* Fed. R. Civ P. 56(f).

**Defendants' Failure to Provide Klayman Family Health Insurance Coverage**

24. Under paragraph 3(A) of the Agreement, "Judicial Watch shall pay the cost of such insurance, to the same extent that it paid Klayman's family health insurance coverage during his employment." Klayman Decl. ¶ 22, Ex. A ¶ 3(A).

25. A dispute clearly exists regarding Defendants' failure to provide Klayman's family with health insurance coverage as required in the Agreement.

26. Klayman's family health insurance coverage was provided by Judicial Watch prior to Klayman's voluntary resignation in September, 2003. *Id.*

5

27. Judicial Watch was aware that Klayman did not take salary increases in the last years as head of Judicial Watch in exchange for family health insurance coverage. Klayman Decl. ¶ 23.

28. Defendants admit that Judicial Watch has paid for family health insurance coverage and that they did not provide Klayman family health insurance coverage following Klayman's voluntary resignation. (Def. Br p. 18).

29. At a minimum, Klayman is entitled to discovery as to his family health insurance coverage and as to the self-serving and conclusory declarations of Defendants' employees, improperly proffered by Defendants in support of the Motion. *See* Fed. R. Civ P. 56(f).

**Defendants' Failure to Provide Klayman Access to Documents**

30. Under the Agreement, Klayman's separation "shall be treated for all purposes as a voluntary resignation." Klayman Decl. ¶ 24, Ex. A ¶ 1.

31. Also under the Agreement, Defendants were required to provide Klayman access to documents necessary to defend or respond to any accusation, action or threat of action against Klayman. *Id.*, Ex. A ¶ 4(F).

32. On several occasions, Klayman sought, but Defendants refused to provide, access to documents necessary to respond to accusations against him arising out of or relating to his tenure at Judicial Watch. *Id.* .

33. In one instance, following Klayman's resignation, Judicial Watch alleged that Klayman was required to pay for past expenses while Chairman of Judicial Watch. Klayman Decl. ¶ 25. As their accounting of expenses was wrong and supported by fictitious documents, Klayman repeatedly asked Defendants and their counsel for backup documentation for the alleged expenses. *Id.* Without providing the documentation, Defendants threatened to sue

Klayman. *Id.* Klayman rightfully invoked his rights to documents under the Agreement. *Id.* Despite explicit and reasonable demands, Defendants refused to comply with its obligations under the Agreement and continued to threaten Klayman. *Id.*

34. In another instance on or about January 12, 2006, Klayman wrote to Judicial Watch and Thomas Fitton to demand access to documents regarding the origins of false representations made publicly by Judicial Watch former client, Peter Paul, stating, among other things, that Klayman was fired by Judicial Watch. Klayman Decl. ¶ 26. Defendant Fitton had virtually every document relating to Mr. Paul on his computer and could easily have provided them to Plaintiff. Klayman Decl. *Id.* In any event, and contrary to the Defendants' declarations, the documents relating to Mr. Paul that Plaintiff sought access to were not voluminous in any event. *Id.*

35. Klayman's demanded access to documents to respond to the public and damaging accusations. Klayman Decl. ¶ 27.

36. Defendants admit that they refused to provide Klayman access to these documents despite Klayman's demands. (Def. Br. p.23).

37. At a minimum, Klayman is entitled to discovery as to Defendants' failure to provide Klayman access to documents as bargained for in the Agreement and as to the self-serving and conclusory declaration of Defendants' employees that Klayman was not entitled to the documents. *See* Fed. R. Civ P. 56(f).

**Defendants Disparaged Klayman Following His Resignation**

38. The Agreement prohibited Defendants from disparaging Klayman's following his voluntary resignation from Judicial Watch. Klayman Decl. ¶ 28, Ex. A ¶ 17.

7

39. Following Klayman's resignation, Defendants engaged in a widespread and systematic campaign to disparage and defame Klayman among the public, the press and others. Klayman Decl. ¶ 29.

40. Among the particular disparaging actions in the Second Amended Complaint, Defendants opened mail sent to Klayman at Judicial Watch which did not pertain to Judicial Watch, tortiously interfered with an entity funded by Klayman, Freedom Watch, failed to forward telephone messages and mail directed to Klayman, interfered with Klayman's client relationships, defamed Klayman among the media, and misrepresented the Klayman was forced to leave Judicial Watch. Klayman Decl. ¶ 29; *see also* Second Amended Complaint ¶¶ 66.A, G, H, J, I, 188, 120-125.

41. These acts evidence Judicial Watch's widespread and systematic pattern of disparagement and defamation against Klayman. Klayman Decl. ¶¶ 30, 31.

**Defendants Attempted to Limit Klayman's Ability to Represent Clients**

42. The Agreement did not prohibit Klayman from representing former clients of Judicial Watch. The Agreement only required Klayman to withdraw from those cases in which Klayman entered his appearance for clients of Judicial Watch while Klayman was Chairman and General Counsel. Necessarily, such withdrawal was to be "consistent with the applicable rules of court." Klayman Decl. ¶ 32, Ex. A ¶ 12. Nothing prevented Klayman from representing a Judicial Watch client who seek Klayman's legal representation. *Id.*

43. Also in the Agreement, Defendants were required to keep confidential the terms and existence of the Agreement. Klayman Decl. Ex. A ¶ 20.

44. In the matter captioned *Dalrymple, et al v. United States*, Case No. 1:03cv20588 (S.D. Fla. 2003), Defendants' withdrew their appearance as counsel of record for a plaintiff,

Sandra Cobas. Klayman then entered his appearance on behalf of Ms. Cobas in that case. Klayman Decl. ¶ 33.

45. On September 28, 2004, Defendants moved to strike Larry Klayman's appearance as counsel and deprive Ms. Cobas her choice of counsel. Klayman Decl. ¶ 34, Ex. B.

46. In this motion, Defendants outrageously declare that Klayman's employment with Judicial Watch "was severed pursuant to a Confidential Settlement Agreement," and incorporated paragraph 12 of the Agreement in the motion. Klayman Decl. ¶ 35, Ex. B.

47. Defendants' pleading frivolously incorporated a provision of the Agreement and declared the existence of the Agreement pleading in violation of paragraph 20 of Agreement and portrayed him as having acted in breach of the agreement or limited in his ability to represent others. Klayman Decl. ¶ 36.

48. Defendants also directly interfered with Klayman's representation of Jennifer Flowers. Klayman Decl. ¶ 38. Klayman was personally told by Ms. Flowers, a private client of both his and Judicial Watch's, that in response to her request to have me represent her in certain litigation, Fitton refused and impliedly threatened and discouraged her from pursuing her choice of counsel. *Id.* This is another instance of unethical conduct in violation of applicable court rules and in violation of the Agreement.

49. At a minimum, Klayman is entitled to discovery as to Defendants' conduct in order to present his proofs and to respond to the self-serving declaration of Defendants' employees. *See* Fed. R. Civ P. 56(f).

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

By: ____//s// *Daniel J. Dugan*____ (DD 1339)
    Daniel J. Dugan, Esquire
    1635 Market Street, Seventh Floor
    Philadelphia, PA 19103
    215.241.8872/215.241.8844(Fax)
    ddugan@lawsgr.com
    *Attorneys for Plaintiff, Larry Klayman*