## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Larry Klayman,<br>　　　　　　　*Plaintiff,*<br><br>v.<br><br>Judicial Watch, Inc., *et al.*<br>　　　　　　　*Defendants.* | Civil Action No. 1:06-CV-00670<br><br>Honorable Colleen Kollar-Kotelly<br><br>**Jury Trial Demanded.** |

### DECLARATION OF LARRY KLAYMAN

I, Larry Klayman, declare as follows:

1.　　I am over the age of eighteen and have personal knowledge of the facts set forth below.  I make this declaration in opposition to the motion for partial summary judgment submitted by the Defendants.

2.　　I am a Plaintiff in this matter and an attorney admitted to the practice of law in several jurisdictions, including the District of Columbia.

3.　　Besides the fact that no discovery has been taken in this action, so that even partial summary judgment is inappropriate under Fed.R.Civ.P. 56(f), there are material facts in dispute as to Counts Six through Eight of the complaint—all relating to the Defendants' breach of the Severance Agreement (the "Agreement") and the remedies for such breach-- that make partial summary judgment entirely inappropriate.

4.　　In my complaint, I alleged that the Defendants had breached the Agreement and listed the numerous ways they had done so. *See, e.g.,* Second Amended Complaint ¶¶66,116-134, 142-147.  I incorporate by reference in this declaration all those allegations of fact. The defendants, without having made any record by deposition or otherwise, now simply dispute my allegations of fact with self-serving and factually incorrect denials and declarations from

themselves or their employees acting under their directions. As my lawyers argue in the

memorandum of points and authorities, which my declaration accompanies, this is not enough to

justify summary judgment. On the contrary, where, as here, the two sides are each arguing that

they are correct and there is a complete absence of a record developed through discovery,

including depositions at which the disputed issues can be subject to cross examination, summary

judgment must be denied.

5.    For the court's convenience, and to demonstrate the multitude of factual issues

that are in dispute with respect to my breach of contract claims, I outline them below.

**Background of My Departure From Judicial Watch and my Severance Agreement.**

6.    I founded Judicial Watch in 1994. From then until September 19, 2003, I was

Chairman, General Counsel and Treasurer of Judicial Watch. As the head of Judicial Watch, I

was involved in the hiring of Judicial Watch employees, including Defendants Fitton as

President, Orfanedes as Counsel, and Farrell as Investigator. In 2003, I decided to run for the

United States Senate from the State of Florida and to step down from my position at Judicial

Watch. As a result, I entered into negotiations with Defendants about the terms of my severance.

7.    As everyone knew and understood, the well being of Judicial Watch was a pre-

eminent concern of mine. I wanted to make sure that the organization I formed and ran would

continue to be run by well qualified persons of integrity.

8.    During the negotiations, I discovered that Fitton had misrepresented his

educational background when Fitton was hired years earlier. Among other things, Fitton

represented that he had a college degree which he did not.

9.    As a result, I demanded, and Defendants Judicial Watch, Fitton, Orfanedes and

Farrell agreed, to find a qualified individual with a legal background to lead Judicial Watch as

my successor. In fact we discussed several qualified individuals including ex-Congressman Bob

2

Barr. It was only based on the Defendants' repeated assurances on this point that I proceeded

with the process that led to my resignation and the signing of the Agreement.

10.     On September 19, 2003, I signed the Agreement with Judicial Watch based, *inter*

*alia,* on the Defendants' representations.   A true and correct copy of the Agreement is attached

hereto as Exhibit A.

11.     Defendants' representations materially induced me to resign from Judicial Watch

and enter into the Agreement as I focused on my Senate campaign.

**Judicial Watch Failed to Pay What it Owed Me.**

12.     In the Agreement, Judicial Watch promised to make "payment [to me] for

compensation through my last day of work." Ex. A ¶ 2. Judicial Watch failed to do so, by, *inter*

*alia,* withholding my final paycheck (in violation of wage and hour laws) for work I performed

while I was Chairman and General Counsel of Judicial Watch. While Judicial Watch admits this

in its motion papers, it nonetheless claims I am not entitled to this amount. I dispute this plus I

dispute the amount that my final paycheck should be.

**Judicial Watch Failed To Act in Good Faith to Remove Me as Guarantor of the Building
Lease and Credit Cards.**

13.     The Agreement required Judicial Watch to work in good faith to remove me as

guarantor of Judicial Watch's lease for its Washington, D.C. headquarters. This was an

important provision for me because the potential obligation to me is enormous and I had a wife

and have two young children to provide for. The Defendants knew the importance of the

provision, but did not carry out their obligations. The Landlord personally confirmed to me that

no one at Judicial Watch ever approached him to remove me as guarantor of the lease. While the

Defendants purport to attach correspondence concerning one overture, I have reason to doubt the

truth of that correspondence based on past instances where the Defendants have provided me

with documentation that falsely represented information, such as the amount of expenses they claim I owed them. *See* ¶ 25, *infra.*   Even putting the veracity of the hearsay documents aside, the Defendants admit they made but a single, half-hearted attempt to have the Landlord remove me as guarantor. They further admit that they could have secured my removal, but chose not to because they did not like the conditions requested by the Landlord. Defendants made no further attempts, and today, I am still the guarantor of the lease.

14.     The Defendants failed to act in good faith by (a) refusing to remove me as guarantor even though they could have done so, and (b) by further refusing to make more than a single alleged effort to remove me in the three and ½ years that have passed since my resignation. When I resigned, I left Judicial Watch in very good financial condition, with liquid, or nearly liquid asset of approximately $20 million, including monies in the donations pipeline, such as an inheritance for $1 million.

15.     In addition, the Defendants' failure to cause Judicial Watch to purchase the building, as they represented to me and thousands of donors that they would, evidence their lack of good faith and fair dealing that has kept me, unnecessarily, in the status of guarantor.

16.     My continued status as guarantor continues to adversely affect my financial condition since it is an enormous contingent liability which weighs heavily over the welfare and well-being of myself and my two young children.

17.     The Agreement also required the Defendants to remove me as the guarantor for all Judicial Watch credit card accounts within thirty (30) days of my separation date of September 19, 2003. Although Defendants now assert in their motion papers that they did remove me from one credit card, on information and belief I was also the guarantor of other Judicial Watch credit cards, including without limitation, Visa and Mastercard accounts. Judicial

4

322314-3

Watch failed to timely remove me as guarantor of these credit card accounts as required under the Agreement.

**Judicial Watch Converted My Property, Including Artwork.**

18.    Under the Agreement I was to have access to remove my property and that of my law firm, Klayman & Associates, including artwork from Judicial Watch offices, including its headquarters in Washington, D.C. and its offices in Miami, Florida.

19.    Judicial Watch employees maintained exclusive control over my property and Klayman & Associates' property immediately following my voluntary resignation from Judicial Watch.

20.    Even though Defendants now say that they provided me with access, they did not. Instead, they greatly restricted and outright refused to allow me any meaningful access to retrieve all of my personal property and that belonging to me and my firms, including corporate books for corporations I own or owned, client files of me and my firms, other personal documents, and also including artwork, and other items from Judicial Watch's Washington, D.C. headquarters and Miami offices. Despite my repeated demands for full access to my property, Defendants maintained control over much of my property and only occasionally sent files to me when they chose. I never saw or agreed to any of the so-called inventories produced by Judicial Watch, and I never agreed to pay Judicial Watch for any expenses related to the return of my property and that belonging to my firm, such as the costs of any employee's salary, for carrying out its obligations under the Agreement.

21.    In addition, the Defendants' argument as to who paid for the artwork initially is an entirely separate issue from my ownership of the artwork. I owned not only the one painting the Defendants discuss at length, but at least three other valuable paintings in the Miami office that I personally paid for. Despite my repeated demands, Defendants refuse to return my

322314-3

artwork, among other things.  The issues that Defendants now raise as to who initially paid for

one painting and whether it was included (rightly or wrongly) in Judicial Watch's inventory

(based solely on the defendants' self serving, unilateral statements in any event) cannot be the

basis for concluding there is no genuine dispute, because the facts show otherwise.

**Judicial Watch Failed to Pay Me For Family Health Insurance Coverage.**

22.      Under the Agreement, "Judicial Watch shall pay the cost of such insurance, to the

same extent that it paid Klayman's family health insurance coverage during his employment."

Ex. A. ¶ 3(A).  When I left Judicial Watch, it had been paying all the premiums due for my

family health insurance coverage—and Defendants admit that in their motion papers. After

leaving Judicial Watch, it ceased paying all the premiums.

23.      Defendants now want to argue that the health insurance premiums Judicial Watch

actually paid prior to my voluntary resignation were erroneous; therefore, Defendants were

justified in breaching the express terms of the Agreement.  I was one of the few employees at

Judicial Watch that had a spouse and young children.  During my last period at Judicial Watch, I

took no salary increases in part in return for the payment of my family health insurance

premiums. If this was not recorded in the minutes, this was the fault of Defendant Orfanedes,

who not coincidently was also the corporate secretary of Judicial Watch.  Once again,

Defendants' denials of liability cannot eliminate the genuine factual dispute on the issue of

payment for my family health insurance.

**Judicial Watch Failed to Provide Me With Access to Documents.**

24.      Under the Agreement, my separation from Judicial Watch was "a voluntary

resignation." Ex. A ¶ 1.  Moreover, the Agreement specifically required Defendants to provide

me access to documents necessary to either defend myself or reply or rebut accusations made

against me.  On several occasions, I sought, but Defendants refused to provide, access to

322314-3

documents necessary to respond to accusations against me arising out of or relating to my tenure at Judicial Watch.

25.     For example, almost immediately after I resigned and while in the midst of my Senate campaign, Judicial Watch accused me of failing to repay substantial expenses. As their accounting of expenses was not only wrong, but also supported by fictitious documentation, I repeatedly demanded backup documentation for the alleged expenses from Defendants and their counsel. Defendants failed to provide that documentation, even though the Agreement entitled me to it, and continued to threaten suit at the height of my Senate campaign, in an obvious coercive attempt to extort payment. Despite my explicit and reasonable demands, Defendants have refused to this day to comply.

26.     In another instance, on or about January 12, 2006, I wrote to Judicial Watch and Thomas Fitton to demand access to documents regarding the origins of false representations made publicly by Judicial Watch former client, Peter Paul, stating, among other things, that I was fired by Judicial Watch. Defendant Fitton had virtually every document relating to Mr. Paul on his computer and could easily have provided them to me. In any event, and contrary to the Defendants' declarations, the documents relating to Mr. Paul that I sought access to were not voluminous in any event.

27.     Once again, I demanded access to documents at Judicial Watch in order to rebut the accusations in the press, but the Defendants and their counsel refused to provide them. The documents I requested were not voluminous, as the Defendants falsely state, but quite limited. In fact, most of them are stored on the hard drive of Defendant Fitton's computer.

**Defendants Disparaged Me After I Resigned.**

28.     The Agreement prohibited Defendants from disparaging me. In particular the Defendants agreed, *inter alia*, not to "directly or indirectly, disseminate or publish, or cause or

7

322314-3

encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about Klayman." Ex. A ¶ 17.

29.     Nonetheless, after I resigned the Defendants mounted a widespread campaign to disparage me among the public and the press. I specified the particular disparaging actions in the Second Amended Complaint at ¶¶ 66.A, G., H., J, I., 118, 120-125, which I incorporate here and need not repeat.

30.     Suffice it to note that the disparagement included statements made to the media, donors, and the public, in writings, conversations and pleadings and on a wide variety of topics.

31.     These acts evidence Defendants' widespread and systematic pattern of disparagement and denigration of me in violation of the express terms of the Agreement.

**Defendants' Attempted to Limit My Ability to Represent Clients.**

32.     The Agreement did not prohibit me from representing former clients of Judicial Watch; instead, it required me only to withdraw from those cases in which I had entered my appearance for clients of Judicial Watch while I headed the organization. Nothing prevented a client Judicial Watch represented from coming to me in the future for legal representation. Indeed, it would have been unethical for Judicial Watch to have imposed such a requirement or for me to have agreed to it.

33.     In the matter captioned *Dalrymple, et al v. United States*, Case No. 1:03cv20588 (S.D. Fla. 2003), Defendants' withdrew their appearance as counsel of record for a plaintiff, Sandra Cobas, as did I. I then entered my appearance on behalf of Ms. Cobas in that case.

34.     On September 28, 2004, Defendants moved to strike my appearance as counsel and deprive Ms. Cobas of her choice of counsel. A true and correct copy of the aforesaid Motion to Strike Larry Klayman's Appearance As Counsel of Record for Sandra Cobas dated September 28, 2004 is attached hereto as Exhibit "B."

8

35.    Notwithstanding the requirement to maintain the confidentially of the Agreement, Ex. A ¶ 20, the Defendants incorporated parts of the Agreement in their motion. *See* Ex. B.

36.    Besides revealing the existence and substance of the Agreement, the Defendants also disparaged me in the motion by portraying me as having acted in breach of the Agreement by undertaking Ms. Cobas' representation and as limited in my ability to represent others. This was false since the Agreement itself provides that I can represent persons Judicial Watch previously represented.

37.    In disposing of the motion summarily, the court found the motion to be without merit and denied. The ruling, however, does not negate the breaches by the Defendants of the Agreement.

38.    Defendants also directly interfered with my representation of Genifer Flowers. As just one example, I was personally told by Ms. Flowers, a client of mine and Judicial Watch's, that in response to her request to have me represent her as counsel with Judicial Watch attorneys in certain litigation, Fitton suggested ominously in severe tones that this would not "be a good idea" and suggested that he scared her from pursuing her choice of counsel. This is another instance of unethical disparaging conduct in violation of applicable court rules and in violation of the Agreement.

In sum, and notwithstanding the self-serving and factually incorrect denials made by the Defendants, there are, even by the Defendant's own grudging admissions, genuine issues of material fact as to the Defendants' multiple breaches of the Agreement.

I declare under penalty of perjury of the laws of the United States that the foregoing

9

statements are true and correct.

Signed this 30th day of January 2007.

Larry Klayman

10

# EXHIBIT A

## CONFIDENTIAL SEVERANCE AGREEMENT

This CONFIDENTIAL SEVERANCE AGREEMENT ("Agreement") is made and entered into by and between JUDICIAL WATCH, INC. ("Judicial Watch"), and LARRY E. KLAYMAN ("Klayman"), who are sometimes collectively referred to as the "Parties."

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree as follows:

1.  **Termination of Employment; Resignation**.  Klayman's employment shall terminate effective September 19, 2003 (the "Separation Date"), and it shall be treated for all purposes as a voluntary resignation. Upon execution of this Agreement, Klayman shall submit a letter resigning from his positions as Treasurer and a member of the Board and all other positions he holds at Judicial Watch and its affiliated entities, including Judicial Watch of Florida, Inc.

2.  **Severance Pay**.  Subject to paragraphs 15 and 22 below, Judicial Watch shall pay Klayman as severance a lump sum payment equal to $400,000.00, from which shall be deducted all customary and legally required federal, state, and local tax and other withholdings (the "Severance Pay"). As soon as practicable after execution of this Agreement and in no event later than September 24, 2003, the Severance Pay shall be wired or otherwise deposited in U.S. funds to an escrow account maintained for clients of the law offices of Jordan, Coyne & Savits, L.L.P. to be disbursed to Klayman following the later of the expiration of the revocation period referred to in paragraph 15 of this Agreement and a finding by the authorized committee referred to in paragraph 22 that the Severance Pay is reasonable.  Klayman acknowledges that he is not legally entitled to the Severance Pay or other consideration beyond payment of compensation through his last day of work, and that the Severance Pay and other consideration being provided to him pursuant to this Agreement is intended as, and is, consideration for his execution of this Agreement and in order to amicably resolve, on the terms set forth in this Agreement, differences between the Parties and in recognition of Klayman's leadership and contribution to the founding and development of Judicial Watch in a way commensurate with similar arrangements for principal executives of comparable organizations. The Severance Pay and other consideration being provided to Klayman pursuant to this Agreement is also intended to, and does, fully satisfy all amounts, if any, owed to Klayman by Judicial Watch, including, but not limited to, any amounts owed to him for accrued but unused vacation and sick leave. The Severance Pay shall be included in the IRS Form W-2 that Judicial Watch shall issue to Klayman for 2003.

3.  **Insurance**.

    A.    Health Insurance.    In the event Klayman properly and timely elects to continue his family health insurance coverage following the termination of his employment in accordance with the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Judicial Watch shall pay the cost of such insurance, to the same extent that it paid Klayman's family health insurance coverage during his employment, for a period of twelve (12) months following the Separation Date. Nothing herein shall limit Klayman's right, consistent with the

## Confidential Severance Agreement

terms of the insurance plan and COBRA, to continue to maintain the health insurance coverage beyond the twelve (12) month period at his own expense.

        **B.**    <u>Malpractice Insurance</u>. Judicial Watch shall purchase and maintain professional liability insurance that provides defense and indemnity coverage for any and all legal work performed by Klayman for or on behalf of Judicial Watch while he was employed by Judicial Watch or after the Separation Date.

    **4.**  <u>Confidential Information and Judicial Watch Property</u>.

        **A.**    <u>Confidential Information</u>. Klayman agrees that all non-public information and materials, whether or not in writing concerning Judicial Watch, its operations, programs, plans, relationships, donors, prospective donors, clients, prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. By way of illustration, but not limitation, Confidential Information includes matters not generally known outside Judicial Watch, such as projects, plans, research data, research projects, contacts, financial data, personnel data, donor lists, donor data, fundraising strategies and methods, computer programs, web site plans and developments, client lists, client data, contacts at or knowledge of clients or donors or prospective clients or donors, litigation strategies, work-product, supplier and vendor lists, developments relating to existing and future programs, services or products offered, marketed or used by Judicial Watch, and data relating to the general operations of Judicial Watch. Klayman agrees that after the Separation Date, he shall not disclose any Confidential Information to any person or entity or use Confidential Information for any purpose without written approval by an officer of Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman.

        **B.**    <u>Judicial Watch Property</u>. Klayman agrees that all documents, computer tapes and disks, computer printouts, computer hardware and software, office furniture and furnishings, memorabilia, equipment, supplies, keys, credit cards, publications, manuals, working papers, notes, reports, client lists, donor lists, and any other tangible items or materials that were created or used by Klayman while performing his duties for Judicial Watch or which otherwise came into Judicial Watch's custody or control by virtue of Klayman's employment with Judicial Watch ("Judicial Watch Property") are and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. Upon reasonable advance notice to Judicial Watch, Klayman shall be permitted to remove his personal effects (e.g., family photos and other similar personal property that he purchased with his personal funds), as well as a digital copy of his electronic "Rolodex", from Judicial Watch's offices.

        **C.**    <u>Return of Property and Confidential Information</u>. Klayman agrees that all Judicial Watch Property and Confidential Information, in all their tangible or intangible forms, whether created by Klayman or others, that came into Klayman's custody or possession, including, without limitation, all computer equipment, cellular phones, personal digital assistants ("PDAs"), keys, including keys to the Volvo automobile currently owned by Judicial Watch, (VIN No. YV1CZ91H931018257) title and registration documents for the Volvo automobile,

2

## Confidential Severance Agreement

passwords, security cards, security codes, identification badges, and any other means of access to Judicial Watch's Property and Confidential Information, shall be delivered to the President of Judicial Watch, or his designated representative, on or before the Separation Date. Any property or Confidential Information which Klayman cannot return to Judicial Watch on or before the Separation Date, notwithstanding his best efforts, shall be returned as soon as practicable thereafter. In any event, Klayman shall not use or access any Judicial Watch Property or Confidential Information or copies thereof following the Separation Date, provided, however, that Klayman may continue to use through September 24, 2003 the Judicial Watch cell phone and laptop computer currently in his possession, at which time he shall return them to Judicial Watch.

D.    Client and Donor Information. Klayman agrees that Klayman's obligation not to disclose or use Judicial Watch's Confidential Information and Klayman's obligation to return all Judicial Watch Property and Confidential Information also extend to such types of proprietary, secret or confidential information, materials and property of clients or donors of Judicial Watch or of other third parties who may have disclosed or entrusted the same to Judicial Watch or to Klayman. Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor or client lists or donor or client data.

E.    Limited Access to Certain Property in the Public Domain. Anything in subparagraphs A through D above to the contrary notwithstanding, Klayman shall be entitled to obtain from Judicial Watch copies of press clips, press releases, other press materials, photographs, artist renderings, and television show videos involving him which are in the public domain and not confidential, provided that he shall use such materials solely for his personal, use and not for any partisan or other political purpose. Klayman shall reimburse Judicial Watch the costs it incurs in providing such copies.

F.    Limited Access to Certain Confidential Information. Anything in subparagraphs A through D above to the contrary notwithstanding, subject to Judicial Watch's consent, which consent shall not be unreasonably withheld, Klayman shall be afforded access to such Confidential Information as he may reasonably require in order to defend or respond to any accusation, action or threat of action against him arising out of or relating to his tenure at Judicial Watch. Such access shall include an opportunity on reasonable notice to examine and copy, at his cost, Confidential Information related to such accusation, action or threat, provided that such Confidential Information shall be used or disclosed by him solely in connection with such defense or response and provided, further, that he shall take reasonable steps to protect such Confidential Information from any use or disclosure by others other than in connection with such defense or response (e.g., by Protective Order or Confidentiality Agreement).

5.    Non-Competition; Non-Solicitation. In consideration of the payment described in paragraph 6 below, Klayman agrees to the following:

A.    Judicial Watch's Goodwill and Business Interests. Klayman agrees and acknowledges that Judicial Watch has, over the course of many years and through substantial investment and efforts by Judicial Watch, developed goodwill in North America and

3

## Confidential Severance Agreement

internationally, and that Judicial Watch's goodwill is associated with its ongoing educational and other operations and its use of certain trade names, trade marks, service marks and "trade dress." Klayman also agrees that the trade secrets and other valuable Confidential Information and Judicial Watch Property (as such terms are defined above) to which Klayman had access during his employment and as an officer and director of Judicial Watch, the substantial relationships with prospective and existing contacts, clients and donors of Judicial Watch that Klayman formed and maintained, the specialized training and opportunities that Klayman received from Judicial Watch, and Judicial Watch's goodwill are, individually and collectively, valuable and legitimate business interests of Judicial Watch that Judicial Watch rightfully seeks to preserve and protect.

　　　　　B.    <u>Covenant Not to Compete or Solicit</u>.  Klayman agrees that, in order to enable Judicial Watch to preserve and protect Judicial Watch's valuable and legitimate business interests, including, but not limited to, those valuable and legitimate business interests set forth in paragraph 5 A, and in exchange for the additional consideration referred to in paragraph 6 below (which the parties acknowledge to be separately bargained for), Klayman shall not, for a period of two (2) years following the Separation Date, directly or indirectly:

　　　　　　　　　(i) work or render advice as an individual or sole proprietor in Competition with Judicial Watch or work or render advice as an employee, agent, independent contractor, consultant or representative of any person, firm or legal entity which is engaged in or has plans to enter into Competition with Judicial Watch.  For purposes of this Agreement, the term "Competition" means directly or indirectly engaging in the work or advancing the mission of any ethics, anti-corruption, public integrity and government accountability watchdog or similar public interest or educational organization, or engaging in any other activities the purpose or effect of which would be to provide information, programs, publications, services or products that Judicial Watch offers, develops or sells or has plans to offer, develop or sell, as of the Separation Date;

　　　　　　　　　(ii) solicit or in any manner encourage or induce, or attempt to solicit, encourage or induce, any employee of Judicial Watch to leave the employ of Judicial Watch;

　　　　　　　　　(iii) solicit or in any manner encourage or induce, or attempt to solicit, encourage or induce, any client of Judicial Watch to terminate its attorney-client relationship with Judicial Watch; <u>provided</u>, <u>however</u>, that Klayman shall not be precluded from providing legal representation to any client, if requested by the client, in his capacity as a lawyer in private practice; or

　　　　　　　　　(iv) solicit, divert, interfere in or take away, attempt to solicit, divert, interfere in or take away, or otherwise assist or encourage third parties to solicit, divert, interfere in or take away the support or patronage of any of the donors, clients or supporters of Judicial Watch, or prospective donors, clients or supporters of Judicial Watch; provided, however, that this provision shall not prohibit Klayman from soliciting contributions to any entity that is not engaged in Competition with Judicial Watch from any person who may be an existing or prospective donor of Judicial Watch.

**Confidential Severance Agreement**

6. **Payment on Account of Klayman's Agreement Not to Compete or Solicit**. Subject to paragraphs 15 and 22 below, Judicial Watch shall pay Klayman $200,000.00 in consideration of his agreement not to compete or solicit, as set forth in paragraph 5 above (the "Non-Compete Payment"). As soon as practicable after execution of this Agreement and in no event later than September 24, 2003, the Non-Compete Payment shall be wired or otherwise deposited in U.S. funds in escrow to be maintained and disbursed to Klayman in the same manner and subject to the same conditions as the Severance Pay. The Non-Compete Payment shall be treated as "Other Compensation" for which Judicial Watch will issue Klayman a Form 1099. Klayman shall pay all federal, state and other taxes required to be paid in connection with such payment and indemnifies Judicial Watch and its officers from any liability for payment of payroll, income, or other taxes in connection with the Non-Compete Payment.

7. **Enforcement of Paragraphs 4 and 5**. Klayman understands and acknowledges that the restrictions contained in paragraphs 4 and 5 of this Agreement are reasonably necessary for the protection of the legitimate business interests and goodwill of Judicial Watch and Klayman considers these restrictions necessary and reasonable for such purpose. Klayman further acknowledges and agrees that any breach of any provision in paragraphs 5 or 6 of this Agreement will cause Judicial Watch substantial and irreparable injury and, therefore, in the event of any such breach, Klayman agrees that Judicial Watch, in addition to such other remedies which may be available, shall be entitled to specific performance and other injunctive relief without the necessity of posting a bond.

8. **IRS Audit**. In connection with the ongoing audit of Judicial Watch, the Parties agree to work cooperatively and in good faith to timely and appropriately respond to any inquiries or allegations by IRS relating to matters involving activities or other conduct on the part of Klayman or K&A. In this connection, Judicial Watch agrees to promptly provide Klayman's designated representative a copy of any IRS communications or other document containing such inquiries or allegations; Klayman agrees then to promptly provide input to Judicial Watch, through the Parties' respective legal representatives, regarding any such matter sufficiently in advance of the required response date to IRS, that such input can be considered and incorporated as appropriate in Judicial Watch's response to IRS. In addition, Judicial Watch agrees (i) to furnish Klayman's designated legal representative copies of all written submissions to IRS relating to any such matters, for their review and comment, timely and as soon as reasonably available, and to provide them copies of the final versions of all such submissions contemporaneously with their being sent to IRS; (ii) to timely apprise Klayman's designated legal representative of material developments concerning any such matters, including by furnishing, upon request, periodic reports of the status of any such matters and by providing copies of correspondence or other IRS produced written materials regarding any such matters. In addition, upon Klayman's request, Judicial Watch may afford Klayman's designated legal representative an opportunity to participate in meetings and telephone discussions with IRS regarding such matters whenever Judicial Watch reasonably deems such participation appropriate, consistent with the first sentence of this paragraph. All information provided to or otherwise learned by Klayman and/or his legal representative with respect to or in connection with IRS audit shall be deemed and treated as Confidential Information, shall be used by Klayman and his legal representative solely in connection with the purposes described in this paragraph, and shall not be used or disclosed by them for any other purpose.

5

## Confidential Severance Agreement

9. **Personal Guaranties.**

    A.   <u>Credit Cards</u>. Judicial Watch shall remove Klayman as guarantor of all credit cards issued to Judicial Watch, including, without limitation Judicial Watch's American Express card, within thirty (30) days of the Separation Date.

    B.   <u>Lease Guaranty</u>. Judicial Watch agrees to continue to work in good faith to remove Klayman as guarantor of its lease for its Washington, D.C. headquarters located at 501 School Street, S.W., Suite 500, Washington, D.C., 20024. Klayman acknowledges and agrees that he shall not receive any additional compensation from Judicial Watch above and beyond the Severance Pay and other benefits provided for in this Agreement for his guarantying the lease.

10. **Reimbursement of Expenses.** Judicial Watch agrees to review and reimburse Klayman for any legitimate and properly documented business expenses he submits to Judicial Watch pursuant to this paragraph in accordance with Judicial Watch's normal and customary reimbursement polices and practices. Klayman agrees to submit all business expenses for which he seeks reimbursement from Judicial Watch, along with details and justifications for those expenses, to Judicial Watch within 30 days after the Separation Date. Klayman further agrees to reimburse Judicial Watch for personal costs or expenses incurred by him during his employment, if any, that Judicial Watch may determine in good faith were mistakenly charged or allocated as costs or expenses of Judicial Watch, as well as any additional expenses that Klayman has billed to Judicial Watch or charged to a Judicial Watch credit card that Judicial Watch determines in good faith are personal expenses of Klayman. Klayman shall reimburse Judicial Watch for any such amounts within seven (7) days of being notified by Judicial Watch and being presented with supporting documentation of the amount, date and category of cost or expense items for which reimbursement is sought.

11. **Klayman & Associates, P.C.**

    A.   Klayman, and by its signature below, Klayman & Associates, P.C. ("K&A") re-affirm and acknowledge the debt of K&A to Judicial Watch, which was in the amount of $78,810 as of December 31, 2002, and agree that K&A shall pay the then full outstanding balance of the debt (including additional amounts allocated to K & A by Judicial Watch's accountants in accordance with their customary practice regarding this debt), without offset or deduction, together with accrued interest of 8% per annum, on or before May 15, 2004, per the terms of the Minutes of the May 15, 2002 Meeting of the Board of Directors of Judicial Watch. Klayman and K & A expressly acknowledge that Judicial Watch is not indebted to K & A.

    B.   Klayman agrees to remove all K&A files and boxes from Judicial Watch's office premises at Klayman's expense before the Separation Date or within a reasonable time thereafter, at his expense. Should Klayman not remove such files and boxes within sixty (60) days of the Separation Date, Judicial Watch may destroy them. Klayman and Judicial Watch agree that Judicial Watch shall arrange for all K&A's boxes currently being stored under Judicial Watch's name and account with Iron Mountain to be transferred to K&A's account with Iron

## Confidential Severance Agreement

Mountain, and that any additional files or boxes of K&A that Judicial Watch locates or identifies
in the future shall likewise be transferred to K&A's Iron Mountain account.

12. **Withdrawal of Appearance in Judicial Watch Litigation.** Except as otherwise
agreed by Judicial Watch, and consistent with the applicable rules of court, Klayman's
appearance as counsel shall be withdrawn in all legal proceedings in which Judicial Watch
currently is involved as a party or as counsel for any person or entity.

13. **Cooperation.** Following the Separation Date, Klayman agrees to make himself
reasonably available to Judicial Watch to answer questions regarding pending Judicial Watch
litigation matters and other business in which Klayman was involved during his employment
with Judicial Watch, at no cost. Klayman also understands and acknowledges that, following the
Separation Date, Judicial Watch may ask him to serve as counsel in on-going Judicial Watch
litigation matters on such terms, including compensation terms, as Judicial Watch, its clients and
Klayman may agree. Judicial Watch acknowledges and understands that, apart from answering
questions related to Judicial Watch litigation matters and other business in which Klayman was
involved during his employment, Klayman shall have no obligation to accept any post-
Separation Date assignments from Judicial Watch. Klayman acknowledges and agrees that he
shall not perform any post-Separation Date assignment from Judicial Watch without having
previously received written authorization to perform the assignment from an officer of Judicial
Watch.

14. **Mutual Releases.**

A. **Release by Klayman.** Klayman, for himself and his heirs, successors,
assigns, employees, agents and other representatives, and anyone acting by, through or under
them, hereby releases and forever discharges Judicial Watch, and each and all of its affiliates,
subsidiaries and related entities, and its and their past and present directors, officers, managers,
supervisors, employees, attorneys, and agents, including, without limitation, Paul Orfanedes,
Thomas Fitton and John Maruna, and their respective predecessors, successors and assigns, in
their capacities as such (collectively, "the Judicial Watch Releasees"), from any and all claims,
actions, suits, damages, liabilities, losses or expenses of whatever kind and nature which exist as
of the date of this Agreement, whether such claims, actions, suits, damages, liabilities, losses or
expenses are known or unknown, including, but not limited to, any claim based on or arising
under any civil rights or employment discrimination laws, such as the Americans with
Disabilities Act of 1992; the Fair Labor Standards Act of 1938, as amended; the Age
Discrimination in Employment Act ("ADEA"), as amended; Title VII of the Civil Rights Act of
1964, as amended; the Civil Rights Act of 1991; the District of Columbia Human Rights Act; or
any other federal, state or local statutes, laws or legal principles or any common law contract or
tort claims now or hereafter recognized. Klayman specifically acknowledges that he understands
that by signing this Agreement he waives all claims he ever had or now has against any of the
Judicial Watch Releasees, except for claims relating to any breach of this Agreement.

B. **Release by Judicial Watch.** Judicial Watch, for itself and its
affiliated corporations and entities, and anyone acting by, through or under them, including,
without limitation, Paul Orfanedes, Thomas Fitton and John Maruna, hereby releases and forever

**Confidential Severance Agreement**

discharges Klayman, and anyone acting by or through him, including his attorneys and agents, and his and their respective heirs, successors, and assigns from any and all claims, actions, suits, damages, liabilities, losses or expenses of whatever kind and nature which exist as of the date of this Agreement, whether such claims, actions, suits, damages, liabilities, losses or expenses are known or unknown. Judicial Watch specifically acknowledges that it understands that by signing this Agreement it waives all claims it ever had or now has against Klayman, except for claims relating to any breach of this Agreement.

15. **Right to Consider/Revocation**. Employees forty (40) years of age or older have specific rights under the Older Workers Benefit Protection Act ("OWBPA"), which prohibits discrimination on the basis of age. It is Judicial Watch's desire and intent to make certain that Klayman fully understands the provisions and effects of the release contained in paragraph 14(A). To that end, Klayman has been encouraged and has been given the opportunity to consult with legal counsel for the purpose of reviewing the terms of this Agreement. Klayman acknowledges that, consistent with the provisions of the OWBPA, he has been given a period of at least twenty-one (21) days within which to consider this Agreement before signing it, and that he may waive the 21-day period and sign this Agreement prior to its expiration. This Agreement will become effective immediately upon execution by the Parties, but Klayman shall have seven (7) days after his execution of the Agreement to revoke the Agreement. Any revocation must be in writing and delivered to Judicial Watch, Inc., c/o Thomas Fitton, President, 501 School Street, S.W., Suite 500, Washington, D.C. 20024 before the expiration of the seven (7) revocation period. In addition, consistent with the provisions of the OWBPA and other employment discrimination laws, the release contained in paragraph 14(A) does not preclude Klayman from filing a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), participating in an EEOC investigation, or challenging the validity of this Agreement, but he will not be entitled to any monetary or other relief from the EEOC or from any court as a result of litigation brought on the basis of, or in connection with, such charge, except if and to the extent that the release and waiver contained in paragraph 14(A) are held to be invalid or unenforceable (in which event, Judicial Watch will be entitled to restitution or set off for the amounts paid to Klayman hereunder, as and to the extent determined by the court).

16. **Covenant Not to Sue**. Klayman expressly represents and warrants that, except as may be necessary to enforce this Agreement, neither he nor any person, organization or other entity on his behalf has or will file, charge, claim, sue or cause or permit to be filed, charged or claimed, any civil action or legal proceeding seeking personal monetary or other relief against Judicial Watch or any of its past or present directors, shareholders, officers, managers, supervisors, employees, attorneys, or agents, including, without limitation, Paul Orfanedes, Thomas Fitton and John Maruna, involving any matter occurring at any time in the past up to and including the date of this Agreement or involving any continuing effects of any acts or practices which may have arisen or occurred prior to or on the date of this Agreement. Judicial Watch expressly represents and warrants that, except as may be necessary to enforce this Agreement, neither it nor any person, organization or other entity on its behalf has or will file, charge, claim, sue or cause or permit to be filed, charged or claimed, any civil action or legal proceeding

## Confidential Severance Agreement

seeking personal monetary or other relief against Klayman, K&A or their respective agents and attorneys.

17. **Non-Disparagement.** Klayman expressly agrees that he will not, directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about Judicial Watch or its present or past directors, officers, or employees. Judicial Watch expressly agrees that its present directors and officers namely Paul Orfanedes and Thomas Fitton, will not, directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about Klayman. Nothing in this paragraph is intended to, nor shall be deemed to, limit either party from making fair commentary on the positions or activities of the other following the Separation Date.

18. **Press Release; Statements Of the Parties.** On or before September 27, 2003, Judicial Watch shall issue a press release announcing that Klayman is leaving Judicial Watch. That press release shall state:

> Judicial Watch announced today that Larry Klayman has stepped down as Chairman and General Counsel of Judicial Watch,, to pursue other endeavors. Tom Fitton, who is President of Judicial Watch, said: "Larry conceived, founded and helped build Judicial Watch to the organization it is today, and we will miss his day to day involvement. Judicial Watch now has a very strong presence and has become the leading non-partisan, public interest watchdog seeking to promote and ensure ethics in government, and Larry leaves us well positioned to continue our important work."

Judicial Watch agrees that Klayman shall be permitted to use, publish and otherwise disseminate to third parties the following additional statement of Judicial Watch: "Larry was the creator and founder of Judicial Watch, and helped build it to be a stable, successful and widely respected organization. We thank him for his service." Klayman agrees that Judicial Watch shall be permitted to use, publish and otherwise disseminate to third parties the following statement of Klayman: "I have left Judicial Watch in good hands and will continue to support it, and I hope you will too." The Parties agree that they will limit any statements to third parties regarding Klayman's leaving Judicial Watch to be consistent with the Press Release and statements contained in his paragraph, except as may be required by law.

19. **Indemnification; Attorneys' Fees.**

A. Indemnification by Judicial Watch. Judicial Watch agrees to defend, indemnify and hold harmless Klayman from any monetary sanctions assessed against him personally by a court of law for conduct undertaken by Klayman or others in conjunction with his or their work on Judicial Watch litigation matters, or any breach of its obligations and responsibilities under this Agreement.

## Confidential Severance Agreement

B.    <u>Indemnification by Klayman</u>. Klayman agrees to defend, indemnify and hold harmless Judicial Watch and each and all of the Judicial Watch Releases from any and all claims, liabilities, costs, damages or judgments of any and every kind (including, without limitation, attorneys' fees and costs) which Judicial Watch or any of the Judicial Watch Releases may incur or be threatened with that arise out of any intentional wrongdoing by Klayman, or breach of his obligations and responsibilities under this Agreement, or out of K& A's breach of its obligations under this Agreement. Klayman expressly acknowledges that, pursuant to this paragraph, he shall be obligated to defend, indemnify and hold harmless Judicial Watch from any and all attorneys' fees, court costs or other expenses Judicial Watch may incur on account of Klayman's or K&A's failure to make prompt payment to Judicial Watch in accordance with paragraphs 10 and 11 of this Agreement.

C.    <u>Attorneys' Fees</u>. The prevailing party in any legal proceeding instituted on account of a Party's breach of this Agreement shall be entitled to an award of the costs incurred in connection with such action, including reasonable attorneys' fees and suit costs.

20. **Confidentiality of this Agreement.**   The Parties will preserve the strict confidentiality of the terms and existence of this Agreement, which shall not be disclosed, communicated or publicized to any third party or any entity other than their respective counsel, accountants, and financial advisors, and, in the case of Klayman, also to his immediate family, directly or indirectly, by implication, gesture, or innuendo, or by any other manner or device; <u>provided, however</u>, that the Parties may disclose the terms of this Agreement: (i) if compelled to do so pursuant to a lawful subpoena or other process from a court of competent jurisdiction or in conjunction with the on-going IRS audit of Judicial Watch; (ii) in connection with litigation between or among the Parties relating to this Agreement; or (iii) if and to the extent necessary to comply with applicable Treasury regulations relating to tax return disclosure. In the event that either Party is lawfully subpoenaed (or informed that he or it will be subpoenaed) to testify and such testimony forseeably might require the disclosure of information required by this Agreement to be kept confidential, such Party shall promptly notify the other Party in writing so that he or it will have an opportunity to quash the subpoena or otherwise protect his or its interest in the continuing confidentiality of the information.

21. **Full Knowledge of Terms.**  Each Party to this Agreement affirms that he, or in the case of Judicial Watch, its respective authorized officer(s) have read the foregoing Agreement and fully understand its content and effect, was given a reasonable period of time to consider its terms, and is voluntarily entering into this Agreement. Accordingly, in construing this Agreement, no provision shall be construed against Judicial Watch on the basis that it is the draftsman of this Agreement

22. **Section 4958 Presumption.**  As soon as possible after the execution of this Agreement, Judicial Watch shall appoint an authorized body to conduct, within ten business days following the execution of this Agreement, the process described in Treasury Regulation 53.4958-6, in order to establish a rebuttable presumption that the transactions reflected in this Agreement do not constitute an excess benefit transaction subject to tax under Internal Revenue Code section 4958. Upon favorable completion of the process by the authorized body and completion of all other requirements set forth herein, amounts due under this Agreement shall be

## Confidential Severance Agreement

released from escrow and paid over to Klayman in accordance with paragraphs 1 and 6 above. If the authorized body does not conclude that the transaction is reasonable, the Parties shall meet promptly to renegotiate in good faith the terms of this Agreement in such a way that the requirements of regulation section 53.4958-6 can be met.

23. **Choice of Law; Consent to Venue and Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the District of Columbia, without regard to its conflict of laws principles. The Parties consent to the jurisdiction and venue of any state or federal court located within the District of Columbia in any action or judicial proceeding brought to enforce, construe or interpret this Agreement or otherwise arising out of or relating to Klayman's employment.

24. **Notice.** Any and all notices which any Party shall be required or may elect to provide to another Party pursuant to this Agreement shall be a signed writing unless otherwise so agreed. Any and all notices hereunder shall be personally delivered, telecopied (receipt confirmed) or sent by certified or registered mail, postage prepaid, return receipt requested, or by courier service providing evidence of delivery to the other party, at the applicable addresses set forth below:

|  |  |
|---|---|
| If to Judicial Watch: | Judicial Watch, Inc.<br>c/o Thomas Fitton, President<br>501 School Street, N.W.<br>Suite 500<br>Washington, D.C. 20024 |
| With a copy to: | David Barmak<br>MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, PC<br>12010 Sunset Hills Rd.<br>Suite 900<br>Reston, VA 20190 |
| If to Klayman: | Larry E. Klayman<br>540 Brickell Key Drive, Unit 732<br>Miami, Florida 33131 |
| With a copy to: | Herbert N. Beller<br>Sutherland Asbill & Brennan, L.L.P.<br>1275 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004-2415<br><br>and<br><br>David P. Durbin<br>Jordan, Coyne & Savits, L.L.P.<br>1100 Connecticut Avenue, N.W.<br>Washington, D.C. 20036 |

Case 1:06-cv-00670-CKK-AK    Document 42-4    Filed 02/16/2007    Page 23 of 31
09/19/2003 18:10 FAX 202 646 5199    JUDICIAL WATCH    @002
Case 1:06-cv-00670-CKK    Document 14    Filed 06/28/2006    Page 12 of 14

## Confidential Severance Agreement

25. **Binding Effect**. This Agreement shall inure to the benefit of and be binding upon the Parties and their respective executors, administrators, personal representatives, heirs, predecessors, successors, assigns, directors, agents, employees, trustees and affiliates forever.

26. **Entire Agreement**. This Agreement constitutes the entire agreement and understanding between and among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written or oral agreements and understandings between the Parties with respect to the subject matter of this Agreement. Each of the Parties agrees and acknowledges that in deciding to enter into this Agreement he or it is not relying on any statements, representations, understandings or promises other than those contained herein. This Agreement shall be interpreted and enforced in all respects based on its express terms and without regard to who drafted the Agreement or any particular provision of the Agreement. Neither the negotiations preceding this Agreement or any draft, term sheet, outline, note, or statement, assertion, representation, or understanding prior to or contemporaneous with the execution of this Agreement shall be used to interpret, change or restrict the express terms and provisions of this Agreement.

27. **Captions**. Captions are inserted herein for convenience, do not constitute part of this Agreement, and shall not be admissible for the purpose of proving the intent of the Parties.

28. **Counterparts**. This Agreement may be executed in counterparts, each of which will be considered an original.

IN WITNESS WHEREOF, the Parties have set their hands and seals as of the dates indicated.

ATTEST:                                   JUDICIAL WATCH, INC.

_____          By: Thomas Fitton, President
Paul Orfanedes                           Date: 9/19/03
Corporate Secretary

                                         LARRY E. KLAYMAN

_____          Date: _____
Witness

                                         KLAYMAN & ASSOCIATES, P.C.

_____          By: Larry E. Klayman, President
Witness                                  Date: _____

12

### Confidential Severance Agreement

25. **Binding Effect.** This Agreement shall inure to the benefit of and be binding upon the Parties and their respective executors, administrators, personal representatives, heirs, predecessors, successors, assigns, directors, agents, employees, trustees and affiliates forever.

26. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between and among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written or oral agreements and understandings between the Parties with respect to the subject matter of this Agreement. Each of the Parties agrees and acknowledges that in deciding to enter into this Agreement he or it is not relying on any statements, representations, understandings or promises other than those contained herein. This Agreement shall be interpreted and enforced in all respects based on its express terms and without regard to who drafted the Agreement or any particular provision of the Agreement. Neither the negotiations preceding this Agreement or any draft, term sheet, outline, note, or statement, assertion, representation, or understanding prior to or contemporaneous with the execution of this Agreement shall be used to interpret, change or restrict the express terms and provisions of this Agreement.

27. **Captions.** Captions are inserted herein for convenience, do not constitute part of the Agreement, and shall not be admissible for the purpose of proving the intent of the Parties.

28. **Counterparts.** This Agreement may be executed in counterparts, each of which will be considered an original.

IN WITNESS WHEREOF, the Parties have set their hands and seals as of the dates indicated.

ATTEST:                                  JUDICIAL WATCH, INC.

Paul Orfanedes
Corporate Secretary                      By: Thomas Fitton, President
                                         Date: _____

                                         LARRY E. KLAYMAN

_____
Witness                                  Date: _____

                                         KLAYMAN & ASSOCIATES, P.C.

_____
Witness                                  By: Larry E. Klayman, President
                                         Date: _____

12

## Confidential Severance Agreement

25. **Binding Effect.** This Agreement shall inure to the benefit of and be binding upon the Parties and their respective executors, administrators, personal representatives, heirs, predecessors, successors, assigns, directors, agents, employees, trustees and affiliates forever.

26. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between and among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written or oral agreements and understandings between the Parties with respect to the subject matter of this Agreement. Each of the Parties agrees and acknowledges that in deciding to enter into this Agreement he or it is not relying on any statements, representations, understandings or promises other than those contained herein. This Agreement shall be interpreted and enforced in all respects based on its express terms and without regard to who drafted the Agreement or any particular provision of the Agreement. Neither the negotiations preceding this Agreement or any draft, term sheet, outline, note, or statement, assertion, representation, or understanding prior to or contemporaneous with the execution of this Agreement shall be used to interpret, change or restrict the express terms and provisions of this Agreement.

27. **Captions.** Captions are inserted herein for convenience, do not constitute part of the Agreement, and shall not be admissible for the purpose of proving the intent of the Parties.

28. **Counterparts.** This Agreement may be executed in counterparts, each of which will be considered an original.

IN WITNESS WHEREOF, the Parties have set their hands and seals as of the dates indicated.

ATTEST:                                      **JUDICIAL WATCH, INC.**

_____             _____
Paul Orfanedes                               By: Thomas Fitton, President
Corporate Secretary                          Date: _____

                                             **LARRY E. KLAYMAN**

_____             _____
Witness                                      Date: _____ 9/19/03

                                             **KLAYMAN & ASSOCIATES, P.C.**

_____             _____
Witness                                      By: Larry E. Klayman, President
                                             Date: _____ 9/19/03

12

**EXHIBIT B**

Unsealed 9/24/04

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Case No.: 03-20588-CIV-MOORE

DONATO DALRYMPLE,                )
                                 )
and                             )
                                 )
HECTOR S. ABELAIRAS, et al.      )
                                 )
            Plaintiffs,          )
                                 )
vs.                             )
                                 )
UNITED STATES OF AMERICA,        )
                                 )
            Defendant.           )
. . .  . . _____    )



NIGHT BOX
FILED

JUN 25 2004

CLARENCE MADDOX

## MOTION TO STRIKE LARRY E. KLAYMAN'S
## MAY 20, 2004 NOTICE OF APPEARANCE
## ON BEHALF OF PLAINTIFF, SANDRA COBAS

Judicial Watch, Inc., which is counsel for Plaintiffs, respectfully submits this motion to strike the May 20, 2004 Notice of Appearance filed by Larry E. Klayman, Esq., by which Mr. Klayman purports to enter his appearance on behalf of Plaintiff Sandra Cobas.

1.    Before resigning from Judicial Watch, Mr. Klayman was counsel of record for Plaintiff, through Judicial Watch. Mr. Klayman was formerly employed by Judicial Watch as its General Counsel. His employment was severed pursuant to a Confidential Severance Agreement. Among other things, the Confidential Severance Agreement provides as follows:

> **Withdrawal of Appearance in Judicial Watch Litigation.**
> Except as otherwise agreed by Judicial Watch, and consistent with the applicable rules of court, Klayman's *appearance as counsel shall be withdrawn in all legal proceedings in which Judicial Watch currently is involved as party or as counsel for any person or entity.*

Case No.: 03-20588-CIV-MOORE

Confidential Severance Agreement, ¶ 12 (emphasis supplied). [1]

    2.      Although the Confidential Severance Agreement containing this requirement was signed on or about September 19, 2003, Mr. Klayman did not sign the notice of withdrawal required by Paragraph 12 with respect to this case (or any other case involving Judicial Watch), over the next two months. Thus, on November 25, 2003, Judicial Watch forwarded to Mr. Klayman's counsel notices of withdrawal for thirty-two other cases, and requested that Mr. Klayman sign and file them. (Ex. A).

    3.      For almost six additional months, Mr. Klayman failed to execute the notice of withdrawal in this or any other case involving Judicial Watch. Then, on May 20, 2004, Mr. Klayman filed a **Notice of Withdrawal** in this case, finally withdrawing his appearance in this action as **to all Plaintiffs, except one, Sandra Maria Cobas**, for whom he purported to enter his appearance.

    4.      Ms. Cobas had worked with Mr. Klayman at Judicial Watch's Miami Office. She left Judicial Watch's employ around the time that Mr. Klayman left Judicial Watch, and then she immediately began to work with Mr. Klayman on his primary election campaign for United States Senate.

    5.      Mr. Klayman's notice of withdrawal and his entry of appearance for Ms. Cobas violates Paragraph 12 of the Confidential Severance Agreement in that it does not accomplish the withdrawal of his "appearance as counsel . . . in all legal proceedings in which Judicial Watch currently is involved as party or as counsel for any person or entity."

---

[1]    In order to preserve the confidentiality of other terms of the Confidential Severance Agreement, not material to this Motion, and assuming that Mr. Klayman does not contest the meaning of Paragraph 12 quoted above -- and he cannot reasonably do so --, Judicial Watch has not filed the Confidential Severance Agreement with this Motion. It reserves the right to do so if necessary or if ordered by the Court.

Case No.: 03-20588-CIV-MOORE

6.    If Mr. Klayman is permitted any role in this case, not only will he be in breach of the Confidential Severance Agreement, but his presence will be a major distraction which will impede cooperation and communication between the Plaintiffs and their counsel.    His representation of Ms. Cobas, therefore, would be prejudicial to the administration of justice.

7.    Judicial Watch does not seek to represent Ms. Cobas in this matter, although it is willing to do so,[2] and recognizes that she has a right to retain any other counsel willing and able to represent her.    However, by virtue of his agreement with Judicial Watch, Mr. Klayman may not lawfully represent Ms. Cobas in this case and his notice of appearance on her behalf therefore should be stricken.

WHEREFORE, the interests of justice and judicial economy would be best served by striking Mr. Klayman's notice of appearance in this case and barring him from representing any of the Plaintiffs.

Dated:  June 25, 2004

---

[2]    Ms. Cobas asked Judicial Watch to withdraw as her counsel and it did so, filing a Motion for Leave to Withdraw Appearance as Counsel of Record for Plaintiff Sandra Maria Cobas on May 11, 2004.  On May 13, 2004, the Court conditionally granted that motion, effective only upon notice of appearance of substitute counsel. Significantly, Mr. Klayman appears to have actively solicited and induced Ms. Cobas not only to terminate her relationship with Judicial Watch but also to have him enter his appearance on her behalf.

3

Case No.: 03-20588-CIV-MOORE

Respectfully submitted,

JUDICIAL WATCH, INC.

David Barmak, Esq.[3]
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC
12010 Sunset Hills Road, Suite 900
Reston, Virginia 20190
Telephone: (703) 464-4800
Facsimile: (703) 464-4895

Haas A. Hatic, Esq.
Florida Bar No. 843989
GREENSPOON, MARDER, HIRSCHFELD,
RAFKIN, ROSS & BERGER, P.A.
Trade Center South, Suite 700
100 West Cypress Creek Road
Fort Lauderdale, FL 33309
Telephone: (954) 491-1121
Facsimile: (954) 343-6956
haas.hatic@greenspoonmarder.com

Attorneys for Judicial Watch, Inc.

---

[3] Pursuant to Rule 7.1 of the Local Rules for the Southern District of Florida and Rule 4B of the Special Rules Governing the Admission and Practice of Attorneys, David Barmak, Esq. will be filing his Motion for Admission Pro Hac Vice and applicable filing fee.

4

Case No.: 03-20588-CIV-MOORE

### CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2004, a true and correct copy of the foregoing Motion to

Strike Larry E. Klayman's May 20, 2004 Notice of Appearance on Behalf of Plaintiff Sandra

Cobas was served by first-class mail, postage prepaid on the following:

> Larry Klayman, Esq.
> Florida Bar No.: 0246220
> c/o 540 Brickell Key Drive
> Suite 732
> Miami, FL 33131
> Attorney for Plaintiff, Sandra Cobas
>
> Stephen E. Handler
> Trial Attorney
> Torts Branch, Civil Division
> U.S. Department of Justice
> Benjamin Franklin Station
> P.O. Box 888
> Washington, DC 20044
> Attorneys for Defendant

Haas A. Hatic

G:\Lab\0002\0000\pldgs\Motion to Strike Klayman Appearance for Cobas #1 (2).DOC
RES 11.30.08x1

5