## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Larry Klayman, | : | |
| *Plaintiff,* | : | Civil Action No. 1:06-CV-00670 |
| | : | |
| v. | : | Honorable Colleen Kollar-Kotelly |
| | : | |
| Judicial Watch, Inc., *et al.,* | : | |
| *Defendants.* | : | |
| | : | **Jury Trial Demanded.** |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHRORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Larry Klayman, submits this memorandum of points and authorities in opposition to the Defendants' Motion for Partial Summary Judgment on Counts Six, Seven and Eight of the Second Amended Complaint.[1]  For the reasons set forth below, the Court should deny the motion in its entirety.

### *INTRODUCTION*

The instant motion is not ripe, it in effect seeks improperly to have this Court make evidentiary rulings in the nature of a motion *in limine* to the gross prejudice of the Plaintiff, and is baseless in any event, since there are genuine disputes of material fact concerning the scope and extent of the Defendants' breaches of contract.  The motion is not ripe because the action is only at its inception.  The Court only ruled on the Defendants' multiple motions to dismiss, sever and strike[2] on January 17th; understandably, no Rule 26 Conference has yet been held; and Plaintiff has had no opportunity to pursue discovery, either from the Defendants themselves or

---

[1] The counts are premised on the same allegations, and state claims for breach of contract.  They seek alternate remedies of rescission, damages and specific performance, respectively.

[2] The court, *inter alia,* denied the bulk of the motion, including Defendants' attack on Count Six, the plaintiff's claim of rescission, which the defendants seek to again challenge in the instant summary judgment motion.

third parties.  Indeed, defendants filed the instant motion without waiting for the court's rulings

on their previous motions.  The Court should refuse to consider the motion pursuant to

Fed.R.Civ.P. 56(f).

The motion is a misuse of summary judgment as well, because it is an undisguised effort

by the Defendants to manage the evidentiary framework of the case to deny Plaintiff his

discovery rights under the rules of civil procedure.  While the Plaintiff's claims for breach of

contract will necessarily proceed because the Defendants admit there is a genuine dispute of facts

with regard to one of the ways they breached the contract[3], they nonetheless seek to have the

Court parse through the broad allegations of breach of contract in the Second Amended

Complaint (required of Plaintiff by Rule 8) to determine—in the absence of any discovery

whatever—the precise nature of the specific breaches of contract on which Plaintiff may pursue

discovery.  Rule 26, however, guarantees Plaintiff broad discovery of any matter relevant to his

claims for breach of contract, not to the narrow, constricted and factually incorrect

characterizations that the Defendants would like.

Finally, even if the motion had been ripe and appropriate, it fails to satisfy the

requirements of Rule 56, because there are genuine issues of material facts concerning whether

Defendants breached their contracts with Plaintiff in one or more ways.  The Defendants

"support" their motion, not with any record evidence, because there is none, but only with their

own self-serving and factually incorrect view of the facts--untested by cross examination or

discovery—set forth in declarations from themselves and their captive employees.  Those

declarations, however, are no more than mere denials of (and in some cases even admissions of)

the allegations in the Second Amended Complaint.  They cannot possibly suffice as a basis for

determining the existence, *vel non,* of genuine issues of material fact on which defendants can be

---

[3] Even Defendants' broad motion admits to the existence of disputed facts.  *See, e.g.,* Def. Memo at 28-29.

319272-2

entitled to summary judgment. That is particularly so in light of the declaration of Larry

Klayman submitted along with this memorandum, which controverts all of the so called facts in

the declarations submitted by the Defendants.

Pursuant to Rule 56(f), the Court should refuse to consider the instant motion.[4] If the

Court nonetheless chooses to address the merits of the motion, it must deny it, not just because

the motion is an improper and grossly premature motion *in limine,* but also because the existence

of genuine issues of material fact surrounding the scope and extent of Defendants' breaches of

contract preclude summary judgment.

## I.    THE COURT SHOULD DENY THE MOTION UNDER RULE 56(f) BECAUSE IT IS NOT RIPE.

Summary judgment "ordinarily 'is only proper after the plaintiff has been given adequate

time for discovery.'" *Americable Int'l, Inc. v. Department of the Navy*, 129 F.3d 1271, 1274

(D.C. Cir. 1997). Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that
> the party cannot for reasons stated present by affidavit facts essential to
> justify the party's opposition, the court may refuse the application for
> judgment or may order a continuance to permit affidavits to be obtained
> or depositions to be taken or discovery to be had or may make such other
> order as is just.

Fed. R. Civ. P. 56(f).

The Defendants bear the "initial responsibility of informing the district court of the basis

for [its] motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits which [it] believe[s]

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S.

317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its]

---

[4] Plaintiff submits an affidavit from Daniel J. Dugan, Esquire, in accordance with Rule 56(f) along with this opposition.

319272-2

own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Under Rule 56(f), a court "may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that time point, it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989); *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1175 (D.C. Cir. 1981). "[T]he purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Dickens v. Whole Foods Market Group, Inc.*, Civ. No. 01-1054, 2003 WL 21486821, at *2 n.5 (D.D.C. Mar. 18, 2003)(citing *Celotex Corp.* 477 U.S. at 326).

The breach of contract claims in Counts Six, Seven and Eight seek alternate remedies of rescission, damages and specific performance, respectively. They were properly pleaded, and the Court just recently denied Defendants' motion to dismiss the claim for rescission. Defendants denied the broad factual allegations underlying each count in their answer, and the next pre trial step is to proceed with discovery to develop the facts relating to the multitude of alleged breaches committed by the Defendants. By their premature motion, however, the Defendants hope to deny discovery to the plaintiff by arguing, on the basis of only the Defendants' own declarations—untested even by cross examination, much less supported by evidence developed and tested in the crucible of discovery—that there are no genuine issues of material facts concerning any of the alleged breaches of contract. Other than the Defendants' own *ipse dixit,* there is no support for entertaining the instant motion and no legitimate basis on

4

which it could be premised.  Defendants' efforts to railroad the plaintiff through a premature

summary judgment motion are precisely what this court condemned in *Dickens.*

Since the declarations of the Defendants and those witnesses they fully control constitute

no record on which summary judgment can properly be based, the Court should refuse

Defendants' application for judgment pursuant to Fed.R.Civ.P. 56(f).  Plaintiff properly pled his

breach of contract claim and sought the relief to which he would be entitled once he proved his

case.

## II.    THE COURT SHOULD DENY THE MOTION BECAUSE IT IS A GROSSLY PREMATURE MOTION IN LIMINE DESIGNED TO IMPROPERLY LIMIT PLAINTIFF'S DISCOVERY RIGHTS.

The Defendants seek to misuse the vehicle of summary judgment as a grossly premature

motion *in limine*, hoping to limit and artificially constrain plaintiff's breach of contract claims.

If successful, Plaintiff would not only be denied the broad discovery rights to which the rules of

civil procedure entitle him, but he would also lose the right to pursue any specific allegations of

breach that he may not have pled with more specificity than the rules required.  Defendants

essentially would have this Court make evidentiary rulings, which is the province of a motion *in

limine.*  While such motions are perfectly appropriate at the end of pre trial preparation and in

order to limit evidence that will be introduced at trial, they are grossly premature before there has

been *any* discovery whatsoever.  Once, as here, plaintiff has stated his claim for breach of

contract, Rule 26(b)(1) expressly entitles him to "discovery regarding any matter, not privileged,

that is *relevant to the claim* or defense …." (emphasis added).  Discovery is not limited, as the

Defendants implicitly argue, only to particular allegations made in the complaint.  To the

contrary, notice pleading under the rules contemplates no more than "a short and plain statement

of the claim showing that the pleader is entitled to relief."  Rule 8(a).  The Defendants' attempt

319272-2

to parse the necessarily broad notice pleading in the Second Amended Complaint to focus on and attempt to controvert many, but far from all, of the particular breaches of contract alleged is not appropriate in a summary judgment motion.

Plaintiff has broadly stated a claim for breach of contract.  So long as there are sufficient allegations that a breach has occurred (and there are) and there is a genuine dispute of fact concerning a breach (however, it might have occurred) the breach of contract claim cannot be eliminated or narrowed by summary judgment, particularly before there is any discovery[5].  It is not the role of the court in such circumstances (present here) to determine (a) whether there is an evidentiary support for particular ways in which the contract was breached, or (b) to rule on the existence *vel non* of genuine disputes of material facts on each particular way in which the Defendants breached their agreements with the Plaintiff.  Instead, it is for the Plaintiff to discern through discovery the evidence that supports and/or fleshes out the particular ways in which the Defendants failed to perform under their contractual obligations.  Thus, the Court must deny the motion because it is improper.

### III.  THE COURT SHOULD DENY THE MOTION BECAUSE THERE IS A GENUINE DESPUTE OF MATERIAL FACT AND DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT.

Summary judgment is inappropriate where, as here, the parties genuinely dispute whether there were breaches of the agreements entered into, including without limitation the Severance Agreement (the "Agreement").  In its Memorandum and Opinion date January 17, 2007, this Court ruled that Plaintiff may pursue his claims against Defendants for Lanham Act violations (Count Four), Florida state law violations (Count Five), breach of contract--rescission (Count Six), defamation (Count Nine), all of which constitute independent breaches of the Agreement.

---

[5] As noted *supra* at n. 3, Defendants themselves admit there is a dispute of fact on some breach of contract issues. In addition, the Agreement contains no severability clause so that the entire contract rises or falls on the viability of all the provisions.

319272-2

*See* Klayman Decl. ¶¶ 28-31 Ex. A ¶ 17.  Since Defendants did not, and can not, allege in the Motion that the surviving claims for, at least, defamation are appropriate subjects for summary judgment before any discovery is taken, their motion necessarily fails.

Furthermore, Defendants cannot and do not even purport to show that the absence of factual disputes on plaintiff's breach of contract claims.  Besides the rather clear disputes set forth in the preceding paragraph, the Defendants admit there is a dispute (a) about the amount of the final pay owed to Plaintiff under the Agreement after his resignation on September 19, 2007; (b) about the amount of the health insurance premiums they owed to Plaintiff under the Agreement after he resigned, and (c) as to ownership of artwork and whether the plaintiff was entitled to it and other items of personal property.  *See also infra* at Part II. B.  Given these disputed facts, the Defendants' motion is hopeless, and cannot possibly knock out the breach of contract claims.

Notwithstanding the foregoing, and in an attempt to address the Motion in accordance with the Rules, Plaintiff opposes the assertions contained in the Motion to the extent he can fairly and reasonably respond to the undeveloped and unchallenged facts that Defendants prematurely and impermissibly claim are not in dispute.  As to each, Plaintiff takes issue.

### A.    The Court Should Deny Summary Judgment As to Count Six (Breach of Contract-Recission.

The Court has already resolved Defendants' challenge to this count in its January 17, 2007, Memorandum Opinion and Order. Not only did the Court allow the claim to proceed, but it ruled that Klayman should be permitted to conduct discovery as to the extensive and pervasive

nature of the breaches alleged in the Second Amended Complaint.[6]  The instant motion does not

provide any reason for the Court to alter its recent decision.[7]

Defendants cite to the integration clause in the Agreement in support of their instant

motion, which clause was there when they made their motion to dismiss and which does not give

them an escape hatch in any event.  Moreover, their reliance on *One-O-One Enterprises, Inc. v.

Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988) is entirely misplaced.  The court there did *not*

conclude that an integration clause bars fraud-in-the-inducement claims generally or confines

them to claims of fraud in execution.  *Cf. id*. at 1287 (allusion to emergency circumstances or

signatures obtained by trick or artifice).  Indeed, as other courts have cautioned, such a reading

would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of

boilerplate.  *See Betz Laboratories, Inc. v. Hines, 647 F.2d 402, 407 (3d Cir. 1981);* 2 E. Allan

Farnsworth, *Farnsworth on Contracts* § 7.4 (1990) ("To the extent that evidence of

misrepresentation is admissible even if the agreement is completely integrated, it is admissible in

the face of the usual merger clause, since such a clause shows no more than that the contract is

completely integrated.").  Here, Plaintiff alleges that their deliberate and material

misrepresentations regarding the future of the very institution that Klayman founded and headed

---

[6] Under the law of the District of Columbia, "[w]here a party to an executed contract discovers a material misrepresentation made in the execution of the contract, that party may elect one of two mutually exclusive remedies.  He may either affirm the contract and sue for damages, or repudiate the contract and recover that with which he or she has parted." *Dean v. Garland*, 779 A.2d 911, 915 (D.C. 2001) (citing *Dresser v. Sunderland Apartments Tenants Assoc.*, 465 A.2d 835, 840 (D.D.C. 1983)).

[7] Rescission is intended to return contracting parties to their pre-contract position, but an exact or literal return to the status quo is not necessary.  Rescission (1) it may be effected by mutual agreement, or (2) it may be granted unilaterally because of fraud, illegality, mutual mistake or a contract provision providing for rescission. *Deckard v. General Motors Corp.*, 307 F.3d 556 (7th Cir. 2002).  Complete restoration is not necessary for rescission of an agreement if the party that is not fully restored was actually at fault. 17A Am Jur 2d CONTRACTS § 577.  The party who seeks to rescind a contract need not offer to restore where the defrauding party has made restoration impossible.  Memorandum Opinion at 29.  *See also Kobatake v. E.I. DuPont De Nemours and Co.*, 162 F.3d 619, 625 (11th Cir. 1998).

for years—and was the very reason why he so carefully negotiated a severance agreement that would advance Judicial Watch's interests--induced Klayman to enter into the Agreement. Klayman Decl. ¶¶7, 11.  Plaintiff did not want to leave his institution in the hands of someone, who not only lacked a college degree and was not a lawyer, but who had misrepresented himself to boot.  *Id*. ¶ 8.  During the negotiations, the Defendants repeatedly and continuously represented that they would install a fitting and competent successor.  Indeed, the Defendants discussed with Plaintiff the particular candidates they were considering, which included ex-Congressman Bob Barr.  *Id*. ¶ 9. The extent and nature of Defendant's fraud in the inducement is clearly disputed by the parties and will necessarily be the subject of discovery.  Less than two weeks ago, the Court refused to dismiss this count.  Nothing has changed in the interim to change that result.

**B.    The Court Should Deny Summary Judgment As to Count Seven (Breach of Contract-Damages).**

In seeking summary on this count, the Defendants use their self-serving declarations in an effort to prove the absence of any genuine dispute of material facts.  Despite the fact that no discovery has occurred and the instant motion is premature and improper, if the Court decides to entertain the motion, the declaration of Larry Klayman submitted with this memorandum shows conclusively—even in the absence of further discovery-- that there are disputed issues of fact that preclude summary judgment.

*1.    Judicial Watch's Failed to Pay Klayman's His Final Paycheck.*

Defendants admit that they still owe Klayman wages for his employment during his tenure as Chairman of Judicial Watch.  (Def. Br. at 7).  In the Agreement, Judicial Watch expressly promised to make "payment [to Klaymen] for compensation through his last day of work."  Klayman Decl. ¶ 12, Ex. A ¶ 2.  Klayman disputes that Defendants paid his

9

compensation in full as required by the Agreement, and in fact, Defendants owe an amount in excess of the $3,194.00 as conceded in the Motion.  (Def. Br. at 7); Klayman Decl. ¶ 12.

At a minimum, discovery is necessary to determine the level of compensation owed to Klayman as well as to whether Judicial Watch failed to provide other consideration as required under the Severance Agreement including but not limited to health insurance for Klayman and his family.  *See* Klayman Decl. ¶¶ 22-23; *see also* Fed. R. Civ P. 56(f).

> ### 2. *Judicial Watch Failed To Act in Good Faith to Remove Klayman as Guarantor of the Building Lease and Credit Cards*

The Agreement required Judicial Watch to work in good faith to remove Plaintiff as guarantor of Judicial Watch's lease for its Washington, D.C. headquarters.  Based on conversations Plaintiff had with the Landlord, and in a complete lack of good faith, the Defendants never even approached the Landlord to secure his release.  Klayman Decl. ¶ 13. There is, therefore, a dispute over the bona fides of the letters from the Landlord that Defendants have attached to their motion.[8]  Even if the Court could properly accept the facts in Defendants' declarations at face value, Defendants admit they made but a single, half-hearted attempt, soon after Plaintiff resigned, to have the Landlord remove Klayman.  They further admit that they could have secured Klayman's removal, but chose not to because they did not like the conditions requested by the Landlord.[9]  Defendants made no further attempts, and today, Klayman remains the guarantor of the lease.  (Def. Br pp. 9-10).

---

[8] As Plaintiff also points out, the Defendants have been known to fabricate documents, including without limitation expense vouchers, so the possibility of them submitting falsified documents in support of their motion is high. Klayman Decl. ¶ 13.  In any event, the veracity of these hearsay documents is further reason why the Defendants' self serving declarations simply cannot support summary judgment.

[9] The reasonableness of the conditions that Defendants so cavalierly rejected is itself a question of fact, especially since Plaintiff left Judicial Watch with approximately $20 million in liquid, or nearly liquid, assets when he resigned.  Klayman Decl. ¶ 14.

319272-2

The Defendants refused to remove Klayman as guarantor even though they could have done so, and they further refused to make more than a single effort to remove Klayman in the 3 ½ years that have passed since his resignation.  Klayman Decl. ¶ 14.  The Defendants also failed to cause Judicial Watch to purchase the building, as they represented to Klayman and thousands of donors, which would have released Klayman as guarantor.  Klayman Decl. ¶ 15.  As a result, the Defendants' good faith is directly at issue.

Meanwhile, plaintiff's continued status as guarantor continues to adversely affect his financial condition.  Plaintiff had a wife and has two young children and the evergreen guarantee to which the Defendants continue to subject him is an enormous contingent liability hanging over him and his family like the sword of Damocles.   Klayman Decl. ¶ 16.  All this further shows that the Defendants have not acted in good faith as required by the Agreement.

The Agreement also required the Defendants to remove Plaintiff as the guarantor for all Judicial Watch credit card accounts within thirty days of his separation date of September 19, 2003.  Although Defendants now assert in their motion papers that they did remove him from one credit card, there were at least two other credit cards, a master card and a visa, on which he was a guarantor, when he resigned.  *Id*.  ¶ 17.  Defendants have yet to take his name off either of them.  *Id.*

3.     *Defendants Failed to Return Klayman's Property Including Artwork.*

This is a classic dispute of fact.  Under the Agreement, Klayman was to have access to Judicial Watch offices, including its headquarters in Washington, D.C. and it offices in Miami, Florida, to remove his property and that of his law firm Klayman & Associates, including artwork. Judicial Watch employees maintained exclusive control over all that property after Plaintiff resigned from Judicial Watch.   Although Defendants claim in their declarations that

11

they provided Klayman with access, (Def. Br. pp. 10-12), Klayman disputes this. To the contrary, the Defendants refused him full access and severely restricted him in both the Washington and Miami offices.  Klayman Decl. ¶ 20.  Defendants refused to provide him with much of his personal property, consisting of his corporate books and records for other companies in which he was involved, client files for his law firm, Klayman and Associates, and personal documents, such as leases.  *Id* .  In addition, Plaintiff challenges the bona fides of the inventory that the Defendants now tout, noting that there is no indications that he ever agreed with the enumeration of items on the inventory, by signature or otherwise.  *Id*.  He further attests that there never was any agreement that he was required to pay for any employees at Judicial Watch to gather and/or return his property.

In addition, the Defendants' argument that one piece of artwork belongs to Judicial Watch since it paid for it initially misses the point entirely.  Besides the fact that payment is an entirely separate issue from Plaintiff's ownership of the artwork, there were at least four (4) separate pieces of artwork (all paintings) in the Miami office that are in dispute.  Klayman Decl. ¶ 21.  Even if Judicial Watch (a) initially paid for one painting, and (b) it was included (rightly or wrongly) in Judicial Watch's inventory (based solely on the Defendants' self serving, specious, unilateral statements in any event, which Plaintiff questions), the existence of a genuine dispute of material facts as to the number of paintings and the ownership of them are posed in classic form that preclude summary judgment.

### 4.   *Defendants Failed to Pay for Klayman's Family Health Insurance Coverage.*

The Agreement expressly provided that, "*Judicial Watch shall pay the cost of such insurance, to the same extent that it paid Klayman's family health insurance coverage during his employment*."  Klayman Decl. ¶ 22, Ex. A. ¶ 3(A) (Emphasis Added).  When plaintiff left

Judicial Watch, it had been paying all the premiums due for my family health insurance coverage—and Defendants admit that in their motion papers. (Def. Br. p. 16).  Indeed, for a least a year before he left, Plaintiff took no increase in his salary in return for payment of his family's coverage and he was one of the only, if not the only, employee at Judicial Watch that had a family, with 2 young children to boot.  Klayman Decl. ¶ 23.  After leaving Judicial Watch, Defendants ceased paying all the premiums "to the same extent it paid [them] during his employment.

Defendants now argue that the health insurance premiums Judicial Watch paid prior to Klayman's voluntary resignation were erroneous; therefore, Defendants were justified in breaching the express terms of the Agreement.  Once again, Defendants' denials of liability cannot eliminate the genuine factual dispute on the issue of payment for my family health insurance.  Klayman Decl. ¶ 23.  Furthermore, the self -serving and false declaration of Judicial Watch employee, Prytherch, that Klayman was not entitled to family coverage upon his voluntary resignation is based on lack of information and upon documents that were never produced, (*see e.g.* Prytherch Decl. ¶¶ 16, 18, 23 and 25).  Ms. Prytherch also offers irrelevant and baseless opinions and conclusions of law about Klayman and the common practice at Judicial Watch and under IRS regulations occurring prior to the declarant's employment at Judicial Watch.  (*See e.g.,* Prytherech Decl. ¶¶ 3, 14, 21, 22 and 24).  Given the admitted facts, and Plaintiff's own declaration, there can be no serious question that summary judgment is not appropriate.  Discovery is needed as a matter of course.  Since Plaintiff has not had the opportunity to engage in discovery, no credible record exists as to the purported facts and conclusory commentary contained in the Motion, therefore, summary judgment is inappropriate.

5. *Defendants Failed to Provide Klayman Access to Documents.*

The Agreement expressly provides for Klayman to have access to documents in the possession of Judicial Watch:

> *Klayman shall be afforded access to such Confidential Information as he may reasonably require in order to defend or respond to any accusation, action or threat of action against him arising out of or relating to his tenure at Judicial Watch*…. [Klayman] shall take reasonable steps to protect such Confidential Information from any use or disclosure by others other than in connection with such defense or response (e.g. by Protective Order or Confidentiality Agreement).

Klayman Decl. ¶ 24, Ex. A ¶ 4(F) (Emphasis Added).

On more than one occasion, Klayman demanded access to documents under the Agreement to answer accusations from the Defendants themselves and from others. Klayman Decl. ¶ 24. These included coercive if not extortive charges by the Defendants (and even the threat of a lawsuit) soon after he left--Plaintiff was in the midst of his campaign for Senate-- that he had failed to pay expenses he owed to Judicial Watch. *Id.* at ¶ 25. They also included accusations made by others, such as Peter Paul, for whom Judicial Watch had agreed to provide legal counsel, to the effect that Plaintiff had been fired by Judicial Watch. *Id.* at *¶* 26. While the documents to which Plaintiff sought access were clearly encompassed by the language of the Agreement and should have been readily available,[10] Defendants flatly refused Plaintiff access. Then, as now, the Defendants simply made false charges, backing them up with selective "supporting" documents that were either untrue or rank hearsay. The stark factual dispute is, therefore, whether Defendants can justify their breach of the Agreement by denying Klayman

---

[10] Defendant Fitton had virtually every document relating to Mr. Paul on his computer and could easily have provided them to Plaintiff. Klayman Decl. ¶ 26. In any event, and contrary to the Defendants' declarations, the documents relating to Mr. Paul that Plaintiff sought access to were not voluminous in any event.

14

access to the documents that he rightfully demanded. That dispute cannot be resolved on summary judgment, especially in the absence of any discovery.[11]

      6.   *Defendants' Disparaged Klayman And Tried to Limit His Ability to Represent Clients.*

The Agreement prohibited Defendants from disparaging Plaintiff. In particular, the Defendants agreed, *inter alia*, not to "directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about Klayman." Klayman Decl. ¶ 28, Ex. A ¶ 17. Nonetheless, after Klayman resigned, the Defendants mounted a widespread campaign to disparage him among the public and the press. Klayman Decl. ¶ 29. Among the particular disparaging actions are those set forth in the Second Amended Complaint at ¶¶ 66.A, B., G., H., J, I., 118, 120-125. The disparagement included statements made to the media, donors, and the public, in writings, conversations and pleadings and on a wide variety of topics. These acts evidence Defendants' widespread and systematic pattern of disparagement and denigration of Klayman in violation of the express terms of the Agreement. Klayman Decl. ¶¶ 30. 31. Defendants do not dispute much of the disparagement, but argue the Agreement did not prohibit such disparaging actions. This, again, presents a classic dispute of fact.

The Agreement also did not prohibit plaintiff from representing clients that Judicial Watch had represented; instead, it required only that Plaintiff withdraw from those cases in which he had entered his appearance for clients of Judicial Watch while he headed the organization. Neither Plaintiff nor Judicial Watch could control a client's choice of counsel, and

---

[11] Defendants would like to inject issues of privilege into the argument, but those are complete red herrings. Besides the fact that those issues themselves involve factual disputes relating to Mr. Paul's relationship with Judicial Watch and the existence of any privilege at all, the Agreement expressly provides that Plaintiff is entitled to "confidential information." Whether that includes privileged information, whether any privilege had been waived in any event, and whether the parties could have crafted an appropriate protective order for the documents are issues that cannot be resolved in the absence of a factual record developed through discovery.

319272-2

the Agreement makes this clear.  Klayman Decl. Ex. A, ¶ 5.B. (iii).  Furthermore, the ethical rules give the client the sole control over his choice of counsel.  The Agreement could not, and did not, prevent a client Judicial Watch represented when Plaintiff resigned from discharging Judicial Watch and retaining Klayman, individually or as co-counsel with Judicial Watch attorneys, after September 19, 2003.  *See* D.C. Super. Ct. R. Civ. P. 101.

In the matter captioned *Dalrymple, et al v. United States*, Case No. 1:03cv20588 (S.D. Fla. 2003), Defendants withdrew their appearance as counsel of record for a plaintiff, Sandra Cobas, as did plaintiff.  Klayman then entered his appearance on behalf of Ms. Cobas in that case.  On September 28, 2004, Defendants moved to strike Klayman's appearance as counsel and deprive Ms. Cobas of her choice of counsel.  Klayman Decl. ¶ 32, Ex. B.  This came at the height of Plaintiff's Senate campaign, when he was under intense public scrutiny, and was taken to obtain maximum tactical and coercive value.  In flagrant breach of the requirement to maintain the confidentially of the Agreement, Klayman Decl., Ex. A ¶ 20, the Defendants incorporated in their motion substantial parts of the Agreement.  *See Id.*, Ex. B.  Besides revealing the existence and substance of the Agreement (in breach of the Agreement's own terms), the Defendants also disparaged Klayman in the motion by accusing him as having acted improperly and in breach of the Agreement by undertaking Ms. Cobas' representation.  Klayman Decl. ¶ 34.  While the court properly rejected the motion as without merit, Defendants' breaches of the Agreement were not erased.

The Defendants further interfered with the Plaintiff's ability to represent other clients as well.  Genifer Flowers, for example, expressed a desire to retain Plaintiff after he left Judicial Watch.  Defendant Fitton however ominously told Ms. Flowers it would be unwise for her to retain Klayman along with Judicial Watch counsel, casting innuendo and disparaging aspersion

on Klayman.  Klayman Decl.¶ 38.  This, too, was a breach of the Agreement, as well as a flat out lie by Fitton.

The Second Amended Complaint outlines a pattern of conduct meant to directly and indirectly disparage and defame Klayman and misrepresent Klayman's voluntary resignation from Judicial Watch, all in violation of the Agreement.  Defendants purport to seek summary judgment as to Klayman's breach of contract remedies and damages claims, but deny the materiality of facts alleged in support of Klayman's breach of contract claims.

Defendants do not, and can not, address the merits of these allegations, which are factual assertions that support Klayman's disparagement and defamation claims, properly pled in the Second Amended Complaint.  Klayman is entitled to the opportunity, through discovery, to demonstrate a pattern of opportunistic and damaging conduct intentionally designed to defame and disparage Klayman in violation of the Agreement.  Defendants are not entitled to cut off those discovery rights in the guise of a summary judgment motion.

C.    **The Court Should Deny Summary Judgment As To Count Eight (Breach Of Contract – Specific Performance).**

The arguments set forth above establish that summary judgment is far from justified on Count Eight any more than on Counts Six and Seven.  The scope and extent of the Defendants' many breaches of contract are at issue and, when proven, will result in judgment for the Plaintiff.  Count Eight seeks specific performance by the Defendants of particular terms of the Agreement.  Plaintiff is entitled to develop his case through discovery.

319272-2

*CONCLUSION*

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion for

Partial Summary Judgment be denied in its entirety.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**


By:     //s// *Daniel J. Dugan*
        Daniel J. Dugan, Esquire
        1635 Market Street, 7th floor
        Philadelphia, PA  19103
        215.241.8872--215.241.8844 *fax*
        *ddugan@lawsgr.com*
February 16, 2007     *Attorneys for Plaintiff, Larry Klayman*

Of Counsel:

**SPECTOR GADON & ROSEN, P.C.**
Jeffrey H. Schervone, Esquire
1000 Lenola Road, Bldg. 1, Suite 202
Maple Shade, NJ  08052
856.778.8100
856.772.5344 *fax*
*jschervone@lawsgr.com*

319272-2

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2007, a true and correct copy of Plaintiff's Opposition to Defendants' Motion For Partial Summary Judgment was served via electronic filing on the following:

Richard W. Driscoll, Esquire
Driscoll & Seltzer, PLLC
600 Cameron Street
Alexandria, Virginia 22314

*Counsel for Defendants*

By: _____ //s// *Daniel J. Dugan* _____
           Daniel J. Dugan, Esquire

319272-2