UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

    v.

JUDICIAL WATCH, INC., *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)

**MEMORANDUM OPINION**
(April 3, 2007)

Currently pending before the Court is Defendants' Motion for Partial Summary Judgment on the three breach of contract claims brought by Plaintiff Larry Klayman ("Klayman") in Counts Six, Seven, and Eight of his Second Amended Complaint.  Plaintiff opposes Defendants' Motion for Partial Summary Judgment arguing, *inter alia*, that Defendants' Motion is premature because the parties have not yet engaged in discovery in this action, and supports this argument with an affidavit of his attorney, pursuant to Federal Rule of Civil Procedure 56(f).  Upon searching consideration of Defendants' Motion for Partial Summary Judgment, Plaintiff's Opposition, Defendants' Reply, the exhibits attached to those filings, the relevant case law, and the entire record herein, the Court shall grant Defendants' Motion for Partial Summary Judgment only as to the allegations contained in Count Six (Breach of Contract – Rescission) that Judicial Watch fraudulently induced Klayman to enter the Severance Agreement, and the allegations contained in Counts Seven (Breach of Contract – Damages) and Eight (Breach of Contract – Specific Performance) that Judicial Watch failed to pay Klayman for the period between September 15

and September 19, 2003. Resolution of the remainder of Defendants' Motion for Partial Summary Judgment is premature at this time because discovery has not yet been conducted in this action and it appears that genuine questions of material fact may exist. The Court shall therefore deny the remainder of Defendants' Motion without prejudice.

## I: BACKGROUND

The Court begins its discussion of the facts by noting that this Court strictly adheres to the text of Local Civil Rule 56.1 (identical to Local Civil Rule 7(h) (formerly Rule 7.1(h)). The local rules for summary judgment "assist[] the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively." *Jackson v. Finnegan, Henderson, Farabow, Garret & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996). "Requiring strict compliance with the local rule is justified both by the nature of summary judgment and by the rule's purposes. . . . The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record." *Id.* (quoting *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980)). "[A] district court should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact." *Id.* (quoting *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).

The Court further notes that Klayman has already been given an extra chance to comply with Local Civil Rule 56.1. On February 2, 2007, the Court found that Klayman's original Statement of Genuine Issues in Opposition to Defendants' Motion for Partial Summary Judgment failed to comply with Local Civil Rules 7(h) and 56.1, and with this Court's April 24, 2006

2

Order, which advised Klayman that "[t]he Court strictly adheres to the dictates of Local Civil Rules 7(h) and 56.1 and may strike pleadings not in conformity with these rules." *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, Order (D.D.C. Apr. 24, 2006) (citing *Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002)); *Klayman*, Order (D.D.C. Feb. 2, 2007). Advising Klayman that the purpose of Rule 56.1 is to "place the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record," *Jackson,* 101 F.3d at 151, the Court struck Klayman's Opposition in its entirety and, in the interest of justice, gave Klayman another opportunity to file a properly prepared response to Defendants' Statement of Material Facts Not In Dispute, one that complied fully with Local Civil Rules 7(h) and 56.1. *Klayman*, Order (D.D.C. Feb. 2, 2007). Klayman filed his revised Opposition, including a Statement of Material Facts Genuinely in Dispute, on February 22, 2007. As such, pursuant to Local Civil Rules 56.1 and 7(h), in resolving the present summary judgment motion, this Court "assumes that facts identified by the moving party in the statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 56.1; 7(h).

   A.    *General Background*

   The Court shall assume familiarity with the Court's January 17, 2007 Memorandum Opinion, *see Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670 (D.D.C. Jan. 17, 2007) (hereinafter "Slip Op."), which sets forth in detail the factual background of this case, and shall therefore only briefly address such facts as are necessary for resolution of the motion currently before the Court. Defendant Judicial Watch, Inc. is a 501(c)(3) organization formed under the

3

laws of the District of Columbia and headquartered in the District of Columbia. Slip Op. at 3. Defendant Fitton is President of Judicial Watch, Defendant Orfanedes is the Secretary and a Director of Judicial Watch, and Defendant Farrell is a Director of Judicial Watch. *Id.* Plaintiff Larry Klayman ("Klayman") is the self-described founder and former Chairman, General Counsel and Treasurer of Judicial Watch, who resides in and practices law in the State of Florida. *Id.*; Defs.' Stmt. of Mat'l Facts Not in Dispute (hereinafter "Defs.' Stmt.") ¶ 1; Pl.'s Stmt. of Mat'l Facts Genuinely in Dispute (hereinafter "Pl.'s Stmt.") ¶ 1.

In his Second Amended Complaint, Klayman brought six claims against various combinations of Defendants, relating to events that occurred after Klayman decided to leave Judicial Watch in September 2003 in order to run for a seat in the United States Senate from his home state of Florida. Slip Op. at 4; Defs.' Stmt. ¶ 2; Pl.'s Stmt. ¶ 2.[1] On September 19, 2003, Klayman entered into a detailed Severance Agreement, signed by Klayman and Fitton, on behalf of Judicial Watch, and attested to by Orfanedes, as Corporate Secretary of Judicial Watch. Slip Op. at 4; Defs.' Stmt. ¶¶ 3-7; Pl.'s Stmt. ¶¶ 3-7; 12/11/06 Decl. of Thomas J. Fitton (hereinafter "Fitton Decl."), Ex. A (9/19/03 Severance Agreement).[2] Klayman negotiated the terms of the

---

[1] In addition, the Second Amended Complaint in this action included three claims (Counts One through Three) brought by Louise Benson, a resident of California who had been a supporter of and donor to Judicial Watch. Slip Op. at 3. In its January 17, 2007 Memorandum Opinion, the Court determined that Benson's claims were limited to $15,000 that she allegedly donated to Judicial Watch. Slip Op. at 12-17. The Court concluded that Benson's claims therefore did not meet the amount-in-controversy requirement of 28 U.S.C. § 1332(a), and declined to exercise supplemental jurisdiction over Benson's claims. *Id.* at 17-20. As such, the Court dismissed without prejudice Counts One, Two and Three of the Second Amended Complaint for lack of subject matter jurisdiction. *Id.* at 20.

[2] Although both parties include copies of the Severance Agreement in their filings, the Court shall cite only to the copy attached to the Fitton Declaration for ease of reference.

4

Severance Agreement along with his counsel, over the course of several months prior to its execution. Defs.' Stmt. ¶¶ 3-4; Pl.'s Stmt. ¶¶ 3-4. Throughout the course of the Settlement Agreement negotiations, Klayman was himself a licensed attorney, and was represented by attorneys from two different law firms. Defs.' Stmt. ¶¶ 5-7; Fitton Decl. ¶¶ 3-4; Pl.'s Stmt. ¶¶ 5-7. Nevertheless, Klayman asserts that before he left Judicial Watch, he discovered that, contrary to representations that Defendant Fitton had previously made, Fitton had not obtained an undergraduate degree. Pl.'s Stmt. ¶ 3; 1/30/07 Decl. of Larry Klayman (hereinafter "Klayman Decl.") ¶ 8. As a result, Klayman asserts that he "demanded, and Defendants Judicial Watch, Fitton, Orfanedes and Farrell agreed, to find a qualified individual with a legal background to lead Judicial Watch as [his] successor." Pl.'s Stmt. ¶ 3; Klayman Decl. ¶ 9. Klayman further avers that he discussed with Defendants "several qualified individuals" and that "[i]t was only based on the Defendants' repeated assurances on this point that [he] proceeded with the process that led to [his] resignation and the signing of the Agreement." Pl.'s Stmt. ¶ 3; Klayman Decl. ¶ 9. Klayman specifically avers that "Defendants' representations materially induced [him] to resign from Judicial Watch and enter into the Agreement." Klayman Decl. ¶ 11.

Klayman asserts that "Defendants' misrepresentations were false and Fitton remains in control of Judicial Watch." Pl.'s Stmt. ¶ 3. In his Second Amended Complaint, Klayman further alleges that, since Klayman's departure from Judicial Watch, Fitton has mismanaged Judicial Watch and misled "Klayman and others to promote his personal agenda, interests, and political ideology to the detriment of Judicial Watch, Klayman, and Judicial Watch's donors and supporters." Slip Op. at 4 (citing SAC ¶¶ 13-14). Klayman also alleges that Judicial Watch, Fitton, Orfanedes, and Farrell have "defamed, disparaged and cast Klayman in a false light to

denigrate Klayman, and in an effort to undermine Klayman's ability to return to the helm of Judicial Watch or compete with Judicial Watch in the future." *Id.* at 4-5 (citing SAC ¶ 16).

Defendants moved to dismiss four of Klayman's six claims against them (Counts Four, Five, Six and Nine), and in its January 17, 2007 Memorandum Opinion, the Court denied Defendants' motion to dismiss as to Counts Four, Five, and Six, and granted-in-part and denied-in-part their motion to dismiss Count Nine. *Id.* at 20-48.[3]  Before the Court ruled on Defendants' motions to dismiss, on December 26, 2007, all Defendants jointly filed a Motion for Partial Summary Judgment as to Counts Six, Seven, and Eight of the Second Amended Complaint, in which Klayman seeks three separate remedies for Breach of Contract – rescission, damages, and specific performance.  Klayman filed his initial Opposition to Defendants' Motion for Partial Summary Judgment on January 30, 2007; however, as discussed above, the Court struck that Opposition by Order dated February 2, 2007.  Klayman filed his revised Opposition, including a Statement of Material Facts Genuinely in Dispute, on February 22, 2007, and Defendants filed their Reply Memorandum on March 1, 2007.

The Court shall discuss below only the allegations and procedural history relevant to the Counts at issue in Defendants' Motion for Partial Summary Judgment.

---

[3] Defendants Fitton and Judicial Watch filed a joint motion to dismiss Counts One, Two, Three, Four, Five, Six, and Nine of the Second Amended Complaint.  Fitton/JW Mot. to Dismiss. Defendants Orfanedes and Farrell filed a separate joint motion to dismiss, in which they joined in Defendants Fitton and Judicial Watch's motion to dismiss Counts Four, Five, and Nine of the Second Amended Complaint – the claims in which Defendants Orfanedes and Farrell are named as defendants – and also asserted an additional argument in favor of dismissal.  The Court's January 17, 2007 Memorandum Opinion denied Defendants Orfanedes and Farrell's separate motion to dismiss and, insofar as Defendants Orfanedes and Farrell joined in Defendants Fitton and Judicial Watch's motion to dismiss Counts Four, Five, and Nine of the Second Amended Complaint, the Court's holdings on those counts applied equally to Defendants Orfanedes and Farrell.

B.    *Count Six (Breach of Contract – Rescission*)

Count Six of the Second Amended Complaint alleges that Judicial Watch willfully breached the Severance Agreement by (1) defaming, disparaging and casting Klayman in a false light to the public and the media; (2) failing to pay Klayman the full amount due under the Severance Agreement; (3) failing to return all of Klayman's property; (4) failing to take affirmative steps to purchase the Judicial Watch headquarters building and remove Klayman as guarantor for the Judicial Watch lease; and (5) failing to find a suitable successor for Klayman as Chairman of Judicial Watch.  Slip Op. at 8 (citing SAC ¶¶ 33-47; 115-132).  Klayman alleges that these "deliberate misrepresentations materially induced [him] to enter into the Severance Agreement," and further claims that in light of Judicial Watch's pervasive breaches of the Severance Agreement, monetary damages would be inadequate.  *Id.* (citing SAC ¶¶ 133-135).  As a result, Klayman claims that the Severance Agreement must be rescinded, with Klayman restored to his position as Chairman of Judicial Watch.  *Id.* (citing SAC ¶¶ 135-137).

Defendants moved to dismiss Count Six, arguing first that Klayman could not seek the equitable remedy of rescission because an adequate remedy at law is available to him, and second that before seeking rescission, Klayman was required to, but unable to, restore Judicial Watch to its pre-contract position.  Slip Op. at 27.  The Court's January 17, 2007 Memorandum Opinion rejected both of these arguments, finding them unavailing at the motion to dismiss stage.  With regards to Defendants' first argument, the Court noted Klayman's allegation that monetary damages are inadequate and that rescission is necessary to prevent continued harm to Klayman and Judicial Watch, and stated that, "[w]hile the equitable remedies of rescission and specific performance may ultimately prove unnecessary or an inadvisable means of addressing Judicial

7

Watch's alleged breach of the Severance Agreement, the Court cannot conclude at this stage of proceedings that they are entirely unavailable to Klayman." Slip Op. at 28. With regards to Defendants' second argument, the Court noted that, contrary to Defendants' argument, it was not "impossible" for Klayman to return to his position as Chairman of Judicial Watch. *Id.* at 29. The Court further noted, however, that if Klayman ultimately opted to pursue a claim for rescission, he would be required to return to Judicial Watch the $600,000 he received under the Severance Agreement. *Id.* at 29.

C.    *Counts Seven (Breach of Contract – Damages) and Eight (Breach of Contract – Specific Performance)*

Count Seven incorporates by reference Klayman's previous allegations and seeks damages for Judicial Watch's alleged breach of the Severance Agreement. Slip Op. at 8 (citing SAC ¶¶ 138-140). Count Eight seeks specific performance as a remedy for Judicial Watch's alleged breach of the Severance Agreement, incorporating by reference Klayman's previous allegations, and further alleging that Judicial Watch has breached the Severance Agreement by: (1) failing to remove Klayman as guarantor for all credit card accounts; and (2) failing to provide Klayman access to documents. *Id.* at 8-9 (citing SAC ¶¶ 141-147). Defendants did not move to dismiss Counts Seven and Eight, but have now moved for summary judgment as to these Counts.

As discussed below, the Court concludes that with respect to Counts Seven and Eight, summary judgment is only appropriate at this time as to Klayman's allegations that Judicial Watch failed to pay him for the period between September 15 and September 19, 2003. To that end, it is undisputed that via wire transfer on September 23, 2003, Judicial Watch paid Klayman a lump severance payment of $400,000, and an additional $200,000, less applicable taxes and

8

payroll withholdings.  Defs.' Stmt. ¶ 8; Fitton Decl. ¶ 6 and Ex. C (documents reflecting wire

transfer); Pl.'s Stmt. ¶ 8.  In addition, Klayman received a regular paycheck on Monday,

September 15, 2003, and his employment with Judicial Watch ended effective September 19,

2003, the date on which the Severance Agreement was signed.  Defs.' Stmt. ¶ 9; Fitton Decl. ¶ 5

and Ex. B (9/15/03 Klayman Paycheck).  Klayman disputes that the September 15, 2003

paycheck was the last to which he was entitled.  Pl.'s Stmt. ¶ 9.

## LEGAL STANDARD

A.    *Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, the moving party "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed.

2d 265 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and

by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324, 106 S. Ct.

2548.

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar

summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52, 106 S. Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S. Ct. 2505 (internal citations omitted). "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587, 106 S. Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

    B.    *Federal Rule of Civil Procedure 56(f)*

    Summary judgment "ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'" *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Under Federal Rule of Civil Procedure 56(f), a court "may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989); *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1175 (D.C. Cir. 1981). "[T]he purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Dickens v. Whole Foods Market Group, Inc.*, Civ. No. 01-1054, 2003 WL 21486821, at *2 n.5 (D.D.C. Mar. 18, 2003) (citing *Celotex Corp.*, 477 U.S. at 326, 106 S. Ct. 2548). The district court has discretion in determining whether it should permit additional discovery before the motion for summary judgment is resolved. *Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002).

A party seeking the protection of Rule 56(f) "must state by affidavit the reasons why he is unable to present the necessary opposing material." *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington*, 699 F.2d 1274, 1278 n.6 (D.C. Cir. 1983); *but see First Chicago Int'l*, 836 F.2d at 1380 (holding that filing an affidavit is not essential to preserve Rule 56(f) contention as long as the district court was alerted to the need for further discovery). The party seeking additional discovery bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the motion. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999). It must also show a reasonable basis to suggest that discovery might reveal triable issues of fact. *Carpenter v. Fed. Nat'l Mortgage Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999).

## III: DISCUSSION

Defendants have moved for summary judgment as to Counts Six, Seven, and Eight of the

Second Amended Complaint.[4]  Klayman opposes Defendants' Motion for Partial Summary

Judgment, arguing that it is premature because the parties have not yet conducted discovery in

this action, that Defendants' Motion for Partial Summary Judgment represents an inappropriate

effort to limit the scope of discovery in this action, and that genuine issues of material fact exist

that preclude summary judgment at this time.  In support of his Opposition, Klayman proffers the

affidavit of his counsel pursuant to Rule 56(f).  *See* 1/30/07 Aff. of Daniel J. Dugan (counsel for

Klayman, hereinafter "Rule 56(f) Aff.").  Klayman is correct that the parties have not yet engaged

in discovery.  Nevertheless, the Court shall grant Defendants' motion for summary judgment

only as to the allegation contained in Count Six of the Second Amended Complaint that Judicial

Watch fraudulently induced Klayman to enter the Severance Agreement, and the allegations

contained in Counts Seven and Eight that Judicial Watch failed to pay Klayman for the period

between September 15 and September 19, 2003.  Those aspects of Counts Six, Seven, and Eight

present purely legal or factual questions as to which no further discovery is required.  However,

resolution of the remainder of Defendants' Motion for Partial Summary Judgment is premature at

this time because discovery has not yet been conducted and genuine issues of material fact appear

to exist.

---

[4] The Court notes that Defendants themselves admit that Counts Six, Seven, and Eight
cannot be completely resolved on a motion for summary judgment because the parties dispute the
facts and circumstances that gave rise to Klayman's departure from Judicial Watch, such that
genuine questions of material fact exist as to whether Judicial Watch misrepresented Klayman's
reasons for leaving Judicial Watch.  *See* Defs.' Mot. for Summ. J. at 2 n.1.

A.    *Count Six (Breach of Contract – Rescission*)

As discussed above, Count Six of the Second Amended Complaint alleges that Judicial Watch breached the Severance Agreement in a variety of ways, including by disparaging and defaming Klayman, failing to pay Klayman the full amount due under the Severance Agreement, failing to return all of Klayman's property, failing to purchase the building in which Judicial Watch's headquarters is located, and failing to take affirmative steps to remove Klayman as guarantor on the Judicial Watch headquarters lease. SAC ¶¶ 115-127. Klayman further alleges that Judicial Watch fraudulently induced him to enter the Severance Agreement by misrepresenting that it would take steps to find a suitable successor for Klayman as Chairman of Judicial Watch. *Id.* ¶¶ 128-134. Without distinguishing the alleged breaches to which he refers, Klayman asserts that "Judicial Watch's breaches of the Severance Agreement are so pervasive and widespread that monetary damages would be inadequate," such that the "Severance Agreement must be rescinded, and the parties must be returned to the status quo anta [sic]." *Id.* ¶ 135.

In moving for summary judgment as to Count Six, Defendants focus only on Klayman's allegations of fraudulent inducement and argue that "Klayman is barred from asserting any such fraud in the inducement by both the parol evidence rule and the Severance Agreement itself, which . . . contains an integration clause." Defs.' Mot. for Summ. J. at 3-7. Klayman argues that the integration clause contained in the Severance Agreement does not bar his fraud-in-the-inducement claim, and further states that the "extent and nature of Defendant's fraud in the inducement is clearly disputed by the parties and will necessarily be the subject of discovery." Pl.'s Opp'n at 7-9. The Court agrees with Defendants that summary judgment is appropriate as

13

to Klayman's allegations that Judicial Watch fraudulently induced him to enter the Severance

Agreement.  However, the Court shall not dismiss Count Six in its entirety because that Count

also appears to allege that Judicial Watch has materially breached the Severance Agreement and

that Klayman is entitled to rescission as a result of the alleged material breach.  *See* SAC ¶ 135.

As an initial matter, the Court notes that Klayman is incorrect in asserting that the Court's

January 17, 2007 Memorandum Opinion "resolved Defendants' challenge" to Count Six.  Pl.'s

Opp'n at 7.  The Court's January 17, 2007 Memorandum Opinion addressed only those

arguments advanced by Defendants in their motion to dismiss – specifically, that Klayman could

not seek the equitable remedy of rescission because he had an adequate remedy at law and

because he was unable to restore Judicial Watch to its pre-contract position.  Slip Op. at 27-29.

As Defendants correctly point out, in considering Defendants' motion to dismiss, the Court was

limited to evaluating the sufficiency of the allegations contained in Klayman's Second Amended

Complaint, to which Klayman did not attach a copy of the Severance Agreement.  The Court has

not yet had the opportunity to consider Defendants' current argument – that Klayman's

fraudulent inducement claim is barred by the parol evidence rule and the integration clause of the

Severance Agreement – and certainly did not resolve that challenge in the January 17, 2007

Memorandum Opinion.

Defendants argue that they are entitled to summary judgment on Klayman's fraudulent

inducement claim because the Severance Agreement contains no mention of any obligation on

the part of Judicial Watch to find a legal/public figure as a suitable successor for Klayman as

Chairman of Judicial Watch.  Defs.' Mot. for Summ. J. at 4.  As a result, Defendants assert, the

integration clause contained in the Severance Agreement precludes Klayman from claiming that

he was fraudulently induced to enter into the Severance Agreement. Defs.' Mot. for Summ. J. at

4. Defendants are correct that under the law of the District of Columbia, "[a] completely

integrated contract may not be supplemented with prior representations not ultimately included

therein, even if those representations are not expressly contradicted by the contract itself."

*Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 928 (D.C. 1992). Furthermore,

"[a]ccording to the parole evidence rule, 'when the parties to a contract have reduced their entire

agreement to a writing, the court will disregard and treat as legally inoperative parol evidence of

the prior negotiations and oral agreements.'" *Id.* (citing *Giotis v. Lampkin*, 145 A.2d 779, 781

(D.C. 1958)).

In order to determine whether the Severance Agreement was a fully integrated document,

the Court "must ascertain the intent of the parties at the time they entered into the agreement."

*Hercules*, 613 A.2d at 927 (citing *Howard Univ. v. Good Food Servs.*, 608 A.2d 116, 126 (D.C.

1992); *Ozerol v. Howard Univ.*, 545 A.2d 638, 641 (D.C. 1988); *Mitchell v. David*, 51 A.2d 375,

377-78 (D.C. 1947)). This investigation begins with an examination of the contract itself and "if

a document is facially unambiguous, its language should be relied upon as providing the best

objective manifestation of the parties' intent." *Id.* (citing *1010 Potomac Assocs. v. Grocery Mfrs.

of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984); *Bolling Fed. Credit Union v. Cumis Ins. Soc'y*, 475

A.2d 382, 385 (D.C. 1984)). Here, the integration clause contained in Paragraph 26 of the

Severance Agreement provides:

> **Entire Agreement.** *This Agreement constitutes the entire agreement and understanding between and among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written or oral agreements and understandings between the Parties with respect to the subject matter of this Agreement. Each of the Parties agrees and acknowledges that in deciding to*

> *enter into this Agreement he or it is not relying on any statements,*
> *representations, understandings or promises other than those contained herein.*
> This Agreement shall be interpreted and enforced in all respects based on its
> express terms and without regard to who drafted the Agreement or any particular
> provision of the Agreement.  Neither the negotiations preceding this Agreement or
> any draft, term sheet, outline, note, or statement, assertion, representation, or
> understanding prior to or contemporaneous with the execution of this Agreement
> shall be used to interpret, change or restrict the express terms and provisions of
> this Agreement.

Fitton Decl. Ex. A (9/19/03 Severance Agreement) (emphasis added).  The language of the

integration clause is facially unambiguous, and Klayman offers no argument that the Severance

Agreement is anything other than a fully integrated document.  *See Hercules*, 613 A.2d at 928 n.

17 ("a recital that the writing 'contains the entire agreement of the parties' has traditionally been

given effect as showing an intention that the agreement be completely integrated") (quoting 2 E.

Allen Farnsworth, *Contracts* § 7.3 at 198 (1990)).  As such, Klayman is barred from introducing

evidence of Judicial Watch's alleged prior oral representations regarding Klayman's successor.

Furthermore, as the D.C. Circuit has explained, where an agreement provides that it

supersedes all previous agreements and understandings, any prior representations are superseded,

such that there are no representations on which a plaintiff could reasonably base a fraud claim.

*One-O-One Enters. v. Caruso*, 848 F.2d 1283, 1286-87 (D.C. Cir. 1988).  As such, if courts were

to permit a plaintiff's "use of the defendants' prior representations . . . to defeat the clear words

and purpose of the Final Agreement's integration clause, 'contracts would not be worth the paper

on which they are written.'" *Id.* at 1287 (citing *Tonn v. Philco Corp.* 241 A.2d 442, 445 (D.C.

1968)).

The circumstances that led to the signing of the Severance Agreement are similar to those

described in *One-O-One Enterprises v. Caruso*, in which the D.C. Circuit determined that an

integration clause prevented a party from invoking the fraud-in-the-inducement exception to the parol evidence rule. *See* 848 F.2d at 1286-87 (after eight months of negotiations, the parties reached a lengthy, detailed and comprehensive final agreement that included an explicit integration clause). Here, Klayman admits that he and his counsel negotiated the terms of his severance from Judicial Watch over the course of several months prior to the execution of the Severance Agreement. Pl.'s Stmt. ¶¶ 3-4; Defs.' Stmt. ¶¶ 3-4. Klayman further admits that at all times during those negotiations, he was a licensed attorney, and was represented by attorneys from two different law firms. Pl.'s Stmt. ¶¶ 5-7; Defs.' Stmt. ¶¶ 5-7. Furthermore, the Severance Agreement is twelve (12) pages long, contains twenty-eight (28) separate paragraphs, and is quite comprehensive and detailed. Fitton Decl. Ex. A.

The Court specifically notes that the Severance Agreement includes individual paragraphs on a wide range of issues, but is entirely silent as to any obligation on the part of Judicial Watch to find a legal or public figure to succeed Klayman as Chairman. Klayman now asserts that "[i]t was only based on Defendants' repeated assurances on this point that [he] proceeded with the process that led to [his] resignation and the signing of the Agreement." Klayman Decl. ¶ 9. However, in light of the significance Klayman now claims to have placed on Judicial Watch's alleged representations regarding his successor, it is surprising that neither Klayman – an attorney himself – nor his attorneys insisted that such representations be documented in the Severance Agreement. Indeed, the lack of such alleged representations in the final Severance Agreement undercuts Klayman's argument that he materially relied on those representations in entering into the Severance Agreement. *Cf. Hercules*, 613 A.2d at 929 ("if a judge concludes that a particular representation was superseded by the writing, 'he does not decide that the excluded negotiations

did not take place, but merely that *if* they did take place they are nevertheless legally immaterial.'") (citing *Luther Williams, Jr., Inc. v. Johnson*, 229 A.2d 163, 165-66 (D.C. 1967) (emphasis in original)).

Klayman argues that the integration clause is of no legal consequence because he has asserted a claim of fraud-in-the-inducement.  Pl.'s Opp'n at 8-9.[5]  This argument is unavailing, however, because the exception to the parol evidence rule for a party who has been induced to enter a contract by a fraudulent misrepresentation "must not be stretched or inflated in a way that 'would severely undermine the policy of the parol evidence rule, which is grounded in the inherent reliability of a writing as opposed to the memories of the parties.'" *One-O-One Enters*., 848 F.2d at 1287 (citing *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 630 (4th Cir.), *cert. denied*, 434 U.S. 923, 98 S. Ct. 400, 45 L. Ed. 2d 280 (1977)).  As in *One-O-One Enterprises v. Caruso*, "[w]e have here the case of 'a party with the capacity and opportunity to read a written contract, who has executed it, not under any emergency, and whose signature was not obtained by trick or artifice.'" *Id.* at 1287.  Under these circumstances, Klayman cannot assert fraud-in-

---

[5] In support of this argument, Klayman cites to *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 407 (3d Cir. 1981), for the proposition that a general rule that integration clauses bar claims of fraud-in-the-inducement "would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate."  Pl.'s Opp'n at 8.  *Betz* does include dicta to that effect; however, the Court notes that in *Betz*, the Third Circuit – whose opinions are not binding on this Court – speculated as to how the Pennsylvania Supreme Court would address the issue at hand, in the absence of clear Pennsylvania law on point.  *See* 647 F.2d at 407 (concluding "that if this case were presented to the Pennsylvania Supreme Court, it would hold that evidence of fraud in the inducement is outside the parol evidence rule and, consequently, admissible.").  Furthermore, *Betz* is of questionable application to the instant case because the Pennsylvania Supreme Court subsequently found, in *1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc.*, 653 A.2d 663 (Pa. 1995) – a case involving sophisticated parties who were represented by counsel and negotiated at length – that parol evidence was inadmissable to show fraud-in-the-inducement against a fully integrated written agreement.  *Id.*, 653 A.2d at 670.

18

the-inducement in order to undo the otherwise complete Severance Agreement. *Hercules*, 613 A.2d at 929.

As such, the Court concludes that, as a matter of law, Defendants are entitled to summary judgment on Klayman's claim, contained in Count Six, that he was fraudulently induced to enter into the Severance Agreement. The Court will not, however, dismiss Count Six in its entirety, as that Count also appears to include a claim for rescission of the Severance Agreement based on Judicial Watch's alleged material breach, a claim on which genuine questions of material fact remain. *See* SAC ¶¶ 115-137.

B.      *Counts Seven (Breach of Contract – Damages) and Eight (Breach of Contract – Specific Performance*)

Count Seven simply incorporates by reference all previous paragraphs of the Second Amended Complaint and asserts a claim for damages for Judicial Watch's alleged breach of contract. SAC ¶¶ 138-140. Count Eight asserts a claim for specific performance, incorporating by reference all prior paragraphs, reasserting Klayman's allegations that Judicial Watch failed to pay him amounts due under the Severance Agreement, return his personal property, and remove Klayman as guarantor for the building in which the Judicial Watch headquarters are located, and adding allegations that Judicial Watch failed to remove Klayman as a guarantor for Judicial Watch credit cards and to provide him with access to documents to which he was entitled. *Id.* ¶¶ 141-147. In their Motion for Partial Summary Judgment, Defendants address Klayman's allegations regarding eleven (11) different categories of purported breaches under the rubric of Count Seven, and state that "Klayman does not assert any independent factual bases for his claim for specific performance." Defs.' Mot. for Summ. J. at 7, 29. This description of Klayman's

claims does not appear to be faithful to the Second Amended Complaint, and the Court will therefore generally address Klayman's allegations of breach of contract in the context of both Count Seven and Count Eight.

> 1. *Defendants Are Entitled to Summary Judgment on Klayman's Allegations That Judicial Watch Failed to Pay Him for the Period from September 15 to September 19, 2003*

The Second Amended Complaint contains scattershot allegations that Judicial Watch "failed to pay Klayman his last paycheck while employed by Judicial Watch," SAC ¶ 66D, and failed "to pay Klayman the full amount due under the Severance Agreement," *id.* ¶¶ 126, 142. Klayman suggests in his Opposition to Defendants' Motion for Partial Summary Judgment that these allegations also encompass Judicial Watch's alleged failure to "provide other compensation as required under the Severance Agreement including but not limited to health insurance for Klayman and his family." Pl.'s Opp'n at 10. However, the parties' briefing on Defendants' Motion for Partial Summary Judgment separately addresses Klayman's allegation that Judicial Watch was required to, but failed to, pay for health insurance for Klayman and his family. *See* Defs.' Mot. for Summ. J. at 14-18; Pl.'s Opp'n at 12-13. As such, the Court addresses below only Klayman's allegation that Judicial Watch was required to, but failed to, pay him for the period between September 15 and September 19, 2003.

As noted above, it is undisputed that via wire transfer on September 23, 2003, Judicial Watch paid Klayman a lump severance payment of $400,000, and an additional $200,000, less applicable taxes and payroll withholdings. Defs.' Stmt. ¶ 8; Fitton Decl. ¶ 6 and Ex. C (documents reflecting wire transfer); Pl.'s Stmt. ¶ 8. In addition, Klayman received a regular paycheck on Monday, September 15, 2003, and his employment with Judicial Watch ended

effective September 19, 2003, the date on which the Severance Agreement was signed. Defs.'

Stmt. ¶ 9; Fitton Decl. ¶ 5 and Ex. B (9/15/03 Klayman Paycheck). Judicial Watch asserts that

the Severance Agreement did not require Judicial Watch to pay Klayman the approximately

$3,194 that he would have earned in salary during the four day period between his final paycheck

on September 15, 2003 and the termination of his employment with Judicial Watch on

September 19, 2003. Defs.' Mot. for Summ. J. at 7. For his part, Klayman maintains that the

Severance Agreement required Judicial Watch to pay him for the period between September 15

and September 19, 2003 because it includes language referencing "payment of compensation

through [Klayman's] last day of work." Pl.'s Opp'n at 9 (citing Fitton Decl., Ex. A (9/19/03

Severance Agreement) ¶ 2).

> However, Paragraph 2 of the Severance Agreement provides:

> **Severance Pay.** . . . Judicial Watch shall pay Klayman as severance a lump sum
> payment equal to $400,000. As soon as practicable after execution of this
> Agreement and in no event later than September 24, 2003, the Severance Pay shall
> be wired or otherwise deposited in U.S. funds to an escrow account . . . *Klayman
> acknowledges that he is not legally entitled to the Severance Pay or other
> consideration beyond payment of compensation through his last day of work,* and
> that the Severance Pay and other consideration being provided to him pursuant to
> this Agreement is intended as, and is, consideration for his execution of this
> Agreement and in order to amicably resolve, on the terms set forth in this
> Agreement, differences between the Parties and in recognition of Klayman's
> leadership and contribution to the founding and development of Judicial Watch in
> a way commensurate with similar arrangements for principal executives of
> comparable organizations. The Severance Pay and other consideration being
> provided to Klayman pursuant to this Agreement is also intended to, and does,
> fully satisfy all amounts, if any, owed to Klayman by Judicial Watch, including,
> but not limited to, any amounts owed to him for accrued but unused vacation and
> sick leave.

Fitton Decl., Ex. A ¶ 2 (emphasis added). Thus, when read in context, the language on which

Klayman relies in claiming that Judicial Watch was required to pay him for the period between

September 15 and September 19, 2003, does not support his claim. Rather, the language in question constitutes an acknowledgment by Klayman that he is only entitled to compensation through his last day of work (September 19, 2003), but that Judicial Watch will instead pay him the Severance Pay in recognition of his contribution to Judicial Watch and in complete satisfaction of any amounts owed to Klayman by Judicial Watch. As Klayman's reading of the Severance Agreement is belied by the very language of the Severance Agreement, additional discovery would not change the Court's conclusion that Defendants are entitled to summary judgment on Klayman's allegations that Judicial Watch was required to pay him for the period between September 15 and September 19, 2003.

2.    *Summary Judgment Is Inappropriate at this Time as to the Remainder of Counts Seven and Eight*

In support of his Opposition to Defendants' Motion for Partial Summary Judgment, Klayman provides the Affidavit of his attorney, Daniel J. Dugan, made pursuant to Federal Rule of Civil Procedure 56(f). *See* Rule 56(f) Aff. Attorney Dugan's Affidavit states that no discovery has been conducted in this matter, and avers that "Defendants' Motion for Partial Summary Judgment is based largely on the denials of the allegations of the Second Amended Complaint contained in declarations of Defendant[s and] . . . employees of Defendant Judicial Watch, . . . who are within Defendants' control." *Id.* ¶¶ 11-12. Furthermore, Attorney Dugan avers that "Plaintiff has no way to elicit testimony of these individuals and challenge the sufficiency and/or veracity of any statements or documents attached to Defendants' declarations except by deposition and by written document requests and interrogatories . . . ." *Id.* ¶ 14.

The two sets of allegations addressed above – that Judicial Watch fraudulently induced

Klayman to enter into the Severance Agreement and that Judicial Watch failed to pay Klayman for the period between September 15 and September 19, 2003 – can be resolved at this time because they involve a straight legal question and a factual issue as to which no genuine questions remain. Resolution of the rest of Defendants' Motion for Partial Summary Judgment, however, is premature at this time because discovery has not yet been conducted in this matter and Defendants' Motion for Partial Summary Judgment involves a number of detailed factual questions.

Defendants assert that Attorney Dugan's Rule 56(f) Affidavit does not demonstrate a need for discovery in order to respond to Defendants' Motion for Summary Judgment. Defs.' Reply at 6-7. To the contrary, as Attorney Dugan highlights, in moving for partial summary judgment, Defendants rely heavily on declarations submitted by Defendants themselves and by individuals within Defendants' control. Rule 56(f) Aff. ¶ 12. Klayman is entitled to test the assertions made in those declarations through discovery, before being forced to respond to Defendants' Motion for Partial Summary Judgment. *Dickens*, 2003 WL 21486821, at *2 n.5 ("[T]he purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery."). Significantly, in a number of instances, Defendants argue that summary judgment is appropriate because Klayman presents only hearsay evidence or makes assertions based on "information and belief" rather than personal knowledge. *See, e.g.*, Defs.' Reply at 10, 12. Of course, it would be premature to grant Defendants summary judgment on those grounds, as Klayman has not yet had the opportunity to uncover the necessary factual support for his arguments against summary judgment. The Court shall therefore deny without prejudice the

23

remainder of Defendants' Motion for Partial Summary Judgment, pursuant to Civil Rule of Procedure 56(f).

## IV: CONCLUSION

For the reasons set forth above, the Court shall grant-in-part and deny-in-part Defendants' Motion for Partial Summary Judgment. Specifically, the Court shall grant Defendants' Motion for Partial Summary Judgment only as to the allegations contained in Count Six that Judicial Watch fraudulently induced Klayman to enter the Severance Agreement, and the allegations contained in Counts Seven and Eight that Judicial Watch failed to pay Klayman for the period between September 15 and September 19, 2003. The Court shall deny without prejudice the remainder of Defendants' Motion for Partial Summary Judgment, as discovery has not yet been conducted in this action and it appears that genuine questions of material fact may exist. An appropriate Order accompanies this Memorandum Opinion.

Date:   April 3, 2007

                                           _____*/s/*_____

                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge