# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Larry Klayman,<br>      *Plaintiff,*<br><br>v.<br><br>Judicial Watch, Inc., *et al.,*<br>      *Defendants.* | Civil Action No. 1:06-CV-00670<br><br>Honorable Colleen Kollar-Kotelly<br><br><br>**Jury Trial Demanded.** |

### *PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND COUNTERCLAIM AND CROSS MOTION FOR SANCTIONS*

For the reasons set forth at length in the attached Memorandum of Points and Authorities the court should deny Defendants' Motion for Leave to Amend Counterclaim. Plaintiff, Larry Klayman, also cross moves the Court for an order imposing sanctions on the defendants and their counsel and permitting limited discovery of defendants and their counsel for the reasons set forth at length in the attached Memorandum of Points and Authorities to which the court is respectfully referred.

          Respectfully submitted,

          **SPECTOR GADON & ROSEN, P.C.**

          By:     //s// *Daniel J. Dugan*
             Daniel J. Dugan, Esquire
             1635 Market Street, 7th floor
             Philadelphia, PA 19103
             215.241.8872--215.241.8844 *fax*
             ddugan@lawsgr.com
             *Attorneys for Plaintiff, Larry Klayman*

June 11, 2007

358674-3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Larry Klayman, *Plaintiff*, | : : : | Civil Action No. 1:06-CV-00670 |
| v. | : : : | Honorable Colleen Kollar-Kotelly |
| Judicial Watch, Inc., *et al.*, *Defendants*. | : : : : | **Jury Trial Demanded.** |

*PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND COUNTERCLAIM AND IN SUPPORT OF HIS CROSS MOTION FOR SANCTIONS*

Plaintiff, Larry Klayman, submits this memorandum of points and authorities in opposition to the Defendants' Motion for Leave to Amend Counterclaim (the "Motion") and in support of his Cross Motion for Sanctions ("Cross Motion"). For the reasons set forth below, the Court should deny the Motion and grant the Cross Motion. The Motion was not only made without complying with the requirements of LCvR 7(m), but was brought in bad faith in order to defame Klayman; embarrass, harass and injure Klayman's family, including his wife and two young children; contains false, irrelevant, impertinent and scandalous allegations; and the only purportedly new claim proposed is futile.

*INTRODUCTION AND PROCEDURAL HISTORY*

This case arises solely out of the conduct by Defendants Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes, and Christopher J. Farrell (collectively referred to as "Judicial Watch") against Klayman *after* Klayman voluntarily resigned in September 2003 pursuant to the terms of a written severance agreement from his position as Chairman of Judicial Watch, which he had founded. Klayman commenced this action on April 12, 2006, and filed his Second Amended Complaint on June 14, 2006. In May 2006, Defendants had their counsel warn Klayman that the

358674-3

"defense strategy" likely would include the publication and dissemination of "information" that would viciously and personally attack Klayman and his family based on accusations made by his ex-wife in a divorce action instituted well before Klayman ever expressed his desire in 2003 to step down as Chairman of Judicial Watch. Counsel for Klayman immediately notified defendants' counsel that (a) the allegations to which he referred were privileged, attorney-client communications, (b) the allegations were *not* true and had, in fact, been withdrawn by Mr. Klayman's prior wife, (c) were entirely irrelevant to *any* matter in dispute, including potential counterclaims, and (d) the false accusations had been made in a prior divorce proceeding, which had been sealed to protect, *inter alia,* Klayman and his children from the dissemination of the false and withdrawn accusations. A copy of that letter is attached here as Exhibit "A." After receiving the letter, the Defendants answered the Second Amended Complaint and asserted counterclaims against Klayman on June 28, 2006. Those counterclaims, like the claims of Klayman, arose out of the alleged conduct of Klayman after he left Judicial Watch and did not include any of the allegations that were the subject of the May 2006 letter. [1]

Defendants now choose to file the instant Motion almost a year after their answer and counterclaim, <u>after having failed in their attempts to have the Court dismiss or grant summary judgment on the bulk of Plaintiff's claims</u>, and on the very last day permitted to seek amendments of the pleadings. The proposed amendments add no valid legal claims; moreover,

---

[1] As a preliminary matter, the Motion should be denied because Defendants failed to comply with LCvR 7(m), which provides: "before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement." Pursuant to the May 9, 2007 Amended Scheduling Order, Motions to Amend pleadings were due on May 25, 2007. On May 24, 2007 after 6:00 p.m., counsel for Defendants sent an email seeking consent to file the Motion. In the email, Defendants advised the amendments would consist of expanded Lanham Act claims and a claim for cybersquatting, based upon Klayman's activities subsequent to the filing of the initial Counterclaim. Defendants did not attach the proposed amendments. On May 25, 2007, Defendants were advised that Plaintiff could not consent without first reviewing the amendments. At or about the same time, and with no further communication, Defendants filed the Motion and proposed Amended Counterclaim. Defendants failed to make a good faith effort to confer as to the proposed Amended Counterclaim. Accordingly, the Court should refuse to consider the Motion to Amend pursuant to the Local Civil Rules.

there was no question that the counterclaims stated claims for relief, so there was no legitimate reason to include any further evidentiary allegations to the existing counterclaims. *See* Fed. R. Civ. P. 8. In their proposed amendments, defendants seek only to divide Count V for unfair competition into two claims (new Counts V and VI) and to add one new claim for cybersquatting (Count VII), which is futile for purposes of Fed.R.Civ.P. 15(a).[2] The remainder of the proposed amendments simply adds the irrelevant, but scandalous, outrageous and defamatory accusations against Klayman that defendants threatened to use as part of their "defense strategy" a year ago, in May 2006, s*ee* Proposed Amended Counterclaim at ¶¶ 10-20, and the fifteen new proposed exhibits (C through Q). In adding additional unnecessary (and false and defamatory) evidentiary allegations, the defendants intentionally ignore the dictates of Fed. R. Civ. P. 8, which require the pleader only to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."

The day after Defendants filed the Motion, counsel for Klayman emailed a demand to Defendants' counsel to withdraw the Motion reminding counsel of the facts in the May 2006 letter. A copy of that email is attached here as Exhibit "B." Defendants, not coincidentally, refused to do so, and the *Legal Times* contacted Klayman about the scurrilous accusations on the very next business day. In the instant circumstances, the defendants' efforts to misuse the shield of immunity offered to papers filed in federal court as a sword against Klayman is transparent.[3]

Defendants hypocritically purport to "promote conservative, pro-family values," *see* Prop.Am.Counterclaim ¶ 8. To the contrary, their wrongful public disclosure amounts to

---

[2] *See* discussion *infra* at Section II.
[3] Indeed, it was hardly coincidental that a reporter from the *Legal Times*, which had heretofore *never* covered this 13 month old case, immediately contacted Klayman after the defendants filed their Motion on the ECF system and inquired specifically about the scandalous, impertinent and irrelevant allegations contained in the proposed amendment. The *Legal Times* then published an article the following Monday, June 4, 2007. A copy of that article is attached here as Exhibit "C."

3

358674-3

malicious and intentional defamation, blatantly violates the Severance Agreement and Klayman's privacy, and seeks to damage not only Klayman's reputation, but also to embarrass, harass and injure his new wife, his two young children, and other innocent third parties. Such conduct belies the defendants' pro family propaganda.

In light of the foregoing facts and for the reasons set forth in more detail below, the defendants have acted in bad faith in order to maliciously spread irrelevant and scandalous allegations about Klayman and to defame and harm him personally and his family and other innocents on the public record. Furthermore, those accusations were not only false, but later withdrawn (all of which the defendants and their counsel knew since well before Klayman voluntarily resigned to run for the U.S. Senate and none of which have the least relevance to any issue in the instant case). Klayman also revealed them to the defendants in privileged discussions about a court proceeding placed under seal. Accordingly, not only should the court deny the Motion, but it should also impose the strong sanctions needed to deter the flagrant misuse of the court system, including the ECF filing system, by the defendants and their counsel to broadcast and publish irrelevant, false and defamatory, and scurrilous and salacious accusations.

### *LEGAL ARGUMENT*

Fed.R.Civ.P. 15(a) permits a pleading to be amended with leave of Court only when "justice so requires." *Id.* In the seminal case of *Foman v. Davis*, 371 U.S., 178 (1962), the United States Supreme Court established the standard that still governs a Court's consideration of an application seeking leave to amend a pleading. Starting from the premise that "…the grant or denial of an opportunity to amend is within the discretion of the District Court…", *Foman*,

*supra.*, the Supreme Court identified a variety of specific reasons why an amendment to a pleading should not be permitted:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc., -- the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. at 182. Courts in this circuit have not hesitated to deny applications for leave to amend where one of the stated grounds by the Supreme Court in *Foman* was present. *See Banks v. York*, 448 F.Supp.2d 213 (D.D.C. 2006). Under *Foman*, if assertion of a proposed amended claim would be futile, i.e., that it would be subject to possible dismissal, the Court can deny leave to amend. *Foman*, *supra*. at 182.

### I. THE COURT SHOULD DENY THE MOTION TO AMEND BECAUSE DEFENDANTS FILED IT IN BAD FAITH FOR IMPROPER PURPOSES.

The Motion is brought in bad faith and for the improper purpose of defaming, harassing and injuring Klayman, his family and other innocent third parties. In paragraph 7 of the originally filed Counterclaim, defendants only suggested, and Klayman denied, that Klayman's resignation was involuntary.[4] In paragraphs 10 through 20 of the proposed Amended Counterclaim defendants now seek to include the offensive and unfounded accusations under a new sub-heading "Klayman's Forced Resignation for Acknowledged Misconduct." In contradicting their own admissions contained in the Severance Agreement that Klayman resigned voluntarily to pursue other endeavors, defendants outrageously seek to revise history (and the terms of the Severance Agreement) to allege that Klayman was forced to resign as head of Judicial Watch because of the accusations his ex-wife made in their divorce proceeding.

---

[4] This was contrary to the written provisions of the Severance Agreement, and evidence of it would be barred by application of the Parole Evidence Rule.

5

These included alleged infidelity with female Judicial Watch employees, innuendo that Klayman used Judicial Watch resources to further those relationships, and of being abusive. Defendants admit that Klayman himself disclosed the allegations while still Chairman of Judicial Watch and denied them. Defendants obviously believed Klayman since, by their own admission, they did not even bother to conduct any independent investigation, or it would have amounted to a further invasion of privacy . *See* Proposed Amended Counterclaim at ¶¶ 10-11. Further, defendants now seek to allege that those false accusations were the catalyst for Klayman's resignation and the execution of the Severance Agreement. *Id.* at ¶ 15. To justify the inclusion of these irrelevant and defamatory accusations, defendants can only gratuitously assert that "it will assist in shaping the issues to be litigated in this case." Def. Mot. To Amend. at ¶ 4. As defendants know, however, the accusations have no bearing on the legal claims that were already made, nor do they substantially change those claims in the proposed Amended Counterclaim.

Defendants knew of these impertinent, irrelevant and defamatory accusations when they originally filed their counterclaims but omitted them. They were not necessary then, and are not relevant now, to their claims for (a) breach of the Severance Agreement or (b) claims for trademark infringement and unfair competition. Indeed, the Severance Agreement expressly prohibited defendants from disparaging Klayman. Defendants also knew the accusations were scandalous, had been recanted by Klayman's ex-wife, and were under seal by order of the Circuit Court of Fairfax County. In fact, they knew all of this because Klayman had voluntarily revealed the accusations in confidential and privileged discussions with David Barmak, Esq., counsel for Defendants and Judicial Watch, well prior to any discussion of his possible resignation.

Regardless of defendants' knowledge, however, the accusations have no relevance to any of the claims in the proposed Amended Counterclaim. Defendants allege breaches of the

6

358674-3

Severance Agreement in Counts I, II, VIII, IX, X and XI. In Count III, they allege indemnification by Klayman for his law firm's alleged debt pursuant to the Severance Agreement, in Counts IV, V and VI, they allege trademark infringement and unfair competition, and in Count VII, they allege cybersquatting by Klayman's use of his website domain www.savingjudicialwatch.org. Defendants fail to show (because they cannot) how any of the newly drafted scandalous and salacious allegations against Klayman relate to the claims of post-Severance Agreement conduct at issue in this case.

The Severance Agreement confirms that Klayman's separation "shall be treated for all purposes as a voluntary resignation." Severance Agreement ¶ 1. Moreover, pursuant to the Severance Agreement, Judicial Watch issued a press release stating in pertinent part that "Judicial Watch announced today that Larry Klayman has stepped down as Chairman and General Counsel of Judicial Watch to pursue other endeavors." Severance Agreement ¶ 18. In fact, Klayman left Judicial Watch to pursue the Republican nomination for the U.S. Senate from Florida in 2003. In any case, the reason for Klayman's separation is irrelevant to the claims for alleged breaches of the Severance Agreement.

Curiously, Judicial Watch paid Klayman $600,000.00 under the Severance Agreement. Why would Defendants pay in particular a sum of this magnitude if, as they now seem to allege, Klayman so blatantly acted against Judicial Watch's interests? As further evidence that Defendants are now acting in bad faith, there is no reference or mention that Klayman's conduct or use of expenses while at the head of Judicial Watch was improper in Defendants' IRS 990 filings. In fact, in the intervening four years since Klayman's voluntary resignation, defendants never disclosed these allegations because they knew they were false and that it would be improper to do so.

The wrongful disclosure of these accusations now in the proposed Amended Counterclaim blatantly violates the Severance Agreement. In paragraph 17, "Judicial Watch expressly agrees that its present directors and officers namely Paul Orfanedes and Thomas Fitton, will not, directly or indirectly disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about Klayman." Severance Agreement ¶ 17. In blatant breach of this provision, defendants filed the Motion and proposed Amended Counterclaim containing the accusations. On the next business day, not coincidentally, the *Legal Times* contacted Klayman about the scurrilous accusations and published a story about them on June 4, 2007. *See supra* at n.3. Disclosure of the accusations in paragraphs 10-20 of the proposed Amended Counterclaim amounts to both direct and indirect dissemination of clearly defamatory remarks or comments about Klayman meant to harm his reputation and his new wife and children. They also constitute the public disclosure of private facts, and false light invasion of privacy.

As further evidence that the Motion is brought in bad faith and thus fatally soiled, the proposed Amended Counterclaim purports to attach a number exhibits as evidence supporting Defendants claims that Klayman made false and/or misleading statements about Judicial Watch. Under the Federal Rules, pleading standards are minimal. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain short and plain statements of the grounds on which the court's jurisdiction depends, and of the claim showing that the pleader is entitled to relief. Plaintiff need only "give the defendant fair notice of what [his] claim is and the grounds upon which it rests." *Banks*, 448 F.Supp.2d at 215 (quoting, *Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to

dispose of unmeritorious claims." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Conley,* 355 U.S. at 47-48). "The applicable rules of procedure do not mandate the filing of exhibits or attachments to a complaint." *Banks*, 448 F.Supp.2d at 215. Therefore, denial of leave to amend the Counterclaim by adding exhibits does not prejudice plaintiff in any way. Here, each of the claims to which these exhibits purport to support was already set forth in the originally filed Counterclaim. The only difference is that defendants have attached as exhibits C through Q documents they acquired after they filed their original Counterclaim. These gratuitous attachments are mere alleged evidentiary support for defendants' claims of breaches of the Severance Agreement, trademark infringement and unfair competition.

Additionally, defendants knew about Klayman's domain, www.savingjudicialwatch.org, for over a year now because they referenced it in support of their original allegations that Klayman breached paragraph 17 of the Severance Agreement. Defendants could have brought a cybersquatting claim under 15 U.S.C. § 1125(d) in the originally filed Counterclaim. Instead, Defendants pocketed this claim and without any indication, and on the last day to file a motion to amend pleadings, Defendants filed the Motion with this claim. However, and as established in Section II, *infra*, this count fails to state a claim for relief because Defendants did not, and can not allege that Klayman was engaged in any commercial activity by using his website domain, www.savingjudicialwatch.org, as required by the statute.

By filing the Motion in this manner, Defendants improperly utilize their pleading as a sword and a shield. The inclusion of scandalous personal attacks against Klayman, his family and third parties which they knew (a) about prior to this lawsuit, (b) were denied, false and recanted, (c) were disclosed under privilege, and (d) were sealed in state court, improperly

9

358674-3

publicizes the allegations to the world and hides behind the immunity in pleadings. Moreover, the outrageous allegations grafted into the now publicly accessible proposed Amended Counterclaim are irrelevant and wholly unrelated to *any* of the claims alleged for breaches of the Severance Agreement, trademark infringement and unfair competition. Further, the proposed Amended Counterclaim merely restates the same claims in the originally filed Counterclaim and purports only to add exhibits, and incorporates a futile claim for cybersquatting.

Thus, the only reasonable inference here is that the Motion is the product of bad faith as an improper and sanctionable attempt to further defame Klayman through the PACER system. Therefore, the Motion must be denied.

## II. THE COURT SHOULD DENY THE MOTION TO AMEND BECAUSE THE PROPOSED COUNT VII FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

The proposed amendment to include a Count VII to the counterclaims is futile because defendants failed to state a claim for cybersquatting under 15 U.S.C. § 1125(d). In fact, the allegations related to this claim are at best for cybergriping, which is not actionable. The Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A) ("ACPA"), is directed at cybersquatting, a practice defined as the "deliberate, bad-faith and abusive registration of Internet domain names in violation of the rights of trademark owners." *Virtual Works, Inc. v. Volkswagen of Am., Inc.,* 238 F.3d 264, 267 (4th Cir. 2001) (quoting S. REP. 106-140, 4). For a plaintiff to succeed on an ACPA claim, it must show that: (1) its marks are distinctive or famous; (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks; and (3) the defendant registered its domain name with the bad faith intent to profit from them. 15 U.S.C. § 1125(d)(1)(A); *Shields v. Zuccarini,* 254 F.3d 476, 482 (3d Cir. 2001).

10

Regarding the first two elements, courts have found designations that intersperse letters and generic names into a domain may be confusing to consumers searching the web. *See, e.g.*, Mayflower (finding mayflowervanline.com confusingly similar to mayflower.com); *Shields*, 254 F.3d 476, 483 (finding confusing similarity between "joecartoon" and domain names "joescartoon.com", "joecarton.com", "joescartons.com", "joescartoons.com" and "cartoonjoe.com"); *Pinehurst, Inc. v. Wick*, 256 F. Supp.2d 424, 428 (M.D.N.C. 2003) (finding that "PinehurstResort.com" and "PinehurstResorts.com" are confusingly similar to mark of "Pinehurst Resorts and Country Club").

Here, Judicial Watch operates the website www.judicialwatch.org. Klayman's website is www.savingjudicialwatch.org. Klayman's website is not confusingly similar to Defendants.' The word 'saving' precedes the name, so that any search for Judicial Watch on the world wide web would not track to Klayman's website. In fact, a search for 'judicial and watch' on Google does not result in any hits to Klayman's website. Placing the word 'saving' at the front of the domain name renders Klayman's website distinguishable to search engines and those who may otherwise come across it. In short, it does not 'squat.' To the extent that consumers search for 'judicial and watch,' along with the word saving and/or Klayman, they would probably already be predisposed to Klayman's position vis-à-vis Defendants.

More importantly, a violation of the ACPA also requires that a defendant's actions in connection amount to a "bad faith intent to profit." The ACPA contains a safe harbor provision: "[b]ad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Courts have rejected claims under the ACPA in cases, like here, where the true complaint was for cyber-

11

griping, which is a far cry from the "squatting" activity made illegal by the ACPA, in which a person purchases numerous domain names of prominent companies cheaply with the purpose of selling the domain names at a higher price to those companies. *See Lucas Nursery & Landscaping, Inc. v. Grosse,* 359 F.3d 806 (6th Cir. 2004) (single domain name used to criticize landscapers services did not amount to "paradigmatic harm that the ACPA was enacted to eradicate - the practice of cybersquatters registering several hundred domain names in an effort to sell them to the legitimate owners of the mark"); *Rohr-Gurnee Motors, Inc. v. Patterson,* 2004 U.S. Dist. LEXIS 2068 (N. D. Ill. 2004)(defendant's dissatisfaction with a car he bought from plaintiff dealer led him to register "gurneevolkswagen.com" and "gurneevolkswagon.com" to detail her bad experience with the company. The court found the absence of a bad faith intent to profit and that the ACPA's safe harbor provision shielded defendant from liability.); *Lucent Technologies, Inc. v. Lucentsucks.com,* 95 F. Supp.2d 528, 535-36 (E.D.Va. 2000) ("A successful showing that lucentsucks.com is effective parody and/or a cite for critical commentary would seriously undermine the requisite elements for [the ACPA]").

In this case, Defendants did not, and can not, allege that Klayman was motivated by profit, let alone a bad faith intent to profit. In fact, the domain name www.savingjudicialwatch.org fully describes Klayman's motivations. What the defendants complain of in Count VII is actually "cyber-griping," which is not actionable under the ACPA. The proposed Amended Complaint does not allege that Klayman's domain name contains any advertisements, or links to advertisers; it does not allege that Klayman registered any other domain names that are similar in order to cast a net to catch potential Judicial Watch web surfers; it does not allege that Klayman is trying to sell the domain name to Defendants or others for profit. Instead, defendants merely allege that Klayman used his website to make false and/or

12

misleading statements about defendants. While such statements and postings on his website are fair comment and certainly critical commentary, resolution of that dispute misses the point under § 1125(d), which requires a "bad faith intent to profit." Because the defendants do not allege such intent, the proposed Count VII fails to state a claim on which relief may be granted is subject to dismissal under Fed.R.Civ.P. 12(b)(6). Accordingly, defendants' motion to add such a claim is futile.

### III.   THE COURT SHOULD SANCTION DEFENDANTS AND THEIR COUNSEL FOR THEIR CONDUCT.

"Courts have the inherent power to impose sanctions for abusive litigation practices undertaken in bad faith." *Atkins v. Fischer*, 232 F.R.D. 116 (D.D.C. 2005). *See also Shepherd v. Am. Broadcasting*, 62 F.3d 1469, 1472 (D.D.C. 1995); *Young v. Office of the U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 65 (D.D.C. 2003). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO*, 501 U.S. 32, 43 (1991). "The inherent power encompasses the power to sanction attorney or party misconduct, and includes the power to enter a default judgment." *Shepherd,* 62 F.3d at 1475 (citations omitted). Pursuant to the Court's inherent power, the Court may also enter a variety of sanctions, including fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence. *Id. citing* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse §* 28(A) (2d ed. 1994).

Defendants and their counsel knew the defamatory allegations they seek to include in paragraphs 10-20 of the proposed Amended Counterclaim were (a) irrelevant to any issue in the case, (b) unnecessary and violative of the pleading requirements of Fed.R.Civ.P. 8, (c) had been

13

358674-3

originally disclosed in confidence by Klayman in attorney-client privileged discussions with the defendants and David Barmack, Esquire, counsel for Judicial Watch, (d) made by Klayman's ex-wife during divorce proceedings, were false, and were later withdrawn, (e) sealed by Order of the Circuit Court, Fairfax County, where the divorce proceeding was pending, and (f) would embarrass, harass and injure not only Klayman, his wife and two young children, but also other innocent third parties. They knew these facts in 2003, in 2006 when Klayman's counsel wrote to them, and again on May 26, 2007, when Klayman's counsel notified them again. *See* Exhibits "A" & "B". They nevertheless proceeded to implement the "defense strategy" they had threatened Klayman about more than a year ago, which was to include scurrilous and defamatory allegations to attack Klayman personally, his family and others, rather than to defend themselves or pursue their counterclaims on the merits.

Where, as here, the defendants and their counsel have acted contumaciously in derogation of a court order that sealed the false accusations of Klayman's ex-wife, sanctions are even more justified. Courts may impose sanctions "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995); *see also Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988); *United States v. United Mine Workers of America,* 330 U.S. 258, 303-04 (1947). Appropriate sanctions are to be imposed if there is order of this Court which "sets forth in specific detail an unequivocal command" which a party has violated. *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986); *see also Project B.A.S.I.C. v. Kemp,* 947 F.2d 11, 16 (1st Cir. 1991) ("Civil contempt will lie if the putative contemnor has violated an order that is clear and unambiguous."). Willfulness is not an element of civil contempt, and contempt may even be

14

established where the act that violated the court's order was done innocently. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

The false and defamatory allegations in the proposed amendments not only violated the order of the Fairfax Court, but were also disclosed in violation of the Rules of Professional Conduct. D.C. R. Prof. Conduct 1.6. That defendants willfully disregarded the confidential and privileged conversations that Klayman had concerning the accusations only adds to the willful misconduct of the defendants in connection with the Motion. Coupled with the fact that none of the accusations were either relevant or necessary to plead their claims, their only purpose could have been to improperly harass, defame and injure Klayman, his family, including his new wife and children, and other innocent third parties. Moreover, the circumstances confirm the defendants hoped to provide themselves with the "cover" of immunity for pleadings in order to make Klayman "pay" for continuing to pursue his rights in his actions against the defendants. Defendant's failure to comply with LCvR 7(m) was also part of their strategy to put the defamatory allegations out in the public domain before Klayman could stop them. Defendants only first notified Klayman's counsel of their intent to amend the day before the deadline and then refused to provide a copy of the proposed amendment because it would have given Klayman the ability to have sought court intervention to prevent the filing that defendants so desired. Once Defendants published the defamatory allegations, the circumstances strongly suggest that defendants and their counsel directed the media, including but not limited to the *Legal Times,* to the public filing. *See supra* at n.3. As noted above, the *Legal Times,* which had not provided any coverage of this specific case previously, jumped right on the salacious and defamatory allegations and published its first story on the case.

15

That the defense strategy defendants' counsel threatened more than a year ago has had its desired effect only underscores the need for this court to prevent such gross misuse of the legal system and requires that strong sanctions be imposed on Defendants and their counsel. Those sanctions should include reimbursing Klayman for the costs of opposing the Motion and pursuing the Cross Motion, plus additional fines sufficient to deter defendants and their counsel from such reprehensible and offensive conduct in the future. In addition, to help remedy the harm already caused to Klayman and his family, the Court should strike the proposed Amended Counterclaim and remove it from the ECF and public access system. Finally, the Court should impose such other sanctions as it deems appropriate, including but not limited to a contempt order.

In sum, Defendants have acted outrageously in violation of court orders and the Rules of Professional Conduct to hijack the Court's procedures by broadcasting and disseminating inflammatory and harmful accusations in a divorce proceeding they knew to be false and improper over the Court's ECF and public access systems so that the media and others would have access to it. The Court should not tolerate such abusive conduct. In this regard, Plaintiff respectfully requests leave to take discovery from Defendants and counsel limited to the disclosure of the allegations in paragraphs 10-20 of the proposed Amended Counterclaim, and exclusive of the number of depositions already limited to Plaintiff in this case.

## *CONCLUSION*

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Amend Counterclaim be denied and that Plaintiff's Cross Motion be granted.

                                        Respectfully submitted,

                                        **SPECTOR GADON & ROSEN, P.C.**

By:    //s// *Daniel J. Dugan*
     Daniel J. Dugan, Esquire
     1635 Market Street, 7th floor
     Philadelphia, PA  19103

June 11, 2007                    215.241.8872--215.241.8844 *fax*
     *ddugan@lawsgr.com*
     *Attorneys for Plaintiff, Larry Klayman*

Of Counsel:
**SPECTOR GADON & ROSEN, P.C.**
Jeffrey H. Schervone, Esquire
1000 Lenola Road, Bldg. 1, Suite 202
Maple Shade, NJ  08052
856.778.8100- 856.772.5344 *fax*
*jschervone@lawsgr.com*

358674-3

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of June, 2007, a true and correct copy of Plaintiff's Opposition to Defendants' Motion for Leave to Amend Counterclaim and Cross Motion for Sanctions was served via electronic filing on the following:

> Richard W. Driscoll, Esquire
> Driscoll & Seltzer, PLLC
> 600 Cameron Street
> Alexandria, Virginia 22314
> *Counsel for Defendants*

By:     //s// *Daniel J. Dugan*
            Daniel J. Dugan, Esquire