IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, *ET AL*. | |
| Plaintiffs, | |
| v. | Civil Action No. 1:06-CV-00670 |
| | Honorable Colleen Kollar-Kotelly |
| JUDICIAL WATCH, INC., *ET AL*. | |
| Defendants. | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR LEAVE TO AMEND COUNTERCLAIM
AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SANCTIONS**

Defendants/Counter-Claimants Judicial Watch, Inc. ("Judicial Watch") and Thomas J. Fitton (Fitton"), by undersigned counsel, reply to Plaintiff Larry Klayman's ("Klayman") Opposition to the Motion for Leave to Amend Counterclaim and oppose the Cross Motion for Sanctions.

**INTRODUCTION**

Having endured more than a year of Klayman's outright lies and distortions concerning Judicial Watch and its employees, Judicial Watch now seeks leave to amend its Counter-Claim to include claims for false advertising and other wrongs.[1] Directly related to these claims are the factual allegations concerning the *de facto* termination of Klayman by Judicial Watch. As clearly shown by the overwhelming evidence attached to the Amended Counter-Claim, Klayman has repeatedly represented on his website and in advertisements, fundraising letters and emails that his decision to leave left Judicial Watch was motivated by a desire to run for political office.

---

[1] Klayman suggests that Defendants have not raised the details of his separation from Judicial Watch until now. However, review of filings during the past year disproves this assertion. *See, e.g.*, Counterclaim, ¶¶ 7; Memorandum in Support of Defendants' Motion to Dismiss Second Amended Complaint, p. 1; Defendants' Updated Answer to Second Amended Complaint, ¶¶ 6, 7 and 37.

This statement is completely false because Klayman was forced to leave due to misconduct and apparent misuse of Judicial Watch assets. In the face of an investigation of his misconduct and use of Judicial Watch funds and assets, Klayman chose to accept what could have been a graceful exit from the organization were it not for his current misguided and harmful efforts to "save" Judicial Watch. Completely distorting the truth of his departure and the actions of Judicial Watch, Klayman has pursued a fundraising effort in an attempt to destroy Judicial Watch and its current officers, all for the hoped for end of returning. Unworthy to lead the organization on the merits of his character, Klayman's plan is to bully his way back.

Judicial Watch is not intimidated by Klayman's attempt to re-write history. Where one competitor seeks to destroy another by use of false statements in advertising, the Lanham Act provides a cause of action for redress. In addition, the Severance Agreement prohibits Klayman from disparaging the organization and its employees. Judicial Watch and Fitton merely avail themselves of these avenues to correct the false representations by Klayman. Under Rule 15(a), leave to amend is to be freely granted when justice so requires. Judicial Watch alleges that the representations of Klayman are false and that Judicial Watch is being harmed as a result. Without question, the burden for amendment is met.

## ARGUMENT

### I. KLAYMAN'S OPPOSITION IS UNTIMELY AND THE MOTION FOR LEAVE IS CONCEDED

Pursuant to the LCvR 7(b), Klayman was required to file his memorandum of points and authorities in opposition within 11 days of the date of service. Because the period of time prescribed for opposition is not *less than* 11 days, intermediate Saturdays, Sundays and legal

holidays are included in the computation. Fed. R. Civ. P. 6(a). However, Klayman was entitled to 3 additional calendar days under Fed. R. Civ. P. 9(e).

Defendants' Motion to Amend was filed on May 25, 2007. Therefore, Klayman's Opposition was due on or before June 8, 2007. However, Klayman did not file his Opposition until June 11, 2007. Therefore, under LCvR 7(b), Defendants' Motion to Amend was conceded by Klayman.

## II. DEFENDANTS ARE ENTITLED TO AMEND THEIR COUNTERCLAIM BECAUSE THE ALLEGATIONS ARE DIRECTLY RELATED TO CLAIMS THAT ARE JUSTIFIED IN THIS LITIGATION

Allegations in the Amended Counterclaim are the proper subject of relief under Counts V and VI. The facts alleged in paragraphs 10 - 20 of the Amended Counterclaim are critical to the claims for unfair competition. As a result of admitted inappropriate conduct, Klayman was subject to an investigation into his use of Judicial Watch funds and assets, as well as his relationship with a Judicial Watch employee. In the face of this investigation, Klayman chose to resign, tacitly admitting to his wrong-doing. These facts support Judicial Watch's position that Klayman did not choose to leave for the purpose of seeking political office.[2] Instead, he resigned to shield himself from the likelihood of termination for cause.[3]

---

[2] Although Judicial Watch is not required to demonstrate the truth of its allegations at this time, the Court should note that such allegations are not loosely made. For example, following disclosure of Klayman's misconduct, Judicial Watch sought to undertake an investigation to examine Klayman's use of Judicial Watch assets and potential misuse of his position as the Chairman and General Counsel. Klayman immediately retained counsel to represent him in the investigation. Counsel for Klayman then wrote a letter to Judicial Watch regarding the investigation and the need to protect the privacy of "third parties". *See* Exhibit 1, May 15, 2003, Letter from David Durbin.

[3] Klayman suggests that Judicial Watch abandoned the investigation for fear of an invasion of privacy. This suggestion is false. Judicial Watch elected not to pursue a formal investigation when Klayman determined that he would rather leave Judicial Watch than face the scrutiny of an investigation and the inevitable termination that would follow. The focus of the parties' negotiations then turned to reaching an agreement regarding Klayman's severance.

The true events of Klayman's departure are the foundation of the Counter-Claimants' assertion that Klayman is disseminating false and misleading statements that are likely to mislead, and have been misleading, Judicial Watch donors and supporters. As stated by the Supreme Court: "[i]f the underlying facts or circumstances relied upon by [counter-claimant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Therefore, the proper inquiry is whether the allegations may be relied upon for relief, not whether Klayman disputes the truth of such allegations.[4]

Likewise, Klayman ignores the express allegations of Count VII to assert that it is futile. Futility in this context is to be judged by whether a claim would withstand a motion to dismiss. As illustrated below, Count VII clearly states a claim upon which relief may be granted.

A.   THE AMENDED COUNTERCLAIM WAS FILED IN GOOD FAITH

1.   Klayman's Misconduct is Relevant to this Litigation

Klayman ignores the nexus between the facts of his separation and the claims for violation of the Lanham Act and the non-disparagement clause of the Severance Agreement. Instead, he contends that the Amended Counterclaim is in bad faith or filed for improper purposes. In support of this argument, he asserts that the allegations are not relevant.

Judicial Watch alleges that Klayman is conducting a false advertising campaign to mislead the public regarding the true nature of why he left Judicial Watch. Klayman cannot

---

[4] Klayman characterizes the Motion for Leave to Amend as late or untimely. This argument lacks any merit. All parties appeared before the Court and agreed to the Scheduling Order, which expressly permits amendment of pleadings on or before May 25, 2007. Similarly, the amendment is not an attempt to cure a pleading, but an expansion of, and addition to, claims previously filed. The amended claims rely on Klayman's activities after the filing of the original Counterclaim. Moreover, permitting amendment at this stage is more efficient and preserves judicial resources. In the event that this Motion is denied, Judicial Watch is entitled to file these claims as an independent action and note the action's relationship to this case.

truthfully represent that his decision to leave was for the purpose of running for political office or that he left instructions with Judicial Watch regarding his replacement, much less that he was in any position to demand such conditions. His subsequent departure was made under the threat of an investigation that would surely have resulted in his expulsion from the organization.

Count V seeks compensatory damages and injunctive relief for unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125 (a). Under the Lanham Act, Judicial Watch is entitled to sue for false or misleading statements that Klayman makes concerning himself, if such statements result in harm to Judicial Watch. Judicial Watch claims that Klayman is making false and misleading statements as to circumstances of his departure from Judicial Watch. These statements are a direct violation of 15 U.S.C. § 1125 (a). As noted by this Court in its January 17, 2007, Memorandum Opinion: "Matter in pleadings is immaterial and impertinent where it is not materially relevant to any pleaded claim for relief or defense." Memorandum Opinion at p. 46. The allegations found in paragraphs 10 through 20 are directly relevant to the unfair competition claims. They contradict Klayman's false and misleading statements, thus providing the basis for Counts V and VI. As such, the allegations are both material and pertinent to the Amended Counterclaim.

Allegations in paragraphs 10-20 of the Amended Counterclaim are also relevant to Count IX, which seeks damage for Klayman's violation of the non-disparagement provision in the Severance Agreement. Through email, direct mail and advertisements, Klayman represents that Judicial Watch and its officers are lying about the reasons for his departure by stating that such reasons are confidential. Therefore, Klayman is disparaging Judicial Watch officers and negatively characterizing them as liars. To succeed on this claim, Judicial Watch will need to

demonstrate the real reasons for Klayman's departure to show that Judicial Watch employees and officers did not falsely represent that such reasons were confidential.

2. Defendants' Allegations do not Violate any Court Order or the Attorney Client Privilege

Klayman erroneously contends that the allegations of the Amended Counterclaim violate an Order issued by the Circuit Court of Fairfax County. This assertion lacks any foundation. There is a significant distinction between allegations set forth in divorce papers filed by Klayman's former wife and the acknowledgements that Klayman personally made to Fitton and Orfanedes. There was no seal order when Klayman acknowledged that he had: 1) been in love with Judicial Watch employee; 2) kissed her; 3) purchased gifts for her; and 4) been involved in an incident with his former wife in which Klayman had broken his hand while parked in their car at church parking lot, in front of their children. Such disclosures predated any order sealing his divorce papers.

The putative Order is conspicuously absent from these proceedings. No copy is attached to Klayman's Opposition. In addition, Klayman does not explain how such an Order applies to, or obtains jurisdiction over, Judicial Watch or Fitton. Klayman merely asserts that the Defendants knew of the seal Order's existence. Defendants dispute knowledge of any such order. Moreover, mere knowledge of such an order would not result in the newly informed individual being subject to the restrictions of the Order. A court may only bind those over whom it has jurisdiction.

Klayman also contends that his disclosures to Fitton and Orfanedes were made within the scope of an attorney-client communication.[5] There appears to be a dispute of fact regarding

---

5   The conversation referred to in the Amended Complaint did not occur in the presence of Judicial Watch's

what Klayman admitted to during the conversation. However, Klayman does not dispute that the conversation with Fitton and Orfanedes took place. Indeed, he admits it. Opposition at p. 6. Instead, he makes an unexplained assertion that the disclosure regarding his wife's allegations of infidelity and his professed love for the Judicial Watch employee were within the scope of an attorney client communication. This contention is completely baseless as Fitton is not an attorney and Orfanedes did not represent Klayman. On the contrary, they were officers of Judicial Watch with a fiduciary duty to protect the organization, a duty that Klayman also held but wholly ignored while engaging in the conduct that cost him his position at Judicial Watch.

### 3. Klayman may not Shield his Wrongful Conduct by Reliance on the Severance Agreement

Klayman asserts that provisions in the Severance Agreement preclude Judicial Watch from disclosing the true reasons for his departure. This contention is without merit. The Amended Counterclaim clearly alleges that Klayman is engaged in a pattern and practice of false representations and distortion to advance his interests at the expense of Judicial Watch. Klayman's bad faith and unclean hands do not provide a safe harbor for these acts. He may not utilize the Severance Agreement as both a sword and a shield.[6]

After months of negotiations, intentionally vague and open-ended language was inserted into the Severance Agreement to characterize Klayman's decision to leave as voluntary. Language describing Klayman's motive for making the decision, as well as Judicial Watch's reasons for wanting him to leave, was intentionally left out. Indeed, Klayman would have never

---

corporate counsel, David Barmak. Instead, the allegations are based on disclosures Klayman made directly to Fitton and Orfanedes as officers of Judicial Watch. Interestingly, Klayman's disclosures regarding the conversation with David Barmack violate the attorney-client privilege, as well as Klayman's duties under Rule 1.6 of the Rules of Professional Conduct because Barmak was Judicial Watch's attorney, not Klayman's attorney, and Klayman had no right to disclose conversations between Judicial Watch and its lawyer.

6   It is worth noting that in paragraph 2 of the Severance Agreement, Klayman expressly acknowledges that the severance was consideration for amicable resolution of "differences between the parties".

agreed to a written acknowledgement of his wrongful conduct. The Severance Agreement correctly notes that Klayman's departure was voluntary. This language is not unlike a voluntary plea agreement, only the infractions are left unstated. Indeed, the Severance Agreement is intentionally silent regarding the alternative that Klayman faced. Similarly, there was no agreement regarding a replacement for his position. Therefore, Klayman's misrepresentations exceed the scope of the Severance Agreement and expose him to liability for false representations. The Amended Counterclaim is entirely consistent with the language of the Severance Agreement.

    4.  <u>Defendants Amended Complaint Satisfies the Threshold Requirements of Rule 8(a)(2)</u>

Klayman advances the unusual argument that it is bad faith to exceed the threshold requirement found in Fed. R. Civ. P. 8(a)(2). Opposition at p. 8. The Counter-Claimants neither understand nor agree with this contention.

Under Rule 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Klayman argues that the attachment of Exhibits C through Q, which demonstrate Klayman's ongoing violations of the Severance Agreement and unfair competition, violate Rule 8(a)(2). Apparently, the Amended Counterclaim provides too much notice regarding the claims. The absurd nature of Klayman's position is evident from the cases cited in the Opposition. Rule 8(a)(2) represents a floor, not a ceiling. *See* <u>City of Moundridge v. Exxon Mobile Corp.</u>, 471 F. Supp. 2d 20, 36 n6 (D.D.C. 2007) ("Generally, a claim is adequately pled if it satisfies Rule 8(a)(2)'s threshold of a short and accurate statement…"). Exhibits to the Amended Counterclaim merely demonstrate the breadth of Klayman's false representations and the degree of his wrongdoing.

B.     JUDICIAL WATCH PROPERLY PLED ITS CLAIM FOR CYBERSQUATING

Whereas the Amended Counterclaim provides too much notice of the Lanham Act claims, Klayman contends that it fails to state a claim for violation of the Anti-Cybersquatting Consumer Protection Act. 15 U.S.C. § 1125(d). Examination of the statutory language, as well as the cases cited by Klayman, demonstrates that the argument of futility is mistaken.

Futility is determined by whether the amendment would survive a motion to dismiss. Henderson v. Stanton, No. 97-5358, 1998 U.S. App. LEXIS 30884, at *6 (D.C. Cir. Dec. 1, 1998) ("It is indeed clear that an amendment that would not survive a motion to dismiss is futile.") Provided that Count VII sufficiently states a claim for a violation of the ACPA, it is not futile.

To state a claim for cybersquatting under the ACPA, Judicial Watch must allege that:

(i)     The marks are distinct or famous;

(ii)    The defendant's domain names are identical or confusingly similar to the plaintiff's marks; and

(iii)   The defendant registered its domain name with the bad faith intent to profit from them.

15 U.S.C. § 1125(d). As he must, Klayman concedes that Judicial Watch's federally registered trademarks are presumed to be distinctive or famous. Opposition at p. 11. However, as to confusion and bad faith, Klayman argues that there is a deficiency.

Under the simplified standard for pleading in Rule 8(a)(2), "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). At the outset, it should be noted that the Amended Counterclaim expressly alleges as follows:

9

> 108. Klayman's domain name savingjudicialwatch.org is *confusing similar* to Plaintiff's *distinctive* JUDICIAL WATCH marks.
>
> 111. Klayman registered, used and continues to use the savingjudicialwatch.org domain name *with bad faith intent* to divert supporters and donors from Judicial Watch's website to the websites previously and currently accessible at savingjudicialwatch.org for *Klayman's commercial gain* and for purposes of promoting Klayman d/b/a Saving Judicial Watch.

(Emphasis added.) Defendants have exceeded the threshold requirement in making their claim for cybersquatting under 15 U.S.C. § 1125(d). At a minimum, Judicial Watch has pled a prima facie claim.

Klayman contends that "savingjudicialwatch.org" is not confusingly similar to "judicialwatch.org". In light of the allegations, this issue is a question of fact that cannot be resolved at the motion to dismiss stage. Moreover, cases cited as authority by Klayman recognize that discovery and factual development are required before a court may consider the issues. Lucas Nursery & Landscaping, Inc. v. Grosse, 359 F.3d 806 (6th Cir. 2004) (summary judgment following discovery); Shields v. Zuccarini, 254 F.3d 476 (3rd Cir. 2001) (same); Virtual Works, Inc. v. Volkswagen of Am., Inc. 238 F.3d 264 (4th Cir. 2001) (same); Pinehurst, Inc. v. Wick, 256 F. Supp. 2d 424 (M.D.N.C. 2003) (same). The only exception to the need for factual development is where effective parody is present. *See* Lucent Technologies, Inc. v. Lucentsucks.com, 95 F. Supp. 2d 528 (E.D.Va. 2000) (recognizing that "sucks" distinctively connotes a web site containing criticism). However, this is not a case of effective parody. The term "saving" connotes a need to rescue. Individuals interested in Judicial Watch are likely to be diverted to Klayman's website. Moreover, while Klayman is an individual, he intentionally uses the domain identifier ".org" to conceal his activity as an individual. On its face, Klayman's domain establishes a claim for cybersquatting.

The same reasoning applies to the element of bad faith. Judicial Watch has expressly pled this element. Under the ACPA, bad faith is a factual determination involving 9 factors. Development of this factor requires discovery. Klayman's attempt to dismiss the claim is premature.

## III. DEFENDANTS AND THEIR COUNSEL HAVE NOT ENGAGED IN ANY SANCTIONABLE CONDUCT

Klayman's demand for sanctions is a curious effort to prevent Judicial Watch from proving the allegations in its Amended Counterclaim. Essentially, Klayman demands sanctions because the allegations of wrongdoing are embarrassing to him. Frankly, these allegations are embarrassing. Klayman's conduct is reprehensible. While he contends the allegations are defamatory, Judicial Watch will not shrink from its responsibility in this litigation. It will prove the unfortunate truths described in each allegation of fact. Moreover, as the initiator of these disputes, Klayman should not be permitted to object when the subject matter of the litigation focuses on his own distasteful actions.[7]

The relevance of the allegations is fully explained *supra*. The allegations support claims for unfair competition and breach of the Severance Agreement based on Klayman's continued misrepresentation of facts, which are resulting in harm to Judicial Watch. The extent of his wrongful conduct is alleged in detail in the Amended Complaint and Exhibits C through Q thereto. Further, Klayman's misrepresentations are repeated over and over in his Second Amended Complaint (¶¶ 5-7, 28, 37 and 122), as well as his sworn declaration submitted in opposition to the Motion for Partial Summary Judgment (¶¶ 4, 6 and 29).

---

7   Klayman alludes to a "defense strategy" to harass and defame him. In support, Klayman attaches a self-serving letter drafted by his attorneys attempting to memorialize a telephone conversation. Defendants' counsel did respond to the letter, but Klayman failed to inform the Court of this. *See* Exhibit 2, May 29, 2006, correspondence, which provides a more accurate picture of the conversation.

As previously explained, the admissions described in the Amended Complaint were not disclosed in privileged discussions with an attorney. Klayman confessed these statements directly to Fitton and Orfanedes in their capacity as officers and directors of Judicial Watch. Klayman's Opposition references conversations between Judicial Watch's corporate counsel, David Barmak, and Fitton, Orfanedes and Klayman. In neither situation was Klayman consulting with a personal attorney. On the contrary, the purpose of consulting with Barmak was for Judicial Watch to obtain legal advice and assistance. Therefore, the privilege belongs to Judicial Watch, not Klayman. As such, Klayman has improperly disclosed attorney client communications.

Klayman's argument that allegations in the Amended Counterclaim violate Rule 1.6 of the Rules of Professional Conduct is mistaken. Opposition at p. 15. As a member of the D.C. Bar, Klayman should know that Rule 1.6 prohibits a lawyer from knowingly using a confidence of the lawyer's client to disadvantage the client or to convey an advantage to a third party. As officers of the organization, Fitton and Orfanedes were fiduciaries acting on behalf of the principal, Judicial Watch. Orfanedes' role as an attorney, if any, would have been on behalf of his fiduciary, Judicial Watch. Klayman did not make the disclosures to Fitton and Orfanedes for the purpose of legal advice or assistance. Indeed, Klayman makes no such assertion. Further, as Klayman often notes, Fitton is not a lawyer.

Klayman also contends that the allegations violate a foreign court order that "sealed the false accusations of Klayman's wife" and sanctions for civil contempt should be assessed. Opposition at p. 14. However, Klayman failed to produce the alleged order. Therefore, his request for sanctions falls far short of the requisite "clear and convincing evidence" required for civil contempt. Broderick v. Donaldson, 437 F.3d 1226, 1234 (D.C. Cir. 2006) ("Civil contempt

will lie only if the putative contemnor has violated an order that is clear and unambiguous, and the violation must be proved by clear and convincing evidence"). If such an order does exist, the Court is left to rely only on Klayman's representations as to its contents and effect. Klayman would have the Court believe that any such order is written so broadly as to include parties completely unrelated to Klayman's divorce proceedings.

Moreover, "[statements] in pleadings . . . are absolutely privileged if they have enough appearance of connection with the case in which they are filed so that a reasonable man might think them relevant." Mohler v. Houston, 356 A.2d 646, 647 (D.C. 1976) (citing Brown v. Shimabukuro, 118 F.2d 17, 18 (D.C. Cir. 1941)); *see also* Messina v. Krakower, 439 F.3d 755 (D.C. Cir. 2007).

Finally, Klayman contends that a Legal Times reporter's interest in this litigation and attention to the docket was coordinated by Defendants and their counsel. This assertion is an outright lie. Frankly, it is Klayman's self-promotion that is the sole blame for the media attention. Indeed, it was Klayman himself who provided background on this case to the Legal Times reporter for an article that was published on April 16, 2007. In that article, Klayman is quoted regarding his claims in this litigation. *See* Exhibit 3, April 16, 2007, Legal Times article. Therefore, while Klayman would like this Court to believe that Defendants orchestrated the media attention, the interest was fostered by his own contact with the Legal Times reporter. Klayman is the sole source of the reporter's coverage for this case.[8] Defendants chose not to comment on the allegations as their interests lie in pursing the claims, not with personal attacks on Larry Klayman through the media.

---

8   Undersigned counsel was contacted by the Legal Times. However, no comment was given. *See* Exhibit 4, May 30, 2007, email to Ms. Schwartz declining to comment.

## CONCLUSION

WHEREFORE, for all of the forgoing reasons, Defendants Judicial Watch and Fitton respectfully request that the Court GRANT their Motion for Leave to Amend Counterclaim and DENY Plaintiff Klayman's Cross Motion for Sanctions.

Respectfully submitted,

/s/ Richard W. Driscoll

Richard W. Driscoll (436471)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
Email: rdriscoll@driscollseltzer.com
*Counsel for Defendants Judicial Watch, Inc.,
Thomas J. Fitton, Paul J. Orfanedes and
Christopher J. Farrell*

Dated: June 21, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of June 2007, a copy of the foregoing Reply was served by electronic filing upon counsel listed on the Notice of Electronic Filing.

/s/ Richard W. Driscoll

Richard W. Driscoll