IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Larry Klayman,<br>   *Plaintiff,*<br><br>v.<br><br>Judicial Watch, Inc., *et al.,*<br>   *Defendants.* | Civil Action No. 1:06-CV-00670<br><br>Honorable Colleen Kollar-Kotelly<br><br>**Jury Trial Demanded.** |

*PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF*
*CROSS MOTION FOR SANCTIONS*

Plaintiff, Larry Klayman ("Klayman"), replies to the Opposition of defendants Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes, and Christopher J. Farrell (collectively referred to as "Judicial Watch") to the Plaintiff's Cross Motion for Sanctions ("Cross Motion").

*INTRODUCTION*

When plaintiff Larry Klayman commenced an action against Judicial Watch for breach of the Severance Agreement and related violations of law in April, 2006, the defendants threatened to publish, under cover of legal pleadings, defamatory allegations from Klayman's divorce action. Those allegations were irrelevant plaintiff's dispute with defendants, and they were alleged in a divorce action the record of which was sealed by order of the Circuit Court for the County of Fairfax, Virginia. *See* Order at Exhibit 1. Counsel for Klayman and defendants exchanged letters on this subject. When Judicial Watch answered the Second Amended Complaint and asserted counterclaims on June 28, 2006, those counterclaims arose out of alleged conduct that occurred after Klayman left Judicial Watch, and did not include any of the allegations that were the subject of the May 2006 letter. The only conduct by either side that is relevant to our litigation is conduct after September 23, 2003, that did, or did not, violate the

366271-1

Severance Agreement (or constitute related violations of law, such as unfair competition subsequent to the Severance Agreement).

Almost a year after filing their Answer and Counterclaims, on the last day on which a motion to amend could be timely filed, after defendants lost significant issues raised in their Motion to Dismiss, the Defendants filed a motion to amend their Counterclaims, on May 25, 2007, together with a proposed amended pleading. The proposed amendments added, as paragraphs 10 through 20, the irrelevant, but scandalous and defamatory, divorce allegations that defendants learned from Klayman in confidence and initially threatened to use as part of their "defense strategy" a year ago, in May 2006.

Judicial Watch's purpose in reciting Klayman's former wife's recanted allegations in a sealed divorce action was to embarrass and harass Klayman, Klayman's wife, Klayman's ex-wife (who jointing moved the Fairfax County court to seal the divorce record, as the Order shows), and Klayman's children. Indeed, defendants induced the *Legal Times,* which had never once covered the litigation during its 13-month duration, to contact Klayman about the allegations on the next business day after the motion was filed. That publication subsequently published an article that broadcast the defamatory allegations.

On June 21, 2007, Judicial Watch compounded its misconduct by publishing further misrepresentations in a Reply memorandum. The Amended Counterclaim only engaged in libelous innuendo, stating "[b]ecause Klayman and the employee had traveled together frequently, Fitton and Orfanedes were also concerned that Klayman may have misused Judicial Watch's resources to further Klayman's acknowledged, inappropriate relationship with the employee." Defendants' Motion to Amend at ¶ 12. Their Reply declared, by contrast, "Klayman was forced to leave due to misconduct and apparent misuse of Judicial Watch assets."

2

366271-1

*See* Defendants' Opposition and Reply at p. 2. Defendants' Reply defamation (that there was some determination of "apparent misuse of Judicial Watch's assets") is contradicted by the more limited defamatory allegation in defendants' proposed Amended Counterclaims (that circumstances *raised concerns* on the part of Fitton and Orfanedes that Judicial Watch's resources *may have been* misused.) Defendants admit that they conducted no investigation of the divorce allegations in either the approximately six-month period between Klayman's disclosure of the divorce allegations and his resignation, or thereafter. They seek to conjure that admitted absence of any reasonable basis for their allegations into a justification thereof by asserting that Klayman's "subsequent departure was made under the *threat of* an investigation that would *surely have* resulted in his expulsion from the organization." *See* Defendants' Opposition and Reply at p. 5.

Orfanedes and Fitton admit that they were "officers of Judicial Watch with a fiduciary duty to protect the organization." *See* Defendants' Opposition and Reply at 7. Accordingly, they had a fiduciary and legal duty to conduct an investigation of misuse of the assets of a non-profit organization, if they genuinely had reason to suspect it.[1] Indeed, even now, Judicial Watch declares, as if it were a virtue, that it has conducted no investigation of the allegations which it now suggests it accepted and acted upon as true. Defendants' exquisitely malign contention is that *because* they declined to investigate the truth of what they variably describe as Orfanedes' and Fitton's "concerns" or conclusions, as they had a clear duty to do if they actually suspected

---

[1] Defendants insinuate that Klayman thwarted an investigation by retaining attorney David Dubin to represent him in any such investigation. However, the letter from Dubin that they attach as Exhibit 1 to their Opposition belies any suggestion that Klayman sought to ward off investigation. Dubin writes accepting the reviewer suggested by defendants and expresses hope that the investigation will "proceed with dispatch." Defendants then declined to investigate the divorce allegations of misuse of Judicial Watch resources that Klayman disclosed to them and continue to avoid such investigation.

3

366271-1

misappropriation of assets from a non-profit organization of which Orfanedes and Fitton were officers, defendants may forever publish, as unrefuted, allegations of misconduct and misappropriation which were never investigated due to their own inaction.

Defendants soon conclusively acknowledged that they *did not* believe that Klayman had committed any improprieties, and that the allegations in his wife's sealed divorce complaint had no bearing on his resignation. Judicial Watch's own Severance Agreement with Klayman confirms that his separation from Judicial Watch "shall be treated for all purposes as a voluntary resignation." *See* Severance Agreement at Exhibit 2 at ¶ 1. Moreover, Judicial Watch agreed to issue a press release acknowledging, in pertinent part, that "Judicial Watch announced today that Larry Klayman has stepped down as Chairman and General Counsel of Judicial Watch *to pursue other endeavors*." Exhibit 2 at ¶ 18 (emphasis added). Furthermore, under the terms of the Severance Agreement, Judicial Watch agreed to pay Klayman $600,000 ($400,000 of which was in consideration of *past* services), which is inconsistent with any good faith belief, or even suspicion by defendants, that Klayman had misappropriated the organization's assets or otherwise prejudiced Judicial Watch by misconduct.

Now, four years later, defendants have misused legal process to revive and broadcast recanted allegations from a sealed divorce complaint that are utterly irrelevant to this action and which defendants acknowledged, in writing, were *not* the reason for Klayman's resignation .

### *ARGUMENT*

I. **Defendants' Publication Of Irrelevant Divorce Allegations Under Cover of Its Proposed Amended Counterclaims Had No Non-frivolous Basis.**

Sanctions are proper because defendants asserted purely private, never-investigated allegations made in Klayman's sealed divorce proceeding that are irrelevant to the pending action under cover of which defendants published the allegations. That publication had no basis

4

366271-1

in law and fact that was not frivolous. That misconduct is a clear violation of D.C. Rule of Professional Conduct number 3.1. Defendants' publication of allegations arising from Klayman's sealed divorce proceeding has no bearing on the legal claims involved in any non-frivolous counterclaim of Judicial Watch. Those concern allegations of misconduct following Klayman's September 23, 2003 resignation. The issue relevant to the action is whether there was post-resignation disparagement, or other breaches of the Severance Agreement, or related misconduct following the Severance Agreement. Even if Judicial Watch had conducted an investigation and discovered that Klayman's first marriage dissolved exactly as alleged in Klayman's ex-wife's sealed divorce complaint, such "fact" would have no relevance to the present litigation.

Defendants' suggest that the divorce allegations are relevant to their Lanham Act false advertising claim that Klayman unfairly competed with them for conservative direct-mail donations by his "false" claim that he left Judicial Watch voluntarily to run for Senate. In truth, they say, he resigned because he "would surely have" been terminated for cause had defendants investigated the allegations when Klayman disclosed them to Judicial Watch in the Spring of 2003. This is a case of allegations (the recanted divorce allegations and the un-investigated "concerns" or conclusions of Orfanedes and Fitton) in search of a claim to justify their publication under cover of a legal pleading. The search fails as Judicial Watch expressly acknowledged the fact that Klayman resigned "to pursue other endeavors" and that Klayman's resignation from Judicial Watch "shall be treated for all purposes as a voluntary resignation." If Klayman unfairly competed with Judicial Watch by false advertising, it cannot be because his resignation was forced, or because he "tacitly" acknowledged misconduct that defendants declined to investigate (despite Klayman's manifest willingness to cooperate, as his counsel

clearly expressed), and which all parties acknowledged in writing was *not* the reason for his resignation.[2]

Defendants have asserted an issue for which there is no basis in fact (no investigation by them, and a sealed divorce court record) or law (no non-frivolous relevance to the counts of the Complaint or Counterclaims). If their allegations were true, then defendants would have colluded with Klayman in covering up suspected (according to the proposed Counterclaims) or conclusive (according to the Reply) misappropriation of assets from a non-profit public interest entity. At the same time, defendants supposedly agreed to pay Klayman $600,000 in severance, *and* made fraudulent statements that Klayman has resigned to pursue other activities to mislead the public, donors and tax authorities. The assertion lacks any merit. The irrelevance of these allegations to any genuine issue in dispute is further evidenced by defendants' own actions in not pleading them in their original Counterclaims, even though they were well aware of them and had previously threatened, orally and in written communication, to publish the allegations in pleadings to injure Klayman's reputation.

II.  **Defendants' Publicized The Divorce Allegations Under Cover of Its Proposed Amended Counterclaims Purely to Harass and Embarrass Klayman and His Family.**

It is sanctionably improper for a party, and is a violation of an attorney's duty under Rule of Professional Conduct 3.6(a), to make an extra-judicial statement that will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter. That does not mean that parties are precluded from publicizing legal pleadings absent a court order of sealing the proceedings. The sanctionable

---

[2] Judicial Watch's risible argument is that declarations in its own Severance Agreement mean nothing because the document is, for unstated reasons, "not unlike a voluntary plea agreement." *See* Defendants' Opposition and Reply at 8.

6

366271-1

conduct here lies in publicizing pleadings that are defamatory, and that have no non-frivolous purpose in the litigation, in order to interfere with trial on the merits. Though Judicial Watch's attempt to revive Klayman's ex-wife's recanted divorce allegations was set forth, typographically, in a court pleading, it was essentially an extra-judicial statement that is utterly irrelevant to the action under cover of which defendants published them. Defendants then directed the press to the pleading in hopes of prejudicing the trial of the action by casting Klayman in a false light on irrelevant grounds.[3]

It is also sanctionably improper for a party, and a violation of an attorney's duty under Rule 4.4(a), to take actions that have no substantial purpose other than to embarrass third persons. Defendants published the sealed divorce allegations to embarrass Klayman and his family.

Defendants have abused this Court's process to circumvent an Order of the Fairfax County Circuit Court that was entered, by joint motion of the spouses, precisely to protect the families involved from the embarrassment and harassment that defendants have sought to visit upon them by their misuse of civil process. The effect of that Order was that the divorce action record "shall only be opened to the parties, their respective attorneys, and to such other persons as the judge of such court at his discretion decides have a proper interest therein." Va. Code Ann. § 20-124. Judicial Watch's argument that it is immune to the Fairfax Court's sanction power entirely misses the point. Klayman seeks a sanction in this Court. D.C. Rule of Conduct

---

[3] Admittedly, defendants have represented to the tribunal that "Klayman is the sole source of the [Legal Times] reporter's coverage for this case," and they attach an email message where they appear to decline comment. See Opposition and Reply at 13. The scope for manipulation and of misrepresentation to the tribunal implicit in this "evidence" is apparent. If the Court finds that defendants' publication of the divorce allegations under cover of a pleading is improper, and that it may support a sanction or an enhanced sanction if defendants coordinated press coverage for their filing, then Klayman requests the opportunity to take discovery on this issue the significance of which defendants appear to concede.

7

8.4(d) prohibits a lawyer from engaging in conduct that seriously interferes with the administration of justice. It is difficult to imagine conduct that more blatantly interferes with the purposes of Va. Code Ann. § 20-124, and it is utterly irrelevant that defendants may be immune to a Virginia order of contempt. The issue is this Court's inherent authority to sanction misconduct in this action.

### III.   Defendants Disclosed Confidential Attorney-client Communications.

The publication of disclosures that Klayman made in confidence, as attorney-client communications, to Orfanedes and to Judicial Watch's outside counsel, David Barmak, is a misuse of confidential information that Klayman disclosed to Orfanedes and Barmak in their prior legal representation of Klayman as Chairman of Judicial Watch. Defendants' apparent assertion that Orfanedes and Barmak were not jointly representing Klayman, the Chairman of Judicial Watch, and the organization itself, is fallacious. Indeed, at the time that the parties were discussing Klayman's previous disclosure of the divorce allegations, Judicial Watch acknowledged *in writing* that Barmak was Klayman's personal attorney. *See* May 8, 2003 letter signed by Fitton and Klayman, at Exhibit 3. Once again, the penchant of Judicial Watch to play fast and loose in its revisionist representations to this Court is embarrassed by its prior written admissions of fact.

The pleading disclosure violated Orfanedes' and Barmak's duty, under Rules 1.6(e)(1) and 1.9, to not reveal confidences acquired in their former representation of Klayman without his informed consent. If we understand defendants' arguments, defendants now claim that they perceived a conflict between Klayman's interests, as a divorce litigant subject to an allegation that he denied, and Judicial Watch's corporate interests (even though they did not investigate the allegations, for reasons they cannot sensibly explain). Indeed, they now claim to have either

been concerned that, or to have concluded that, Klayman misappropriated assets from Judicial Watch. The allegations are nonsense but, if they were true, or if Orfanedes and Barmak believed they were true, then they had a duty under Rule 1.7(a)(2), to disclose to Klayman a significant risk that their representation of Klayman, as the Chairman of Judicial Watch, would be materially limited by their responsibilities to Judicial Watch. If there was a conflict (which there was not), it would have triggered Orfanedes' and Barmak's duty to request Klayman's informed consent to the alleged conflicts under Rule 1.7(c)(1).

Defendants deny that the attorney-client privilege applies. This is, in a narrow sense, true. Comment 15 to Rule 1.7 explains: "With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised." 2006 District Of Columbia Court Order 1410. The attorney-client privilege applies where evidence is sought from the lawyer through compulsion of law. However, the ethical rule of confidentiality, by contrast, applies to all information the disclosure of which would be embarrassing or would be likely to be detrimental to the client, whether or not it is subject to the evidentiary privilege.

A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law. While an attorney may disclose confidential information as necessary to respond to a client or former client's charges, he has a duty to disclose only information relevant to his defense, and "[w]hen feasible, the lawyer must also invoke protective orders, submissions under seal, and similar procedures to limit the extent to which the information is disseminated. A lawyer may not invoke or threaten to invoke the exception without a reasonable basis, nor for an extraneous purpose..." Restatement (Third) of

Law Governing Law. § 64 (2000), cmt. "e." Defendants' disclosures were the opposite of the permitted "proportionate and restrained use" of confidences that is permissible in self-defense. They gratuitously disclosed confidential information that Klayman communicated to his lawyers at Judicial Watch, one of whom Judicial Watch has admitted in writing was Klayman's personal legal counsel. They did so to embarrass and injure Klayman.

## Conclusion

Defendants' misconduct was egregious. They misused judicial process, on a plainly pretextual basis, to publish recanted allegations from Klayman's divorce that are irrelevant to the present litigation. They did so in disregard of a court order sealing the divorce proceeding. Their object was to prejudice Klayman's ability to conduct litigation concerning breaches of the Severance Agreement and related misconduct (such as unfair competition) on the merits. Moreover, Judicial Watch was privy to the divorce allegations in the first place only because Klayman disclosed them in confidential communications to his lawyers.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

By: _//s// Daniel J. Dugan_
Daniel J. Dugan, Esquire
1635 Market Street, 7th floor
Philadelphia, PA 19103
July 2, 2007
215.241.8872--215.241.8844 *fax*
ddugan@lawsgr.com
*Attorneys for Plaintiff, Larry Klayman*

Of Counsel:
**SPECTOR GADON & ROSEN, P.C.**
Jeffrey H. Schervone, Esquire
1000 Lenola Road, Bldg. 1, Suite 202
Maple Shade, NJ 08052
856.778.8100- 856.772.5344 *fax*
jschervone@lawsgr.com

366271-1