IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN, *ET AL.*

Plaintiffs,

v.

JUDICIAL WATCH, INC., *ET AL.*

Defendants.

Civil Action No. 1:06-CV-00670
Honorable Colleen Kollar-Kotelly

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Defendants Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton"), Paul J. Orfanedes, Esq. ("Orfanedes") and Christopher J. Farrell ("Farrell") by undersigned counsel, hereby submit the following Memorandum of Points and Authorities in support of their Motion for Protective Order.

## I. INTRODUCTION

The purpose of this Motion is to facilitate the orderly flow of relevant discovery information and obviate any effort by Plaintiff Larry Klayman ("Klayman") to use such information in his smear campaign consisting of web sites, advertisements and direct mail/email. By entering a protective order prohibiting the use of discovery information outside of this litigation, the Court can permit Klayman to pursue his remaining claims and protect Judicial Watch from the harmful effects of Klayman's inappropriate use of discovery information in his campaign of distortions and lies.

The background of this case is well known to the Court. Klayman filed this action to undo his termination from Judicial Watch and return to the organization as its leader. The vehicle for accomplishing this objective is to pursue various claims, including misappropriation

of name and likeness, breach of contract, rescission and defamation against Judicial Watch and the members of its Board of Directors. These claims arise from a September 19, 2003, Severance Agreement that terminated Klayman's employment with Judicial Watch.

Rather than accept what could have been a graceful exit from the organization, Klayman initiated a misguided and harmful effort to destroy the current officers of Judicial Watch. Completely distorting the truth of his departure and the actions of Judicial Watch, Klayman is engaged in a fundraising effort to support his attacks on Judicial Watch and its current officers. This effort includes the web site "www.savingjudicialwatch.org," direct mail, email and advertisements in national newspapers that criticize Judicial Watch's handling of the building fund, public treatment of his *de facto* termination, and generally seeks to erode support for the organization among conservative donors and supporters. The size of the campaign is substantial, including tens of thousands of direct mail pieces and a similar distribution of email. Examples of Klayman's direct mail, email and advertisements are attached hereto as Exhibit Nos. 1, 2 , 3 and 4.

As part of this litigation, Klayman served written discovery on the Defendants. At the outset, the Court should understand that Judicial Watch does not object to producing relevant information provided there is a protective order limiting the distribution and use of discovery information to the purposes of the litigation only. Defendants filed timely responses to Klayman's requests, but indicated that substantive information would be withheld until a protective order was in place. However, Klayman declined to cooperate with Defendants in connection with any protective order, signaling his intention to use the discovery as a basis for his fundraising activities. Accordingly, Defendants were compelled to file this Motion.

## II. ARGUMENT

Litigants do not have an "unrestrained right to disseminate information that has been obtained through pretrial discovery". *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984); *see also Mampe v. Ayerst laboratories*, 548 A.2d 798, 805 (D.C. App. 1988)). The discovery process is fashioned to avoid surprise and educate opponents regarding the facts likely to be presented at trial. The process was not created to provide fodder for fundraising efforts. Therefore, this Court should not permit Klayman to misuse discovery as a process to obtain information to harass Judicial Watch.

### A. The Standard for Entry of a Protective Order

For good cause shown, Federal Courts are authorized to restrict discovery that is annoying, embarrassing, oppressive, unduly burdensome and/or expensive. *See* Fed. R. Civ. P. Rule 26(c). Broad discretion is conferred on this Court to enter protective orders as necessary to prevent discovery abuse. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Under Rule 26(c), good cause exists when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense, and further, when proprietary information is at stake. *Friends of the Earth v. United States DOI*, 236 F.R.D. 39, 41 (D.D.C. 2006). In this litigation, good cause arises from a need to obviate unwarranted annoyance and embarrassment, as well as the improper use of proprietary information.

Rule 26(c) reads as follows:

> Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (1) that the disclosure or discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
>
> (5) that discovery be conducted with no one present except persons designated by the court;
>
> (6) that a deposition, after being sealed, be opened only by order of the court;
>
> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and
>
> (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

Fed. R. Civ. P. Rule 26(c). Therefore, to obtain protection from Klayman's discovery abuse, Defendants need only demonstrate good cause with some specificity regarding how harm may occur by the disclosure. *See Friends of the Earth*, 236 F.R.D. at 41. Upon the appropriate showing, this Court may decide, in its discretion, how to structure the protective order, which decision will not ordinarily be disturbed on appeal unless there is an abuse of discretion. *Id*.

In fashioning a protective order, the Court may even enter an order limiting production of discovery to "attorneys' eyes only." In this case, the substantial risk of improper use of information by Klayman warrants the restriction that discovery be reviewed by Klayman's attorneys only. Indeed, Judge Lamberth entered such an order, at Klayman's request, in a separate case:

> Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to attorneys and experts, particularly where there is some risk that a party might use the

> information or disseminate it to others who might employ it to gain a competitive advantage over the producing party.

*Alexander v. FBI, et al.*, 186 F.R.D. 54 (D.D.C. 1998) (prior and subsequent history on other grounds) (*citing Westside Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc., 1998 U.S. Dist. LEXIS 5614, 1998 WL 186728* (E.D. La. April 17, 1998) (citing numerous cases)).[1] The Court's authority and process for entering such orders are described as follows:

> Federal Rule of Civil Procedure 26(c)(7) permits a court to issue a protective order to require that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." As the Supreme Court has explained, this rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984). In exercising this discretion, a court is to engage in a "balancing of various factors: the requester's need for information . . . , its relevance to the litigation at hand, the burden of producing the sought-after material, and the harm which disclosure would cause to the party seeking to protect the information." *Burka v. United States Department of Health and Human Servs.*, 318 U.S. App. D.C. 274, 87 F.3d 508, 517 (D.C. Cir 1996). In crafting a protective order, a court may "limit the conditions, time, place, or topics of discovery; or limit the manner in which a trade secret or other confidential research, development, or commercial information may be revealed." 87 F.3d at 518.

*Amfac Resorts, LLC v. United States DOI*, 143 F. Supp. 2d 7, 15 (D.D.C. 2001).

In this case, there is good cause to limit the review of discovery to Klayman's attorneys only to protect Defendants from harassment and annoyance, and to protect proprietary information. Indeed, Klayman's savingjudicialwatch campaign and Freedom Watch organization directly compete with Judicial Watch for donor support. This circumstance raises a need to prevent Klayman from obtaining proprietary information to use in competition with Judicial Watch. Moreover, Klayman's prior conduct is clear evidence of his future intent to use

---

[1] Klayman successfully obtained an "attorneys eye's only" protective order for the plaintiffs in *Alexander, et al. v. FBI, et al.*, supra.

discovery from this case to publicly harm the Defendants.[2] This harm is evident not only from the false advertising and direct mailing, but also because Klayman seeks trade secrets and propriety information for Klayman's competing organizations, *savingjudicialwatch.org.* and Freedom Watch.

B. The Scope of Discovery to Date

To date, the parties have exchanged written discovery requests and responses. Klayman's Answers to Interrogatories contain no substantive information and serve no purpose in the litigation but to demonstrate the frivolous nature of his Complaint. For example, Interrogatory No. 8 reads as follows:

> Describe in detail your damages in connection to Defendants' alleged use of your name and/or likeness in fundraising activities. If any portion of your damages requires any calculation, explain in detail how the calculations were performed.

In response, Klayman answered under oath as follows:

> All the facts necessary to respond to this interrogatory are not in plaintiff's possession and control, because many of them are held by the defendants and have not been provided to plaintiff. Indeed discovery is just beginning and once the necessary documents and information is revealed, plaintiff will provide his full response to this interrogatory.

*See* Plaintiff's Answers to Interrogatories, attached hereto as Exhibit 14. Likewise, Interrogatory No. 9 reads as follows:

---

[2] Klayman's efforts to publicize his allegations against Judicial Watch, and those of plaintiffs in other actions, are well documented in Exhibit Nos. 1 – 4. In addition, Klayman's conduct in the past demonstrates a willingness to ignore Court Orders in favor of promoting his own interests. For example, in the action styled as *Ghawji v. Ghawji*, Case No. CT-3545-04 (Cir. Ct. of Shelby County, Tenn.), an opposing party is currently seeking criminal contempt sanctions against Klayman for violating an Order prohibiting the parties from disseminating information to third parties. *See* Amended and Supplemental Petition, attached hereto as Exhibit 15, ¶¶ 21 – 28. Klayman violated the order by providing information to an internet website for publication. Furthermore, in a recent decision out of the Supreme Court of the State of New York, Klayman was denied admission *pro hac vice* based on a history of disregard for the judicial process. In the decision, the court outlines no less than seven circumstances in which Judges found it necessary to admonish Klayman for improper conduct. *See* Exhibit 16.

> If you contend that your personal relationships, business relationships and good will have been harmed by Defendants' alleged use of your name and/or likeness in fundraising activities, describe the harm in detail and identify all individuals with knowledge relating to the harm.

Again, instead of providing any information to assist in discovery, Klayman states as follows:

> Other than as set forth in the pleadings in this case, plaintiff cannot respond to this interrogatory until the discovery of the defendants is completed.

Exhibit 14. With only minor exception, Klayman's discovery responses uniformly state that he cannot provide any factual information without concluding his discovery of the Defendants. Under any definition, Klayman is engaged in a "fishing expedition".[3] In other words, Klayman is engaged in discovery in search of a claim.

In contrast, Defendants are willing to produce information and documents in response to Klayman's discovery requests, subject to their objections and a Protective Order restricting discovery to use only within the context of this litigation and not for any advertising or publication purposes. To this end, Defendants declined to provide substantive responses or produce documents: "absent an appropriate protective order to ensure the integrity of the information and prevent Klayman from using the information for his campaign to smear Judicial Watch and its officers."

Klayman's discovery requests are impermissibly broad in scope and seek confidential and/or irrelevant subject matter. For example, Klayman seeks proprietary information in the form of financial records that contain information regarding collection and use of any funds by Defendants during the fall and winter of 2003. *See* Plaintiff's Requests for Production at Request No. 9, attached hereto as Exhibit 17. Plaintiff also seeks confidential and proprietary information concerning the closing of Judicial Watch regional offices in Dallas, Texas, and

[3] After responding to Requests for Production, Klayman did not produce a single sheet of paper.

Chicago, Illinois. *Id*. at Request No. 16. In no way do these Requests relate to any remaining claims pursued by Klayman. Instead, such requests seek Judicial Watch's proprietary information as part of a fishing expedition. In addition, Klayman seeks documents that refer or relate to Defendant's decision to end the Judicial Watch Report on radio and television. *Id*. at Request No. 17. Again, this Request seeks proprietary information that does not relate to Klayman's remaining claims.

The scope of these Requests, when considered together with Klayman's competing efforts, including advertisements, web site and direct mail solicitations, demonstrate that Klayman's true purpose for the discovery is to obtain information, not for the purpose of his lawsuit, but to feed his distorted campaign against Judicial Watch and promote his own organizations.

C. Plaintiff Klayman's Tactics Have Harmed the Defendants and Justify the Imposition of a Protective Order

Klayman is using this litigation as part of a planned and coordinated effort to fund a campaign to discredit the current leadership of Judicial Watch. This smear campaign could not be organized without using non-public confidential information belonging to Judicial Watch in the form of donor lists, information about direct mail solicitation operations, the identity of third-parties who assisted with direct mail solicitation operations and the terms on which such programs and operations were conducted. In addition, Klayman is trading on confidential information he acquired as general counsel for Judicial Watch. Such use of confidential proprietary information demonstrates a heightened need to protect Judicial Watch from further harm as a result of Klayman's proclivity to exploit and distort information obtained from the Defendants.

Harm caused by Klayman's crusade includes a decline in donations to, and respect for,

Judicial Watch. Klayman's distortions are published in direct mail, email and print advertisements and on the "savingjudicialwatch.org" web site. As a result of these misrepresentations, Judicial Watch donors have expressed unexplained disappointment, been confused and/or ceased donating altogether. Furthermore, a number of supporters cannot even explain their dissatisfaction with Judicial Watch, but believe they should not donate until the dispute with Klayman is concluded. Exhibit Nos. 5 - 8 consist of four examples of supporters who ceased donating as a direct result of Klayman's smear campaign.

Based on the continuing harm, there is substantial good cause to enter the requested protective order. Klayman's campaign confuses Judicial Watch supporters who believe they are supporting Judicial Watch by donating in response to the *savingjudicialwatch* campaign. *See* Exhibit Nos. 9 – 13. Klayman has successfully mislead supporters to donate in response to *savingjudicialwatch* letters, but due to the confusion he has incited, these supporters forwarded contributions directly to Judicial Watch. Finally, a silent population of Judicial Watch donors and supporters exists who no longer donate or support Judicial Watch as a result of Klayman's smear campaign.

Recognizing the harm caused by Klayman's misrepresentations, Judicial Watch timely moved for leave to file an Amended Counterclaim seeking damages and injunctive relief pursuant to the Lanham Act based on Klayman's activities of false advertising and false association.[4] In an effort to prevent further harm, Defendants now seek a Protective Order to preclude the use of discovery information in Klayman's publicity and advertising efforts.

D. Klayman's Effort to Obtain Information for his Smear Campaign Includes a Willingness to Violate his Ethical Duties to Judicial Watch

From 1998 through September 19, 2003, Klayman was General Counsel and Treasurer of

4 The Court has yet to act on this Motion.

Judicial Watch. As such, he has a continuing duty of loyalty to protect confidential information provided to him during the course of his representation. Notwithstanding this clear ethical obligation, Klayman engaged in a direct conflict of interest by working against his former client, Judicial Watch, in representing individuals in litigation against Judicial Watch concerning matters that he was substantively responsible for as its general counsel. This conduct is an intentional breach of his ethical and fiduciary duties to Judicial Watch. Moreover, it demonstrates a lack of reasonable restraint in Klayman's efforts to harm his former client.

For example, during his employment by Judicial Watch, Klayman created, organized and managed a fundraising effort to purchase a permanent home for Judicial Watch. However, following his departure, Klayman entered into an attorney/client relationship with a former Judicial Watch supporter, Louise Benson,[5] in her suit against Judicial Watch concerning the Building Fund. This action was styled as Louise Benson, *et al*. v. Judicial Watch, *et al*., Civil Action Civil Action No. 0000520-07 and venued in the Superior Court of the District of Columbia. On the day before oral argument on Judicial Watch's Motion to Disqualify Klayman as counsel for Benson, the action was voluntarily dismissed with prejudice. The motion was based on Klayman's direct conflict of interest and breach of fiduciary duties arising from his efforts to represent Benson in a matter directly related to his former employment as general counsel.[6]

In addition to the Benson case, Klayman is involved in other litigations against Judicial Watch. For example, Klayman assisted a former Judicial Watch employee, Sandra Cobas, in a

---

[5] Originally, Benson's claims were part of this action, but following dismissal without prejudice for lack of jurisdiction, Benson re-filed her claims in the Superior Court of the District of Columbia. When Defendants moved for a protective order to prevent disclosure of information to Klayman, he entered his appearance as counsel for Benson.

[6] In Benson, Defendants filed a Motion to Disqualify Klayman for violating Rules of Professional Conduct 1.6 and 1.9 by representing Benson in her suit against Klayman's former client, Judicial Watch. On the day before oral argument on the Motion to Disqualify, Benson dismissed her case with prejudice.

suit against Judicial Watch, its current board members and an employee in Miami, Florida, asserting defamation and other baseless claims. The case, which was styled Sandra Cobas v. Judicial Watch, *et al.*, Case No. 05-17413 (Miami-Dade Co. Cir. Ct.) was dismissed at the pleading stage and the dismissal was affirmed without opinion on appeal. Indeed, Klayman features the allegations of both the Benson and Cobas lawsuits in his fundraising campaign but omits any discussion of the dismissals. *See* Exhibit Nos. 2 and 4.

Klayman also features the *Peter Paul v. Judicial Watch* litigation on his website and in other publicity documents. *See* Exhibit 18. Peter Paul, a former client of Judicial Watch, recently filed suit against Judicial Watch regarding events that transpired during Klayman's tenure as General Counsel. *See* Complaint in *Peter F. Paul v. Judicial Watch*, Case No. 1:07-cv-00279-RCL (D. D.C.). Peter Paul is represented by the same attorney who represents Klayman in this case, Daniel Dugan, Esquire. Judicial Watch is aware of coordination between Klayman and Paul in connection with this lawsuit. In an April 30, 2007, direct mail piece, Klayman described the Paul suit as follows: "Peter Paul joins me in taking on Tom Fitton and saving Judicial Watch." *See* April 30, 2007, Letter, attached hereto as Exhibit 4. Moreover, the representation of Peter Paul by Dugan creates a method of sharing confidential information with Peter Paul that cannot be policed by the Court due to the attorney-client privilege.

Because Klayman and his counsel, Daniel Dugan, Esquire, represent other plaintiffs against Judicial Watch, there is a heightened need for a Protective Order to prevent dissemination of information to other persons and protect Defendants from disclosure of Judicial Watch's information, most of which is confidential information having its own proprietary value to the organization.

**CONCLUSION**

As outlined above, disclosure of information to Klayman without limitations will only result in further distortion of the facts and use of the information for purposes other than this litigation. Defendants are willing to produce relevant information in response to discovery requests. However, such production must be subject to a Protective Order limiting the use any information to the strict context of this litigation and not for any advertising or publication purposes. Further, the discovery information should not to be disseminated to anyone who is not directly involved in this litigation. Therefore, a restriction of review to "attorneys' eyes only" is appropriate as Klayman's conduct demonstrates that he will not abide by reasonable restrictions. This restriction should include limiting Klayman's attorneys from producing any discovery from this case to any persons. This relief is necessary to preclude discovery abuse and future harm to Defendants. As Klayman himself has maintained, the protective order will ensure that defendants do not suffer irreparable harm, while the cost of such restrictions does not prejudice Klayman's causes of action in any manner, even where a party is personally precluded from review of the information provided. *Alexander, et al. v. FBI, et al.*, 186 F.R.D. at 54.

WHEREFORE, for all of the forgoing reasons, Defendants Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes and Christopher J. Farrell respectfully request that the Court GRANT this Motion and enter a Protective Order limiting the information produced and maintaining the integrity of any information produced in discovery by prohibiting dissemination of such information to persons not directly involved in this litigation, including for any advertising purposes.

Respectfully submitted,

/s/

Richard W. Driscoll (436471)
Juli Haller Simonyi (466921)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com
jhaller@driscollseltzer.com
*Counsel for Defendants Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes and Christopher J. Farrell*

Dated: October 16, 2007