IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

ROSINE COLLIN GHAWJI,

     Plaintiff/Counter-Defendant,

vs.                                 No.  CT-003545-04
                                       Div. VII
MAHER GHAWJI,

     Defendant/Counter-Plaintiff,

and

MAHER GHAWJI,

     Petitioner,

vs.

ROSINE COLLIN GHAWJI,
LARRY KLAYMAN and JOE KAUFMAN,

     Respondents.

---

AMENDED AND SUPPLEMENTAL PETITION FOR SCIRE FACIAS AND CITATION
FOR CIVIL AND CRIMINAL CONTEMPT AND FOR ATTORNEY FEES

---

TO THE HONORABLE DONNA FIELDS, JUDGE OF DIVISION VII OF THE CIRCUIT
COURT OF SHELBY COUNTY, TENNESSEE FOR THE THIRTIETH JUDICIAL
DISTRICT AT MEMPHIS:

     Comes now the petitioner, Maher Ghawji (hereinafter referred
to as "Father"), and respectfully states to the Court as follows:

     1.    Father is an adult resident citizen of Shelby County,
Tennessee.

     2.    Respondent, Rosine Collin Ghawji (hereinafter referred to
as "Mother") is an adult resident citizen of Shelby County,
Tennessee.

     3.    Upon information and belief, Respondent Larry Klayman is
an adult resident citizen of Miami, Dade County, Florida.  Mr.

Klayman can be served with process at the Corvoisier II Building, 601 Brickell Key Drive, Suite 404, Miami, Florida, 33131. This Court has personal jurisdiction over Mr. Klayman in relation to the matters raised in this petition pursuant to Tennessee Code Annotated §20-2-214, which provides as follows:

Jurisdiction of persons unavailable to personal service in state - Classes of actions to which applicable.

(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(1) The transaction of any business within the state;

(2) Any tortious act or omission within this state;

(3) The ownership or possession of any interest in property located within this state;

(4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

(6) Any basis not inconsistent with the constitution of this state or of the United States;

(7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

(b) "Person," as used herein, includes corporations and all other entities which would be subject to service of process if present in this state.

(c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above

described through an agent or personal representative.

4.    Upon information and belief, Respondent Joe Kaufman is an adult resident citizen of Coral Springs, Broward County, Florida and can be served with process at 1440 Coral Ridge Drive #404, Coral Springs, Florida 33071-5433. This Court has personal jurisdiction over Mr. Kaufman in relation to the matters raised in this petition pursuant to Tennessee Code Annotated §20-2-214.

5.    On June 21, 2004, Mother filed an "Emergency Complaint for Legal Separation and for Ex-Parte Relief and Injunctions" in this cause. In her Emergency Complaint, Mother made various allegations against Father which were unfounded, outrageous and completely false. Based on these allegations, Mother secured ex-parte relief against Father to which Mother was not entitled. This relief included restrictions which effectively prevented Father from having any contact with the parties' two minor children, Maher Ghawji, Jr., born January 16, 1989, and Terik Ghawji, born July 8, 1992, and exclusive use and possession of the parties' marital residence.

6.    On July 2, 2004, Father filed his "Answer to Emergency Complaint for Legal Separation and for Ex-Parte Relief and Injunctions and Counter-Affidavit for Absolute Divorce." In his answer and counter-complaint, Father specifically denied the outrageous allegations contained in Mother's emergency complaint.

7.    This case has a long and tortuous history, as is evident from the record in this case. Between July 2, 2004 and November 4, 2006, numerous petitions and motions were filed and numerous hearings were held before this Court.

8.    On November 7, 2006, Mother filed her affidavit in these proceedings. Mother's affidavit asserted numerous false and outrageous allegations against Father.

9.    Also on November 7, 2006, Mother filed the "Affidavit of Joe Kaufman." In said affidavit, Mr. Kaufman held himself out as

an expert on matters of terrorism and purported to substantiate, verify and/or confirm various false and outrageous allegations that Mother has made against Father during these proceedings. Mr. Kaufman executed this affidavit for the purpose of assisting Mother as an expert witness in these proceedings.

10. Both Mr. Kaufman's and Mother's affidavits contain allegations against Father which are completely untrue, including allegations that Father is involved in terrorism and/or terrorist organizations.

11. Also on or about November 7, 2006, Larry Klayman, an attorney licensed to practice law in the State of Florida, appeared before this Court and stated his desire to represent Mother in these proceedings. At all times relevant to this petition, Mr. Klayman was not an attorney licensed to practice in the State of Tennessee. Therefore, Mr. Klayman moved *ore tenus* that he be admitted to appear in these proceedings on a *pro hac vice* basis with Memphis attorney Ernest Norcross serving as local counsel. After hearing Mr. Klayman's oral motion, the Court ruled that he would need to comply with Rule 19 of the Rules of the Tennessee Supreme Court.

12. Tennessee Supreme Court Rule 19 governs the procedure for admission *pro hac vice* before the Tennessee trial courts and provides, in pertinent part, that an application for admission should include the following:

19(d)(2)

> ...the jurisdictions in which the lawyer is or has been licensed to practice law, with dates of admission, and any other courts before which the lawyer has been or is generally admitted to practice (including, for example, membership in the bar of a United States District Court), with the dates of admission, and a statement by the lawyer that the lawyer is in good standing in all other jurisdictions in which the lawyer is licensed to practice law...

4

Rule 19(d)(4)

> ...a statement concerning whether the lawyer has been denied admission pro hac vice or has had an admission pro hac vice revoked by any court in any jurisdiction and, if so, a full description of the circumstances, including the full name or style of the case...

Rule 19(d)(8)

> ...a statement by the lawyer that the lawyer consents to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the lawyer's conduct in the proceeding and that the lawyer agrees to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee...

13. On or about November 15, 2006, Mr. Klayman filed his "Motion for Appearance *Pro Hac Vice* and Incorporated Affidavit" in this cause. In said motion, Mr. Klayman requested that he be permitted to appear and represent Mother in this proceedings. However, Mr. Klayman's motion and supporting affidavit failed to comply with the requirements of Rule 19 of the Rules of the Tennessee Supreme Court. Most notably, Mr. Klayman's motion and affidavit failed to disclose whether he had been denied admission *pro hac vice* or had had an admission *pro hac vice* revoked by any court in any jurisdiction, as required by Tennessee Supreme Court Rule 19(d)(4).

14. On November 16, 2006, Father filed his "Emergency Motion for Protective Order Placing Record under Seal and Prohibiting the Parties from Disseminating any Documents contained in the Record to any Third Parties" in this cause.

15. On December 1, 2006, Mr. Klayman filed an "Amended Motion for Appearance *Pro Hac Vice* and Incorporated Affidavit" in this cause. Mr. Klayman's first amended motion and supporting affidavit still failed to comply with the requirements of Rule 19 of the Rules of the Tennessee Supreme Court. Most notably, Mr. Klayman's

amended motion and affidavit failed to disclose whether he had been denied admission *pro hac vice* or had had an admission *pro hac vice* revoked by any court in any jurisdiction, as required by Tennessee Supreme Court Rule 19(d)(4).

16.  Only after Father's counsel continued to inquire about material omissions in Mr. Klayman's original motion and affidavit and amended motion and affidavit did Mr. Klayman file his "Supplement to Amended Motion for Appearance Pro Hac Vice" on December 4, 2006. In this supplement, Mr. Klayman finally disclosed that he had had two prior *pro hac vice* admissions revoked by two different courts in two different jurisdictions. Mr. Klayman claimed the omissions in his prior motions and affidavits were the fault of an associate who allegedly prepared the motions and affidavits.

17.  On December 5, 2006, Father filed "Dr. Maher Ghawji's Response in Opposition to Motion for Appearance Pro Hac Vice and Incorporated Affidavit Filed by Larry Klayman." Also on December 5, 2006, Father filed "Dr. Maher Ghawji's Response in Opposition to Supplement to Amended Motion for Appearance Pro Hac Vice Filed by Larry Klayman."

18.  On December 6, 2006, this Court conducted a hearing on Mr. Klayman's motion. After considering the matter, the Court properly concluded that grounds existed for the denial of Mr. Klayman's motion for admission *pro hac vice*. An "Order Denying Motion for Appearance *Pro Hac Vice* and Incorporated Affidavit" was entered with the Court on December 8, 2006.

19.  On December 11, 2006, Mr. Klayman sent an e-mail directly to Father even though Mr. Klayman was fully aware that Father was represented by counsel. The e-mail contained an attachment which was a draft of a "Verified Complaint" Mr. Klayman had prepared on Mother's behalf to file in Florida against Father; Dr. Gary Bayer, the parties' court appointed family counselor; and Father's friend,

6

Areej Zufari.   The "Verified Complaint" falsely alleged that Father, Dr. Bayer and Ms. Zufari had entered into a conspiracy to take the minor children from Mother so the children could be indoctrinated in radical Muslim extremism.    The "Verified Complaint" requested an award of compensatory damages in excess of $5,000,000.  Father avers that Mr. Klayman intentionally sent the December 11, 2006, e-mail to him with the attached "Verified Complaint" in a deliberate effort to intimidate Father and other witnesses in this case.   On December 20, 2006, Father filed a "Motion for Court to Declare That the Verified Complaint Sent by Larry Klayman to Defendant and Then Sent By Defendant to His Attorneys was Clearly Intended to Be Received by Defendant and Others Whom One Might Expect Defendant to Send the Complaint on To" in this cause.   After hearing proof on the Motion, the Court concluded that Mr. Klayman intentionally sent the subject e-mail and "Verified Complaint" to Father. The "Order Granting Motion for Court to Declare That the Verified Complaint Sent by Larry Klayman to Defendant and Then Sent By Defendant to His Attorneys was Clearly Intended to Be Received by Defendant and Others Whom One Might Expect Defendant to Send the Complaint on To" was entered in this cause on January 16, 2007.  Father avers that Mr. Klayman's obvious effort to intimidate Father and other witnesses in this cause by way of his direct correspondence to Father on December 11, 2006, represented a clear abuse of, or unlawful interference with, the process or proceedings of this Court in willful violation of T.C.A. §29-9-102.  Based on this conduct, Father avers that Mr. Klayman is in criminal contempt of Court.

20.  On December 21, 2006, an "Order Enjoining Rosine Collin Ghawji from Filing Suit or Taking Any Type of Action Against Areej Zufari, Maher Ghawji and Gary Bayer Pending Further Orders of This Court" was entered in this cause.  Pursuant to this Order, Mother was prohibited from filing the "Verified Complaint" or any other

lawsuit against Areej Zufari, Maher Ghawji or Gary Bayer during the pendency of this divorce, without first obtaining the approval of this Court. On February 8, 2007, while this Order was in full force and effect, Mother filed a Verified Complaint against Areej Zufari, Maher Ghawji and Gary Bayer with the Circuit Court of Orange County, Florida. The Verified Complaint is filled with completely false accusations against Father, Areej Zufari and Gary Bayer and was filed in blatant violation of this Court's December 21, 2006 order. A copy of the Verified Complaint filed with the Florida Circuit Court and the summons issued to Father in violation of this Court's December 21, 2006, order are attached hereto collectively as Exhibit "A." Mr. Klayman, with full knowledge of the December 21, 2006, order filed the Verified Complaint on Mother's behalf as Mother's counsel of record. Thus, Mr. Klayman assisted, participated in, aided and abetted Mother in her blatant violation of this Court's December 21, 2006, order. As a result, Mr. Klayman is criminally responsible for Mother's contemptuous conduct pursuant to T.C.A. §39-11-402. Based on the foregoing, Father avers that Mother and Mr. Klayman are in criminal contempt of Court.

21. On December 18, 2006, this Court entered an "Order Placing Record under Seal and Prohibiting the Parties from Dissemination any Documents or Information Contained in the Record to any Third Parties." This order provided in pertinent part as follows:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Court's record in this cause shall be, and is hereby, ordered to be placed under seal and shall be maintained under seal pending further orders of the Court to be accessible only by the Court, and the parties and their counsel with the permission and supervision of the Court. Furthermore, the parties and their counsel shall be prohibited from disseminating or providing copies of any pleadings filed in this cause and/or information contained in said pleadings to any person, except for individuals directly involved in this litigation such as Dr. Howard Jacobson, Dr. Patricia Kelley,

Dr. Gary Bayer, expert witnesses retained by the parties, fact witnesses who have a reasonable justification for being shown pertinent parts of the record, the parties' counsel of record and their respective staffs, and court reporters covering depositions, hearings and/or the trial of this cause. Any individuals who are provided with copies of any pleadings or other materials filed with the Court in this cause or the information set forth in said pleadings or materials shall first be advised of the confidentiality of such documents and information and the prohibition against the release and/or dissemination of said materials and information to other third parties. Irrespective of whether they will be called as witnesses at trial, the parties' children shall not be shown or provided with copies of any pleadings or other materials filed with the Court in this cause and/or any information set forth therein unless such disclosure takes place in open Court after the Court has had an opportunity to first review said document.

22.    Despite the provisions of this Court's December 18, 2006, order, on January 2, 2007, Mother, Mr. Klayman and Mr. Kaufman disseminated information contained in the record in this case to the general public by and through the posting of a story on the internet website, www.worldnetdaily.com.  A copy of the story is attached hereto as Exhibit "B" and is incorporated herein by reference as though set forth herein verbatim.

23.    The World Net Daily story repeats many of the false and outrageous allegations that Mother has asserted in these proceedings, including those set forth in the affidavits of Mr. Kaufman and Mother filed with the Court on November 7, 2006.

24.    Since January 2, 2007, the story has remained on the World Net Daily website for viewing by the general public and has been made available for review by the general public on other internet websites via links to the World Net Daily website.

25.    It was clearly foreseeable to Mother, Mr. Klayman and Mr. Kaufman that information contained in the record which they caused to be published on the World Net Daily website would be viewed by the general public.  It also was foreseeable to them that other websites would add links to the story, thus increasing the volume

of readers.

26.   As a result of the aforementioned internet posting, information contained in the record of these proceedings was disseminated to untold members of the general public on a daily basis in direct and willful violation of the orders of the Court.

27.   Mother, Mr. Klayman and Mr. Kaufman each were well aware that the internet posting of the aforementioned story, which included facts contained in the record in this case, was in direct violation of the orders of this Court.   Nevertheless, they proceeded with disseminating the subject information in said public forum.

28.   After the subject posting, Mother, Mr. Klayman and Mr. Kaufman failed and/or refused to have the story removed from the website, thereby facilitating the continued dissemination of information contained in the record in this cause to additional members of the general public on a daily basis.

29.   The trial of this cause was scheduled to begin on January 2, 2007.  On that date, Mother did not appear.  The Court continued the proceedings to January 3, 2007, in order to allow Mother another opportunity to appear.  On January 3, 2007, Mother again failed to appear.  However, at proceedings in this cause on both January 2 and 3, 2007, an individual named Ty Clevenger was present in the courtroom.  On January 3, 2007, counsel for Husband called Mr. Clevenger to testify as a witness.  After stating under oath that he was not purporting to represent any party in these proceedings (transcript of January 3, 2007 proceedings, p. 13), Mr. Clevenger answered various questions concerning his dealings and/or conversations with Mr. Klayman and Mother.   Mr. Clevenger testified, in pertinent part, to the following:

(A)   That Mr. Klayman was consulting with Mother and giving Mother advice as to how to proceed in the divorce case, as recently as January 2, 2007 (January 3, 2007

10

transcript, pp. 25, 47-48).

(B) That Mr. Klayman assisted Mother with preparing and/or drafting the letter that she filed with the Court on December 29 and which the Court received on January 2 wherein Mother moved the Court for a continuance of the trial date and for the Court to recuse itself from these proceedings (January 3, 2007 transcript, p. 33);

(C) That Mr. Klayman and Mr. Clevenger had discussed the fact that the record in this case was under seal (January 3, 2007 transcript, p. 40);

(D) That, in Mr. Clevenger's opinion, Mr. Klayman was familiar with the order sealing the record (January 3, 2007, p.40);

(E) That Mr. Klayman knows the editor of the World Daily Net website (January 3, 2007 transcript, p. 21);

(F) That on January 2, 2007, Mother, Mr. Klayman and Joe Kaufman were on the Jim Bohannon Show, a radio show (January 3, 2007 transcript, p. 14, 42);

(G) That Mr. Klayman told Mr. Clevenger that the radio show would be on and that Mr. Klayman and Mother would be interviewed by the show's host (January 3, 2007 transcript, pp. 40-41);

(H) That the show was broadcast to the general public and Mr. Clevenger accessed it on the internet (January 3, 2007 transcript, p. 41);

(I) That on the radio broadcast, Mother, Mr. Klayman and Mr. Kaufman discussed the same issues raised in the January 2, 2007 story that appeared on the World Net Daily website (January 3, 2007 transcript p. 41-44).

30. As noted by Mr. Clevenger in his testimony, on January 3, 2007, Mother, Mr. Klayman and Mr. Kaufman were guests on the Jim Bohannon Show, a radio show. During the radio broadcast, Mother,

11

Mr. Klayman and Mr. Kaufman discussed and disclosed information contained in the record in this cause. The disclosure of this information during the referenced radio broadcast represented another willful and blatant violation of the orders of this Court by Mother, Mr. Klayman and Mr. Kaufman.

31. On January 10, 2007, a story appeared in The Daily News concerning this case. A copy of the story is attached hereto as Exhibit "C." The story quotes Mother and references "a statement released by the Nashville office of The Klayman Law Firm..." The story, which relies heavily on the statement released by Mr. Klayman, references allegations made by Mother against Father in these proceedings, thereby constituting yet another violation by Mother and Mr. Klayman of the Court's orders.

32. On January 9, 2007, a second story about this case was posted on the internet website, www.worldnetdaily.com. A copy of this story is attached hereto as Exhibit "D." This story also references allegations made by Mother, Mr. Klayman and Mr. Kaufman concerning matters contained in the record of these proceedings, thereby constituting yet another violation of the orders of this Court by Mother, Mr. Klayman and Mr. Kaufman.

33. The actions of Mother, Mr. Klayman and Mr. Kaufman described herein constitute numerous and separate willful violations the "Order Placing Record under Seal and Prohibiting the Parties from Disseminating any Documents or Information Contained in the Record to any Third Parties."

34. Each separate dissemination of information contained in the record in these proceedings to third parties outside the context of these proceedings represents a distinct and separate violation of the order placing the record under seal. As such, Mother, Mr. Klayman and Mr. Kaufman should be punished for each violation of the subject order pursuant to applicable law, which provides in part as follows:

12

Tenn. Code Ann. 29-9-102

The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
***
(3) The willful disobedience or resistance of any officer of such courts, party, juror, witness or any other person, to any lawful writ, process, order, rule, decree, or command of such courts ...

(4) Abuse of, or unlawful interference with, the process or proceedings of the court...

Tennessee Code Annotated §29-9-103

Punishment.

(a) The punishment for contempt may be by fine or by imprisonment, or both.

(b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in §29-9-108, all other courts are limited to a fine of ten dollars ($10.00).

Tennessee Code Annotated §29-9-105

Performance of forbidden act.

If the contempt consists in the performance of a forbidden act, the person may be imprisoned until the act is rectified by placing matters and person in status quo, or by the payment of damages.

35. Having violated the orders of the Court with the internet postings of the aforementioned stories, which include facts and allegations raised in these proceedings, Mother, Mr. Klayman and Mr. Kaufman retained the ability to take action to have the stories removed from the website. However, they took no such action. As a result of the repeated and ongoing disregard of the order sealing the record by Mother, Mr. Klayman and Mr. Kaufman, Father ultimately requested the Court to set aside the order so his

13

attorneys could respond to the false and outrageous allegations that were being publically disseminated about him. The Court granted Father's request and an "Order Removing Seal of Case and Prohibition as to Disseminating Information Contained in Case" was entered in this cause on January 12, 2007.

36. Even though Mr. Klayman was denied permission to appear before this Court, he has continued to counsel and assist Mother in relation to these proceedings. Specifically, Mr. Klayman has advised Mother concerning strategy and positions to take in these proceedings and has assisted Mother with the preparation of written material(s) filed with the Court, including the aforementioned letter from Mother to the Court in which Mother requested (1) a continuance of the January 2, 2007 trial date and (2) for the Court to recuse itself from these proceedings. Mr. Klayman's actions in assisting and counseling Mother in relation to these proceedings constitutes the practice of law in the State of Tennessee in violation of Tennessee Code Annotated §23-3-103 and the orders of this Court.

37. Mr. Klayman's conduct represents an intentional and blatant violation of the "Order Denying *Motion Pro Hac Vice*" entered in this cause on December 8, 2006. Furthermore, Mr. Klayman's willful conduct represents abuse of and/or unlawful interference with the process or proceedings of this Court. As such, Mr. Klayman is guilty of criminal contempt of court pursuant to Tennessee Code Annotated §29-9-102.

38. Further, each occasion when Mr. Klayman violated the orders of this Court and/or unlawfully interfered with the process or proceedings of this Court by engaging in the practice of law or doing law business on behalf of Mother in these proceedings and by engaging in efforts to intimidate witnesses constitutes a separate and distinct count of criminal contempt for which Mr. Klayman should be appropriately punished pursuant to Tennessee Code

14

Annotated § 29-9-103.

39.  Mr. Klayman, at all times relevant hereto, has been a legal counsel for Mother (in spite of a January 9, 2007 letter to counsel for Father suggesting otherwise) and has continued to provide legal services to Mother in connection with these proceedings even after he was denied *pro hac vice* admission to represent Mother in these proceedings. Based on this, Mr. Klayman was within the class of individuals covered by the "Order Placing Record under Seal and Prohibiting the Parties from Disseminating any Documents or Information Contained in the Record to any Third Parties." Therefore, under Tennessee law, Mr. Klayman is subject to punishment for contempt for his repeated violations of this order.

40.  Mr. Kaufman, at all times relevant hereto, has been an expert witness for Mother. Based on this, Mr. Kaufman was within the class of individuals covered by the "Order Placing Record under Seal and Prohibiting the Parties from Disseminating any Documents or Information Contained in the Record to any Third Parties." Therefore, under Tennessee law, Mr. Kaufman is subject to punishment for contempt for his repeated violations of this order.

41.  Alternatively, if this Court finds that Mr. Klayman and/or Mr. Kaufman is not directly covered by the subject order for the reasons described above, they nonetheless are criminally responsible for Mother's violations of the order pursuant to Tennessee Code Annotated §39-11-402 for aiding and abetting Mother's violations of the order. Tennessee Code Annotated §39-11-402 provides as follows:

Criminal responsibility for conduct of another.

A person is criminally responsible for an offense committed by the conduct of another, if:

(1) Acting with the culpability required for the offense, the

15

person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;

(2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or

(3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

42.    At all times relevant hereto, Mother, Mr. Klayman and Mr. Kaufman had the ability to abide by the orders of this Court, but they willfully failed and refused to do so.

43.    The actions of Mother, Mr. Klayman and Mr. Kaufman represent a blatant disregard for the orders of this Court. Given the audacity of the Respondents' conduct, Father avers that each of the Respondents are guilty of numerous counts of criminal contempt of court and that the Respondents should be punished to the fullest extent of the law for each and every violation of the orders of this Court. Father further avers that Mother, Mr. Klayman and Mr. Kaufman are also in civil contempt of court pursuant to T.C.A. §29-9-105.

44.    Father has been forced to incur attorney fees and litigation expenses in relation to this petition. These fees and expenses are the direct result of the misconduct of Mother, Larry Klayman and Joe Kaufman.

WHEREFORE, PREMISES CONSIDERED, Fathers prays that:

1.    That proper process issue and scire facias be served upon the Respondents, Rosine Collin Ghawji, Larry Klayman and Joe Kaufman, requiring them to appear at the hearing of this cause, at which time Father will introduce sufficient evidence for this court to find the Respondents guilty beyond a reasonable doubt of the charges of criminal contempt of court as herein set forth above.

16

2.    That, upon being adjudged in criminal contempt of court,
the Respondents, Rosine Collin Ghawji, Larry Klayman and Joe
Kaufman, be incarcerated in the Shelby County jail for a period of
ten (10) days or fined fifty dollars ($50) or both, pursuant to
§29-9-103 of the Tennessee Code Annotated for each count upon which
the Court finds the Respondents guilty.

3.    That, upon being adjudged in civil contempt of court, the
Respondents, Rosine Collin Ghawji, Larry Klayman and Joe Kaufman,
be incarcerated in the Shelby County jail until the Respondents
have rectified their forbidden acts by placing matters and person
in status quo and/or by the payment of damages to Father, in
accordance with T.C.A. §29-9-105.

4.    That the Respondents, Rosine Collin Ghawji, Larry Klayman
and Joe Kaufman, be required to pay all of Father's attorneys' fees
and expenses incurred by him in relation to this petition and the
matters referenced therein.

5.    For such other and further relief as the justice of this
cause may require.

## WARNING

THIS PETITION PLACES YOU, THE RESPONDENT, IN JEOPARDY OF BEING
FOUND IN CIVIL AND CRIMINAL CONTEMPT OF THIS COURT'S ORDERS.
EACH INCIDENT OF CONTEMPT CAN RESULT IN YOUR INCARCERATION IN JAIL
ON CONTEMPT CHARGES.  YOU HAVE THE RIGHTS OF A CRIMINALLY ACCUSED
PERSON, INCLUDING THE RIGHT TO COUNSEL, AND THE PRESUMPTION OF
INNOCENCE, THE RIGHT TO CONFRONT AND CROSS EXAMINE ALL WITNESSES
AGAINST YOU, AND THE RIGHTS AGAINST SELF INCRIMINATION, AND THE
RIGHT TO REMAIN SILENT.

THIS IS THE FIRST APPLICATION FOR SCIRE FACIAS BASED ON THE FACTS
ALLEGED HEREIN.

Respectfully submitted,

BLACK MCLAREN JONES & RYLAND
A Professional Corporation

By: _____
John C. Ryland       #16878
530 Oak Court Drive, Suite 360
Memphis, Tennessee 38117
(901) 762-0535
Attorneys for Maher Ghawji


_____
David E. Caywood
100 North Main Street, Suite 2400
Memphis Tennessee 38103
Attorney for Maher Ghawji


STATE OF TENNESSEE
COUNTY OF SHELBY

    I, Maher Ghawji, after being first duly sworn, make oath that
the facts contained in the foregoing Petition are true and correct
to the best of my knowledge, information and belief.

_____
Maher Ghawji

    SWORN TO AND SUBSCRIBED BEFORE ME, this the 23rd
February, 2007.

_____
Notary Public

My commission expires:
4-17-2010

18

FIAT

TO THE CLERK:

Notify the Respondents, ROSINE COLLIN GHAWJI, LARRY KLAYMAN and JOE KAUFMAN to appear before me at _____ o'clock ____.m. on the _____ day of _____, 2007, at which time MAHER GHAWJI will introduce sufficient evidence for the Court to find ROSINE COLLIN GHAWJI, LARRY KLAYMAN and JOE KAUFMAN guilty beyond a reasonable doubt of the criminal charges of contempt and at which time ROSINE COLLIN GHAWJI, LARRY KLAYMAN and JOE KAUFMAN shall show cause why they should not be found in civil contempt of court and imprisoned until they rectify their forbidden acts by placing matters and person in status quo and/or by paying damages to Father pursuant to T.C.A. §29-9-105.

Donna M. Fields
_____
JUDGE

DATE: ____2-28-07____

A TRUE COPY ATTEST

JIMMY MOORE, Clerk

Scott Fen D.C.

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served on Rosine Ghawji, 3460 Lake Pointe, Memphis, Tennessee 38125 and Larry Klayman, Esq., 601 Brickell Key Drive, Suite 404, Miami, Florida 33131 this 28 day of February, 2007.

19

  

# 90210.us ★

## Make your zipcode your home page!

Enter your zip code

America's Inte

A Free Press
For A Free People

**World**

**Founded 1997**

Tuesday, January 2, 2007



NukAlert™
24/7 Radiation Monitor & Alarm!



Meet the man who stood up to the president on border security



RIGHT SHIRTS DONE RIGHT

THOSESHIRTS.COM

**FREE News Flashes**

enter email address

**GO!**

WND *Search*    **GO**

WEB *Search*    **GO**

WND Directory
Page 1 News
Page 2 News
Commentary
G2 Bulletin
Daily Poll
WND Forums
Letters to the Editor
BizNetDaily

WORLDNETDAILY EXCLUSIVE

**TRAIL OF TERROR**

# Christian woman facing fight for sons

Battle is over husband's desire to see them 'good Muslims or dead'

Posted: January 2, 2007
1:00 a.m. Eastern

© 2007 WorldNetDaily.com

A Christian woman who once served as an FBI informant on her husband's alleged support of terrorism now is seeking divorce from the self-described radical Muslim who told her he would be proud if their two teen sons blew themselves up for Allah.

But she's finding herself on her own – completely – after a judge allowed her lawyer to withdraw, refused to allow an interested lawyer from appearing in her court, and then refused to allow time for any other replacement to be found before today's trial.

At stake are Rosine Collin Ghawji's sons, whose futures have been defined by her husband as being "good Muslims" or dead, she said.

The situation is developing in the case in which Mrs. Ghawji is seeking not only her freedom from her husband, Maher Ghawji, but also to protect her sons Louis and Takek from any violent Islamic plans their father may have for them.

Joe Kaufman, who has run an anti-terrorism organization for

EXHIBIT

A

SportsNetDaily
TV Guide
Weather





several years, noted that both of the Ghawji sons have, in e-mails and other communications, told friends their father was planning to take them to Syria against their will, and one noted that his grandfather has promised to beat him up when he arrived there.

*(Story continues below)*

Ads by Google                           Advertise on this site

**Military Ringtone**
Send this complimentary ringtone to your phone right now!
RingRingMobile.com

**Support Our Troops Sign**
Get Political Signs Online. Fast Easy Process. Design
Online Today!
www.BuildASign.com

**Fabulous PatrioticJewelry**
Son In Service, Bush Campaign Pins Yellow Ribbon Pins,
Flag Earrings
www.PatrioticJewelry.com

**Send a Gift to the Troops**
Make this Christmas Special $10.00 and no shipping costs!
www.terryvik.com

Mrs. Ghawji's local lawyer was given permission by a Memphis, Tenn., judge on Dec. 19 to withdraw from the case, another lawyer willing to represent her – Larry Klayman -- was denied permission to enter the case, and the court ruled that the trial date – today – would not be delayed.

Klayman, who'd been contacted about the case a few months earlier, told WND that the facts read "like a John Grisham novel." Only this case is real life, with the FBI holding ex parte meetings with the judge, the federal agency "wiring" her to record and report on her husband, her husband allegedly threatening the children that they would be better off dead than Christian, and allegations of extramarital affairs.

And Mrs. Ghawji, if her allegations are correct, is up against more than just a judicial system and a divorce trial; but against some of the most radical factions in the world today, including the adherents of blind Sheikh Omar Abdul Rahman, now serving a life sentence in the SuperMax prison in Colorado on accusations he helped in the planning of the 1993 World Trade Center bombings in New York.

The couple married in 1986, and she said she noticed her husband's unusual activities almost from the beginning. She said between 1987 and 1992 she often waited in the women's room of a

WND Resources
About WND
WND SCOOPS
WND BOOKS
ADVERTISE with WND
Put WND headlines on
your site
Make WND your Home
Page
Sign up for WND Email
Alerts
VOLUNTARY
PAYMENT
Download to your PDA
US Newspapers
Foreign Newspapers
Major News Wires
Other News Services
Other Sites
Writer Archives
Contact Government
Officials
Search Engines
Media
Entertainment

WND People
Contact WND
Who's Who at WND
Speakers & Talk Show
Guests
Columnists

mosque for hours while her husband was meeting with Rahman, and later the FBI visited her and asked about some of her husband's acquaintances, including a man the FBI described as being on a "terrorist watch list" who had rented an apartment from her husband.

She said it appeared about that time that her husband's brother, Haitham Ghawji, started appearing more often in their lives.

She said a letter from Haitham justified killing non-Muslims and encouraged Maher to join Jihad, and when Haitham was visiting their home, where the family lived in Memphis, in 1996, he wanted to watch the news one evening.

When the report aired about the attack at the Khobar Towers in Saudi Arabia in which 19 American military personnel died, he said, "We got them! The Americans … we got them. They think they are going to rule the world, but they do not know what it is to have war on their own soil, but pretty soon they will," she reported.

The next year when the family obtained a home computer, she started watching the communications through it, and eventually talked with the FBI. They asked her to continue monitoring those, and forward to them e-mails, telephone numbers and the like.

She said on Sept. 11, 2001, a few hours before the terrorism attacks, her husband's brother sent an e-mail announcing some of his friends were coming to the U.S., and they should be made to feel welcome.

When, at a dinner party, a guest remarked how difficult it was to bring items on airplanes because of the new security measures, her husband responded: "Don't worry. We will find another way to get them."

A short time later, he erupted in rage because she had been teaching French to a little Russian Jewish boy in their home. At that point he threatened to kill her with a poison other doctors wouldn't detect and announced he was Wahhabi Muslim, whose beliefs include violence against non-Muslims.

It was at that point an FBI agent convinced her to wear a recording device and monitor her husband's financial dealings, which included donations to a front group accused of raising money for Hamas, she said.

It was also then that he cut off financial support for his family and threatened to take the children to Syria, so she sought a restraining order. But a judge, Donna Fields, ordered the boys to spend every other Sunday with their father even though they pleaded not to.

FBI agent Jim Raddatz told her he suspected her husband of leading a double life – as a physician but also as terrorist financier with connections to a Florida organization that he was unwilling to discuss.

But then he also told her her husband had contacted the FBI and they were upset with him because he hadn't provided them with some information.

Ghawji also staged a campaign of rhetoric, condemning the U.S., Jews and Israel, and praising suicide bombers, and at one point looked her in the eyes and said if their children were not good Muslims, they would be better dead.

It terrified her, she said.

Her husband also had an affair, and possibly more, with a spokeswoman working for the Islamic Society of Central Florida, she said, when details of their actions were confirmed by a private investigator.

That organization, she said, tried to sponsor a fundraiser featuring Siraj Wahhaj, who is on the U.S. Attorney's list of potential co-conspirators to the 1993 bombing of the World Trade Center.

She alleges her husband told her for as little as $1,000 he could hire a "hitman" to kill her, and expressed pride in being a member of the Muslim Brotherhood.

Documents also show Haitham Ghawji has been linked to convicted felon Rafat Jamal Mawlawi, who also is connected to Enaam Arnaout. On April 4, 2005, the FBI conducted a raid on Mawlawi's residence, and the Memphis Flyer reported authorities finding a hidden stash of loaded weapons and ammunition clips, $34,000 in cash, two pictures of Mawlawi shouldering a rocket-propelled grenade launcher, a gruesome videotape of war casualties with Arabic text and more than 20 passports to Morocco, Syria, Iran, and other Middle Eastern countries.

In a "Government Evidentiary Proffer Supporting the Admissibility of Co-Conspirator Statements," on page 67, the U.S. Government indicated that "H. GHAWJI" was mentioned.

No spokesman for her husband, the courts, or the FBI could be reached for a comment over the New Year's Day holiday.

But just recently as allegations of terrorism connections were developing – and being substantiated, the judge sealed the court records in the two-and-a-half-year-old case, scheduled the hearing, allowed the lawyer to leave the case and took the unusual step of ruling that Mrs. Ghawji would not be allowed to bring her case in any other jurisdiction.

Klayman said from the appearance of government participation in the case, with FBI agents meeting with the judge, he contacted FBI general counsel Patrick Kelley with questions about what was going on, because of issues that include equal protection, due process and others.

Kelley's response to Klayman was that he should "do what you have to do," he said.

**Related special offers:**

"Muhammad's Monsters"

"Everlasting Hatred: The Roots of Jihad"

Definitive work on Mideast – available only here!

"Israel in Crisis"





| Help | Site Index | Customer Service |

Home | News | Public Notices | Name & Property Research | Marketing & Sales Lists | Home & Crime Reports | The Print E



Friday, Feb. 02, 2007

Thursday, Feb. 01, 2007

Wednesday, Jan. 31, 2007

Tuesday, Jan. 30, 2007

Monday, Jan. 29, 2007

Friday, Jan. 26, 2007

Thursday, Jan. 25, 2007

Wednesday, Jan. 24, 2007

Tuesday, Jan. 23, 2007

Monday, Jan. 22, 2007

10 Days Back

Return to Today's News

Go To Date:



Advanced Search



**DAILY DIGEST**
Wednesday
January 10, 2007

Vol. 122 | No. 7

Print | Front Page | Email This Story



## Chicago Real Estate Firm Buys Major Memphis Sites

Chicago-based HSA Commercial Real Estate has bought several prominent Memphis properties in a multi-million dollar deal with AMB Property Corp. The sale includes properties in Willow Lake Business Park and Corporate Park.

Details of the deal were not available by press time, but sale documents filed with the Shelby County Register of Deeds Office through Jan. 8 hint at specifics.

Five limited liability companies (LLCs) under HSA Acquisitions Inc. - a company that shares its address with the corporate headquarters of HSA Commercial Real Estate - paid $40 million to AMB Property II LP for properties at 3960-3984, 3900-3950, 4135-4163 and 4002-4040 Willow Lake Blvd. and 5146-5202, 5070 and 5250-5300 Raines Road in Willow Lake Business Park.

The same LLCs paid $13.1 million to AMB/Erie Local LP for 3635, 3696 and 3660 Knight Road, 4600 Cromwell Ave. and 5838 Advantage Cove in Corporate Park.

And one HSA-affiliated LLC bought property at 3900-3920 Outland Road for $300,000. That property is in Outland Business Center.

Representatives from AMB Property said the company is in a "quiet period" before the announcement of its fourth-quarter and full-year 2006 earnings. Those are scheduled to be released Jan.



For All Your Valentine's Da

**Daily Digest**

Select a date


EXHIBIT B

23 after the close of market. Calls to HSA were not returned by press time.

HSA Commercial Real Estate provides development, management, leasing and client services in retail, office, health care, industrial and mixed-use properties. The company has completed more than 7,500 real estate transactions valued at more than $2 billion in the last 25 years, according to its Web site. Besides its headquarters in Chicago, it has project offices in Wisconsin, Ohio, Florida, Georgia, North Carolina and Louisiana.

AMB Property Corp. is a publicly traded real estate investment firm (REIT) founded as an investment management business in 1983. The company focuses on major hub and gateway distribution markets throughout North America, Europe and Asia.

The Daily News will continue to cover this deal as more information becomes available.

*Rosalind Guy, Andy Meek and David Yawn contributed to this story.*

## Local Judge Named In TCJ Complaint

A complaint has been filed with the Tennessee Court of the Judiciary against Judge Donna M. Fields of the Circuit Court of Shelby County for the 30th Judicial District. Fields presides over Division 7.

Rosine Ghawji appeared before Fields on Jan. 2 in a divorce hearing and alleges that during the hearing, she was not allowed proper representation by a capable attorney.

Fields is alleged to have allowed Mrs. Ghawji's local Tennessee counsel to withdraw, without good cause, during the Christmas holiday period and just days before trial, according to a statement released by the Nashville office of The Klayman Law Firm, which is representing Ghawji in the complaint.

In addition, the release states, one of Ghawji's out-of-state lawyers was forced

to take the witness stand and divulge information about attorney-client communications during the hearing.

"To coerce the lawyer to testify, Judge Fields threatened him with fabricated criminal charges of kidnapping based on the simple fact that the Ghawji children had not gone to school that day," attorneys said in a statement.

Fields' office had received notice of the filing Tuesday afternoon, according to a court spokesman. But Fields could not comment about the action because the divorce case is still open.

Ghawji also alleges in the complaint that her husband, Maher Ghawji, a prominent Memphis endocrinologist, has terrorist ties, and that Fields acted improperly by excluding the terrorism issues from the Jan. 2 hearing.

Maher Ghawji could not be reached by press time.

Mrs. Ghawji further alleges that her husband has threatened to kill her and her two small boys if they do not abide by radical Islamic doctrine.

"All of this bears on issues of child custody, as Mrs. Ghawji fears for the safety of her children," attorneys said in the release.

"The compounding factor was that she was stopped from filing any complaints in other jurisdictions, which sort of limits her opportunities for having a judicial review outside of that court," said spokesman Russ Verney of The Klayman Law Firm.

As the next step in the process, Fields will be made aware of the charges against her and will be given a chance to respond.

"And the commission will determine if there's any need for further investigation beyond the information supplied by the parties and then the commission will decide if disciplinary action needs to be taken," Verney added.

The process is usually a lengthy one and details remain private until a decision has been reached, he said.

## CNL Buys Logan's For $3.6 Million

A Logan's Roadhouse Inc. property at 2710 N. Germantown Parkway has sold for $3.6 million to CNL Net Lease Funding 2003 LLC. The restaurant was built in 1997 on 2.41 acres on the east side of North Germantown Parkway in front of Wolfchase Galleria mall. The Shelby County Assessor's 2006 appraisal was $2.1 million. CNL financed the purchase with a $3.6 million loan through Wells Fargo Bank NA, with the loan having a maximum value of $4.5 million.

CNL Net Lease Funding is affiliated with Trustreet Properties Inc., a company formed by the merger of CNL Restaurant Properties, U.S. Restaurant Properties and 18 CNL income funds. In Orlando, Fla., Trustreet is now the largest publicly traded self-advised restaurant real estate investment trust (REIT) in the United States, according to the company. To learn more about REITs, see our Oct. 19 Law Focus at www.memphisdailynews.com.
*Source: The Daily News Online & Chandler Reports*

## Interim Restaurant to Open In Place of Wally Joe

Chef Wally Joe has left the restaurant bearing his name to pursue other interests, according to a statement.

Fred Carl Jr., founder and CEO of Viking Range Corp. in Greenwood, Miss., said Wally Joe Restaurant on Sanderlin Avenue will open under the new name Interim with a new staff later this month.

Messages left at Viking were not returned by press time.

"In preparation for its reopening, the restaurant will be closed for approximately two weeks beginning Jan. 8," Carl said in the statement.

In October, Joe joined the Brushmark Restaurant at the Brooks Museum of Art as executive chef.

In addition to the changes planned for

the restaurant, the business also is being offered for sale. And there are several interested prospects, both local and out of town, Carl said.

"Yes, the restaurant is for sale, but in the meantime we're going to have a little fun and operate the place under the name Interim," Carl said. "What better name for a restaurant being operated on an interim basis?"

The executive chef at Interim will be Jackson Kramer, who formerly worked at the restaurant under Wally Joe and chef de cuisine Andrew Adams.

Adams currently works alongside Joe at the Brushmark.

## Frick Named Market President For Bank of America

Bank of America has named Michael Frick market president for Memphis and surrounding communities. John Stein, Bank of America's Tennessee president, made the announcement Tuesday.

In his new position, Frick will act as the senior executive for business, civic and philanthropic leadership for Bank of America in Memphis.

"Mike is an experienced banker who will be an effective champion for business growth, community investment and neighborhood vitality in the Memphis area," Stein said in a statement. "Memphis is a key growth market for Bank of America and we are fortunate to have such a strong, proven leader like Mike heading our team locally."

Frick will continue to serve as a senior client manager in commercial banking, where he is responsible for business development and client strategies for commercial clients in Memphis, West Tennessee and Mississippi.

Frick has worked for Bank of America since 1980. Frick, 48, lives in Midtown Memphis with his wife, Elise Leffler Frick. He has lived in Memphis for more than 30 years. Throughout his career, Frick has held a number of leadership positions within the commercial banking

industry.

**Collection Drive Planned
To Honor Slain State Trooper**

WMC TV-5 and The Covington Leader are holding a collection drive in honor of slain Tennessee state trooper Calvin W. Jenks Thursday from 6 a.m. to 1 p.m. in the Covington Leader parking lot, 2001 U.S. 51 South in Covington.

Jenks was killed Saturday night during a traffic stop on a rural Tipton County road.

Two suspects, Alejandro Guana, 17, and Orlando Garcia, 19, were arrested in Nashville Sunday.

All money collected will go to the Trooper Calvin W. Jenks Memorial Fund. Money raised will support the establishment of a college scholarship in Jenks' name.

*This report compiled by Rosalind Guy with contributions from copy editor Kate Simone and reporter Amy O. Williams.*

Print | Front Page | Email This Story

Home | News | Public Notices | Name & Property Search | Marketing & Sales Lists | Home & Crime Re

Help | Site Index | Customer Service

Copyright ©1995-2006 by The Daily News Publishing Co. Inc. - All Rights Reserved -



# 90210.us

Enter your zip code

## Make your zipcode your home page!

America's Info

A Free Press
For A Free People

**World**

Founded 1997

Friday, February 2, 2007



WORLDNETDAILY EXCLUSIVE

**TRAIL OF TERROR**

## Complaint cites judge in terror-linked case

### Woman protecting sons from Islam charges divorce court rules broken

Posted: January 9, 2007
1:00 a.m. Eastern

© 2007 WorldNetDaily.com







Judicial ethics complaints are being filed against a Tennessee judge by a woman battling her Muslim husband in a divorce case she fears could leave her teen sons at the mercy of violent Islamic jihadists and by a lawyer who is acting as her general counsel.

The woman, Rosaline Ghawji, is seeking a divorce from her husband, prominent Memphis doctor Maher Ghawji, because she alleges he has "ties to terrorism [and] has threatened to kill her and her two boys if they did not abide by radical Islamic doctrine," according to a statement from her general counsel's office.

The statement from that office alleged Judge Donna Fields of Circuit Court in Shelby County for the state's 13th Judicial District "grossly violated" the Canons of Judicial Ethics.

A lawyer who was hired to take notes at her divorce trial also signed an affidavit after Judge Fields ordered him out of the audience and onto the stand to testify in the divorce case.

News Flashes

enter email address

GO



EXHIBIT

**WND** *Search*    **GO**
**WEB** *Search*    **GO**

WND Directory
Shop.WND
Page 1 News
Page 2 News
Commentary
G2 Bulletin
Daily Poll
WND Forums
Letters to the Editor
BizNetDaily
SportsNetDaily
TV Guide
Weather

*(Story continues below)*

Ads by Google                    Advertise on this site

**Coffee Exposed**
A secret that coffee co's don't want you to know.
www.consumertips.com

**Emergency Bulk Fuel**
Oil, Gasoline, Diesel, Kerosene Delivery, Disaster Recovery
Plans

**Ideas For Fundraisers**
Choose From Multiple Products - No Risk or Upfront Costs.
Start Now!

**Emergency Water Storage**
Cube® containers for safe drinking water collection &
dispensing.
www.cubeforwater.com



In her complaint, Mrs. Ghawji alleges the judge has improperly excluded terrorism issues from her trial, which started Jan. 2. As a result of a variety of influences, including that from the FBI which she said, "has likely turned her husband into an informant," her trial lawyer was allowed to withdraw "without good cause" so that she no longer effectively can present her case.

Even though the judge's ruling to let the lawyer go came just days before the trial, she said the judge refused to delay the hearing, and told her she must go forward, even without counsel.

Then Fields put one of Mrs. Ghawji's out-of-state lawyers on the witness stand, plucking him from the audience where he was taking notes, and ordering him to testify about attorney-client communications with Mrs. Ghawji, she alleged.

"To coerce the lawyer to testify Judge Fields threatened him with fabricated criminal charges of kidnapping based on the simple fact that the Ghawji children had not gone to school that day," the statement said.

"The attorney client privilege is the most sacrosanct of all client rights," the statement said, and the judge's conduct "warrants the most severe punishment."

Larry Klayman, the woman's private general counsel and Judicial Watch founder, said he was filing a complaint over the judge's alleged violations of the attorney client privilege with Mrs. Ghawji.



Like no other conference you've ever attended

Think of it as a World's Fair for news

NewsExpo 2007

WND Resources
About WND
WND SCOOPS
WND BOOKS
ADVERTISE with WND
Put WND headlines on your site

Sign up for WND Email Alerts
VOLUNTARY PAYMENT
Download to your PDA
US Newspapers
Foreign Newspapers

"This case is important to redress the culture of extrajudicial bias and prejudice that has pervaded this case and to set an example that the court system cannot be allowed to abuse client rights with impunity," the firm's statement said.

Mrs. Ghawji, a Christian woman who once served as an FBI informant on her husband's alleged support of terrorism, said she wants a divorce because her husband, a self-described radical Muslim, told her he would be proud if their sons blew themselves up for Allah.

Joe Kaufman, who has run an anti-terrorism organization for several years, noted that both of the Ghawji sons have, in e-mails and other communications, told friends their father was planning to take them to Syria against their will, and one noted that his grandfather has promised to beat him up when he arrived there.

If Mrs. Ghawji's allegations are correct, she is up against some of the most radical factions in the world today, including the adherents of blind Sheikh Omar Abdul Rahman, now serving a life sentence in the SuperMax prison in Colorado on accusations he helped in the planning of the 1993 World Trade Center bombings in New York.

She has said her husband's brother once bragged "we got them" when an explosion at the Khobar Towers in Saudi Arabia killed 19 Americans.

She also alleges her husband had an affair with a spokeswoman working for the Islamic Society of Central Florida.

That organization, she said, tried to sponsor a fundraiser featuring Siraj Wahhaj, who is on the U.S. Attorney's list of potential co-conspirators to the 1993 bombing of the World Trade Center.

Related special offers:

"Muhammad's Monsters"

"Everlasting Hatred: The Roots of Jihad"

Definitive work on Mideast – available only here!

Major News Wires
Other News Services
Other Sites
Writer Archives
Contact Government
Officials
Search Engines
Media
Entertainment

WND People
Contact WND
Who's Who at WND
Speakers & Talk Show
Guests
Columnists

"Israel in Crisis"

**Previous story:**

Christian woman facing fight for sons







Page 1 | **Page 2** | **Commentary** | **BizNetDaily** | **G2 Bulletin**





About Us | Terms of Use | Privacy | Contact Us

Copyright 1997-2007
All Rights Reserved.
WorldNetDaily.com Inc.