IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Larry Klayman,<br>        *Plaintiff,*<br><br>v.<br><br>Judicial Watch, Inc., *et al.,*<br>        *Defendants.* | Civil Action No. 1:06-CV-00670<br><br>Honorable Colleen Kollar-Kotelly<br><br>**Jury Trial Demanded.** |

*PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER*

Plaintiff, Larry Klayman ("Klayman"), by undersigned counsel hereby submits this memorandum of points and authorities in opposition to Defendants' Motion for Protective Order (the "Motion") and Proposed Protective Order (the "Protective Order"). For the reasons that follow, the Motion must be denied.

I.    **INTRODUCTION**

This case is about Defendants' multiple breaches of a Severance Agreement between Judicial Watch and its former Chairman, Klayman, about Defendants' false designation of Klayman's status which harmed Klayman, and about Defendants' deliberate defamation of Klayman thereafter and since. Plaintiff alleges in the Complaint, *inter alia,* that Defendants used a variety of methods, including smear tactics, coercion of its employees, newsletters, mailings and by other means, to willfully defame and mislead the public about Klayman.

Pursuant to this Court's May 9, 2007 Amended Scheduling Order, the parties timely served discovery. The parties timely served written responses on or about July 26, 2007, but notwithstanding the deadlines, Defendants refused to provide any substantive discovery responses. In the Motion, Defendants plainly admit that they withheld relevant discovery

396371-4

information, including substantive answers to interrogatories, and, to date, have refused to produce any documents. *See Def. Br.* p. 7. In their attempt to seek a global protective order, which would deny Klayman the ability to even examine discovery, Defendants have mischaracterized Klayman's discovery requests and failed to meet their heavy burden to establish just cause necessitating the onerous, if not unconstitutional, protective order attached to the Motion.

In the instant Motion, Defendants' proposed Protective Order is overly broad, seeks to deem **every** discovery response, **every** page of documentation and **even** documents otherwise available as proprietary and confidential. Moreover, the proposed Protective Order impermissibly seeks "attorneys eyes only" and prohibits Klayman, from even seeing any of the heretofore unserved discovery. *See Def. Order Granting Protective Order* ¶ 1. Under District of Columbia law, as well as fundamental principals of due process, such a protective order cannot be sustained in this matter.

First, Defendants admit the relevance of the discovery sought. Moreover, the Motion fails to articulate any justification in this case for such a broad order under the applicable law. To date, Defendants have refused to timely provide any substantive responses or documents which prejudices Plaintiff's case. Other than arbitrary reference in the Motion, Defendants have not even submitted a listing of those items or categories of items which are purportedly proprietary, thus precluding any meaningful discussion as to the subject matter of this Motion. Instead, Defendants seek a broad prohibition against <u>any</u> disclosures of discovery, for fear that Klayman, himself continuously an attorney in good standing of the District of Columbia bar since his admission in 1981, will abuse discovery. Not only is the Protective Order overbroad and unnecessary because there is no showing that the discovery sought is entitled to protection in

2

396371-4

this case, in fact, it is Defendants that have abused the presumptive public access to civil litigation to sully Mr. Klayman's reputation by filing a scandalous Amended Complaint, containing allegations that were recanted, and otherwise sealed, and not coincidentally, made by Mr. Klayman's ex-wife during contentious divorce proceedings.[1]

Defendants are impermissibly trying to have it both ways. They continue to harass Larry Klayman using the public's access to civil litigation and seek to inhibit his right to effectively and efficiently prosecute this case. While Defendants may disingenuously claim harm as a result of various claims, which they have brought upon themselves, including those of disaffected donors, any such harm is of their own doing and must not outweigh the legitimate public access to civil litigation.

Second, the general proposition that Klayman should be denied access to any discovery materials produced in this matter is absurd, outrageous and unconstitutional. Defendants purported reason is that Klayman will improperly use the discovery to harass Defendants outside of this litigation. Hypocritically, Judicial Watch is a 501(c)(3) public interest educational foundation, whose purported mission is to disseminate information to the public. There is simply no showing of any discovery abuse by Klayman in this or any other litigation. While counsel can certainly agree to protect any reasonably proprietary information produced in discovery, a blanket prohibition can not apply to the world and to Klayman in particular. Otherwise, this would work as a denial of due process rights in allowing Klayman to prosecute and defend himself in this case.

Accordingly, the Motion for Protective Order must be denied.

---

[1] These same irrelevant and harassing allegations were made in pleadings related to the matter captioned *Benson v.. Judicial Watch,et al.*, D.C. Superior Court, Civil Action No. 0000520-07. In *Benson*, the plaintiff claimed that Judicial Watch defrauded her by misusing a directed donation to a Building Fund. The matter was voluntarily dismissed by the plaintiff when, and only after, during the pendency of the action, Judicial Watch was effrectively forced to return the donation.

## II. LEGAL ARGUMENT

### A. Legal Standard

Rule 26 provides in pertinent part:

> (c) Protective orders.
>
> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, this Court … may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: …(5) that discovery be conducted with no one present except persons designated by the Court; … [and] (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way….

Fed. R. Civ. P. 26(c). "A court has substantial discretion in deciding to grant a protective order." *Seattle Times Co. v. Reinhart*, 467 U.S. 20, 36 (1984). Similarly, a court has substantial discretion in deciding to deny an unnecessary and inappropriate protective order. "Before a protective order may be entered, however, the party seeking it must make a showing of good cause, stating with some specificity how it may be harmed by the disclosure of a particular document or piece of information." *Mampe v. Ayerst Laboratories*, 548 A.2d 798 (D.C. App. 1998). "The burden then shifts to the party seeking discovery to establish that the disclosure is both relevant and necessary to the action. . . . To show necessity, the party seeking discovery must demonstrate that the information is necessary to the preparation of its case for trial, including proving its own theories and rebutting those of its opponent." *Mampe*, 548 A.2d at 804 (*citing Plough, Inc. v. National Academy of Sciences*, 530 A.2d 1152, 1155-1156 (D.C. 1987)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26 (c) test. . . . Moreover, the harm must be significant, not a mere trifle." *Id.*, at 805.

5

396371-4

"The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander v. FBI, et al.*, 186 F.R.D. 71 (D.D.C. 1998). "Indeed, the moving party has a **heavy burden** of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Id.*(emphasis added).

### B.  Scope of Klayman's Discovery

Here, Defendants concede that Plaintiff's discovery requests are relevant. *See Def. Br.* p. 7. At the same time, Defendants argue that Klayman's discovery is a fishing expedition. See Def. Br p. 8. In fact, the discovery sought is relevant and necessary to the preparation of Plaintiff's case. For example, and as highlighted in the Motion, Klayman's seeks the production of "[a]ny and all documents, including without any limitation financial records, that refer or relate to the collection and use of any funds donated in the fall and winter of 2003." *See Def. Br.* at Ex. 17, Request No. 9. Klayman seeks this information as to the false designation claim, specifically about fundraising efforts limited to late 2003 which falsely promoted Klayman's executive position at Judicial Watch following his voluntary separation to run for the United States Senate. The confusion in the public and to donors that Defendants created by this false designation would be evidenced, in part, by the results of Defendants' fundraising during that period. The documents sought are under the exclusive control of Defendants. Thus, the information is properly related to the claims and damages at issue in this litigation.

Additionally, Klayman seeks "[a]ny and all documents that refer or relate to the closing of Judicial Watch regional offices in Dallas, Texas, and Chicago, Illinois." *See Def. Br.* at Ex. 17, Request No. 16. Klayman also seeks "[a]ny and all documents that refer or relate to your

6

396371-4

decision to end the Judicial Watch Report on radio and television" *See Def. Br.* at Ex. 17, Request No. 17. This information is relevant and necessary to Klayman's claims of defamation. As alleged in the Second Amended Complaint, Defendants defamed Klayman in the media and elsewhere. The individuals, hired by Klayman to direct the Florida, Texas, California and Illinois Judicial Watch offices, as well as Judicial Watch Report were terminated after Klayman separated from Judicial Watch. Upon information and belief, the information sought can establish Defendants' heavy hand as to those individuals who would not "play ball" with Judicial Watch's defamation campaign against Klayman. As such, the information is, albeit indirectly, relevant and important to this litigation.

Moreover, none of the information sought is "a trade secret or other confidential research, development, or commercial information" protectable under Rule 26(c) in this matter.

    **C.**    **The Motion Fails To State Sufficient Cause For Protective Order**

The only questions before the Court are whether Defendants carried their heavy burden to show good cause stating other than broad allegations of harm in this case why protection is necessary when the information is not otherwise "a trade secret or other confidential research, development, or commercial information;" whether Klayman should be barred from even reviewing discovery designated as "Confidential;" and whether Defendants are entitled to the broad, onerous and unconstitutional provisions of its proposed Protective Order. The answer to each is an obvious and resounding no.

In the proposed Protective Order, Defendants seek a blanket prohibition against "disclosure" and in particular as to Plaintiff, Larry Klayman, of any and presumably all, of the discovery, written or otherwise, that Defendants, not coincidentally themselves deem to be "Confidential." However, Defendants failed to articulate any legitimate grounds for the broad

7

constraints required in the Protective Order to the documents or information, narrowly sought in order for Klayman to pursue his claims of false designation (Count Four), breach of contract – rescission (Count Six), breach of contract – damages (Count Seven), breach of contract – Specific Performance (Count Eight), and defamation (Count Nine).

The discovery seeks information, including answers to interrogatories and the production of documents narrowly crafted and related to Klayman's claims. **To date, Defendants have not produced a single document or substantive responses**. It is Defendants who have impeded discovery and sought to smear Klayman in pubically accessible pleadings, and in the media, in this and other matters. *See Pl. Motion for Sanctions*, Docket Document 64 filed June 11, 2007. Nor did Defendants engage in any meaningful discussion regarding which documents or information may be rightly protected. Aside from records reflecting donor lists, in which names can be redacted, and possibly certain, as yet unidentified, financial statements or records, nothing in the discovery requests seeks proprietary or otherwise protected commercial information. Contrary to Defendants' professed belief in open government, they apparently do not believe in these principals when they themselves are involved. Indeed, granting Defendants' onerous Protective Order will deprive Klayman the opportunity to prosecute or defend his case without seeing discovery, demonstrating bad faith in this litigation and that Defendants must have something to hide. As such, Defendants failed to carry their heavy burden to demonstrate sufficient cause for a protective order.

Notably, there is no showing anywhere in the Motion or its Exhibits that Klayman has or will engage in any discovery abuse in this or any matter. This is a case about Defendants' abusive tactics to undermine Klayman and to malign his reputation, personally and professionally, in the media and public at large, all in violation of the Severance Agreement.

8

The fact the Defendants may be alarmed by Klayman's allegations, given their past misconduct, does not entitle them to a Protective Order. Indeed, that Defendants may be held accountable by its donors and others if Plaintiff's allegations are proven, demonstrates a genuine need for public openness in this case, as opposed to good cause for a Protective Order.

Essentially, Defendants want to shield from the world potentially meritorious facts properly discovered in pursuit of Klayman's claims of false designation, defamation and breaches of contract. Instead of addressing the issue at hand: whether any of the documents or information can be reasonably deemed confidential and subject to a protective order, Defendants seek a blanket order because of their belief that Klayman will use the discovery to harm Defendants' reputation. This allegation is not meritorious and is particularly hypocritical in light of Defendants' scandalous proposed Amended Counterclaim where Defendants smear and harm Klayman's reputation by setting forth wholly irrelevant, salacious and false allegations about Klayman's divorce, which Defendants also broadcast and published to and in the media. As the Court is well aware, the improper and bad faith public disclosures of these allegations is also the subject of a motion for sanctions in this case.

That Defendants are also defendants in *Paul v. Judicial Watch, et al.*, Docket 07cv257 also in the United States District Court of the District of Columbia, as well as defendants in *Benson v. Judicial Watch, et als*, D.C. Superior Court, Civil Action No. 0000520-07 (voluntarily dismissed by plaintiff when Judicial Watch was effectively forced to return her donation of $15,000 during the litigation), is a non-sequitur for Defendants to allege that Klayman has or will engage in any abuse of discovery. Such speculative and generalized allegations of harm raised merely because other contentious matters are presently being litigated, and have been broadcast and published by Defendants in the media, are insufficient to meet the heavy burden show cause

9

396371-4

for purposes of establishing good cause for a protective order, which is nearly as draconian as a gag order.

Moreover, Defendants effectively seek to seal all further filings in this case by incorporation of the blanket Confidential stamp they would apply to every discovery response, document or deposition transcript in this case and bar public access to trial in this case. Such a veil of secrecy surrounding the claims of fraud in this matter is unjustified and ironic, given Defendants mission as a public interest group to promote openness and public accountability. Indeed, a review of Judicial Watch's website shows that the organization boasts of its open records projects and its role as an educational foundation, exempt from taxation as a result, to disseminate information to the public.

As such, there is simply no basis, nor showing of good cause for the proposed Protective Order in this case.

### III.   CONCLUSION

For all the foregoing reasons, Plaintiff, Larry Klayman, respectfully submits that the Motion must be denied.

Respectfully submitted,

s// *Daniel J. Dugan*_____
Daniel J. Dugan, Esquire
Spector Gadon & Rosen, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
Ph (215) 241-8888
Fax (215) 241-8844

*Counsel for Plaintiff Larry Klayman*

Dated: October 29, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October 2007, a copy of the foregoing Memorandum of Points and Authorities in Opposition to Motion for Protective Order was served by electronic means to:

>Richard Driscoll
>Driscoll & Seltzer, PLLC
>600 Cameron Street
>Alexandria, Virginia 22314

>s// *Daniel J. Dugan*_____
>Daniel J. Dugan, Esquire