IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, *ET AL*. | |
| Plaintiffs, | |
| v. | Civil Action No. 1:06-CV-00670 |
| | Honorable Colleen Kollar-Kotelly |
| JUDICIAL WATCH, INC., *ET AL*. | |
| Defendants. | |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton"), Paul J. Orfanedes, Esq. ("Orfanedes") and Christopher J. Farrell ("Farrell") by undersigned counsel, hereby submit the following Reply Memorandum in further Support of Defendants' Motion for a Protective Order.

**I.        Klayman's Opposition Perpetuates his Charade of Lies and Deceit**

Defendants offered to timely produce documents and answers to interrogatories if Plaintiff agreed not to use any discovery information outside of the litigation. Klayman refused. In doing so, he telegraphed that his intent was to use the information in his advertising campaign against the Defendants. Concerned that Klayman would continue to misstate the facts and spin the truth, Defendants filed this Motion.

Klayman's conduct in this litigation clearly demonstrates that he has no intention of proving up his case, but is merely using the litigation as a basis for his deceptive advertising campaign. Notwithstanding lengthy allegations in the Second Amended Complaint, Klayman

has not produced any discovery.[1]  Not only were Klayman's Answers to Interrogatories late, they contained no substantive information, not even an explanation or calculation of damages. Despite a cover letter stating that relevant documents would be produced, not a single sheet of paper has been produced by Klayman.  Despite the Defendants' good faith efforts to conduct discovery, Klayman has engaged in a game of "hide the ball".  While Klayman has not provided any discovery in this case, he did find the time to wage a campaign of lies and falsehood to destroy the Defendants' reputations in direct mailing/email and national advertisements.

## II.     Sufficient Cause Warrants the Need for a Protective Order

Defendants' seek a protective order to prevent Plaintiff from waging a deceitful public relations campaign based on improper use of proprietary information.  In a recent fund raising letter, Klayman writes:

> Now, poised to win our case against Fitton and retake Judicial Watch, I have created a legally separate "twin" public interest group, using the trademark Freedom Watch, to rekindle my corruption fighting efforts without wasting any time . . . Once we retake the organization, we will then combine the two for an even stronger public interest mission . . . .

*See* October 24, 2007, letter, attached hereto as Exhibit 1.  In addition, Klayman essentially admits that his purpose in pursuing the discovery is to publish the information to "the world". *See* Klayman's Opposition at p. 9.

Therefore, Klayman's conduct warrants the restriction that discovery be reviewed by Klayman's 'attorneys eyes only' "particularly where there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party." *See Alexander v. FBI, et al.*, 186 F.R.D. 54 (D.D.C. 1998) (prior and subsequent history on other grounds) (*citing Westside Marrero Jeep Eagle, Inc. v. Chrysler*

---

[1] Following the Court's Scheduling Conference, Defendants served written discovery on the Plaintiff long before the Plaintiff served discovery on the Defendants.

2

*Corp., Inc.*, 1998 U.S. Dist. LEXIS 5614, 1998 WL 186728 (E.D. La. April 17, 1998) (citing numerous cases)). Klayman's *savingjudicialwatch* campaign and *Freedom Watch* organization compete with Judicial Watch for donor support. This fact raises a need to prevent Klayman from obtaining proprietary information to use in competition with Judicial Watch. Further, Klayman's own prior conduct evidences his intent to use discovery from this case to publicly harm the Defendants. *See* Defendants' Motion for Protective Order ("Defendants' Motion"), Exhibit Nos. 1-4 and 5-13.

Arguing that he is a member in good standing with the District of Columbia Bar, Klayman asserts that he should be trusted to view the information. Regardless of his standing as an attorney in this jurisdiction, Klayman's credibility has been strongly questioned by various Courts. In fact, the Supreme Court of the State of New York denied Plaintiff *pro hac vice* admission based on a history of disregard for the judicial process citing to seven prior incidents. *See* Defendants' Motion, Exhibit No. 16. When Klayman's disregard for the judicial process is considered in light of his own written word, there is ample basis for the proposed protective order. *See Id.*

Without citing to any authority, Klayman objects to an "attorneys' eyes only" limitation contending that it would negate his due process rights. However, Plaintiff is represented by able counsel in this litigation. As such, a prohibition requiring "attorneys' eyes only" for discovery would hardly harm Plaintiff's 'due process' rights. Moreover, the public does not possess a constitutional right to examine information produced in discovery.

Defendants have demonstrated that Judicial Watch and Fitton continue to suffer as a result of Klayman's conduct in using material from the litigation as material for his distorted fund raising campaign for his competing organizations. *See* Defendants' Motion, Exhibit Nos. 5

– 12. This crusade has resulted in a decline in donations to Judicial Watch. Moreover, Klayman's distortions have influenced former supporters to pen slanderous and demeaning notes to Mr. Fitton. *See id*. Based on the continuing harm, there is substantial good cause to enter the requested protective order.

### III. Plaintiff's Lack of Recognition of his Duty of Loyalty to a Former Client Further Evidences Plaintiff's Intent to Harm Defendants

Klayman's Opposition completely ignores his obvious ethical violations. From 1998 through September 19, 2003, Klayman was General Counsel and Treasurer of Judicial Watch. Undeterred by the requirements of Rules 1.6 and 1.9 of the District of Columbia Rules of Professional Conduct, Klayman directly represents and represented parties in litigation against his former client since leaving Judicial Watch without the consent of Judicial Watch. *See* Louise Benson, *et al*. v. Judicial Watch, *et al*., Civil Action Civil Action No. 0000520-07, Superior Court of the District of Columbia; *see also* Sandra Cobas v. Judicial Watch, *et al.*, Case No. 05-17413 (Miami-Dade Co. Cir. Ct.). This conduct shows that Klayman will not be deterred by any order of this Court and information should only be viewed by his attorney.

Peter Paul, a former client of Judicial Watch, filed suit against Judicial Watch regarding events that transpired during Klayman's tenure as General Counsel. *See* Complaint in *Peter F. Paul v. Judicial Watch*, Case No. 1:07-cv-00279-RCL (D.D.C.). Defendants were unaware that Plaintiff maintained a formal attorney/client relationship with Peter Paul until recently. Plaintiff objected to producing a Response to Defendants' document request regarding Peter Paul on the grounds of privilege. *See* Plaintiff's Responses to Document Request No. 12, attached hereto as Exhibit No. 2.

Klayman's legal representation of Louise Benson,[2] Peter Paul and Sandra Cobas are

---

[2] To set the record straight, the Benson case was dismissed with prejudice after Defendants refused to agree

4

further evidence of his lack of respect for the judicial process or the ethical limits placed on an attorney. In addition, they are clear evidence of Klayman's intent to harm the Defendants in any way that he can.

## IV. The Scope of the Discovery

The scope of information requested by Klayman includes donor information, personnel files, financial information, direct mailing methods, success rates, etc. Such information is not known to the public and has independent economic value. As such, the information constitutes proprietary and confidential information that would harm the organization if a competitor were to learn its content.

Klayman devotes a substantial portion of his Opposition to a discussion of relevance. However, Defendants do not object to producing relevant information[3] provided there is a Protective Order limiting the dissemination and use of discovery information as requested for litigation only. The dispute here is not whether the information is relevant, but whether Klayman may use the information outside of the litigation.

It is Klayman who has failed to produce any documents or provide substantive Answers to Interrogatories. Even so, Defendants filed *timely* Answers and Responses to Klayman's Requests but indicated that substantive document production would be withheld until a protective order was in place. Klayman refused to even engage in negotiations for a protective order. Efforts to contact Klayman's counsel were completely ignored. Indeed, until Defendants served subpoenas on several third-party witnesses (who will support Defendants' counterclaims),

---

to a voluntary dismissal without prejudice on the eve of oral argument for Judicial Watch's Motion to Disqualify Klayman as her counsel due to several ethical infractions. To avoid the hearing, and inevitable embarrassment, Klayman's client capitulated and dismissed her case with prejudice. The donation had been returned to Benson months earlier.

[3]    Not all information requested by Klayman is relevant to this litigation. Defendants timely responded to the discovery requests and interposed several objections. Klayman has never objected to the limitations framed by Defendants' objections to the discovery. To the extent that information is not objected to in the responses, Defendants agree that it is relevant to the allegations under Rule 26.

5

Klayman's counsel made no effort to negotiate a protective order.

## **CONCLUSION**

Defendants are willing to produce relevant information in response to discovery requests, but request that the Court first grant this Motion. Klayman's discovery requests seek primarily proprietary information. Moreover, by opposing a protective order limiting use of the information to this litigation, Klayman tacitly admits his intent to use the discovery, not for purposes of this litigation, but for use in his publicity efforts. Accordingly, the only limitation that will protect the Defendants is one that imposes a limit on dissemination of discovery to be for "attorneys' eyes only".

Klayman's own conduct discloses his intent to misuse discovery in this case. Substantial cause exists for a restriction of review to "attorneys' eyes only" as Klayman's conduct demonstrates that he will not abide by reasonable restrictions. The Protective Order will ensure that Defendants do not suffer *irreparable* harm, while ensuring that Klayman may pursue his causes of action, if genuine. *Alexander, et al. v. FBI, et al.*, 186 F.R.D. at 54.

WHEREFORE, for all of the forgoing reasons, Defendants Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes and Christopher J. Farrell respectfully request that the Court GRANT this Motion and enter a Protective Order limiting the information produced and maintaining the integrity of any information produced in discovery by prohibiting dissemination of such information to persons not directly involved in this litigation, including for any advertising purposes.

Respectfully submitted,

/s/
_____
Richard W. Driscoll (436471)
Juli Haller Simonyi (466921)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com
jhaller@driscollseltzer.com
*Counsel for Defendants Judicial Watch, Inc.,
Thomas J. Fitton, Paul J. Orfanedes and
Christopher J. Farrell*

Dated: November 5, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of November 2007, a copy of the foregoing Reply Memorandum was sent via electronic means to:

Daniel J. Dugan, Esq.
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
215.241.8844 Facsimile

/s/
_____
Richard W. Driscoll