IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                          |                                                      |
|------------------------------------------|------------------------------------------------------|
| LARRY KLAYMAN, *ET AL*.                  |                                                      |
| Plaintiffs,                              |                                                      |
| v.                                       | Civil Action No. 1:06-CV-00670                       |
|                                          | Honorable Colleen Kollar-Kotelly                     |
| JUDICIAL WATCH, INC., *ET AL*.           |                                                      |
| Defendants.                              |                                                      |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENAS OR, ALTERNATIVELY FOR PROTECTIVE ORDER**

Defendants Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton"), Paul J. Orfanedes, Esq. ("Orfanedes") and Christopher J. Farrell ("Farrell") by undersigned counsel, hereby submit the following Memorandum in opposition to Plaintiff Larry Klayman's ("Klayman") Motion to Quash Subpoenas or, Alternatively for Protective Order, and state as follows:

**INTRODUCTION**

Klayman seeks to bar Defendants' fundamental right to obtain discovery by nothing more than making general assertions in support of a Motion to Quash. Klayman makes only vague allegations in support of claims of impermissible infringement of proprietary information and irrelevance. Klayman once again attempts to block Defendants' good faith efforts to discover evidence that proves that Klayman's claims fail and supports Defendants' counterclaims. One would imagine that Klayman would try to seek such documents to defeat Defendants' affirmative defenses and to prove his purportedly non-libelous conduct.

Klayman puts at issue a Severance Agreement with Defendant Judicial Watch and alleges

claims relating to breach of contract, defamation and trademark infringement. *See* Pl.'s Am. Compl. Defendants not only deny Klayman's allegations but counterclaim against Klayman for breach of contract and trademark infringement. Pursuant to these claims, Defendants' served four subpoenas (collectively, "Subpoenas") to entities Klayman retained after leaving Judicial Watch in connection with his fundraising, marketing and advertising efforts. Subpoenas were issued to American Target Advertising, Inc. ("ATA"), Chester Mailing List Consultants, Inc. ("Chester"), Response Unlimited ("Response") and Diener Consultants, Inc. ("Diener").

Klayman now, in the alternative, seeks a possible protective order, yet only recently filed an Opposition to Defendants' Motion for a Protective Order after refusing to confer with Defendants prior to the Motion seeking a Protective Order.[1]

## ARGUMENT

### A. DEFENDANTS CAN SHOW SUBSTANTIAL NEED FOR THESE DOCUMENTS PRECLUDING A MOTION TO QUASH

In the Memorandum supporting his Motion to Quash the Defendants' subpoenas, Klayman explains why responsive documents are highly relevant and substantially necessary to both Defendants' Counterclaims and Defenses. The U.S. Supreme Court recognized that, "there is no absolute privilege for trade secrets and similar confidential information." *Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979). "[Q]uashing a subpoena goes against courts' general preference for a broad scope of discovery." *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). The Supreme Court has also recognized that "orders forbidding any disclosure of trade secrets or confidential commercial information are rare." *Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 n. 24 (1979). Rule 45 (c)(3)(B) of the Federal Rules of Civil Procedure allows a subpoena requesting disclosure of

---

[1] The Defendants filed a Motion for a Protective Order on 10/16/07, which Klayman Opposed on 10/29/07, and is currently pending before this Court.

trade secret or confidential commercial information to be quashed unless the party serving the subpoena can show a substantial need for the requested discovery.

Paragraph 4 of the Severance Agreement executed, which Klayman executed and is at issue in this case, contains a Confidentiality Provision. *See* Defs.' Answer Countercl. Ex. 1. Defendants contend in Count VIII of their Counterclaims that Klayman violated the confidentiality provision of the Severance Agreement by approaching ATA, a direct mail marketing company that previously had managed Judicial Watch's direct mail fundraising campaigns, to obtain and use for his U.S. Senate campaign proprietary, Judicial Watch donor names, addresses, and other information. Specifically, based on his tenure at Judicial Watch, Klayman knew that he could access Judicial Watch donor names, addresses, giving history, and other information through ATA by contracting with the direct mail marketing company and having it apply certain "list selects" and/or selection criteria to its master list file, which also is known as the "Viguerie Master File" and/or the "Viguerie Combined Master File." Judicial Watch also asserts that, after losing the U.S. Senate primary, Klayman used this same information to compete with Judicial Watch as "Freedom Watch" and/or "Saving Judicial Watch."

Contrary to Klayman's allegations, Defendants made no requests for the identity of any specific donors or other confidential donor information. *See* Pl.'s Mot. Mem. at pp. 4, 5 and 8. Instead Defendants focus their requests on information such as agreements between Klayman and the subpoenaed entities; communications between Klayman and the subpoenaed entities; and information as to the list selects/orders though which Klayman was able to obtain name, address and other proprietary information about JW donors. *See* Ex. 1, copy of Defs.' Docs. request to ATA; *see* Ex. 2, copy of Defs.' Docs. Request to CMLC. It should be noted that there is an

3

important difference in "list selects/orders," which Defendants subpoenaed, and donor information, which Klayman erroneously suggests Defendants seek. *See* Pl.'s Mot. Mem. at pp. 4, 5 and 8. List selects/orders are merely instructions or directions applied to a master file database to cull out certain desired data -- the names, addresses, and other information about Judicial Watch donors. List selects/orders are not the names, addresses, and other information themselves.

In fact, Klayman concedes that,

> Klayman hired ATA, and later Diener and Response, to provide services in the preparation of Klayman's letters that are mailed nationally, or for advertising, respectively. Specifically Klayman provided to ATA and Response content intended for Klayman's direct mail marketing program. ATA and Response provided other services, including printing, list rental and mailing on behalf of Klayman. Also, Klayman contracted ATA and Response in connection with his marketing activities. ATA and Response sent out Klayman's direct mail and in return, ATA and Response were paid for their services. Additionally, Klayman contracted with ATA and Response in connection with the receipt of funds generated by Klayman's marketing efforts, as well as the data analysis associated with these efforts.

*See* Pl.'s Mot. Mem. at p. 2. Klayman likewise concedes, "The lists were rented by Klayman from Response Unlimited and ATA, and **tailored** pursuant to Klayman's direction." *Id.* at p. 12 (emphasis added). Klayman's admission that he used these entities for his mailings certainly confirms Defendants' legal theory and highlights their need and right to obtain discovery from the subpoenaed entities.

An article written by David Corn for *The Nation* magazine on March 29, 2004 further confirms Judicial Watch's claim and highlights the Judicial Watch's need for discovery it seeks from the subpoenaed entities:

> "In the first three months of Klayman's campaign, he raised $610,555, mostly through direct-mail fundraising conduced by Vigueries's American Target Advertising, according to Federal

4

> Election Commission records. In this period, Klayman paid ATA $577,358. That is, the revenue barely covered the direct-mail costs . . . And a report prepared in late January by ATA noted that the Klayman campaign had sent out slightly more than 1 million pieces at a cost of $730,315 and brought in $703,155. **Viguerie was using an assortment of conservative mailing lists, yet Klayman was scoring reasonably well mainly with those from Judicial Watch, according to ATA records.** These Judicial Watch lists, though, were several years old . . . ."

*See* David Corn, *The Nation*, March 29, 2004, attached hereto as Ex. 3 (emphasis added).

Nevertheless, Klayman seeks to prevent Defendants' from obtaining this obviously important discovery, which includes: communications by and between Klayman and said entities and any third parties; agreements between Klayman and said entities; bills and invoices; list orders or "list selects"; and accountings of the results of any direct mail campaign. *See* Ex. 1 and 2. Due to their nature, the majority of these requests does not even fall within the definition of a "trade secrets" and cannot be the subject Klayman's Motion to Quash. Nonetheless, the subpoenaed documents are central to the Defendants' claims (which Klayman partially concedes) and evidence Klayman's use of confidential and proprietary information in violation of his Severance Agreement. Certainly, Judicial Watch should have an opportunity to examine relevant information related to this claim.

      B.     <u>PLAINTIFF FAILS TO SHOW UNDUE BURDEN OR IRRELEVANCE</u>

Klayman cannot meet the burden necessary to argue that Defendants' subpoenas overburden the subpoenaed entities. Therefore, the Motion lacks any merit. "The federal courts reject out of hand claims of burdensomeness which are not supported by a specific, detailed showing, usually by affidavit, of why weighing the need for discovery against the burden it will impose permits the conclusion that the court should not permit it." *Natural Resources Defense Council v. Curtis*, 189 F.R.D. 4, 13 (D.D.C. 1999). Klayman fails to cite to any specific basis to support this argument. *See* Pl.'s Mot. at p. 7.

Undue burden is determined by reference to factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (*citing Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 206-207 (D.D.C. 2000)). Indeed, "the party opposing discovery must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome." *Pleasants v Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002). Klayman once again fails to make any such showing.

Instead Klayman cites to *Linder v. Calero-Portcarrero*, 180 F.R.D. 168 (D.D.C. 1998). In *Linder*, the CIA estimated that compliance would entail 1,000,000 pages of records and over 27 man-years of effort. In the case at bar, Defendants' requests are relevant, quite descriptive and limited to those organizations that Klayman used to solicit donations. By his own admission, the solicitations occurred immediately before and continued after his departure from Judicial Watch. Klayman had access to Judicial Watch selection criteria when his relationships were established. The requests are limited to the time period immediately preceding and subsequent to Klayman's departure from Judicial Watch. Therefore, Defendants have not triggered any grounds for quashing their request.

Klayman's own argument acknowledges the relevance of Defendants' requests, but then seeks to block the most relevant documents from production. Klayman argues that "while the aggregate amounts and numbers of respondents may be arguably relevant to claims of infringement and non-competition, Klayman's marketing and fundraising selection criteria, master and specific lists containing private information about direct mail respondents, and bills and invoices are not relevant." *See* Pl.'s Mot. Mem. at p. 11. As support for this argument,

6

Klayman cites *Unites States CFTC v. Whitney*, 441 F. Supp.2d 61 (D.D.C. 2006). *See* Pl.'s Mot. Mem. at 9. In *Whitney*, the Court permitted the production of certain spreadsheets despite the applicability of the reporter's privilege. However, the Court permitted redaction of the names of companies unrelated to the proceedings because this information failed to "go to the heart of the matters" and required to overcome the reporter's privilege.

*Whitney* is distinguishable from this case in several ways. Here, there is no applicable privilege to overcome. Instead, the requested information "goes to the heart of the matters". The documents sought relate to advertising campaigns, marketing and fund raising activities following Klayman's departure from Judicial Watch and will show Klayman's on-going violations of the Severance Agreement's confidentiality provision. Moreover, in *Whitney*, the production was still allowed with minor redactions.

In essence, Klayman has not supported any basis for establishing confidentiality or proprietary status. He fails to cite a legal basis for privilege or other legal presumption that must be overcome. Indeed, Klayman essentially concedes the information's relevance to Defendants' affirmative defenses and counterclaims. Klayman also asserts a violation of the right of free association pursuant to the First Amendment and/or a violation of confidentiality arising from the work product privilege. *See* Pl.'s Mot. Mem. at pp. 8 and 10. Neither of these doctrines applies to the requested discovery. By Klayman's own admission, he contracted for services during the time period for which the requests are made. Moreover, his requests were not made as legal counsel "in the anticipation of litigation". Finally, Defendants made no request for the identity of private donors, which could raise privacy concerns.

## CONCLUSION

Klayman's effort is a transparent attempt to block Defendants' legitimate right of

discovery. At every opportunity, Klayman does all he can to increase the cost of this litigation without ever allowing the merits to be examined. Klayman argues that such discovery is irrelevant and over burdensome while failing to supply any specific grounds to support his claims. This is merely yet another act of delay. Remarkably, Klayman now requests a protective order in the alternative, while opposing the Defendants' request for a protective order, which is currently pending before the Court.

Klayman admits that he used the subpoenaed entities for his advertising, marketing and fund raising efforts following departure from Judicial Watch, which makes the relationship relevant to Defendants' counterclaims for violations of the Severance Agreement. Nevertheless, Klayman attempts to thwart Defendants from obtaining discovery to show that Klayman breached the subject Severance Agreement. Klayman's Motion fails to even establish a basis for a protective order.

WHEREFORE, for all of the forgoing reasons, Defendants respectfully request that the Court DENY Plaintiff's Motion to Quash.

Respectfully submitted,

/s/
_____
Richard W. Driscoll (436471)
Juli Haller Simonyi (466921)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com
jhaller@driscollseltzer.com
*Counsel for Defendants Judicial Watch, Inc.,
Thomas J. Fitton, Paul J. Orfanedes and
Christopher J. Farrell*

Dated: November 19, 2007

## REQUEST FOR ORAL ARGUMENT

The Defendants, pursuant to L.R.Cv.P. 7(f), respectfully request the Court hear Oral Argument on this Motion.

/s/
_____
Juli Z. Haller Simonyi

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of November 2007, a true copy of the foregoing Opposition to Motion to Quash was sent via e-mail, to:

> Daniel J. Dugan, Esquire
> Spector, Gadon & Rosen, P.C.
> Seven Penn Center
> 1635 Market Street, 7th Floor
> Philadelphia, PA 19103

/s/
_____
Juli Z. Haller Simonyi