IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, *et al.*, | Civil Action No. 1:06-CV-00670 |
| *Plaintiffs*, | |
| v. | Honorable Colleen Kollar-Kotelly |
| JUDICIAL WATCH, INC., *et al.*, | **Jury Trial Demanded** |
| *Defendants*. | |

### *PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENAS, OR ALTERNATIVELY FOR PROTECTIVE ORDER*

Plaintiff, Larry Klayman, by undersigned counsel, hereby submits the following Reply Memorandum in support of the Motion to Quash Subpoenas or, or alternatively for Protective Order and says as follows:

**I.     ARGUMENT**

In the Opposition, Defendants argue that their basis for issuing four subpoenas (collectively "Subpoenas"), is that Klayman violated the Severance Agreement's confidentiality and non-competition provisions.  The Motion to Quash Defendants' Subpoenas to American Target Advertising, Inc. ("ATA"), Chester Mailing List Consultants, Inc. ("Chester"), Response Unlimited ("Response") and Diener Consultants, Inc. ("Diener") should be granted because Defendants failed to establish the relevance of overly broad information sought in the Subpoenas to the claimed of violations of the Severance Agreement.

Defendants proffer the suggestion that Klayman must have used "Judicial Watch" information to generate "Judicial Watch" mailing lists, even though services creating direct mail

407199-5

lists were and are available from third parties for use in advertising and marketing.[1] Specifically, list selection criteria is not identified as Confidential Information under the Severance Agreement. As such, this information, requested in the Subpoenas, is not relevant to any issue related to contractual violations of confidentiality. In addition, all of the information requested in the Subpoenas is in fact grossly overbroad as to time with regard to non-competition because this provision expired in September 2005. Further, and contrary to Defendants' allegations, each of the requests tend to concern, reveal and implicate detailed, proprietary and confidential information belonging to Klayman and non-parties, including donor names, and other information about Klayman's fundraising which is clearly not relevant to liability for the contractual violations alleged. Indeed, the Subpoenas reflect Defendants' desire to further harass Klayman, by forcing disclosure of confidential, trade secret proprietary information from non-parties. Accordingly, the Motion must be granted.

      A.     Defendants Failed To Establish Relevance For Documents Sought In The Subpoenas

The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1). *Eisemann v. Greene*, 1998 U.S. Dist. LEXIS 4591, *4 (S.D.N.Y. 1998) (granting motion to quash on ground that requested information was of "doubtful and tangential relevance"); *Cofield v. City of LaGrange*, 913 F. Supp. 608, 614 (D.D.C. 1996) (court has authority to enforce broad relevancy standard against subpoena under Fed. R. Civ. P. 26(b)); *Sierra Rutile Limited v. Katz*, 1994 U.S. Dist.

---

[1] Defendants continue to proffer they were and continue to be harmed by Klayman's marketing efforts. *See Motion to Amend Pleadings Def. Prop. Am. Counterclaim (DE at ¶ 67) and Motion for Protective Order (Def. Memo. of Pts. and Auth. DE 73 at* p.8). However, Defendant's recent newsletter to donors states that "Judicial Watch Finishes 2006 on an Upswing" and charts that donations are up. A copy of an excerpt from the Judicial Watch Newsletter, Verdict, dated June 2007 is attached hereto as Exhibit "A." Taken together with the pleadings in this case, Defendants are either lying to their donors or to the Court.

LEXIS 6188 (S.D.N.Y. 1994) (citing 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2457 (1971)).  Fed. R. Civ. P. 45(c)(3)(B)(i) allows the court to quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information. *Sierra Rutile Limited*, supra, at *2.

In the Opposition filed by the Defendants, the basis cited for the purported need for the voluminous and irrelevant documentation sought in the Subpoenas is the allegation that "Klayman violated the confidentiality provision of the Severance Agreement by approaching ATA, a direct mail marketing company that previously had managed Judicial Watch's direct mail fundraising campaigns, to obtain and use for his U.S. Senate campaign proprietary, Judicial Watch donor names, addresses and other information." *See Def. Br.* at p.3.  In addition, Defendants allege that after failing to win the U.S. Senate primary, Klayman "used this same information to compete with Judicial Watch as 'Freedom Watch' and/or 'Saving Judicial Watch'."  *See Id.*

The confidentiality clause in the Severance Agreement does not govern property owned by third parties, including ATA and the other Subpoenaed entities.  *See Second Amended Complaint* Ex. A. ¶ 4.  Essentially, Defendants argue that Klayman must have violated the confidentiality provision in the Severance Agreement because he allegedly used the Viguerie Master File and/or the Viguerie Combined Master File, and/or other in-house master lists.  Defendants attempt to distinguish this mere access to independent lists not owned by Judicial Watch and which were independently generated by alleging that Klayman improperly provided a set of list selection criteria that somehow magically yielded the "names, addresses and other information" about Judicial Watch Donors.  *See Def. Br.* p.3.  Even if true, it is not surprising that any overlap could have occurred between Judicial Watch donors and Klayman's U.S. Senate campaign donors.

3

Only one or two agencies exist that provide direct mail goods and services to conservative, mostly non-profit organizations. One of these agencies, American Target Advertising, Inc. (ATA), served Objections to the Subpoenas. True copies of the Objections of ATA to Subpoena and Request for Documents dated November 6, 2007 and November 8, 2007 are attached hereto as Exhibit "B" and "C" respectively. Of course, Klayman consulted with the Subpoenaed entities regarding fundraising activities, and thereby obtained an interest in the course and results of such activities, as do other third parties who engage with, for instance, ATA. However, as stated in the Objections, it was ATA who provided services such as "identifying certain lists and list selects to which mailings should be sent…." *See* Ex. B, ¶ 1.[2] The fact that Klayman engaged these entities to provide direct mail services does not confirm much more show or even suggest with any specificity theoretical violations of the confidentiality or non-competition provisions in the Severance Agreement. This is a straw argument because Klayman could not directly access any Confidential Information, as that term is defined in the Severance Agreement, such as an alleged donor or client list or donor or client data of Judicial Watch, and Judicial Watch did not provide it to Klayman or ATA.

There is nothing in the Severance Agreement which precludes Klayman from using his experience and services from vendors in conservative fundraising circles, which own their own lists to cull conservative donor names from commercially available direct mail list sources, such as the Subpoenaed entities. The core donors are similar, even though the donor lists are owned by entities other than Judicial Watch.

In support of their Opposition, Defendants cite to an article by David Corn in *The Nation* magazine from March 29, 2004 in support of their contention that Klayman somehow absconded

---

[2] Similarly, Response and Diener did not have access to any information from Judicial Watch and operated from

4

407199-5

with Judicial Watch's donor lists upon separation.  Corn merely pointed out that according to ATA records, in 2004, Klayman scored reasonably well with conservative donors, who were also donors to Judicial Watch, although the lists were several years old.  Corn also claimed, without basis, that Klayman had sent out more than 1 million pieces of direct mail.  As a candidate for the Republican nomination, Klayman sent mail to conservatives and Republicans in Florida and nationally.  Defendants fail to show how this information has relevancy to whether Klayman violated the Severance Agreement.

Despite Defendants allegations that the information sought is not properly classified as trade secrets or otherwise protected from discovery, in the Objections, ATA spelled out the proprietary, commercial and confidential nature of the list selection, and other information sought.  According to ATA, "the methods by which ATA selects lists and uses components or list selects within such lists is vital to its business model….  The methods and criteria by which ATA identifies, researches and develops lists and list selects are trade secrets…." *See* Ex. B at ¶¶ 2-3. Further, the subpoenaed reports or data compilations related to respondents or other fundraising efforts are Klayman's property and not subject to disclosure by these non-party.

Moreover, nowhere in the Severance Agreement is Klayman prohibited from fundraising on his own behalf, or competing with Judicial Watch following two (2) years after the execution of the Severance Agreement, or September 9, 2005.  Each and every document request in the Subpoenas seeks information beyond this date and therefore every request is overbroad as to non-competition.  It should be noted that Klayman's run for the U.S. Senate cannot reasonably be read as directly competing with Judicial Watch.  Indeed, the Severance Agreement limits 'competition' within the meaning of the non-competition clause to any ethics, anti-corruption, public integrity

---

Klayman's post-separation proprietary information.

5

407199-5

and government accountability watchdog or similar public interest or educational groups that do what Judicial Watch purports to do. *See Second Amended Complaint* Ex. A. ¶ 5(B)(i). Accordingly, Klayman's Senate campaign was expressly not in violation of the non-competition clause, and thus no relevance to the requested information. Any other activities conducted by Klayman after the non-competition provision's September 2005 expiration date is also clearly not relevant to this claim. Thus, since each request calls for documents after September 2005 to be produced, such requests must be limited accordingly on the basis of contractual non-competition.

    B.    <u>Defendants Failed To Establish Substantial Need For Documents Sought In The Subpoenas</u>

Rule 45 provides that a court shall quash (or modify) a subpoena if it "subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iv). Whether a subpoena subjects a witness to undue burden generally raises a question of the subpoena's reasonableness, which "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004)(*quotiong* 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2463 (2d ed.1995)). "[T]his balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source.".

In Lanham Act cases, the names of the defendant's customers or clients are generally not revealed. *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp.2d 1, 61-62 (D.D.C. 2006); *See, e.g., Foxworthy v. Sun Art Designs, Inc.*, 1997 U.S. Dist. LEXIS 6411 (S.D. Fla. 1997) (where the court precluded discovery of customer lists when the plaintiff claimed, as here, it wanted to interview customers to discover evidence of confusion, and finding, inter alia, that

any evidence of confusion acquired after prompting would be hearsay and lack foundation); *Sunkist Growers, Inc. v. Benjamin Ansehl Co.*, 229 U.S.P.Q. 147, 149 (T.T.A.B. 1985) (noting that "[t]he Board fails to see that whatever need opposer may have for such names . . . outweighs the possible harm, such as harassment of its customers, which might result to applicant").

Also, in the case at bar, the allowable scope of discovery must also be viewed in the context of the associational privilege under the *First Amendment*. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538 (11th Cir. 1985); *Marshall v. Bramer*, 828 F.2d 355 (6th Cir. 1987); *Anderson v. Hale*, 2001 U.S. Dist. LEXIS 6127 (N.D. Ill. 2001). "The *First Amendment* associational privilege emerges when a discovery request specifically asks for a list of a group's anonymous members, or requests any similar information that goes to the heart of an organization's associational activities, and such disclosure could arguably infringe upon associational rights." 2001 U.S. Dist. LEXIS 6127, at *9. Moreover, detailed information, such as names and financial information related to donor or client lists, is protected under these privacy and associational rights. To the extent a credible showing of need is made – which Defendants clearly have not--- aggregate information only may be produced. *Klayman v. Freedom's Watch, Inc.* 2007 U.S. Dist. LEXIS 83653 (S.D. Fla. 2007).

Notwithstanding the irrelevant and voluminous nature of most of the documents requested in the Subpoenas, Defendants claim that Klayman failed to establish undue burden. Essentially, Defendants claim that documents related to Klayman's fundraising and advertising efforts go to the "heart of the matters" related to alleged violations of the Severance Agreement. *See Def. Br.* ¶ 7. There is no substantial need demonstrated since Defendants recently served an additional sixty (60) document requests to Klayman, and incorporated, in part, all of the document requests

407199-5

contained in the Subpoenas, but directed to Klayman. A true copy of the Supplemental Requests for Production are attached hereto as Exhibit "B." To the extent documents are relevant and not otherwise objectionable to the claims of violations of the Severance Agreement, including confidentiality and non-competition, such documents are available from Klayman. Therefore, substantial need is lacking since the information sought in the Subpoenas are otherwise available from another source, Klayman, and the Motion to Quash must be granted.

Secondly, Klayman contracted for fundraising services, including the culling of commercially available master lists to target direct mailings and other advertisements. The Subpoenaed entities use their own proprietary methods and criteria in providing these services, none of which were under the control of Klayman. As such, any overlap of donors resulting from the deployment of the Subpoenaed entities' services, between Judicial Watch, Klayman or other clients, results of the limited pool of conservative donors, all of which come from independent sources other than Judicial Watch.

The only palpable information necessary for this allegation is that which would tend to demonstrate that Klayman improperly disclosed Judicial Watch donor or client lists or donor or client data, which constitute Confidential Information as defined in the Severance Agreement, to the Subpoenaed entities. *See Second Amended Complaint,* Ex. A ¶ 4(E). As explained in the Motion and in the Objections served by ATA, no such Judicial Watch lists or data are at issue. The compilation of lists related to pools of conservative donors is property owned by Viguerie and the Subpoenaed entities, and not belonging to or under the control of Klayman or Judicial Watch.

Further, and contrary to Defendants' allegations, each of the requests tend to reveal and implicate detailed, proprietary and confidential information belonging to Klayman and non-parties,

including donor names, and other information about Klayman's fundraising which is not relevant to liability for the contractual violations alleged. Each request is couched in catch-all language. From the Subpoenas, Defendants seek:

- Any and all bills or invoices for services performed or generated for or on behalf of Larry Klayman in Request No. 7 in the Chester, Response and Diener Subpoenas;

- Any and all documents, records or other data contained within the "blue book system" concerning or relating to respondents to any direct mail campaign or other fundraising campaign in Request No. 8 in the ATA Subpoena;

- Any and all documents, records or other data concerning or relating to respondents to any direct mail campaign or other fundraising campaign in Request No. 8 in the Chester, Response and Diener Subpoenas and in Request No. 9 in the ATA Subpoena;

- Any and all reports, analyses or accountings of the results of any direct mail campaign or other fundraising campaigns in Request No. 10 (sic) in in the Chester, Response and Diener Subpoenas, as well as in Request No. 10 in the ATA Subpoena;
- Any and all other documents concerning or relating to any direct mail campaign or other fundraising campaigns in Request No. 11 (sic) in the Chester, Response and Diener Subpoenas, as well as in Request No. 10 in the ATA Subpoena.

Not only are these requests overbroad and irrelevant to the issue of alleged contractual violations of the Severance Agreement, each would necessarily reveal protected, private and associational information about donors and clients of Klayman, as well as lists and other information which is the proprietary property of non-parties and seeks overly broad, invasive and irrelevant proprietary information. Such disclosures would therefore violate privacy and associational rights. To the extent Defendants can demonstrate substantial need, which they clearly have not, only aggregate information should be permitted to be produced. *See Freedom's Watch, supra,* 2007 U.S. Dist. LEXIS 83653 at *17-18. Moreover, lacking any good-faith basis to seek disclosure of the documents requested in the Subpoenas, such requests can only be seen

as a further attempt to harass, embarrass or annoy Klayman through an uncontrolled "fishing expedition," in violation of discovery rules.

## II.  CONCLUSION

For all the foregoing reasons, Plaintiff, Larry Klayman, respectfully submits that the Motion must be granted.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

By:   //s// *Daniel J. Dugan*
Daniel J. Dugan, Esquire
1635 Market Street, 7th Floor
Philadelphia, PA  19103
215.241.8872 - 215.241.8844(*fax*)
ddugan@lawsgr.com
*Attorneys for Plaintiff, Larry Klayman*

Dated: November 27, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of November 2007, a true copy of the foregoing Reply Memorandum was served via electronic means to

Richard W. Driscoll, Esquire
Driscoll & Seltzer, PLLC
600 Cameron Street
Alexandria, Virginia 22314

By:   //s//
Daniel J. Dugan

407199-5