UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>JUDICIAL WATCH, INC., *et al.*,<br><br>    Defendants. | Civil Action No. 06-670 (CKK) |

**MEMORANDUM OPINION**
(December 3, 2007)

Currently pending before the Court is the Motion for Leave to Amend Counterclaim filed by Defendants/Counter-Claimants Judicial Watch, Inc., and Thomas J. Fitton (collectively, "Judicial Watch"). Plaintiff opposes Judicial Watch's Motion for Leave to Amend on the grounds that it was brought in bad faith and that the only new claim Judicial Watch seeks to add via its Amended Counterclaim is futile. Plaintiff has also filed a Cross-Motion for Sanctions. Upon a searching review of the filings currently before the Court in connection with Judicial Watch's Motion for Leave to Amend and Plaintiff's Cross-Motion for Sanctions, the relevant statutes and case law, and the entire record herein, the Court shall GRANT Judicial Watch's Motion for Leave to Amend and shall DENY Plaintiff's Cross-Motion for Sanctions.

**I: BACKGROUND**

The Court shall assume familiarity with the Court's January 17, 2007 and April 3, 2007 Memorandum Opinions, which set forth in detail the factual background of this case, and shall therefore only briefly address such facts as are necessary for resolution of the motions currently before the Court. *See Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL

140978 (D.D.C. Jan. 17, 2007) (hereinafter "MTD Slip Op."); *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 1034936 (Apr. 3, 2007) (hereinafter "Reconsid. Slip Op."; and *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 1034937 (Apr. 3, 2007) (hereinafter "PSJ Slip Op."). Defendant Judicial Watch, Inc. is a 501(c)(3) organization formed under the laws of the District of Columbia and headquartered in the District of Columbia. PSJ Slip Op. at 3-4. Defendant Fitton is President of Judicial Watch, Defendant Orfanedes is the Secretary and a Director of Judicial Watch, and Defendant Farrell is a Director of Judicial Watch. *Id.* at 4. Plaintiff Larry Klayman ("Klayman") is the self-described founder and former Chairman, General Counsel and Treasurer of Judicial Watch, who resides in and practices law in the State of Florida. *Id.*

In his Second Amended Complaint, Klayman brought six claims against various combinations of Defendants, relating to events that occurred after Klayman left Judicial Watch in September 2003. *Id.* In connection with Klayman's separation from Judicial Watch, on September 19, 2003, the parties executed a detailed Severance Agreement, signed by Klayman and Fitton, on behalf of Judicial Watch, and attested to by Orfanedes, as Corporate Secretary of Judicial Watch. *Id.* Plaintiff's claims have been narrowed somewhat by the Court's January 17, 2007 and April 3, 2007 Memorandum Opinions. Specifically, the Court has dismissed Count Five of Plaintiff's Second Amended Complaint, dismissed-in-part Count Nine of Plaintiff's Second Amended Complaint, and granted-in-part Defendant's motion for summary judgment as to Counts Six, Seven, and Eight of Plaintiff's Second Amended Complaint. *See generally* MTD Slip Op., Reconsid. Slip Op., PSJ Slip Op.

On June 28, 2006, Judicial Watch filed its Answer to Plaintiff's Second Amended

Complaint, and also filed its Counterclaim against Klayman, which includes nine Counts: Count I (Breach of Contract) alleges that Klayman has not paid Judicial Watch, Inc. amounts due under the Severance Agreement, Counterclaim ¶¶ 19-24; Count II (Breach of Contract) alleges that Klayman has not repaid a debt owed to Judicial Watch, Inc. by Klayman's former law firm, Klayman & Associates ("K&A"), which was re-affirmed in the Severance Agreement, *id.* ¶¶ 25-30; Count III (Indemnification) alleges that Klayman is obligated to indemnify Judicial Watch, Inc. for damages arising out of K&A's purported breach of the Severance Agreement, *id.* ¶¶ 31-34; Counts IV and V (Trademark Infringement) allege that Klayman knowingly used Judicial Watch, Inc.'s registered trademarks without consent, in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a), *id.* ¶¶ 35-48; Counts VI and VII (Breach of Contract) allege that Klayman has disparaged Judicial Watch, Inc. and Fitton in violation of the Severance Agreement, *id.* ¶¶ 49-63; Count VIII (Breach of Contract) alleges that Klayman has used Confidential Information in violation of the Severance Agreement, *id.* ¶¶ 64-70; and Count IX (Breach of Contract) alleges that Klayman has violated the Severance Agreement's covenant not to compete or solicit, *id.* ¶¶ 71-77. Klayman filed his Answer to Judicial Watch's Counterclaim on August 7, 2006.

Judicial Watch filed its Motion for Leave to Amend Counterclaim on May 25, 2007, asserting that "[s]ince filing the Counterclaim, Judicial Watch has had an opportunity to learn additional information . . . [and] Klayman has pursued a course of action that requires expanded allegations concerning claims under the Lanham Act." JW Mot. for Leave to Amend Counterclaim (hereinafter "JW Mot. to Amend") ¶ 1. Judicial Watch therefore seeks to expand Count IV of the Counterclaim, split Count V into two claims (one for false advertising and one

for false association), and add a claim for cybersquatting.

In addition–and at the heart of Plaintiff's Opposition and Motion for Sanctions–Judicial Watch seeks to add a number of allegations to its Counterclaim regarding the circumstances under which Klayman separated from Judicial Watch in September 2003. Specifically, Judicial Watch alleges that in May 2003, Klayman informed Fitton and Orfanedes that "his wife, a former Judicial Watch employee, had commenced divorce proceedings against him" and that she "alleged that Klayman had had an inappropriate relationship with a Judicial Watch employee with whom he had been in love" and that "Klayman had assaulted her physically." JW Am. Count. ¶ 10. According to Judicial Watch, "Klayman denied having a sexual relationship with the employee" but acknowledged that he "had been in love with the employee," "that he had purchased gifts for the employee and had kissed her," and also acknowledged "an incident with his wife that clearly provided the basis for his wife's allegation of physical assault." *Id.* ¶ 11. Judicial Watch alleges that Fitton and Orfanedes considered Klayman's "acknowledged behavior [] entirely inconsistent with that of a leader of a conservative, pro-family organization," as well as "Klayman's fiduciary duties to the organization," and that they were concerned about Klayman's possible misuse of Judicial Watch resources. *Id.* ¶¶ 12. Judicial Watch further alleges that, as a result of these revelations, "Fitton requested that Klayman resign," and "Fitton and Orfanedes also insisted that Judicial Watch undertake an internal investigation into Klayman's conduct, including an audit. . . ." *Id.* ¶ 13. According to Judicial Watch, "Klayman offered to resign rather than face such an inquiry," and the parties began negotiating for his separation from Judicial Watch, which eventually culminated in the September 19, 2003 Severance Agreement. *Id.* ¶¶ 14-18.

Plaintiff filed his Opposition and Cross-Motion for Sanctions on June 11, 2007, and Judicial Watch filed its Reply in support of its motion to amend and Opposition to Plaintiff's Cross-Motion on June 21, 2007. On July 5, 2007, Plaintiff filed a motion to file out of time his Reply in support of his Cross-Motion, which was granted on October 1, 2007. Thereafter, as permitted by the Court in its October 1, 2007 Minute Order, Judicial Watch filed a Sur-Reply regarding Plaintiff's Cross-Motion for Sanctions.

## II: LEGAL STANDARDS

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. *See* Fed. R. Civ. P. 15(a). Once a responsive pleading is served, however, a party may amend its complaint only by leave of the court or by written consent of the adverse party. *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of leave to amend is committed to the sound discretion of the district court. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The court must, however, heed Rule 15's mandate that leave is to be "freely given when justice so requires." *Id.*; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. As such, "[a]lthough the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment.'" *Firestone*, 76 F.3d at 1208 (quoting *Foman*, 371 U.S. at 182); *see also Caribbean Broad. Sys.*, 148 F.3d at 1084 (a

5

district court's discretion to grant leave to amend is "severely restricted" by Rule 15's command that such leave "be freely given"). Nevertheless, the Court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss. *James Madison*, *Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also* 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

### III: DISCUSSION

Klayman opposes Judicial Watch's Motion for Leave to Amend on the grounds that it was filed in bad faith for improper purposes and, with respect to Judicial Watch's proposed cybersquatting claim, also argues that amendment is futile because the claim would not survive a motion to dismiss. The Court addresses each of these arguments in turn, before considering Plaintiff's Cross-Motion for Sanctions.

> A.   *The Court Cannot Conclude That Judicial Watch's Proposed Amendment Was Made in Bad Faith or For an Improper Purpose*

As an initial matter, the Court notes that Klayman does not oppose Judicial Watch's proposed amendment insofar as it seeks to expand Count IV for trademark infringement and divide Count V of its original Counterclaim into two unfair competition claims under the Lanham Act, one for false advertising (Count V) and one for false association (Count VI). Nevertheless, Klayman argues that Judicial Watch's proposed amendment "is brought in bad faith and for the improper purpose of defaming, harassing and injuring Klayman, his family and other innocent third parties." Pl.'s Opp'n at 5. In particular, Klayman opposes Judicial Watch's

proposed addition of Paragraphs 10-20 of its Amended Counterclaim–the allegations described above concerning the circumstances of Klayman's departure from Judicial Watch. *Id.* at 6-7.

Klayman first argues that the allegations contained in Paragraphs 10-20 have no bearing on Judicial Watch's current or proposed legal claims. *Id.* However, Klayman proffers no legal challenge to Judicial Watch's proposed Count V, which alleges that "Klayman has made false and/or misleading statements that have actually deceived and/or had the tendency to deceive a substantial segment of the receiving audience." Am. Count. ¶ 93. The Court is unaware of any reason for denying Judicial Watch leave to amend its Counterclaim to add its proposed Count V, and it follows that Judicial Watch may also amend its Counterclaim to add the factual allegations necessary to support that claim. To that end, Judicial Watch asserts that the allegations in Paragraphs 10-20 are directly relevant, and in fact "critical" to Judicial Watch's claims for unfair competition and breach of contract. JW Reply at 3-6. According to Judicial Watch, Klayman has made a number of false or misleading statements concerning himself and his reasons for leaving Judicial Watch via his direct mail and advertising campaign, which have resulted in harm to Judicial Watch that is actionable under the Lanham Act. *Id.* at 5.[1] The Court finds this explanation sufficient to demonstrate the relevance of Judicial Watch's proposed Paragraphs 10-20 to its legal claims.[2]

---

[1] Judicial Watch also argues that in order to succeed on its claim that Klayman has disparaged Judicial Watch officers by falsely characterizing them as liars (Counts VIII and IX of Judicial Watch's proposed Amended Counterclaim), Judicial Watch will need to show that its officers did not falsely represent that the reasons for Klayman's departure were confidential. *Id.* at 5-6.

[2] Klayman's filings emphasize that Judicial Watch was aware of the allegations contained in Paragraphs 10-20 when it filed its original Counterclaim but did not include those allegations in that filing. According to Klayman, Judicial Watch threatened to do so, but chose not to after

Klayman next argues that Judicial Watch's proposed allegations regarding the circumstances of Klayman's departure from Judicial Watch are made in bad faith because they contradict the Severance Agreement's statement that Klayman's separation "shall be treated for all purposes as a voluntary resignation," and actually violate the Severance Agreement's non-disparagement provision. Pl.'s Opp'n at 6-8 (citing Severance Agreement ¶¶ 1, 17). While Klayman is correct as to the language of the Severance Agreement, denying Judicial Watch leave to amend its Counterclaim on the ground that the amendment violates the non-disparagement provision of the Severance Agreement puts the cart before the horse. The proper interpretation of the Severance Agreement's non-disparagement provision is directly at issue in Counts Six, Seven, and Eight of Plaintiff's Second Amended Complaint. Thus, to the extent that Klayman alleges Judicial Watch's proposed amendments constitute a violation of the non-disparagement

---

counsel exchanged letters on the subject. *See* Pl.'s Opp'n at 1-2; Pl.'s Reply at 1. The Court need not resolve the parties' dispute over past events because Judicial Watch explains that, since it filed its original Counterclaim, "Klayman has pursued a course of action that requires expanded allegations concerning claims under the Lanham Act." JW Mot. to Amend. ¶ 1. According to Judicial Watch, the allegations in Paragraphs 10-20 are included in the proposed Amended Counterclaim because they are primarily relevant to Judicial Watch's expanded Lanham Act claims. It therefore follows that the allegations were not included in Judicial Watch's original Counterclaim because they were not relevant to the legal claims therein.

Klayman also notes that Judicial Watch was aware of Klayman's website, www.savingjudicialwatch.org, when it filed its original Counterclaim, and therefore could have brought its proposed cybersquatting claim (Count VII of Judicial Watch's proposed Amended Counterclaim) at that time. However, insofar as that Count alleges that "Klayman's actions have harmed . . . the good will represented by Judicial Watch's JUDICIAL WATCH mark" and "have caused Judicial Watch to suffer . . . damage and injury to its reputation and goodwill, as well as a loss of fund raising revenues," it appears that Judicial Watch's proposed cybersquatting claim relies upon events subsequent to the filing of its original Counterclaim. *See* Am. Count. ¶¶ 106-16. Significantly, Klayman does not assert that Judicial Watch unduly delayed bringing either its expanded Lanham Act or cybersquatting claim, or that he would be prejudiced by Judicial Watch's addition of claims at this time. Furthermore, the Court notes that the parties are still engaged in fact discovery, the deadline for which will be extended through January 31, 2008 by separate order.

provision, he can argue as much in proving his breach of contract claims. The Court therefore declines to deny Judicial Watch leave to amend based solely on Klayman's unproven allegation that Judicial Watch's amendment violates the Severance Agreement, because doing so would require the Court to interpret the language of the non-disparagement provision in a vacuum.

Finally, Klayman asserts that Judicial Watch need not amend its Counterclaim in order to add documents that Judicial Watch identifies as examples of allegedly false and misleading statements made by Klayman in his direct mail and advertising campaign (Exhibits C through Q to the proposed Amended Counterclaim). *Id.* at 8-9. Klayman notes that "[u]nder the Federal rules, pleading standards are minimal" and the "applicable rules of procedure do not mandate the filing of exhibits or attachments to a complaint." *Id.* at 9 (citations omitted). Klayman appears to suggest that because Judicial Watch is not required to attach exhibits to its Counterclaim, Judicial Watch's attempt to do so somehow demonstrates bad faith. As, Judicial Watch correctly notes, however, "Rule 8(a)(2) [of the Federal Rules of Civil Procedure] represents a floor, not a ceiling." JW Reply at 8. The Court therefore does not accept Klayman's suggestion that Judicial Watch acted in bad faith by opting to go beyond the minimal pleading requirements of the Federal Rules.

> B.   *Judicial Watch's Proposed Cybersquatting Claim is Not Clearly Futile*

Klayman also argues that Judicial Watch should be denied leave to amend its Counterclaim to add a claim for cybersquatting because Judicial Watch's proposed claim would not survive a motion to dismiss. While futility of amendment is certainly grounds for denying leave to amend, the Court cannot agree with Klayman that Judicial Watch's proposed cybersquatting claim is not actionable. The Federal Rules of Civil Procedure require that a

complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a motion to dismiss for failure to state a claim, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). In evaluating a motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pleaded factual allegations, but "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

      Judicial Watch's proposed cybersquatting claim is brought under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Am. Count. ¶¶ 106-16. To state a cybersquatting claim under the ACPA, Judicial Watch must allege that (1) JUDICIAL WATCH is a distinctive or famous mark entitled to protection; (2) Klayman's www.savingjudicialwatch.org domain name is identical or confusingly similar to Judicial Watch's mark; and (3) that Klayman registered his domain name with the bad faith intent to profit from it. 15 U.S.C. § 1125(d)(1)(A); *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). Klayman does not contest whether Judicial Watch's federally registered trademark, JUDICIAL WATCH, is distinctive or famous, and the Court therefore assumes as much

*arguendo*. *See* Pl.'s Opp'n at 11; Am. Count. ¶ 54.

Instead, Klayman argues that Judicial Watch's proposed cybersquatting claim does not sufficiently allege confusion or a bad faith intent to profit. Klayman argues that his website, www.savingjudicialwatch.org is not confusingly similar to Judicial Watch's website, www.judicialwatch.org because the "word 'saving' precedes the name, so that any search for Judicial Watch on the world wide web would not track to Klayman's website." Pl.'s Opp'n at 11. Judicial Watch's proposed cybersquatting claim alleges the opposite–that the two marks are "confusingly similar"–and further alleges that Klayman's website has "harmed, and will continue to harm, the goodwill represented by Judicial Watch's [] mark . . .by creating a likelihood of confusion as to the source, sponsorship, affiliation and endorsement of [Klayman's] site." Am. Count. ¶¶ 108, 113. The Court agrees with Judicial Watch that whether Klayman's website is actually confusingly similar to Judicial Watch's website is an issue of fact that cannot be resolved on the limited record before the Court at this time, and would be unlikely to be resolved at all on a motion to dismiss for failure to state a claim.

Klayman further argues that Judicial Watch's cybersquatting claim would not survive a motion to dismiss because Judicial Watch "did not, and can not, allege that Klayman was motivated by profit, let alone bad faith intent to profit." Pl.'s Opp'n at 12. Klayman posits that the instant case is "a far cry from the 'squatting' activity made illegal by the ACPA," and cites to cases in which courts have found insufficient evidence of the bad faith required under the ACPA where defendants registered websites that they used to complain about experiences with, or criticize, the defendants' companies. *Id.* at 11-12. To the contrary, Judicial Watch's proposed Amended Counterclaim specifically alleges that "Klayman registered, used and continues to use

11

the savingjudicialwatch.org domain name with bad faith intent to divert supporters and donors from Judicial Watch's websites to the websites previously and currently accessible at savingjudicialwatch.org for Klayman's commercial gain and for purposes of promoting Klayman d/b/a Saving Judicial [W]atch." Am. Count. ¶ 111.  On its face, then, Judicial Watch's proposed cybersquatting claim asserts that Klayman registered his website with an intent to profit by diverting funds from Judicial Watch to his own coffers.

Finally, as to allegations of bad faith, Judicial Watch's proposed cybersquatting claim charges that Klayman does not have prior trademark or intellectual property rights in the JUDICIAL WATCH mark and made no prior use of the name, that he intended to divert Judicial Watch supporters to his website, and that he purposefully concealed his identity in registering his website.  *Id.* ¶¶ 106-16.  Each of these allegations is relevant to one of the nine factors that the ACPA specifically provides courts may consider in determining whether a person has the requisite bad faith.  *See* 15 U.S.C. § 1125(d)(1)(B)(i).  In light of these nine, non-exhaustive factors, the Court cannot determine on the current record whether Klayman actually had the requisite bad faith, but can determine that Judicial Watch's cybersquatting claim might survive a motion to dismiss for failure to state a claim.  The Court therefore rejects Klayman's argument that Judicial Watch's proposed cybersquatting claim is futile.  Moreover, for the reasons set forth above, Klayman fails to demonstrate a sufficient reason for denying Judicial Watch leave to amend its Counterclaim.  Rather, because "the underlying facts or circumstances relied upon by [Judicial Watch] may be a proper subject of relief, [it] ought to be afforded an opportunity to test his claim on the merits."  *Foman*, 371 U.S. at 182.  The Court shall therefore grant Judicial Watch's Motion for Leave to Amend.

C.       *Plaintiff's Cross-Motion for Sanctions Shall Be Denied*

The Court turns now to Klayman's cross-motion, in which he asks the Court to impose sanctions upon Judicial Watch–including attorneys fees, additional fines, the striking of Judicial Watch's proposed Amended Counterclaim, and a contempt order–under the Court's "inherent power to impose sanctions for abusive litigation practices undertaken in bad faith." Pl.'s Opp'n at 13, 16. The Court's inherent power to sanction is "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

Klayman's motion for sanctions focuses on the allegations contained in Paragraphs 10-20 of Judicial Watch's proposed Amended Counterclaim regarding the circumstances in which Klayman separated from Judicial Watch. As an initial matter, to the extent that Klayman's motion for sanctions relies upon his argument that those allegations are irrelevant to any issue in the case, and "unnecessary and violative of the pleading requirements of Fed.R.Civ.P. 8," *id.* at 13, the Court rejects Klayman's argument for the reasons discussed above. In further support of his motion for sanctions, Klayman asserts that Judicial Watch filed its proposed Amended Counterclaim with the knowledge that the allegations contained in Paragraphs 10-20 were "made by Klayman's ex-wife during divorce proceedings, were false, and were later withdrawn," and were "sealed by Order of the Circuit Court, Fairfax County, where the divorce was proceeding." *Id.* at 13-14. Based on these claims, Klayman asks this Court to hold Judicial Watch and its

attorneys in civil contempt for filing the proposed Amended Counterclaim in derogation of the June 19, 2003 Order of the Circuit Court of Fairfax County, Virginia, sealing the record of Klayman's divorce proceeding. *See* Pl.'s Reply, Ex. 1. However, Judicial Watch explicitly asserts that the "basis for the Amended Counterclaim is not the court file for Klayman's divorce." JW Sur-Reply at 3. Rather, Judicial Watch maintains that its proposed Amended Counterclaim is based on a conversation during which Klayman informed Fitton and Orfanedes about his wife's allegations, "acknowledged to Fitton and Orfanedes that he had been in love with the employee," "had purchased gifts for the employee and had kissed her," and also "acknowledged an incident with his wife that clearly provided the basis for his wife's allegation of physical assault." *Id.*; Am. Count. ¶¶ 10-11.

The Court notes that the relevant paragraphs of the proposed Amended Counterclaim explicitly refer to a conversation that occurred on or about May 6, 2003 (notably before the seal order was entered), and thus support Judicial Watch's claim as to the provenance of the allegations contained therein. *Id.* For his part, Klayman admits that he "voluntarily revealed the accusations" during a conversation "well prior to any discussion of his possible resignation." Pl.'s Opp'n at 6. As it thus appears uncontested that Judicial Watch's allegations may be based on the conversation rather than Klayman's sealed divorce record, the Court cannot conclude that Judicial Watch has acted in a manner worthy of civil contempt.

Klayman also maintains that sanctions are appropriate because the disclosure of the allegations contained in Paragraphs 10-20 violates the attorney-client privilege as well as various Rules of Professional Conduct applicable to attorneys. *Id.* at 13-16; Pl.'s Reply at 6-10. Each of these arguments turns on Klayman's assertion that he disclosed the information underlying

14

Paragraphs 10-20 of Judicial Watch's proposed Amended Counterclaim "in confidence, as attorney-client communications, to Orfanedes and to Judicial Watch's outside counsel, David Barmak." Pl.'s Reply at 8. The parties appear to dispute the circumstances of those communications. Specifically, Judicial Watch claims that Klayman confessed "the admissions described in the Amended Counterclaim . . . directly to Fitton and Orfanedes in their capacity as officers and directors of Judicial Watch." JW Reply at 12. Judicial Watch asserts that in the context of the conversations at issue "Orfanedes' role as an attorney, if any, would have been on behalf of his fiduciary, Judicial Watch" and "the purpose of consulting with Barmak was for Judicial Watch to obtain legal advice and assistance." JW Reply at 12. If Judicial Watch is correct that both Orfanedes and Barmak represented Judicial Watch, rather than Klayman individually, during the conversations at issue, then the attorney-client privilege would belong to Judicial Watch and Judicial Watch would have the option of waiving the privilege.

Ultimately Klayman does not clearly explain the basis on which he asserts the attorney-client privilege applies, and this failing is fatal because the party seeking to invoke the attorney-client privilege bears the burden of presenting to the court sufficient facts to establish the privilege. *See In re Sealed Case*, 737 F.2d 95, 99 (D.C. Cir. 1984). However, even accepting Klayman's version of the facts (to the extent that the Court is able to discern it), it appears that the attorney-client privilege and attorney duty of confidentiality are not applicable. Klayman's argument is that during the conversations in question, Orfanedes and Barmak were jointly representing Klayman, as Chairman of Judicial Watch, along with Judicial Watch itself. Pl.'s Reply at 8. Klayman proffers no evidence to establish that Orfanedes was his personal attorney rather than Judicial Watch's attorney. In contrast, Klayman cites to a letter dated May 8, 2003, in

which he and Fitton acknowledged that Barmak had "represented or may be deemed to have represented, Larry Klayman personally." *Id.*, Ex. 3.  Nevertheless, even if Orfanedes or Barmak was engaged in a joint representation of Klayman individually and Judicial Watch, Klayman himself admits that "the prevailing rule is that, as between commonly represented clients, the [attorney-client privilege] does not attach." *Id.* at 9 (citing Comment 15 to D.C. R. of Prof. Cond. 1.7).

Finally, although the Court cannot discern whether Klayman in fact asserts as much, it does not appear that the attorney-client privilege would apply even if Orfanedes or Barmak represented Klayman individually during the conversations at issue.  Klayman does not dispute Judicial Watch's contention that Fitton was present during the conversations and it is clear that Fitton is not a lawyer.  *See* JW Reply at 12.  "Normally the attorney-client privilege is destroyed once information is shared with any person other than the attorney and the client because the presence of a third party is inconsistent with the client's intent that the communication remain confidential." *Blumenthal v. Drudge*, 186 F.R.D. 236, 243 (D.D.C. 1999) (citing *In re Lindsay*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)).  It therefore appears that the attorney-client privilege would not apply if Klayman disclosed information to his attorneys in Fitton's presence.  Moreover, as the party seeking to invoke the attorney-client privilege, Klayman bears the burden of presenting to the court sufficient facts to establish the privilege.  *In re Sealed Case*, 737 F.2d at 99.  Klayman has utterly failed to carry this burden, because he has not even clearly described the factual circumstances in which the conversations at issue are alleged to have taken place.  As such, the Court cannot conclude that the attorney-client privilege has been violated.

Klayman also argues that the allegations Judicial Watch seeks to add are the fruit of an

improper disclosure by Orfanedes and Barmak, in violation of their duty of confidentiality under Rule of Professional Conduct 1.6. That Rule prohibits a lawyer from knowingly revealing a confidence of a client, using a confidence of a client to the client's disadvantage, or using a confidence of a client for the advantage of a lawyer or of a third person. D.C. R. of Prof. Cond. 1.6. However, that Rule defines a "confidence" as "information protected by the attorney-client privilege under applicable law." *Id.* Thus, because Klayman has not established the application of the attorney-client privilege, he cannot demonstrate a violation of Rule 1.6. Furthermore, the Court notes again that Klayman does not dispute that Fitton was present during the conversations at issue and that Fitton is not a lawyer. As such, Fitton is not bound by any duty of confidentiality with respect to the matters discussed and Klayman has not proffered any evidence that the allegations at issue were disclosed by Orfanedes or Barmak, rather than Fitton.

      Finally, in his Reply in support of his Cross-Motion for Sanctions, Klayman argues that Judicial Watch violates other Rules of Professional Conduct by seeking to add the allegations contained in Paragraphs 10-20 of its proposed Amended Counterclaim. Specifically, Klayman argues that the allegations violate Rule 3.6 because they are "utterly irrelevant" to the instant action and therefore constitute improper extra-judicial statements that will be disseminated and will have a substantial likelihood of materially prejudicing an adjudicative proceeding. Pl.'s Reply at 6-7; D.C. R. of Prof. Cond. 3.6. Klayman further asserts that the allegations "have no substantial purpose other than to embarrass third persons" and therefore violate Rule 4.4(a). Each of these assertions fails, however, because of the Court's conclusion above that the allegations contained in Judicial Watch's proposed Paragraphs 10-20 are directly related to

Judicial Watch's actionable Lanham Act claims.[3]

In sum, Klayman has failed to support his Cross-Motion for Sanctions with any evidence of sanctionable conduct on the part of Judicial Watch, its officers, or its counsel. As such, the Court shall deny Klayman's Cross-Motion for Sanctions.

### IV: CONCLUSION

For the reasons set forth above, the Court shall GRANT Judicial Watch's Motion for Leave to Amend and shall DENY Plaintiff's Cross-Motion for Sanctions. An appropriate Order accompanies this Memorandum Opinion.

Date:   December 3, 2007

                                                                              /s/
                                                         COLLEEN KOLLAR-KOTELLY
                                                         United States District Judge

---

[3] Klayman's Cross-Motion for sanctions also accuses Judicial Watch of alerting the media to its filing of its proposed Amended Counterclaim. However, Klayman fails to proffer any factual support for this allegation, which Judicial Watch in turn denies. See Pl.'s Opp'n at 15; JW Reply at 13, Ex. 4. As such, the Court has not considered Klayman's unsupported assertion.