UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

    v.

JUDICIAL WATCH, INC., *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)

**MEMORANDUM OPINION**
(December 3, 2007)

Currently pending before the Court is Defendants' Motion for Protective Order, in which they seek entry of an order limiting the use of any information obtained during discovery in this matter to the strict context of this litigation, specifically prohibiting the use of discovery information for any advertising or publication purposes, and precluding the dissemination of any discovery information to anyone not directly involved in this litigation, including Plaintiff, Larry Klayman. Not surprisingly, Plaintiff opposes Defendants' Motion. Upon a searching review of the filings before the Court on Defendants' Motion for Protective Order, the relevant statutes and case law, and the entire record herein, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' Motion for Protective Order.

Specifically, the Court shall enter an Order limiting the use of any information obtained during discovery in this matter to the strict context of this litigation, and requiring any party seeking to use discovery information for other purposes to apply for and obtain permission from the Court before doing so. However, with respect to Defendants' request that discovery information be restricted to attorneys' eyes only, the Court declines to enter a blanket order to

that effect. Defendants have failed to specifically identify the categories of information for which such an order might be appropriate and have not provided sufficient legal basis for such an order. Therefore, by separate Order, the Court shall refer the instant action to Magistrate Judge Alan Kay for the disposition of all pending and future discovery-related motions pursuant to Local Civil Rule 72.2(a). If either party believes that certain discovery information should be produced for attorneys' eyes only, that party may present the specific factual situation and relevant legal authority to Magistrate Judge Kay in an application for an appropriate protective order.

## I: BACKGROUND

The Court shall assume familiarity with the Court's previous Memorandum Opinions in this matter, which set forth in detail the factual background of this case, and shall therefore only briefly address such facts as are necessary for resolution of the motions currently before the Court. *See Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 140978 (D.D.C. Jan. 17, 2007) (hereinafter "MTD Slip Op."); *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 1034936 (Apr. 3, 2007) (hereinafter "Reconsid. Slip Op."; *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 1034937 (Apr. 3, 2007) (hereinafter "PSJ Slip Op."); *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670 (D.D.C. Dec. 3, 2007) (hereinafter "Amend. Slip Op."). Defendant Judicial Watch, Inc. is a 501(c)(3) organization formed under the laws of the District of Columbia and headquartered in the District of Columbia. PSJ Slip Op. at 3-4. Defendant Fitton is President of Judicial Watch, Defendant Orfanedes is the Secretary and a Director of Judicial Watch, and Defendant Farrell is a Director of Judicial Watch. *Id.* at 4. Plaintiff Larry Klayman ("Klayman") is the self-described founder and former

Chairman, General Counsel and Treasurer of Judicial Watch, who resides in and practices law in the State of Florida.  *Id.*

Klayman's Second Amended Complaint and Judicial Watch's Amended Counterclaim in this action include various legal claims stemming from events that occurred after Klayman left Judicial Watch in September 2003.  *Id.*  Many of these claims arise out of the Severance Agreement entered into by Klayman and Judicial Watch on September 19, 2003.  *Id.*  The Court need not address the specifics of the parties' claims at this time, other than to note that, *inter alia*, Judicial Watch asserts claims against Klayman under the Lanham Act for trademark infringement, unfair competition in the form of false advertising and false association, and cybersquatting.  Am. Count. ¶¶ 84-116.  In connection with these claims, Judicial Watch alleges that:

> Almost immediately upon filing his lawsuit, Klayman launched a website, savingjudicialwatch.org, and commenced a fundraising campaign aimed directly at Judicial Watch supporters.  The fundraising campaign purportedly seeks to finance Klayman's efforts to restore himself to his former positions with the organization and to "save" Judicial Watch.  In addition, Klayman, individually and doing business as "Saving Judicial Watch," has mailed, on information and belief, at least tens of thousands of direct mail solicitations to Judicial Watch supporters around the United States and has taken out advertisements in at least two national publications seeking donations.  The solicitations and advertisements are based largely on intentionally false, misleading and/or disparaging statements that have caused and continue to cause substantial harm to the very organization Klayman purports to be trying to save.

*Id*. ¶ 34.  Judicial Watch also attaches as exhibits to its Amended Counterclaim sixteen examples of fundraising letters, fundraising e-mails, and newspaper advertisements that Klayman has published since leaving Judicial Watch.  *Id.*, Exs. B-Q.

Defendants include similar examples as Exhibits 1-4 to their Motion for Protective Order.

Def.'s Mot., Exs. 1-4. Defendants also attach as Exhibits to their Motion examples of former

Judicial Watch donors who have ceased contributing due to Klayman's campaign, *id.*, Exs. 5-8,

and examples of donors who may be confused as to Klayman's current affiliation with Judicial

Watch because they have mailed checks made out to "Judicial Watch" to Klayman in response to

his campaign, *id.*, Exs. 9-13. Defendants filed the instant Motion for Protective Order on

October 16, 2007. Plaintiff filed his Opposition on October 29, 2007, and Defendants filed their

Reply on November 5, 2007.

## II: DISCUSSION

Under Federal Rule of Civil Procedure 26(b), parties may generally "obtain discovery

regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.

R. Civ. P. 26(b). Nevertheless, Rule 26(c) further provides that

> Upon motion by a party . . . and for good cause shown, the court . . . may make
> any order which justice requires to prevent a party or person from annoyance,
> embarrassment, oppression, or undue burden or expense, including one or more of
> the following: . . . (5) that discovery be conducted with no one present except
> persons designated by the court; . . . (7) that a trade secret or other confidential
> research, development, or commercial information not be revealed or be revealed
> only in a designated way . . . .

Fed. R. Civ. P. 26(c). This rule "confers broad discretion on the trial court to decide when a

protective order is appropriate and what degree of protection is required," *Seattle Times Co. v.*

*Rhinehart*, 467 U.S. 20, 36 (1984), and "balances the governmental and first amendment interests

at stake when a party seeks to disseminate information obtained through pretrial discovery,"

*Avrigan v. Hull*, 118 F.R.D. 252, 253-54 (D.D.C. 1987) (citing *Seattle Times*, 467 U.S. at 37). In

crafting a protective order, a court may "limit the conditions, time, place, or topics of discovery;

or limit the manner in which a trade secret or other confidential, research, development, or

commercial information may be revealed." *Burka v. United States Dep't of Health and Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996). In addition, the Court is to "undertake an individualized balancing of the many interests that may be present in a particular case." *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 898 (D.C. Cir. 2006). The party seeking the protective order bears the burden of making the showing of good cause contemplated by Rule 26(c). *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).

In the instant case, Defendants argue that a protective order is necessary because "Klayman is engaged in a fundraising effort to support his attacks on Judicial Watch and its current officers," which includes his website, savingjudicialwatch.org, his direct mail campaign, and his advertising. Def.'s Mot. at 2. Defendants maintain that Klayman's campaign "raises a need to prevent Klayman from obtaining proprietary information to use in competition with Judicial Watch," and that Klayman's alleged "prior conduct is clear evidence of his future intent to use discovery from this case to publicly harm the Defendants." *Id.* at 5-6.[1] Plaintiff opposes Defendant's request for a protective order on the grounds that it is overly broad and that Defendants have failed to make a showing of any discovery abuse by Klayman in this or any other litigation that would warrant the imposition of an "attorneys' eyes only" protective order. In addition, Klayman devotes much of his Opposition to discussing the relevance of the

---

[1] Defendants stress that they do "not object to producing relevant information provided there is a protective order limiting the distribution and use of discovery information to the purposes of the litigation only." Def.'s Mot. at 2. Moreover, although Defendants assert that "Klayman's discovery requests are impermissibly broad in scope and seek confidential and/or irrelevant subject matter," *id.* at 7, they have not moved for a protective order limiting the scope of discovery in this matter. The Court therefore confines its discussion to Defendant's request for a protective order regarding the dissemination of discovery information, and assumes that Defendants describe the scope of Plaintiff's discovery requests only for the purpose of illustrating what they perceive as Plaintiff's improper purpose in seeking discovery.

5

discovery he seeks. This argument is unnecessary because, as noted above, Defendants do not at this time seek an order limiting the scope of discovery. Rather, they seek an order that includes two separate requests: first, that the Court strictly limit the use of discovery information to the context of the instant litigation; and second, that the Court order that discovery information be disclosed only to those "directly involved in this litigation," i.e., to attorneys' eyes only, and specifically not to Klayman. The Court takes each request in turn.

To show good cause for entry of a protective order, Defendants "must articulate specific facts to support its request and cannot rely on speculative or conclusory statements." *Friends of the Earth v. United States Dep't of the Interior*, 236 F.R.D. 39, 41 (D.D.C. 2006) (quoting *Low v. Whitman*, 207 F.R.D. 9, 10-11 (D.D.C. 2002)). The Court concludes that Defendants have met the good cause standard as to their request that the dissemination and use of discovery information be limited to this litigation, but have not–on the record currently before the Court– demonstrated good cause for limiting discovery to attorneys' eyes only. As noted above, Judicial Watch's Amended Counterclaim contains very detailed allegations regarding Klayman's ongoing fundraising and advertising campaign, and attaches sixteen examples of mailings and advertisements published by Klayman since leaving Judicial Watch. *See generally* Am. Count., Exs. B-Q. The mailings and advertisements voice Klayman's dissatisfaction with the current leadership of Judicial Watch, and seek donations to fund Klayman's efforts to regain control of Judicial Watch, particularly by means of the instant litigation. *Id.* In addition, the Amended Counterclaim alleges that Klayman's campaign has "and will continue to cause Judicial Watch to suffer damage and injury to its business, reputation and goodwill, as well as a loss of funding [sic] raising revenues." Am. Count. ¶ 67.

Klayman does not dispute that he is engaged in this fundraising and advertising campaign, nor does he make any representations that he will cease his campaign for the duration of this litigation. Moreover, the exhibits to Defendants' Amended Counterclaim and Motion for Protective Order provide ample factual support for their claims as to the nature of Klayman's campaign, as well as their assertions that Judicial Watch supporters have been confused by Klayman's campaign or have ceased donating as a result of the campaign. *See* Defs.' Mot., Exs. 5-13.  In addition, the Court notes that Klayman does not suggest that he will be harmed in any way by an order limiting the dissemination of discovery information.  Significantly, Klayman would not have access to any such information but for the instant litigation, and the Supreme Court has recognized that a "litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Seattle Times*, 467 U.S. at 32.  The Court therefore concludes that Defendants have met their burden of articulating specific facts in support of their request for an order limiting the dissemination of discovery, and have demonstrated good cause for such an order.  The Court further concludes that the balance of interests in this case favors the entry of an order limiting the dissemination of discovery information.

As such, the Court shall issue an Order limiting the use of any information obtained during discovery in this matter to the strict context of this litigation.  The Court's Order shall continue in effect through the duration of this litigation, and necessarily encompasses Defendants' request that the Court prohibit the use of discovery information for any advertising or publication purposes.  Furthermore, the Court's Order shall require any party seeking to use discovery information for purposes other than the instant litigation to apply for and obtain permission from the Court *before doing so*.  Violations of the Court's Order shall lead to severe

penalties, including but not limited to a finding of contempt of court.

With respect to Defendants' further request for an order precluding the dissemination of discovery information to anyone not directly involved in the litigation including, specifically, Klayman, the Court concludes that Defendants have failed to meet their burden of demonstrating good cause. Defendants assert that such an order is necessary to "protect Defendants from harassment and annoyance, and to protect proprietary information," and proffer a number of allegations that purport to demonstrate Klayman's likelihood to use discovery information to the detriment of Judicial Watch and its current leadership. Defs' Mot. at 5. The Court draws no conclusions as to the merit of Judicial Watch's allegations, but notes that the Court's Order limiting the use and dissemination of discovery information to the instant litigation will guard against Defendants' apparent fear that Klayman will use information obtained during discovery in his ongoing campaign.

Defendants fail to adequately demonstrate that further protections are required at this stage of the litigation. Defendants correctly note that Rule 26(c)(7) permits the court to issue a protective order requiring that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7). Defendants also cite to *Alexander v. FBI*, 186 F.R.D. 54 (D.D.C. 1998), in which Judge Royce C. Lamberth entered an order limiting the disclosure of discovery information to attorneys' eyes only, and noted that "[a]mple precedent exists" for such orders "particularly where there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party." *Id.* at 58 (quoting *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 1998 WL 186728 (E.D.La. Apr. 17, 1998)

(citing numerous cases)).  However, the order in *Alexander* related to "information contained in [] medical histories sought and other 'highly sensitive records,' includ[ing] psychiatric and other matters of a potentially embarrassing nature."  *Id.* at 57.  Here, Defendants do not identify particular categories of information that might be entitled protection under Rule 26(c)(7) or attempt to establish that any discovery information actually constitutes "a trade secret or other confidential research, development, or commercial information."  *Id.*

Rather, Defendants seek a blanket order, which the Court declines to enter.  Defendants' current filings provide the Court no basis for determining whether particular documents or categories of discovery information in fact fall within the scope of Rule 26(c)(7), or otherwise merit the entry of an attorneys' eyes only order.  The Court is mindful of the D.C. Circuit's warning that "[d]istrict courts must be [] chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor." *Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983).  Based on Defendants' current filings, the Court cannot undertake the "individualized balancing of the many interests that may be present in a particular case," which it is required to perform when considering the entry of a protective order.  *Diamond Ventures,* 452 F.3d at 898.[2]  The Court shall therefore deny Defendants' motion for a protective order insofar as it seeks an attorneys' eyes only restriction.

---

[2] In *Doe*, the D.C. Circuit identified a specific set of criteria to be considered in the context of a request for an attorneys' eyes only protective order: (1) the harm posed by disclosure to the client must be substantial and serious; (2) the protective order must be narrowly drawn and precise; and (3) there must be no alternative means of protecting the public interest which intrudes less directly on the attorney-client relationship.  697 F.2d at 1120.  However, the *Doe* test is of questionable validity because it specifically relied upon the criteria identified by the D.C. Circuit in *In re Halkin*, 598 F.2d 176 (D.C. Cir. 1979), a case that was subsequently overruled by *Seattle Times*.

In the event that either party believes that certain discovery information is entitled to such protection (and that such protection is necessary despite the Court's Order limiting the use and dissemination of discovery information), that party shall consult with opposing counsel in an effort to resolve the dispute. If the parties are unable to do so, the party seeking the protective order may make a specific application to Magistrate Judge Kay, precisely identifying the information it seeks to protect as well as the legal basis for the protection sought.

### III: CONCLUSION

For the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' Motion for Protective Order. In particular, the Court shall enter an Order limiting the use of any information obtained during discovery in this matter to the strict context of this litigation, and requiring any party seeking to use discovery information for other purposes to apply for and obtain permission from the Court before doing so. By separate Order, the Court shall refer the instant action to Magistrate Judge Alan Kay for the disposition of all pending and future discovery-related motions pursuant to Local Civil Rule 72.2(a). If either party believes that certain discovery information should be produced for attorneys' eyes only, that party may present the specific factual situation and relevant legal authority to Magistrate Judge Kay in an application for an appropriate protective order.

Date:   December 3, 2007


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

10