IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, *ET AL*. | |
| Plaintiffs, | |
| v. | Civil Action No. 1:06-CV-00670 |
| | Magistrate Judge Kay |
| JUDICIAL WATCH, INC., *ET AL*. | |
| Defendants. | |

## DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION TO QUASH SUBPOENAS OR, ALTERNATIVELY FOR PROTECTIVE ORDER

Defendants Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton"), Paul J. Orfanedes, Esq. ("Orfanedes"), and Christopher J. Farrell ("Farrell"), by undersigned counsel, respectfully submit the following Surreply Memorandum in opposition to Plaintiff Larry Klayman's ("Klayman") Reply in Support of his Motion to Quash Subpoenas or, Alternatively for Protective Order, and state as follows:

### INTRODUCTION

Defendants submit this surrepply to respond to new exhibits and related arguments raised by Klayman's reply. In summary, Klayman's three newly attached exhibits fail to support his attempt to bar Defendants' fundamental right to obtain discovery that is both relevant to and probative of their defenses and their counterclaims. At a minimum, Defendants' discovery is reasonably calculated to lead to the discovery of admissible evidence. In fact, Klayman's reply merely confuses the issues by setting forth Klayman's would-be "affirmative defenses" to these counterclaims. Defendants submit that this is yet another disingenuous maneuver by Klayman to further delay fact discovery, which now closes on January 31, 2008. (*See* Court Order of December 3, 2007). Based on this deadline, the discovery at issue must be obtained and

reviewed with ample time left to allow Defendants the opportunity to seek additional, follow-up discovery, not only to defend against Klayman's claims but also to support Defendants' Amended Counterclaims. (*See* Court Order Granting Defendants' Leave to Amend Counterclaim dated December 3, 2007). As set forth below, the new exhibits and related arguments advanced by Klayman in his reply fail to provide any legal basis to prevent Defendants from obtaining the discovery they seek.

## **ARGUMENT**

In his reply, Klayman for the first time argues that, based on objections served by American Target Advertising ("ATA"), which he attaches as Exhibits B and C to the reply, Defendants' discovery requests should be quashed. (*See* Pl.'s Reply at p. 4) Klayman argues that the confidentiality provision in the severance agreement does not govern property owned by third parties such as ATA and asserts that he "mere[ly] [had] access to independent lists" owned by ATA. (*See Id.* at p. 3) Citing ATA's objections, he argues that it was ATA, not Klayman, who performed certain "list selects" on the ATA master file of names, addresses, and other information about donors to conservative causes, also known as the "Viguerie Master File" or "Viguerie Combined Master File." (*See Id*. at p. 4, 5, and 8) Therefore, he asserts, the discovery Defendants seek lacks relevancy. Klayman also asserts that discovery of these "list selects" would violate both, his own and ATA's proprietary rights. (*See Id.* at p. 3-5, and 8).

Of course, Klayman's assertion that ATA performed the "list selects" only begs the question, "What input did Klayman in formulating those selects?" Nonetheless, Klayman's new reliance on ATA's objections convolutes the issue. The point is not who owned the ATA master list or who performed the "list selects," but, rather, Klayman's knowledge of Defendants' fundraising operations, strategies, donors, and vendor relationships.

2

The confidentiality provision in the severance agreement is quite broad.[1] Based on his tenure at Judicial Watch, Klayman knew ATA had managed Judicial Watch's direct mail fundraising operations for a substantial period of time, and he further knew that he could gain access Judicial Watch donor information by going to ATA and having it perform certain "list selects" on ATA's master file, which he knew included name, address, and other information regarding Judicial Watch donors. The article by David Corn in *The Nation*, which Defendants submitted with their opposition (*see* Defs' Opp. at Ex. 3), indicates that this is precisely what Klayman did. Discovery of Klayman's agreements, communications, and correspondence with ATA and an affiliated entity, Chester Mailing List Consultants, Inc. ("Chester"), as well as information about what "list select" were performed and what "list orders" were placed for the ATA master file, is directly relevant to whether Klayman violated the confidentiality clause of the severance agreement by misusing, for his U.S. Senate campaign, confidential information he

---

1    Paragraph 4 of the severance agreements states, in relevant part:

A.    <u>Confidential Information</u>.  Klayman agrees that all non-public information and materials . . . concerning Judicial Watch, its operations, plans, programs, relationships, donors, prospective donors, clients, prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. . . .  Confidential Information includes matters not generally known outside Judicial Watch, such as . . . donor lists, . . . contacts at or knowledge of . . . donors or prospective . . . donors . . . .  Klayman agrees that after the Separation Date, he shall not . . . use Confidential Information for any purpose without written approval by an officer of Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman.

D.    <u>Client and Donor Information</u>.  . . . Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor . . . lists or donor . . . data.  *See* Defs.' Answer Countercl. at Ex. 1

Paragraph 5 reads in relevant part:

B.    <u>Covenant Not to Compete or Solicit</u>.  Klayman agrees that, in order to enable Judicial Watch to preserve and protect Judicial Watch's valuable and legitimate business interests, . . . and in exchange for the additional consideration referred to in paragraph 6 . . . (which the parties acknowledge to be separately bargained for), Klayman shall not, for a period of two (2) years following the Separation Date [September 19, 2003], directly or indirectly, (i) work or render advice as an individual or sole proprietor in Competition with Judicial Watch or work or render advice as an employee, agent, independent contractor, consultant or representative of any person, firm or legal entity which is engaged in or has plans to enter into Competition with Judicial Watch.  For purposes of this Agreement, the term "Competition" means directly or indirectly engaging in the work or advancing the mission of any ethics, anti-corruption, public integrity and government accountability watchdog or similar public interest or educational organization, or engaging in any other activities the purpose or effect of which would be to provide information, programs, publications, services or products that Judicial Watch offers, develops or sells or has plans to offer, develop or sell, as of the Separation Date . . . .  *See Id.*

obtained during his tenure at Judicial Watch regarding Judicial Watch's fundraising operations, strategies, donors, and vendor relationships.  (*See* Defs' Answer Countercl. at paras. 66-69; *see also,* Defs.' Am. Countercl. at paras. 125-131).  At a minimum, the documents Defendants seek from ATA and Chester are highly likely to lead to the discovery of admissible evidence in support of this claim.  Whether Klayman breached the severance agreement by misusing confidential information he gained during his tenure at Judicial Watch should be an issue determined on the merits, at trial or on a summary judgment motion, after full discovery.  It should not be dictated by Klayman during the course of discovery.

In a related argument, Klayman further attempts to confuse Defendants' cause of action for breach of the confidentiality provision of the severance agreement with Defendants' cause of action for breach of the non-competition clause.  While Klayman's obligation not to compete with Judicial Watch ended on September 9, 2005, the confidentiality provision, for which Judicial Watch paid significant consideration, continues indefinitely.  (*See* Defs' Am. Countercl. at Ex. 1A).  Contrary to Klayman's assertion, there is no reason to restrict discovery to the period prior to September 9, 2005.  Klayman simply refuses to acknowledge that the discovery Defendants seek from all four subpoenaed entities is directly relevant to one or more of Defendants' various counterclaims, including Defendants' counterclaims for breaches of the confidentiality and non-competition provisions of the severance agreement, as well as breach of the non-disparagement clause, and Defendants' counterclaims for trademark violations and unfair competition.

In this regard, Klayman tries to ignore the fact that Defendants have asserted counterclaims against him for his actions, both before and after September 9, 2005, with respect to his "new" organizations, "Freedom Watch" and "Saving Judicial Watch."  Defendants have

4

asserted counterclaims against Klayman for violating the non-competition clause by sending out fundraising solicitations for "Freedom Watch" in March/April 2005 (*see* Defs' Answer Countercl. at paras. 76-77; *see also,* Defs.' Am. Countercl. at paras. 132-137), and have asserted counterclaims against Klayman for violating the Lanham Act by sending out fundraising solicitations for both "Freedom Watch" and "Saving Judicial Watch" in April 2006, May 2006, June 2006, November 2006, December 2006, January 2007, February 2007, March 2007, April 2007 and/or May 2007. (*See Id.* at paras. 35-48; *see also,* Defs.' Am. Counterclaim at par. 63.) Defendants also have asserted that many of these same solicitations violate the non-disparagement clause of the severance agreement as well. (*Id.* at paras. 49-63; *see also,* Defs.' Am. Countercl., Counts VIII and IX and paras. 36-52).

The discovery Defendants seek from Response Unlimited and Diener Consultants, Inc. ("Diener") is directly relevant to these counterclaims, as it will show the scope and extent of Klayman's fundraising efforts for "Freedom Watch" and "Saving Judicial Watch, as well as the audience to whom these efforts were directed. At a minimum, the discovery Defendants seek from Response Unlimited and Diener is reasonably calculated to lead to the discovery of admissible evidence regarding Klayman's fundraising efforts by and through "Freedom Watch" and "Saving Judicial Watch." Additionally, discovery Defendants seek from Response Unlimited and Diener potentially supports Defendants' damage claims. Production will reveal evidence and information regarding the results of Klayman's fundraising efforts, which is directly relevant to Defendants' claim for damages resulting from Klayman's trademark infringement, unfair competition and breach of the non-disparagement clause.

In addition, ATA's objections also demonstrate that the discovery Defendants seek from ATA is relevant to Defendants' defense of Klayman's defamation claim. In setting forth an

objection, ATA asserts that "…a dispute arose and continued between ATA and [Klayman's U.S. Senate campaign] regarding [Klayman's U.S. Senate campaign's] fulfillment of the contract terms. ATA began preparation to file a lawsuit against [Klayman's U.S. Senate campaign] for breach and other potential causes of action…" (*See* Pl.'s Reply's at Ex. B, p. 3, para. 5). Klayman's Second Amended Complaint includes a defamation claim against Defendants and alleges damages to Klayman's business reputation in an amount in excess of $1,500,000.00. (*See* Second Amended Complaint at paras. 148-62 and wherefore clause at para. G.) Defendants are entitled to discovery regarding Klayman's business reputation in order to counter his claim for $1,500,000.00 in damages. As a result, the discovery Defendants seek from ATA is relevant to both Defendants' counterclaims against Klayman and Defendants' defenses against Klayman's claims.

Finally, Klayman also attaches a new exhibit to the reply purportedly concerning Defendants' assertions of damages suffered as a result of Klayman's actions. (*See* Pl.'s Reply at Ex. A). Klayman altogether fails to establish the relevance of this newly attached exhibit to the discovery issue before the Court. Exhibit A fails to provide any support for Klayman's attempt to prevent Defendants' legitimate discovery efforts.

## **CONCLUSION**

Klayman's Reply Memorandum in Support of Motion to Quash Subpoenas, or Alternatively for Protective Order merely attempts to confuse issues to be tried on the merits with Defendants' reasonable exercise of their discovery rights. Further, Klayman fails to justify the need for any protective order to protect his alleged proprietary interests, which he still has failed to specify. Klayman admits that he used the subpoenaed entities for his advertising, marketing, and fund raising efforts following his departure from Judicial Watch, which makes

these relationships highly relevant to this lawsuit.

WHEREFORE, Defendants respectfully request that Plaintiff's Motion to Quash Subpeonas be denied.

Respectfully submitted,

_____//s//_____
Richard W. Driscoll (436471)
Juli Haller Simonyi (466921)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com
jhaller@driscollseltzer.com

*Counsel for Defendants Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes and Christopher J. Farrell*

Dated: December 4, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of December 2007, a true copy of the foregoing Surreply to Plaintiff's Reply in Support of Motion to Quash Subpeonas or, Alternatively for Protective Order was sent via e-mail, to:

Daniel J. Dugan, Esquire
Spector, Gadon & Rosen, P.C.
Seven Penn Center
1635 Market Street, 7th Floor
Philadelphia, PA 19103
ddugan@lawsgr.com

/s/
_____

Juli Z. Haller Simonyi

7