IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | | |
|---|---|---|
| Larry Klayman, | : | |
|        *Plaintiff,* | : | Civil Action No. 1:06-CV-00670 |
| | : | |
| v. | : | Honorable Colleen Kollar-Kotelly |
| | : | |
| Judicial Watch, Inc., *et al.* | : | |
|        *Defendants.* | : | **Jury Trial Demanded.** |

---

*PLAINTIFF'S STATEMENT OF MATERIAL FACTS GENUINELY IN DISPUTE SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS VI, VII AND VIII OF THE COMPLAINT*

Pursuant to the Court's April 24, 2006 Order, Local Rules 7(h), 56.1 and Rule 56 of the Federal Rules of Civil Procedure, Plaintiff, Larry Klayman, submits this Statement of Material Facts Genuinely In Dispute with respect to Counts Six through Eight of the Second Amended Complaint ("Statement"). Plaintiff submits this Statement in opposition to the Defendants' Motion for Partial Summary Judgment on those same counts (the "Motion").[1] Plaintiff makes his Statement in the form of a response to the Statement submitted by the Defendants.

**Klayman's Employment at Judicial Watch.**

1. Admitted in part; denied in part. It is admitted only that from 1994 to 2003, Larry Klayman was Chairman, General Counsel and Treasurer of Judicial. The factual allegations contained in paragraph 1 are denied and disputed as incomplete and material mischaracterizations of Klayman's employment at Judicial Watch. Larry Klayman founded Judicial Watch in 1994 and was its head until he resigned on September 19, 2003. Klayman

---

[1] Together with his Opposition, Plaintiff submits an Affidavit pursuant to Rule 56(f). The Motion should be denied as not ripe since no Rule 26 discovery has been exchanged. Klayman is entitled to discovery as to his claims against Defendants. *See* Fed. R. Civ P. 56(f).

319448-3

Decl. ¶ 6. As part of his duties, Klayman hired Judicial Watch employees, including Defendants Fitton as President, Orfanedes as Counsel, and Farrell as Investigator. *Id.*

2. Admitted in part; denied in part. It is admitted that Klayman's employment at Judicial Watch "ended" on September 19, 2003. The factual allegations contained in paragraph 2 are denied and disputed as incomplete and material mischaracterizations of Klayman's separation from his position as the head of Judicial Watch. Klayman's voluntary resignation ended his employment with Judicial Watch. Klayman Decl. ¶ 24, Ex. A ¶ 1 (Severance Agreement).

**The Circumstances Surrounding The September 19, 2006 Severance Agreement, Including Material Misrepresentations Made By the Defendants Are In Dispute.**

3. Admitted in part; denied in part. It is admitted only that Klayman and his counsel negotiated the terms of his severance. The factual allegations contained in paragraph 3 are denied and disputed as incomplete and material mischaracterizations of the circumstances surrounding the September 19, 2006 Severance Agreement (the "Agreement"). Klayman would not have entered into the Agreement in the absence of the Defendants' representations. Klayman Decl ¶¶ 10, 11. In 2003, Klayman chose to run for the United States Senate from the State of Florida and to step down from his position at Judicial Watch. As a result, he entered into negotiations with Defendants about the terms of his severance. *Id.* Prior to execution of the Agreement, Klayman discovered that Fitton had misrepresented his educational background to Klayman when Fitton was hired years earlier. Klayman Decl ¶ 8. Klayman wanted, and Defendants Judicial Watch, Fitton, Orfanedes and Farrell agreed, to replace Fitton with a qualified individual with a legal background to serve as chairman to lead Judicial Watch as successor to Klayman. Klayman and Judicial Watch engaged in discussions regarding several qualified individuals, including ex-Congressman, Bob Barr. Klayman Decl ¶ 9. Defendants'

319448-3

misrepresentations were false and Fitton remains in control of Judicial Watch. Klayman Decl. ¶¶ 8-9.

    4.    Admitted.

    5.    Admitted.

    6.    Admitted.

    7.    Admitted.

**Judicial Watch Failed to Pay Klayman His Final Paycheck.**

    8.    Admitted.

    9.    Denied. It is denied and disputed that Klayman received the "last" paycheck due to him. Defendants still owe payment of wages to Klayman for his employment during his tenure as Chairman and General Counsel of Judicial Watch. (Def. Br. at 7); Klayman Decl. ¶ 12.

**Defendants Failed To Act In Good Faith to Remove Klayman as Guarantor of Lease on Judicial Watch's Headquarters.**

    10.    Admitted in part; denied in part. It is admitted that the Agreement imposes on Defendants the obligation to continue to act in good faith to remove Klayman as the guarantor of the lease for the headquarters' building. The factual allegations contained in paragraph 10 are denied as legal conclusions because they characterize the Agreement. Moreover, they are disputed as incomplete and material mischaracterizations of the Agreement. In addition to the language cited by Defendants, the Agreement further provides that Klayman would "not receive any additional compensation from Judicial Watch above and beyond the Severance Pay and other benefits provided for in this Agreement for guarantying the lease." Klayman Decl. ¶ 13, Ex. A ¶ 9(B).

3

319448-3

11.     Denied as a legal conclusion.  As a document, the Agreement speaks for itself.  The factual allegations contained in paragraph 11 only purport to state what the Agreement does *not* say and are, therefore, characterizations as to the legal effect of the Agreement.

12.     Denied.  Klayman disputes Defendants' account in paragraph 12.  The Landlord personally told Klayman that no one from Judicial Watch contacted him to remove Klayman as the guarantor of Judicial Watch's lease.  Klayman Decl. ¶ 13.  To date, Klayman is still guarantor of Judicial Watch's lease for its Washington, D.C. headquarters.  *Id.*

13.     Denied.  *See* Klayman's response to paragraph 12, above.

14.     Denied.  *See* Klayman's response to paragraph 12, above.  The factual allegations contained in paragraph 14 are further denied and disputed because the Agreement requires Defendants to "continue to act in good faith to remove Klayman as the guarantor of the lease for the headquarters' building."  Klayman Decl. ¶¶ 13-14, Ex. A ¶ 9(B).  Defendants admit that they have made no effort whatsoever to have Klayman removed as guarantor of the lease for the headquarters' building since October, 2003, and they further admit that they could have, but chose not to remove Klayman as guarantor.  (Def. Br. p. 9).  In addition, the Defendants' failure to cause Judicial Watch to purchase the building, as they represented to Klayman and thousands of donors that they would, evidence their lack of good faith and fair dealing that has kept Klayman, unnecessarily, in the status of guarantor.  Klayman Decl. ¶ 15.

15.     Denied.  *See* Klayman's response to paragraph 12, above.

16.     Denied.  The factual allegations contained in paragraph 16 are denied and disputed as incomplete and material mischaracterizations of Defendants obligations with respect to the lease and guaranty and is only based upon the self-serving declaration of Fitton, ¶ 7 which states that "Judicial Watch has continued to…satisfy its obligations to the landlord."  To date,

319448-3

Klayman is still guarantor of Judicial Watch's lease for its Washington, D.C. headquarters. Klayman Decl. ¶ 13. The enormous contingent liability has caused damage to Klayman and his family. Klayman Decl. ¶ 16.

17. Denied as a legal conclusion. As a document, the Agreement speaks for itself. The factual allegations contained in paragraph 17 only purport to state what the Agreement does *not* say and are, therefore, characterizations as to the legal effect of the Agreement.

**Defendants Refused Klayman Access To Klayman Property At Judicial Watch's Washington D.C. Headquarters.**

18. Admitted in part; denied in part. It is admitted that the Agreement requires Defendants to provide Klayman access to his personal effects. The factual allegations contained in paragraph 18 are denied to the extent they are incomplete and material mischaracterizations of the Agreement. In addition to the language cited by Defendants, the Agreement defines Judicial Watch property as "… tangible items or materials that were created or used by Klayman while performing his duties for Judicial Watch or which otherwise came into Judicial Watch's custody or control by virtue of Klayman's employment with Judicial Watch." Klayman Decl. ¶ 18, Ex. A ¶ 4(B).

19. Admitted in part; denied in part. It is admitted that the Agreement requires Defendants to provide Klayman access to the property of his law firm, Klayman & Associates ("K&A"). The factual allegations contained in paragraph 19 are denied to the extent they are incomplete and material mischaracterizations of the Agreement. In addition to the language cited by Defendants, the Agreement provides that "Klayman and Judicial Watch agree that Judicial Watch shall arrange for all K&A boxes currently being stored under Judicial Watch's name and account with Iron Mountain to be transferred to K&A's account with Iron Mountain,

319448-3

and that any additional files or boxes of K&A that Judicial Watch locates or identifies in the future shall likewise be transferred…." Klayman Decl. ¶ 18, Ex. A ¶ 11(B).

20. Denied. Klayman Decl. ¶¶ 19, 20.

21. Denied. Klayman denies that Defendants provided "full and unfettered access to Judicial Watch's Washington D.C. headquarters." The Agreement required Defendants to provided Klayman access to remove Klayman's property and that of his law firm, Klayman & Associates from Judicial Watch. Klayman Decl., Ex. A ¶¶ 4(B), 11(B). At all relevant times, including October 2, 2003 and thereafter, Judicial Watch employees maintained exclusive control over Klayman's property and Klayman & Associates' property. Klayman Decl. ¶ 19. Despite Klayman's demands, Judicial Watch restricted and outright refused to allow Klayman any meaningful access to retrieve all of his personal property and that belonging to him and his firm, including corporate books for corporations Klayman owns or owned, client files, other personal documents, and also including artwork, and other items from Judicial Watch's Washington, D.C. headquarters. Klayman Decl. ¶ 20.

22. Admitted.

23. Denied. Klayman did not "chose" not to remove his property and that of his law firm from Judicial Watch on October 2, 2003. Klayman repeatedly demanded full access to his property, including corporate books for corporations Klayman owns or owned, client files, other personal documents, and also including artwork. Klayman Decl. ¶ 20. Defendants maintained control over Klayman's property and only occasionally sent files to him, and only when they chose to do so. *Id.* To the contrary, many files and other documents have been withheld. *Id.*

24. Denied. Klayman never agreed to pay Judicial Watch for any expenses related to his property and that belonging to his firm. Klayman Decl. ¶ 20.

6

319448-3

25. Admitted in part; denied in part. It is admitted that some of Klayman's property and that of K&A was delivered to Klayman on or about October 6, 2003. The remaining factual allegations contained in paragraph 25 are denied. As Klayman's property, including personal documents and artwork, remains under Defendants custody and control, Defendants failed to "complete" the return of, or provide access to, Klayman's property. Klayman Decl. ¶ 20. Klayman did not agree to any of the so-called inventories produced by Judicial Watch, and disputes their accuracy. *Id.*

26. Denied. Klayman Decl. ¶ 20.

**Defendants Refused Klayman Access To Klayman Property At Judicial Watch's Miami, Florida Office.**

27. Denied. Klayman Decl. ¶ 20.

28. Denied. The factual allegations contained in paragraph 28 are denied. Moreover, the allegations are irrelevant and immaterial. It is disputed that any of the so-called Judicial Watch inventories produced by Judicial Watch employees are in any way accurate or reliable. Klayman Decl. ¶ 20. Klayman did not agree to any of the so-called inventories produced by Judicial Watch. *Id.*

29. Admitted in part; denied in part. It is admitted only that on October 3, 2003, Klayman's representative attempted to gain access to Judicial Watch's Miami, Florida office. The remaining factual allegations contained in paragraph 29 are denied and disputed. Judicial Watch did not permit Klayman's associate any meaningful access to Klayman's property, including artwork. Klayman Decl. ¶ 20.

30. Denied. The factual allegations contained in paragraph 30 are denied. Moreover, the allegations are irrelevant and immaterial. Klayman did not agree to any of the so-called inventories produced by Judicial Watch which are not authentic or accurate. Klayman Decl. ¶

7

20. It is also submitted that the allegations in paragraph 30 are unreliable hearsay and unsupported by the record. *See* Def. Statement of Facts (Garcia Decl. ¶ 5)("JW cannot locate the inventory list at this time").

31. Admitted in part; denied in part. It is admitted that Klayman's associate retrieved some items of Klayman's property from Judicial Watch's Miami, Florida office. The remaining factual allegations contained in paragraph 31 are denied and disputed as incomplete and materially mischaracterizing Klayman's access to his property. Judicial Watch restricted and outright refused to allow Klayman any meaningful access to retrieve all of his personal property and that belonging to him and his firm, including corporate books for corporations Klayman owns or owned, client files, other personal documents, and also including artwork. Klayman Decl. ¶ 20.

**Defendants Converted Klayman's Artwork.**

32. Admitted in part; denied in part. It is admitted only that Klayman purchased the artwork from the Kennedy Gallery in Miami Beach, Florida. The remaining factual allegations contained in paragraph 32 are denied as incomplete and material mischaracterizations of the artwork for which Klayman seeks relief. In addition to the artwork referenced by Defendants, Klayman is the owner of at least four significant pieces of artwork that Klayman repeatedly demanded that Judicial Watch return, or allow him access to remove the artwork from Judicial Watch's offices. Klayman Decl. ¶ 20. At every turn, Defendants refused. *Id.*

33. Denied. The factual allegations contained in paragraph 33 are denied. Moreover, the allegations are irrelevant and immaterial as to the question of ownership of the artwork that Klayman alleges was converted by Defendants. Klayman Decl. ¶ 21.

319448-3

34. Denied. The factual allegations contained in paragraph 34 are denied. Moreover, the allegations are irrelevant and immaterial as to the question of ownership of the artwork that Klayman alleges was converted by Defendants. Klayman Decl. ¶ 21.

**Defendants' Failure to Provide Klayman Family Health Insurance Coverage.**

35. Admitted.

36. Admitted.

37. Denied. The factual allegations contained in paragraph 37 are denied and disputed. Judicial Watch paid for Klayman's family health insurance coverage prior to and as of the time of Klayman's voluntary resignation in September, 2003. Klayman Decl. ¶ 22. Judicial Watch was aware that Klayman did not take salary increases in the last years as head of Judicial Watch in part in exchange for family health insurance coverage. Klayman Decl. ¶ 23. Judicial Watch refused to pay for Klayman's family health insurance coverage following Klayman's voluntary resignation. (Def. Br p. 18).

38. Denied. The factual allegations contained in paragraph 38 are denied. Klayman Decl. ¶ 4. Moreover, the allegations are irrelevant, unreliable and immaterial as to the question of whether Judicial Watch actually paid for Klayman's family health insurance coverage prior to his voluntary resignation in September 2003. Klayman Decl. ¶ 23.

39. Denied. The factual allegations contained in paragraph 38 are denied. Klayman Dec. ¶ 4. Moreover, the allegations are irrelevant, unreliable and immaterial as to the question of whether Judicial Watch actually paid for Klayman's family health insurance coverage prior to his voluntary resignation in September 2003. Klayman Decl. ¶ 23.

40. Admitted, except that K&A paid a disproportionate share of the health insurance coverage.

41. Admitted.

42. Admitted.

43. Admitted.

44. Admitted, except that Mrs. Klayman was eligible to have her health insurance premiums paid had she so chose.

45. Admitted.

46. Admitted in part; denied in part. It is admitted only that the Klayman's family health insurance coverage was transferred to Klayman's name in or about September 2002. The remaining factual allegations contained in paragraph 46 are denied. Moreover, the allegations are irrelevant to the question of whether Judicial Watch paid for Klayman's family health insurance prior to September 2003. Judicial Watch paid for Klayman's family health insurance coverage at the time he resigned, but did not provide family health insurance coverage following Klayman's voluntary resignation. Klayman Decl. ¶ 23.

47. Admitted in part; denied in part. It is admitted that Klayman was Treasurer of Judicial Watch during his tenure. The remaining allegations contained in paragraph 47 are denied as are irrelevant and legal conclusions to which no response is required. Klayman Decl. ¶ 4. Moreover, had there been an "oversight" -- which there was not -- it was Defendants' duty to have discovered and corrected it.

48. Denied. The allegations contained in paragraph 48 are denied as legal conclusions to which no response is required. Moreover, the conclusions are irrelevant.

**Defendants Failed to Provide Klayman Access to Documents.**

49. Admitted in part; denied in part. It is admitted only that Klayman sent the email demanding documents referenced in the factual allegations contained in paragraph 49. The

10

319448-3

factual allegations contained in paragraph 49 are denied and disputed as incomplete and material mischaracterizations of Defendants obligation to provide Klayman access to documents under the Agreement.  Under the Agreement, Defendants were required to provide Klayman access to documents "necessary to defend or respond to any accusation, action or threat of action against Klayman."  Klayman Decl. ¶ 24, Ex. A ¶ 4(F).  Also under the Agreement, Klayman's separation "shall be treated for all purposes as a voluntary resignation."  *Id.*, Ex. A ¶ 1.  Klayman wrote to Judicial Watch and Thomas Fitton to demand access to documents regarding the origins of false representations made publicly by Judicial Watch former client, Peter Paul, stating, among other things, that Klayman was fired by Judicial Watch.  Klayman Decl. ¶ 26.  Also, on several occasions, Klayman sought, but Defendants refused to provide, access to documents necessary to respond to accusations against him arising out of or relating to his tenure at Judicial Watch.  *Id.* In another instance, following Klayman's resignation, Judicial Watch alleged that Klayman was required to pay for past expenses while Chairman of Judicial Watch.  Klayman Decl. ¶ 25.  As their accounting of expenses was wrong and supported by fictitious documents, Klayman repeatedly asked Defendants and their counsel for backup documentation for the alleged expenses.  *Id.* Without providing the documentation, Defendants threatened to sue Klayman.  *Id.* Klayman rightfully invoked his rights to documents under the Agreement.  *Id.* Despite explicit and reasonable demands, Defendants refused to comply with its obligations under the Agreement and continued to threaten Klayman.  *Id.*

    50.    Admitted.

    51.    Denied.  The factual allegations contained in paragraph 51 are denied and disputed as irrelevant and immaterial to Klayman's claims that he was entitled to documents

11

"necessary to defend or respond to any accusation, action or threat of action against Klayman." *See* Klayman Decl., Ex. A ¶ 4(F).

52.     Admitted in part; denied in part.  It is admitted that Defendants represented Paul on multiple matters for more than four years.  It is specifically denied that Klayman's demand for documents would have required a search through years worth of files and other records.  Defendant Fitton had virtually every document relating to Mr. Paul on his computer and could easily have provided them to Plaintiff.  Klayman Decl. ¶ 26.  The documents relating to Mr. Paul that Plaintiff sought access to were not voluminous in any event.  *Id.* The remaining allegations contained in paragraph 52 are legal conclusions and are therefore, denied.

53.     Denied.  The allegations contained in paragraph 53 regarding privilege of documents related to Paul are denied as legal conclusions.  Further, the Agreement provided that Klayman would have access to documents "necessary to defend or respond to any accusation, action or threat of action against Klayman."  Further, Defendants made no attempt to resolve their manufactured impasse.

54.     Admitted in part; denied in part.  It is admitted that "expenses" were not discussed, but denied that there would have been any significant expenses.  Klayman Decl. ¶ 26.  The remaining allegations contained in paragraph 54 are denied.  Klayman's request for documents related to Paul was specific regarding accusations about Klayman's separation from Judicial Watch.  *See* Klayman's email to Fitton, dated January 12, 2006 (Def. Orfanedes Decl. ¶ 3, Ex. A).

**Defendants Failed To Act In Good Faith to Remove Klayman as Guarantor on <u>Judicial Watch's Credit Cards</u>.**

55.     Admitted.

319448-3

56. Denied. In addition to the American Express account, Klayman was guarantor of several other Judicial Watch credit card accounts, including Visa and MasterCard credit card account. Klayman Decl. ¶ 17. Judicial Watch failed to timely remove him as guarantor of these credit card accounts as required under the Agreement. *Id.*

57. Admitted.

58. Admitted.

**Defendants Disparaged Klayman Following His Resignation.**

59. Admitted in part; denied in part. The factual allegations contained in paragraph 59 are denied and disputed as incomplete and material mischaracterizations of Klayman's legal representation of former Judicial Watch clients and others, and in particular regarding the Florida Litigation. The Agreement only required Klayman to withdraw from those cases in which Klayman entered his appearance for clients of Judicial Watch while Klayman was Chairman and General Counsel. Necessarily, such withdrawal was to be "consistent with the applicable rules of court." Klayman Decl. ¶ 32, Ex. A ¶ 12. Nothing prevented Klayman from representing a Judicial Watch client who seek Klayman's legal representation. *Id.* Also in the Agreement, Defendants were required to keep confidential the terms and existence of the Agreement. Klayman Decl. Ex. A ¶ 20. Defendants also directly interfered with Klayman's representation of Gennifer Flowers. Klayman Decl. ¶ 38. Klayman was personally told by Ms. Flowers, a private client of both his and Judicial Watch's, that in response to her request to have me represent her in certain litigation, Fitton refused and impliedly threatened and discouraged her from pursuing her choice of counsel. *Id.* As further acts against Klayman's ability to represent clients, following Klayman's resignation, Defendants engaged in a widespread and systematic campaign to disparage and defame Klayman among the public, the press and others. Klayman Decl. ¶ 29. ,

13

319448-3

The Agreement prohibited Defendants from disparaging Klayman's following his voluntary resignation from Judicial Watch. Klayman Decl. ¶ 28, Ex. A ¶ 17. Among the particular disparaging actions in the Second Amended Complaint, Defendants opened mail sent to Klayman at Judicial Watch which did not pertain to Judicial Watch, tortiously interfered with an entity funded by Klayman, Freedom Watch, failed to forward telephone messages and mail directed to Klayman, interfered with Klayman's client relationships, defamed Klayman among the media, and misrepresented the Klayman was forced to leave Judicial Watch. Klayman Decl. ¶ 29; *see also* Second Amended Complaint ¶¶ 66.A, G, H, J, I, 188, 120-125.,

60. Denied. The factual allegations contained in paragraph 60 are denied. Klayman Decl. ¶ 4. Moreover, the allegations are irrelevant and immaterial to Klayman's claim that Defendants disparaged him in violation of the Agreement, and in particular regarding the Florida Litigation.

61. Denied. In the matter captioned *Dalrymple, et al v. United States*, Case No. 1:03cv20588 (S.D. Fla. 2003), Defendants' withdrew their appearance as counsel of record for a plaintiff, Sandra Cobas. Klayman then entered his appearance on behalf of Ms. Cobas in that case. Klayman Decl. ¶ 33.

62. Denied. On September 28, 2004, Defendants moved to strike Larry Klayman's appearance as counsel and deprive Ms. Cobas her choice of counsel. Klayman Decl. ¶ 34, Ex. B. In this motion, Defendants outrageously declared that Klayman's employment with Judicial Watch "was severed pursuant to a Confidential Settlement Agreement," and incorporated paragraph 12 of the Agreement in the motion. Klayman Decl. ¶ 35, Ex. B. At the height of Klayman's United State Senate campaign, Defendants' pleading frivolously incorporated a provision of the Agreement and declared the existence of the Agreement pleading in violation of

14

319448-3

paragraph 20 of Agreement and portrayed him as having acted in breach of the agreement or limited in his ability to represent others. Klayman Decl. ¶ 36.

             Respectfully submitted,

             **SPECTOR GADON & ROSEN, P.C.**

             By:  //s// *Daniel J. Dugan*  (DD 1339)
              Daniel J. Dugan, Esquire
              1635 Market Street, 7th Floor
              Philadelphia, PA  19103
              215.241.8872--215.241.8844(Fax)
              ddugan@lawsgr.com
February 16, 2007          *Attorneys for Plaintiff, Larry Klayman*

Of Counsel:

**SPECTOR GADON & ROSEN, P.C.**
Jeffrey H. Schervone, Esquire
1000 Lenola Road
Bldg. 1, Suite 202
Maple Shade, NJ  08052
856.778.8100
856.722.5344 *fax*
email: jschervone@lawsgr.com

15

319448-3