## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Larry Klayman, | : | |
| *Plaintiff,* | : | Civil Action No. 1:06-CV-00670 |
| | : | |
| v. | : | Honorable Colleen Kollar-Kotelly |
| | : | |
| Judicial Watch, Inc., *et al.,* | : | |
| *Defendants.* | : | |
| | : | **Jury Trial Demanded.** |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL RESPONSES TO DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, Larry Klayman ("Klayman"), by undersigned counsel, hereby submits this memorandum of points and authorities in opposition to Defendants' Motion to Compel Plaintiff's Responses to Defendant's Request for Production of Documents and Memorandum of Law (the "Motion"). For the reasons that follow, the Motion must be denied.

## I.    INTRODUCTION

### A.    Background

Defendants bring the Motion in bad faith. Defendant, Judicial Watch, is a non-profit 501(c)(3) organization whose mission is to investigate and prosecute governmental corruption and abuse. As founder, Chairman and General Counsel of Judicial Watch, Klayman headed the organization until he voluntarily resigned to run for the United States Senate from the State of Florida in September 2003. Defendants, Thomas Fitton, Paul Orfanedes, and Christopher Farrell were the beneficiaries of Klayman's leadership and, however hotly contested, currently run Judicial Watch.[1] Defendant's recent newsletter to donors states that "Judicial Watch Finishes

---

[1] Klayman's stewardship of Judicial Watch was known for its non-partisanship, even suing Vice President Cheney's Energy Task Force, leading to a Supreme Court review. Under Fitton, Judicial Watch has leaned strongly pro-Bush

2006 on an Upswing" and charts that donations in 2004 were about $8 million and for 2006 were close to $10 million.  A copy of an excerpt from the Judicial Watch Newsletter, Verdict, dated June 2007 is attached hereto as Exhibit "A."  The Defendants' assets are believed to be in excess of this amount and Plaintiff, Larry Klayman, is an individual with greatly less resources to wage a discovery war of attrition, as is occurring here for tactical purposes.

On September 19, 2003, Klayman and Judicial Watch  executed a detailed Severance Agreement.  This action arises from Klayman's claims that Judicial Watch violated multiple provisions in the Severance Agreement, that Defendants misused Klayman name and/or likeness for their benefit and to Klayman's detriment, defamed and disparaged Klayman to third parties, including the media and supporters, failed to provide documentation or access to Klayman's personal property and that of his law firm, Klayman & Accosiates, P.C. ("K&A"), and severely harmed Klayman and even his minor children in other ways.  On June 14, 2006, Klayman filed the Second Amended Complaint.  On or about June 28, 2006, Defendants filed their Answer and Counterclaim, and on December 3, 2007 further to the Memorandum Opinion dated December 3, 2007, Defendants filed an Amended Counterclaim.

Immediately upon Klayman's separation, fearing that Klayman, who founded and whose name was synonymous with Judicial Watch, Defendants breached the Severance Agreement and continue to harass and harm Klayman, in an obvious attempt to keep him from ever competing with or even returning to the public interest group he conceived of, founded, invested in and successfully ran for nearly ten years.  Prior to commencing this action, Klayman repeatedly sought access to his property and documentation regarding fraudulent expense claims and other matters, but Defendants unreasonably refused to cooperate.  They even refused and failed to

administration and has lost its non-partisanship and "legal" punch. At his law firm, Klayman has sued the Administration for illegal wiretaps and other violations of civil liberties.

remove him as the personal guarantor of a multi-million dollar office lease, all the while claiming incredulously that Klayman was a mere employee. Instead, rather than filling the chairmanship with a lawyer of stature like former Congressman, Bob Barr, Defendants, two of which are not lawyers, seized control of Judicial Watch and embarked on a campaign of smears and lies to harm Klayman and his family, for which Klayman sought relief from the Court.

**B.    Defendants Bad Faith In Discovery and Procedural History**

Defendants served discovery requests on or about June 13, 2007. Klayman served discovery requests on or about June 29, 2007. Counsel informally reached out by telephone on or about July 13, 2007 to advise that due to scheduling conflicts, responses were still being prepared and would be served promptly, which they were. Opposing counsel did not respond and counsel operated under the assumption that this brief extension was acceptable. Opposing counsel was aware at that time that Klayman was preparing responses and that responses would be provided as soon as possible. Klayman served responses promptly thereafter. Defendants suffered no prejudice, and in fact, there is no claim of prejudice anywhere in the Motion, nor could there be. They acquiesced in what, in effect, was an extension of time to respond.

At the same time, Defendants did not produce any documents and failed to provide any substantive responses. Instead, on October 16, 2007, to try to throw a monkey wrench into discovery, Defendants filed a Motion for Protective Order seeking, *inter alia,* to deem all discovery as confidential and virtually sealed, and sought "attorneys' eyes only" protection to prohibit Plaintiff, Klayman, an attorney in good standing in the District of Columbia for about 28 years, from seeing any of the discovery in his case. On December 3, 2007, the Court denied in part, Defendants' Motion for Protective Order, and entered a Protective Order to ensure that the

"use of any information obtained during discovery in limited to the strict context of this litigation" (the "Protective Order"). *See Memorandum and Order* at Docket No. 84.

As established below, Klayman seeks discovery from Defendants in order to develop his case. Klayman is an individual, not a multi-million dollar enterprise like Judicial Watch, who was severely harmed by Defendants, a non-profit organization with an admitted $10 million in donations per annum, notwithstanding a Directors and Officers' Insurance policy which finances Defendants's litigation costs. Defendants further damaged Klayman by litigating to hide information necessary to Klayman's claims. While engaging in petty and vexatious motion practice to further harass Klayman to have him "run up the bill," they have again prejudiced Klayman. Despite entry of the Protective Order on December 3, 2007 and Klayman's demands that Defendants comply with their discovery obligations, Defendants purportedly made documents available for inspection and copying only on December 21, 2007, the eve of the Christmas/New Years holiday, after Defendants' counsel advised that his office was already closed and would not be open again until after the holiday, on December 26, 2007. *See* Email correspondence from Defendants' counsel dated December 21, 2007 attached hereto as Exhibit "B." In making inconceivably only two small boxes of documents[2] "available" for inspection at counsel's location on December 21, 2007, Defendants outrageously refused to produce any copies, and glibly advised that if Plaintiff wanted copies, counsel would have to make arrangements to pick up boxes after business hours and have copied at his own expense only after his office had closed for the holiday. This stunt is consistent with the way Defendants have

---

[2] The assertion that only two boxes are being made available indicates to Klayman the insufficiency of Defendants' response, particularly given Klayman's 10 year role at Judicial Watch and the issues involved in this case. However whether Defendants satisfied their discovery obligation is not only unlikely, but also unknowable until Klayman has had an opportunity to review this production, since substantive responses to discovery requests were also purportedly withheld pending the Court's disposition of the Defendants' Motion for Protective, which was denied in part. *See* Docket Number 84. To date, Klayman has received no documents while Plaintiff has produced documents to Defendants.

litigated this case. *See Id.* As a result, Klayman is prejudiced by Defendants' failures regarding their obligations in discovery as Klayman cannot proceed to develop his case, and was forced to notice depositions within the discovery deadline. Defendants are simply engaged in a one-sided abuse of court process.

The overall discovery deadline in this case is May 15, 2007. On November 26, 2007, based on the current pace of discovery, as no documents had been exchanged by Defendants, since no experts were identified by the parties and no other dates would be affected, the parties filed a Consent Motion to extend the fact discovery deadline to January 31, 2008[3], which was granted by the Court.

Defendants now engage in vexatious and petty motion practice, and in bad faith seek to prejudice Klayman by having the Court sanction their game of one-upsmanship and their fishing expedition for irrelevant discovery, simply because they ask for it. *Minebea Co. v. Papst*, 2005 U.S. Dist. LEXIS 19417 (D.D.C.)(the "mere ipse dixits of counsel will not warrant the ordering a fishing expedition"). Defendants waited four months to raise any alleged deficiency, including the incorrect claim that Klayman waived any objections. Discovery is ongoing, no trial date has been set, and while depositions have been noticed by the parties, none have thus far been taken.

## II.    ARGUMENT

### A.    Timeliness of Objections and Relevance

As to the timeliness of Plaintiff's objections, Klayman respectfully submits that as explained above, none are waived in this case, and assert the same generally and specifically to the argument as to each request as proffered by Defendants in the Motion.

---

[3] Based on the pace of discovery and motions pending at that time, Klayman's counsel suggested consenting to March 1, 2008 as the fact discovery deadline, but Defendants have thus far declined consent beyond January 31, 2008.

414627-5

In the Motion, Defendants claim that irrelevant information is discoverable. As a threshold matter, Federal Rule of Civil Procedure 26 provides in pertinent part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter *relevant* to the subject matter involved in the action. *Relevant* information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence

Fed. R. Civ. P. 26(b)(1). Based on the clear language in Rule 26, relevance is a threshold matter and to the extent requests seek other than relevant information, they are objectionable. Klayman maintains his justifiable position that relevant information is responsive to the requests.

### B.    Document Requests

Klayman's arguments in opposition to each request as set forth in Defendants' Memorandum of Law are as follows:

### REQUEST NO. 1:

This request seeks any documents reviewed or consulted in preparing responses to Defendants' Interrogatories. Klayman did not object to producing documents identified in the Answers to Interrogatories, and has produced those documents. Klayman objected to the request only, out of an abundance of caution based on Defendants conduct in this litigation to harass and harm Klayman by engaging in a fishing expedition, to the extent Defendants seek more. Therefore, the request was answered, and the Motion is gratuitous, vexatious and petty, and only intends to run up Klayman's costs in this litigation.[4]

### REQUEST NO. 2:

---

[4] Notwithstanding Defendants' large war chest of funds, they are covered by a Directors and Officers' Insurance policy which is providing the defense cost of this litigation.

414627-5

This request seeks all documents to support Klayman's claim that Defendants misused and/or misrepresented Klayman's name and/or likeness for fundraising activities, Klayman properly responded that relevant documents evidencing Klayman's calculation of damages will be produced.

Here, in fact, documents were produced. Klayman objected to the request only, out of an abundance of caution based on Defendants conduct in this litigation to harass and harm Klayman by running up the cost of litigation and by engaging in a fishing expedition, especially to the extent the request seeks irrelevant information.

Moreover, discovery is ongoing, no trial date has been set, and while depositions have been noticed by the parties, none have been taken. Now, Defendants are engaged in one-sided discovery, including petty and vexatious motion practice, all the while failing themselves to produce documents, that is not until the eve of Christmas and New Years holidays, although Plaintiff has seen no documents to date. Only then did opposing counsel say Plaintiff could copy their obviously insufficient "production" after their office had closed for the holiday. Information related to Defendants' conduct, which is partly the subject of Request No. 2, to the extent within the possession of Klayman, has been produced. Thus, the Motion as to this request is moot.

**REQUEST NOS. 3 and 4**:

In these requests, Defendants seek all documents relating to Klayman's damages and claim that Defendants defamed Klayman in a false light. Klayman did not object and in fact provided documents in response to these requests pursuant to the Protective Order, and is preparing additional documents for further production. Based on the clear language in Rule 26,

relevance is a threshold matter and to the extent requests seek other than relevant information, they are objectionable. Thus, the Motion as to these requests are moot.

**REQUEST NO. 5**:

In this request, Defendants seek all documents relating to the Severance Agreement. Plaintiff properly objected to this request as vague, ambiguous and overly broad, and because it seeks information protected by the attorney-client privilege and the work product doctrine. The Severance Agreement dated September 19, 2003 is central to the claims of both parties in this case, and neither party has challenged its validity or the contents of what it provides. Moreover, the parol evidence rule applies. In fact, both parties have attached the Severance Agreement itself to its pleadings. By its own terms, the Severance Agreement represents the agreement at that time between the parties. The request is vague and ambiguous because it could be read to encompasses a host of document categories including drafts, communications between the parties' and counsel, notes or other such ancillary documents. Klayman is unable to discern from the request, other than the Agreement itself, what documents it seeks. Clearly, since there is no challenge to the Agreement itself, other than the hard facts that Defendants breached it in numerous ways, documents pertaining to its formation, including privileged communications, to the extent such documents are the intent of this vague request, would not be not relevant. Therefore, the objection is proper and must be sustained.

**REQUEST NO. 6**:

In this request, Defendants seek all documents relating to Klayman's claim that Defendant, Fitton, would find a successor to Klayman as head of Judicial Watch, Klayman did not object and in fact provided documents in response to these requests pursuant to the

8

December 3, 2007 Protective Order, and is preparing additional documents for further
production. Thus, the Motion as to this request is moot.

**REQUEST NO. 7**:

In this request, Defendants seek documents related to the calculation of money owed to
"you" by Judicial Watch. Klayman did not object to this request, but pointed out that documents
related to the personal expenses owed to Klayman are in the possession and custody of
Defendants, and have been improperly withheld under the terms of the Severance Agreement and
discovery in this case. As alleged in the Second Amended Complaint, Klayman left Judicial
Watch in September, 2003, and subsequently, Judicial Watch denied Klayman access to
information, including account statements, receipts and other documentation to substantiate his
claim that money was owed to Klayman by Judicial Watch. Klayman served discovery requests
on June 29, 2007, which included requests for documents in connection with property owned or
purchased by Klayman and his law firm, Klayman & Associates, prior to the separation.
Defendats claim to have made documents available only on December 21, 2007, but to date,
Klayman has not yet seen any documents. Thus, documents essential and necessary to any
computation of damages were not within Klayman's possession or custody. Therefore, Klayman
can not, at this time, respond fully to this request, other than as stated.

**REQUEST NO. 8 and 9**:

In this request, Defendants seek all documents relating to Klayman's efforts to reclaim
his property, including artwork, from Judicial Watch. Klayman did not object to this request,
and in fact provided documents in response to this request pursuant to the December 3, 2007
Protective Order, and is preparing additional documents for further production. Thus, the
Motion as to this request is moot.

9

Additionally, documents related to the Klayman's property and the property itself are "conveniently" in the possession and custody of Defendants. Klayman served discovery requests on June 29, 2007, which included requests for documents in connection with property owned or purchased by Klayman and his law firm, Klayman & Associates, prior to the separation. Defendats claim to have made documents available only on December 21, 2007, but to date, Klayman has not yet seen any documents.

Further, based on the clear language in Rule 26, relevance is a threshold matter for any discovery and to the extent requests seek other than relevant information, they are objectionable. Relevant documents are responsive to discovery requests. Klayman is hardly arrogating to himself any power to determine what is relevant and is producing documents pursuant to the December 3, 2007 Protective Order. Thus, the Motion as to this request is moot.

**REQUEST NOS. 10 and 11**:

In these requests, Defendants seek documents related to Klayman's position as guarantor of any Judicial Watch credit cards and Judicial Watch's headquarters building. Klayman did not object to this request, and in fact provided documents in response to this request pursuant to the Protective Order, and is preparing additional documents for further production. Thus, the Motion as to this request is moot.

Additionally, Klayman served discovery requests on June 29, 2007, which included requests for documents in connection with Judicial Watch's continued refusal to remove Klayman as guarantor of Judicial Watch credit cards and Judicial Watch's headquarters building. Defendants claim to have made documents available only on December 21, 2007, but Plaintiff

414627-5

has not seen any documents to date. Klayman needs these documents to assess the risks and liabilities associated with Defendants' failure.[5]

**REQUEST NO. 12**:

In this request, Defendants seek *all communications* between Klayman and Peter F. Paul. On its face, the request is objectionable. The request fails to specify any time frame or scope, and is vague because it broadly seeks communications. Moreover, Klayman objected on the grounds that the request seeks information subject to the attorney client privileged work product doctrine. From about 1999, Paul was represented by Klayman and Judicial Watch until Klayman's separation in September 2003. Thereafter, Paul was a client Judicial Watch until April, 2005. Paul was then represented by Klayman. In the Motion, Defendants suggest that Klayman's association with Paul is relevant to their claims of non-disparagement under the Severance Agreement. Defendants should not be permitted to engage in such a broad and specious fishing expedition for all communications.

To the extent Defendants can narrow this request, Klayman will review such a request and respond accordingly, including providing an appropriate privilege log. Thus, the objections to this request are proper and must be sustained.

**REQUEST NO. 13**:

In this request, Defendants seek documents relating to the approval of payment of family health insurance coverage for Klayman and his family by Judicial Watch. Klayman did not object and in fact provided documents in response to these requests pursuant to the December 3, 2007 Protective Order, and is preparing additional documents for production. Thus, the Motion

---

[5] Demonstrative of Defendants' dishonest representations to the public and this Court, is the claim that Klayman was a mere employee. Does a mere employee guarantee a multi-million dollar lease and credit cards, notwithstanding Klayman's having conceived of and founded the organization for more than 10 years?

414627-5

as to this request is moot.  Additionally, Klayman incorporates by reference his arguments regarding request number 8.

**REQUEST NO. 14**:

In this request, Defendants seek documents relating to Judicial Watch's obligation to reimburse Klayman pursuant to paragraph 10 of the Severance Agreement.  Klayman did not object and in fact provided documents in response to these requests pursuant to the December 3, 2007 Protective Order, and is preparing additional documents for production.  Thus, the Motion as to this request is moot.  Additionally, Klayman incorporates by reference his arguments regarding request number 8.

**REQUEST NO. 15**:

In this request, Defendants seeks all documents relating to Klayman's repayment of Klayman & Associates, P.C.'s debt to Judicial Watch pursuant to paragraph 11 of the Severance Agreement.  Klayman did not object to this request, and in fact provided documents in response to this request pursuant to the Protective Order, and is preparing additional documents for further production.  Thus, the Motion as to this request is moot.

**REQUEST NOS. 16 and 17**:

In these requests, Defendants seek all documents that Klayman produced subsequent to the severance date which contains the term "Judicial Watch" and "Because No One is Above the Law!"  Klayman properly objected to these requests as grossly overbroad because there is no limitation to the documents that may apply.  Also, the term "produced" is undefined, and could apply to not only distributed material that may reference the term Judicial Watch, but any other internal or errant reference in any document.

To the extent Defendants can narrow this request, Klayman will review such a request and respond accordingly. Thus, the objections to these requests are proper and must be sustained.

### REQUEST NOS. 18 and 19:

In these requests, Defendants seek *each and every* mailing that Klayman caused to enter the United States mails from or regarding "Saving Judicial Watch" and "Freedom Watch." Klayman properly objected to these requests as overbroad and burdensome. In effect, the request fails to identify any time period and is unlimited in scope as to each and every piece of addressed mail that Klayman, or third parties on Klayman's behalf, has ever caused to be sent out from or regarding "Saving Judicial Watch" and "Freedom Watch," and the "issue" of Freedom Watch is irrelevant in any event. Thus, on their face, these requests are patently burdensome and are meant to be harassing.

Defendants waited four months to claim any alleged deficiency while at the same time failing to produce even a single document themselves. Further, Defendants' claims that these records are relevant to Klayman's alleged breach of the non-competition clause of the Severance Agreement is incorrect, and underscores the vastly overbroad scope of Defendants's requests. The non-competition clause expired in September 2005, while the requests are unlimited in time.

Based on the clear language in Rule 26, relevance is a threshold matter for any discovery and to the extent requests seek other than relevant information, they are objectionable. Relevant documents are responsive to discovery requests. Klayman is hardly arrogating to himself any power to determine what is relevant and is, in fact, producing documents pursuant to the December 3, 2007 Protective Order.

414627-5

Finally, to the extent Defendants can narrow this request to include only exemplars of mailings, Klayman will review such a request and respond accordingly. Thus, the objections to these requests are proper and must be sustained.

**REQUEST NO. 20:**

In this request, Defendants seek each and every press release issued by Klayman subsequent to the severance date. Klayman incorporates by reference his arguments regarding request numbers 19 and 20.

**REQUEST NO. 21**:

In this request, Defendants seek *all* documents regarding Klayman's work with RightMarch.com. Klayman incorporates by reference his arguments regarding request numbers 19 and 20. Klayman's alleged activities concerning RightMarch are irrelevant in any event.

**C.    Sanctions Against Klayman Must Be Denied**

Plaintiff promptly responded to the discovery requests raised in the Motion. Defendants' position that Plaintiff waived any objections is incorrect, and unjust. Defendants are not prejudiced by Klayman's response, and indeed no such prejudice is demonstrated anywhere in the Motion. Defendants waited four months to raise any issues of alleged deficiency in Klayman's responses, including with respect to timeliness. Further, Defendants claim to have made documents available for inspection and copying only on December 21, 2007, but Plaintiff has not as yet seen any documents, and depositions have only recently been noticed. The timing of Defendants' claimed production of documents is merely another stunt to further prejudice and harass Klayman by delaying production and review of documents over the December holidays and after depositions were noticed by Klayman for the first week in January. Moreover, Defendants are further harassing Klayman by not returning the professional courtesy of copying

14

and sending documents, and waiting until late on December 21, 2007, the eve of the

Christmas/New Years holiday, and not coincidentally as their counsel's law offices were closing,

to so advise.  If anyone should be sanctioned, it is Defendants for their wanton and vexatious

litigation conduct.

Sanctions under Rule 37 are not applicable where the alleged non-disclosure, response or

objection was substantially justified, or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A)(ii) and (iii).

Sanctions pursuant to Rule 37 are hardly warranted in this case against Klayman, and

must be denied.  To the contrary, Defendants obstructionist and one-sided discovery motion

practice is meant to harass and improperly burden Klayman, and it is Defendants who should be

sanctioned.  As established below, Klayman fulfilled his discovery obligations with respect to

the document requests and fully responded or properly objected to each of the requests set forth

in the Motion.  Klayman also made a good faith effort to address Defendants' purported concerns

and supplemented his answers accordingly.  Therefore, not only are sanctions against Klayman

not warranted, the Motion is itself unnecessary, and meant only to increase the cost of litigation

for Plaintiff, an individual without the vast resources of Defendants, in addition to the fact that

defense counsel is being paid under a Directors and Officers' Insurance policy.  Defendants

motion, intended to run up the cost of litigation must be denied.

414627-5

## III.    **<u>CONCLUSION</u>**

For all the foregoing reasons, Plaintiff, Larry Klayman, respectfully submits that the

Motion must be denied.

Respectfully submitted,

<u>s// *Daniel J. Dugan*</u>
Daniel J. Dugan, Esquire
Spector Gadon & Rosen, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
Ph (215) 241-8888
Fax (215) 241-8844
*Counsel for Plaintiff Larry Klayman*

Dated: December 24, 2007

16

414627-5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of December 2007, a copy of the foregoing

Memorandum of Points and Authorities in Opposition to Motion to Compel was served by

electronic means to:

Richard Driscoll
Driscoll & Seltzer, PLLC
600 Cameron Street
Alexandria, Virginia 22314


_s// Daniel J. Dugan_____
Daniel J. Dugan, Esquire

17

414627-5