# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Larry Klayman, | : | |
| *Plaintiff,* | : | Civil Action No. 1:06-CV-00670 |
| | : | |
| v. | : | Honorable Colleen Kollar-Kotelly |
| | : | |
| Judicial Watch, Inc., *et al.,* | : | |
| *Defendants.* | : | **Jury Trial Demanded.** |
| | : | |

*PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S ANSWERS TO DEFENDANT'S INTERROGATORIES*

Plaintiff, Larry Klayman ("Klayman"), by undersigned counsel hereby submits this memorandum of points and authorities in opposition to Defendants' Motion to Compel Plaintiff's Answers to Defendant's Interrogatories and Memorandum of Law (the "Motion"). For the reasons that follow, it is respectfully submitted that the Motion must be denied.

## I.    INTRODUCTION

Defendants bring the Motion in bad faith. Defendant, Judicial Watch, is a non-profit 501(c)(3) organization whose mission, as founded by Klayman was to investigate and prosecute governmental corruption and abuse. As founder, Chairman and General Counsel of Judicial Watch, Klayman headed the organization until he voluntarily resigned to run for the United States Senate from the State of Florida in September 2003. Defendants, Thomas Fitton, Paul Orfanedes, and Christopher Farrell were the beneficiaries of Klayman's leadership and however hotly contested, currently run Judicial Watch.[1] Defendant's recent newsletter to donors states that "Judicial Watch Finishes 2006 on an Upswing" and charts that donations in 2004 were about

---

[1] Klayman's stewardship of Judicial Watch was known for its non-partisanship, even suing Vice President Cheney's Energy Task Force, leading to a Supreme Court review. Under Fitton, Judicial Watch has leaned strongly pro-Bush administration and has lost its non-partisanship and "legal" punch. At his law firm, Klayman has sued the Administration for illegal wiretaps and other violations of civil liberties.

$8 million and for 2006 were close to $10 million.  A copy of an excerpt from the Judicial Watch

Newsletter, Verdict, dated June 2007 is attached hereto as Exhibit "A."  The Defendants' assets

are believed to be in excess of this amount and Plaintiff, Larry Klayman, is an individual with

greatly less resources to wage a discovery war of attrition, as is occurring here for tactical

purposes.

On September 19, 2003, Klayman and Judicial Watch  executed a detailed Severance

Agreement.  This action arises from Klayman's claims that Judicial Watch violated multiple

provisions in the Severance Agreement, that Defendants misused Klayman name and/or likeness

for their benefit and to Klayman's detriment, defamed and disparaged Klayman to third parties,

including the media and supporters, failed to provide documentation or access to Klayman's

personal property and that of his law firm, Klayman & Accosiates, P.C. ("K&A"), and severely

harmed Klayman and even his minor children in other ways.  On June 14, 2006, Klayman filed

the Second Amended Complaint.  On or about June 28, 2006, Defendants filed their Answer and

Counterclaim, and on December 3, 2007 further to the Memorandum Opinion dated December 3,

2007, Defendants filed an Amended Counterclaim.

Immediately upon Klayman's separation, fearing that Klayman, who founded and whose

name was synonymous with Judicial Watch, Defendants breached the Severance Agreement and

continue to harass and harm Klayman, in an obvious attempt to keep him from ever competing

with or even returning to the public interest group he conceived of, founded, invested in and

successfully ran for nearly ten years.  Prior to commencing this action, Klayman repeatedly

sought access to his property and documentation regarding fraudulent expense claims and other

matters, but Defendants unreasonably refused to cooperate.  They even refused and failed to

remove him as the personal guarantor of a multi-million dollar office lease, all the while

414970-4

claiming incredulously that Klayman was a mere employee.  Instead, rather than filling the chairmanship with a lawyer of stature like former Congressman, Bob Barr, Defendants, two of which are not lawyers, seized control of Judicial Watch and embarked on a campaign of smears and lies to harm Klayman and even his minor children through the denial of family health coverage, for which Klayman sought relief from the Court.

### B.    Defendants Bad Faith In Discovery and Procedural History

Defendants served discovery requests on or about June 13, 2007.  Klayman served discovery requests on or about June 29, 2007.  Counsel informally reached out by telephone on or about July 13, 2007 to advise that due to scheduling conflicts, responses were still being prepared and would be served promptly, which they were.  Opposing counsel did not respond and counsel operated under the assumption that this brief extension was acceptable.  Opposing counsel was aware at that time that Klayman was preparing responses and that responses would be provided as soon as possible.  Klayman served responses promptly thereafter.  Defendants suffered no prejudice, and in fact, there is no claim of prejudice anywhere in the Motion, nor could there be.  They acquiesced in what, in effect, was an extension of time to respond.

At the same time, Defendants did not produce any documents and failed to provide any substantive responses.  Instead, on October 16, 2007, to try to throw a monkey wrench into discovery, Defendants filed a Motion for Protective Order seeking, *inter alia,* to deem all discovery as confidential and virtually sealed, and sought "attorneys' eyes only" protection to prohibit Plaintiff, Klayman, an attorney in good standing in the District of Columbia for about 28 years, from seeing any of the discovery in his case.  On December 3, 2007, the Court denied in part, Defendants' Motion for Protective Order, and entered a Protective Order to ensure that the

3

"use of any information obtained during discovery in limited to the strict context of this litigation" (the "Protective Order").  *See Memorandum and Order* at Docket No. 84.

On October 30, 2007, Defendants sent a letter setting forth purported deficiencies to Klayman's answers to certain interrogatories in Klayman's July 23, 2007 responses.  *See Def. Memo. Ex. 3.*  In a good faith effort to move discovery along without resort to unnecessary motion practice, Klayman agreed to supplement, and on November 9, 2007, Klayman sent Supplemental Responses to Defendants' Interrogatories.  *See Def. Memo. Ex. 5.*  Despite Klayman's complete answers, Defendants sent a second letter purporting to set forth certain answers that were, to them, unanswered.  *See Def. Memo. Ex. 3.*  Klayman submits that his answers to interrogatories were fully responsive and complete, and that any further discoverable information Defendants purport to ask of Klayman is more appropriately addressed at his deposition, which was recently noticed by Defendants.

As established below, Klayman seeks discovery from Defendants in order to develop his case.  Klayman is an individual, not a multi-million dollar enterprise like Judicial Watch, who was severely harmed by Defendants, a non-profit organization with an admitted $10 million in donations per annum, notwithstanding a Directors and Officers' Insurance policy which finances Defendants's litigation costs.  Defendants further damaged Klayman by litigating to hide information necessary to Klayman's claims.  While engaging in petty and vexatious motion practice to further harass Klayman to have him "run up the bill," they have again prejudiced Klayman.  Despite entry of the Protective Order on December 3, 2007 and Klayman's demands that Defendants comply with their discovery obligations, Defendants purportedly made documents available for inspection and copying only on December 21, 2007, the eve of the Christmas/New Years holiday, after Defendants' counsel advised that his office was already

closed and would not be open again until after the holiday, on December 26, 2007. *See* Email

correspondence from Defendants' counsel dated December 21, 2007 attached hereto as Exhibit

"B." In making inconceivably only two small boxes of documents[2] "available" for inspection at

counsel's location on December 21, 2007, Defendants outrageously refused to produce any

copies, and glibly advised that if Plaintiff wanted copies, counsel would have to make

arrangements to pick up boxes after business hours and have copied at his own expense only

after his office had closed for the holiday. This stunt is consistent with the way Defendants have

litigated this case. *See Id.* As a result, Klayman is prejudiced by Defendants' failures regarding

their obligations in discovery as Klayman cannot proceed to develop his case, and was forced to

notice depositions within the discovery deadline. Defendants are simply engaged in a one-sided

abuse of court process.

The overall discovery deadline in this case is May 15, 2007. On November 26, 2007,

based on the current pace of discovery, as no documents had been exchanged, since no experts

were identified by the parties and no other dates would be affected, the parties filed a Consent

Motion to extend the fact discovery deadline to January 31, 2008[3], which was granted by the

Court.

Moreover, sanctions pursuant to Rule 37 are hardly warranted in this case against

Klayman, and must be denied. To the contrary, Defendants obstructionist and one-sided

---

[2] The assertion that only two boxes are being made available indicates to Klayman the insufficiency of Defendants' response, particularly given Klayman's 10 year role at Judicial Watch and the issues involved in this case. However whether Defendants satisfied their discovery obligation is not only unlikely, but also unknowable until Klayman has had an opportunity to review this production, since substantive responses to discovery requests were also purportedly withheld pending the Court's disposition of the Defendants' Motion for Protective, which was denied in part. *See* Docket Number 84. To date, Klayman has received no documents while Plaintiff has produced documents to Defendants.

[3] Based on the pace of discovery and motions pending at that time, Klayman's counsel suggested consenting to March 1, 2008 as the fact discovery deadline, but Defendants have thus far declined consent beyond January 31, 2008.

414970-4

discovery motion practice is meant to harass and improperly burden Klayman, and it is Defendants who should be sanctioned.  As established below, Klayman fulfilled his discovery obligations with respect to the interrogatories and fully answered or properly objected to each of the interrogatories set forth in the Motion.  Klayman also made a good faith effort to address Defendants' purported concerns and supplemented his answers accordingly.  Therefore, not only are sanctions against Klayman not warranted, the Motion is itself unnecessary, and must be denied.

414970-4

## II.    **ARGUMENT**

### A.    **Timeliness of Objections**

As to the timeliness of Plaintiff's objections, Klayman respectfully submits that as set forth above, none are waived in this case, and assert the same generally and specifically to the argument as to each request as proffered by Defendants in the Motion.

### B.    **Interrogatories**

Klayman's arguments in opposition to each interrogatory as set forth in Defendants' Memorandum of Law are as follows:

### **INTERROGATORY NO. 7**:

This interrogatory asks that Klayman describe in detail facts supporting Klayman's claim that he is a "celebrity within the non-profit legal/political community." Klayman objected on the grounds that the interrogatory calls for a narrative response, which is more appropriately asked at Klayman's deposition, recently noticed by Defendants. In addition, Klayman fully answered the interrogatory in good faith. Klayman stated the fact that numerous articles in magazines and newspapers about Klayman, plus numerous TV and radio interviews. A Google search will show over 30,000 hits. The fact that Klayman appeared in multiple media forums, as well as the fact that Klayman was the subject of numerous articles, including references to such interviews or appearances, confirm Klayman's celebrity status. If Defendants seek additional information regarding specific appearances or interview, such information is more appropriately addressed at deposition or by way of supplemental discovery. Thus, the Motion as to this interrogatory, which is absurd, must be denied.

**INTERROGATORY NO. 8**:

This interrogatory asks that Klayman describe in detail Klayman's damages in connection with Defendants' use of Klayman's name and/or likeness in fundraising activities. Klayman answered and further supplemented his answer that Defendants possess the information necessary for Klayman to determine the fruits of Defendants' fundraising resulting from the misuse of Klayman's name and/or likeness, as the quantum of damages is largely based on what Defendants published and disseminated in misusing his name.

Klayman's answer is sufficient since in order to detail damages, Klayman would need to review the benefit to Defendants' fundraising and other activities received during and after the conclusion of Klayman's Senate campaign. Therefore, Klayman's reservation to supplement his answer to this interrogatory is appropriate, as Defendants apparently require Klayman to provide calculations as to money damages, for this claim. Essentially, Klayman claims that Defendants violated the Lanham Act (15 U.S.C. 1125(a)) and caused harm which Klayman is required to prove based, in part, on what he was unable to covet from his celebrity status. Evidence of such damage is shown, in part, by Defendants fundraising and other activities during the relevant time period. As indicated, Defendants have not provided any documents or substantive responses to Klayman's discovery requests.

Moreover, sufficient examples in support of Klayman's claims were attached to the Second Amended Complaint, and is being developed in discovery. At this stage in the litigation, prior to any document production from Defendants and the depositions of Judicial Watch directors and officers and non-party witnesses, Klayman cannot completely answer this interrogatory.

8

414970-4

**INTERROGATORY NO. 9:**

Klayman incorporates by reference his argument regarding Interrogatory No. 8 as if set forth herein at length.

**INTERROGATORY NO. 10**:

This interrogatory asks Klayman to identify and describe in detail each and every act of defamation committed by Defendants against him. Klayman fully answered this interrogatory, to the best of information available to Klayman at the time, but he continues to search for additional responsive information. Klayman identified and described in detail the acts of defamation by Defendants, including where available, the dates of such acts. Klayman identified false statements to Judicial Watch employees and others regarding Klayman's lawsuit which was filed in June 2006, and false statements to Judicial Watch employees which caused false innuendo to Klayman's supporters following Klayman's separation in September 2003. These statements occurred following Klayman's separation. Klayman also identified false statements and threats made by Defendants to reporters and the media, both following Klayman's separation from Judicial Watch in September 2003, and in statements published in media outlets following commencement of Klayman's lawsuit. Klayman believes these statements were made by Judicial Watch, which is run by Defendant, Thomas Fitton, Defendant, Paul Orfanedes and Defendant, Christopher Farrell. Discovery is ongoing. Defendants claim to have made documents available for inspection and copying only on December 21, 2007, and depositions have only recently been noticed. To the extent Klayman could "describe in detail" Defendants' defamation at this stage, he did so as fully and completely as possible, but will supplement this interrogatory response as more information becomes available. Accordingly, the Motion as to this interrogatory must be denied.

**INTERROGATORY NO. 13**

This interrogatory asks that Klayman describe in detail Klayman's damages in connection with Defendants' failure to remove Klayman as guarantor of the Judicial Watch building lease. Klayman answered that Defendants possess the information necessary for Klayman to determine damages, including determination of the risks and liabilities associated with Klayman remaining as guarantor of the Judicial Watch lease. Indeed, the interrogatory effectively admits that Klayman was and remains the guarantor. This exposes Klayman to multi-millions of dollars in liability as a personal matter. The guarantee affects Klayman's livelihood and is a cause of emotional distress. The guarantee itself has a monetary value, and it is incredible that Defendants continue to profit from Klayman beneficence while fraudulently cooking up expense claims. Indeed, while Klayman was chairman of Judicial Watch, the current directors, particularly Fitton and Orfanedes, refused to co-sign the guarantee for fear of their potential liability and risk.

Klayman's answer is sufficient to the extent he can detail damages at this stage in the litigation process. Therefore, Klayman's reservation to supplement his answer to this interrogatory is appropriate, as Defendants apparently require Klayman to provide calculations as to money damages, for this claim. As indicated, Defendants only claim to have made documents available for inspection and copying only on December 21, 2007, and depositions have only recently been noticed.

**INTERROGATORY NO. 14:**

This interrogatory asks Klayman to identify each "item" of property that Defendants are holding or failed to return, to estimate its value, to identify all efforts made to reclaim his property and to identify individuals with knowledge of his property. Klayman answered and

10

then supplemented his answer to this interrogatory. Following his separation from Judicial Watch in September 2003, Defendants failed to provide any meaningful access to permit Klayman to identify his property. In answering this interrogatory, Klayman identified categories of property that Defendants hold to this day, including corporate books, client files, personal documents and artwork. Indeed, Klayman's property continues to be disclosed by Defendants, sometimes inadvertently and in other lawsuits. Since Defendants did not permit Klayman access to inventory his property, Klayman answered the interrogatory to the best of his recollection and information. Regarding value, Klayman identified that artwork is valued in excess of $4,000.00 and that dollar value is not determinable at this time for the records, corporate books, documents and other files that over which Defendants maintain dominion.

Further, discovery is ongoing. Defendants made documents available for inspection and copying only on December 21, 2007, only on the eve of the December holiday period, and depositions have only recently been noticed. To the extent Klayman could identify the property items Defendants still hold and/or converted at this stage, he did so. Accordingly, the Motion as to this interrogatory must be denied.

**INTERROGATORY NO. 15:**

This interrogatory asks that Klayman describe in detail evidence that Klayman remains guarantor of any Judicial Watch credit cards. Klayman answered and supplemented his answer that Defendants possess the information necessary for Klayman to determine whether Klayman is currently guarantor of Judicial Watch credit cards, including Visa and Mastercard accounts.

Therefore, Klayman's reservation to supplement his answer to this interrogatory is appropriate, as Defendants apparently require Klayman to provide calculations as to money damages, for this claim. As indicated, Defendants only claim to have made documents available

for inspection and copying only on December 21, 2007, and depositions have only recently been noticed. Klayman needs these documents to assess the risks and liabilities associated with Defendants' failure.[4]

**INTERROGATORY NO. 16:**

This interrogatory asks that Klayman describe in detail Klayman's damages in connection with Defendants' failure to remove Klayman as guarantor of any Judicial Watch credit cards. Klayman answered that Defendants possess the information necessary for Klayman to determine damages, including determination of the risks and liabilities associated with Klayman remaining as guarantor of any Judicial Watch credit cards, which speak for themselves.

Klayman's answer is sufficient since in order to detail damages at this stage in the litigation. Therefore, Klayman's reservation to supplement his answer to this interrogatory is appropriate, as Defendants apparently require Klayman to provide calculations as to money damages, for this claim. As indicated, Defendants made documents available for inspection and copying only on December 21, 2007, and depositions have only recently been noticed.

**INTERROGATORY NO. 17:**

This interrogatory asks Klayman to list every television and newspaper interview Klayman participated in since his departure from Judicial Watch. With over 30,000 hits on Google alone, Klayman properly objected to this interrogatory as grossly overbroad, vague and ambiguous. The interrogatory is also overbroad, vague and ambiguous because it seeks information regarding every media appearance in the past four years without regard to a time frame or the nature of any such appearance. In the Second Amended Complaint, Klayman alleges that shortly after Klayman's announcement that he was a candidate for the Senate,

---

[4] Demonstrative of Defendants' dishonest representations to the public and this Court, is the claim that Klayman was a mere employee. Does a mere employee guarantee a multi-million dollar lease and credit cards, notwithstanding Klayman's having conceived of, founded and invested in the organization for more than 10 years?

Defendant, Fitton, in conjunction with Judicial Watch's outside counsel, David Barmak, Esquire, made a frivolous demand on Klayman, purporting to prohibit Klayman from ever mentioning that he was the founder of Judicial Watch and threatening to take legal action against Klayman if he failed to comply with the demand.  Indeed, Defendants are expected to produce a letter to this effect, however incredible.  Klayman also alleges that on information and belief, Defendants, Fitton, Orfanedes, Farrell and others on behalf of Judicial Watch represented, *inter alia*, that Judicial Watch could and would take legal action against the media outlets if they permitted Klayman to appear and truthfully state he was the founder and former Chairman of Judicial Watch.  This conduct occurred during the period following Klayman's separation from Judicial Watch and caused media outlets to shun Klayman.

In seeking information about every media appearance by Klayman, the interrogatory overreaches and Klayman respectfully submits that the objection to the interrogatory as drafted must be sustained.

**INTERROGATORY NO. 18:**

This interrogatory asks Klayman to describe in detail the artwork at issue in this case. Klayman answered and then supplemented his answer to this interrogatory.  Klayman identified and described the artwork that Defendants are holding, failed to return or converted.  Since Defendants did not permit Klayman access to inventory his property, particularly in the Miami office, in the city where Klayman resides.  Klayman answered the interrogatory to the best of his recollection and information.  Regarding value, Klayman identified that artwork is valued in excess of $4,000.00.

Further, discovery is ongoing.  Defendants made documents available for inspection and copying only on December 21, 2007, and depositions have only recently been noticed.  To the

13

extent Klayman could identify the artwork that Defendants still hold and/or converted at this stage in the litigation, he did so.  Accordingly, the Motion as to this interrogatory must be denied.

**INTERROGATORY NO. 19**:

This interrogatory asks Klayman to identify all counsel who assisted him during the negotiation of the Severance Agreement.  Klayman identified such counsel, whose name appears on the Severance Agreement and is otherwise known to Defendants.  The interrogatory appears to seek the names of counsel who not only assisted Klayman regarding the Severance Agreement, but any other counsel that may have "assisted" Klayman in matters unrelated to the Severance Agreement.  The Severance Agreement dated September 19, 2003 is central to the claims of both parties in this case, and neither party has challenged its validity or the contents of what it provides, however many times Defendants breach it.  In fact, both parties have attached the Severance Agreement itself to its pleadings.  By its own terms, the Severance Agreement represents the agreement at that time between the parties.  Thus, Klayman fairly answered the interrogatory.  To the extent Defendants seek further information about who Klayman consulted with during the period when the parties were negotiating the Severance Agreement, the issue is more appropriately raised at Klayman's deposition, which has be recently noticed.  Accordingly, the Motion as to this interrogatory must be denied.

**INTERROGATORY NO. 20:**

This interrogatory asks Klayman to identify each and every individual from whom Judicial Watch employees concealed Klayman's location.  Klayman originally answered that every person who called into Judicial Watch and sought to contact or inquire of Klayman.  Further, Klayman answered that discovery will reveal the identities of such persons.

414970-4

Accordingly, Klayman reserved his right to supplement. In his supplemental response, Klayman identified those persons who concealed Klayman's location from the callers, not those from whom Defendants concealed his location and misstated that his reason for leaving is confidential, contrary to the clear language in the Severance Agreement. The interrogatory is overbroad on its face and inappropriately asks Klayman to identify the of name *each and every* person who essentially contacted Judicial Watch to inquire about Klayman after his separation in September 2003. The names of callers to Judicial Watch of persons from whom Defendants concealed Klayman's location during the relevant time period are known to Defendants. The claim that Defendants did so is based on information given to Klayman by supporters after the fact. This interrogatory will be supplemented as further information becomes available. Therefore, the Motion as to this interrogatory is moot.

**INTERROGATORY NO. 21**:

Klayman incorporates by reference his argument regarding Interrogatory Nos. 10 and 17 as if set forth herein at length.

**INTERROGATORY NO. 22**:

This interrogatory asks Klayman to identify the source(s) of the "Saving Judicial Watch" donor list. Klayman objected to this interrogatory as seeking confidential, proprietary and irrelevant information. Klayman supplemented his response to state that Judicial Watch is not the source of the referenced list, and therefore seeks irrelevant information. In the Motion, Defendants raise the notion that "donor lists" are confidential, and that Klayman must have stolen such a list from Judicial Watch. However, no such "donor list" was owned or created by Judicial Watch during Klayman's tenure, and Judicial Watch had exclusive control of its own lists. Lists, are actually the property of a small number of third parties who target supporters of

conservative causes.  As this pool of target supporters is limited and repeatedly solicited by

conservative organizations, including Judicial Watch and Klayman, it is no surprise that overlap

in targeted mailings will occur.  Defendants seem to proffer, without any evidence, the

suggestion that Klayman must have used "Judicial Watch" information to generate "Judicial

Watch" mailing lists, even though services creating direct mail lists were and are available from

third parties for use in advertising and marketing.  Klayman did not directly target "supporters of

Judicial Watch."  To the extent any such "donor list" exists, it's source is not relevant to any

issue related to contractual violations of confidentiality.  Klayman merely purchased the services

of third parties to provide direct mail and/or marketing services to conservative , and Klayman's

response that Judicial Watch is not the source of any "donor list" is sufficient.

   **C.**  <u>**Sanctions Against Klayman Must Be Denied**</u>

   Plaintiff promptly responded to the discovery requests raised in the Motion.  Defendants'

position that Plaintiff waived any objections is incorrect, and unjust.  Defendants are not

prejudiced by Klayman's response, and indeed no such prejudice is demonstrated anywhere in

the Motion.  Defendants waited four months to raise any issues of alleged deficiency in

Klayman's responses, including with respect to timeliness.  Further, Defendants claim to have

made documents available for inspection and copying only on December 21, 2007, but Plaintiff

has not as yet seen any documents, and depositions have only recently been noticed.  The timing

of Defendants' claimed production of documents is merely another stunt to further prejudice and

harass Klayman by delaying production and review of documents over the December holidays

and after depositions were noticed by Klayman for the first week in January.  Moreover,

Defendants are further harassing Klayman by not returning the professional courtesy of copying

and sending documents, and waiting until late on December 21, 2007, the eve of the

414970-4

Christmas/New Years holiday, and not coincidentally as their counsel's law offices were closing, to so advise. If anyone should be sanctioned, it is Defendants for their wanton and vexatious litigation conduct.

Sanctions under Rule 37 are not applicable where the alleged non-disclosure, response or objection was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii) and (iii).

Sanctions pursuant to Rule 37 are hardly warranted in this case against Klayman, and must be denied. To the contrary, Defendants obstructionist and one-sided discovery motion practice is meant to harass and improperly burden Klayman, and it is Defendants who should be sanctioned. As established below, Klayman fulfilled his discovery obligations with respect to the interrogatories and fully answered or properly objected to each of the interrogatories set forth in the Motion. Klayman also made a good faith effort to address Defendants' purported concerns and supplemented his answers accordingly. Therefore, not only are sanctions against Klayman not warranted, the Motion is itself unnecessary, and meant only to increase the cost of litigation for Plaintiff, an individual without the vast resources of Defendants, in addition to the fact that defense counsel is being paid under a Directors and Officers' Insurance policy. Defendants motion, intended to run up the cost of litigation must be denied.

### III.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff, Larry Klayman, respectfully submits that the

Motion must be denied.

                                        Respectfully submitted,

                                        <u>s// *Daniel J. Dugan*</u>
                                        Daniel J. Dugan, Esquire
                                        Spector Gadon & Rosen, P.C.
                                        1635 Market Street, 7th Floor
                                        Philadelphia, PA  19103
                                        Ph (215) 241-8888
                                        Fax (215) 241-8844
                                        *Counsel for Plaintiff Larry Klayman*

Dated: December 24, 2007

414970-4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of December 2007, a copy of the foregoing

Memorandum of Points and Authorities in Opposition to Motion to Compel was served by

electronic means to:

> Richard Driscoll
> Driscoll & Seltzer, PLLC
> 600 Cameron Street
> Alexandria, Virginia 22314

> _s// Daniel J. Dugan_____
> Daniel J. Dugan, Esquire