UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARRY KLAYMAN,** *et al.,*<br><br>     Plaintiffs,<br><br>     v.<br><br>**JUDICIAL WATCH, INC.,** *et al.*,<br><br>     Defendants. | Civil Action No. 06-670 (CKK)(AK) |

## MEMORANDUM ORDER[1]

Pending before the Court are Plaintiffs' Motion to Quash Subpoenas, or Alternatively for Protective Order [76], Defendants' Memorandum in Opposition [78], Plaintiff's Reply Memorandum [80] and Defendants' Surreply [90].

### I.     Background

Plaintiff Larry Klayman ("Klayman") is the former Chairman and General Counsel of Judicial Watch, Inc. ("Judicial Watch"), a non-profit organization that was founded "in 1994 as a public interest watchdog to investigate and prosecute government corruption and abuse." (Second Am. Compl. [12] ¶¶ 2, 7, 20.)  Klayman left Judicial Watch in 2003.  (*Id*. ¶ 28.)  In anticipation of his departure, the parties entered into a Confidential Severance Agreement on September 19, 2003.  (*See* Am. Countercl., Ex. A [86-2].)  Judicial Watch agreed, *inter alia*, to pay Klayman a lump sum of $400,000 as severance pay and continue his family health insurance

---

[1] United States District Judge Colleen Kollar-Kotelly referred this case to the undersigned Magistrate Judge for disposition of all pending and future discovery-related motions pursuant to Local Civil Rule 72.2(a).  (*See* Order [85] dated 12/3/07.)

coverage for a period of one year (*Id*. ¶¶ 2, 3.) The Severance Agreement contained a "Non-Disparagement" clause; Klayman and Judicial Watch each agreed not to "directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about" the other party. (*Id*. ¶ 17.) Each party agreed to reimburse the other for expenses and Klayman re-affirmed and acknowledged a $78,810 debt that his law firm, Klayman and Associates, P.C., owed to Judicial Watch. (*Id*. ¶ 10, 11.)

The Severance Agreement contained a provision addressing the treatment of confidential information and Judicial Watch property. (*Id*. ¶ 4.) The confidentiality provision provided, in relevant part:

> A.  <u>Confidential Information</u>.  Klayman agrees that all non-public information and material, whether or not in writing concerning Judicial Watch, its operations, programs, plans, relationships, donors, prospective donors, clients prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. . . . Klayman agrees that after the Separation Date [September 19, 2003], he shall not disclose any Confidential Information to any person or entity or use Confidential Information for any purpose without written approval by an officer of Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman.
>
> *  *  *  *
>
> D.  <u>Client and Donor Information</u>. . . . Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor or client lists or donor or client data.

(*Id*. ¶ 4(A), (D).) Finally, the Severance Agreement contained a non-competition and non-solicitation provision under which Klayman was prohibited from engaging in specified business activities, including working for a Judicial Watch competitor and soliciting Judicial Watch

2

donors for contributions to a competitor, for a period of two years. (*Id.* ¶ 5.) Judicial Watch agreed to "pay Klayman $200,000 in consideration of his agreement not to compete or solicit." (*Id.* ¶ 6.)

On April 12, 2006, Klayman and Louise Benson,[2] a Judicial Watch supporter and donor, brought suit against Judicial Watch and its President, Thomas J. Fitton. (*See* Compl. [1].) Klayman later amended his Complaint to name Paul Orfanedes, the Secretary and a director of Judicial Watch, and Christopher Farrell, another director of Judicial Watch, as defendants. (*See* Second Am. Compl.) In Counts Six, Seven and Eight, Klayman alleges that Judicial Watch breached various obligations owed to him under the Severance Agreement and in Count Nine he alleged that Judicial Watch defamed him by disseminating allegedly false statements to Judicial Watch employees and the media.[3] (*Id.* ¶¶ 66, 115-162.) In Count Four, Klayman also brings a claim under Section 43(a) the Lanham Act, which provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

---

[2] By Order dated January 17, 2007, Judge Kollar-Kottelly dismissed Counts One, Two and Three of the Second Amended Complaint, which are the only claims that involve Benson. (*See* Order [35].)

[3] Judge Kollar-Kotelly granted Defendants' Motion for Partial Summary Judgment "as to the allegations contained in Count Six that Judicial Watch fraudulently induced Klayman to enter the Severance Agreement and the allegations contained in Counts Seven and Eight that Judicial Watch failed to pay Klayman for the period between September 15 and September 19, 2003." (Order [51] dated 4/3/07.) Judge Kollar-Kottelly also dismissed Count Nine "insofar as it relates to allegedly defamatory statements made in Judicial Watch Form 990 tax returns and allegedly doctored press quotations posted on the Judicial Watch website." (Order [35] dated 1/17/07.)

>    (B) in commercial advertising or promotion, misrepresents the nature,
>    characteristics, qualities, or geographic origin of his or her or another
>    person's goods, services, or commercial activities
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)-(B).

Defendants have asserted counter-claims against Klayman. (*See* Am. Countercl. [86].) They allege that Klayman breached the Severance Agreement by failing to reimburse Judicial Watch for expenses, as required by Paragraph 10, failing to pay the outstanding balance of his law firm's debt, as required by Paragraph 11, and violating the non-disparagement provision through his remarks about Judicial Watch and Fitton. (*Id*. ¶¶ 69-79, 117-124.) Defendants further allege that subsequent to his departure from Judicial Watch, Klayman used "Confidential Information" in violation of Paragraph 4 of the Severance Agreement and that he violated the non-compete clause of Paragraph 5. (*Id*. ¶¶ 125-138.) Defendants have also brought claims against Klayman under the Lanham Act, alleging trademark infringement, unfair competition, and "cybersquatting." (*Id*. ¶¶ 84-116.)

On October 24, 2007, Defendants served subpoenas *duces tecum* on American Target Advertising, Inc. ("ATA"), Chester Mailing List Consultants, Inc. ("Chester"), and Response Unlimited ("Response"). (Pl.'s Mem. Supp. Mot. Quash [76-2] ("Pl.'s Mem.") at 1.) Defendants served a similar subpoena *duces tecum* on Diener Consultants, Inc ("Diener"). on October 29, 2007. (*Id*.) All four of these entities were "hired by Klayman to manage advertising and financial efforts related, in part, to funding for this litigation and other public interest matters on behalf of Klayman's clients." (*Id*. at 2.) The documents that Defendants seek in response to

these subpoenas include "agreements between Klayman and the subpoenaed entities; communications between Klayman and the subpoenaed entities; and information as to the list selects/order[4] through which Klayman was able to obtain name, address and other proprietary information about [Judicial Watch] donors." (Def.'s Opp'n [78] at 3. *See also* Subpoena to ATA [76-3]; Subpoena to Chester [76-4]; Subpoena to Response [76-5]; Subpoena to Diener [76-6].) The subpoenas state that the time frame of the "request is from 2003 to the present." (*See, e.g.,* Subpoena to ATA at 2.)

**II.** <u>Discussion</u>

    A.    <u>Plaintiff's Motion to Quash Subpoenas</u>

Federal Rule of Civil Procedure 45 provides, in relevant part, that "[o]n timely motion, the issuing court must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A). Rule 45 further provides that "the issuing court may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 45(c)(3)(B). When a subpoena is issued to a non-party, a party to the case has no standing to move to quash the subpoena "absent a privilege, personal interest, or proprietary interest." *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005). *See also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 ("Ordinarily a party

---

[4] List selects/orders are "instructions or directions applied to a master file database to cull out certain desired data," such as names or addresses. (Def.'s Opp'n [78] at 4.) According to Judicial Watch, "[l]ist selects/orders are not the names, addresses, and other information themselves." (*Id.*)

has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.")  If a party has standing to challenge a subpoena because he has asserted a privilege, personal interest or proprietary interest, he may also raise other grounds for attacking the subpoena, such as undue burden and relevance.  *See DIRECTV, Inc. v. Richards*, No. 03-5606, 2005 WL 1514187, at *2-4 (D.N.J. June 27, 2005).

In this case, Klayman has standing to challenge the subpoenas issued to ATA, Chester, Response, and Diener because he has asserted a proprietary interest in the information sought by Judicial Watch.  Specifically, he argues that the list selection criteria sought in Request No. 5 and the master lists sought in Request No. 6 in the Response, Chester, and Diener Subpoenas and Request No. 7 in the ATA Subpoena constitute "proprietary or trade secret information" because he had a role in developing the selection criteria and master lists.  (Pl.'s Mem. at 3, 12.)  Klayman also argues that the analyses and reports sought in Request Nos. 8 and 10 in the Response, Chester and Diener Subpoenas and in Request Nos. 8-10 in the ATA subpoenas "are protected trade secrets and highly confidential commercial information" because they resulted from his marketing efforts.  (*Id*.)  The decision to quash a subpoena because it seeks trade secrets or other confidential information is left to the discretion of the court resolving the discovery dispute.  *See* FED. R. CIV. P. 45(c)(3)(B).  Even if the Subpoenas seek proprietary, trade secret, or confidential information, however, this Court need not grant the Motion to Quash because a mechanism already exists in this case for protecting sensitive material.  On December 3, 2007, Judge Kollar-Kotelly granted-in-part Defendants' Motion for a Protective Order and ruled "that the use of any information obtained during discovery in this matter is limited to the strict context

of this litigation." (Order [83] dated 12/3/07.) Because this protective order addresses Klayman's concerns, the Court will not quash the Subpoenas based on Klayman's claim that they seek trade secrets and proprietary and confidential information.

Klayman also argues that the subpoenas issued to ATA, Chester, Response, and Diener are "facially overbroad" in terms of time and scope, and "impermissibly seek detailed information not relevant to any of the claims in this litigation," and therefore subject the subpoenaed parties to an undue burden. (Pl.'s Mem. at 7, 9.) A court must quash a subpoena that subjects a party to an undue burden. *See* FED. R. CIV. P. 45(c)(3)(A)(iv). However, this Court disagrees that the Subpoenas are overbroad or that they seek irrelevant material and therefore does not find that they impose an undue burden. First, Judicial Watch limited the time frame of their requests from 2003, the year in which Klayman left Judicial Watch and the Severance Agreement went into effect, until the present. Under the terms of the Severance Agreement, Klayman's obligations under the confidentiality provision continue in perpetuity; therefore the Court does not share Klayman's view that Judicial Watch has no rational basis for seeking documents from this time period. (*See* Pl.'s Mem. at 9.) Second, after reviewing the claims and counterclaims that remain in this litigation, the Court is confident that the Subpoenas are, at a minimum, "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Finally, the Court finds it telling that none of the subpoenaed entities, who are in the best position to assess whether the Subpoenas would subject them to an undue burden, have brought a motion to quash as they are entitled to do under Rule 45.

Klayman's last argument for quashing the subpoenas is that they run afoul of the First Amendment. Citing *Buckley v. Valeo*, Klayman asserts that "[c]ompelled disclosure of the

identities of an organization's members or contributors may have a chilling effect on the organization's contributors as well as the organization's own activity." (Pl.'s Mem. at 8.) Based on this proposition, he reasons that "the First Amendment requires that a compelling state interest be shown before a court may order disclosure of membership in an organization engaged in the advocacy of particular beliefs." (*Id.*) Judicial Watch responds by pointing out that "Defendants made no requests for the identity of any specific donors or other confidential donor information." (Def.'s Opp'n at 3.) Although some courts have recognized that a party may assert a First Amendment associational privilege in response to a discovery request, it is not clear whether Klayman may assert such a privilege on behalf of the subpoenaed entities. *See, e.g., Adolph Coors Co. v. Wallace*, 570 F.Supp. 202 (N.D. Cal. 1983) (evaluating a political organization's First Amendment right of associational privacy in the discovery context). More fundamentally, the Court has carefully reviewed the four subpoenas and concludes that Judicial Watch is not seeking the names of donors or other information that could potentially be protected by the First Amendment. If documents containing the names of donors are produced in response to the subpoenas, the "chilling effect" about which Klayman is concerned will be minimized by the protective order that is currently in effect.

      B.    <u>Plaintiff's Motion for Protective Order</u>

Federal Rule of Civil Procedure 26(c) provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,

including one or more of the following:

(A) forbidding the disclosure or discovery;
\* \* \* \*
(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
\* \* \* \*
(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
\* \* \* \*

FED. R. CIV. P. 26(c). Because a motion for a protective order "limits the liberal discovery rules, 'good cause' is only established when the movant demonstrates that disclosure would cause a clearly defined and serious injury." *Univ. of Mass. v. Roslin Inst.*, 437 F.Supp.2d 57, 60 (D.D.C. 2006). When deciding whether the moving party has established good cause, "courts typically weigh the burdensomeness to the moving party against the need for, and the relevance of, the information being sought." *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd*, 242 F.R.D. 1, 4 (D.D.C. 2007) (citations omitted).

Klayman has failed to establish good cause for the issuance of a protective order on the basis of undue burden. While he makes general statements about the Subpoenas' overbreadth and the irrelevance of the information Judicial Watch seeks (Pl.'s Mem. at 8-9), Klayman has not shown any "clearly defined and serious injury" that would result from production, *Univ. of Mass.*, 437 F. Supp.2d at 60. As stated above, the Court has also considered the fact that the subpoenaed parties have not objected to these requests on the ground that they impose an undue burden. Finally, any minimal burden that these subpoenas might impose would be outweighed by the relevance of the information sought. Accordingly, the Court will deny Klayman's request for a protective order.

**III.    Conclusion**

For the foregoing reasons, it is this  8th  day of January, 2008, hereby

**ORDERED** that Plaintiff's Motion to Quash Subpoenas, or Alternatively for Protective Order [76] is **denied**.

                                                                /s/
                                                ALAN KAY
                                                UNITED STATES MAGISTRATE JUDGE