# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**LARRY KLAYMAN,**

    Plaintiff,

    v.

**JUDICIAL WATCH, INC.,** *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)(AK)

## MEMORANDUM ORDER[1]

Pending before the Court are Defendant Judicial Watch's Motion to Compel Plaintiff's Answers to Defendant's Interrogatories [88], Plaintiff's Opposition [93], and Defendant's Reply [96]. Also pending are Defendants' Motion to Compel Plaintiff's Responses to Defendant's Request for Production of Documents [89], Plaintiff's Opposition [92], and Defendants' Reply [95].

## I.    Background[2]

Plaintiff Larry Klayman ("Klayman") is the former Chairman and General Counsel of Judicial Watch, Inc. ("Judicial Watch"), a nonprofit organization that was founded "in 1994 as a public interest watchdog to investigate and prosecute government corruption and abuse."

---

[1] United States District Judge Colleen Kollar-Kotelly referred this case to the undersigned Magistrate Judge for disposition of all pending and future discovery-related motions pursuant to Local Civil Rule 72.2(a). (*See* Order [85] dated 12/3/07.)

[2] The factual recitation contained herein is taken, in substantial part, from this Court's Memorandum Order [97] dated January 8, 2008.

(Second Am. Compl. [12] ¶¶ 2, 7, 20.)  Klayman left Judicial Watch in 2003.  (*Id.* ¶ 28.)  In

anticipation of his departure, the parties entered into a Confidential Severance Agreement on

September 19, 2003.  (*See* Am. Countercl., Ex. A [86-2].)  Judicial Watch agreed, *inter alia*, to

pay Klayman a lump sum of $400,000 as severance pay and continue his family health insurance

coverage for a period of one year (*Id.* ¶¶ 2, 3.)  The Severance Agreement contained a "Non-

Disparagement" clause; Klayman and Judicial Watch each agreed not to "directly or indirectly,

disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any

manner, disparaging, defamatory or negative remarks or comments about" the other party.  (*Id.* ¶

17.)  Each party agreed to reimburse the other for expenses and Klayman reaffirmed and

acknowledged a $78,810 debt that his law firm, Klayman and Associates, P.C., owed to Judicial

Watch.  (*Id.* ¶ 10, 11.)

     The Severance Agreement contained a provision addressing the treatment of confidential

information and Judicial Watch property.  (*Id.* ¶ 4.)  The confidentiality provision provided, in

relevant part:

> A.    Confidential Information.  Klayman agrees that all non-public information
> and material, whether or not in writing concerning Judicial Watch, its operations,
> programs, plans, relationships, donors, prospective donors, clients, prospective
> clients, past or current employees, contracts, financial affairs or legal affairs
> (collectively, "Confidential Information") are confidential and shall be the
> exclusive property of Judicial Watch to which Klayman has no right, title or
> interest. . . . Klayman agrees that after the Separation Date [September 19, 2003],
> he shall not disclose any Confidential Information to any person or entity or use
> Confidential Information for any purpose without written approval by an officer of
> Judicial Watch, unless and until such Confidential Information has become public
> knowledge through no fault or conduct by Klayman.
>
> *    *    *    *
>
> D.    Client and Donor Information. . . . Klayman expressly agrees and

2

acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor or client lists or donor or client data.

(*Id*. ¶ 4(A), (D).)  Finally, the Severance Agreement contained a non-competition and non-solicitation provision under which Klayman was prohibited from engaging in specified business activities, including working for a Judicial Watch competitor and soliciting Judicial Watch donors for contributions to a competitor, for a period of two years.  (*Id*. ¶ 5.)  Judicial Watch agreed to "pay Klayman $200,000 in consideration of his agreement not to compete or solicit." (*Id*. ¶ 6.)

On April 12, 2006, Klayman and Louise Benson,[3] a Judicial Watch supporter and donor, brought suit against Judicial Watch and its President, Thomas J. Fitton.  (*See* Compl. [1].) Klayman later amended his Complaint to name Paul Orfanedes, the Secretary and a director of Judicial Watch, and Christopher Farrell, another director of Judicial Watch, as defendants.  (*See* Second Am. Compl.)  In Counts Six, Seven and Eight, Klayman alleges that Judicial Watch breached various obligations owed to him under the Severance Agreement and in Count Nine he alleged that Judicial Watch defamed him by disseminating allegedly false statements to Judicial Watch employees and the media.[4]  (*Id*. ¶¶ 66, 115-162.)  In Count Four, Klayman also brings a claim under Section 43(a) the Lanham Act, which provides:

Any person who, on or in connection with any goods or services, or any container

---

[3] By Order dated January 17, 2007, Judge Kollar-Kotelly dismissed Counts One, Two and Three of the Second Amended Complaint, which are the only claims that involve Benson.  (*See* Order [35].)

[4] Judge Kollar-Kotelly granted Defendants' Motion for Partial Summary Judgment "as to the allegations contained in Count Six that Judicial Watch fraudulently induced Klayman to enter the Severance Agreement and the allegations contained in Counts Seven and Eight that Judicial Watch failed to pay Klayman for the period between September 15 and September 19, 2003." (Order [51] dated 4/3/07.)  Judge Kollar-Kotelly also dismissed Count Nine "insofar as it relates to allegedly defamatory statements made in Judicial Watch Form 990 tax returns and allegedly doctored press quotations posted on the Judicial Watch website."  (Order [35] dated 1/17/07.)

for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)-(B).

Defendants have asserted counterclaims against Klayman. (*See* Am. Countercl. [86].) They allege that Klayman breached the Severance Agreement by failing to reimburse Judicial Watch for expenses, as required by Paragraph 10, failing to pay the outstanding balance of his law firm's debt, as required by Paragraph 11, and violating the non-disparagement provision through his remarks about Judicial Watch and Fitton. (*Id.* ¶¶ 69-79, 117-124.) Defendants further allege that subsequent to his departure from Judicial Watch, Klayman used "Confidential Information" in violation of Paragraph 4 of the Severance Agreement and that he violated the non-compete clause of Paragraph 5. (*Id.* ¶¶ 125-138.) Defendants have also brought claims against Klayman under the Lanham Act, alleging trademark infringement, unfair competition, and "cybersquatting." (*Id.* ¶¶ 84-116.)

On June 13, 2007, Judicial Watch served their first set of interrogatories, and all Defendants served their Request for Production of Documents, on Klayman. (Def.'s Mem. Supp. Mot. Compel Interrogatories ("Def.'s Mem. Interrogs.") [88-2] at 1; Def.'s Mem. Supp. Mot.

4

Compel Documents ("Mem. Supp. Docs.") [89-2] at 1.)  Klayman's responses to both sets of discovery requests were due by July 16, 2007, but Klayman did not respond until July 23, 2007. (*Id.*)  On October 30, 2007, Defendants sent a letter to Klayman's counsel outlining what they believed were deficient responses to their interrogatories and document requests.  (Def.'s Mem. Interrogs. at 1; Def.'s Mem. Docs. at 2.  *See also* Letter of 10/30/07 [88-6].)  Klayman served supplemental answers to Judicial Watch's interrogatories on November 9, 2007, which Judicial Watch also deemed non-responsive, and indicated that he "hope[d] to be in a position to produce responsive documents" the following week.  (Def.'s Mem. Interrogs. at 2; Def.'s Mem. Docs. at 3; E-mail from Jeffrey H. Schervone [88-8].)  After attempting to resolve this discovery dispute without judicial intervention, Defendants filed the instant Motions, asking this Court to order Klayman to provide complete answers to Interrogatories Nos. 7-10 and 13-22 and Document Requests Nos. 1-21.  (Def.'s Mem. Interrogs. at 2; Def.'s Mem. Docs. at 9.)

## II.    **Discussion**

### A.    Plaintiff's Untimely Objections

Pursuant to Federal Rule of Civil Procedure 33(b)(4), a responding party must state its "grounds for objecting to an interrogatory [ ] with specificity.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."  A similar rule of waiver applies to requests for the production of documents under Rule 34(b).  *Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C. 1999); *Peskoff v. Faber*, 244 F.R.D. 54, 64 (D.D.C. 2007). Courts have broad discretion to determine whether a party has waived its objections to discovery requests by filing those objections in an untimely manner.  *Blumenthal*, 186 F.R.D. at 240.

Defendants argue that Klayman waived his objections to their interrogatories and document requests because he filed his responses one week after they were due. (Def.'s Mem. Interrogs. at 1; Def.'s Mem. Docs. at 2.) Klayman explains his untimeliness as follows:

> Counsel informally reached out by telephone on or about July 13, 2007 to advise that due to scheduling conflicts, responses were still being prepared and would be served promptly, which they were. Opposing counsel did not respond and counsel operated under the assumption that this brief extension was acceptable. Opposing counsel was aware at that time that Klayman was preparing responses and that responses would be provided as soon as possible. Klayman served responses promptly thereafter.

(Pl.'s Opp'n to Def.'s Mot. Compel Interrogs. [93] at 3.) In *Blumenthal*, the court stressed the importance of discovery deadlines and the obligation of counsel to comply with them. 186 F.R.D. at 240. After plaintiffs' counsel in that case served untimely discovery responses, the court admonished plaintiffs' counsel that before violating a discovery deadline they were obligated to seek an extension of time from opposing counsel or the court. *Id*. In the present case, Klayman's counsel essentiality granted his own request for an extension after he was unable to confer with opposing counsel. Klayman never sought leave of court to file his interrogatory answers or to produce documents after the July 23 deadline.

Nonetheless, this Court finds that Klayman's violation of the discovery deadlines was *de minimis* and Defendants have failed to demonstrate that they were prejudiced by a one-week delay. Therefore the Court will not deem Klayman's objections waived. However, Klayman and his counsel are put on notice that there is ample precedent for holding that their objections are waived, and this Court may choose to exercise its discretion in a different manner should it be faced with a similar situation in the future.

B.     Plaintiff's Responses to Judicial Watch's Interrogatories

Federal Rule of Civil Procedure 33(b)(3) provides that "each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  If a party to whom an interrogatory was propounded fails to answer, the Rules provide that "the discovering party may move for an order compelling an answer."  FED. R. CIV. P. 37(a)(3)(B).  An "evasive or incomplete" answer is treated as a failure to answer when determining whether the discovering party is permitted to file a motion to compel.  FED. R. CIV. P. 37(a)(4).  The party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete. *Daiflon, Inc., v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976), *cited in U.S. ex rel. El-Amin v. George Washington Univ.*, No. 1:95-cv-2000, 2000 WL 1763679, at *1 (D.D.C. Nov. 27, 2000).

1.     *Interrogatory No. 7*

This interrogatory asks Klayman to describe the facts supporting his claim that he is a "celebrity within the non-profit legal/political community."  (Def.'s Mem. Interrogs. at 2.) Notwithstanding his objection on the ground that this calls for a narrative response, Klayman responded that articles and interviews confirming his celebrity status could be located through a Google search.  (*Id.* at 2-3.)  Klayman also asserts that this question "is more appropriately asked at [his] deposition," rather than in an interrogatory.  (Pl.'s Opp'n to Def.'s Mot. Compel Interrogs. at 7.)

The Court will compel Klayman to provide a complete answer to this interrogatory for three reasons.  First, the information Judicial Watch seeks is relevant to Klayman's claim under the Lanham Act and even tracks language that Klayman used in Count Four of his Second

Amended Complaint.  (*See* Second Am. Compl. ¶ 100.)  Second, Klayman's assertion that this question should be saved for his deposition ignores the fact that one purpose of interrogatories is to allow Judicial Watch to prepare for Klayman's deposition.  Finally, Klayman's direction that Judicial Watch conduct a Google search to locate responsive documents is inappropriate because one of the primary "purpose[s] of discovery is to make a trial 'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible' . . . ."  *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996) (quoting *United States v. Proctor & Gamble*, 356 U.S. 677, 683 (1958)).  Even if the information Judicial Watch seeks is available from another source, such as the Internet, Klayman is still obligated under Rule 33 to provide a full response based on his own knowledge.

### 2. *Interrogatory No. 8*

Interrogatory No. 8 directs Klayman to describe the damages he suffered in connection with Defendants' alleged use of his name or likeness in fund-raising activities and the manner in which the calculation of damages was performed.  (Def.'s Mem. Interrogs. at 4.)  Klayman initially stated that "[a]ll facts necessary to respond to this interrogatory are not in plaintiff's possession and control."  (*Id*.)  In his supplemental response, Klayman provided a general description of damages he has suffered and "reserve[d] the right to further supplement this response as discovery progresses up to and including at trial."  (*Id*.)

Klayman seeks $1.5 million in damages from Defendants on his Lanham Act claim, and in his supplemental response to Interrogatory No. 8 he sets forth some of the types of damages that he has suffered, such as "damage to fundraising," "confusion in the public," and

"interference with [his] private law practice." (*Id*. at 4-5.) He argues that he cannot provide a more detailed accounting of damages without accessing documents in Defendants' possession, but somehow managed to include a damage prayer in his complaint while laboring under the same lack of documentation. Because a party has an ongoing duty to supplement its disclosures, *see* FED. R. CIV. P. 26(e)(2), it is sufficient for a party to answer an interrogatory by stating that it is presently unable to provide the information sought. 7-33 MOORE'S FEDERAL PRACTICE - CIVIL § 33.102. However, this rule "cannot be used to push off the production of information properly requested and reasonably available; it was intended to apply only to information 'thereafter acquired.'" *Lohrenz v. Donnelly*, 187 F.R.D. 1, 7 (D.D.C. 1999). Accordingly the Court will compel Klayman to supplement his answer to Interrogatory No. 8 and provide a more detailed description of his damages. If the information needed to respond is not in his possession, he shall so state.

### 3.    *Interrogatory No. 9*

This interrogatory asks Klayman to detail any harm to his personal and business relationship and good will that he has suffered in connection with Defendants' alleged use of his name or likeness in fund-raising activities and to "identify all individuals with knowledge relating to the harm." (Def.'s Mem. Interrogs. at 6-7.) Plaintiff responded: "Other than as set forth in the pleadings in this case, plaintiff cannot respond to this interrogatory until the discovery of the defendants is completed." (*Id*. at 7.)

Rule 33 does not allow a party to answer an interrogatory by referencing a document; rather, the rule states that each question must be "answered separately and fully in writing under

oath." Fed. R. Civ. P. 33(b)(1).  *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir.

1995) (finding that reference to party's "position statement" was not sufficient to answer an

interrogatory that sought the factual basis for plaintiff's termination).  Klayman's answer is

deficient because it generally references the pleadings that have been filed in this litigation rather

than providing a full response to the question that Judicial Watch posed.  Accordingly the Court

will order Klayman to supplement his answer by detailing any harm he has suffered and

identifying individuals with knowledge of that harm.


        4.     *Interrogatory No. 10*

     This interrogatory asks Klayman to "[i]dentify and describe in detail each and every act of

defamation committed by Defendants against [him]."  (Def.'s Mem. Interrogs. at 7.)  Klayman's

supplemental answer contained extremely general descriptions of six alleged acts of defamation

by Defendants.  (*Id*. at 7-8.)  Judicial Watch argues that Klayman failed to describe these acts in

detail, as required by the interrogatory, stating:

> He fails to identify the date, time, and place of nearly all of the alleged statements.
> He largely fails to identify the persons to whom the allegedly defamatory
> statements were made and, in most instances, fails to identify what, specifically, is
> alleged to have been stated.  He also fails to identify any witnesses to the alleged
> statements.  Plaintiff also completely fails to identify which of the four defendants
> he has sued for defamation is alleged to have made any of the allegedly
> defamatory statements at issue.

(*Id*. at 8.)  Klayman asserts in his Opposition to Defendant's Motion to Compel that this is the

most full and complete description he can provide at the present time.  (Def.'s Opp'n to Def.'s

Mot. to Compel Interrogs. at 9.)  To the extent that Klayman currently possess additional

information that is responsive to this interrogatory, including more details about the six alleged

acts of defamation enumerated in his supplemental response, the Court will order Klayman to provide that information.  If, as he asserts in his Opposition, Klayman has insufficient information to respond, he shall so state under oath.


     5.    *Interrogatory No. 13*

Interrogatory No. 13 is directed at damages Klayman suffered in connection with remaining as guarantor of the Judicial Watch building lease.  (Def.'s Mem. Interrogs. at 9.) Klayman responded that the necessary documents were not in his control, but that he "has great liability on the lease."  (*Id*.)  Klayman alleges that Defendants breached the Severance Agreement by failing to remove him as guarantor of the lease.  (Second Am. Compl. ¶¶ 127, 145.)  The Court is skeptical that he included that claim in his Complaint without any information to support it.  Additionally, the statement that he "has great liability on the lease" is extremely vague. Therefore the Court will order Klayman to supplement his response to Interrogatory No. 13.


     6.    *Interrogatory No. 14*

This interrogatory asks Klayman to identify each item of property that Defendants allegedly failed to return to him, the estimated value of each item, any efforts Klayman made to retrieve the property, and "all individuals with knowledge relating to this contention."  (Def.'s Mem. Interrogs. at 9.)  Klayman initially responded by stating that "[s]uch information currently known" can be found in his Statement of Material Facts Genuinely in Dispute ("Statement of Material Facts"), which he submitted in opposition to Defendants' Motion for Partial Summary Judgment.  (*Id*. at 9-10.)  Klayman later supplemented his answer to identify general categories

of property, namely corporate books, client files, other person documents and artwork.  (*Id*.)  He estimated that the value of the artwork was $4,000 but could not provide an estimated value for the other items.  (*Id*.)  In terms of efforts made to retrieve the property, he stated: "Klayman repeatedly demanded access to Judicial Watch offices and return of his property."  (*Id*.)  Finally, Klayman failed to indicate whether there were any individuals with knowledge about his allegation that Defendants failed to return property to him.  (*Id*.)

Klayman's reference to his Statement of Material Facts was improper because, as stated above, a party generally may not answer an interrogatory by directing the requesting party to a document.  *But see* Fed. R. Civ. P. 33(d) (allowing a party to answer an interrogatory by producing business records).  His supplemental response is also insufficient because it fails to completely address the question asked.  For example, he identifies corporate books as property that Defendants wrongfully withheld, but fails to describe those books with sufficient detail to allow Defendants to ascertain which corporate books that they currently have in their possession are at issue in this lawsuit.  By merely naming general categories of property without providing identifying information, Klayman has subverted one purpose of discovery, namely narrowing the issues for trial.  Klayman also ignored the portion of the interrogatory that asked him to identify individuals with knowledge of this claim.  Therefore Klayman is ordered to supplement his answer to Interrogatory No. 14

7.    *Interrogatory No. 15*

Interrogatory No. 15 seeks evidence supporting Klayman's claim that he remains the guarantor for Judicial Watch credit cards, including the identities of all individuals with

knowledge of this issue.  (Def.'s Mem. Interrogs. at 11.)  Klayman first responded solely by

referencing information contained in his Statement of Material Facts.  (*Id*. at 12.)  He later added

that he is a guarantor of American Express, Visa, and MasterCard credit accounts, but any

additional information is in the possession and control of Defendants.  (*Id*.)

 While it is axiomatic that Klayman cannot provide information that he does not possess,

he also may not relieve himself of his obligation to respond to interrogatories by stating that the

information sought is already in Defendants' possession.  *Wagner v. St. Paul Fire & Marine Ins.*

*Co.*, 238 F.R.D. 418, 427 (N.D. W.Va. 2006).  To the extent that Klayman has additional

information about the credit card accounts or individuals with knowledge of his status as

guarantor, he must provide that information to Defendants.  Merely reciting the names of three

credit card companies does little to further the aims of discovery or to allow Defendants to

investigate Klayman's allegations.


    8. *Interrogatory No. 16*

 This interrogatory asks Klayman to describe the damages that he suffered in connection

with being listed as the guarantor of Judicial Watch credit cards, as well as the names of

individuals with knowledge relating to this issue and details about how the damages were

calculated.  (Def.'s Mem. Interrogs. at 12.)  Klayman's only response was that the facts necessary

to answer this interrogatory are not in his possession and control.  (*Id*. at 12-13.)  The Court is

skeptical that Klayman does not have *any* information that is responsive to this interrogatory

considering that he seeks damages for breach of contract based, in part, on Judicial Watch's

alleged failure to remove him as the guarantor of credit card accounts.  (*See* Second Am. Compl.

¶ 144.) Therefore Klayman is ordered to supplement his answer to Interrogatory No. 16.

         9.    *Interrogatory No. 17*

This interrogatory directs Klayman to "[l]ist every television and newspaper interview [he has] participated in since [his] departure from Judicial Watch." (Def.'s Mem. Interrogs. at 13.) Klayman objected on the grounds that the question was overbroad, vague and ambiguous, and noted that Defendants could obtain responsive information by conducting a Google search. (*Id*.) The Court finds nothing vague or ambiguous about this question. Nor does the Court believe that this interrogatory is overbroad in light of the relevance of these interviews to Klayman's claim that Defendants' actions caused the media to "shun" him and refrain from inviting him to discuss matters of public concern. (Second Am. Compl. ¶ 40-41.) Also, as stated above, directing a requesting party to conduct an Internet search for responsive material does not satisfy a responding party's obligation to provide a full and complete answer to each interrogatory. Therefore Klayman must answer this interrogatory.

        10.    *Interrogatory No. 18*

Interrogatory No. 18 asks Klayman to describe the artwork that is at issue in this case. (Def.'s Mem. Interrogs. at 14.) Klayman first directed Defendants to his Statement of Material Facts and later supplemented his answers as follows: "Included, is Artwork from the Kennedy Gallery in Miami Beach, Florida. Also, Klayman is the owner of at least four significant pieces that show various scenes and designs." (*Id*.) These responses are incomplete and do not allow Defendants to identify which pieces of artwork are the subject of Klayman's claims. Most, if not

14

all, artwork depicts some type of scene or design, rendering Klayman's answer useless to

Defendants. Also, by using words like "included" and "at least," Klayman implies that there are

other pieces of artwork besides those he mentions. Klayman failed to fully answer this

interrogatory as Rule 33 requires him to do and now he must fulfill that obligation by providing a

more comprehensive response.


11.    *Interrogatory No. 19*

Interrogatory No. 19 asks for the identities of all counsel who assisted Klayman during

the negotiation of the Severance Agreement. (*Id*. at 15.) Klayman responded by indicating that

"[c]ounsel's name is on the Severance Agreement and otherwise known to Defendants." (*Id*.)

This answer is non-responsive because Defendants seek the names of any attorneys who assisted

Klayman in negotiating the agreement, not just those who signed the agreement. The Court will

order Klayman to provide the names of any attorneys he consulted with during the negotiation

process or who otherwise assisted him. If there are no other attorneys, Klayman shall so state.


12.    *Interrogatory No. 20*

Interrogatory No. 20 seeks the names of "each and every person from whom Judicial

Watch employees concealed [Klayman's] location." (*Id*.) This question relates to Klayman's

contention that "in breach of the Severance Agreement, Fitton and Judicial Watch employees and

agents concealed from and misrepresented Klayman's location from people that called asking for

Klayman." (Second. Am. Compl. ¶ 36.) In response, Klayman did not provide the name of a

single person from whom Judicial Watch allegedly concealed his location. (Def.'s Mem.

15

Interrogs. at 15-16.)  Instead, he stated that Judicial Watch concealed his location "from every

person who called into Judicial Watch."  (*Id*. at 15.)  This answer is insufficient because the

interrogatory seeks the *identities* of individuals from whom Judicial Watch concealed Klayman's

location.  Therefore to the extent that Klayman knows the identity of any of these people who

called into Judicial Watch, he shall provide that information to Defendants.


      13.    *Interrogatory No. 21*

This interrogatory asks for the identities of "each and every member of the media that

Defendants threatened with legal action if they referred to [Klayman] as founder and/or former

chairman of Judicial Watch."  (*Id*. at 16.)  Klayman responded, "On information and belief, every

major TV and radio network."  (*Id*.)  This answer is plainly non-responsive because it does not

provide the identities of these networks or other members of the media.  Therefore Klayman

must supplement his response.


      14.    *Interrogatory No. 22*

Interrogatory No. 22 seeks the "source(s) of the 'Saving Judicial Watch' donor list."  (*Id*.

at 17.)  Klayman objected, arguing that this interrogatory seeks "confidential, proprietary and

irrelevant information."  (*Id*.)  Subject to that objection, he stated that Judicial Watch is not the

source of the donor list, but otherwise failed to identify the source.  (*Id*.)  This interrogatory is

clearly relevant to Defendants' counterclaims against Klayman because it relates to his alleged

breach of the confidentiality provision of the Severance Agreement.  Klayman's other objections

also fail because there is a protective order in place in this case that limits the use of confidential

or proprietary information.  (*See* Order [83] dated 12/3/07.)  Accordingly Klayman must answer

this interrogatory by identifying the source of the donor list.  Stating that Judicial Watch is not

the source of the list is insufficient.

         C.      Plaintiff's Responses to Defendants' Document Requests

Federal Rule of Civil Procedure 34 governs requests for the production of documents.

Rule 34(b)(2)(B) provides that for each document or category of documents sought, the

responding party "must either state that inspection and related activities will be permitted as

requested or state an objection to the request, including the reasons."  If the responding "party

fails to respond that inspection will be permitted - or fails to permit inspection - as requested by

Rule 34," the party seeking disclosure may move for an order compelling production or

inspection.  FED. R. CIV. P. 37(a)(3)(B).  "[A]n evasive or incomplete disclosure . . . must be

treated as a failure to disclose" when determining whether a requesting party may file a motion to

compel.  FED. R. CIV. P. 37(a)(4).  The party alleging the deficiency in document production and

bringing the motion to compel bears the burden of proof.  *El-Amin*, 2000 WL 1763679, at *1.

         1.     *Document Request No. 1*

Defendants seek all documents that Klayman reviewed or consulted in preparing his

interrogatory responses.  (Def.'s Mem. Docs. at 3.)  Klayman responded that he would produce

only those documents identified in his answers to interrogatories, yet has produced nothing.  (*Id.*

at 4.)  Documents that Klayman identified in his interrogatory responses are not necessarily the

same as documents that Klayman reviewed or consulted in preparing his interrogatory responses.

Klayman has not asserted a valid objection to producing the documents Defendants seek and accordingly the Court will order him to produce all documents that are responsive to this request.

        2.       *Document Request No. 2*

This request directs Klayman to produce documents that support his "claim that Defendants misused and/or misrepresented [his] name and/or likeness for fundraising activities." (*Id*. at 4.) Klayman responded that he would produce "relevant documents evidencing Plaintiff's calculation of damages . . . at a mutually agreeable time, date, and place." (*Id*.) Documents regarding his calculation of damages are not the same as documents that support Klayman's claim that Defendants misused or misrepresented his name or likeness. Moreover, it is not for Klayman to unilaterally decide which documents are relevant and should be produced. *Alexander v. F.B.I.*, 186 F.R.D. 54, 59 (D.D.C. 1998) (noting that parties "may not arrogate to themselves the power to determine what constitutes a relevant document"). Contrary to Klayman's assertion, the documents Defendants seek are directly relevant to Klayman's claim under the Lanham Act. Therefore Klayman must produce all documents that are responsive to Request No. 2.

        3.       *Document Requests Nos. 3, 4 and 6*

For each of these requests, Klayman indicated that "[r]elevant, non-privileged documents will be produced at a mutually agreeable time, date and place." (*Id*. at 6-8.) As stated above, Klayman may not determine for himself which documents are relevant or non-privileged. If he believed that responsive documents should be withheld on those bases, he should have raised an

objection to that effect.  Because the Court believes these requests seek relevant information and because Klayman has not presented any information to support a finding of privilege, the Court will compel Klayman to produce all documents that are responsive to Requests Nos. 3, 4 and 6.

       4.     *Document Request No. 5*

This request asks for "[a]ll documents relating to the Severance Agreement." (*Id*. at 7.) Klayman objected on two grounds.  First, he argues that this request "is vague, ambiguous and overly broad." (*Id*.)  This objection fails because "[s]uch pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure." *Obiajulu v. City of Rochester, Dept. of Law*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996).  *See also Gheesling v. Chester*, 162 F.R.D. 649, 650 (D. Kan. 1995) ("A party opposing a discovery request cannot make conclusory allegations that a request is irrelevant, immaterial, unduly burdensome, or overly broad.").  Instead, the party resisting discovery must specifically demonstrate how the request is vague, ambiguous or overly broad. *Gheesling*, 162 F.R.D. at 650.

Second, Klayman argues that this request "seeks documents that are protected by the attorney client, work product, and other applicable privilege." (Def.'s Mem. Docs. at 7.)  This objection also fails because "a general claim or privilege . . . is an inadequate response to a discovery request." *Obiajulu*, 166 F.R.D. at 295.  This requirement is embodied in Rule 26, which states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(I) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. P. 26(b)(5)(A). Klayman has not produced a privilege log or otherwise met his burden of establishing that these privileges apply. Therefore the Court will order Klayman to produce all documents that are responsive to Request No. 5.

5.    *Document Request No. 7*

Request No. 7 seeks "[a]ll documents relating to the calculation of money owed to [Klayman] by Judicial Watch." (Def.'s Mem. Docs. at 8.) Klayman responded that all "[r]elevant documents relating to personal expenses owed to the plaintiff are in the possession and custody and control of the defendants." (*Id*.) Again, Klayman is attempted to unilaterally define the scope of permissible discovery. Because the Court believes this request seeks relevant documents, Klayman is ordered to produce all responsive materials in his possession, custody or control.

6.    *Document Requests Nos. 8, 9, 10, 13, and 14*

Klayman did not object to these requests but rather responded that he would produce relevant documents "at a mutually agreeable time, date and place" and that some relevant documents were already in Defendants' possession, custody and control. (*Id*. at 9-10, 13-14.) Klayman will be ordered to produce all documents that are responsive to these requests and not just those he believes to be relevant. Also, Klayman is reminded that he also may not relieve

himself of his obligation to respond to document requests by stating that the information sought is already in Defendants' possession if he also possesses those documents.

### 7.    *Document Request No. 11*

This request seeks "[a]ll documents relating to the calculation of damages in connection to [Klayman's] position as guarantor of the building." (*Id*. at 10-11.) Klayman objected on the ground that this request was duplicative of Document Request No. 3, which seeks "[a]ll documents relating to the calculation of [Klayman's] claims of damages." (*Id*. at 6.) The documents sought in Request No. 11 are a subset of the documents sought in Request No. 3. The Court has already indicated that it will order Klayman to produce documents that are responsive to Request No. 3, so it follows that Klayman must produce documents that are responsive to this request, as well.

### 8.    *Document Request No. 12*

Klayman objected to this request, which seeks communications between him and Peter F. Paul, on three grounds. (*Id*. at 11.) First, he argues that the request "is vague, ambiguous and overly broad." (*Id*.) As stated above, a mere recitation of this familiar litany of objections is insufficient without a specific showing of how the request is vague, ambiguous or overbroad. Second, Klayman asserts the attorney client and work product privileges, (*Id*.) but fails to comply with the requirements of Rule 26(b)(5). Finally, he makes the conclusory statement that the request "seeks irrelevant information the production of which would be burdensome and harassing," (*Id*.) but does not provide further argument to support his objection. Accordingly the

Court will order Klayman to produce all documents that are responsive to Request No. 12.

9.    *Document Request No. 15-21*

Klayman objected to Request No. 15 "on the grounds that is seeks information the production of which would be burdensome and harassing." (*Id*. at 14.)  For Requests Nos. 16-21, Klayman repeats a similar objection: "Plaintiff objects to this request on the ground that it is overly broad and seeks documents that are irrelevant to the subject matter of this litigation, the production of which would be burdensome and harassing." (*Id*. at 14- 20.)  Other than briefly stating these objections, Klayman does not otherwise explain how these requests are burdensome and harassing.  That he provided further explanation in his Opposition to Defendants' Motion is immaterial because he had an obligation to state his objections with specificity when responding to the document requests.  FED. R. CIV. P. 33(b)(4).  Additionally, the Court has examined Requests Nos. 16-21 and disagrees with Klayman's assertion that they seek irrelevant information.  To the contrary, theses request directly relate to Defendants' counterclaims. Therefore the Court will compel Klayman to produce documents that are responsive to Requests Nos. 15-21.

D.    <u>Defendants' Request for Sanctions</u>

Defendants seek sanctions under Federal Rule of Civil Procedure 37, which provides:

If the motion [to compel] is granted - or if the disclosure or requested discovery is provided after the motion was filed - the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court

must not order this payment if:

(I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A).

After reviewing Defendants' interrogatories and document requests and Klayman's responses thereto, it is clear to the Court that Klayman is attempting to stonewall Defendants and otherwise subvert the purposes of discovery by providing patently evasive answers, asserting boilerplate objections, and unilaterally making determinations of relevance. This behavior is without question unacceptable, but the Court is willing to provide Klayman and his counsel with one more opportunity to conduct discovery in a professional and efficient manner. Klayman will have ten days within which to supplement his responses to Defendants' interrogatories and document requests. If these supplemental responses evidence the same obstructionist tactics that the Court has already observed, Defendants should bring Klayman's behavior to the Court's attention in a renewed motion for sanctions.

**III.    Conclusion**

For the foregoing reasons, it is this  16th  day of January, 2008, hereby

**ORDERED** that Defendant's Motion to Compel Plaintiff's Answers to Defendant's Interrogatories [88] is **granted**. Klayman shall supplement his responses to Judicial Watch's interrogatories within 10 days of this Memorandum Order; and it is further

**ORDERED** that Defendants' Motion to Compel Plaintiff's Responses to Defendants'

Request for Production of Documents is **granted**.  Klayman shall supplement his responses to

Defendants' document requests within 10 days of this Memorandum Order; and it is further

**ORDERED** that Defendants' request for sanctions is **denied without prejudice**.


_____/s/_____

ALAN KAY
UNITED STATES MAGISTRATE JUDGE

24