IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:06-CV-00670 (CCK) |
| JUDICIAL WATCH, INC., *et al.*, | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S OBJECTIONS TO
MAGISTRATE JUDGE'S MEMORANDUM ORDER OF JANUARY 8, 2008
CONCERNING THIRD PARTY SUBPOENAS**

Defendants Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton"), Paul J. Orfanedes, and Christopher J. Farrell, by counsel and pursuant to Rule 72 of the Federal Rules of Civil Procedure and Local Civil Rule 72.2, respectfully submit this opposition to Plaintiff's Objections to Magistrate Judge's Memorandum Order of January 8, 2008 Concerning Third Party Subpoenas. As grounds, Defendants state as follows:

**MEMORANDUM OF LAW**

**I.      Introduction**

On January 8, 2008, Magistrate Judge Alan Kay issued a carefully-crafted and cogent ruling rejecting Plaintiff Larry Klayman's ("Klayman") motion to quash Defendants' third party subpoenas. Approximately one week later, Magistrate Kay issued another ruling in which he again rejected Klayman's efforts to block Defendants' legitimate discovery efforts. In so ruling, Magistrate Kay found Klayman had attempted to subvert the discovery process:

> After reviewing Defendants' interrogatories and document requests
> and Klayman's responses thereto, it is clear to the Court that
> Klayman is attempting to stonewall Defendants and otherwise

> subvert the purposes of discovery by providing patently evasive answers, asserting boilerplate objections, and unilaterally making determinations of relevance. This behavior is without question unacceptable, but the Court is willing to provide Klayman and his counsel with one more opportunity to conduct discovery in a professional and efficient manner.

*See* Memorandum Order, dated January 16, 2008, at 23.

Unchastened by the Magistrate's January 16, 2008 decision, Klayman is yet again stonewalling Defendants' legitimate discovery and subverting the discovery process, this time by filing baseless objections to the Magistrate's January 8, 2008, ruling.[1] Klayman's objections come nowhere close to satisfying the exacting standards governing challenges to magistrate judges' rulings. They should be overruled in their entirety.

## II. Factual Background

In October 2007, Defendants served document subpoenas on American Target Advertising, Inc. ("ATA"), Chester Mailing List Consultants, Inc. ("Chester"), Response Unlimited, Inc. ("Response"), and Diener Consultants, Inc. ("Diener") (collectively "the Subpoenaed Entities"). *See* Memorandum Order ("Mem. Order"), dated January 8, 2008, at 4. Klayman admits that he hired the Subpoenaed Entities to manage his various direct mail marketing programs and advertising campaigns. Specifically, Klayman admits:

> Klayman hired ATA, and later Diener and Response to provide services in the preparation of letters that are mailed nationally, or for advertising, respectively. Specifically, Klayman provided to ATA and Response content intended for Klayman's direct mail marketing program. ATA and Response provided other services, including printing, list rental and mailing on behalf of Klayman. Also, Klayman contracted ATA and Response in connection with his marketing activities. ATA and Response sent out Klayman's direct mail and in return, ATA and Response were paid for their

---

[1] After being extended once until January 31, 2008, largely to accommodate Klayman, fact discovery now closes on May 15, 2008. Despite Defendants' diligent efforts, not a single deposition has been taken to date.

2

> services. Additionally, Klayman contracted with ATA and Response in connection with the receipt of funds generated by Klayman's marketing efforts, as well as the data analysis associated with these efforts.
>
> On behalf of Klayman, ATA apparently hired Chester, now no longer in existence but related to ATA, to provide management consulting services, including mail list compilation services for Klayman. Also, Klayman hired Diener, which is an entity associated with Response, to specifically advertise in national newspapers, including *The Washington Times*.

*See* Plaintiffs' [sic] Motion to Quash Subpoenas, or Alternatively for Protective Order ("Plf's Motion") at 2-3; *see also* Plaintiffs' [sic] Reply Memorandum in Support of Motion to Quash Subpoenas, or Alternatively for Protective Order ("Plf's Reply") at 4 ("Of course, Klayman consulted with the Subpoenaed Entities regarding fundraising activities . . . .").

Both Judicial Watch and Fitton have asserted counterclaims against Klayman arising directly from these same direct mail marketing programs and advertising campaigns. *See* Defendants' Memorandum in Opposition to Plaintiff's Motion to Quash Subpoena or, Alternatively, for Protective Order ("Defs' Opp.") at 2-3; Defendants' Surreply to Plaintiff's Motion to Quash Subpoenas or, Alternatively, for Protective Order ("Defs' Surreply") at 4-5. Specifically, Judicial Watch and/or Fitton allege Klayman's various direct mail marketing programs and advertising campaigns breached the confidentiality, non-competition, and non-disparagement clauses of Klayman's September 19, 2003 Severance Agreement with the organization. *Id.* Judicial Watch also alleges that, in carrying out his direct mail marketing programs and advertising campaign, Klayman infringed Judicial Watch's federally registered trademarks and violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Id.*

Judicial Watch's claim for breach of the confidentiality provision of the severance agreement relates primarily to Klayman's hiring of ATA in 2003-04 to raise funds for his unsuccessful 2004 U.S. Senate campaign. *See* Def's Opp. at 3. Based on his tenure at Judicial

3

Watch, Klayman knew that ATA had managed Judicial Watch's direct mail fundraising operations for a substantial period of time, and Klayman further knew that he could gain access to Judicial Watch donor information by going to ATA and having it perform certain "list selects" on its master file, which Klayman knew included names, addresses, and other information about Judicial Watch donors.[2]  *See* Defs' Opp. at 3; Defs' Surreply at 2.  An article by David Corn published in the March 29, 2004 edition of *The Nation* confirms that Klayman obtained Judicial Watch donor data through ATA:

> In the first three months of Klayman's campaign, he raised $610,555, mostly through direct-mail fundraising conducted by [Richard] Viguerie's American Target Advertising, according to Federal Election Commission records.  In this period, Klayman paid ATA $577,358.  That is, the revenue barely covered the direct-mail costs . . . And a report prepared in late January by ATA noted that the Klayman campaign had sent out slightly more than 1 million pieces at a cost of $730,315 and brought in $703,155.  ***Viguerie was using an assortment of conservative mailing lists, yet Klayman was scoring reasonably well mainly with those from Judicial Watch, according to ATA records***.  These Judicial Watch lists, though, were several years old . . . .[3]

*See* Defs' Opp. at 4-5.

The confidentiality provision of the Severance Agreement is quite broad.[4]  It contains no

---

[2]  List selects/orders are instructions or directions applied to a database/master file to cull out certain desired data, such as names, addresses, and other information about donors. List selects/orders are not the names, addresses, or other information contained in the database/master file. *See* Defs' Opp. at 4.

[3]  The article also confirms that ATA possesses as least some of the documents Defendants seek and undermines any claim that these documents are confidential.

[4]  Paragraph 4 of the Severance Agreements states, in relevant part:

> A. <u>Confidential Information</u>.  Klayman agrees that all non-public information and materials . . . concerning Judicial Watch, its operations, plans, programs, relationships, donors, prospective donors, clients, prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of

4

time limitation. The obligation arises on September 19, 2003 (date of the Severance Agreement) and continues in perpetuity. Discovery of Klayman's agreements, communications, and correspondence with ATA and its affiliate, Chester, as well as information about what "list selects" were performed and what "list orders" were placed for the ATA master file, is central to Judicial Watch's claim that Klayman violated the confidentiality clause of the severance agreement by misusing confidential, business proprietary information he obtained during his tenure at Judicial Watch regarding the organization's fundraising operations, strategies, donors, and vendor relationships. Similarly, reports, analyses, and accountings of the results of Klayman's direct mail and advertising campaign will assist in demonstrating the harm Judicial Watch suffered as a result of Klayman's misuse of Judicial Watch's confidential information for his U.S. Senate campaign. At a minimum, Judicial Watch's subpoenas are highly likely to lead to the discovery of admissible evidence in support of this claim.[5]

---

> Judicial Watch to which Klayman has no right, title or interest. . . . Confidential Information includes matters not generally known outside Judicial Watch, such as . . . donor lists, . . . contacts at or knowledge of . . . donors or prospective . . . donors . . . . Klayman agrees that after the Separation Date, he shall not . . . use Confidential Information for any purpose without written approval by an officer of Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman . . . .
>
> D. <u>Client and Donor Information</u>. . . . Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor . . . lists or donor . . . data.

*See* Defs' Surreply at 3, n.1.

[5]   In his original moving papers, Klayman appeared to argue that Judicial Watch's allegations do not constitute a breach of the confidentiality clause of the severance agreement. Judicial Watch obviously disagrees. Nonetheless, Klayman never moved to dismiss this claim, and a discovery motion is neither the proper time nor the proper vehicle to make such arguments. Whether Klayman breached the confidentiality provision of the severance agreement is an issue to be determined at trial or, at the earliest, on a summary judgment motion, *after* full discovery. It should not be dictated by Klayman during the course of discovery.

Judicial Watch also alleges that Klayman breached the non-competition clause of the Severance Agreement, for which Judicial Watch paid Klayman substantial consideration, by undertaking a direct mail marketing campaign in March/April 2005 under the name "Freedom Watch."[6] The March/April 2005 campaign fell well within the clause's two year prohibition, which did not expire until September 19, 2005. The discovery Judicial Watch seeks goes to the core of this claim, as it will show the scope and extent of the March/April 2005 campaign, the audience to whom the campaign was directed, and the income that it generated. It also will assist in demonstrating the harm Judicial Watch suffered as a result of Klayman's breach. At a minimum, Judicial Watch's subpoenas are reasonably calculated to lead to the discovery of admissible evidence in support of this claim.

Finally, Judicial Watch and Fitton have asserted claims against Klayman for breach of the non-disparagement clause of the Severance Agreement, and Judicial Watch has asserted claims

---

[6] The clause states, in relevant part:

> B. <u>Covenant Not to Compete or Solicit</u>. Klayman agrees that, in order to enable Judicial Watch to preserve and protect Judicial Watch's valuable and legitimate business interests, . . . and in exchange for the additional consideration referred to in paragraph 6 . . . (which the parties acknowledge to be separately bargained for), Klayman shall not, for a period of two (2) years following the Separation Date [September 19, 2003], directly or indirectly, (i) work or render advice as an individual or sole proprietor in Competition with Judicial Watch or work or render advice as an employee, agent, independent contractor, consultant or representative of any person, firm or legal entity which is engaged in or has plans to enter into Competition with Judicial Watch. For purposes of this Agreement, the term "Competition" means directly or indirectly engaging in the work or advancing the mission of any ethics, anti-corruption, public integrity and government accountability watchdog or similar public interest or educational organization, or engaging in any other activities the purpose or effect of which would be to provide information, programs, publications, services or products that Judicial Watch offers, develops or sells or has plans to offer, develop or sell, as of the Separation Date . . . .

*See* Defs' Surreply at 3, n.1

6

against Klayman for trademark infringement and for violating Section 43(a) of the Lanham Act. These particular claims arise from direct mail marketing and advertising campaigns undertaken by Klayman using the names "Saving Judicial Watch" and "Freedom Watch" following the initiation of this litigation in 2006 and up to and including the present. Again, the discovery Judicial Watch seeks will show the scope and extent of these campaigns, the audience to whom the campaigns were directed, and the income that they generated. It also will assist in demonstrating the harm Judicial Watch suffered as a result of the campaigns. Again, such evidence relates to the very core of these claims.

In sum, all four of Judicial Watch's subpoenas seek relevant and probative evidence from entities Klayman admits hiring to assist him in the various direct mail marketing and advertising campaigns he undertook from 2003 through 2007. As determined by Magistrate Kay, the subpoenas unquestionably are proper.

## III.    Argument

### A.    Legal Standard Governing Objections to Magistrate Orders

In the context of filing "objections" to a Magistrate's order, LCvR 72.2(c) permits the Court to modify or set aside any portion of the order "found to be clearly erroneous or contrary to law". This Court set forth the standard governing such motions in *Globalaw, Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp.2d 1 (D.D.C. 2006), in which it denied a motion for reconsideration of a discovery ruling made by Magistrate Kay:

> Local Civil Rule 72.2(b) states that "[a]ny party may request the judge to reconsider a magistrate judge's ruling under paragraph (a) by filing a motion to reconsider within 10 days[.]" Local Civil Rule 72.2(c) sets forth the basis for reconsideration, stating that "a judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be clearly erroneous or contrary to law." *See also* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be

> clearly erroneous or contrary to law.") (emphasis original). A court should make such a finding when "'on the entire evidence' the court 'is left with the definite and firm conviction that a mistake has been committed.'" *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 365, 68 S. Ct. 525, 92 L. Ed. 746 (1948)); *see also Gluck v. Ansett Australia*, 204 F.R.D. 217, 218 (D.D.C. 2001).
>
> Furthermore, a motion for reconsideration is "not simply an opportunity to reargue facts and theories upon which the court has already ruled." *United States v. Funds from Prudential Sec.*, 245 F. Supp. 2d 41, 44 (D.D.C. 2003) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)). Nor is it "a vehicle for presenting theories or arguments that could have been presented earlier," *id*. at 38, or a method of introducing evidence that was "available but not offered at the original motion or trial," *Natural Res. Def. Council, Inc. v. United States Envt'l Prot. Agency*, 705 F. Supp. 698, 702 (D.D.C. 1989), *vacated on other grounds*, 707 F. Supp. 3 (D.D.C. 1989). Indeed, "[p]arties must take before the magistrate, not only their best shot, but all of their shots." *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

*Globalaw Ltd.*, 452 F. Supp.2d at 59-60.

Local Rule 72.2 also requires that a movant "shall specifically designate the order or part thereof to which objection is made, and the basis for the objection." LCvR 72.2(b). Plaintiff's objections, which consist of a few sparse paragraphs, conspicuously lack any reference to specific portions of Magistrate Kay's January 8, 2008, Order that are alleged to be erroneous, much less any legal authority establishing that the Magistrate clearly erred as a matter of fact or law. Plaintiff's Objections fall far short of these standards.

### B. Plaintiff's "Objections" are Meritless

Plaintiff essentially raises four arguments, each of which lacks merit. None of them give rise to a "definite and firm conviction that a mistake has been committed." *Globalaw Ltd.*, 452 F. Supp.2d at 59 (internal citations and quotations omitted).

Klayman first raises a "catch all" argument, generically asserting that Magistrate Kay's

8

ruling "largely falls (sic) to address each of [Klayman's] objections on the merits." *See* Objections to Magistrate Judge's Memorandum Order of January 8, 2008 Concerning Third Party Subpoenas ("Plf's Obj.") at ¶ 3. In the underlying proceedings, Klayman objected to Defendants' subpoenas as: (1) overly broad; (2) unduly burdensome; (3) seeking documents that were irrelevant; (4) seeking documents containing trade secrets or other confidential commercial material; and (5) seeking information that was subject to an "associational" privilege under the First Amendment.

Each of Plaintiff's "catch all" objections was rejected by Magistrate Kay on the merits. The January 8, 2008, Order states that the subpoenas were not overly broad, did not seek irrelevant materials, and were not unduly burdensome. *See* Mem. Order at 6-7. Magistrate Kay held that, even if the subpoenas sought proprietary, trade secret, or confidential information -- a conclusion he did not reach -- this Court's December 3, 2007, Protective Order addressed any such concerns. *Id.* at 6-7. He also rejected Klayman's "associational privilege" argument, concluding, "More fundamentally, the Court has carefully reviewed the four subpoenas and concludes that Judicial Watch is not seeking the names of donors or other information that could potentially be protected by the First Amendment." *Id.* at 7. That Magistrate Kay ruled against Klayman on each of these issues does not mean he did not consider them.

Moreover, Klayman conflates the Magistrate's ruling on the scope and relevance of the subpoenas with the Magistrate's ruling on Klayman's claim of proprietary, trade secrets, and/or confidential commercial information. Plf's Obj. at para. 3. Magistrate Kay did not, as Klayman asserts, rely on the existence of the Protective Order in rejecting Klayman's arguments about overbreadth and relevance. *Id.* Magistrate Kay treated each of these issues separately and distinctly. With respect to Klayman's unsubstantiated assertion that the subpoenas sought trade

9

secrets and proprietary and confidential information, Magistrate Kay found:

> Even if the Subpoenas seek proprietary, trade secret, or confidential information, however, this Court need not grant the Motion to Quash because a mechanism already exists in this case for protecting sensitive material. On December 3, 2007, Judge Kollar-Kotelly granted-in-part Defendants' Motion for a Protective Order
>
> . . . Because this protective order addresses Klayman's concerns, the Court will not quash the Subpoenas based on Klayman's claim that they seek trade secrets and proprietary and confidential information.

*See* Mem. Order at 6-7. Klayman's assertion that the Magistrate relied on the December 3, 2007 Protective Order in considering anything other than Klayman's "trade secrets" argument is just plain wrong.

Klayman's second argument attempts to ascribe some significance to the fact that Magistrate Kay did not "address" objections served by ATA. Plf's Obj. at para. 4. The only clear error here appears to be in Klayman's understanding of basic civil procedure. ATA's *pro forma* objections, the service of which is authorized by Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, were never ripe for adjudication. According to Rule 45, "[i]f objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing or sampling." Fed.R.Civ.P. 45(c)(2)(B). Defendants have not moved to compel, and, therefore, it was entirely proper for Magistrate Kay not to rule on ATA's objections.

In addition, Klayman ignores the objections themselves, in which ATA clearly states that it may elect to withhold only a very limited subset of responsive documents and only "until such objections are resolved by good-faith resolution or court order." *See* Plf's Reply at Exhibit B, para. 7. The December 3, 2007, Protective Order was entered subsequent to the service of ATA's objections in November 2007, and, in the unlikely event the Protective Order does not

address ATA's concerns, Defendants are confident some other reasonable accommodation with ATA can be reached. Magistrate Kay's purported failure to "address" ATA's objections was no error at all, much less a "clear error" warranting reconsideration.

Next, Klayman argues that Magistrate Kay's ruling did not address the alleged burden that would be placed on him to review "voluminous" responsive documents, presumably before their production to Defendants, to assert unspecified "privileges and other rights." Plf's Obj. at ¶ 5. Of course, Klayman made no effort to establish, by affidavit or otherwise, that "voluminous" responsive documents subject to some unspecified claim of privilege or undefined "other right" even exist, much less that reviewing these documents would place an undue burden on him. *See* Defs' Opp. at 5 (citing *Natural Resources Defense Counsel v. Curtis*, 189 F.R.D. 4, 13 (D.D.C. 1999) ("The Federal Courts reject out of hand claims of burdensomeness which are not supported by a specific, detailed showing, usually by affidavit, of why weighing the need for discovery against the burden it will impose permits the conclusion that the court should not permit it.")). Nonetheless, nowhere does Rule 45 state that a party has a right (or obligation for that matter) to review subpoenaed documents for privileges before they are produced by the person or entity commanded to produce them. *See*, *e.g.*, Fed.R.Civ.P. 45(c)(3)(A)(iii). Klayman failed to cite any legal authority to Magistrate Kay in support of this proposition, and he fails to cite any now. Again, it is Klayman, not Magistrate Kay, who is clearly erroneous.

Although Klayman did raise a purported "associational privilege" arising under the First Amendment, Magistrate Kay rejected it on both legal and factual grounds. *See* Mem. Order at 8. Klayman's Objections do not raise any specific error of law or fact regarding Magistrate Kay's conclusions. Klayman does not argue anywhere in his objections that this rejection was erroneous. Indeed, it would be an anomalous result for the Court to find that it was clear error

11

for Magistrate Kay not to address the purported burden on Klayman of reviewing responsive documents for claims of privilege, prior to their production to Defendants, when Magistrate Kay rejected those claims of privilege and Klayman himself did not challenge that rejection.[7]

Klayman's fourth and final argument does not appear to be materially different from his first argument. *Compare* Plf's Obj. at ¶ 6 *with* Plf's Obj. at ¶ 3. Klayman appears to argue that the entry of the December 3, 2007, Protective Order does not address his arguments regarding "relevancy and overbreath" [sic]. Plf's Obj. at ¶ 6. Again, Magistrate Kay considered and rejected Klayman's arguments regarding relevancy and overbreadth. *See* Mem. Order at 7. As before, Klayman once again fails to demonstrate that these rulings are clearly erroneous. Magistrate Kay's ruling with respect to the Protective Order related to Klayman's assertions, weak as they were, that some responsive records may contain trade secret or other confidential, commercial information. *See* Mem. Order at 6-7. Again, it is Klayman, not Magistrate Kay, who errs in conflating the two issues.

Finally, Klayman also errs in asserting that the relevancy and/or overbreadth of Defendants' subpoenas is demonstrated by the fact that the non-competition clause of the Severance Agreement concluded in September 2005, but Defendants' subpoenas "seek documents far beyond that period." Plf's Obj. at para. 6. As demonstrated above, Judicial Watch and/or Fitton have asserted causes of action against Klayman that arise from different periods of his direct mail marketing and advertising campaigns. Judicial Watch's claim against Klayman for breach of the non-competition clause arises from his direct mail marketing

---

[7] While Klayman also argues that Magistrate Kay did not address "the considerable expense involved to the third parties and Defendants' liability for these costs" (*see* Plf's Obj. at ¶ 5), Klayman again failed to demonstrate, either before the Magistrate or in his objections, that there is any such "considerable expense" to the Subpoenaed Entities. ATA, the only subpoenaed entity to serve objections, did not object on the grounds of expense.

campaign in March/April 2005 under the name "Freedom Watch." Judicial Watch and Fitton's claims for breach of the non-disparagement clause, and Judicial Watch's claims for trademark infringement and violation of Section 43(a) of the Lanham Act arise from Klayman's direct mail marketing and advertisement campaigns under the names "Saving Judicial Watch" and "Freedom Watch" following the initiation of this litigation in 2006 and up to and including the present. Defendants' subpoenas do not seek irrelevant material and are not overbroad, as Magistrate Kay correctly found. *See* Mem. Order at 7.

### IV.  Conclusion

Klayman's Objections are void of merit and do not come even close to satisfying the heavy burden required. They are nothing more than yet another transparent attempt by Klayman to stonewall and delay Defendants' legitimate discovery requests so that he can continue this vendetta of a lawsuit against his former colleagues. Accordingly, Klayman's Objections should be rejected in their entirety.

Respectfully submitted,

/s/

Richard W. Driscoll (436471)
Juli Haller Simonyi (466921)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com
jhaller@driscollseltzer.com
*Counsel for Defendants Judicial Watch, Inc.,*
*Thomas J. Fitton, Paul J. Orfanedes and*
*Christopher J. Farrell*

Dated: February 4, 2008