UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARRY KLAYMAN,**<br><br>    Plaintiff,<br><br>    v.<br><br>**JUDICIAL WATCH, INC.,** *et al.***,**<br><br>    Defendants. | Civil Action No. 06-670 (CKK)(AK) |

**MEMORANDUM ORDER**[1]

Pending before the Court are Defendants' Motion to Compel Plaintiff's Responses to Defendants' Supplemental Requests for Production [106], Plaintiff's Opposition [113], and Defendants' Reply [116].

**I.   Background**[2]

Plaintiff Larry Klayman ("Klayman") is the former Chairman and General Counsel of Judicial Watch, Inc. ("Judicial Watch"), a nonprofit organization that was founded "in 1994 as a public interest watchdog to investigate and prosecute government corruption and abuse." (Second Am. Compl. [12] ¶¶ 2, 7, 20.)  Klayman left Judicial Watch in 2003. (*Id*. ¶ 28.)  In anticipation of his departure, the parties entered into a Confidential Severance Agreement on September 19, 2003. (*See* Am. Countercl., Ex. A [86-2].)  Judicial Watch agreed, *inter alia*, to

---

[1] United States District Judge Colleen Kollar-Kotelly referred this case to the undersigned Magistrate Judge for disposition of all pending and future discovery-related motions pursuant to Local Civil Rule 72.2(a). (*See* Order [85] dated 12/3/07.)

[2] The factual recitation contained herein is taken, in substantial part, from this Court's Memorandum Orders [97] dated January 8, 2008 and January 16, 2008 [98].

pay Klayman a lump sum of $400,000 as severance pay and continue his family health insurance coverage for a period of one year (*Id*. ¶¶ 2, 3.) The Severance Agreement contained a "Non-Disparagement" clause; Klayman and Judicial Watch each agreed not to "directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about" the other party. (*Id*. ¶ 17.) Each party agreed to reimburse the other for expenses and Klayman reaffirmed and acknowledged a $78,810 debt that his law firm, Klayman and Associates, P.C., owed to Judicial Watch. (*Id*. ¶ 10, 11.)

The Severance Agreement contained a provision addressing the treatment of confidential information and Judicial Watch property. (*Id*. ¶ 4.) The confidentiality provision provided, in relevant part:

> A.   <u>Confidential Information</u>.  Klayman agrees that all non-public information and material, whether or not in writing concerning Judicial Watch, its operations, programs, plans, relationships, donors, prospective donors, clients, prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. . . . Klayman agrees that after the Separation Date [September 19, 2003], he shall not disclose any Confidential Information to any person or entity or use Confidential Information for any purpose without written approval by an officer of Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman.
>
> \* \* \* \*
>
> D.   <u>Client and Donor Information</u>. . . . Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor or client lists or donor or client data.

(*Id*. ¶ 4(A), (D).) Finally, the Severance Agreement contained a non-competition and non-solicitation provision under which Klayman was prohibited from engaging in specified business

activities, including working for a Judicial Watch competitor and soliciting Judicial Watch donors for contributions to a competitor, for a period of two years. (*Id.* ¶ 5.) Judicial Watch agreed to "pay Klayman $200,000 in consideration of his agreement not to compete or solicit." (*Id.* ¶ 6.)

On April 12, 2006, Klayman and Louise Benson,[3] a Judicial Watch supporter and donor, brought suit against Judicial Watch and its President, Thomas J. Fitton. (*See* Compl. [1].) Klayman later amended his Complaint to name Paul Orfanedes, the Secretary and a director of Judicial Watch, and Christopher Farrell, another director of Judicial Watch, as defendants. (*See* Second Am. Compl.) In Counts Six, Seven and Eight, Klayman alleges that Judicial Watch breached various obligations owed to him under the Severance Agreement and in Count Nine he alleged that Judicial Watch defamed him by disseminating allegedly false statements to Judicial Watch employees and the media.[4] (*Id.* ¶¶ 66, 115-162.) In Count Four, Klayman also brings a claim under Section 43(a) the Lanham Act, which provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services,

---

[3] By Order dated January 17, 2007, Judge Kollar-Kottelly dismissed Counts One, Two and Three of the Second Amended Complaint, which are the only claims that involve Benson. (*See* Order [35].)

[4] Judge Kollar-Kotelly granted Defendants' Motion for Partial Summary Judgment "as to the allegations contained in Count Six that Judicial Watch fraudulently induced Klayman to enter the Severance Agreement and the allegations contained in Counts Seven and Eight that Judicial Watch failed to pay Klayman for the period between September 15 and September 19, 2003." (Order [51] dated 4/3/07.) Judge Kollar-Kotelly also dismissed Count Nine "insofar as it relates to allegedly defamatory statements made in Judicial Watch Form 990 tax returns and allegedly doctored press quotations posted on the Judicial Watch website." (Order [35] dated 1/17/07.)

>or commercial activities by another person, or
>
>(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities
>
>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)-(B).

Defendants have asserted counterclaims against Klayman. (*See* Am. Countercl. [86].) They allege that Klayman breached the Severance Agreement by failing to reimburse Judicial Watch for expenses, as required by Paragraph 10, failing to pay the outstanding balance of his law firm's debt, as required by Paragraph 11, and violating the non-disparagement provision through his remarks about Judicial Watch and Fitton. (*Id*. ¶¶ 69-79, 117-124.) Defendants further allege that subsequent to his departure from Judicial Watch, Klayman used "Confidential Information" in violation of Paragraph 4 of the Severance Agreement and that he violated the non-compete clause of Paragraph 5. (*Id*. ¶¶ 125-138.) Defendants have also brought claims against Klayman under the Lanham Act, alleging trademark infringement, unfair competition, and "cybersquatting." (*Id*. ¶¶ 84-116.)

On November 2, 2007, Defendants served on Plaintiff their Supplemental Requests for Production of Documents. (Def.'s Mem. Supp. Mot. [106-2] ("Def.'s Mem.") at 2.) Plaintiff's responses were due on December 6, 2007. (*Id*.) On December 17, counsel for Defendants' sent a letter to counsel for Plaintiff indicating that if they did not receive documents by December 19 they would file a motion to compel. (Letter from Simonyi to Dugan [106-4] at 1.) Plaintiff served Responses on December 18, but failed to provide any documents that were responsive to

Defendants' requests. (Def.'s Mem. at 3.) Instead, Plaintiff asserted various objections and claims of privilege to each of Defendants' documents requests.[5] (*Id*.) On January 9, 2008, Defendants' again warned that they would file a motion to compel if they did not receive responsive documents. (Letter from Simonyi to Dugan and Schervone [106-5] at 2.) When the matter could not be resolved without judicial intervention, Defendants filed the instant Motion, asking the Court to compel Plaintiff to produce materials that are responsive to Document Requests Nos. 1-57 and 60. Defendants also ask this Court to order Plaintiff to pay the fees and costs that Defendants incurred in filing this Motion. (Def.'s Mem. at 38.)

## II.    Discussion

### A.    Requests for Production of Documents

Federal Rule of Civil Procedure 34 governs requests for the production of documents. Rule 34(b)(2)(B) provides that for each document or category of documents sought, the responding party "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." If the responding "party fails to respond that inspection will be permitted - or fails to permit inspection - as requested by

---

[5] Defendants assert that Plaintiff's objections and claims of privilege have been waived because Plaintiff did not serve his responses in a timely manner. (Def.'s Mem. at 5.) In support of their waiver argument, Defendants point to this Court's January 16, 2008 Memorandum Order [98], which addressed, among other things, Plaintiff's failure to respond to Defendants' interrogatories by the date on which they were due. This Court declined to hold that Plaintiff waived his objections by violating the discovery deadline, but noted that "Klayman and his counsel are put on notice that there is ample precedent for holding that their objections are waived, and this Court may choose to exercise its discretion in a different manner should it be faced with a similar situation in the future." (Mem. Order. [98] at 6.) Although the instant Motion to Compel appears to present such a "similar situation," Plaintiff correctly points out that the conduct that gave rise to this Motion occurred before this Court issued its admonishment on January 16. Accordingly the Court will not find that Plaintiff's objections and claims of privilege were waived on account of his untimely responses to Defendants' document requests.

Rule 34," the party seeking disclosure may move for an order compelling production or inspection. FED. R. CIV. P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure . . . must be treated as a failure to disclose" when determining whether a requesting party may file a motion to compel. FED. R. CIV. P. 37(a)(4). The party alleging the deficiency in document production and bringing the motion to compel bears the burden of proof. *El-Amin*, 2000 WL 1763679, at *1.

    1.    *Document Requests Nos. 1-7, 9-13, 15, 17, 19, 21-23, 25-30, 33-38, and 56*

Plaintiff responded to each interrogatory in this group by asserting a combination of boilerplate objections, such as vagueness, burden, relevance and privilege. (*See, e.g.*, Pl.'s Resp. to Doc. Req. No. 1 [106-13] ("Plaintiff objects to this request because it is ambiguous and overly broad as to time and scope, and seeks irrelevant information the production of which would be burdensome and harassing and subject to privilege, as enumerated above.")). At no time in his Responses to Defendants' Supplemental Request for Production of Documents did Plaintiff explain how the wording of the requests was vague or ambiguous, how he would be burdened by producing responsive documents, or how the requests sought irrelevant material. (*See generally* Pl.'s Resps. to Def.'s Supp. Req. for Produc. of Docs. [106-13, 106-14].) In addition to generic claims of privilege, Plaintiff specifically asserted the attorney-client and work product privileges in response to Document Requests Nos. 13, 34, 35 and 56. However, Plaintiff did not provide a privilege log or other means for the Court or opposing counsel to evaluate whether the materials sought were, in fact, subject to the enumerated privileges.

    This Court is of the opinion that "pat, generic, non-specific objections, intoning the same

boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure." *Obiajulu v. City of Rochester, Dept. of Law*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). *See also Gheesling v. Chester*, 162 F.R.D. 649, 650 (D. Kan. 1995) ("A party opposing a discovery request cannot make conclusory allegations that a request is irrelevant, immaterial, unduly burdensome, or overly broad."). Instead, the party resisting discovery must specifically demonstrate how the request is vague, ambiguous or overly broad. *Gheesling*, 162 F.R.D. at 650. Similarly, "[a] general claim or privilege . . . is an inadequate response to a discovery request." *Obiajulu*, 166 F.R.D. at 295. This requirement is embodied in Rule 26, which states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. P. 26(b)(5)(A).

      The Court finds that these document requests seek relevant information and that Plaintiff has not adequately demonstrated that the requests are vague, ambiguous, overly broad, burdensome or harassing. Moreover, the Court finds that Plaintiff's general claims of privilege are inadequate under Rule 26(b). Accordingly, the Court will order Plaintiff to produce documents that are responsive to these requests. If, in responding to Document Requests Nos. 13, 34, 35 or 56, Plaintiff happens upon a document that he believes is privileged, he may move for a protective order or arrange for it to be produced under seal.

        2.     *Document Requests Nos. 14, 16, 20, 31, 39-54, 57, 60*

Plaintiff responded to these requests by indicating that he would produce responsive documents at a mutually agreeable time, date, and place. Yet the documents were never produced and no reason was provided for his failure to do so. In response to some of these requests, Plaintiff limited his promise to "relevant documents" or "relevant, non-privileged documents." (*See, e.g.*, Pl.'s Resp. to Doc. Req. Nos. 51 and 52 [106-14].) It is for this Court to determine whether a document is relevant or privileged; Plaintiff cannot make such determinations for himself when deciding which documents should be produced. Plaintiff also responded to two of these document requests, Nos. 14 and 60, by arguing that the materials sought were already in Defendants' possession. While it is axiomatic that Klayman cannot provide information that he does not possess, he also may not relieve himself of his obligation to respond to interrogatories by stating that the information sought is already in Defendants' possession. *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 427 (N.D. W.Va. 2006). Accordingly, the Court will order Plaintiff to provide responsive documents.

        3.     *Document Requests Nos. 8, 18, and 24*

In response to these requests, Plaintiff asserted the same boilerplate objections that this Court rejected above. Subject to those objections, Plaintiff promised to produce responsive materials at a mutually agreeable time, date and place. Because he failed to do so voluntarily, the Court will order Plaintiff to respond to Document Requests Nos. 8, 18, and 24.

      4.    *Document Request No. 17*

Document Request No. 17 seeks all documents filed in Klayman's "divorce proceeding with Stephanie Luck Klayman, regardless of the jurisdiction." In addition to advancing the boilerplate objections discussed above, Plaintiff objected on the grounds that this request "seeks the disclosure of documents that are under seal." (Pl.'s Resps. to Doc. Req. Nos. 51 and 52 [106-14].) Defendants argue that this material is relevant because Klayman's Initial Disclosures state that Ms. Klayman has information about the health insurance benefits, which relates to Plaintiff's breach of contract claim, and Klayman's separation from Judicial Watch. (Def.'s Reply [116] at 5; Pl.'s Initial Disclosures [116-2] at 2.) Even assuming that Ms. Klayman possesses information that bears on the merits of this case, the Court finds that Defendants have not made a sufficient showing that the sealed proceedings of Klayman's divorce contain documents that are reasonably calculated to lead to the discovery of admissible evidence and accordingly will deny Defendants' Motion to Compel with respect to Document Request No. 17.

      5.    *Document Request No. 32*

Document Request No. 32 seeks documents that demonstrate Klayman's damages. Plaintiff responded that this request was duplicative of Request No. 3 in Defendants' First Request for Production of Documents, which sought documents related to the calculation of his damages. (*See* Def.'s Mot. to Compel [89-2] at 6.) Because the Court disagrees that Request No. 32 is duplicative of the earlier document request, and because Klayman has not otherwise objected to this document request, the Court will order Klayman to produce responsive documents.

    6. *Document Request No. 55*

Document Request No. 55 seeks certain communications between Klayman and Raymond A. Reiser of the Florida Bar. Plaintiff responded that he could not respond to this request because he "is unfamiliar with this entity." (Pl.'s Resp. to Doc. Req. No. 55 [106-14].) To counter this assertion, Defendants note that Mr. Reiser is an attorney and that Klayman arranged for him to represent a woman named Sandra Cobas in her suit against Defendants and a Judicial Watch employee. (Def.'s Mem. at 35.) Defendants also attached a letter from Mr. Reiser to Ms. Cobas that was copied to Klayman. (Letter of 7/26/06 [106-12].) Faced with this evidence, the Court is skeptical that Klayman lacks the requisite information to respond to Document Request No. 55 and accordingly will order Klayman to produce responsive materials or certify that no such materials exist.

  B. <u>Fees and Costs</u>

Defendants seek sanctions under Federal Rule of Civil Procedure 37, which provides:

> If the motion [to compel] is granted - or if the disclosure or requested discovery is provided after the motion was filed - the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A).

In addressing Defendants' request for sanctions in connection with their Motion to Compel Plaintiff's Answers to Defendant's Interrogatories [88], this Court wrote:

> After reviewing Defendants' interrogatories and document requests and Klayman's responses thereto, it is clear to the Court that Klayman is attempting to stonewall Defendants and otherwise subvert the purposes of discovery by providing patently evasive answers, asserting boilerplate objections, and unilaterally making determinations of relevance. This behavior is without question unacceptable, but the Court is willing to provide Klayman and his counsel with one more opportunity to conduct discovery in a professional and efficient manner.

(Mem. Order [88] dated 1/16/08 at 23.) Despite this warning, Plaintiff failed to produce documents in response to the bulk of Defendants' Supplemental Requests. Plaintiff had ample opportunity to comply with the rules of discovery; having failed to do so, the Court finds that sanctions are warranted. Accordingly, the Court will order Plaintiff to compensate Defendants for the expenses, including attorney's fees, that they incurred in bringing the instant Motion to Compel.

### III. Conclusion

For the foregoing reasons, it is this __12th__ day of March, 2008, hereby

**ORDERED** that Defendants' Motion to Compel Plaintiff's Responses to Defendants' Supplemental Request for Production of Documents is **granted-in-part and denied-in-part**; and it is further

**ORDERED** that Plaintiff supplement his responses to Document Requests Nos. 1-16, 18-57 and 60 within ten days of this Memorandum Order; and it is further

**ORDERED** that Defendants' request for costs and attorneys' fees is **granted**. Within ten days of this Memorandum Order, Defendants shall submit to the Court a summary of the reasonable expenses that they incurred in bringing the instant Motion to Compel.

                /s/
              ALAN KAY
              UNITED STATES MAGISTRATE JUDGE