IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, | |
| Plaintiff, | |
| v. | Civil Action No. 1:06-CV-00670 (CCK) (AK) |
| JUDICIAL WATCH, INC., et al., | |
| Defendants. | |

**MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 13, 2008,
MINUTE ORDER GRANTING A BRIEF CONTINUANCE FOR
<u>PLAINTIFF'S DEPOSITION AND REQUEST FOR IMPOSITION OF SANCTIONS</u>**

Defendants Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton"), Paul J. Orfanedes, Esq. ("Orfanedes") and Christopher J. Farrell ("Farrell"), by undersigned counsel, pursuant to Fed. R. Civ. P. 60(b) and the April 25, 2007, Scheduling and Procedures Order, hereby move this Court to reconsider the March 13, 2008, Minute Order granting a brief continuance for the deposition of Larry Klayman ("Klayman"). In support of this Motion, Defendants state:

1.  On March 13, 2008, this Court issued a Minute Order granting Klayman's Motion for Brief Continuance ostensibly based on Klayman's notice to this Court of a conflict in another jurisdiction.

2.  Pursuant to the April 25, 2007, Scheduling and Procedures Order, motions for reconsideration are not favored, but can be filed when appropriate under Fed. R. Civ. P. 60(b). *See* 04/25/07 Scheduling and Procedures Order at ¶ 8. Under Rule 60(b), the Court may relieve a party from the effects of an order for, among other reasons, misrepresentation or other

misconduct of the adverse party. Fed. R. Civ. P. 60(b)(3). Defendants are compelled to file this Motion as a result of Plaintiff's continuing pattern of conduct, which now includes misrepresentations to this Court. In light of this conduct, Defendants request that the Court reconsider its March 13, 2008, Minute Order, find Klayman in violation of the January 30, 2008, Minute Order, and impose the sanction of barring Klayman from testifying in this case. In the alternative, Defendants move for reconsideration requesting that the Court set a date certain for Plaintiff's deposition, after conferring with all counsel, and Order that if Plaintiff's fails to appear for the second Court-Ordered deposition, he will be barred from testifying in this case.

3.      On March 3, 2008, Klayman notified Defendants that he would be available for deposition "subject to full reservation of rights" on March 14, 2008, which was the last day available for such event. A copy of Plaintiff's 03/03/08 Email is attached as Exhibit 1. Pursuant to this Court's January 30, 2008, Minute Order, a deadline of March 14, 2008 was set as the final day for Klayman's deposition to be conducted.

4.      On March 4, 2008, pursuant to the January 30, 2008, Minute Order, Defendants notified the Court of Klayman's deposition date by filing a Status Report. *See* Docket No. 114.

5.      On March 5, 2008, the Deputy Clerk for the United States District Court for the Southern District of Florida issued a Notice of Hearing in the matter of *Larry Klayman v. Freedom's Watch, Inc., et al.*, Case No. 07-22433-CIV-Huck/Simonton ("Freedom's Watch Litigation"), informing the parties that it would be hearing oral argument for the defendants' Motion for Summary Judgment at 10:00 a.m. on March 14, 2008. A copy of the Notice of Hearing is attached as Exhibit 2. The Notice of Hearing was sent to Klayman by the ECF system on that same day.

6. On March 10, 2008, Defendants learned of Klayman's conflicting schedule in the Freedom's Watch Litigation. Defendants promptly emailed Klayman and his counsel regarding the conflict to inquire if the deposition should be moved up to March 13, 2008. A copy of the 03/10/08 email is attached hereto as Exhibit 3. Neither Klayman nor his counsel responded to the inquiry. In fact, on March 12, 2008, undersigned counsel followed up with Klayman's counsel, Daniel Dugan, Esq., regarding Klayman's willingness to set the deposition location Alexandria, VA instead of the District of Columbia. At that time, Mr. Dugan explained that Klayman wished to defend himself during the deposition and, therefore, he would not be attending. However, Mr. Dugan agreed to follow up with Klayman regarding the location issue.

At no time during this conversation did Mr. Dugan state or imply that he was not available to attend the deposition, that the deposition was inconvenient, or that it should be postponed due to his unavailability.[1] Following this conversation, Mr. Dugan did not communicate further with the undersigned regarding any issue, including the deposition location.

7. On March 12, 2008, Defendants issued an Amended Notice of Deposition designating the Alexandria, VA office of their counsel as the location. A copy of the Amended Notice of Deposition is attached as Exhibit 4. The Amended Notice of Deposition was emailed and mailed to both Klayman and his counsel.

8. Defendants have not provided false information or made false representations regarding insurance coverage. Klayman's accusations regarding disclosure of insurance information are unfounded and represent an attempt to divert the Court's attention. Pursuant to

---

1  In light of this conversation, Klayman's assertion that Mr. Dugan is not available on March 14, 2008 raises a host of questions as whether Klayman is being truthful to the Court. When was Mr. Dugan notified of the deposition date? When did Mr. Dugan first inform Klayman that he was not available on March 14, 2008? Did Klayman ever check with Mr. Dugan regarding his schedule before setting the deposition? Why did Mr. Dugan state that Klayman would, by choice, defend himself at the deposition?

Rule 26(a)(1)(D), Defendants provided the name and policy number for the carrier providing a defense.[2]

9.  Klayman's Motion relies, in part, on a redacted excerpt from a proposed settlement term sheet exchanged during negotiations over his forced resignation. *See* Pl.'s Motion at ¶ 3 and Ex. 3 to Pl.'s Motion. The redacted document relied on by Klayman is nothing more than a preliminary settlement communication during the negotiations. Indeed, on the document's face it reads: "THIS IS A CONFIDENTIAL PROPOSAL OF SETTLEMENT AND COMPROMISE WHICH IS NOT ADMISSIBLE IN EVIDENCE AND **MAY NOT BE USED IN ANY PROCEDING FOR ANY PURPOSE**." (Emphasis added.) More importantly, this early settlement proposal[3] was merged into the September 19, 2003, Confidential Severance Agreement between Klayman and Judicial Watch, which contains a comprehensive merger clause that expressly states, in relevant part:

> Neither the negotiations preceding this Agreement or any draft, term sheet, outline, note, or statement, assertion, representation, or understanding prior to or contemporaneous with the execution of this Agreement shall be used to interpret, change or restrict the express terms and provisions of this Agreement.

Confidential Severance Agreement at ¶ 26, attached to the Amended Counterclaim as Ex. 1. Therefore, as a matter of law, Klayman may not rely on what is written in the settlement term sheet. This principle was emphasized by Judge Kollar-Kotelly in dismissing Klayman's fraudulent inducement claim:

> [U]nder the law of the District of Columbia, "[a] completely integrated contract may not be supplemented with prior

---

2   Defendants note that Klayman had notice of the Counterclaims by December 3, 2008, when the Court granted the Motion to Amend. However, it is more likely that Klayman received notice by May 2007, when the Motion to Amend Defendants' Counterclaims was filed.

3   Pl's Ex. 3 is dated June 30, 2003. Negotiations continued for several more months until September 19, 2003, when the Confidential Settlement Agreement was executed and Klayman resigned from Judicial Watch.

> representations not ultimately included therein, even if those representations are not expressly contradicted by the contract itself." *Hercules & Co. v. Shama Rest. Corp.,* 613 A.2d 916, 928 (D.C. 1992). Furthermore, [a]ccording to the parole evidence rule, 'when the parties to a contract have reduced their entire agreement to a writing, the court will disregard and treat as legally inoperative parol evidence of the prior negotiations and oral agreements.'" *Id.* (citing *Giotis v. Lampkin,* 145 A.2d 779, 781 (D.C. 1958)).

*See* Docket No. 50 (Memorandum Opinion granting Motion for Partial Summary Judgment) at 15. Therefore, the controlling document is the Confidential Severance Agreement. *See* Docket No. 86, Ex. 1. Perusal of the Agreement demonstrates that the parties made no provision for insurance coverage. *Id*. At best, Klayman's assertion is a tactic of diversion. At worst, it warrants sanctions.

      10.    Citing to his own allegations, Klayman asserts that Defendants' tortiously interfered with his efforts to obtain insurance coverage and inhibited his ability to defend himself. This claim is deceptive. Klayman initiated this lawsuit and did so with the assistance of a large Philadelphia law firm. He is represented by competent and able counsel. The Confidential Severance Agreement confirms that Judicial Watch is not required to provide directors and officers insurance coverage for Klayman.[4] Neither the Defendants nor their counsel took any step to interfere with Klayman's efforts to seek coverage. In summary, Klayman's assertions regarding coverage constitute mere tactics to manipulate this process and flout the Rules of this Court.

      11.    Klayman misrepresents the parties' agreement regarding Mr. Fitton's deposition. Following the January 3, 2008, conference call, wherein the Court telegraphed that the party who

---

[4] The lack of coverage has not deterred Klayman from threatening Defendants' existing carriers. Recently, one carrier notified Judicial Watch that coverage would not be renewed. Without question, the costs of defending this litigation and Klayman's threats to sue if he is not provided with coverage are the cause of cancelation.

issued the notice of deposition first in time has the right to take the opposing parties deposition first, Klayman agreed to be first if the next deposition would be Thomas Fitton. Defendants agreed to produce Mr. Fitton next, but did not agree to produce him on the "next day". Klayman's March 3, 2008, Email demonstrates that Klayman's assertion is not true. Ex. 1 (stating that Klayman would appear on March 14, 2008, and requesting Mr. Fitton's deposition on March 17, 2008). Contrary to Klayman's representation, Defendants did agree to produce Mr. Fitton on March 18, 2003, two business days after Klayman's deposition. Plaintiff never objected until the afternoon of March 13, 2008.

12.    The foregoing facts raise serious questions regarding Klasyman's foundation for the March 13, 2008, Minute Order. It does not appear that Klayman made any effort to avoid a conflict with his appearance in the Southern District of Florida. Instead, he waited until the last minute to raise the issue to the Defendants and then to the Court. Likewise, it does not appear that Klayman's failure to appear at his deposition was based on Mr. Dugan's unavailability. The putative need for insurance defense counsel lacks a credible foundation. Finally, there is no condition that Mr. Fitton be deposed on the day after Klayman's deposition. Defendants agreed to produce Mr. Fitton as the next deposition following Plaintiff's deposition. They will abide by this agreement.[5] Defendants note that substantial flexibility has been imposed on the Defendants to accommodate Klayman's scheduling and personal issues in this litigation. A modicum of reciprocity is the least to be expected of Klayman.

---

5    Defendants note that substantial flexibility has been conferred on Klayman to accommodate scheduling and personal issues in this litigation. At a minimum, Klayman should reciprocate with a modicum of courtesy. Demanding back to back depositions denies Defendants the opportunity to adequately prepare, especially given Klayman's failure to respond to discovery.

13. This Court should reconsider the March 13, 2008, Minute Order and find that Klayman violated the January 30, 2008, Minute Order requiring that his deposition be conducted by March 14, 2008. The only fair sanction for this conduct is to bar his testimony from this litigation.

14. In the event that the Court determines not to grant this Motion, Defendants request that the Court set the deposition of Klayman for a date certain. During an email exchange today, the undersigned notified Klayman that between now and March 24, 2008, the undersigned is only available on March 18 and 20, 2008 to take his deposition. A copy of the March 14, 2008, email exchange is attached hereto as Exhibit 5. In response, Klayman asserted that he was not available until March 24, 2008 at the earliest. *Id*.

15. Prior to seeking relief, Klayman made no attempt to ascertain Defendants' schedule. Indeed, undersigned counsel will be on vacation on March 24, 2008.[6] Once again, Klayman insists that Mr. Fitton appear on the very next day. However, neither any agreement between the parties nor this Court's January 30, 2008, Minute Order requires Mr. Fitton to appear on the very next day. Defendants have been attempting to schedule the deposition of Klayman since early November 2007. Plaintiff's deposition has been noticed and cancelled at least three times. After the Court issued the January 30, 2008, Minute Order setting the deadline of March 14, 2008 for Plaintiff's deposition, Klayman waited until March 3, 2008 to notify Defendants that Plaintiff would be available on March 14, 2008. No margin of error was built in to the scheduling. Now, more than four months after first attempting to depose Mr. Klayman and with only a little more than two months left in discovery, Defendants still have no date set

---

6   The undersigned will be on vacation from March 21, 2008 through March 31, 2008. This vacation has been scheduled since December 2007 and the undersigned's marital bliss depends on honoring the commitment.

for Klayman's deposition. During the four months, Klayman has sought to block every avenue of discovery pursued by the Defendants and appealed every Order of this Court. These delays continue to harm the Defendants by increasing their costs and frustrating their ability to defend the claims and prosecute their counterclaims. Accordingly, Defendants request that the Court set the Plaintiff's deposition for a date certain. Once the Court issues a second Court Ordered date, Plaintiff should be notified that unless he appears, his testimony will be barred from the case.

WHEREFORE, Defendants respectfully request that this Court GRANT this Motion, find Plaintiff Klayman to be in violation of the January 30, 2008, Minute Order requiring his deposition to be conducted by March 14, 2008, and impose the sanction of barring Klayman's testimony. In the alternative, Defendants request that the Court confer with the parties to set a date certain for Klayman's deposition and condition such deposition on the sanction that if Klayman fails to appear on the date certain and participate in good faith at the deposition, the Court will bar Plaintiff's testimony from trial.

Respectfully submitted,

/s/
_____
Richard W. Driscoll (436471)
Juli Haller Simonyi (466921)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com
jhaller@driscollseltzer.com

Dated: March 14, 2008

Counsel for Defendants Judicial Watch, Inc.,
Thomas J. Fitton, Paul J. Orfanedes, and
Christopher J. Farrell

**L.Cv.R. 7(m) CERTIFICATE OF GOOD FAITH**

I HEREBY CERTIFY that pursuant to email communication on March 14, 2008 with Plaintiff Larry Klayman, the undersigned attempted in good faith to obtain consent for the relief requested in this Motion. In light of the Plaintiff's opposition to the relief, the filing of this Motion was necessary.

/s/
_____
Richard W. Driscoll

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of March 2008, a copy of the foregoing Motion was served by electronic filing upon counsel listed on the Notice of Electronic Filing.

/s/
_____
Richard W. Driscoll