IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:06-CV-00670 (CCK) |
| JUDICIAL WATCH, INC., *et al.*, | |
| Defendants. | |

**DEFENDANTS' OBJECTIONS TO**
**MAGISTRATE JUDGE'S MEMORANDUM ORDER OF MARCH 12, 2008**
**CONCERNING REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendants Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton"), Paul J. Orfanedes, and Christopher J. Farrell, by counsel and pursuant to Rule 72 of the Federal Rules of Civil Procedure and Local Civil Rule 72.2, respectfully object to one limited portion of the Magistrate Judge's Memorandum Order of March 12, 2008 ("Memorandum Order") concerning their Motion to Compel Request No. 17 of the Supplemental Request for Production of Documents. As grounds, Defendants state as follows:

**MEMORANDUM OF LAW**

**I.  INTRODUCTION**

On March 12, 2008, Magistrate Judge Alan Kay issued a well-reasoned ruling granting in part Defendants' Motion to Compel Supplemental Request for Production of Documents. However, in Section 4 of the Court's Memorandum Order, Magistrate Kay found:

> Even assuming that Ms. Klayman possesses information that bears on the merits of this case, the Court finds that Defendants have not made a sufficient showing that the sealed proceedings of Klayman's divorce contain documents that are reasonably calculated to lead to the discovery of admissible evidence and

> accordingly will deny Defendants' Motion to Compel with respect to Document Request No. 17.

Mem. Order at 9. In light of allegations made in the Amended Counterclaim, the information sought by Document Request No. 17 is not only relevant, but necessary to support Counts V and VI. It further relates to Defendants' defenses to Plaintiff's allegations.

## II.    FACTUAL BACKGROUND

The chronology of events relating to the Memorandum Order is fully outlined in the Defendants' Motion and Memorandum to Compel Plaintiff's Responses to Supplemental Request for Production. Docket No. 106, 106-2. In summary, on November 2, 2007, Defendants served the Supplemental Request for Production of Documents on Plaintiff Larry Klayman ("Klayman"). Among the Requests was the following:

> REQUEST NO. 17:    Any and all documents filed in your divorce proceedings with Stephanie Luck Klayman, regardless of the jurisdiction.

*See* Ex. 1 to Defs.' Supplemental Req. for Produc. of Docs., Docket No. 106-18. Klayman did not serve timely responses. *See* Mem. Order. at 4-5; *see also*, Defs.' Mot. Mem. to Compel SRPD at p. 3, par. 7, (Docket Nos. 106, 106-2). Fifteen days after the response deadline, on December 18, 2007, Klayman served responses that objected to Request No. 17 as follows:

> Plaintiff objects to this request on the grounds that it seeks the disclosure of documents that are under seal, are irrelevant to the subject matter of this litigation, the irrelevant production of which would be burdensome and harassing and subject to privilege, as enumerated above.

*See* Defs.' Mot. Mem. to Compel SRPD at p. 3, pars. 7 - 8, (Docket Nos. 106, 106-2); *see also* Docket No. 106-13.

## III.    ARGUMENT

### A.    Legal Standard Governing Objections to Magistrate Orders

Pursuant to LCvR 72.2(c), this Court may modify or set aside any portion of the Memorandum Order "found to be clearly erroneous or contrary to law." This Court set forth the standard governing these motions in *Globalaw, Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1 (D.D.C. 2006), which reads:

> Local Civil Rule 72.2(b) states that "[a]ny party may request the judge to reconsider a magistrate judge's ruling under paragraph (a) by filing a motion to reconsider within 10 days[.]" Local Civil Rule 72.2(c) sets forth the basis for reconsideration, stating that "a judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be clearly erroneous or contrary to law." *See also* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.") (emphasis original). A court should make such a finding when "'on the entire evidence' the court 'is left with the definite and firm conviction that a mistake has been committed.'" *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 365, 68 S. Ct. 525, 92 L. Ed. 746 (1948)); *see also Gluck v. Ansett Australia*, 204 F.R.D. 217, 218 (D.D.C. 2001).
>
> Furthermore, a motion for reconsideration is "not simply an opportunity to reargue facts and theories upon which the court has already ruled." *United States v. Funds from Prudential Sec.*, 245 F. Supp. 2d 41, 44 (D.D.C. 2003) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)). Nor is it "a vehicle for presenting theories or arguments that could have been presented earlier," *id*. at 38, or a method of introducing evidence that was "available but not offered at the original motion or trial," *Natural Res. Def. Council, Inc. v. United States Envt'l Prot. Agency*, 705 F. Supp. 698, 702 (D.D.C. 1989), *vacated on other grounds*, 707 F. Supp. 3 (D.D.C. 1989). Indeed, "[p]arties must take before the magistrate, not only their best shot, but all of their shots." *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

*Globalaw Ltd.*, 452 F. Supp.2d at 59-60.

    **B.**    **The Memorandum Order Erred by Concluding that Filings from Plaintiff's Divorce Proceedings are not Relevant**

        **1.**    **The standard for "relevance" under the Federal Rules**

Rule 26(b) (1) of the Federal Rules of Civil Procedure provides that parties may obtain discovery of "any matter, not privileged, that is relevant to a claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Regarding what is relevant, this Court provided the following instructions:

> Rule 26(b)(1) authorizes discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The term "relevance" is broadly construed, and "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.; *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union*, 322 U.S. App. D.C. 301, 103 F.3d 1007, 1012 (D.C. Cir. 1997); *see also Smith v. Schlesinger*, 168 U.S. App. D.C. 204, 513 F.2d 462, 473 n. 37 (D.C. Cir. 1975) (noting that "a party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case"). Put another way, "[a] showing of relevance can be viewed as a showing of need[, as] for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not relevant to the subject matter involved in the pending action." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 238 U.S. App. D.C. 190, 738 F.2d 1336, 1341 (D.C. Cir. 1984). That said, relevancy does not encompass discovery of information with "no conceivable bearing on the case." *Id*. (citing 8 Fed. Prac. & Proc. 2d § 2008).

*Anton v. Prospect Cafe Milano, Inc.*, 233 F.R.D. 216, 218 (D.D.C. 2006). Therefore, if the requested documents are needed for the purpose of any claim or defense, then the information is relevant and Judicial Watch is entitled to review such information.

### 2. Request No. 17 seeks information relevant to Judicial Watch's claims for unfair competition

Under the standard for relevance, Request No. 17 seeks information relevant to the Amended Counterclaim in addition to Defendants' defenses to Klayman's allegations. Counts V and VI of the Amended Counterclaim seek compensatory damages and the imposition of injunctive relief for unfair competition by Klayman arising from his smear campaign against Judicial Watch and its officers.

4

Among the misrepresentations being perpetuated by Klayman is that his departure from Judicial Watch was based Klayman's intent to run for the U.S. Senate. Defendants argued to the Court in Memorandum seeking to compel Supplemental Responses that, "[i]t was Plaintiff's acknowledgment of the allegations raised by his former wife in their divorce proceedings that led directly to the Severance Agreement at issue herein. Plaintiff even showed Defendants . . . a copy of the pleading filed by his wife setting forth these allegations prior to the divorce proceeding being sealed." *See* Defs.' Mot. Mem. to Compel SRPD, Document 106-2, at p. 20.

Defendants then expressly referenced the same arguments for Request Nos. 11 and 12, which sought documents regarding Denise Golden and Rebecca Eddy. *Id.* In Defendants' argument to Compel Request No. 11, Defendants argued that said request was "directly relevant to Defendant Judicial Watch, Inc.'s claims that Plaintiff violated the Lanham Act by making false and misleading statements in advertisements and direct mail solicitations about the circumstances under which Plaintiff's employment with Defendant Judicial Watch terminated on September 19, 2003." *See Id.* at p. 15.

"As set forth in Defendants' amended counterclaims, Plaintiff elected to enter into severance negotiations with Defendant Judicial Watch, Inc. after he acknowledged to Defendants allegations that his wife made about Mrs. Golden." *See Id.* at 15-16. In Defendants' argument for Request No. 12, Defendants likewise made the same argument, "[l]ike Request No. 11, this request is directly relevant to Defendant Judicial Watch, Inc.'s claim that Plaintiff violated the Lanham Act by making false and misleading statements in advertisements and direct mail solicitations about the circumstances under which his employment with Defendant Judicial Watch terminated on September 19, 2003. Ms. Eddy is the former employee referenced in Defendants' amended counterclaims. For the same reasons Plaintiff should be compelled to

produce documents responsive to Document Request No. 11, he should be compelled to produce documents responsive to Request no. 12 as well." *Id.*

Clearly Klayman intends to use his former wife and their divorce as both a sword and a shield in this litigation. *See* Defs.' Mot. and Mem. to Compel, 106-2, at p. 20. Klayman seeks to introduce testimony from Stephanie Luck Klayman regarding the reasons for his departure while preventing Defendants from obtaining discovery he unilaterally deems harmful or irrelevant, under the premise of a seal. *See Id.*

Defendants argued in the Motion that, "Plaintiff having requested that these documents be sealed, Plaintiff should not be heard to complain that he cannot produce them because they are sealed, the protective order is more than sufficient to prevent any inappropriate use of the documents." *See Id.* at 20. The Court, however, summarized Defendants' arguments only as: "Defendants argue that this material is relevant because Klayman's Initial Disclosures states that Mrs. Klayman has information about the health insurance benefits, which related to Plaintiff's breach of contract claim, and Klayman's separation from Judicial Watch." *See* Court Mem. Op. at 9, (*citing,* Defs.' Reply Mem. at 5). Based on this finding the Court then ruled, "[e]ven assuming that Ms. Klayman possesses information that bears on the merits of this case, the Court finds that Defendants have not made a sufficient showing that the sealed proceedings of Klayman's divorce contain documents that are reasonably calculated to lead to the discovery of admissible evidence and accordingly will deny Defendants' Motion to Compel with respect to Document Request No. 17." *See* Court Mem. Op. at p. 9.

Klayman's own identification of the former Ms. Klayman as a witness to his departure shows the relevance of information from his former wife and their divorce. Nonetheless, Defendants also argued in their Motion to Compel, that, "[n]or is this request irrelevant in the

6

least. It was Plaintiff's acknowledgment of the allegations raised by his former wife' in their divorce proceedings that led directly to the Severance Agreement at issue herein. Plaintiff even showed Defendants Fitton and Orfanedes a copy of the pleading filed by his wife setting forth these allegations prior to the divorce proceedings being sealed." *See* Defs.' Mot. Mem. to Compel, 106-2, at p. 20 (*citing* to Defs. Am. Countercl.) Evidently the Severance Agreement relates to the crux of both the Amended Complaint and Defendants' Counterclaims.

Defendants also argued that the divorce pleadings are directly relevant to both Klayman's claims against Defendants and Defendants' Counterclaims. *See* Defs.' Mot., Mem. at No. 17, p. 20 (*citing* to Request. No. 1 at p. 10). Klayman alleges that "[b]y actively misrepresenting the reasons for Klayman's departure from Judicial Watch, Fitton and Judicial Watch disparaged Klayman by creating the false impression that Klayman was forced to leave Judicial Watch. This pattern of disparagement is a direct violation of the terms of the Severance Agreement." *See* Pl.'s Am. Compl. at para. 115; *see also* para. 37 ("Furthermore, they affirmatively told callers they could not discuss the 'reasons' why Klayman left Judicial Watch, contrary to the express provisions of the Severance Agreement, in order to create the erroneous impression that Klayman was forced to leave Judicial Watch."). The divorce pleading constitutes the very reason for Klayman's departure and for the existence of the Severance Agreement – and thus, a defense to Klayman's allegations of disparagement.

Defendants respectfully submit that the Court further erred in failing to acknowledge Defendants' other arguments, including the relevance of the divorce pleadings to Defendants' Lanham Act claim, which the Court clearly recognized in granting Defendants' Motion to Compel Responses to Requests Nos. 11 and 12. By doing so, the Court acted internally inconsistently by crediting Defendants' arguments with respect to request nos. 11 and 12, but

7

rejecting those same arguments with respect to request no. 17, which arguably is even more directly relevant to the Lanham Act claim.

To demonstrate the falsity of Klayman's assertions, Judicial Watch must prove the true reasons for Klayman's departure – both to defend against his claims that Judicial Watch disparaged him and to prove Judicial Watch and Tom Fitton's counterclaims.

The Amended Counterclaim refers to the initiating event in Klayman's forced resignation, which was his disclosure of Ms. Klayman's pleading to Judicial Watch officers:

> 10. On or about May 6, 2003, Klayman, a married father of two small children, informed Thomas J. Fitton, Judicial Watch's president, and Paul J. Orfanedes, the organization's corporate secretary, that his wife, a former Judicial Watch employee, had commenced divorce proceedings against him. Klayman informed both Fitton and Orfanedes that, in her petition for divorce, Klayman's wife alleged that Klayman had had an inappropriate relationship with a Judicial Watch employee with whom he had been in love. Klayman also informed Fitton and Orfanedes that Mrs. Klayman alleged Klayman had assaulted her physically.
>
> 11. While Klayman denied having a sexual relationship with the employee, who was a married mother of small children, Klayman acknowledged to Fitton and Orfanedes that he had been in love with the employee. He also acknowledged that he had purchased gifts for the employee and had kissed her. In addition, Klayman acknowledged an incident with his wife that clearly provided the basis for his wife's allegation of physical assault.

*See* Docket No. 86, Defs.' Am. Countercl. Expanding on these allegations, Defendants explained the relevance of filings from the divorce pleadings as follows:

> It was Plaintiff's acknowledgement of the allegations raised by his former wife in their divorce proceedings that led directly to the Severance Agreement at issue herein. Plaintiff even showed Defendants Fitton and Orfanedes a copy of the pleading filed by his wife setting forth these allegations prior to the divorce proceedings being sealed.

*See* Defs.' Mem. of Law at 20. Discovery of filings from the divorce proceeding will allow

8

Defendants to "prove up" the allegations in their Amended Counterclaim by corroborating the conversation between Klayman and Judicial Watch officers.

The connection between the allegations in Klayman's divorce proceedings and his conversation with Judicial Watch officers is material to Counts V and VI of the Amended Counterclaim because such statements "are and/or were likely to mislead and influence supporters' decisions to provide support and/or donate to Saving Judicial Watch instead of Judicial Watch". *See Id.* at ¶¶ 95 and 102. At a minimum, review of the filings is likely to lead to the discovery of the pleading Klayman showed to the Judicial Watch officers. This Court has found that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Alexander v. F.B.I.*, 186 F.R.D. 54, 59 (D.D.C. 1998); *see also United States ex rel. Fago v. M & T Mortgage Corp.*, 235 F.R.D. 11, 21 (D.D.C. 2006).

It may be worth noting that the Court already recognized, at least implicitly, the relevance of the divorce pleadings when it found paragraphs 10-20 of the Amended Counterclaims to be relevant to our Lanham Act claim. This Court granted Defendants' Motion to Amend over Plaintiff's argument that "… (a) the allegations to which he referred were privileged, attorney-client communications, (b) the allegations were *not* true and had, in fact, been withdrawn by Mr. Klayman's prior wife, (c) were entirely irrelevant to *any* matter in dispute, including potential counterclaims, and (d) the false accusations had been made in a prior divorce proceeding, which had been sealed to protect, *inter alia,* Klayman and his children from the dissemination of the false and withdrawn accusations." *See* Pl. Opp. to Defs.' Mot. for leave to Am. and Cross Mot. for Sanctions at p. 3. The Court ruled that,

> . . . Judicial Watch asserts that the allegations in Paragraph 10-20 are directly relevant to, and in fact "critical" to Judicial Watch's claim for

9

> unfair competition and breach of contract. According to Judicial Watch, Klayman has made a number of false or misleading statements concerning himself and his reasons for leaving Judicial Watch via his direct mail and advertising campaign which have resulted in harm to Judicial Watch that is actionable under the Lanham Act. This Court finds this explanation sufficient to demonstrate the relevance of Judicial Watch's proposed Paragraphs 10-20 to its legal claims.

*See* Court Mem. Op. of December 3, 2007 at 7.

If said pleadings support Klayman's assertion that the allegations are untrue as Plaintiff would contend, then one would imagine discovery of said pleading would be favorable to Plaintiff.

Finally, in addition to having a proper interest in this information, this Court issued a Protective Order in this case, thus eliminating the risk that the information contained in the *Klayman v. Klayman* record could be disseminated for purposes other than the immediate litigation cited. *See* Defs.' Mot. Mem. to Compel SRPD, 106-2, at 20 (*citing,* Court Order of December 3, 2007). Defendants have also prepared and intend to file a Motion to Lift the Seal with the Circuit Court of Virginia, the Court that issued the original Order of Seal upon which Klayman relies.

### 3. **Plaintiff waived his Objections, even those that are legally sufficient, by failing to provide timely responses or seeking a timely extension.**

Klayman failed to serve timely Responses. *See* Mem. Order. At 4-5; *see also*, Defs.' Mot. and Mem. at p. 2-3, par. 3-8, (Docket Nos. 106, 106-2). Fifteen days after the response deadline, on December 18, 2007, Klayman served responses that objected to Request No 17 as follows:

> Plaintiff objects to this request on the grounds that it seeks the disclosure of documents that are under seal, are irrelevant to the subject matter of this litigation, the irrelevant production of which would be burdensome and harassing and subject to privilege, as enumerated above.

*See* Defs.' Mot. and Mem. at p.3, pars. 7 - 8, (Docket Nos. 106, 106-2); *see also* Docket No. 106 13.

Defendants submit that the Court erred in recognizing Plaintiff's objection as legally sufficient when Plaintiff waived any and all of his objections and claims of privilege, regardless of sufficiency. *See* Defs.' Mot. and Mem. at p.5, pars. 11 (*citing Peskoff v. Faber*, 244 F.R.D. 54, 64 (D.D.C. 2007)( (*citing Myrdal v. District of Columbia*, 2007 U.S. Dist. LEXIS 41220 *10-11, 2007 WL 1655875 (D.D.C. June 7, 2007); *Fonville v. District of Columbia*, 230 F.R.D. 38, 42 (D.D.C. 2005) (same)). The Court had already once ruled, in granting Defendants' prior Motions to Compel Interrogatories and Requests for Production,

> In the present case, Klayman's counsel essentially granted his own request for an extension after he was unable to confer with opposing counsel. Klayman never sought leave of court to file his interrogatory answers or to produce documents after the July 23 deadline. Nonetheless this Court finds that Klayman's violation of the discovery deadlines was *deminimis* and Defendants failed to demonstrate that they were prejudiced by a one-week delay. Therefore the Court will not deem Klayman's objections waived. *However, Klayman and his counsel are put on notice that there is ample precedent for holding that their objections are waived, and this Court may choose to exercise its discretion in a different manner should it be faced with a similar situation in the future.*

*See* Court Mem. Op. of January 16, 2008 at p. 6 (emphasis added).

Defendants submit that the Court put Plaintiff on notice yet Plaintiff, once again, unilaterally attempted to seek an extension. Nevertheless Plaintiff submitted written responses on December 18, 2007, *after* even the expiration of his own unilateral extension and only after Defendants' again wrote Plaintiff on December 17, 2007, making a demand for documents. Plaintiff should be barred from successfully raising any objection to Defendant's discovery requests.

## IV. Conclusion

Declining to allow Defendants the opportunity to discovery from the court records of Klayman's divorce was error. Such information is highly relevant and material to this litigation. Accordingly, Defendants object to, and respectfully request that this Court reverse only that

portion of the Memorandum Order denying the Motion to Compel production within the scope of Request No. 17. It is respectfully requested that the Court reverse the finding that, "the Court finds that Defendants have not made a sufficient showing that the sealed proceedings of Klayman's divorce contain documents that are reasonably calculated to the lead to the discovery of admissible evidence." Defendants submit this discovery is relevant and otherwise this Order may affect Defendants ability to Move to Lift the Seal in the Circuit Court of Virginia in order to obtain the discovery sought in Request No. 17.

Respectfully submitted,

/s/

Richard W. Driscoll (436471)
Juli Haller Simonyi (466921)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com
jhaller@driscollseltzer.com
*Counsel for Defendants Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes and Christopher J. Farrell*

Dated: March 26, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of March 2008, a copy of the foregoing Objections was served by electronic filing upon counsel listed on the Notice of Electronic Filing.

/s/

Juli Haller Simonyi