IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARRY KLAYMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**JUDICIAL WATCH, INC., et al.,**<br><br>Defandants. | Civil Action No.  06-670 (CKK)(AK) |

**OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM ORDER OF MARCH 12, 2008 (DOCUMENT 117)**

Plaintiff, Larry Klayman, hereby respectfully objects to the Magistrate Judge's above styled order, and as grounds herefore would show:

1. As explained and set forth in Plaintiff's Opposition to Defendants' Motion to Compel Plaintiff's Responses to Defendants' Supplemental Request For Production of Documents and Cross Motion for Protective Order and Reconsideration ("Opposition"), Defendant, Fitton, and his two other current directors and Defendants herein, have for nearly five years waged a campaign to damage Larry Klayman's reputation in the non-profit community and among donors and supporters to try to prevent his return to Judicial Watch or to compete with them in any other way. Mr. Fitton, who is neither a lawyer nor to the best of Plaintiff's knowledge at the time Mr. Klayman left Judicial Watch to run for the U.S. Senate even a college graduate, feared and continues to fear that Mr.

       Klayman will somehow eclipse him in the public recognition. Indeed, when Mr. Klayman left Judicial Watch, Mr. Fitton and the other Defendants had promised to fill Plaintiff's Chairmanship with an experienced and well respected lawyer and public figure like Congressman Bob Barr. It is telling that to this day, Judicial Watch has no Chairman or well respected lawyer leading the organization. Judicial Watch has become little more than a website and public relations tool for extreme elements of the so-called far right social conservative movement and the Republican Party, a far cry from the non-partisanship the National Journal credited Mr. Klayman's stewardship with in June, 2002. See attachment. To raise money, Fitton and his minions have jumped on the bandwagon of using xenophobic statements to beat up on immigrants and foreigners, hardly the purpose for which Judicial Watch was founded; which was to investigate and prosecute government corruption and abuse. Mr. Klayman has opposed this cheap racist technique, which harms even legal immigrants and their families by inciting ethnic racism against the hardworking, family values oriented Latin community – all to raise cash contributions for the current Judicial Watch Defendants. Thus, for a number of reasons, both legal and otherwise, the antipathy between the parties is great, despite Mr. Klayman's efforts for years to try to settle these disputes to "Save Judicial Watch," the baby which Plaintiff birthed, and protect his own family's interests.

2.     It is in this context that one must view the supplemental discovery requests of Defendants, which not only sought to invade Mr. Klayman's personal life, but which seek to clean out all of his financial records, whether it be credit reports,

check stubs, credit card statements or "whatever," from not only his own personal accounts, but organizations which have little to nothing to do with this case. As explained in the Opposition (Docket No. 113), which for judicial economy is incorporated herein by reference and which lays out the significant problems with most of Defendants' supplemental discovery, issues involving the damage claims in this case could easily be handled not by cleaning out all of Plaintiff's and his organizations financial records and dumping them onto the desks of Defendants, but by submitting them to an independent CPA accounting firm who could prepare a certified report setting forth any commercial activity that might be relevant to alleged trademark infringement or defamation damage claims. Given Defendants' hostility toward Plaintiff and demonstrated desire to destroy him and his family, to give them all of Plaintiff's and his organizations financial records, even individual check stubs, credit card statements and the like for his payment of alimony, child support and only God knows what else, for instance, would be a license to harm him further, and constitute a gross invasion of privacy. Unfortunately, continually citing the protective order which this court entered, the Magistrate Judge, however well intentioned, does not analyze in his order the irrelevant and grossly overly broad scope of the supplemental document requests, and avoids as well discussing an alternative method for all parties to obtain the financial compilations they may need should liability be proven. The Magistrate Judge apparently believes that with a protective order there is no need for this analysis based on relevancy, overbreath, privilege and other legitimate objections. Indeed, in this regard, it may be prudent to bifurcate the liability and damage

claims, as a way to avoid all parties from prematurely emptying out their files unnecessarily. Tellingly, the meager discovery documents produced thus far by Defendants have not produced the financial records which were reasonably and modestly sought by Plaintiff, despite requests which, if taken to the extreme as Defendants attempt to do, would require Judicial Watch to produce millions of pages of financial records as a matter of reciprocity.

3. Further, while at the same time loading up discovery with overly invasive and broad discovery requests which have no legitimate purpose other than to harass Plaintiff and significantly increase the cost of litigation, Defendants and their counsel have attempted to block Mr. Klayman from being covered by the Directors' and Officers' insurance policy of Judicial Watch, as explained in the Opposition. Plaintiff thus has very limited resources thus far to defend against Defandants' scorched earth litigation tactics, as he seeks the carrier, AIG, to honor its commitment to him for coverage, at a minimum, of alleged acts (i.e. errors and omissions) which are plead by Defendants to have occurred while Mr. Klayman was Chairman, General Counsel and Treasurer of Judicial Watch – a period which Defendants have admitted in documentation attached to the Opposition would cover their claims against Mr. Klayman. However, in yet other actionable misconduct, Mr. Fitton, the other Defendants and their counsel have sought to stymie and interfere with Mr.Klayman's attempts to obtain this coverage and even provided demonstrably false information about the policy number, the policy and the carrier itself, delaying considerably the process of obtaining coverage for months. The information was falsely put forth in

    Defendants' initial disclosure and later in correspondence, claiming falsely that Hartford was the carrier, when in fact it was AIG – underscoring Defendants' and their counsel's lack of ethical and legal behavior, and the certainty that their unbridled discovery is an attempt at further harassment.

4. The supplemental requests at issue, which are laid out in Plaintiff's Opposition (also attached), must be reigned in. They even request information about innocent third parties, such as Denise Underberg Golden, a former office manager of Judicial Watch, and Rebecca Eddy, two women whose names Mr. Fitton, the other Defendants and their counsel have no qualms in dragging their names through "their mud and sleaze." Indeed, as explained in the Opposition, not only are these women not relevant to this case – as Defendants agreed in the Severance Agreement as to the reasons Mr. Klayman was stepping down to pursue other endeavors (and thus the parole evidence rule applies) – but what legitimate discovery purpose is served by dragging these innocent women into these legal proceedings, other than to harm Mr. Klayman, his family and the women themselves. Ms. Eddy was not even employed by Judicial Watch at the time Mr. Fitton insinuates Mr. Klayman was having a relationship with her, and Mr. Klayman was separated from his former wife at the time and in the process of finalizing a consensual divorce settlement. Ironically, if Mr. Klayman had sought to get into the personal lives of Defendants Mr. Fitton and Mr. Orfanedes in particular, and the comments from third parties, and Plaintiff's own observations, about their apparent personal relationship and lifestyles, they would have objected vehemently and rightfully so. This should not be a case about smearing

the other party, as Defendants and their counsel already did in releasing information under seal from Plaintiff's divorce file to Legal Times, which then published a defamatory article.

5. The Magistrate Judge's order thus fails, under the pretext that nearly all discovery is relevant because a protective order is now in place, to take these serious considerations, set forth in the attached Opposition, into account. The Order is devoid of a request by request analysis of the documents at issue. In addition, he punishes Plaintiff for his counsel's, Spector, Gadon & Rosen's, reliance on professional common courtesy of getting from Defense counsel what they thought were extensions of time to object and respond to Defendants' supplemental discovery, only to be sandbagged later by counsel for Defendants, Richard Driscoll. Mr. Klayman did not fail to heed the Magistrate Judge's admonition about getting formal extensions of time and not relying on professional courtesy at the time he filed the Opposition, as the believed an extension to object was "obtained" by the Spector firm BEFORE the Magistrate Judge issued his prior Order. And, the discovery responses were also prepared by Spector, an experienced and well respected firm who at all times has acted in good faith.

6. Finally, it is not correct that Plaintiff has not produced documents to Defendants in this case. Indeed, much relevant documents have been produced. Understandably, Plaintiff, an individual, has far fewer documents than do the Defendants. And, as far a privilege logs, Defendants never produced them timely with their discovery responses, despite their considerably greater financial

resources – in the tens of millions of dollars -- supplemented by their insurance coverage in defense of this action.

WHEREFORE, for all of these reasons, and those set forth in the attached Opposition, the Magistrate Judge's order should be overruled on the grounds argued.

Respectfully submitted,

s/Larry Klayman
Larry Klayman, Esq.
D.C. Bar No.:  334581
3415 SW 24th Street
Miami, FL 33145
Tel: 305-447-1091
Fax: 305-447-1548

Daniel J. Dugan, Esquire
Spector Gadon & Rosen, P.C.
1635 Market Street 7th Floor
Philadelphia, PA 19103
Tel: 215-241-8872
Fax: 215.241.8844

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of MARCH 2008, a true copy of the foregoing Reply to Defendants' Response was served via electronic means to:

Richard W. Driscoll, Esquire
Driscoll & Seltzer, PLLC
600 Cameron Street
Alexandria, VA 22314

By: <u>s/Larry Klayman</u>
Larry Klayman, Esq.
D.C. Bar No.: 334581
3415 SW 24th Street
Miami, FL 33145
Tel: 305-447-1091
Fax: 305-447-1548