IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Larry Klayman, <br>           *Plaintiff,* <br><br> v. <br><br> Judicial Watch, Inc., *et al.,* <br><br>           *Defendants.* | Civil Action No. 1:06-CV-00670 <br><br> Honorable Colleen Kollar-Kotelly <br><br><br> **Jury Trial Demanded.** |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SUBPOENAS OF PHILLIP SHELDON AND DIENER CONSULTANTS OR, ALTERNATIVELY FOR PROTECTIVE ORDER**

Plaintiff, Larry Klayman ("Klayman"), by undersigned counsel hereby submits this memorandum of points and authorities in support of the motion to quash the subpoenas *duces tecum* returnable on March 31, 2008 to Phillip Sheldon and Diener Consultants, Inc. (the "Motion"). The Subpoenas must be quashed, or alternatively, in the unlikely event that they are not quashed, protected under a protective order prohibiting disclosure, because the Subpoenas are overbroad on their face, seek information not relevant to this litigation, and impermissibly seek proprietary, confidential commercial and financial information of Klayman and non-party vendors, and invade the rights of privacy and freedom of association of donors.[1]

---

[1] In correspondence between counsel in connection with this Motion, Defendants declined to withdraw or modify any of the subpoenas, however, the parties proposed to negotiate a reasonable protective order. In light of the dates for production identified in the Subpoenas, and Defendants refusal to limit the scope of information sought, the Motion seeks to quash the subpoenas in their entirety. To the extent any information sought is deemed subject to disclosure by the Court, Plaintiff should be permitted the opportunity to review documents ultimately produced pursuant to the Subpoenas in this case to claim appropriate privileges. This newest subpoena is virtually identical to an earlier subpoena which is subject to objection from a prior order by the Magistrate Judge. The reason it was reserved is because prior service was apparently defective.

399731-4

## I. BACKGROUND

Klayman brought this action in June 2006 against Defendants for multiple breaches of the Severance Agreement dated September 9, 2003, false designation and defamation. Defendants counterclaimed for breaches of the Severance Agreement by Klayman, and trademark infringement.[2]

Defendants recently served four Subpoenas to entities hired by Klayman to manage advertising and financial efforts related, in part, to funding for this litigation and other public interest matters on behalf of Klayman's clients. Subpoenas were issued to American Target Advertising, Inc. ("ATA"), Chester Mailing List Consultants, Inc, ("Chester")[3], Response Unlimited ("Response") and Diener Consultants, Inc. ("Diener"). Copies of the prior subpoenas are attached to earlier motions to quash.

Klayman hired ATA, and later Diener and Response, to provide services in the preparation of Klayman's letters that are mailed nationally, or for advertising, respectively. Specifically, Klayman provided to ATA and Response content intended for Klaymans' direct mail marketing program. ATA and Response provided other services, including printing, list rental and mailing on behalf of Klayman. Also, Klayman contracted ATA and Response in connection with his marketing activities. ATA and Response sent out Klayman's direct mail and in return, ATA and Response were paid for their services. Additionally, Klayman contracted with ATA and Response in connection with the receipt of funds generated by Klayman's marketing efforts, as well as the data analysis associated with these efforts.

---

[2] Defendants also filed a motion seeking leave to amend to their pleading to assert a claim for cybersquatting.

[3] The Chester Subpoena is deficient on it face and must be quashed because service was purportedly made to a Registered Agent and was thus not personally served as required by Fed. R. Civ. P. 45.

On behalf of Klayman, ATA apparently hired Chester, now no longer in existence but related to ATA, to provide management consulting services, including mailing list compilation services for Klayman. Also, Klayman hired Diener, which is an entity associated with Response, to specifically advertise in national newspapers, including the *Washington Times*.

In the Subpoenas, Defendants seek not only the content of Klayman's marketing mailings, but improperly also seek information developed by Klayman and these entities, including master lists, selection criteria, all communications between Klayman and ATA, Response, Chester and Diener, all bills and invoices, the entire contents of the lists, and all analyses of data resulting from Klayman's marketing efforts. With the exception of the Request No. 5 in ATA Subpoena, seeking exemplaries of Klayman's mail solicitations, the information sought in document requests appended to each of the four subpoenas is identical as to each entity. In each Subpoena, Defendants broadly seek all documents related to any entity or organization associated or affiliated with Larry Klayman concerning any direct mail or fundraising campaign. Specifically, Defendants seek:

- Any and all contracts, agreements or purchase orders between the subpoenaed entity and Larry Klayman in Request No. 1 in the ATA, Chester, Response and Diener Subpoenas;

- Any and all communications with Larry Klayman Request No. 2 in the ATA, Chester, Response and Diener Subpoenas;

- Any and all internal communications concerning or relating to any direct mail or fundraising campaign conducted for Larry Klayman in Request No. 3 in the ATA, Chester, Response and Diener Subpoenas;

- Any and all communications with third parties concerning or relating to any direct mail or fundraising campaign conducted for Larry Klayman in Request No. 4 in the ATA, Chester, Response and Diener Subpoenas;

- Documents related to "list selects," "special selects," or "criteria for selecting individuals or lists of individuals to whom direct mail solicitations were sent" in

3

399731-4

- Request No. 5 in the Chester, Response and Diener Subpoenas, and in Request No. 6 in the ATA Subpoena;

- Viguerie Master lists or files in Request No. 6 in in the Chester, Response and Diener Subpoenas, and in Request No. 7 in the ATA Subpoena;

- Any and all bills or invoices for services performed or generated for or on behalf of Larry Klayman in Request No. 7 in the Chester, Response and Diener Subpoenas;

- Documents, records or other data contained within the "blue book system" concerning or relating to respondents to any direct mail campaign or other fundraising campaign in Request No. 8 in the ATA Subpoena;

- records or other data concerning or relating to respondents to any direct mail campaign or other fundraising campaign in Request No. 8 in the Chester, Response and Diener Subpoenas and in Request No. 9 in the ATA Subpoena;

- reports, analyses or accountings of the results of any direct mail campaign or other fundraising campaigns in Request No. 10 (sic) in in the Chester, Response and Diener Subpoenas, as well as in Request No. 10 in the ATA Subpoena;

- any other documents concerning or relating to any direct mail campaign or other fundraising campaigns in Request No. 11 (sic) in the Chester, Response and Diener Subpoenas, as well as in Request No. 10 in the ATA Subpoena.

- Other objectionable and irrelevant information and documentation.

None of the information sought in connection with the document requests appended to the Subpoenas above is relevant to the instant litigation. In fact, the Subpoenas should be quashed because they are overbroad and irrelevant as they seek any and all information related to any and all commercial activities between Klayman and ATA, Chester, Response, and Diener for the period from 2003 to the present time.[4] To the extent that any relevant information could be gleaned from disclosure of the information sought in the Subpoeans, Defendants would only need the content of mailings, and perhaps aggregate amounts and numbers of respondents for claims of non-disparagement, non-competition or infringement in this case as concerns the

---

[4] Notwithstanding Paragraph 5 of The Severance Agreement, which provided a non-competition clause applicable to Klayman for a period of two (2) years after the September 2003 date of execution, the Subpoenas improperly seek information up to the present time.

4

399731-4

damage claims, information which could be analyzed and certified by a CPA accounting firm without the need to dump out all of the files of these third parties. However, Defendants are not entitled to the vastly overbroad and irrelevant detailed information dump they now seek.

Further to trade secrets or other traditional "proprietary" information, confidentiality concerns may also arise in the context of personal privacy. Compelled disclosure of the identities of an organization's members or contributors may have a chilling effect on the organization's contributors as well as on the organization's own activity.

Moreover, Klayman, in addition to the subpoenaed entities, has a direct and proprietary interest in the lists, and data associated with his marketing efforts, which disclosure to Defendants would effectively create a windfall for Defendants at the expense of the Klayman, ATA, Chester, Response and Diener and harm Klayman, given the proclivity of Defendants to confuse the public and publish to the media scandalous and false information about Klayman. Should the Court deem otherwise, then as a matter of law and equity, Klayman should be permitted to the opportunity to first review the information sought to claim any appropriate privileges.

Accordingly, the motion should be granted.

## II.    LEGAL ARGUMENT

### A.    Legal Standard

Rule 26(b) provides in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is *relevant* to the claim or defense of any party…. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Fed. R. Civ. P. 26(b)(1)(emphasis added). In all circumstances, only demonstrably relevant information is discoverable.

Federal Courts are authorized to restrict discovery that is annoying, embarrassing, oppressive, unduly burdensome and/or expensive. *See* Fed. R. Civ. P. 26(c). Rule 26(c) provides in pertinent part:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or **undue burden** or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;
>
> ***
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters
>
> ***
>
> (7) that a trade secret or other confidential research, development, or commercial information **not be revealed** or be revealed only in a designated way

Fed. R. Civ. P. 26(c)(emphasis added).

Moreover, a party has standing to challenge a subpoena issued where the party asserts claims of privilege, proprietary interest, or personal interest in the subpoenaed matter. *United States v. Nachamie*, 91 F. Supp. 2d 552, 559 (S.D.N.Y. 2000) (citations omitted); *Chiperas v. Rubin*, 1998 U.S. Dist. LEXIS 23578, at *2 (D.D.C. Nov. 3, 1998) (citations omitted).

Rule 45(c) provides for protection of persons subject to subpoenas in pertinent part:

> (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing **undue burden** or expense on a person subject to that subpoena. The court on behalf of

6

399731-4

> which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
>
> \*\*\*
>
> (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it…
>
>> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>>
>> (iv) subjects a person to undue burden.
>
> (B) If a subpoena
>
>> (i) **requires disclosure of a trade secret or other confidential research, development, or commercial information**,…
>
> the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

Fed. R. Civ. P. 45(c)(emphasis added).

A motion to quash or modify under Fed. R. Civ. P. 45(c)(3) requires a court to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies" or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). A facially overbroad subpoena is unduly burdensome. *Linder v. Calero-Portcarrero,* 180 F.R.D. 168, 174 (D.D.C. 1998)(*citing Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998).

Further, if a subpoena "requires disclosure of a trade secret or other confidential research, development, or commercial information," and the party seeking discovery "shows a substantial need for the ... material that cannot otherwise be met without undue hardship ..., the court may

7

order ... production only upon specified conditions." Fed. R. Civ. P. 45(c)(3)(B).  The court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party. *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987).

In addition, trade secrets or other traditional "proprietary" information, confidentiality concerns may also arise in the context of personal privacy.  In this regard, freedom of association for the purpose of advancing ideas and airing grievances is a fundamental liberty guaranteed by the First Amendment.  *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Compelled disclosure of the identities of an organization's members or contributors may have a chilling effect on the organization's contributors as well as on the organization's own activity.  *See Buckley v. Valeo*, 424 U.S. 1, 66-68 (1976). For this reason, the First Amendment requires that a compelling state interest be shown before a court may order disclosure of membership in an organization engaged in the advocacy of particular beliefs. That is, the Constitutional guarantee of freedom of association creates a privilege protected by privacy interests that protect individuals from having their private memberships and/or affiliations disclosed without prior consent.

    **B.**    **The Subpoenas Must Be Quashed Because The Documents Requested Are Overbroad And Not Relevant to Claims In This Litigation**

Defendants' Subpoenas to ATA, Chester, Response, and now Phillip Sheldon and Diener are overbroad and seek information which is irrelevant to any of the claims in this case, and is therefore not discoverable.  Each and every item requested in the Subpoenas includes overbroad and irrelevant catchall language and purportedly relates to any  "entity or organization associated or affiliated with Larry Klayman concerning or relating to any direct mail campaign or fundraising campaigns" for the time frame from 2003 to the present.  *See* Ex. A-D (Definitions and Instruction No. 8).  Moreover, each Subpoena incredibly demands "any and all other

documents concerning or relating to any direct mail or fundraising campaign conducted for Larry Klayman." *See* Ex. A-D (Request No. 11). Instead of limiting the requests to documents related to any of the claims in this litigation, Defendants broadly embark on a fishing expedition for irrelevant information seeking all documents related to Klayman "from 2003 to the present" for no rational reason other than to harass, annoy or embarrass Klayman, as well as to acquire improper access to trade secrets, private commercial information and proprietary information and documentation. Thus, the Subpoenas are overbroad and irrelevant on their face, and must be quashed. *See Linder*, 180 F.R.D. at 174.

In addition to being overbroad as to time and scope, the document requests in each of the Subpoenas impermissibly seek detailed information not relevant to any of the claims in this litigation. The only salient claims possibly implicated by the information in the Subpoenas are the claims of non-disparagement, infringement or non-competition. For these claims, Defendants needs only the content of Klayman's mailings, which they already have as demonstrated in the Exhibits to their various motions, still pending before this Court. The details and records of non-parties hired by Klayman in his marketing efforts are wholly irrelevant to this case. Moreover, only aggregate data relating to the numbers of recipients and respondents, and aggregate amounts of funds received as a result are palpably necessary to show the quantum of damages at this stage of the litigation. *See United States CFTC v. Whitney,* 441 F.Supp.2d 61 (D.D.C. 2006)(ordering redaction of data while permitting true aggregate price for calculation of damages).

Request Nos. 1 and 2 in each of the Subpoenas seek any agreements and communications between the subpoenaed entity and Larry Klayman. None of these communications are relevant or necessary to claims of non-disparagement, non-competition or infringement. Such

9

communications can not shed any light on the content of Klayman's mailing, or the aggregate numbers of recipients, donors or amounts received.  Further, disclosure of such communications in the context of Klayman's marketing efforts for this and other litigations implicate privacy rights and is arguably protected under the work product doctrine, as information prepared in anticipation of litigation.  *See* Fed. R. Civ. P. 26(b)(3); *see also Willingham v. Ashcroft*, 223 F.R.D. 1, 4 (D.D.C. 2005).  To the extent any such information is deemed subject to disclosure, at a minimum, Klayman must be permitted the opportunity to review the documents of the subpoenaed entities prior to disclosure for appropriate privileges.

Request Nos. 3 and 4 in each of the Subpoenas related to internal communications and communications between the subpoenaed entity and third parties are not rationally related to any of the claims in this litigation.  The ensuing document requests appended to each Subpoena are also irrelevant to any of the claims in this case.  Defendants seek every mailing list, all master lists, documents related to selection criteria, data analyses and any other document related to Klayman's marketing efforts resident with the subpoenaed entities.  *See* Ex. A (Request Nos. 6-11) and Exs. B-D (Request Nos. 5-11).  Disclosure of this information to Defendants, which includes private information about third parties, data and detailed analyses of Klayman's efforts to raise funds, is also irrelevant and not rationally related to any of the claims in this litigation.

In this case, Klayman claims, *inter alia,* that Defendants breached the provisions in the Severance Agreement by a campaign to disparage, defame and cast Klayman in a false light.  In their Counterclaim, Defendants claim that Klayman breached the Severance Agreement provisions of non-disparagement, misappropriation of confidential information, and non-competition.  In addition, Defendants claim Klayman infringed a trademark.  While the content of Klayman's marketing efforts mailed to the public are arguably relevant to claims of

infringement, non-disparagement and non-competition, internal, trade secret and proprietary communications and communications between the subpoenaed entities and third parties are not. Further, while aggregate amounts and numbers of respondents may be arguably relevant to claims of infringement and non-competition, Klayman's marketing and fundraising selection criteria, master and specific lists containing private information about direct mail respondents, and bills and invoices are not. The information implicated in the Subpoenas in the aggregate, to the extent it is arguably necessary for this case, is available from and more appropriately addressed as discovery directed to the parties. Defendants failed to seek this information previously.

Therefore, because the Subpoenas are overbroad and seek information not relevant to the instant litigation, the Court should grant the Motion and quash the subpoenas in their entirety.

> **C.    The Subpoenas Must Be Quashed, Or Alternatively A Protective Order Must Be Entered, Because They Requires Disclosure of a Trade Secret or Other Confidential Research, Development, or Commercial Information**

In addition to being overly broad in time and scope, Klayman, as well as ATA, Response, Chester and Phillip Sheldon and Diener, have a direct protectable, proprietary and personal interest in the subject documents related to mailing lists, communications, data and analyses in connection with Klayman's marketing activities. To the extent that any relevant information can be gleaned from the overbroad Requests appended to the Subpoenas, the need for such information is outweighed by the availability of aggregate information from Klayman, and the proprietary and commercial nature of the information.

As established above, the information sought in Request Nos. 5, 6, 8 and 10 in the Response, Chester and Phillip Sheldon and Diener Subpoenas, and Request Nos. 6-10 in the ATA Subpoena are not relevant to any of the claims in this case, and are thus not discoverable.

To the extent that the Court deems these items as relevant, the information must be protected from disclosure under Fed. R. Civ. P. 45(c)(3)(B), or under a protective order pursuant to Rule 26(c).

The list selection criteria sought by Request No. 5 in the Response, Chester and Phillip Sheldon and Diener Subpoenas are not only irrelevant to any of the claims in this case, but should be protected as proprietary or trade secret information. The criteria provided by the Subpoenaed entities in consultation with Klayman to select the recipients direct mail is private commercial information, subject to confidentiality between Klayman and the entities. The selection criteria are developed over time, the protection of which has commercial value to Klayman as well as the entity.

The master lists sought in Request Nos. 6 in the Response, Chester and Phillip Shedlon and Diener Subpoenas, and in Request No. 7 in the ATA Subpoena are proprietary and constitute trade secrets subject to protection from disclosure. The lists were rented by Klayman from Response and ATA, and tailored pursuant to Klayman's direction. Master lists are the property of the Subpoenaed entities. Aside from being irrelevant to any claim of misappropriation, disclosure of these master lists would create a windfall for Defendants and constitute an abuse of the subpoena power of this Court. These lists are maintained at great expense and value and are critical fundraising tools for direct mailing within the conservative public interest community. Accordingly, the master lists, broadly sought in the Subpoenas, are subject to protection under Fed. R. Civ. P. 45(c). At a minimum, and due to the proprietary interest in the information sought, Klayman should be permitted to first review the materials for any appropriate privileges.

Moreover, the analyses, reports and detailed accountings of data compiled and generated further to Klayman's marketing efforts sought in Request Nos. 8 and 10 in the Response, Chester

12

and Diener Subpoenas, and in Request Nos. 8-10 in the ATA Subpoena are protected trade secrets and highly confidential commercial information. Klayman engaged the entities to perform services in connection with marketing efforts. As part of the services performed on behalf of Klayman, the entities collected, compiled and reported financial and other data further to direct mail and advertising efforts. Such broad and detailed is information constitutes proprietary, commercial information, and should not be disclosed. To the extent such information is arguably relevant to this litigation, it is more appropriately addressed in discovery directed to the parties.

### III.   CONCLUSION

For all the foregoing reasons, Plaintiff, Larry Klayman, respectfully submits that the Motion must be granted.

Respectfully submitted,

s/Larry Klayman_____
Larry Klayman, Esq.
D.C. Bar No.:  334581
3415 SW 24th Street
Miami, FL 33145
Tel: 305-447-1091
Fax: 305-447-1548

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Quash Subpoena and Memorandum of Points and Authorities in support was served by electronic means to:

Richard Driscoll
Driscoll & Seltzer, PLLC
600 Cameron Street
Alexandria, Virginia 22314

399731-4

                                          s/Larry Klayman_____
                                          Larry Klayman, Esq.
                                          D.C. Bar No.: 334581
                                          3415 SW 24th Street
                                          Miami, FL 33145
                                          Tel: 305-447-1091
                                          Fax: 305-447-1548

399731-4