11 of 20 DOCUMENTS

JACOBS v BATAVIA AND GENERAL PLANTATIONS TRUST, LIMITED.

[1923. J. 1972.]

[CHANCERY DIVISION]

*[1924] 1 Ch 287*

HEARING-DATES: 3, 18 December 1923

18 December 1923

**CATCHWORDS:**

Contract - Company - Contract contained in two Written Instruments - Prospectus - Promise in Prospectus - Deposit Notes - Collateral Contract.

**HEADNOTE:**

The plaintiff, in reliance upon a prospectus issued in September, 1920, by the defendant company (hereinafter called "the Trust"), applied for and had allotted to him subject to the terms of the prospectus four 100l. 71/2 per cent. profit sharing deposit notes of the Trust. It was stated in the prospectus that the notes would be paid off at 105 per cent. by four annual drawings, and, under the heading "Earlier payments," that the Trust retained the right to pay off at 105 per cent. all or any of the outstanding notes at any time on giving three months' previous notice in writing, but that in the event of the sale of the Trust's R. B. estates, further referred to in that prospectus (which according to the construction placed upon the prospectus by the Court was not confined to a sale under a certain option of purchase referred to later in the prospectus, but included a sale to anybody whomsoever), the Trust would set aside out of the proceeds of sale a sum sufficient to redeem all the notes then outstanding, and the holders would be given an option of being then paid off in cash at 105 per cent. or of retaining their notes till the date of drawing. Each of the notes, which was in the form of the specimen note referred to in the prospectus, provided that the Trust would, as and when the principal sum of 100l. became payable in accordance with the conditions indorsed thereon, pay to the plaintiff the sum of 105l., and was expressed to be subject to and with the benefit of those conditions, which repeated the provisions contained in the prospectus for the redemption of the notes by drawings and the option retained by the Trust to pay off the notes on notice, but did not refer to the promise by the Trust contained in the prospectus as to earlier payment in the event of the sale of the Trust's R.B. estates.

The option to purchase referred to in the prospectus having lapsed and the Trust having contracted to sell the R.B. estates without having given notice to the plaintiff that his option to be paid off or to retain his notes had thereby become exercisable, and the Trust having repudiated their liability to perform their promise contained in the prospectus, the plaintiff brought this action to have such liability of the Trust established and for an injunction to restrain them from dealing with the proceeds of sale without in the first place setting aside a sum sufficient to pay off the outstanding notes:-

Held, that the plaintiff was entitled to the relief claimed on either of two grounds - namely, (1.) that the entire contract was contained in two written instruments - namely, the deposit notes and the prospectus, the terms of which the Court could reconcile by construing the promise in the prospectus as if it were inserted in the note as a proviso to come into operation, if and when the R. B. estates were sold, or (2.) that the

promise was a binding collateral contract, the consideration for which was the contract by the plaintiff to take up the notes, and that, as the terms of that promise and an animus contrahendi on the part of the plaintiff and the Trust had been clearly proved, the test laid down by Lord Moulton in Heilbut, Symons & Co. v. Buckleton [1913] A. C. 30, 35, 47 was satisfied.

Held, further, that, notwithstanding that the collateral promise did in fact add to and vary the terms of the contemporaneous deposit notes by conferring additional rights on the holders, in the event of a sale of the R. B. estates, and by modifying, in that event, both the covenant to pay the principal moneys (which according to the deposit notes were only to be paid when the note was drawn for payment) and also the condition if the holder should exercise his option of retaining his note until the same was drawn for payment, yet, as that collateral promise was in fact a written and not a verbal contract, it did not fall within the purview of the decisions in Morgan v. Griffith (1871) L. R. 6 Ex. 70 and Erskine v. Adeane (1873) L. R. 8 Ch. 756.

In re Tewkesbury Gas Co. [1911] 2 Ch. 279; [1912] 1 Ch. 1 and British Equitable Assurance Co. v. Baily [1906] A. C. 35 distinguished.

**INTRODUCTION:**

WITNESS ACTION.

The following statement of facts, so far as material, is taken from the judgment of P. O. Lawrence J.:-

In pursuance of a resolution passed on September 22, 1920, by the directors of the defendant company (hereinafter called "the Trust"), a prospectus as then approved was issued by the Trust to the public on September 24, 1920, offering 100,000l. deposit notes for subscription at par in denominations of 10l., 50l. and 100l.

The prospectus (after an introductory statement that application for over 20,000l. had already been made by shareholders and that the issue was made on the authority of resolutions of the board of directors dated July 7, August 23 and September 22, 1920) stated that interest on the notes would be payable half-yearly, that one-half of the surplus profits, after payment of a dividend of 71/2 per cent. on the issued share capital, would be divided amongst the holders of the outstanding notes, and that the notes would be paid off at 105 per cent. (and pro rata on the smaller denominations) by four annual drawings of 25,000l. each at June 30, in the years 1922, 1923, 1924 and 1925 respectively, with interest to the respective dates. The prospectus then contained the following paragraph: "Earlier payments. The Trust retains

the right to pay off at 105 per cent. all or any of the outstanding notes at any time on giving three months' previous notice in writing, but in the event of the sale of the Rio Bravo estates (further referred to in this prospectus) the directors will set aside out of the proceeds of such sale a sufficient sum to redeem all the notes then outstanding and will give the holders the option of being then paid off in cash at 105 per cent. or of retaining their notes till the date of drawing." Later on in the prospectus there was a list of the Trust's investments at December 31, 1919. Amongst those investments there appeared as item 3 "Rio Bravo estates of 320,000 acres in Guatemala," which were stated to have been conservatively valued by the directors in their annual report issued in July, 1920, at 150,000l. The prospectus also contained the following paragraph: "Rio Bravo estates. Since the report was issued an option has been granted to an American financial group to purchase these freehold properties from the Trust for 1,000,000 dollars (equal at present exchange rates to about 280,000l.) showing an excess of 130,000l. over the directors' valuation." The prospectus further contained a statement that a specimen of the deposit notes with the conditions attached could be seen at the offices of the Trust during business hours whilst the subscription list remained open.

In response to the invitation contained in the prospectus and in reliance upon the statements therein contained, the plaintiff on September 29, 1920, filled in and signed the application form annexed to the prospectus and sent it to the directors of the Trust. The plaintiff's application so far as material was as follows: "Having paid to your bankers the sum

of 100l. being 25 per cent. on 400l. deposit notes now offered for subscription at par, I hereby request that you will allot the same to me and I hereby agree to accept the same or such less quantity (if any) as may be allotted to me subject to the terms of the prospectus and of your memorandum and articles of association and I undertake to pay the further amounts as they become due according to the terms of issue." On October 1, 1920, the plaintiff received a letter

signed by the secretary of the Trust which, so far as material, was as follows: "We beg to inform you that in accordance with your application the directors have allotted to you 400l. profit-sharing deposit notes forming part of the issue of 100,000l. of such profit-sharing deposit notes offered for subscription at par." On December 22, 1920, the Trust sealed and sent to the plaintiff four deposit notes of 100l. each, which were in the same form as the specimen note referred to in the prospectus. Each of the deposit notes contained the following three clauses:-

"1. The **Batavia** and General Plantations Trust, Limited (hereinafter called 'the Company'), will, as and when the principal sum of 100l. above mentioned (hereinafter referred to as 'the principal moneys') becomes payable in accordance with the conditions endorsed hereon, pay to Sydney **Jacobs** of the Bungalow, Bray, Berks, or other the registered holder for the time being (hereinafter called 'the holder'), the sum of one hundred and five pounds.

"2. The Company will in the meantime pay to the holder interest on the principal moneys by equal half-yearly payments on June 30 and December 30 in every year, the first payment of a full half-year's interest to become due and payable on December 30 next.

"3. This deposit note is issued subject to and with the benefit of the conditions endorsed hereon, which are deemed to be part of it."

The conditions indorsed on the deposit notes were nineteen in number. The only conditions which are material to be here mentioned are the fifth and sixth conditions. By the fifth condition it was provided (inter alia) that one-fourth in value of the total outstanding notes of the issue with all arrears of interest would be paid off at 105 per cent., and pro rata, on June 30 in each of the years 1922, 1923, 1924 and 1925, the particular notes to be redeemed on each occasion being determined by drawings; and by the sixth condition it was provided that the company should be entitled at any time, upon giving three months' previous notice in writing to the holder, to pay off the principal moneys together with interest

(free of income tax) up to the date of payment and arrears of interest, notwithstanding that the note might not have been drawn for payment off. No reference was made either in the body of the deposit notes or in the conditions indorsed thereon to the Trust's promise of earlier payment in the event of the sale of the Rio Bravo estates.

The public did not take up the whole of the deposit notes offered for subscription, and on December 21, 1920, the Trust issued a circular to its shareholders inviting them to subscribe for the balance of such deposit notes. In that circular the nature of the deposit notes was described, and amongst other statements not material to be here set forth, was the following statement:-

"The notes are to be paid off at 105 per cent. by four annual drawings of 25,000l. each at 30 June in each of the years 1922, 1923, 1924 and 1925, or may be repaid at an earlier date, if the directors so decide; and, in the event of the Rio Bravo estates being sold, note holders may elect to be paid off out of the proceeds of such sale." No mention was made in this circular of the option to purchase the Rio Bravo estates granted to the American financial group.

In December, 1921, the plaintiff purchased two further deposit notes for 100l. each from one Cross, and in April, 1922, the plaintiff purchased four further deposit notes for 100l. each from one Hooker.

The American financial group referred to in the prospectus did not exercise the option to purchase the Rio Bravo estates, and that option lapsed some time before the month of December, 1921, as appeared from the report of the directors of the Trust presented in that month to the shareholders.

The plaintiff not having been given the option of being paid off in accordance with the promise made by the Trust in the prospectus, and being apprehensive that the directors of the Trust did not intend to set aside out of the proceeds of sale of the Rio Bravo estates a sufficient sum to redeem the outstanding deposit notes, caused a letter to be written to the Trust on June 26, 1923, requiring payment of 650l. secured

by six of the deposit notes held by him; and, not having received any satisfactory reply, commenced this action on July 4, 1923.

By the statement of claim the plaintiff claimed (1.) a declaration that the Trust was bound to set aside out of the proceeds of sale of the Rio Bravo estates a sum sufficient for the payment off at 105 per cent. of the outstanding deposit notes and to apply the same for that purpose, except in so far as the holders of the deposit notes might elect to retain their deposit notes until they were drawn for redemption, or alternatively, that the Trust was bound to set aside and apply thereout a sufficient sum to redeem the plaintiff's deposit notes at 105 per cent., and (2.) an injunction restraining the Trust from applying or using the proceeds of sale of the Rio Bravo estates or any part thereof without setting aside and applying a sufficient sum for the purpose aforesaid or alternatively, without setting aside and applying a sufficient part thereof for and to the payment off at 105 per cent. of the plaintiff's deposit notes.

The Trust resisted these claims on the grounds, first, that the deposit notes constituted the only subsisting contract between the plaintiff and the Trust, and that, upon the issue of the deposit notes, the prospectus ceased to have any effect for the purpose of constituting a contract, and secondly, that on the true construction of the paragraph in the prospectus entitled "Earlier Payment," the promise contained in such paragraph only became operative in the event of a sale of the Rio Bravo estates to the American financial group resulting from the option to purchase mentioned in the prospectus, and that, as such option was never exercised, the promise never became effective.

Upon the question of construction thus raised, it is enough to state, for the purpose of this report, that the Court held, after hearing the arguments, that the promise in the prospectus was not confined to the event of a sale of the Rio Bravo estates under the option given to the American financial group, but extended to the event of any other sale of those estates.

**COUNSEL:**

Jenkins K.C. and Cecil Turner for the plaintiff. The deposit notes do not contain all the terms of the contract. The prospectus contains a promise by the Trust, in the event of a sale, to set aside a sum sufficient to pay off the outstanding deposit notes. The terms of the contract are to be found in two written documents - namely, the deposit notes and the prospectus - which are capable of being read together, and do not conflict; or, in the alternative, the promise contained in the prospectus is a contract collateral to the contract contained in the deposit notes.

Schiller K.C. and Heckscher for the defendants. The action, which is not one grounded on misrepresentation in the prospectus, is misconceived. The prospectus forms no part of the contract; it was issued merely for the purpose of supplying information and inducing a contract. The deposit notes contain the whole contract between the parties. If the statements in the prospectus are to be incorporated in the deposit notes, it follows that there would be a guaranty by the Trust that the Rio Bravo estates were worth 150,000l. This action is an attempt, by ingeniously pleading the existence of a collateral contract consisting of the promise in the prospectus, to obtain a charge on those estates. It is not permissible to refer to statements in the prospectus for the purpose of interpreting the contract contained in the deposit notes: In re Tewkesbury Gas Co. n(1) and British Equitable Assurance Co. v. Baily. n(2) If there is a collateral contract, its terms are at variance with the express terms of the deposit notes. If it is decided that the statement in the prospectus operates as a binding collateral contract, then such a decision would have far-reaching results, since every statement in a prospectus would be given the effect of a warranty.

Jenkins K.C. in reply. There is no magic about a prospectus: it is a fallacy to say that a contract cannot be found in a prospectus; there is no reason against it. Prima facie, one would look at the deposit notes to find the contract, but that

does not preclude the existence of a collateral contract, which may be found in a letter or an application

n(1) [1911] 2 Ch. 279; [1912] 1 Ch. 1.

n(2) [1906] A. C. 35.

for shares in combination with a prospectus. Here the promise in the prospectus is a collateral contract: it provides what terms are to be put in the deposit notes. It is not contended that the prospectus here is to be used for the purpose of interpreting the deposit notes. In In re Tewkesbury Gas Co. n(1) the debentures contained all the terms of the contract; the question there was one relating to the interpretation of the debentures, and the company there was relying upon a statement in the prospectus. In British Equitable Assurance Co. v. Baily n(2) the whole contract was contained in the policies. Both cases are distinguishable from the present on the facts; but in one respect the latter of those two cases is in favour of the plaintiff, in that the possibility of a collateral contract in the prospectus is clearly recognized in the speeches delivered by the learned Law Lords. n(3) The collateral contract must not be inconsistent with its principal contract; but every collateral contract must naturally effect a modification of the principal contract. Here there is no inconsistency between the promise in the prospectus and the terms contained in the deposit notes; but there is an addition to the principal contract. At most, the Trust is tying its hands in a given event. The application of the plaintiff and the allotment to him each recognizes the prospectus; the offer which the Trust made was accepted, and the Trust is bound to carry it out. Even if the collateral contract were a verbal one, it would make no difference, because it is quite independent of and in no way conflicts with the deposit notes: Leake on Contracts, 7th ed., p. 130; Morgan v. Griffith n(4) and Erskine v. Adeane. n(5)

Schiller K.C. replied on the two new authorities cited. Morgan v. Griffith n(4) and Erskine v. Adeane n(5) draw the line of demarcation as to how far a collateral contract can be read as part of the principal contract. In those cases the lease was not contradicted, modified or affected in any manner by the terms of the collateral agreement. A collateral

n(1) [1911] 2 Ch. 279; [1912] 1 Ch. 1.

n(2) [1906] A. C. 35.

n(3) [1906] A. C. 35, 38, 41.

n(4) L. R. 6 Ex. 70.

n(5) L. R. 8 Ch. 756.

contract may not contradict, vary or affect the subject matter of the principal contract. In both those cases the collateral agreement was absolutely independent of the lease, as independent as an agreement, collateral to a lease, to supply the lessor with meat would be. But the prospectus here does in fact vary the terms of the deposit notes. Anything that adds to the terms of the contract itself is, in effect, a variation. Here the fifth condition indorsed on the notes provided for the notes being paid off by drawings, while the option in the prospectus given to the holders, in a certain event, contradicts that condition. That option is plainly an addition to the contract contained in the deposit notes. Further, the option given to holders, in a certain event, to retain their notes is contradictory to the power of the Trust to pay off the outstanding notes.

Cur. adv. vult.

Dec. 18.

**PANEL:** P. O. LAWRENCE J

**JUDGMENTBY-1:** P. O. LAWRENCE J

**JUDGMENT-1:**

    P. O. LAWRENCE J: delivered a written judgment, in which, after stating the facts and deciding the question arising on the construction of the prospectus in favour of the plaintiff, he continued: I now come to the main ground of defence. Much reliance was placed by Mr. Jenkins upon the decisions in Morgan v. Griffith n(1) and Erskine v. Adeane n(2) , but in my opinion these decisions do not, in the circumstances, help the plaintiff's case.

    It is firmly established as a rule of law that parol evidence cannot be admitted to add to, vary or contradict a deed or other written instrument. Accordingly, it has been held that (except in cases of fraud or rectification and except, in certain circumstances, as a defence in actions for specific performance) parol evidence will not be admitted to prove that some particular term, which had been verbally agreed upon, had been omitted (by design or otherwise) from a written instrument constituting a valid and operative contract between the parties: see, e.g., Lord Irnham v. Child n(3) ; Martin v. Pycroft n(4) ; and Jervis v. Berridge. n(5)

        n(1) L. R. 6 Ex. 70.

        n(2) L. R. 8 Ch. 756.

        n(3) (1781) 1 Bro. C. C. 92.

        n(4) (1852) 2 D. M. & G. 785.

        n(5) (1873) L. R. 8 Ch. 351, 360.

    In Morgan v. Griffith n(1) and Erskine v. Adeane n(2) it was held that evidence was, however, admissible to prove a verbal collateral agreement made in consideration of one of the parties executing a deed under seal, provided that such verbal agreement did not add to, vary or contradict the terms of the deed itself. These cases are sometimes said to form an exception to the rule referred to, but in truth they are outside the mischief aimed at and are not in conflict with the rule. The foundation on which the decisions in those cases rests is that the verbal agreement is strictly collateral to the written instrument in the sense that it is independent of and does not in any way add to, vary or contradict any of the terms contained in such instrument.

    My reasons for stating that the decisions in those cases do not assist the plaintiff's case are, first, because they deal entirely with verbal collateral agreements, whereas the agreement sought to be enforced here is a written agreement constituted by the written offer of the plaintiff to take the four deposit notes on the terms of the prospectus and the written acceptance of such offer signed by the secretary of the Trust acting under the authority of the board of directors and, secondly, because the principle upon which they proceed is, that the verbal collateral agreement does not add to, vary or contradict the terms of the deed, whereas the agreement in the present case directly affects the terms upon which the principal moneys mentioned in the deposit notes are secured, and does in fact both add to and vary those terms by conferring additional rights on the deposit holders in the event of the sale of the Rio Bravo estates and by modifying, in that event, both the covenant to pay the principal moneys (which according to the deposit notes are only to be paid when the note is drawn for payment) and also condition 6, if the holder should exercise his option of retaining the deposit note until drawn for payment. Had the promise which the plaintiff seeks to enforce in this action been merely a verbal promise, I should have felt constrained to hold that the rule of law, to which I have referred, was applicable and that

        n(1) L. R. 6 Ex. 70.

        n(2) L. R. 8 Ch. 856.

evidence of such promise was inadmissible. The strength of the plaintiff's case, in my judgment, lies in the fact that the promise is incorporated in the written contract signed by the parties.

The real point which, in my opinion, has to be determined here is, whether the deposit notes issued to the plaintiff do, in fact, express the whole bargain which was come to between him and the Trust, or, whether they only express part of such bargain, and the promise which the plaintiff seeks to enforce constitutes the rest of the bargain and still remains operative. If the latter be the correct view, the promise would, in my opinion, be enforceable on one or other of the following grounds, either because the entire contract between the parties is contained in two written instruments which this Court will construe together, that is, the deposit notes and so much of the preliminary written contract as has not been superseded by the deposit notes; or else, because the promise is a written collateral contract, the consideration for which was the entering into by the plaintiff of the contract to take the deposit notes. That such a written collateral contract is capable of strict proof without coming into conflict with any rule of law or procedure, although it operates to add to or vary another contemporaneous written contract, cannot, I think, be disputed; it is altogether outside the rule of law relating to the inadmissibility of parol evidence to add to, vary or contradict the terms of a written instrument. As regards such collateral contracts, the following remarks made by Lord Moulton in his address to the House (in which Lord Haldane L.C. concurred) in Heilbut, Symons & Co. v. Buckleton n(1) are worth quoting: "It is evident, both on principle and on authority, that there may be a contract the consideration for which is the making of some other contract ... [but] Such collateral contracts, the sole effect of which is to vary or add to the terms of the principal contract, are therefore viewed with suspicion by the law. They must be proved strictly. Not only the terms of such contracts, but the existence of an 'animus contrahendi'

n(1) [1913] A. C. 30, 47.

on the part of all the parties to them must be clearly shewn."

On the facts of this case I have come to the clear conclusion that the deposit notes issued to the plaintiff do not, and were not intended to, contain the whole of the terms of the bargain arrived at between the Trust and the plaintiff. The specimen deposit note which had been prepared, when the prospectus was issued and of which inspection by intending applicants was invited, did not embody the promise made by the Trust as set out in a prominent position on the front page of the prospectus, and I think it is perfectly plain, from a perusal of the prospectus, that the Trust intended that this promise should be an effective promise, notwithstanding that it was not to be inserted in the deposit notes.

The introductory sentence of the paragraph containing the promise obviously refers to the sixth condition indorsed on the specimen deposit note and, in my opinion, the true meaning of that paragraph is that, notwithstanding that by the sixth condition the Trust retains the right of redemption therein mentioned, the Trust promises that, in the event of the Rio Bravo estates being sold before the deposit notes are redeemed, the directors will, etc. The reason for not including the promise amongst the conditions indorsed upon the deposit notes is not obvious, and, as no witnesses have been called on behalf of the Trust, and, as no explanation has been offered by counsel for the Trust, the Court is not called upon to speculate as to the true reason for its exclusion. It has not been suggested that this exclusion was due to any bargain between the parties that the promise should not be effective nor that it was due to any waiver of the benefit of the promise on the part of the plaintiff, and, in my judgment, the inference that the Trust intended that it should remain a continuing binding promise is, in the circumstances, overwhelming. The promise was inserted in the prospectus to make the issue more attractive to the public, and such insertion would have been quite meaningless and highly misleading if, as now pleaded, the promise was to have no effect after the deposit notes had been issued.

In the result, I hold that the promise constitutes a binding operative contract which was not superseded by the issue of the deposit notes; and that the latter do not contain the whole contract between the parties, but that the entire contract is compounded of two documents, that is, the deposit note and the written collateral promise, which two documents the Court will construe together, or, alternatively, that the promise constitutes a binding collateral contract in writing which the plaintiff is entitled to enforce. Treating the two documents as together constituting the entire contract, there is no

difficulty in construing the promise, just as if it had been inserted in the deposit notes as a proviso to come into operation, if and when the Rio Bravo estates were sold; and treating the promise as a collateral contract and applying Lord Moulton's test in Heilbut, Symons & Co. v. Buckleton n(1), I am satisfied that it has been strictly proved, and that its terms and the existence of an "animus contrahendi" on the part of the Trust and the plaintiff have been clearly shown.

Heilbut, Symons & Co. v. Buckleton n(1), moreover, affords a complete answer to Mr. Schiller's argument that a decision in this case that the promise operates as a binding collateral contract is tantamount to a decision that every statement of fact in a prospectus amounts to a warranty. The promise in the present case is not a promise merely to be inferred from a statement of fact, but is a promise made in so many words; and there is no need here to embark upon the vexed question, whether a statement of fact is or is not intended to amount to a contract or warranty. The form of the promise itself, in my judgment, conclusively shows that the Trust intended that all applicants, on accepting the invitation extended to them by the prospectus, would have certain rights and privileges additional to the rights intended to be conferred on them by the deposit notes.

Mr. Schiller has further contended that the decisions of Parker J. in In re Tewkesbury Gas Co. n(2) and of the House

n(1) [1913] A. C. 30, 47.

n(2) [1911] 2 Ch. 279; [1912] 1 Ch. 1.

of Lords in British Equitable Assurance Co. v. Baily n(1) prevent the Court from holding that the promise in this case constitutes a binding contract. In my opinion, these decisions do not have any such effect.

In the Tewkesbury Case n(2) the only question was as to the construction of a debenture which contained the whole contract between the holder and the company, and it was held that the Court could not, in determining that question, properly refer to the prospectus pursuant to which the debenture was issued. That case is distinguishable from the present case, on the ground that, here, the whole contract between the plaintiff and the Trust is not contained in the deposit notes and on the further ground that, here, the prospectus is referred to for the purpose of proving the whole contract between the parties and not for the purpose of construing the deposit notes. In British Equitable Assurance Co. v. Baily n(1) the House of Lords (reversing the decision of the Court of Appeal) held that a statement made in the prospectus of an insurance company as to the practice of the company in the distribution of profits did not, in the circumstances, amount to a contract between the company and the policy holders that the company would not alter such practice. Lord Macnaghten n(3) points out that the prospectus there did not purport to give an assurance of any sort that the allocation of profits would never be altered. Lord Lindley says that the whole contract between the parties, there, was to be found in the policies themselves, and that the prospectus could not be legitimately referred to in order to construe the policies, and that he could find no contract to the effect contended for, and adds that a collateral contract so wholly opposed to the contracts contained in the policies was not, in his opinion, established by the evidence in that case. It is significant that none of the learned Law Lords who took part in that decision seem to have entertained any doubt that a collateral contract adding to or varying the terms of the policies might have been come to, if

n(1) [1906] A. C. 35.

n(2) [1911] 2 Ch. 279; [1912] 1 Ch. 1.

n(3) [1906] A. C. 35, 38, 41.

appropriate words had been found in the prospectus; the only conclusion arrived at, there, was that no such contract had been established by the evidence. So far from assisting the Trust's contention in this case, I am of opinion that British Equitable Assurance Co. v. Baily n(1) is an authority tending in favour of the plaintiff.

In the result, for the reasons stated, I hold that the plaintiff is entitled to succeed in this action. Although my decision is based entirely upon the contract entered into by the Trust on the plaintiff's subscribing for the four deposit notes, I am of opinion that the plaintiff is not confined to the alternative relief claimed by him, but is entitled to enforce the whole of the promise according to its tenour, especially as there is a suggestion that the proceeds of sale received up to the present time may not be sufficient to pay off all the outstanding deposit notes, in which case the plaintiff would only be entitled at the present time to have the proceeds of sale set aside, and at most to payment of a share of such proceeds pro rata with all the other holders of outstanding deposit notes.

Accordingly I propose to make a declaration and grant an injunction in the general terms claimed in paras. 1 and 2 of the prayer of the statement of claim, omitting the alternative claim at the end of each paragraph, and the Trust must pay the costs of this action.

**SOLICITORS:**

Solicitors for the plaintiffs: Reid Sharman & Co.

Solicitors for the defendants: Jenkins, Baker & Co.

n(1) [1906] A. C. 35.

H. C. H.

(c)2001 The Incorporated Council of Law Reporting for England & Wales