UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARRY KLAYMAN,**<br><br>　Plaintiff,<br><br>　v.<br><br>**JUDICIAL WATCH, INC.,** *et al.*,<br><br>　Defendants. | Civil Action No. 06-670 (CKK)(AK) |

**MEMORANDUM ORDER**[1]

Pending before the Court are Plaintiff's Motion to Quash Subpoeans Duces Tecum to Lawyers for Larry Klayman Who Assisted in Negotiation of the Severance Agreement and Motion for Reconsideration [120] and Defendants' Opposition thereto [132]. Also pending are Plaintiff's Motion to Quash Subpoenas of Phillip Sheldon and Diener Consultants, or Alternatively for Protective Order [126] and Defendants' Opposition thereto [130]. After considering the submissions of the parties and the arguments presented at the hearing on April 17, 2008, the Court issues the following Memorandum Order.

**I.    Background**

Plaintiff Larry Klayman ("Klayman") is the former Chairman and General Counsel of Judicial Watch, Inc. ("Judicial Watch"), a non-profit organization that was founded "in 1994 as a public interest watchdog to investigate and prosecute government corruption and abuse."

---

[1] United States District Judge Colleen Kollar-Kotelly referred this case to the undersigned Magistrate Judge for disposition of all pending and future discovery-related motions pursuant to Local Civil Rule 72.2(a). (*See* Order [85] dated 12/3/07.)

(Second Am. Compl. [12] ¶¶ 2, 7, 20.) Klayman left Judicial Watch in 2003. (*Id.* ¶ 28.) In anticipation of his departure, the parties entered into a Confidential Severance Agreement on September 19, 2003. (*See* Am. Countercl., Ex. A [86-2].) Judicial Watch agreed, *inter alia*, to pay Klayman a lump sum of $400,000 as severance pay and continue his family health insurance coverage for a period of one year (*Id.* ¶¶ 2, 3.) The Severance Agreement contained a "Non-Disparagement" clause; Klayman and Judicial Watch each agreed not to "directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about" the other party. (*Id.* ¶ 17.) Each party agreed to reimburse the other for expenses and Klayman re-affirmed and acknowledged a $78,810 debt that his law firm, Klayman and Associates, P.C., owed to Judicial Watch. (*Id.* ¶ 10, 11.)

The Severance Agreement contained a provision addressing the treatment of confidential information and Judicial Watch property. (*Id.* ¶ 4.) The confidentiality provision provided, in relevant part:

> A. <u>Confidential Information</u>. Klayman agrees that all non-public information and material, whether or not in writing concerning Judicial Watch, its operations, programs, plans, relationships, donors, prospective donors, clients prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. . . . Klayman agrees that after the Separation Date [September 19, 2003], he shall not disclose any Confidential Information to any person or entity or use Confidential Information for any purpose without written approval by an officer of Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman.
>
> \* \* \* \*
>
> D. <u>Client and Donor Information</u>. . . . Klayman expressly agrees and

>acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor or client lists or donor or client data.

(*Id*. ¶ 4(A), (D).) Finally, the Severance Agreement contained a non-competition and non-solicitation provision under which Klayman was prohibited from engaging in specified business activities, including working for a Judicial Watch competitor and soliciting Judicial Watch donors for contributions to a competitor, for a period of two years. (*Id*. ¶ 5.) Judicial Watch agreed to "pay Klayman $200,000 in consideration of his agreement not to compete or solicit." (*Id*. ¶ 6.)

On April 12, 2006, Klayman and Louise Benson,[2] a Judicial Watch supporter and donor, brought suit against Judicial Watch and its President, Thomas J. Fitton. (*See* Compl. [1].) Klayman later amended his Complaint to name Paul Orfanedes, the Secretary and a director of Judicial Watch, and Christopher Farrell, another director of Judicial Watch, as defendants. (*See* Second Am. Compl.[12].) In Counts Six, Seven and Eight, Klayman alleges that Judicial Watch breached various obligations owed to him under the Severance Agreement and in Count Nine he alleged that Judicial Watch defamed him by disseminating allegedly false statements to Judicial Watch employees and the media.[3] (*Id*. ¶¶ 66, 115-162.) In Count Four, Klayman also brings a claim under Section 43(a) the Lanham Act, which provides:

>Any person who, on or in connection with any goods or services, or any container

---

[2] By Order dated January 17, 2007, Judge Kollar-Kottelly dismissed Counts One, Two and Three of the Second Amended Complaint, which are the only claims that involve Benson. (*See* Order [35].)

[3] Judge Kollar-Kotelly granted Defendants' Motion for Partial Summary Judgment "as to the allegations contained in Count Six that Judicial Watch fraudulently induced Klayman to enter the Severance Agreement and the allegations contained in Counts Seven and Eight that Judicial Watch failed to pay Klayman for the period between September 15 and September 19, 2003." (Order [51] dated 4/3/07.) Judge Kollar-Kotelly also dismissed Count Nine "insofar as it relates to allegedly defamatory statements made in Judicial Watch Form 990 tax returns and allegedly doctored press quotations posted on the Judicial Watch website." (Order [35] dated 1/17/07.)

>for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
>>(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>>(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities
>
>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)-(B).

Defendants have asserted counter-claims against Klayman. (*See* Am. Countercl. [86].) They allege that Klayman breached the Severance Agreement by failing to reimburse Judicial Watch for expenses, as required by Paragraph 10, failing to pay the outstanding balance of his law firm's debt, as required by Paragraph 11, and violating the non-disparagement provision through his remarks about Judicial Watch and Fitton. (*Id*. ¶¶ 69-79, 117-124.) Defendants further allege that subsequent to his departure from Judicial Watch, Klayman used "Confidential Information" in violation of Paragraph 4 of the Severance Agreement and that he violated the non-compete clause of Paragraph 5. (*Id*. ¶¶ 125-138.) Defendants have also brought claims against Klayman under the Lanham Act, alleging trademark infringement, unfair competition, and "cybersquatting." (*Id*. ¶¶ 84-116.)

## II.  Discussion

### A.  Plaintiff's Motion to Quash Subpoeans Duces Tecum to Lawyers for Larry Klayman Who Assisted in Negotiation of the Severance Agreement and Motion for Reconsideration [120]

On February 26, 2008, Defendants served subpoenas *duces tecum* on Herbert Beller and David Durbin, two of Klayman's former attorneys, directing them to produce non-privileged documents relating to, *inter alia*, Larry Klayman and the Severance Agreement by March 12, 2008. (*See* Subpoenas to Beller and Durbin [120-2].) Both Mr. Beller and Mr. Durbin filed objections to these subpoenas. (*See* Objection of Dubin [115]; Objection of Beller [119].) On March 12, 2008, Klayman moved to quash, arguing that the documents Defendants sought were protected by the attorney-client and work product privileges. (Pl.'s Mot. I [120] ¶ 4.) Klayman also argued that Defendants' requests were "contrary to the parol evidence rule" because the Severance Agreement is an integrated agreement (*Id*.) In response, Defendants stressed that they were only seeking non-privileged documents and that the documents they sought were relevant because Klayman's claims place the Severance Agreement at issue. (Def.'s Opp'n [132] at 3.)

Federal Rule of Civil Procedure 45 provides, in relevant part, that "[o]n timely motion, the issuing court must quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." FED. R. CIV. P. 45(c)(3)(A)(iii). The Court need not quash or modify the subpoenas in this case, however, because they do not seek privileged materials. Instead, each document request clearly states that Mr. Beller and Mr. Durbin are to produce "non-privileged documents." Therefore the attorney-client and work

5

product privileges do not provide a basis for quashing these subpoenas.[4]

The Court further finds that the parol evidence rule does not provide a basis for quashing these subpoenas because the subpoenas are reasonably calculated to the lead to the discovery of admissible evidence. Furthermore, the parol evidence rule relates to the construction of contracts in breach of contract actions, and therefore has no bearing on other claims in this case, such as the claims under the Lanham Act. Accordingly the Court will deny Plaintiff's Motion to Quash the subpoenas issued to Mr. Beller and Mr. Durbin.

> B.  Plaintiff's Motion to Quash Subpoenas of Phillip Sheldon and Diener Consultants, or Alternatively for Protective Order [126]

On January 31, 2008, by order of this Court, Defendants served subpoenas on Phillip Sheldon and Diener Consultants, Inc. ("Diener") seeking Mr. Sheldon's deposition and various documents from Diener. Mr. Sheldon's deposition was set for Monday, March 31, 2008 in Lancaster, Pennsylvania. On Thursday March 27, Klayman moved to quash the subpoenas, arguing that they "are overbroad on their face, seek information not relevant to this litigation, and impermissibly seek proprietary, confidential commercial and financial information of Klayman and non-party vendors, and invade the rights of privacy and freedom of association of donors." (Pl.'s Mem. Supp. Mot. II [126] at 1.) Because the Court was unable to rule on Klayman's Motion before Monday morning, Defendants were left with no choice but to cancel the deposition.

---

[4] If a question arises about whether a particular document is privileged, the responding individual shall produce a privilege log. If Defendants believe that they are entitled to that document, they may make an appropriate motion to this Court.

Klayman concedes that the subpoeans to Mr. Sheldon and Diener are "virtually identical" to subpoenas that Defendants served on American Target Advertising, Inc., Chester Mailing List Consultants, Inc., Response Unlimited, and Diener in October 2007. By Memorandum Order dated January 8, 2008, this Court denied Plaintiff's Motion to Quash those subpoenas and rejected the exact arguments that Klayman raises in support of the instant motion. (Mem. Op. [97] at 6-8.) The Court also found that the Protective Order entered by Judge Kollar-Kotelly on December 3, 2007 would adequately address Klayman's concerns. (*Id*. at 7.) Klayman filed objections to the January 8 Order, which Judge Kollar-Kotelly overruled. (Order of 4/2/08 [134] at 1.) In light of this history, the Court need not re-visit whether the subpoenas to Mr. Sheldon and Diener are overbroad or seek proprietary information or trample on the rights of third parties. Accordingly, Klayman's Motion to Quash the subpoenas to Mr. Sheldon and Diener shall be denied and the parties shall set a new date for Mr. Sheldon's deposition.

### III.    Conclusion

For the foregoing reasons, it is this 21st day of April, 2008, hereby

**ORDERED** that Plaintiff's Motion to Quash Subpoenas Duces Tecum to Lawyers for Larry Klayman Who Assisted in Negotiation of the Severance Agreement and Motion for Reconsideration [120] is **denied**; and it is further

**ORDERED** that Plaintiff's Motion to Quash Subpoenas of Phillip Sheldon and Diener Consultants, or Alternatively for Protective Order [126] is **denied**; and it is further

**ORDERED** that the parties appear before this Court for a hearing to determine whether Klayman should be order to pay the fees and costs that Defendants incurred in cancelling and re-

scheduling Mr. Shledon's deposition.

/s/
ALAN KAY
UNITED STATES MAGISTRATE JUDGE