## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**LARRY KLAYMAN,**

    Plaintiff,

    v.

**JUDICIAL WATCH, INC., et al.,**

    Defendants.

Civil Action No.  06-670 (CKK)(AK)

---

## EXPEDITED MOTION TO FOR SHORT STAY OF PROCEEDINGS PENDING EXPEDITED MEDIATION OR IN THE ALTERNATIVE MOTION FOR SHORT EXTENSION OF DISCOVERY DEADLINE TO ALLOW MEDIATION TO PROCEED AND FOR PLAINTIFF TO OBTAIN INSURANCE DEFENSE CO-COUNSEL

Plaintiff, Larry Klayman, expeditiously moves this honorable court for an order staying these proceedings for a short duration to allow mediation to proceed and perhaps resolve the issues before the court, or in the alternative for a brief one month extension of the discovery deadline, currently set for May 15, 2008, also to allow mediation to proceed and because Plaintiff's co-counsel, due to that lack of insufficient financial resources to battle the multi-million dollar funded Defendants, who also have an insurance defense, recently withdrew from representation. This will allow Plaintiff time to find new counsel and pursue a defense through the carrier, AIG, which is responsible for covering Plaintiff in defense of Defendants' counterclaims, but which has thus far denied coverage as it is paying for Defendants' defense of this action. As grounds therefore, Plaintiff would show:

1.  As set forth and explained in previous pleadings, this lawsuit was unnecessary. It
    was filed only after Plaintiff had tried for years to resolve the issues with
    Defendants. However, Judicial Watch's current, President, Tom Fitton, was
    fearful that Plaintiff would someday return to lead the organization after Mr.
    Klayman  ran for the U.S. Senate in the 2004 Florida primary, and did everything
    he could to harm and financially weaken Plaintiff so he would never be a "threat"
    to him.

2.  This case has been in progress for going on two years and settlement overtures
    have been made during this time by Plaintiff, trying to avoid the high cost of
    litigation and unnecessary use of this courts' resources over a "family feud."
    Plaintiff really never wanted to file suit against the baby which he conceived of,
    birthed and built into a major organization.  Indeed, as late as last April the
    Washington Post's Dana Milbank, its most prestigious political reporter observed:

    **Judicial Watch earned its reputation in the 1990's for (public
    interest) lawsuits…**

    **But its largely been out of the news since Klayman left Judicial
    Watch – and filed a lawsuit against it.**

    **Washington Post, April 6, 2007**

    This is the rub of the issue; without Plaintiff at the helm, Judicial Watch is
    perceived by even the most influential newspaper in the world as little more than
    a paper tiger, run someone who is not even a lawyer. To this date, the

Chairmanship of the organization has not been filled, leaving it without a distinguished law to run what is, in practice, a public interest law firm. One of Judicial Watch's past clients, Mr. Peter Paul, having been abandoned by Mr. Fitton's Judicial Watch, even filed ethics complaints and an on-going lawsuit before Judge Royce C. Lamberth, claiming that Defendant Fitton's near total control of Judicial Watch and, more specifically, control of the legal decisionmaking in his case – which Paul alleges left him incarcerated for years (once Paul obtained new counsel he was released from prison within weeks) - constitutes the unauthorized practice of law, breach of contract and breach of fiduciary duty to him.

3. That being said, the conduct of Defendants in this lawsuit has also been less than straightforward. In its disclosure statement, it lists Hartford as the carrier for Judicial Watch's Directors and Officers policy, under which Judicial Watch's huge legal fees have been financed and paid (Plaintiff also left the organization with about 20 million USD in liquid and semi-liquid assets.) When this court recently ruled that portions of Defendants" counterclaims could proceed, which falsely alleged that Plaintiff engaged in misconduct while he was still Chairman of Judicial Watch, Mr. Klayman reasonably sought an insurance defense to pay the large legal fees in this litigation. However, Defendants again, upon demand, misrepresented the carrier as Hartford and Plaintiff lost valuable time in lining up this defense. It only was Plaintiff himself who then investigated and found out that AIG was the D&O carrier, not Hartford (Documents appended by Plaintiff to

recently pleadings show that Judicial Watch has admitted that Mr. Klayman is covered by the AIG policy). After weeks of back and forth, AIG, in bad faith, denied coverage – as it likely did not want to be funding both sides of this litigation and Judicial Watch continues to pay large premiums to it. In effect, the response of the carrier was akin to "love the one you are with." Plaintiff is pursuing legal remedies against AIG for this bad faith denial of coverage. On information and belief, Judicial Watch and its counsel tortiously interfered with Plaintiff obtaining coverage and they will likely be joined in this bad faith litigation, which could even arise in the context of this case – since their interference with AIG constitutes a breach of the subject severance agreement and other torts. Thus, Plaintiff is contemplating having to move this court for leave to file a third party complaint joining AIG and counsel for Judicial Watch as third party defendants, as well as moving to amend its amended complaint based on this new information. In addition, in a recent pleading styled "Defendants' Memorandum in Opposition to Plaintiff's Motion to Quash (Document 142), Defendants and their counsel attached portions of a deposition transcript from custody proceedings involving Plaintiffs two minor children, age 8 and 10 – Lance and Isabelle Klayman – who live in the Midwest with their mother, which Plaintiff had to file when his former wife failed to inform him of a serious and nearly fatal accident and injury of his son Lance and, when she refused to provide information about his medical condition and Plaintiff protested, she cut off all visitation and telephone contact. This occurred just after Plaintiff remarried last May.  It thus appears that Defendants, as they have attempted to do in this case

before this court, are tortiously interfering in Plaintiff's family relationships, and my even be improperly funding the defense of Plaintiff's former wife, in an attempt to harm him further. Previously, and as plead in Plaintiff's complaint and amended complaint, Defendants breached the severance agreement by cutting off Cobra coverage,which they had agreed to provide, to Plaintiff's children, who had been covered under a family policy while Plaintiff was Chairman of Judicial Watch. Thus, this tortious interference in Plaintiff's family relationship is a part of this case and Plaintiff may need to amend its amended complaint to include this latest unnecessary outrage.

4. On information and belief, Defendants and their counsel have attempted and/or have already obtained information and documents in the custody case involving Plaintiffs' minor children, which they have not thus far been able to obtain in this case because it is not relevant. The purpose is obviously to smear Plaintiff, who has already been equated by Defendants and their counsel as akin to former President Bill Clinton – an allegation that while not true was intended to try to harm Plaintiff with his supporters. Defendants also had published in Legal Times information from sealed documents in Plaintiff's original divorce proceedings in Virginia, where Plaintiff's former wife was forced to retract her false allegations, where she had initially tried to use Plaintiff's status as a public figure for tactical purposes to try to extort money in the divorce proceedings, but did not succeed. In short, Defendants, their counsel, and Plaintiff's former wife are in "league together," no pun or disrespect intended to the mother of Plaintiffs' young children, whatever Plaintiff's differences with her conduct.

5.  In short, thanks to the actions of the defendants this case is about to go way beyond the purposes for which it was originally founded; to restore Judicial Watch to an ethical base and to rectify the wrongs committed against Klayman and his family, which has damaged him and his young children severely. Defendants have even in pleadings on the public record implicated – by naming names – of two women who never had a romantic relationship with Plaintiff, but Fitton and his colleagues have no discretion or care about harming them and their familes. It is ironic that they claim to be a "family values" organization – the height of hypocrisy – which they have tried to use to raise issues about Plaintiffs' prior marriage, family and children. This case has thus about to take on the character of a family court divorce proceeding, replete with sleazy allegations that harm innocent women, their families, Plaintiff's family, and all of their children. One of these women is even recently married. Questions about these two women were even recently asked by Defendants during Plaintiff's recent deposition on April 8, 2008.

6.  Because of the withdrawal of Plaintiff's co-counsel, and because Plaintiff is a sole practitioner occupied in large part in his childrens' custody proceeding, he is severely short on resources and manpower at this time, as he seeks insurance coverage and new insurance co-counsel, and tries to service his other clients as a sole practitioner at the same time. In addition, there are several issues before this court which will determine the scope and conduct of discovery. Most recently, for instance, Defendants counsel improperly obtained documents from one of Plaintiff's fundraisers, Response Unlimited, while a motion to quash had been

pending and before Plaintiff, who had claimed a proprietary interest in these documents, could review them for privilege. (see motion filed by Plaintiff just yesterday on this prior review issue). Previously, Defendants' counsel Julie Simonyi, had effectively threatened one of Plaintiff's counsel during the severance agreement negotiations, Mr. David Durbin, who Defendants sought documents and testimony from, with consequences if he did not immediately produce the requested documents. Mr. Durbin is currently undergoing intensive medical care treatment for a fatal brain tumor at Johns Hopkins University.

7.  In the last few days, this court referred mediation procedures to the Honorable John Facciola, who Plaintiff knows to be a very fair-minded and conscientious jurist, who he has confidence in to perhaps resolve this matter. Plaintiff believes that before discovery proceeds further, and it is only Plaintiff who has been subjected to deposition thus far (leaving the advantage to Defendants), it should respectfully consider staying this action for one month and extending the discovery deadline another month should settlement not be effected, to save resources for all parties and the court, and allow Plaintiff the time, should it prove necessary, to obtain insurance counsel as his current co-counsel has just withdrawn through no fault of Plaintiff, as prior co- counsel stated in its withdrawal notice.

8.  Depositions were currently tentatively scheduled to occur next week in Washington, D.C. Plaintiff respectfully requests that rather than using expensive resources for court reporters, attorneys and the court at this time, as discovery issues will inevitably arise, that mediation occur instead next week, or at the

7

earliest practicable time and that this case be stayed for the brief period of one
month, and discovery extended for another brief period of one month if mediation
proves unsuccessful, to allow Magistrate Judge Facciola time to try to resolve this
matter.

WHEREFORE, Plaintiff respectfully requests, in the interests of all parties and the court,
that this motion be granted. As Plaintiff has already been substantially deposed for a full
day (traveling to Washington at his expense), no prejudice would result to Defendants as
Magistrate Judge Facciola attempts to settle a matter that will undoubtedly soon to
become more like "divorce court," that the dignified proceedings which the court has a
reputation for administering to. If mediation is unsuccessful, then Plaintiff respectfully
requests that discovery be extended for a short one month so Plaintiff too can take
depositions prior to trial.

Defendants do not consent to this motion, as their counsel has advised that they want to
put as much pressure on Plaintiff as they can given their much greater financial and
manpower  resources – also funded by AIG Insurance Company - at this time. Indeed,
Defendants' counsel, Mr. Richard Driscoll even joked that this case has been very good
for him and his firm. Defendants' case has not however been good for anyone else,
particularly the two innocent women named in Defendants' pleadings, and Mr.
Klayman's children. Plaintiff respectfully requests an expedited ruling on this motion.

                              Respectfully submitted,

                              s/Larry Klayman_____
                              Larry Klayman, Esq.
                              D.C. Bar No.:  334581

3415 SW 24th Street
Miami, FL 33145
Tel: 305-447-1091
Fax: 305-447-1548

Daniel J. Dugan, Esquire (withdrew)
Spector Gadon & Rosen, P.C.
1635 Market Street 7th Floor
Philadelphia, PA 19103
Tel: 215-241-8872
Fax: 215.241.8844

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of MAY 2008, a true copy of the foregoing

copy of the foregoing motion was served via electronic means to:

Richard W. Driscoll, Esquire
Driscoll & Seltzer, PLLC
600 Cameron Street
Alexandria, VA 22314

By:  s/Larry Klayman
Larry Klayman, Esq.
D.C. Bar No.:  334581
3415 SW 24th Street
Miami, FL 33145
Tel: 305-447-1091
Fax: 305-447-1548

9