UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARRY KLAYMAN,**<br><br>    Plaintiff,<br><br>    v.<br><br>**JUDICIAL WATCH, INC.,** *et al.***,**<br><br>    Defendants. | Civil Action No. 06-670 (CKK)(AK) |

**MEMORANDUM ORDER**[1]

Pending before the Court are Plaintiff's Motion to Quash [142], Defendants' Opposition [144] and Plaintiff's Reply [150].

**I.    Background**

The factual and procedural history of this case is well-documented in this Court's prior orders and opinions and need not be restated herein. (*See, e.g.*, Mem. Order [137] dated 4/21/08.) In his most recent filing, Plaintiff Larry Klayman moves this Court to quash subpoenas duces tecum issued by Defendants to American Caging, Inc and its President, Maureen Otis. (Pl.'s Mot. [142] at 1.) Plaintiff retained American Caging to perform "caging" services for his direct mail fund-raising efforts. (Def.'s Opp'n [144] at 3.) Caging refers "to the opening, processing, and accounting of contributions a charitable or non-profit organization receives by

---

[1] United States District Judge Colleen Kollar-Kotelly referred this case to the undersigned Magistrate Judge for disposition of all pending and future discovery-related motions pursuant to Local Civil Rule 72.2(a). (*See* Order [85] dated 12/3/07.)

mail from its supporters." (*Id*. at 3 n.1.)

Plaintiff asserted the usual laundry-list of objections to these subpoenas, including the attorney-client privilege, the work product privilege, overbreadth, relevance, trade secrets and privacy. (Pl.'s Objections [139] at 1.) In his Motion to Quash, however, Plaintiff focuses on the attorney-client privilege, stating that "Ms. Otis was legal counsel to Mr. Klayman and his clients and other subject persons and entities." (Pl.'s Mot. at 1.) Defendants allege that although Ms. Otis is an attorney, the relationship between her and Plaintiff was not one of attorney and client. (Def.'s Opp'n at 3, 6.) Rather, Defendants assert that Ms. Otis was acting as President of American Caging in her dealings with Plaintiff. (*Id*. at 3.)

## II.   Discussion

The attorney-client privilege shields from disclosure "confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 158 F.3d 1263, 1268 (D.C. Cir. 1998). The privilege only protects "communications that seek 'legal advice' from a 'professional legal adviser in his capacity as such.'" *Id*. at 1270. Accordingly, communications that address business matters or business advice are not protected. *Boca Investerings P'ship v. United States*, 31 F.Supp.2d 9, 11 (D.D.C. 1998). *See also N. Am. Mortgage Investors v. First Wis. Nat'l Bank*, 69 F.R.D. 9, 11 (E.D. Wis. 1975) ("The possession of a law degree and admission to the bar is not enough to establish a person as an attorney for purposes of determining whether the attorney-client privilege applies. For the privilege to exist, the lawyer must not only be functioning as an advisor, but the advice given must be predominantly legal, as opposed to business, in nature.")

> Federal Rule of Civil Procedure 26 provides:
>
> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. P. 26(b)(5)(A). The party claiming the privilege must demonstrate "that the consultation was professional and confidential." *SEC v. Gulf & Western Industries, Inc.*, 518 F.Supp. 675, 682 (D.C. Cir. 1981). A party may meet this burden by putting forth evidence of the capacity in which the attorney served. *Id*. at 683 (holding that defendants had failed to clearly show that advice was given in a professional legal relationship, as opposed to a business relationship).

In this case, Plaintiff makes the bare assertion "that Ms. Otis was legal counsel to Mr. Klayman and his clients and other subject persons and entities." (Pl.'s Mot. at 142.) Plaintiff failed to provide a retainer agreement or other evidence of an attorney-client relationship, such as an affidavit from Ms. Otis attesting to the nature of the services that she provided. Nor did Plaintiff provide any evidence that Ms. Otis holds herself out as a practicing attorney. To the contrary, Defendants have submitted documentation that suggests the existence of a business, rather than legal, relationship between Plaintiff and Ms. Otis. In particular, Defendants have provided a "Caging & Escrow Agreement" between American Caging, Freedom Watch, and Response Unlimited. (*See* [144-7].) This agreement appears to establish a business relationship between the aforementioned entities, and is signed by Maureen Otis in her capacity as President

of American Caging. (*Id*. at 6.)

Because Plaintiff has failed to establish that Ms. Otis was functioning as his legal advisor, the Court does not have a basis for quashing the subpoenas. However, as Defendants correctly point out, Plaintiff may object during the deposition with regard to specific documents or questions that implicate any legal relationship that may have existed between Plaintiff and Ms. Otis. Should Plaintiff raise such an objection during the deposition, the parties shall jointly contact Chambers for a ruling so that the deposition may proceed.

### III.    Conclusion

For the foregoing reasons, it is this 5th day of May, 2008, hereby

**ORDERED** that Plaintiff's Motion to Quash [142] is **denied**; and it is further

**ORDERED** that the parties shall set a mutually agreeable time for the deposition of Maureen Otis.

/s/
ALAN KAY
UNITED STATES MAGISTRATE JUDGE