# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Larry Klayman, *Plaintiff*, | Civil Action No. 1:06-CV-00670 |
| v. | Honorable Colleen Kollar-Kotelly |
| Judicial Watch, Inc., *et al.* *Defendants*. | **Jury Trial Demanded.** |

## *PLAINTIFF'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES*

Plaintiff Larry Klayman, hereby supplements answers the Defendants' interrogatories subject to general objections previously stated as follows:

### RESPONSES TO SPECIFIC INTERROGATORIES

5. If you contend that Defendants, or their agents made any admissions regarding the Litigation, state in the content of those admissions, including, but not limited to, the substance of each admission, the date of the admission and the name and address of all persons with personal knowledge of each alleged admission.

**Response:** Plaintiff objects to this interrogatory because it is overly broad, neither limited in time nor scope, nor to issues relevant to this litigation, nor to admissions against interest. In addition, it improperly seeks information relating to evidentiary matters relating to admissions against interest that are not relevant at this stage of the litigation. As a result, plaintiff cannot meaningfully respond.

Second Supplement: On April 8, 2008, Plaintiff was deposed for a full day in Washington, D.C. He traveled to Washington, D.C., at his expense. A copy of the transcript has not been obtained by Plaintiff as yet, but contains this supplemental information. On information

401536-2

and belief, Defendants already have a copy of this transcript, as well as the video of the deposition, which was available immediately following the deposition. Plaintiff has also previously responded to Defendants' requests for admissions.

Notwithstanding this, Defendants have admitted that they did not remove Plaintiff from the lease, pay his childrens' health insurance, disparaged him with CNN and C-Span at a minimum, interfered with his Directors and Officer's coverage under Judicial Watch's insurance policy, told Judicial Watch employees not to communicate with Plaintiff, in effect defrauded Benson and other building donors of their contributions, as they have not, in over five years, purchased the building Defendants said they would purchase, or any other building for that matter, did not hire a Chairman after Plaintiff left, that Defendant Fitton had not graduated from college at the time Plaintiff left Judicial Watch, that ironically Defendants Fitton and Orfanedes do not practice the so called family values they claim to hold dear and claim falsely that Plaintiff has violated, as several persons, including Rebecca Eddy, Sandra Cobas, Paul Rodriguez and others including Peter Paul have expressed their observations that they both appear to live an alternative life style which is contrary to traditional conservative principles and "family values" principles in the Bible, either in whole or in part, Plaintiff himself has observed their "personal" relationship and while Plaintiff is more "tolerant" than they are and believes that what Fitton and Orfanedes do in their private life is their business so long as they do not harm others (Fitton and Orfanedes hypocritically used Judicial Watch to criticize and harm Senator Larry Craig), he has been forced to raise this issue because of Defendants' claims that Judicial Watch currently is a "family values organization," Defendants have admitted that they have deviated from Judicial Watch's mission and are now on a witch hunt, in effect, against immigrants and ironically gays, and the website shows this and that the mission of the group has been changed, Judicial Watch's

2

tax returns, signed by Fitton, contain false statements about what is claimed due and owing by Plaintiff and fails to disclose what they owe Plaintiff and the lawsuits against them – which constitutes an admission of false statements to the government, as well as other matters contained in Plaintiff's deposition, and Defendant Paul Orfanedes has admitted that he used Judicial Watch monies to travel to Chicago to see his family. As more information becomes available, this interrogatory will be supplemented.

**First Supplemental Response:** On page 9 of Defendants' Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment, Defendants admit that they have made no effort whatsoever to have Klayman removed as guarantor of the lease for the headquarters' building since October, 2003, and they further admit that they could have, but chose not to remove Klayman as guarantor. Defendants, in the Motion to Amend Pleadings, and to others, have also admitted they released into the public domain alleged information about Klayman's divorce, which were subject to a court seal order. These admissions prove, *inter alia*, material breaches of the Severance Agreement. Plaintiff reserves the right to supplement this response as discovery progresses and up to and including at trial.

6. If you know of anyone who has documents relevant to the Litigation other than yourself, identify the custodian of any such documents with sufficient particularity to facilitate the service of a subpoena *duces tecum* on any such person(s) seeking production of any such document(s).

**Response:**

Any such information is set forth in Plaintiff's initial disclosures at ¶ B.

3

401536-2

Second Supplemental Response: Klayman is the records custodian of any documents which remain in his custody, possession and control, which were created after he left Judicial Watch.

**Supplemental Response:** Other than Defendants and Judicial Watch employees, who maintain possession, custody and control of the majority of documents relevant to the Litigation, Raffa and Associates, 1899 L Street NW, Suite 600, Washington, D.C. 20036, who, upon information and belief, maintains documentation relevant to Defendants of breaches of the Severance Agreement, violations of the Lanham Act for false designation.

David Barmak, Esquire, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo P.C., 701 Pennsylvania Avenue N.W., Washington, D.C. 20004, , who, upon information and belief, maintains documentation relevant to Defendants' breaches of the Severance Agreement and violations of the Lanham Act for false designation.

Russ Verney, Dallas, Texas. Mr. Verney was formerly director of Judicial Watch's southwest regional offices and may have relevant documents relating Defendants' practices and conduct following Klayman's separation. As a former employee of Judicial Watch, Defendants are in the best position to know the last known address of this individual.

Mike Pendleton, Los Angeles, California. Mr. Pendleton was formerly director of Judicial Watch's Los Angeles offices and may have relevant documents relating Defendants' practices and conduct following Klayman's separation. As a former employee of Judicial Watch, Defendants are in the best position to know the last known address of this individual.

Jane Chastain, Temucla, California. Ms. Chastain worked as a talk show host for Judicial Watch and may have relevant documents relating Defendants' practices and conduct following

Klayman's separation. As a former employee of Judicial Watch, Defendants are in the best position to know the last known address of this individual.

John Vincent, Chicago, Illinois. Mr. Vincent was formerly director of Judicial Watch's Midwest regional offices and may have relevant documents relating Defendants' practices and conduct following Klayman's separation. As a former employee of Judicial Watch, Defendants are in the best position to know the last known address of this individual.

Stuart Pechner, Vanguard Realty Group, 7200 Wisconsin Avenue, Suite 501, Bethesda, Maryland 20814, and the landlord, Robert Wolpe, Florida. Mr. Pechner and Mr. Wolfe may have relevant documentation relating to the Defendants' failure to remove Mr. Klayman as guarantor of the Judicial Watch building lease and the Defendants' lack of efforts to purchase the building.

7. Describe in detail the facts supporting your assertion that you are a "celebrity within the non-profit legal/political community."

**Response:** Plaintiff objects to this interrogatory on the grounds that it calls for a narrative response. Notwithstanding that objection, facts that confirm my celebrity status in the non-profit legal/political community include, without limitation, numerous articles in newspapers and magazines about me, most of which can be found by doing a Google search, plus numerous TV and radio interviews of me [sic].

Second Supplemental Response: Although this information is available on the internet and in Judicial Watch's own video and media library, to which Plaintiff has no access, documents are being served and produced today documents which show this.

5

401536-2

**Supplemental Response:** See Google search of Larry Klayman. Further, Defendant, Judicial Watch, maintains video and media library which contains materials attesting to Larry Klayman's celebrity status.

8. Describe in detail your damages in connection to Defendants' alleged use of your name and/or likeness in fundraising activities. If any portion of your damages requires any calculation, explain in detail how the calculations were performed.

**Response:** All the facts necessary to respond to this interrogatory are not in plaintiff's possession and control, because many of them are held by the defendants and have not been provided to plaintiff. Indeed, discovery is just beginning and once the necessary documents and information is revealed, plaintiff will provide his full response to this interrogatory.

Second Supplemental Response: Defendants illegal dissemination of the newsletter with Plaintiff's name on it, well after he left Judicial Watch, exposed them to treble damages, punitive damages and actual and compensatory damages, well in excess of $2,250,000 plus attorney fees and costs, as each newsletter at this time brought in about $750,000 to Judicial Watch, which monies were diverted from Plaintiff's Senate campaign. Also, Defendants misappropriated contributions for the Senate campaign and from other Plaintiff client activities which were sent to Judicial Watch but not forwarded to Plaintiff, thanks to the confusion caused by Plaintiffs. Defendants have not produced documents that were requested that bear on other damages and a motion to compel is in the works and will soon be filed. Plaintiff has also lost the cost of his health care insurance, artwork, and his well being has been effectived by his not being removed from the lease guarantee. These damages are currently estimated to be in the millions of dollars.

**Supplemental Response:** Damages include damage to fundraising, in an amount in to be determined once Defendants produce documents, which to date, they have failed to do.

6

401536-2

Moreover, Defendants use of Klayman's name and/or likeness, as well as continuing defamation of Klayman caused confusion in the public about Klayman's affiliation with Judicial Watch during and after the conclusion of Plaintiff's Senate Campaign. Further, Defendants' interference with Klayman's private law practice and his other activities harmed Klayman severely. Defendants have stonewalled discovery. Plaintiff reserves the right to further supplement this response as discovery progresses up to and including at trial.

9. If you contend that your personal relationship, business relationships and good will have been harmed by Defendants' alleged use of your name and/or likeness in fundraising activities, describe the harm in detail and identify all individuals with knowledge relating to the harm.

**Response:** Other than as set forth in the pleadings in this case, plaintiff cannot respond to this interrogatory until the discovery of the defendants is completed.

Second Supplemental Response: All of the supporters and donors who have received the subject Judicial Watch fundraising letter which misused Plaintiff's name are witnesses to the harm to good will, business relationships and personal relationships, which are estimated to run in the millions of dollars. In addition, many supporters, including but not limited to Louise Benson, have commented on how Defendants have written Plaintiff out of the history of Judicial Watch. This has also caused harm and damage. By making the false and misleading representations set forth in the complaint and in newsletters (copies of which are being produced herewith), such as that Larry Klayman was merely an employee of Judicial Watch and creating innuendo that his claims were made out of whole cloth, Defendants have also caused harm to Plaintiff in the millions of dollars, as it holds him in a false light and disparages and demeans him. By making false representations, as set forth in the complaint and otherwise, that Judicial

7

Watch had to lay off employees, was still representing Peter Paul when it was not, creating the false impression that it had bought a building when it had not, and other false and misleading representations, this damaged Plaintiff as he continues to be, in the minds of supporters and donors, closely associated with Judicial Watch, as he is the founder. These damages run in the millions of dollars.

**Supplemental Response:** Other than as set forth in the pleadings in this case, plaintiff cannot respond to this interrogatory until the discovery of the defendants is completed.

10. Identify and describe in detail each and every act of defamation committed by Defendants against you.

**Response:** Other than as set forth in the pleadings in this case, plaintiff cannot respond to this interrogatory until the discovery of the defendants is completed.

Second Supplemental Response: Defendants have told donors, supporters and others that they cannot say why Plaintiff left Judicial Watch, because it is "confidential," when even the Severance Agreement provides otherwise; Defendants have told others that I cannot be reached or located, creating false innuendo that I left Judicial Watch involuntarily; Defendants have told employees they could not talk with me or work on my Senate campaign, which in effect constitutes defamation as this creates the false and misleading impression that I left Judicial Watch involuntarily; Defendant Fitton and the other Defendants told Genifer Flowers that she better not use Larry Klayman as her lawyer as this would harm her interests and on information and belief told other clients the same thing; Defendant Fitton and the other defendants disparaged Plaintiff with Armstrong Williams and other press services and media by creating the false and misleading impression that Klayman had left Judicial Watch for reasons they could not discuss and telling them that Klayman could not discuss Judicial Watch cases, when in fact the

8

401536-2

Severance Agreement has a fair comment provision and this is prohibited by the First Amendment in any event; on Judicial Watch's website and other promotional materials Fitton and the other Defendants give the public the false and misleading impression that they are solely responsible for past Judicial Watch successes, thus defaming Klayman, who they describe as a mere past employee and miscreant; Fitton, the other Defendants and their counsel have also caused to be published and have published false and misleading information about his divorce, nationwide, in, at a minimum, Legal Times, and other defamatory statements.

**Supplemental Response:** As outlined in the Second Amended Complaint, Defendants defamed Klayman by, *inter alia*, communicating a false statement to all Judicial Watch employees and others, which stated that Klayman filed his lawsuit because he owed Judicial Watch a significant sum of money; falsely communicating to reporters that Klayman filed his suit as a "tactical maneuver designed to distract attention away from the fact that Klayman owes more than a quarter of a million dollars to Judicial Watch;" threatening members of the news media who sought to interview Klayman; publishing knowingly false statements in media outlets including The Washington Post (April 19, 2006), The Washington Times (April 14, 2006), World NetDaily.com (April 13, 2006), Slate.com (April 28, 2006), and elsewhere; deliberately lying to sully Klayman's name and to imply that, among other things, Klayman filed a frivolous lawsuit and was simply an employee of Judicial Watch, and that they could not talk about Klayman for fear of further litigation. Klayman was also defamed when supporters would call to Judicial Watch to speak with or contact Klayman, and various statements were made that Judicial Watch could not discuss the reasons for Klayman's separation because they were 'confidential,' contrary to the Severance Agreement, thereby creating false innuendo.

9

401536-2

12. Describe in detail any evidence you have supporting the assertion that Defendants failed to take affirmative steps to remove you as guarantor for the Judicial Watch building lease and identify all individuals with knowledge relating to this issue.

**Response:** This information is contained in Plaintiff's Statement of Material Facts Genuinely in Dispute Submitted in Opposition to Defendants' Motion for Partial Summary Judgment on Counts VI, VII and VIII of the Complaint (the "Statement") at ¶¶ 12, 14, 16.

Second Supplemental Response: Defendants have knowledge of the issue, including Bob Wolpe the landlord, Wachovia Bank, David Barmak, real estate agents, and others.

**Supplemental Response:** The Landlord personally told Klayman that no one from Judicial Watch contacted him to remove Klayman as the guarantor of Judicial Watch's lease. To date, Klayman is still guarantor of Judicial Watch's lease for its Washington, D.C. headquarters. Paragraph 9A of the Severance Agreement requires Defendants to "continue to act in good faith to remove Klayman as the guarantor of the lease for the headquarters' building." Defendants admit that they have made no effort whatsoever to have Klayman removed as guarantor of the lease for the headquarters' building since October, 2003, and they further admit that they could have, but chose not to remove Klayman as guarantor. In addition, Defendants' failure to cause Judicial Watch to purchase the building, as they represented to Klayman and thousands of donors that they would, evidence their lack of good faith, fair dealing, and fraudulent conduct that has kept Klayman, unnecessarily, in the status of guarantor, among other matters.

13. Describe in detail your damages in connection to remaining as guarantor of the Judicial Watch building lease and identify all individuals with knowledge relating to this issue. If any portion of your damages requires any calculation, explain in detail how the calculations were performed.

10