IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:06-CV-00670 (CKK/AK) |
| JUDICIAL WATCH, INC., *et al.*, | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S OBJECTIONS TO
MAGISTRATE JUDGE'S MINUTE ORDER OF MAY 9, 2008
CONCERNING DEPOSITION OF STEPHANIE DELUCA (FORMERLY KLAYMAN)**

Defendants Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes and Christopher J. Farrell (collectively referred to as "Judicial Watch"), by counsel and pursuant to Rule 72 of the Federal Rules of Civil Procedure and LCvR 72.2, hereby oppose Plaintiff Larry E. Klayman's ("Klayman") Objections to Magistrate Judge's Minute Order of May 9, 2008 concerning the deposition of Stephanie Deluca.

**I.   INTRODUCTION**

The dispute between these parties is well-documented in prior filings and will not be repeated herein. Among the claims at issue in this case are (i) Klayman's breach of contract allegations relating to health insurance and expense reimbursements (*See* Second Am. Compl. at ¶ 66(C) and Wherefore Clause at ¶ F); (ii) Klayman's breach of contract claims regarding alleged misrepresentations concerning the circumstances of his separation from Judicial Watch (*See id*. at ¶ 122); and (iii) Defendants' counterclaims under the Lanham Act relating to Klayman's own misrepresentations of fact regarding his motivations for leaving Judicial Watch (*See* Am. Counterclaim at ¶¶ 10 – 20 and Count V).

At the outset of this litigation, Klayman identified Ms. Deluca as an individual likely to have discoverable information. Indeed, Klayman's Initial Disclosures designate Ms. Deluca as "familiar with the facts relating to Klayman's family health insurance benefits, and Mr. Klayman's separation from Judicial Watch." (*See* Pl.'s Initial Disclosures at ¶ A(4), attached hereto as Ex. 1.) In addition, during his deposition, Klayman further identified his former spouse as knowledgeable on the subject of personal expenses:

> Q:   Okay. Let's talk about your personal expenses. You earlier testified that Judicial Watch had at least five folders of your personal expenses. When did you provide those five folders to Judicial Watch?
>
> A:   After this, can we take a break so I can go to the bathroom?
>
> Q:   Sure.
>
> A:   Answer your line of questioning. These were personal -- I take money out of my pocket, you know, for things. And if I would take Tom and Paul to lunch, sometimes I wouldn't have the Judicial Watch credit card, I'd have my credit card, or, you know, I would go buy something, you know, for the organization. So I would give those expenses, you know, to the accounting department, and they were put into five folders. And I wasn't, you know, destitute at the time. And they were put in the folders and ultimately I wanted to be reimbursed.
>
> Q:   And when did you provide those to Judicial Watch?
>
> A:   Ongoing basis.
>
> Q:   On an ongoing basis.
>
> A:   Yes.
>
> Q:   Okay. And who did you provide those to?
>
> A:   People in and around the accounting department. I forget some of their names. There was a Tim, I think. **Stephanie, my former wife, you know, was involved in that.**

04/08/08 Deposition of L. Klayman at p. 74, line 14 – p. 75, line 20 (emphasis added), attached hereto as Ex. 2.

Defendants also identified Ms. Deluca as a witness with discoverable information relevant to this case. In particular, her testimony is probative of Judicial Watch's unfair competition claims, which are based, in part, on Klayman's misrepresentations regarding his reasons for leaving Judicial Watch. Specifically, Ms. Deluca's testimony will provide support for the allegations against Klayman that resulted in his separation from Judicial Watch. In addition, her testimony will support the testimony of Defendants Fitton and Orfanedes regarding Klayman's admissions concerning the inappropriate conduct that led to his departure from the organization. Finally, at this time it is difficult to fully summarize Ms. Deluca's testimony because she declined to be interviewed prior to her deposition, expressing a concern regarding Klayman's several lawsuits against her.

On April 29, 2008, Defendants noticed the deposition of Ms. Deluca. On May 6, 2008, Klayman filed his Objections and Motion to Quash Deposition of Stephanie Deluca (Formerly Klayman). (*See* Pl. Mot. [156]). Defendants filed their Opposition the following day, on May 7, 2008. (*See* Def. Opp. [161]). The Court issued the subject Minute Order on May 9, 2008, denying Klayman's Objections and Motion to Quash. (*See* Court Minute Order of May 9, 2008).

Unmoved by Magistrate Kay's decision, Klayman once again seeks to delay Defendants' right of discovery by filing groundless objections to the Court's May 9, 2008 ruling. However, these objections fail to meet the exacting standards governing challenges to a Magistrate Judge's ruling. Therefore, Defendants request that the Court overrule Klayman's Objections in their entirety.

**II.    ARGUMENT**

    **A.    Legal Standard Governing Objections to Magistrate Orders**

In the context of filing "objections" to a Magistrate's order, LCvR 72.2(c) permits the

Court to modify or set aside any portion of the order "found to be clearly erroneous or contrary to law". This Court set forth the standard governing such motions in *Globalaw, Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp.2d 1 (D.D.C. 2006), in which it denied a motion for reconsideration of a discovery ruling made by Magistrate Kay:

> Local Civil Rule 72.2(b) states that "[a]ny party may request the judge to reconsider a magistrate judge's ruling under paragraph (a) by filing a motion to reconsider within 10 days[.]" Local Civil Rule 72.2(c) sets forth the basis for reconsideration, stating that "a judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be clearly erroneous or contrary to law." *See also* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.") (emphasis original). A court should make such a finding when "'on the entire evidence' the court 'is left with the definite and firm conviction that a mistake has been committed.'" *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 365, 68 S. Ct. 525, 92 L. Ed. 746 (1948)); *see also Gluck v. Ansett Australia*, 204 F.R.D. 217, 218 (D.D.C. 2001).
>
> Furthermore, a motion for reconsideration is "not simply an opportunity to reargue facts and theories upon which the court has already ruled." *United States v. Funds from Prudential Sec.*, 245 F. Supp. 2d 41, 44 (D.D.C. 2003) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)). Nor is it "a vehicle for presenting theories or arguments that could have been presented earlier," *Id*. at 38, or a method of introducing evidence that was "available but not offered at the original motion or trial," *Natural Res. Def. Council, Inc. v. United States Envt'l Prot. Agency*, 705 F. Supp. 698, 702 (D.D.C. 1989), *vacated on other grounds*, 707 F. Supp. 3 (D.D.C. 1989). Indeed, "[p]arties must take before the magistrate, not only their best shot, but all of their shots." *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

*Globalaw Ltd.*, 452 F. Supp.2d at 59-60. Klayman's Objections completely fail to meet this well-defined standard.

### B. Plaintiff's Primary Objection is Unsupported by Law or Fact

Klayman's primary objection to the Minute Order of May 9, 2008, is that it "contains no factual or legal reasoning." (*See* Pl. Objection at p. 1). This objection does not argue that the Minute Order is "clearly erroneous or contrary to law" as required under LCvR 72.2(c), but merely asserts that the detail of the Court's reasoning is not to the satisfaction of Klayman. This assertion is unsupported by any authority instructing a Court to particularize its reasoning in a minute order. Moreover, Defendants' research did not uncover any such authority. Accordingly, Klayman's primary objection to the Minute Order of May 9, 2008 does not demonstrate that the Order is erroneous or contrary to law.

### C. Plaintiff May Not Reargue the Same Facts and Theories

Klayman asserts his prior arguments by attaching his Motion to Quash as an exhibit to his Objections. As this Court has repeatedly emphasized, the filing of objections is "not simply an opportunity to reargue facts and theories upon which the court has already ruled." *Funds from Prudential Sec.*, 245 F. Supp. 2d at 44 (D.D.C. 2003). Rather, Klayman must show that the ruling was clearly erroneous or contrary to law. Here, Klayman openly pursues a reargument of prior positions, which is insufficient under both Fed. R. Civ. P. 72(a) and Local Civil Rule 72.2(c).

### D. Plaintiff Misrepresents the Scope of the Agreed Order Sealing Divorce Record

Klayman alleges that "[a] Virginia Court order provides that any proceedings involving the parties, in any jurisdiction, are to be under seal."[1] (*See* Pl. Objection at p. 2). This statement grossly misrepresents to the Court the contents of the Agreed Order entered by the Circuit Court

---

[1] Klayman also avers that "there is a dispute among the parties as to whether the protective order requires that confidential information be sealed if used in public pleading." This suggestion was rejected by the Court's December 3, 2007 Protective Order. (*See* Court Order [83] and Mem. Opinion [84] of December 3, 2007).

of Fairfax County, Virginia on June 19, 2003. Contrary to Klayman's representation, the Agreed Order merely seals the record of the divorce proceedings before that court. (*See* Agreed Order, attached hereto as Exhibit 3).

  **E.**  **Plaintiff Misrepresents the Court's Prior Ruling**

Klayman supplements his objections by arguing that the Court "specifically and effectively limited discovery" in its December 3, 2007, Memorandum Opinion, which reads:

> Judicial Watch explicitly asserts that the "basis for the Amended Counterclaim is not the court file for Klayman's divorce." JW Sur-Reply at 3. Rather, Judicial Watch maintains that its proposed Amended Counterclaim is based on a conversation during which Klayman informed Fitton and Orfanedes about his wife's allegations, "acknowledged to Fitton and Orfanedes that he had been in love with the employee," "had purchased gifts for the employee and had kissed her," and also "acknowledged an incident with his wife that clearly provided the basis for his wife's allegation of physical assault."

(*See* Memorandum Opinion of December 3, 2007 at p. 14).

This point was not argued to Magistrate Kay below. Therefore, Klayman has waived this argument as he is barred from "presenting theories or arguments that could have been presented earlier." *Funds from Prudential Sec.*, 245 F. Supp. 2d at 38 (D.D.C. 2003). "Parties must take before the magistrate, not only their best shot, but all of their shots." *Borden*, 836 F.2d at 6 (1st Cir. 1987). Because Klayman failed to present this argument in his Objections and Motion to Quash, he may raise it now.

Further, Klayman's argument erroneously interprets the Court's ruling. The Court did not "specifically and effectively limited discovery." Instead, the Court addressed Klayman's discredited argument that the Defendants should be held in civil contempt for filing the Amended Counterclaim, which Klayman alleged was in violation of the Agreed Order of seal among he and Ms. Deluca. The Court's discussion of this issue was not to define the scope of discovery. The Court was merely emphasizing that Defendant's knowledge of Klayman's conduct was

based on Klayman's own admissions and a review of the complaint for divorce, which pre-dated the Agreed Order of seal.

Klayman's reliance on the December 2, 2007 Memorandum Order is misplaced because the divorce proceedings and Ms. Deluca's testimony are relevant to defend against Klayman's breach of contract claim and to support the Defendants' Lanham Act counterclaims. While the basis for pleading the Defendants' Lanham Act claim was not the divorce file or Ms. Deluca's testimony, this evidence is relevant to the case as it may provide probative evidence of Defendants' positions. Ms. Deluca's testimony will also provide collateral support to Defendants' testimony regarding the basis for Klayman's departure from Judicial Watch. This testimony will contradict Klayman's allegation that Defendants misrepresented the circumstances for his departure from Judicial Watch. In addition, Defendants are entitled to investigate the factual allegations set forth by Klayman regarding his expenses and health insurance. Having knowledge of the factual underpinnings of Klayman's breach of contract claims, as well as Defendants' Lanham Act claims, Ms. Deluca's testimony is clearly relevant to this case.

## IV.    CONCLUSION

Klayman's Objections lack merit and fail to satisfy the burden to overrule the Court's Order that is required. Despite the finding that Plaintiff is engaged in a practice of stonewalling discovery, Klayman continues to obstruct and delay Defendants' legitimate discovery efforts.

WHEREFORE, for all of the foregoing reasons, Defendants respectfully requests that this Court OVERRULE Plaintiff's Objections in their entirety.

        Respectfully submitted,

        /s/

        Richard W. Driscoll (436471)
        Juli Haller Simonyi (466921)
        DRISCOLL & SELTZER, PLLC
        600 Cameron Street
        Alexandria, Virginia 22314
        703.340.1625 Telephone
        703.997.4892 Facsimile
        rdriscoll@driscollseltzer.com
        jhaller@driscollseltzer.com
        *Counsel for Defendants Judicial Watch, Inc.,*
        *Thomas J. Fitton, Paul J. Orfanedes and*
        *Christopher J. Farrell*

Dated: May 27, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27[rd] day of May, 2008, a true copy of the foregoing Opposition was filed with the Court's Electronic Filing System, which serves all Counsel of Record.

        //s//
        Juli Z. Haller Simonyi