IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Civil Action No. 07-23135-CIV-Gold/Brown

LARRY KLAYMAN

    Plaintiff,

v.

DAVID BARMAK, individually, and
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY and POPEO, P.C. a
professional corporation

    Defendants.

_____/

## AMENDED COMPLAINT

The Plaintiff Larry Klayman (hereinafter referred to as "Plaintiff") sues the Defendant David Barmak (hereinafter referred to as "Barmak") and the Defendant, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (hereinafter referred to as "Mintz Levin") (Barmak and Mintz Levin collectively hereinafter referred to as "Defendants") and in support of this action states:

1. This is an action for breach of contract and breach of a fiduciary duty arising out of the Defendants' improper actions in disclosing confidential and attorney client privileged and proprietary information learned as counsel for the Plaintiff, as well as after improper and illegal acts, in order to benefit other clients at the expense of the Plaintiff, who was at all material times also a client or former client.

## PARTIES

2. The Plaintiff, Larry Klayman is an individual who resides in Miami-Dade County, Florida.

3. The Defendant, David Barmak is an attorney admitted to practice law in the District of Columbia, and resides in Maryland.

4. The Defendant, Mintz Levin is a law firm which practices law in the District of Columbia, but also does business in Florida.

## STATEMENT OF FACTS

5. In 1994, the Plaintiff founded a public interest non-profit group, Judicial Watch, and served as the Chairman, General Counsel, and Treasurer of Judicial Watch until September 23, 2003. At that time, the Plaintiff stepped down in order to seek the Republican nomination for Senate in Florida.

6. On or about May 2003, the Defendants had been representing the Plaintiff personally in a number of matters and were also representing Judicial Watch as outside General Counsel.

7. Around that time, the Plaintiff had commenced discussions with Judicial Watch, which ultimately led to the execution of a Severance Agreement between the Plaintiff and Judicial Watch.

8. Since Judicial Watch wished to consult with the Defendants about negotiations over the terms of that severance and the Plaintiff was agreeable, since he had retained other counsel to represent him in that regard, Judicial Watch and the Plaintiff executed a waiver agreement in which Judicial Watch acknowledged that the Defendants were the

        Plaintiff's personal counsel and the Plaintiff permitted the organization to consult with the Defendants for the limited purpose of negotiating the Severance Agreement.

9. Prior to that time, the Plaintiff had disclosed to the Defendants in the context of the attorney-client representation that the Plaintiff's then-wife had made certain defamatory and false allegations against the Plaintiff for tactical reasons in a divorce proceeding then pending in the Fairfax County Virginia Circuit Court.

10. The Plaintiff spoke to the Defendants in their capacity as the Plaintiff's personal attorney, and the Defendants understood and expressly agreed that the Plaintiff's disclosures to the Defendants were protected attorney-client communications. The Plaintiff disclosed in confidence that the allegations were untrue, and were a contrivance of divorce litigation drafted by his then-wife's lawyer for strategic advantage. The Plaintiff disclosed the allegation to avoid surprise or embarrassment to the Defendants, because the Defendants concurrently represented Judicial Watch then and continue to represent them now. In fact, Defendants admitted that the allegations were, in Defendant Barmack's own words, "B.S."

11. Subsequently, the Plaintiff's ex-wife recanted the untrue allegations in her complaint, and the record of the divorce was placed under seal by Order of the Circuit Court of Fairfax County upon a joint motion by both divorcing parties.

12. The effect of that Order was that the divorce action record "shall only be opened to the parties, their respective attorneys, and to such other persons as the judge of such court at his discretion decides have a proper interest therein." Va. Code Ann. § 20-124.

13. The Defendants had access to the record of the Plaintiff's divorce proceedings as the Plaintiff's attorney and as concurrent counsel to Judicial Watch, which the Plaintiff then headed. Defendants had no right to publish its contents, use it, consult with or work with others to use it against the Plaintiff at any later time.

14. After leaving Judicial Watch in September 2003, disputes arose between the Plaintiff and Judicial Watch, and the Plaintiff filed suit against Judicial Watch in the United States District Court for the District of Columbia in 2006, which case remains pending under the caption *Larry Klayman v. Judicial Watch, et. al.,* Civil Acton No. 06-670 (CKK) (the "Litigation").

15. The Defendants continued to represent Judicial Watch as outside General Counsel after the Plaintiff left Judicial Watch, and in effect represented the directors and officers of Judicial Watch, improperly, in the professional and personal capacities. That representation has included, without limitation, advising Judicial Watch and the current directors and officers in connection with the Litigation and otherwise against the interests of Plaintiff.

16. As part of their legal advice to Judicial Watch and the current directors and officers in the Litigation and otherwise, the Defendants further

consulted, advised and caused or participated in causing Judicial Watch to publish in Florida or elsewhere the scurrilous, false, recanted and sealed allegations made by the Plaintiff's ex-wife in the divorce action, which the Plaintiff had revealed and discussed in confidence to the Defendants as his attorneys. Defendants have significant contact with Florida and Miami-Dade County in particular since Plaintiff left Judicial Watch, through mail, telephone and email communications, concerning relevant matters involving Judicial Watch, the current directors and officers, and Plaintiff.

17. The Defendants never asked for and the Plaintiff never consented to the Defendants' disclosure of these confidences.

18. The Defendants' purpose in reciting recanted allegations of the Plaintiff's former wife in a sealed divorce action was to embarrass and harass the Plaintiff, his wife, his ex-wife (who jointly moved the Fairfax County court to seal the divorce record, as the Order shows), his children, and to violate the privacy of third parties who are innocent of the misconduct initially alleged in the divorce action.

19. The Defendants published the allegations nationwide and specifically in Miami Dade County, Florida and in such other media outlets as the <u>Legal Times</u> and the internet.

20. At the time that the Plaintiff made his confidential disclosures to the Defendants, Defendants acknowledged that they *did not* believe that the Plaintiff had committed any improprieties, and both the Plaintiff and Judicial Watch agreed that the allegations in the sealed divorce complaint

      had no bearing on the Plaintiff's resignation. In this regard, the Severance Agreement provides and represents unequivocally that Plaintiff's voluntary resignation was to allow him to pursue other endeavors, such as running as a candidate for the U.S. Senate.

21. The Defendants conceived of, directed, coordinated and allowed Judicial Watch and the current directors and officers of Judicial Watch and their agents and representatives, to publish the sealed divorce allegations to embarrass and harm the Plaintiff and his family without concern for the privacy of the Plaintiff or innocent third parties. Furthermore, the Defendants published the sealed divorce records for strategic advantage in the litigation by the Plaintiff against Judicial Watch and its current directors and officers.

22. The Defendants also violated their fiduciary duties and duty to maintain client confidences in other ways which included but are not limited to:

    A. Counseling and assisting Judicial Watch and its individual current directors, in their professional and personal capacities, in asserting false and contrived claims for alleged reimbursable expenses allegedly due and owing by Larry Klayman and assisting in the creation of false and misleading invoices and tax returns in this regard, threatening Plaintiff with adverse publicity if he did not pay and, when Plaintiff would not acquiesce or cave in to these threats, then publishing this misleading and false information on Judicial

Watch and other websites, with mutual donors, supporters and others, and elsewhere. In effect, Defendants have been representing the alleged interests of not just Judicial Watch but its current individual directors and officers, such as the current president, Tom Fitton, against the interests of Plaintiff, also a client;

B. Threatening Plaintiff with litigation and other retaliatory actions if he ever represented or referred to himself as the founder and former Chairman and General Counsel of Judicial Watch, all of which is true and which comprises Plaintiff's professional background.

C. Counseling and assisting Judicial Watch and its current individual directors and officers, both in their professional and personal capacities, on ways to interfere with Plaintiff's relationships with the media, for which he depends for his livelihood;

D. Counseling and suggesting to Judicial Watch and its current directors and officers, in both their personal and individual capacities, to publish statements that Plaintiff was only an employee of Judicial Watch and not its founder and Chairman, in order to diminish, disparage and harm Plaintiff's reputation and standing in the community;

E. Counseling and suggesting to Judicial Watch and its current directors and officers, both in their personal and individual capacities, that they need not adhere to and in fact could violate and interfere with the implementation of the terms of the Severance Agreement and Plaintiff's legal rights in general, such as by not removing in good faith Plaintiff as guarantor of the organization's multi-million dollar building lease, and not paying for Plaintiff's children's health insurance under Cobra and for a period terminating Plaintiff's family coverage in its entirely when he was ill; opening Plaintiff's mail; not providing forwarding information concerning Plaintiff; stating false and misleading reasons for Plaintiff's leaving Judicial Watch, not paying Plaintiff's expenditures on behalf of Judicial Watch, disparaging Plaintiff with Judicial Watch employees; telling employees not to talk to Plaintiff;  and misusing of Plaintiff's name and identity in mailings into Florida and elsewhere.

F. Falsifying and providing misleading information to Judicial Watch's accountant, Raffa and Associates, P.C. as demonstrated by a hold harmless agreement Raffa demanded from Judicial Watch to prepare and sign the false and misleading tax returns.

G. Such other actions as will be uncovered during discovery in this case.

## COUNT I
## BREACH OF CONTRACT

23. The Plaintiff incorporates the allegations in paragraphs 1 through 22 above as is set forth in full.

24. As required by the professional rules of conduct and common law, as well as Defendants' representation agreement with the Plaintiff, Defendants were to keep information disclosed to them confidential and not to benefit another client at the expense of the Plaintiff.

25. The Plaintiff is not in possession of a written agreement between the Plaintiff and the Defendants, however, the agreement was drafted by the Defendants and upon information and belief the contract is in the possession of the Defendants. The Defendants will not be prejudiced by the Plaintiff's failure to attach a copy of the contract to this complaint. The agreement was confirmed orally, by a course of dealing and legal representation with Plaintiff.

26. As set forth above, the Defendants breached that agreement by misusing confidential information for the benefit of Judicial Watch to the detriment of the Plaintiff in the Litigation and taking other improper actions, as set forth herein.

27. The Defendants' breach of the agreement has injured the Plaintiff in an amount in excess of $2,000,000.00.

WHEREFORE, for the above stated reasons, the Plaintiff requests this Court to enter a judgment in his favor for damages in the amount of $2,000,000.00 against the Defendants, together with pre-judgment interest, attorneys fees, court costs, and any other relief this Court deems just, necessary, and proper.

## COUNT II
## BREACH OF FIDUCIARY DUTY

28. The Plaintiff incorporates the allegations in paragraphs 1 through 27 above as is set forth in full.

29. As counsel for the Plaintiff, the Defendants owed the Plaintiff a fiduciary duty, which included; *inter alia*, the obligation to refrain from disparaging, and harming the Plaintiff based on information obtained as a result of his representation of the Plaintiff.

30. The Defendants, as counsel for the Plaintiff held a position of trust and confidence with Plaintiff.

31. The Defendants in providing legal services to the Plaintiff, utilized their position as counsel to the Plaintiff to befriend the Plaintiff and obtain a position of trust and confidence with the Plaintiff.

32. As set forth above, the Defendants violated their duty by misusing confidential information that the Defendants obtained through the use of their position of trust for the benefit of Judicial Watch to the detriment of the Plaintiff in the Litigation, as well as taking the other improper actions, as set forth herein.

33. Defendant, Barmak and his law firm so acted because his law firm, the Defendant, Mintz and Levin was among Judicial Watch's highest-paid

outside professional service providers, and he wanted to preserve and advance that status, even at the expense of another client.

34. There was no justification or excuse for the Defendants' actions, many more of which are likely to be disclosed though discovery.\

35. The Defendants' breach of fiduciary duty has injured the Plaintiff in an amount in excess of $2,000,000.00.

36. The Defendants' actions were intentional, malicious, willful, wanton, and so far beyond conduct acceptable to a person with a fiduciary duty to another so as to entitle the Plaintiff to an award of punitive damages in an amount in excess of $20,000,000.00.

WHEREFORE, for the above stated reasons, the Plaintiff requests this Court to enter a judgment in his favor for damages in the amount of $2,000,000.00 against the Defendants, together with pre-judgment interest, court costs, punitive damages in excess of $20,000,000.00 and any other relief this Court deems just, necessary, and proper.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.**

Dated: <u>January 31, 2008</u>                                         Respectfully submitted,

Larry Klayman, Esq.
Fla. Bar No.: 0246220
THE KLAYMAN LAW FIRM, P.A.
Attorneys for Plaintiffs
3415 SW 24th Street
Miami, FL 33145
Tel: 305.447.1091
Fax: 305.447.1548

By: <u>s/Larry Klayman</u>
Larry Klayman, Esquire

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of JANUARY, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day to Ana T. Barnett, Esq., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. Attorneys for Defendants, South First Manor, LLC, Museum Tower, Suite 2200, 150 West Flagler Street, Miami, FL 33130.

Respectfully submitted,

Larry Klayman, Esq.
Fla. Bar No.:  0246220
THE KLAYMAN LAW FIRM, P.A.
Attorneys for Plaintiffs
3415 SW 24th Street
Miami, FL 33145
Tel: 305.447.1091
Fax: 305.447.1548

By: s/Larry Klayman
Larry Klayman, Esquire