IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————
                                          |
LARRY KLAYMAN,                            |
                                          |
            Plaintiffs,                   |
                                          |
v.                                        |        Civil Action No. 1:06-CV-00670
                                          |        (CCK)
JUDICIAL WATCH, INC., *et al.*,           |
                                          |
            Defendants.                   |
———————————————————|

## DEFENDANTS' MOTION FOR PLAINTIFF'S FAILURE TO COMPLY WITH COURT ORDER

Defendants Judicial Watch, Inc. ("Judicial Watch"), Thomas J. Fitton ("Fitton"), Paul J. Orfanedes, and Christopher J. Farrell, by counsel and pursuant to the Federal Rules of Civil Procedure, Fed. R. Civ. P. Rule 37(b), seek an Order providing Defendants relief for Plaintiff's failure to comply with two Court Discovery Orders, Document 117, affirmed by Document 167, and Document 200 concerning Defendant's prior Motion to Compel Plaintiff's Supplemental Production of Documents for the grounds that follow in the attached Memorandum of Law.

The Undersigned made a good faith attempt to confer with Plaintiff *Pro Se* prior to filing this Motion.  (*See* Ex. 4 and Ex. 2, copy of Defs.' Correspondence dated July 31, 2008; *see also* Pl.'s correspondence dated August 1, 2008).

## MEMORANDUM OF LAW

## I.    STATEMENT OF FACTS

The chronology of events leading up to Defendants' Motion and Memorandum to Compel Plaintiff's Responses to Supplemental Request for Production is set forth in the

memorandum in support of the motion, and will not be restated in this memorandum. (Document No. 106, 106-2). Defendants served Supplemental Requests for Production of Documents on Klayman on November 2, 2007. (*See* Ex. 1 to Defs.' Supplemental Req. for Produc. of Docs., Docket No. 106-18 attached hereto as Ex. 1). The responses were first due back on December 3, 2007. *See Id.* Defendants gave multiple opportunities to plaintiff to comply with the requests, and the Court gave the plaintiff multiple extensions in order to comply with the Supplemental Requests (*see* Court's minute orders of 01-30-08; 01-31-08 and *see* Court Order dated July 9, 2008 [Document 200] giving plaintiff an additional two weeks to comply). On January 30, 2008 based on a telephone conference with the parties, the Court directed defendants to file their motion to compel if Klayman continued to fail to produce on February 6, 2008. *See Id.* Defendants accordingly filed a motion to compel on February 6, 2008. (*See* Document 106, 106-2).

On March 12, 2008, Magistrate Judge Alan Kay issued a well-reasoned ruling granting in part Defendants' Motion to Compel Supplemental Request for Production of Documents. (*See* Court Order 03 12 08, Document 117). The Court Ordered that Klayman supplement his responses with document production to Defendants' Supplemental Document Requests Nos. 1-16, 18-57 and 60 within ten days of said Order. (*See Id.*) Klayman's responses to the Supplemental Request for Production of Documents became due on or about March 26, 2008. Klayman, however, chose instead to object to the Court's March 12, 2008 Order. (*See* Pl. Obj. of March 26, 2008, [Doc. 123]). Judge Kollar Kotelly subsequently affirmed Magistrate Judge Alan Kay's March 12, 2008 Order, after considering all of the papers, on May 12, 2008. (*See* Court Order

05 12 08 [Document 167]).  Nevertheless, to date, Klayman has made no attempt to produce any documents to the Supplemental Requests.

The law of the case is that Klayman must comply with the Order granting Defendants' Motion to Compel Supplemental Requests, which is still outstanding.  *See Id.*  On July 1, 2008 in a separate Order, the Court issued monetary sanctions based on defense costs related to Defendants' filing of the motion to compel.  (*See* Court Order, 07 01 08 Document 199).  Klayman subsequently, on July 16, 2008, filed an Objection to that Sanctions Order, which defendants opposed on July 30, 2008 and is currently pending.  (*See* Pl.'s Objection, [Document 203] and Defs.' Opp'n, [Document 212]).

On July 7, the Court held a Status Conference the parties attended after the close of discovery to address open discovery issues.  Following the status conference, on July 9, 2008 the Court issued an Order memorializing the discovery addressed on July 7, 2008 and issued a specific discovery schedule for the remainder of discovery.  (*See* Court Order of 07 09 08, [Document 200]).

At the Status Conference before Magistrate Judge Kay on July 7, 2008, Klayman, once again, requested additional time for his production to the Supplemental Requests for Production.  The Court did so and gave him until July 25, 2008 to produce said documents, giving Klayman an another two weeks to comply.  The Court then specifically set the date for the continuation of Klayman's deposition for August 15, 2008 so that Klayman's continued deposition would follow the anticipated production.  (*See* Court Order July 9, 2008, Document 200).  Plaintiff, however, failed to produce any documents by July 25, 2008 and through correspondence made it clear that he did not

intend to produce any documents in compliance with that Order. (*See* Ex. 2, copy of Klayman's correspondence of 08 01 08).

On July 31, 2008, in a good faith effort to confer with Klayman prior to filing this Motion, Defendants wrote to Klayman demanding production to the outstanding Order. (*See* copy of Defendants' correspondence dated 07.31.08).  Klayman responded to Defendants alleging that their request for said production is "sanctionable in and of itself," since he has a Motion for Stay pending (since denied) and since the Court only denied his motion for a protective order *without* prejudice.  (*See* Ex. 2)

Next Klayman, after the Court denied his pending motion to stay, contacted Defendants' counsel seeking to once again delay his scheduled deposition, which is otherwise to go forward on August 15, 2008, pursuant to the Court's Order of July 9, 2008.  (*See* Ex. 3, copy of Klayman's correspondence dated 08 11 08; *see also* Document 200).  Again he shows his intent to refuse to follow the Discovery Order in this case, even after receiving monetary sanctions for prior failures to produce Supplemental Document Requests and for failing to appear for his March 14, 2008 deposition.  (*See* Document 199)

Klayman, to date, has failed to comply with the outstanding Order granting Defendants' Motion to Compel or with the most recent extension the Court gave him through July 25, 2008.

## II.    ARGUMENT

There is no justification, substantial or otherwise, for Klayman's failure to respond to Defendants' requests in a timely fashion.  Neither is there any justification, substantial or otherwise, for Klayman's deliberate refusals to comply with Court Orders to produce

documents by a date certain.  Moreover, Klayman has made no motion before the date of

the expiration that justifies such a refusal.[1]

### 1.    THE STANDARD

The Federal Rules of Civil Procedure specifically delineate the Court's authority

in how to address such violations.

Fed. R. Civ. P. 37(b) (2) sets forth that,

> **If a party** or an officer, direct, or managing agent of a party or
> a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of
> a party **fails to obey an order to provide or permit discovery**,
> including an order made under subdivision  (a) of this rule or Rule 35,
> or if a party fails to obey an order entered under Rule 26(f), the court in
> which the action is pending may make such orders in regard to the
> failure as are just and among others the following:
>
> (A) An order that the matters regarding which the order was
> made or any other designated facts shall be taken to be established for
> the purposes of the action in accordance with the claim of the party
> obtaining the order;
>
> (B) **An order refusing to allow the disobedient party to
> support or oppose designated claims or defenses, or prohibiting
> that party from introducing designated matters in evidence;**
>
> (C) **An order striking out pleadings or parts thereof,** or
> staying further proceedings until the order is obeyed, or dismissing the
> action or proceeding or any part thereof, or rendering a judgment by
> default against the disobedient party;
>
> (D)  In lieu of any of the foregoing orders or in addition thereto,
> an order treating as a contempt of court the failure to obey any orders
> except an order to submit to a physical or mental examination;
>
> (E)  Where a party has failed to comply with an order under
> Rule 35(a) requiring that party produce another for examination, such
> orders as are listed in paragraphs (A), (B), and (C) of this subdivision,
> unless the party failing to comply shows that that party  is unable to
> produce such person for examination.
>
> In lieu of any of the foregoing orders or in addition thereto, the
> court shall require the party failing to obey the order or the attorney
> advising that party or both to pay the reasonable expenses, including
> attorney's fees, caused by the failure, unless the court finds that the
> failure was substantially justified or that other circumstances make an

---

[1] Plaintiff's motion to stay was filed after Plaintiff was already on notice that the DC Circuit Court denied his Writ of Mandamus, a denial that he received on July 25, 2008, the very day his responses were due. (*See* Pl.'s Mot. To Stay, Document 211)

award of expenses unjust.

*See Id.*  (emphasis added).

As set forth, in this court, "any sanctions awarded must be proportional to the underlying offense[,]" and a district court must evaluate "the resulting prejudice to the sanctioned party, prejudice to the judicial system, and the need to deter future similar misconduct[]" before the imposition of "severe sanctions[.]"  *Henry v. Onsa*, 2008 U.S. Dist. LEXIS 14217, 7-8 (D.D.C. Feb. 27, 2008)(*citing Banks v. Office of the Senate Sergeant-at-Arms*, 241 F.R.D. 370, 372 (D.D.C. 2007) (*citing Bonds*, 93 F.3d at 808); *see also Rude v. Dancing Crab at Wash. Harbour, LP*, 245 F.R.D. 18, 22 (D.D.C. 2007) ("When the most severe sanctions, such as dismissal or default, are requested, the Court must determine whether lesser sanctions would be more appropriate.") (*citing Bonds*, 93 F.3d at 808).

In *Weisberg*, the defendants served the plaintiff with discovery requests and the plaintiff moved for a protective order.  749 F.2d at 866.  The Court denied the protective Order.  *See Id.*  The plaintiff sought a two week extension to comply, but near the end of the extension the plaintiff responded with objections, largely based on the same grounds as those delineated in his motion for a protective order.  *See Id.*  The defendants moved to compel the discovery responses and the Court granted the motion to compel. *See Id.*  The Court at that time also awarded defendants their expenses and attorneys fees for having to have filed the motion.  *See Id.* at 866-867.  Near to the expiration of the time within which to comply, the plaintiff then advised defendant "that plaintiff intended to refuse to respond."  *Id.* at 867.  The defendants moved to dismiss the entire case and the Court granted their motion for "plaintiff's willful and repeated refusals to answer in compliance

with court orders." *Id.* The Court of Appeals for the District of Columbia Circuit upheld the Court's dismissal after setting forth the standard of review. The Court of Appeals first recognized "that a minimum of willfulness, bad faith or some fault" is necessary, and then proceeded to follow the Supreme Court's holding in *National Hockey League v. Metropolitan Hockey Club*, 357 U.S. 197m 78 S.Ct. 1087, 2 L.Ed. 2d 1255 (1958) to emphasize the of the deterrent function of Rule 37 in appropriate cases,

"But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but deter those who might be tempted to such conduct in the absence of a such a deterrent." *See Weisberg*, 749 F.2d at 870 (*citing National Hockey League*, 427 U.S. at 642-43).

The *Weisberg* Court explained the significance of the deterrent factor addressed in *National Hockey League* in upholding the District Court's dismissal of the plaintiff's claim and finding no abuse of the Court's discretion,

> If dismissal is to perform the deterrent function envisioned in *National Hockey League*, dismissal of the entire case will often be necessary, even when the discovery dispute is focused on a single claim. If the most that can be put at risk by recalcitrant behavior is dismissal of the disputed claim, the recalcitrant party will often have an incentive to test the court. His obstreperousness may result in some compromise on the disputed claim, which works to his benefit. If he is unlucky and suffers a limited dismissal, he only loses what he would have lost anyway -- the particular point at issue. Limited dismissal may present him with nothing to lose and something to gain.

*See Id.* at 872.

The case at bar is completely analogous to *Weisberg, supra*. The Court of Appeals for the D.C. Circuit subsequently followed the holding in *Weisberg* and again

reiterated the standard under Rule 37 dismissals. *Aruba Bonaire Curacao Trust Co. v. Commissioner*, 250 U.S. App. D.C. 38, 777 F.2d 38 (D.C. Cir. 1985). "We last reviewed this circuit's standard for dismissal under Fed. R. Civ. P. 37 in *Weisberg v. Webster*, 242 U.S. App. D.C. 186, 749 F.2d 864 (D.C. Cir. 1984). In that case, the trial court dismissed the plaintiff's action for failure to respond to the defendant's interrogatories." *See Id.*  The Court in *Aruba Bonaire Curacao Trust Co.* followed suit.

In *Grochal v. Aeration Processes*, the Court of Appeals for the District of Columbia explained in the case before it, that there was no clear violation of a discovery order – which was why it was unlike *Weisberg*, 749 F.2d 864, wherein the plaintiff clearly ignored two court orders regarding discovery requests and also unlike *G-K Properties v. Redevelopment Agency of the City of San Jose*, 577 F.2d 645 (9th Cir. 1978), where the plaintiffs ignored a discovery court order for over three months.   797 F.2d 1093, 1098-1099 (D.C. Cir. 1986), vacated by 259 U.S. App. D.C. 29, 812 F.2d 745 (D.C. Cir. 1987).

The Court of Appeals in *Shepherd v. ABC, Inc.* explained *Weisberg v. Webster*, 242 U.S. App. D.C. 186, 749 F.2d 864 (D.C. Circuit 1984), and why it was distinguishable from it on more than one basis. *See Shepherd v. ABC*, 314 U.S. App. D.C. 137; 62 F.3d 1469.  It first addressed a plaintiff's recalcitrance that went to the heart of the case as in *Weisberg* as opposed to the deficient discovery in *Shepherd*. *Id.*  Then the *Shepherd* Court stated that, "…[I]n order to justify a default judgment--a sanction that is analogous to dismissal and in some respects more severe--the district court not only must find clear and convincing evidence of misconduct but also must provide a specific, reasoned explanation for rejecting lesser sanctions, such as fines, attorneys' fees, or

adverse evidentiary rulings." *See* 62 F.3d at 1478. The *Shepherd* Court, however, then

went on to explain why it was distinguishable from *Weisberg*,

> ...because it [in *Weisberg*] involved a sanction imposed under
> Federal Rule of Civil Procedure 37, which expressly authorizes
> dismissal or default for noncompliance with a discovery order. Here, in
> contrast, the court imposed a default judgment under its inherent
> power, which is not grounded in rule or statute and must be exercised
> with particular restraint.

*Id.* at 62 F.3d at 1480.

Similarly, in the case at bar, Defendants seek relief pursuant to Fed. R. Civ. P. 37,

which specifically authorizes the Court to provide such relief. In *Foster* this Court more

recently again addressed Fed. R. Civ. P. 37(c) wherein it stated,

> *Fed. R. Civ. P. 37(c)(1)* explicitly provides that "[a] party that without substantial
> justification fails to disclose information required by *Rule 26(a)* or *26(e)(1)* shall not,
> unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or
> on a motion any witness or information not so disclosed." "The sanction of exclusion is
> 'automatic and mandatory unless the party to be sanctioned can show that its violation of
> *Rule 26(a)* was either justified or harmless.'" *Nutrasweet Co. v. X-L Engineering Co., 227
> F.3d 776, 785-786 (7th Cir. 2000)* (affirming district court's decision based on *Fed. R.
> Civ. P. 37(c)(1)* in a CERCLA case to limit a party's expert testimony at trial to his initial
> expert report and to exclude a supplemental expert report not timely filed and any
> testimony based thereon); *see also Grajales-Romero v. American Airlines Inc., 194 F.3d
> 288, 297 (1st Cir. 1999)* (finding no abuse of discretion in district court's decision under
> *Fed. R. Civ. P. 37(c)(1)* to forbid witness substitution when new witness was not properly
> disclosed during the course of discovery).

*See Foster v. United States of America, 130 F. Supp. 2d 68, 70, f.n. 1 (D.D.C. 2001).*

*Foster* also recognized the decision of *Bonds v. District of Columbia, 320 U.S.*

*App. D.C. 138, 93 F.3d 801, 808 (D.C. Cir. 1996)* (district court abused discretion when

it prevented the District from offering *any* fact witnesses at trial as a discovery sanction

under *Fed. R. Civ. P. 37(b)(2)* and *(d)* rather than imposing lesser sanction of prohibiting

witnesses whom plaintiff had not deposed), but the Foster Court noted that *Bonds* did not

in fact involve Fed. R. Civ. P. 37(b) (2). *See Id.*

Defendants served these Supplemental Requests for Production of Documents on Klayman on November 2, 2007. (*See* Ex. 1 to Defs.' Supplemental Req. for Produc. of Docs., Docket No. 106-18). The requests specifically request information with regard to each of Klayman's claims and with regard to Defendants' counterclaims. *See Id.* For lesser sanctions, "Rule 37(b)(2) does not require a showing of willfulness or bad faith as a prerequisite to the imposition of sanctions upon a party." *McDowell v. District of Columbia*, 2006 U.S. Dist. LEXIS 89138 (D.D.C. Nov. 30, 2006) (*citing Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 78, 88 (D.D.C. 1998); *see also Societe Internationale Pour Participations Industrielles et Commerciales, S.A., v. Rogers*, 357 U.S. 197, 208, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958) (noting that a party violates Rule 37(b)(2) by simply failing to comply with an order)(further citations omitted). This Court, however, already issued the lesser sanction of monetary sanctions against Klayman pursuant to Rule 37 based on Defendants' Motion to Compel Supplemental Requests for Production of Documents to no avail – and for his prior failure to appear for his deposition. (*See* Document 199). Klayman failed to comply with that prior order that resulted in monetary sanctions, which was subsequently affirmed by Judge Kollar Kotelly on May 12, 2008. (*See* Document 167). Klayman now has failed with to comply with that order—again when he again failed to comply with the Judge's more recent order of July 9, 2008 setting forth that he is to comply with said production by July 25, 2008, which the Court specifically timed with his deposition. (*See* Document 200). The lesser sanctions failed to deter Klayman's conduct and just gave Klayman another ruling to appeal, as he appealed the sanctions order containing the monetary amounts in addition to appealing the order granting the motion to compel, in addition to appealing nearly every

ruling by Magistrate Judge Kay[2].

The Court as far back in January of 2008 already recognized Klayman's violations of normal discovery procedures. Since then Klayman has only become more recalcitrant as over 100 filings have occurred just between the time of the January 2008 Order and the present pursuant to Klayman's initiation. (*See* Docket generally). In granting Defendants' first Motion to Compel Interrogatories and Requests for Production,

> In the present case, Klayman's counsel essentially granted his own request for an extension after he was unable to confer with opposing counsel. Klayman never sought leave of court to file his interrogatory answers or to produce documents after the July 23 deadline. Nonetheless this Court finds that Klayman's violation of the discovery deadlines was *deminimis* and Defendants failed to demonstrate that they were prejudiced by a one-week delay. Therefore the Court will not deem Klayman's objections waived. *However, Klayman and his counsel are put on notice that there is ample precedent for holding that their objections are waived, and this Court may choose to exercise its discretion in a different manner should it be faced with a similar situation in the future.*

(*See* Court Mem. Op. of January 16, 2008 at p. 6 (emphasis added)[document 98]).

The Court therein further found that "it is clear to the Court that Klayman is attempting to stonewall Defendants and otherwise subvert the purposes of discovery by providing patently evasive answers, asserting boilerplate objections, and unilaterally making determinations of relevance." *Id.* Since that date, Klayman obtained three extensions of discovery and a de facto fourth extension to take discovery even beyond the close of discovery, discovery which closed on May 15, 2008. Nevertheless to date, Klayman intentionally refuses to make production responsive to Defendants' Supplemental Requests for Production and the Court's Orders, first of March 12, 2008

---

[2] Most notably, Plaintiff did not appeal the July 9, 2008 Discovery Order that set forth that his production must be made by July 25, 2008. (*See* Docket generally; *see also,* Order [Document 200])

and now again on July 7, 2008.

In *Caldwell v. Ctr. for Corr. Health*, the District of Columbia explained the holdings that justified further sanctions, including the striking of pleadings. 228 F.R.D. 40, 45-46 (D.D.C. 2005).

While the Court in *Caldwell* did not find the precedent behavior necessary for striking of pleadings on the facts before it, the Court explained the grounds that justified such orders. *See Id.*

> 'In *National Hockey*, the Supreme Court reversed the appellate court and upheld the trial court's dismissal of an action based on the extenuating circumstances surrounding plaintiff's failure to file timely answers to interrogatories. Unlike the behavior at issue in the case at bar, in *National Hockey*, the Court concluded that the trial court acted appropriately by dismissing the case in light of plaintiffs' "'flagrant bad faith' and their counsel's 'callous disregard' of their responsibilities." *Id.* at 643. In support of its decision, the Court even quoted the trial court's description of the behavior: The District Court, in its memorandum opinion directing that respondents' complaint be dismissed, summarized the factual history of the discovery proceeding in these words:
>
> > "After seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonitions by the Court and promises and commitments by the plaintiffs, the Court must and does conclude that the conduct of the plaintiffs demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents. The practices of the plaintiffs exemplify flagrant bad faith when after being expressly directed to perform an act by a date certain …they failed to perform and compounded that noncompliance by waiting until five days afterwards before they filed any motions. Moreover, this action was taken in the face of warnings that their failure to provide certain information could result in the imposition of sanctions under Fed. R. Civ. P. 37. If the sanction of dismissal is not warranted by the circumstances of this case, then the Court can envisage no set of facts whereby that sanction should ever be applied."'

*Caldwell v. Ctr. for Corr. Health,* 228 F.R.D. 40, 45-46 (D.D.C. 2005) (*citing Id.* at 640-41). In the case at bar, these responses first came due seven months ago and

discovery closed on May 15, 2008. Klayman has now violated two separate court orders and received a lesser monetary sanction for his failure of production and nevertheless, continues to intentionally disregard the Court's early warning. (See Ex. 2).

The Court in Caldwell also distinguished the facts before it from that in *Weisberg v. Webster* wherein the plaintiff had repeatedly and willfully refused to comply with a Court Order requiring discovery responses to requests went to the heart of the case. *See Id.* (*citing Weisberg v. Webster*, 749 F.2d at 872; *Shepherd v. Am. Broad. Cos.*, 314 U.S. App. D.C. 137, 62 F.3d 1469 (D.C. Cir. 1995); *Webb v. District of Columbia*, 189 F.R.D. 180, 189 (D.D.C. 1999)(which held that 'the key to the court's holding in *Weisberg* was "'plaintiff's willful and repeated refusal to comply with an order requiring him to respond to the defendant's discovery requests concerning information that went directly to the merits of the case … Moreover, the plaintiff's recalcitrance in *Weisberg* had entirely halted the discovery process and frustrated the defendant's ability to litigate its case."'")

In *Flynn v. Thibodeaux Masonry* the Court found an intentional violation of a court order by a party when it knew of the court order to obtain counsel, but attempted to justify its lack of compliance with said order by explaining that it lacked the resources to comply. 311 F. Supp. 2d 30, 37-38 (D.D.C. 2004) The Court found such a refusal to show deliberate conduct in violation of a court order, therefore, justifying an order of default. *See Id.*

In the case at bar, Klayman also acts with intent in his refusal to comply. Klayman responded to Defendants alleging that their request for said outstanding production is "sanctionable in and of itself," – and not that production would be forth coming. (*See* Ex. 2). Instead Klayman cited to a Motion for Stay that he had filed, which

is apparently based on potential further appeal and not the denied Writ of Mandamus, and further on the denial of his motion for a protective order – because it was denied without prejudice.  (*See Id.*)  He illogically concluded that he no longer needs to comply with the Court's outstanding Orders. He also acted with intent.  His correspondence exemplifies his attitude towards discovery throughout this case and reflects his deliberate refusal to comply and to make vague yet strong threats.

        This Court once already explained to Klayman that pending motions do not constitute a basis for stopping of discovery where no Court Ordered Stay is in effect. (*See* Court Order of June 10, 2008, [Document 189]("Rather, Klayman appears to have operated under the mistaken impression that his very filing of an appeal of the Magistrate Judge's order and his Motion to Permit Inspection would serve as a stay. As that impression was unfounded–and no Court-ordered stay of discovery was in effect–the Court cannot conclude that Defendants acted improperly in receiving documents pursuant to the third party subpoenas and noticing the depositions of third party representatives.")

        **2.      THE DISCOVERY AT ISSUE**

        The Court Ordered that Klayman supplement his responses with document production to Defendants' Supplemental Document Requests Nos. 1-16, 18-57 and 60 within ten days of said Order.  (*See* Document 117).  Each of the requests in large part relate to the Defendants' counterclaims, but many of the requests also relate to Klayman's claims of damages.  Specifically, Defendants have asserted counterclaims against Klayman arising from several of Klayman's direct mail fundraising campaigns, including direct mail fundraising campaigns for his unsuccessful 2004 U.S. Senate campaign and direct mail fundraising campaigns for entities known as "Freedom Watch"

and "Saving Judicial Watch" in 2005, 2006, and 2007.  Defendants allege that Klayman violated the confidentiality clause of the September 19, 2003 severance agreement by misusing confidential, proprietary information about Defendant Judicial Watch, Inc.'s fundraising operations, strategies, donors, and vendor information for his unsuccessful U.S. Senate campaign.  *See* Amended Counterclaims of Judicial Watch, Inc. and Thomas J. Fitton ("Amended Counterclaims") at pars. 22, 125-131.  The confidentiality provision in the severance agreement is quite broad.[3]

Defendants also allege that Klayman violated the non-competition clause of the September 19, 2003 severance agreement by conducting a direct mail fundraising campaign in 2005 for an entity known as "Freedom Watch."  *See* Amended Counterclaims at paras. 18, 132-38.  Under the terms the non-competition clause, Klayman was obligated not to compete against Defendant Judicial Watch, Inc. for a period of two years following his departure from the organization, or until September 19, 2005.[4]  Defendant Judicial Watch, Inc. paid $200,000 in consideration for Klayman's

---

[3]        Paragraph 4 of the severance agreements states, in relevant part:

A.        Confidential Information.  Klayman agrees that all non-public information and materials . . . concerning Judicial Watch, its operations, plans, programs, relationships, donors, prospective donors, clients, prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. . . . Confidential Information includes matters not generally known outside Judicial Watch, such as . . . donor lists, . . . contacts at or knowledge of . . . donors or prospective . . . donors . . . .  Klayman agrees that after the Separation Date, he shall not . . . use Confidential Information for any purpose without written approval by an officer of Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman.

D.        Client and Donor Information.   . . . Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor . . . lists or donor . . . data.  *See* Amended Counterclaims at para. 22 and Exhibit 1.

[4]        Paragraph 5 reads in relevant part:

B.        Covenant Not to Compete or Solicit.  Klayman agrees that, in order to enable Judicial Watch to preserve and protect Judicial Watch's valuable and legitimate business interests, . . . and in exchange for the additional consideration referred to in paragraph 6 . . . (which the parties acknowledge to be separately bargained for), Klayman shall not, for a period of two (2) years following the Separation Date [September 19, 2003], directly or indirectly, (i) work or render advice as an individual or sole proprietor in Competition with Judicial Watch or work or render advice as an employee, agent, independent contractor, consultant or representative of any person, firm or legal entity which is engaged in or has plans to enter into Competition with Judicial Watch.  For purposes of this Agreement, the term "Competition"

agreement not to compete against it during this two-year period, but Klayman breached the non-competition clause by conducting fundraising campaigns for various entities in 2004 and 2005.  *Id.* at paras. 18 and 137.

Defendants allege Klayman breached the non-disparagement clause of the September 19, 2003 severance agreement, infringed Defendant Judicial Watch, Inc.'s trademarks, and competed unfairly with Defendant Judicial Watch, Inc. in conducting another direct mail fundraising campaign in 2006 and 2007 under the name "Saving Judicial Watch."  *See* Amended Counterclaims at paras. 30-67, 84-105, and 117-23.

Defendants further allege that through his various fund raising campaigns Klayman violated the Lanham Act by using Judicial Watch's registered trademarks, "JUDICIAL WATCH" and "BECAUSE NO ONE IS ABOVE THE LAW."  (*See* Am'd Countercl. p. 31).  Defendants also allege that Klayman violated the Lanham Act through Unfair Competition by making misrepresentations and Cybersquatting.  (*See Id.* at p. 32-35.)

Defendants' Supplemental Requests specifically seek discovery related to the heart of to Plaintiff's affirmative claims and Defendants' Counterclaims.  Defendants are severely prejudiced without this discovery.  This Court already found the requests relevant to the litigation to justify the motion to compel.  (*See* Court Order 05 12 08 [Document 167, affirmed Document 117]

Defendants' requests numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 14, 18, 23, 24, 25, 26, 27, 28, 29 and 30 specifically seek documents related to Defendants' breach of contract claims.

means directly or indirectly engaging in the work or advancing the mission of any ethics, anti-corruption, public integrity and government accountability watchdog or similar public interest or educational organization, or engaging in any other activities the purpose or effect of which would be to provide information, programs, publications, services or products that Judicial Watch offers, develops or sells or has plans to offer, develop or sell, as of the Separation Date . . . .  *See* Amended Counterclaims at para. 134 and Exhibit 1.

(*See* Defs.' SPRP, Ex. 1).  Defendants seek to prove that Klayman specifically violated his contract with Judicial Watch, in violating the confidentiality provision, the non-compete provision, the non-disparagement provision and the use of Judicial Watch's donor lists. Requests numbered 1-4, 7, 9, 10, 13, 15 19 also seek documents that relate to Klayman's affirmative claims that Defendants' damaged his business reputation.  (*See Id.*)   Defendants seek to show Klayman's poor business reputation versus a reputation that Klayman otherwise claims that Defendants damaged in the amount of a million dollars.  Requests numbered 4, 9, 11, 12, 13, 23-29 relate to Defendants' Lanham Act claims.  Requests numbered 11, 12, 15 also seek discovery related to Plaintiff's claims of defamation and damages.  Requests numbered 16, 20-22, 32-60 specifically relate to Klayman's claims, with requests numbered 33-56 specifically related to potential witnesses regarding Klayman's affirmative claims.

Klayman should be barred from raising any defenses to Defendant's counterclaims wherein he failed to produce any requested documents.  Furthermore, to date he has failed to produce any information in support of his damage claims as requested throughout these Requests, and therefore, he should be further barred from submitting any purported evidence in support of a damage claim, he claims results from Defendants' alleged misconduct.

Furthermore to date, he has failed to date he has failed to comply with Magistrate Judge Kay's discovery Order dated July 9, 2008 in that he has also failed to provide Defendants' with Ms. Benson's availability, in violation of the Court Order [Document 200], and it is anticipated that he will fail to appear for his deposition this coming Friday, the 15th of August as he wrote the undersigned today claiming that he is out of the country.  (*See* Ex. 3).

**II.    CONCLUSION**

The discovery outstanding is highly relevant and absolutely material to this litigation, to defend the claims made by Klayman and to support the counterclaims brought by Defendants. Accordingly, Defendants respectfully request that this Court bar Klayman from testifying or admitting any evidence in support of his damage claims or in support of his alleged defenses to the counterclaims as he has repeatedly and continually refused to comply with the outstanding discovery requests -- in violation of two Court Orders. *See* Fed. R. Civ. P. 37(b)(2)(B). The Rule specifically authorizes this remedy. *See Id.* Klayman has intentionally violated this Court's authority on a countless number of occasions by appealing nearly every Order issued by Magistrate Judge Kay and now attempting to appeal Judge Kollar Kotelly's affirmation of the same rulings. *See* Docket generally. The Request relate to the heart of the litigation, as those at issue in *Weisberg* did. This discovery is highly relevant – and Klayman has expressed in writing his intention to violate the Order that required him to make the production. The Defendants are severely prejudiced in trying this case without his discovery. The Court has warned Klayman previously of its broad discretion in issuing sanctions pending further discovery failures as far back as January 16, 2008 – and even earlier in the Court's Scheduling and Procedures Order of April 25, 2007. Klayman has again and again shown a callous disregard of the Court's Orders that merits a barring of any evidence, including Klayman's testimony, to support Klayman's claims of damages set forth in his Amended Complaint and in support of his defenses to Defendants' counterclaims.

WHEREFORE, Defendants respectfully request that this Court bar Klayman from testifying or admitting any purported evidence in support of any of his alleged damage

claims or in support of his alleged defenses to Defendants' counterclaims.

Respectfully submitted,

/s/

_____

Richard W. Driscoll (436471)
Juli Haller Simonyi (466921)
DRISCOLL & SELTZER, PLLC
600 Cameron Street
Alexandria, Virginia 22314
703.340.1625 Telephone
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com
jhaller@driscollseltzer.com
*Counsel for Defendants Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes and Christopher J. Farrell*

Dated: August 12, 2008

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 12th day of  August 2008, a copy of the foregoing Objections was served by electronic filing upon counsel listed on the Notice of Electronic Filing.

/s/

_____

Juli Haller Simonyi