UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARRY KLAYMAN,**<br><br>    Plaintiff,<br><br>    v.<br><br>**JUDICIAL WATCH, INC.,** *et al.*,<br><br>    Defendants. | Civil Action No. 06-670 (CKK)(AK) |

**MEMORANDUM OPINION**[1]

Pending before the Court is Defendants' Motion for Sanctions for Plaintiff's Failure to Comply with Court Order [218]. Plaintiff did not respond to the motion. After reviewing Defendants' Motion and the record in this case, the Court issues the following Memorandum Opinion.

**I.      Background**

Plaintiff Larry Klayman ("Klayman") is the former Chairman and General Counsel of Judicial Watch, Inc. ("Judicial Watch"), a non-profit organization that was founded "in 1994 as a public interest watchdog to investigate and prosecute government corruption and abuse." (Second Am. Compl. [12] ¶¶ 2, 7, 20.) Klayman left Judicial Watch in 2003. (*Id*. ¶ 28.) In anticipation of his departure, the parties entered into a Confidential Severance Agreement on September 19, 2003. (*See* Am. Countercl., Ex. A [86-2].) Judicial Watch agreed, *inter alia*, to pay Klayman a lump sum of $400,000 as severance pay and continue his family health insurance

---

[1] United States District Judge Colleen Kollar-Kotelly referred this case to the undersigned Magistrate Judge for disposition all discovery-related motions pursuant to Local Civil Rule 72.2(a). (*See* Order [85] dated 12/3/07.)

coverage for a period of one year.  (*Id*. ¶¶ 2, 3.)  The Severance Agreement contained a "Non-Disparagement" clause; Klayman and Judicial Watch each agreed not to "directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish, in any manner, disparaging, defamatory or negative remarks or comments about" the other party.  (*Id*. ¶ 17.)  Each party agreed to reimburse the other for expenses and Klayman re-affirmed and acknowledged a $78,810 debt that his law firm, Klayman and Associates, P.C., owed to Judicial Watch.  (*Id*. ¶ 10, 11.)

The Severance Agreement contained a provision addressing the treatment of confidential information and Judicial Watch property.  (*Id*. ¶ 4.)  The confidentiality provision provided, in relevant part:

> A.   Confidential Information.  Klayman agrees that all non-public information and material, whether or not in writing concerning Judicial Watch, its operations, programs, plans, relationships, donors, prospective donors, clients prospective clients, past or current employees, contracts, financial affairs or legal affairs (collectively, "Confidential Information") are confidential and shall be the exclusive property of Judicial Watch to which Klayman has no right, title or interest. . . . Klayman agrees that after the Separation Date [September 19, 2003], he shall not disclose any Confidential Information to any person or entity or use Confidential Information for any purpose without written approval by an officer of Judicial Watch, unless and until such Confidential Information has become public knowledge through no fault or conduct by Klayman.
>
> \*   \*   \*   \*
>
> D.   Client and Donor Information. . . . Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any Judicial Watch donor or client lists or donor or client data.

(*Id*. ¶ 4(A), (D).)  Finally, the Severance Agreement contained a non-competition and non-solicitation provision under which Klayman was prohibited from engaging in specified business activities, including working for a Judicial Watch competitor and soliciting Judicial Watch

donors for contributions to a competitor, for a period of two years. (*Id.* ¶ 5.) Judicial Watch agreed to "pay Klayman $200,000 in consideration of his agreement not to compete or solicit." (*Id.* ¶ 6.)

On April 12, 2006, Klayman and Louise Benson,[2] a Judicial Watch supporter and donor, brought suit against Judicial Watch and its President, Thomas J. Fitton. (*See* Compl. [1].) Klayman later amended his Complaint to name Paul Orfanedes, the Secretary and a director of Judicial Watch, and Christopher Farrell, another director of Judicial Watch, as defendants. (*See* Second Am. Compl.) In Counts Six, Seven and Eight, Klayman alleges that Judicial Watch breached various obligations owed to him under the Severance Agreement and in Count Nine he alleged that Judicial Watch defamed him by disseminating allegedly false statements to Judicial Watch employees and the media.[3] (*Id.* ¶¶ 66, 115-162.) In Count Four, Klayman also brings a claim under Section 43(a) the Lanham Act, which provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

---

[2] By Order dated January 17, 2007, Judge Kollar-Kotelly dismissed Counts One, Two and Three of the Second Amended Complaint, which are the only claims that involve Benson. (*See* Order [35].)

[3] Judge Kollar-Kotelly granted Defendants' Motion for Partial Summary Judgment "as to the allegations contained in Count Six that Judicial Watch fraudulently induced Klayman to enter the Severance Agreement and the allegations contained in Counts Seven and Eight that Judicial Watch failed to pay Klayman for the period between September 15 and September 19, 2003." (Order [51] dated 4/3/07.) Judge Kollar-Kotelly also dismissed Count Nine "insofar as it relates to allegedly defamatory statements made in Judicial Watch Form 990 tax returns and allegedly doctored press quotations posted on the Judicial Watch website." (Order [35] dated 1/17/07.)

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)-(B).

Defendants have asserted counter-claims against Klayman. (*See* Am. Countercl. [86].) They allege that Klayman breached the Severance Agreement by failing to reimburse Judicial Watch for expenses, as required by Paragraph 10, failing to pay the outstanding balance of his law firm's debt, as required by Paragraph 11, and violating the non-disparagement provision through his remarks about Judicial Watch and Fitton. (*Id*. ¶¶ 69-79, 117-124.) Defendants further allege that subsequent to his departure from Judicial Watch, Klayman used "Confidential Information" in violation of Paragraph 4 of the Severance Agreement and that he violated the non-compete clause of Paragraph 5. (*Id*. ¶¶ 125-138.) Defendants have also brought claims against Klayman under the Lanham Act, alleging trademark infringement, unfair competition, and "cybersquatting." (*Id*. ¶¶ 84-116.)

Defendants' instant motion seeks relief from Plaintiff's failure to comply with two discovery orders – that compelled Plaintiff to produce documents related to his damages and defenses to Defendants' counterclaims – issued by this Court. (Defs.' Mot. [218]; Mem. Order [117]; Order [200].) Defendants argue that because Plaintiff has failed to produce any documents in response to this Court's orders he should be barred from testifying to or admitting into evidence any evidence in support of his damage claims or in support of his alleged defenses to counterclaims. Plaintiff did not respond to Defendants' motion for sanctions. Because of the

voluminous number of filings in this case resulting from Plaintiff's obstinance at every stage of this case, a brief history of the chronology leading up to the instant motion is useful.

On November 2, 2007, Defendants served on Plaintiff their Supplemental Requests for Production of Documents. (*See* Mem. Order [117].) Plaintiff's responses were due on December 6, 2007. (*Id.*) On December 17, 2007, counsel for Defendants sent a letter to counsel for Plaintiff indicating that if they did not receive documents by December 19 they would file a motion to compel. (*Id.*) Plaintiff served his Responses on December 18, but failed to provide any documents that were responsive to Defendants' requests. (*Id.*) Instead, Plaintiff asserted various objections and claims of privilege to each of Defendants' documents requests. (*Id.*) On January 9, 2008, Defendants again warned that they would file a motion to compel if they did not receive responsive documents. (*Id.*) When the matter could not be resolved without judicial intervention, Defendants filed a motion to compel, asking the Court to compel Plaintiff to produce materials responsive to Document Requests Nos. 1-57 and 60, and for monetary sanctions in the form of costs and attorneys' fees associated with the filing of the motion. (*Id.*)

On March 12, 2008, this Court granted-in-part[4] Defendants' motion and ordered Plaintiff to supplement his responses with document production within ten days. (Mem. Order [117].) The Court also granted Defendants' motion with respect to monetary sanctions.[5] (*Id.*) Plaintiff filed objections to the order on March 26, 2008. (Pl.'s Obj. [123].) On May 12, 2008, Judge

---

[4] The Court granted Defendants' motion with respect to all but one document request.

[5] Because of the need to calculate the costs and fees related to the motion to compel and in light of several other requests for sanctions, this Court issued a separate order specifically awarding the amount of monetary sanctions on July 1, 2008. (*See* Mem. Order [199].) Plaintiff subsequently objected to that order. (*See* Pl.'s Obj. [203]; Defs.' Opp'n [212].) Judge Kollar-Kotelly overruled Plaintiff's Objection and affirmed this Court's Order in its entirety on August 26, 2008. (Order [231].)

Kollar-Kotelly overruled Plaintiff's objections and affirmed this Court's order in its entirety. (Order [167].)

On July 7, 2008, this Court held a Status Conference after the scheduled close of discovery to address open discovery issues. On July 9, 2008, this Court issued an Order addressing the outstanding discovery issues and memorializing the schedule set during the Status Conference. (Order [200].) The Court noted that Plaintiff represented at the Status Conference that he would be able to provide the documents Defendants sought in response to their Supplemental Requests for Documents by July 25, 2008. (*Id.*) The Court cautioned Plaintiff to be mindful of the deadline he had agreed to and that further noncompliance would expose him to the risk of further sanctions. (*Id.*) After Plaintiff once again failed to produce any response to Defendants' requests for documents, Defendants filed the instant Motion for Sanctions on August 12, 2008. Plaintiff did not file a response, nor has he ever produced the requisite documents.

**II.     Discussion**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, a court may sanction a party that fails to obey a discovery order. *See* FED. R. CIV. P. 37(b). Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order made under [Rule 37(a)] . . . the court in which the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A). Such an order under Rule 37(b)(2)(A) may include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence," or "striking pleadings in whole or in part." *Id*.

The Court finds that the sanctions proposed by Defendants – namely that Plaintiff be barred from testifying to or admitting any evidence in support of his damage claims or his alleged defenses to Defendants' counterclaims – are appropriate under Rule 37(b)(2) given Plaintiff's repeated and willful refusal to comply with this Court's discovery orders and the prejudice it has caused to the opposing parties and the judicial system.  The Court has been more than flexible in giving Plaintiff second and third chances to produce required discovery with respect to a host of discovery issues.[6]  Regarding the instant discovery issue, for example, the Court permitted the out-of-time filing of Plaintiff's responses to Defendants' requests for the production of documents *even after* Plaintiff had already been sanctioned for failing to produce those documents.  (*See* Order [200].)  Plaintiff's failure to respond to Defendants' Motion is itself instructive of Plaintiff's willful disregard for the discovery obligations required of a Plaintiff who files in a federal court and of the Court's authority to enforce those obligations.  Moreover, because of Plaintiff's failure to file a memorandum in opposition, the Court will treat Defendants' Motion for Sanctions as conceded pursuant to Local Civil Rule 7(b).  On this record, the Court cannot approve of any alternative.

While the sanction of barring certain testimony and evidence from admission is generally not as severe as the sanction of a default judgment, the sanctions that will be applied here may go to the heart of Plaintiff's claims and defenses.  Indeed, the trial court currently has summary

---

[6] Indeed, the docket is riddled with Plaintiff's extension requests and delay tactics.  (*See, e.g.,* Memorandum Order [250] at 3-4, n. 4 (noting "Plaintiff's repeated pattern of delay and lack of concern with Court ordered deadlines" and the Court's granting of "no fewer than ten requests for discovery-related extensions of time"); Memorandum Order [98] at 23 ("[I]t is clear to the Court that Klayman is attempting to stonewall Defendants and otherwise subvert the purposes of discovery by providing patently evasive answers, asserting boilerplate objections, and unilaterally making determinations of relevance.  This behavior is without question unacceptable.").)

judgment motions on the parties' claims pending. The Court, however, finds the severity of the sanctions fully appropriate even in light of their potential reach and the current procedural posture of the case, as Plaintiff's behavior and the record before the Court soundly support even the most severe discovery sanctions.

The rationales that would support the sanction of a default judgment in this Court are undoubtably present here. The Court of Appeals has "observed that three basic justifications support the use of a default judgment as a sanction for misconduct: (1) a determination that 'the errant party's behavior has severely hampered the other party's ability to present his case'; (2) 'the prejudice caused to the judicial system when the party's misconduct has put an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay'; and (3) 'the need to sanction the conduct that is disrespectful to the court and to deter similar misconduct in the future.'" *Perez v. Berhanu*, 583 F. Supp. 2d 87 (D.D.C. 2008) (citing *Webb v. Dist. of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998)). Additionally, "willfulness or at least gross negligence" is required to justify the most severe discovery sanctions. *See Weisberg v. Webster* 749 F.2d 864, 871 (D.C. Cir. 1984).

Here, Plaintiff's conduct has severely prejudiced Defendants by preventing them from reviewing any documentary evidence relating to Plaintiff's damages or alleged defenses to counterclaims. Plaintiff has prejudiced the judicial system because his conduct throughout this case, and particularly with respect to his recalcitrance to provide *any* discovery in response to the instant discovery requests, has burdened the Court. Plaintiff sought, and was repeatedly provided, more than adequate time to produce the required discovery documents and yet the Defendants did not have them as evidence before the close of discovery. Such conduct is

inexcusable. Finally, it is clear to the Court that Plaintiff, who is an experienced lawyer representing himself *pro se*, has acted willfully and with full knowledge that his actions were not in accordance with the Federal Rules and this Court's orders. Plaintiff has been cautioned time and time again of his obligations as a party before this Court. He has repeatedly failed to meet them and openly rebuffed them. Prior attempts to alter Plaintiff's behavior with the lesser sanction of monetary costs and fees have proved fruitless.

### III.     Conclusion

Plaintiff has failed to produce any of the documents requested by Defendants. These documents relate in large part to Defendants' counterclaims and Plaintiff's claims of damages. (*See* Defs.' Mot. at 14-15.) The Court is left with no choice but to grant Defendants' Motion for Sanctions. Plaintiff will be prohibited from testifying to or introducing into evidence any documents in support of his damage claims or in support of his defenses to Defendants' counterclaims.

An Order consistent with this Memorandum Opinion is filed contemporaneously herewith.

Date: March  24th , 2009                                            /s/
                                                            ALAN KAY
                                                            UNITED STATES MAGISTRATE JUDGE