## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

    v.

JUDICIAL WATCH, INC., *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)

### MEMORANDUM OPINION
(June 25, 2009)

Currently pending before the Court is Plaintiff Larry Klayman's ("Klayman") [298]

Motion for Recusal and/or Disqualification, in which Klayman argues that this Court should

recuse itself pursuant to 28 U.S.C. § 455(a). Klayman contends that recusal is warranted because

the Court's rulings in this case, along with the fact that the undersigned was appointed by former

President William J. Clinton, create an appearance of bias against him. Defendants oppose the

motion, arguing that Klayman has failed to set forth sufficient grounds for recusal pursuant to

section 455(a) and that Klayman's motion is an attempt to further delay litigation of the above-

captioned case. Upon searching consideration of Plaintiff's Motion for Recusal and/or

Disqualification, Defendants' Opposition, Plaintiff's Reply, the relevant case law, and the entire

record herein, the Court shall DENY Plaintiff's motion. For the reasons set forth below, the

Court concludes that recusal is neither required nor warranted.

### I.  BACKGROUND

The Court shall assume familiarity with the numerous opinions issued by both this Court

and Magistrate Judge Alan Kay, which set forth in detail the factual background and allegations

of this case, and shall therefore provide only a brief summary of the instant case as is necessary to provide context for resolution of the motion now before the Court.  *See Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 140978 (D.D.C. Jan. 17, 2007); *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 1034936 (Apr. 3, 2007); and *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 1034937 (Apr. 3, 2007) (hereinafter "*Klayman I*").  Defendant Judicial Watch, Inc. is a 501(c)(3) organization formed under the laws of the District of Columbia and headquartered in the District of Columbia.  *Klayman I*, 2007 WL 1034937, *2.  Defendant Fitton is President of Judicial Watch, Defendant Orfanedes is the Secretary and a Director of Judicial Watch, and Defendant Farrell is a Director of Judicial Watch.  *Id.*  Plaintiff Larry Klayman is the self-described founder and former Chairman, General Counsel and Treasurer of Judicial Watch, who resides in and practices law in the State of Florida.  *Id.*  Klayman, an attorney, is currently representing himself *pro se* in this matter.

Klayman's Second Amended Complaint and Judicial Watch's Amended Counterclaim in this action include various legal claims stemming from events that occurred after Klayman left Judicial Watch in September 2003.  *Id.*  Many of these claims arise out of the Severance Agreement entered into by Klayman and Judicial Watch on September 19, 2003.  *Id.*  The Court need not address the specifics of the parties' claims at this time, other than to note that, *inter alia*, Klayman asserts claims against the Defendants under the Lanham Act for unfair competition in the form of false advertising and false endorsements and for breach of contract relating to the Severance Agreement.  2d Am. Compl. ¶¶ 97-106; 115-162.  Judicial Watch asserts counterclaims against Klayman under the Lanham Act for trademark infringement, unfair competition in the form of false advertising and false association, and cybersquatting.  Am.

2

Count. ¶¶ 84-116.

## II.  LEGAL STANDARD AND DISCUSSION

As explained above, Klayman moves to recuse this Court pursuant to 28 U.S.C. § 455(a), which permits a litigant to seek recusal of a federal judge "in any proceeding in which his impartiality might reasonably be questioned."  In assessing section 455(a) motions, the D.C. Circuit applies an "objective" standard: "Recusal is required when 'a reasonable and informed observer would question the judge's impartiality.'"  *S.E.C. v. Loving Spirit Found. Inc.*, 392 F. 3d 486, 493 (D.C. Cir. 2004) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001), *cert. denied*, 534 U.S. 952 (2001))).  Here, Klayman alleges two sources of alleged bias that he contends would cause a "reasonable and informed observer" to question this Court's impartiality.  First, Klayman contends that various rulings issued by the Court in this case create an appearance of bias against him.  Pl.'s Mot. at 2-4.  Second, Klayman argues that, because he was a "strong and controversial advocate" against the Clinton administration, the fact that the undersigned was appointed by former President Clinton fosters an appearance of bias against him.  *Id.* at 4-5.  The Court shall address each allegation in turn.

> A.    *The Court's Rulings are Based Solely on Facts and Evidence in the Record and Would Not Lead a Reasonable and Informed Observer to Question This Court's Impartiality*

Klayman alleges that the Court's rulings in this case have created an appearance of bias against him.  At the outset, the Court notes that although Klayman complains generally of the Court's decisions on several issues, he fails to provide any citations to the specific rulings that he believes are evidence of bias, thereby leaving the Court to speculate as to the particular decisions (or portions therein) of which Klayman complains.  Given that this case was filed more three

3

years ago and has in excess of 300 entries on the public docket, Klayman's failure to properly

cite to the record, as is his obligation, significantly hampered the Court's ability to quickly and

efficiently resolve Klayman's motion to recuse.  Nonetheless, where the Court can discern the

particular rulings at issue from its own independent review of the record in this case, the Court

shall address Klayman's arguments as it understands them.

Before doing so, however, the Court pauses to note that, upon review of Klayman's

motion to recuse, it is readily apparent that most of his complaints regarding the Court's rulings

in this case are simply reduced to his displeasure with the substance of the Court's rulings against

him.  In the three years since Klayman filed his complaint in this matter, this Court has issued

nearly sixty orders in this matter (excluding the more than fifty orders issued by Magistrate Judge

Kay).  Unsurprisingly, not all rulings have been in Klayman's favor.  The case law is clear,

however, that "judicial rulings alone almost never constitute a valid basis for a bias or partiality

motion." *Liteky*, 510 U.S. at 555.  As the Supreme Court has observed, judicial rulings by

themselves "cannot possibly show reliance upon an extrajudicial source; and can only in the

rarest circumstances evidence the degree of favoritism or antagonism required . . . when no

extrajudicial source is involved." *Id.*  Therefore, dissatisfaction with a court's rulings "almost

invariably" provides a proper ground for appeal—***not*** for recusal.  *Id.*  In addition, "opinions

formed by the judge on the basis of facts introduced or events occurring in the course of the

current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display

a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*  Thus, to

the extent Klayman merely complains that the Court has ruled unfavorably against him, without

identifying any improper reliance by the Court on extrajudicial facts or evidence, such

4

complaints are not proper grounds for recusal.  Nonetheless, to ensure that the Court addresses all issues raised by Klayman in his motion to recuse and to satisfy its own independent obligation to recuse itself where its impartiality has been questioned, the Court shall examine the challenged rulings in greater detail below.

> 1.   The Court's Discovery Rulings are Based Solely on the Record and Do Not Provide a Ground for Recusal

First, Klayman, in the instant motion to recuse, primarily focuses on his dissatisfaction with discovery orders issued in this case.  In particular, Klayman sets forth three specific complaints: (a) Klayman denounces the fact that, "[t]o the best of Plaintiff's memory the Court [has] refuse[d] to uphold even one objection" by Klayman to Defendants' discovery requests, Pl.'s Mot. at 3; (b) he disapproves of the decision to permit Defendants to obtain certain discovery from his ex-wife, *id.*; and (c) he protests the decision precluding him from completing certain depositions after the close of discovery, *id.* at 4.  According to Klayman, these rulings together create an appearance of bias on the part of this Court.

> a.   The mere fact this Court has overruled each of Klayman's objections to Magistrate Judge Kay's orders does not, by itself, create an appearance of bias.

To the extent Klayman complains that the Court's orders overruling his objections to Magistrate Judge Kay's discovery rulings create an appearance of bias, the Court finds Klayman's argument to be wholly without merit.  Upon review of Klayman's motion, it is evident that he is simply attempting to reargue the substance of the Court's prior rulings, asserting—as he has throughout this litigation—that Defendants' various discovery requests were "overbroad" and should not have been granted.  *See* Pl.'s Mot. at 3-4.  As explained above,

however, dissatisfaction with a court's rulings provides a proper ground for appeal—not for

recusal. *Liteky*, 510 U.S. at 555. Accordingly, courts in this Circuit have routinely held that a

claim of bias predicated on a court's rulings—and in particular, a court's rulings with respect to

the conduct of discovery—do not, standing alone, warrant recusal. *See, e.g., Liberty Lobby, Inc.*

*v. Dow Jones & Co., Inc.,* 838 F.2d 1287 (D.C. Cir. 1998) (because plaintiff's motions to recuse

"were based entirely upon the district court's discovery rulings in this case, their denial was

clearly proper"), *cert. denied*, 488 U.S. 825 (1988); *Cotton v. Washington Metro. Area Transit*

*Auth.*, 264 F. Supp. 2d 39, 42 (D.D.C. 2003) (claim of bias based on court's discovery rulings did

not warrant recusal).

   Moreover, reference to the record in this case confirms that a reasonable and informed

observer would not question the Court's impartiality on this basis. In the time since the Court's

December 3, 2007 referral of this case to Magistrate Judge Kay for resolution of discovery-

related matters, Magistrate Judge Kay has been called upon to handle a plethora of discovery

disputes, and has done so ably and promptly. In almost every instance, Klayman filed objections

to Magistrate Judge Kay's rulings. *See* Docket Nos. [99], [103], [123], [125], [154], [162],

[172], [173], [175], [176], [203], [215], [254], [255]. As this Court repeatedly advised Klayman,

however, his objections consistently failed to comply with Local Civil Rule 72.2(b), which

requires a party objecting to a magistrate judge's orders to "specifically designate" the parts of

the rulings to which he or she objects and to provide "the basis," *i.e.,* any legal authority, for the

specific objections. *See, e.g.,* Docket No. [167] at 4 (noting that Klayman's objections failed to

comply with LCvR 72.2(b)); Docket No. [183] at 4 (same); Docket No. [262] at 4-5 (same).

Nonetheless, the Court, in its discretion, each time declined to strike Klayman's objections for

noncompliance with the local rules and instead proceeded to the merits of Klayman's objections, to the extent he had in fact set forth any specific arguments regarding the order(s) at issue. After carefully reviewing Klayman's objections, Defendants' oppositions thereto, and the relevant briefings below, as well as the applicable case law and the record as a whole, the Court overruled each of Klayman's objections, finding neither legal nor factual error on Magistrate Judge Kay's part. *See* Docket Nos. [134], [167], [183], [184], [185], [189], 8/7/08 Minute Order, [261], [262]. The record thus demonstrates that each ruling was based solely on the record developed in court, and Klayman has not alleged that these rulings were impermissibly based on any extra-judicial facts or events, *see generally* Pl.'s Mot. Consequently, the rulings do not constitute a valid basis for recusal. *See Karim-Panahi v. U.S. Congress*, No. 03-5186, 2004 WL 1588167, *4 (D.C. Cir. Jul. 14, 2004) (where plaintiff has failed to point "to anything that would suggest that [the Court] has formed an opinion on some basis other than her participation in this case," recusal is inappropriate).

        b.      Klayman's continued dissatisfaction with the Court's decisions permitting Defendants to take discovery of his ex-wife is an insufficient ground for recusal.

Klayman next complains that an appearance of bias arises from the Court's orders "[p]ermitting Defendants to take discovery of his ex-wife." Pl.'s Mot. at 3. As previously explained, Klayman has failed to identify the specific rulings of which he complains or provide any citations to the record. *See generally id.* Defendants' requests for discovery of Klayman's ex-wife, and Klayman's objections to those requests, have been the subject of a number of rulings issued by both this Court and by Magistrate Judge Kay. *See, e.g.,* Docket No. [117];

5/9/08 Min. Order; Docket No. [206]; 7/31/08 Min. Order; 8/7/08 Min. Order.[1]  It is therefore entirely unclear to the Court which of these rulings (or portions thereof) Plaintiff now asserts create an appearance of bias.  For this reason alone, Klayman's arguments on this point are insufficient to warrant recusal, as "[a] judge should not recuse himself based upon conclusory, unsupported or tenuous allegations." *In re Kaminski*, 960 F.2d 1062, 1065, n. 3 (D.C. Cir. 1992) (observing that) (per curiam); *see also Ivey v. Nat'l Treasury Employees Union*, Civ. Act. No. 05-1147, 2008 WL 4091676, *1 (D.D.C. Sept. 4, 2008) ("general and conclusory" statements are insufficient to support a motion for recusal).

However, even setting aside Klayman's failure to adequately support his claim with either factual or record citations and even assuming that he meant to allege that all of this Court's orders relating to discovery of his ex-wife create an appearance of bias, the Court finds that Klayman's argument is wholly without merit.  Once again, it is evident from Klayman's motion that he is simply attempting to re-argue discovery issues that have already been thoroughly litigated.  *See, e.g.,* Pl.'s Mot. at 3 (arguing that "[t]here was absolutely no legal basis to allow discovery into these issues" and that Defendants' discovery requests "lack relevance").  Klayman does not point to any evidence that the Court considered facts or evidence arising from an extrajudicial source, but simply contends that the rulings were wrongly decided.  *See id.* Although the Court shall not repeat herein the entire reasoning underpinning its Orders, the Court

_____

[1] In addition, the Court notes that Klayman also filed a petition for a writ for mandamus with the D.C. Circuit, in part, seeking review of the discovery orders relating to his ex-wife.  *See* Docket Nos. [224-1] and [224-2].  The D.C. Circuit denied Klayman's petition for a writ of mandamus, as well as his subsequent motion for rehearing en banc.  *See In re Klayman*, No. 08-5128 (D.C. Cir. Jul. 25, 2008) (denying Klayman's petition for mandamus) (per curiam); *id.* (D.C. Cir. Sept. 10, 2008) (denying Klayman's motion for rehearing *en banc*) (per curiam).

notes that Klayman himself admitted in his Initial Disclosures that his former wife is "familiar with the facts relating to Klayman's family health insurance benefits, and Mr. Klayman's separation from Judicial Watch." See 5/28/08 Order at 5. Similarly, during his deposition in this matter, Klayman testified that he provided documentation regarding his personal expenses to his ex-wife in her former role as a Judicial Watch employee. *See id.* Furthermore, as the Court observed in its December 3, 2007 Memorandum Opinion and Order granting Defendants' motion to amend their Counterclaim, Defendants did not seek to include expanded allegations concerning Klayman's relationship with his ex-wife until after Klayman amended his own Complaint to include expanded claims regarding the reason for his departure from Judicial Watch. *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 10, 14, n.2 (D.D.C. 2007). The record thus makes clear that Klayman himself is largely responsible for expanding the scope of the instant lawsuit in such a way as to make relevant the requested discovery relating to his former wife.

Regardless, it is clear that Klayman is simply displeased with the Court's discovery ruling, but that alone does not provide a proper ground for recusal. *Liteky*, 510 U.S. at 555. "[I]f disqualification were required 'merely as a result of counsel's disagreement with judicial conclusions reached in the course of litigation, the judicial system would grind to a halt." *Loving Spirit Found.*, 392 F.3d at 494 (quoting *Barnett v. City of Chicago*, 952 F. Supp. 1265, 1269 (N.D. Ill. 1998)). Accordingly, the Court finds that its rulings affirming Defendants' requests to take certain discovery of Klayman's ex-wife do not "constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555.

       c.      The Court's decision to refuse to compel completion of depositions after the close of discovery, where the failure to complete the depositions was solely Klayman's fault, does not warrant recusal.

Klayman also alleges that an appearance of bias arises from the Court's "refusal to allow Plaintiff to complete crucial noticed depositions that were commenced before the close of the discovery deadline and which the Magistrate Judge had said could be completed due to the non-appearance of a court reporter." Pl.'s Mot. at 4. Yet again, Klayman has not identified the specific ruling(s) upon which his allegations are based nor indicate to which of the many depositions in this case he is referring. *See id.* Nonetheless, upon the Court's own independent review of the record, it appears that Klayman is most likely referring to this Court's November 11, 2008 Order, *see* Docket No. [262], in which it affirmed Magistrate Judge Kay's September 23, 2008 Memorandum Order denying Klayman's motion to compel the continued deposition of Susan Prytherch, *see* Docket No. [250]. The Court shall therefore proceed to consider the merits of Plaintiff's allegation based on the understanding that Klayman is referring to the Court's November 11, 2008 Order, notwithstanding his failure to provide the appropriate record citations, as is required.

Upon consideration of the record in this case, the Court concludes that a reasonable and informed observer would not question the Court's impartiality on the basis of its November 11, 2008 Order. In overruling Klayman's objections to Magistrate Judge Kay's September 23, 2008 Memorandum Order, the Court found that Klayman had an opportunity to depose Ms. Prytherch, but failed to complete the deposition before the close of discovery because he had not confirmed the presence of a court reporter and then refused to wait for one to appear. 11/6/08 Order, Docket No. [262], at 5-6. Accordingly, the Court concluded, solely based on the record before it,

that the failure to complete the deposition prior to the close of discovery was entirely Klayman's

responsibility.  *Id.* at 6.  The Court's ruling was thus based on the record developed in court and,

as such, does not constitute a valid basis for recusal.  *See Karim-Panahi*, 2004 WL 1588167, *4

(where plaintiff has failed to point "to anything that would suggest that [the Court] has formed an

opinion on some basis other than her participation in this case," recusal is inappropriate).

Before leaving the subject of Ms. Prytherch's deposition, however, the Court notes that it

is concerned about Klayman's continuing reliance on an inaccurate statement of the facts.

Specifically, in his motion to recuse, Klayman affirmatively represents that he was told by

Magistrate Judge Kay that he could complete the deposition of Ms. Prytherch at a later time.  *See*

Pl.'s Mot. at 4.  However, as Magistrate Judge Kay clearly stated in his September 23, 2008

Memorandum Order, this statement by Klayman is a misrepresentation of the parties' exchange

with the Court.  *See* 9/23/08 Order, Docket No. [250], at 3, n.3 (noting that "Plaintiff asserts in

his Motion that the Court 'ordered orally [in chambers] that [the deposition] would be

concluded," but that such statement "completely misrepresents the parties' exchange with the

Court").  Significantly, this is the ***third*** time Plaintiff has made this same misrepresentation in

filings to this Court—first, in his motion to compel before Magistrate Judge Kay, *see* Docket No.

[240] at 2; then, in his objections to Magistrate Judge Kay's order filed with this Court, *see*

Docket No. [255] at 4; and finally, in the instant motion to recuse.  The Court is troubled by the

fact that Plaintiff continues to mischaracterize the record, despite being twice-advised of the

inaccuracy of such statements.  *See, e.g.*, 9/23/08 Order, Docket No. [250], at 3, n.3

(admonishing Klayman for "completely misrepresent[ing] the parties' exchange with the Court");

11/6/08 Order, Docket No. [262], at 6 (rejecting as inaccurate Klayman's unsupported

characterization of his exchange with Magistrate Judge Kay).  The Court advises Klayman to refrain from repeating such misrepresentations in any future filings.

> 2.    The Court's Order Denying Klayman's Motion for an Extension of Time is Based Solely on the Record and Does Not Contain Any Language That Would Cause a Reasonable Observer to Question the Court's Impartiality

Klayman next argues that the Court's order denying his request for an extension of time in which to file his consolidated opposition to Defendants' motions for summary judgment creates an appearance of bias.[2] *Id.* at 2-3.  Klayman appears to complain both about the substance of the Court's ruling—*i.e.*, the fact that the Court denied Klayman's request for an extension of time—as well as the Court's tone as expressed in the ruling. *Id.*  As to the former, the Court has already explained that, under D.C. Circuit case law, Klayman's displeasure with the Court's ruling is an insufficient ground for recusal. *See supra* p. at 9.  The Court therefore easily dispenses with Klayman's assertion that the decision itself creates an appearance of bias.

The latter claim, however, will be addressed as Plaintiff alleges that the Court "mocked" him and "suggest[ed] he was lying to the Court, without basis to infer such allegations." *Id.* at 3.  Klayman, however, has—once again—failed to identify any specific orders (or portions thereof) that allegedly contain such language.  Moreover, the Court, upon its own thorough review of the relevant rulings, cannot locate any language that could possibly be construed by a reasonable and informed observer as mocking Plaintiff's injuries or accusing him of lying.  Although the Court's orders denying Klayman's requests for an extension of time contain some language that may

---

[2] To ensure the accuracy of the record, the Court clarifies that Klayman's motion for extension of time, as initially filed on December 18, 2008, requested a five-business day extension, *see* Docket No. [281], and not a "one business day extension of time" as Klayman represents in his motion to recuse, Pl.'s Mot. at 2.

reasonably be construed as critical of Klayman's repeated failure to timely comply with the

Court-ordered deadlines in this case, such remarks do not support recusal.  As the Supreme Court

as observed, "judicial remarks . . . that are critical or disapproving of . . . counsel, the parties, or

their cases, ordinarily do not support a bias or partiality charge."  *Liteky*, 510 U.S. at 554.

Rather, "opinions formed by the judge on the basis of facts introduced or events occurring in the

course of the current proceedings . . . do not constitute a basis for a bias or partiality motion

unless they display a deep-seated favoritism or antagonism that would make fair judgment

impossible."  *Id.* at 555.  It is only when judicial remarks "reveal such a high degree of favoritism

or antagonism as to make fair judgment impossible" that recusal is warranted or necessary.  *Id.*;

*cf. United States v. Roach*, 108 F.3d 1477, 1484 (D.C. Cir. 1997) ("In a controversial, sharply

contested case presided over by an experienced district judge, strongly stated judicial views

rooted in the record should not be confused with judicial bias."), *vacated in part on other*

*grounds*, 136 F.3d 794 (D.C. Cir. 1997).   In this case, even if comments made by the Court may

reasonably be construed as "disapproving" or "critical" of Klayman's well-documented pattern of

delay in this case, such comments solely reflect the Court's opinions formed on the basis of facts

and events occurring in the course of this litigation and do not suggest such a high degree of

antagonism as to create an appearance of impartiality.

Although the Court need not belabor the point by repeating herein the entire tortured

history of this case, which has been repeatedly set forth elsewhere by this Court and by

Magistrate Judge Kay, even a brief review of the record demonstrates Klayman's repeated failure

to comply with the Court's deadlines in this matter.  *See, e.g.,* 5/12/08 Order, Docket No. [166]

(describing Klayman's efforts to "stonewall" and "obstruct[]" discovery in this matter); 3/24/09

Order, Docket No. [301] (describing the "voluminous number of filings in this case resulting

from Klayman's obstinance at every stage of this case"). Indeed, Klayman has filed more than a

dozen requests for extensions of court-ordered deadlines in this matter. *See, e.g.,* Docket Nos.

[17], [20], [34], [100], [112], [136], [148], [234], [237], [278], [283], [287], [306]. The Court

notes that it has approved many of these previous requests for extensions of time. Indeed,

excluding those requests for an extension of time of which Klayman now complains, the Court

has granted his requests for an extension of time in all but one instance.

Given the many requests for an extension of time in this case, when it came time to set a

schedule for briefing dispositive motions, the Court specifically asked the parties to suggest a

schedule with which they would be able to comply. The Court thereafter adopted the schedule

agreed to and suggested by the parties, which afforded both parties a generous month and a half

to file simultaneous opening briefs and more than a month to file simultaneous oppositions. *See*

Scheduling and Procedures Order, Docket No. [239]. At the September 16, 2009 status hearing,

during which the schedule for summary judgment was set, the Court repeatedly advised the

parties that, given the liberal nature of the dispositive briefing schedule, excuses regarding work

load and other such issues would not be looked upon favorably absent good cause.[3]

---

[3] Although the Court subsequently agreed, in its discretion, to reset the schedule twice upon consent motion by Defendants, the Court emphasized that the extension benefitted both parties by continuing the deadline for filing the parties' simultaneous cross-motions for summary judgment, as well as oppositions and replies, by more than three weeks. *See* 10/22/08 Min. Order; 11/20/08 Min. Order. Accordingly, both Klayman and Defendants were working under the same deadlines, which afforded the parties more than two months to file their opening motions and another four weeks to file their respective oppositions. Although Klayman now argues that four weeks was insufficient time in which to respond to Defendants' motions for summary judgment, the Court notes that, although Defendants filed five separate motions for summary judgment, the motions largely contain the same principal arguments repeated almost verbatim, and Defendants also filed a single joint statement of material facts. Furthermore,

On December 16, 2008, Klayman filed a motion for an extension of time in which to file his opposition, asserting that he needed additional time because his secretarial staff had been ill and because he had been injured in a car accident six weeks previously. *See* Docket No. [278]. Although Klayman attached an emergency hospital bill for services from November 6, 2008, the bill showed only that Klayman had been treated and released on the same day, after receiving certain diagnostic scans. *See id.*, Att. 1. Klayman provided no support for his assertion that the accident continued to affect his ability to perform legal work more than a month and a half later, and Defendants pointed out that he was continuing to perform legal work in other cases. *See generally id.* Given Klayman's pattern of delay in this case, the Court, in its discretion, concluded that he had "not shown sufficient reason for the extension of time requested," particularly given that "this Court has repeatedly counseled the parties that no further extensions to the dispositive motions schedule would be granted without good cause." 12/18/08 Min. Order.

Thereafter, on December 22, 2008, Klayman filed a second request for an extension of time, to which he attached a note from his doctor. *See* Docket No. [283]. As the second motion simply repeated Klayman's previous request for an extension of time, the Court construed the filing as a motion for reconsideration, which it ultimately denied. 12/23/08 Min. Order. In so doing, the Court observed:

---

Klayman's representation that Defendants' motions compromise "several thousand pages" is inaccurate. Pl.'s Mot. at 2. Defendants' joint statement of facts contains roughly 1200 pages of material and each motion is less than 30 pages in length. *See* Docket Nos. [265], [266], [267], [268], [269], [270]. Although the materials attached as exhibits to Defendants' joint statement are somewhat bulky, Defendants' statement—unlike Klayman's—provided pin cites for all record citations, thereby considerably easing review of the relevant materials. *See* Defs.' Jt. Stmt., Docket No. [265-1]; 12/01/08 Min. Order (striking Klayman's Statement of Material Facts for failure to "include precise citations to the portion of the record upon which Plaintiff relies for each factual statement," but permitting him to re-file an appropriate Statement).

Although Plaintiff now submits a doctor's note to the Court, Plaintiff has not demonstrated that he is unable to work. As Defendants demonstrated in their original opposition, Plaintiff has—since the date of his November 6, 2008 accident—continued to perform legal work in several civil actions. Indeed, Plaintiff has filed no less than four separate submissions with this Court regarding his current request for an extension of time, time which could have been devoted to preparing the substantive opposition for which he now seeks an extension. The Court is therefore not persuaded that Plaintiff has shown good reason for reconsideration of its previous minute order denying his request for an extension of time, particularly given that the dispositive motions schedule for both parties has been twice reset and that the Court has repeatedly advised the parties that no further extensions shall be granted.

*Id.*

Klayman was therefore well aware, in ***advance*** of the deadline for filing his oppositions, that the Court had not agreed to extend the deadline.  Nonetheless, Klayman failed to timely file his consolidated opposition and response statement.  Instead, he waited until after the close of business on the day his opposition was due to again re-file, for the third time, a request for an extension of time.[4]  *See* Docket No. [287].  Klayman subsequently filed an untimely opposition and response statement, one and two business days after the court-ordered deadline, respectively. *See* Docket Nos. [291], [292].  In essence, then, Klayman ignored the Court's orders and attempted to grant himself the very same extension of time the Court had twice denied.

Therefore, by Order dated December 30, 2008, the Court denied Klayman's third attempt to obtain an extension of time.  *See* Docket No. [293].  In so doing, the Court observed that, as

---

[4] Although Klayman did not timely file any substantive opposition or response statement, he did submit four substantial filings containing approximately 40 different exhibits.  *See* Docket No. [284] (containing Exhibit A); Docket No. [285] (containing a duplicate Exhibit A as well as Exhibits 1 - 20); Docket No. [286] (containing duplicate copies of Exhibit A and Exhibits 1 - 20); Docket No. [288] (containing Exhibit B and Exhibit C, the latter of which includes a 17–page substantive affidavit by Klayman as well as approximately 20 separate communications between and/or relating to Klayman and Defendants).

demonstrated by Defendants, Klayman had continued to perform legal work—both in this case

and in several other civil actions—since he was involved in the vehicle accident almost two

months prior.  *See* 12/30/08 Order, Docket No. [293], at 3-4 (observing that, in the intervening

time, Klayman had filed numerous pleadings with the Court in this case and had also made no

less than ten separate filings in four different actions, including filings for two new cases in

which Klayman is the party plaintiff and is representing himself *pro se* as in this case).

Significantly, Klayman did not dispute that he had continued to actively perform legal work

during the intervening two months since the accident.  *See* Docket No. [281], at 1-2.  The Court

therefore concluded that, in light of the evidence on the record in this case and the unrebutted

evidence provided by Defendants regarding Klayman's ongoing legal work in several other civil

actions, it "remain[ed] unpersuaded by Plaintiff's third request for an extension of time."

12/30/08 Order at 4. Accordingly, the Court refused to "condone Plaintiff's repeated disregard

for court-ordered deadlines by permitting Plaintiff to late-file his oppositions without good

cause."  *Id.*[5]  The Court therefore ordered that Plaintiff's untimely Opposition, Docket No. [291],

and untimely Response to Defendants' Statement of Material Facts, Docket No. [292], be

stricken.  *See id.*

        Thus, it is clear that the Court's rulings denying Klayman's request for an extension

expressed only its conclusion that, in light of the record evidence demonstrating Klayman's

---

        [5] The Court notes that, on January 5, 2009, Klayman filed his now-fourth request for an
extension of time.  *See* Docket No. [294].  The Court denied this request by minute order dated
January 1, 2007 as Klayman had not provided an additional facts or legal authority supporting his
request.  *See* 1/7/09 Min. Order ("For the reasons set out in the Court's December 18, 2008
Minute Order, December 23, 2008 Minute Order, and December 30, 2008 293 Order, the Court
hereby DENIES 294 Plaintiff's FOURTH request for an extension of time in which to file his
oppositions to Defendants' motions for summary judgment.").

continued ability to perform legal work both in this case and in several other cases, Klayman had

not shown good cause to justify yet another extension of time.  The Court never questioned that

Klayman was involved in a car accident on November 6, 2008, and in no way "mocked"

Klayman's alleged injuries.  This unfounded allegation to the contrary—made without citation to

any record support—is wholly unjustified.  *Cf. Loving Spirit Found.*, 392 F.3d at 494

(admonishing counsel for including false, unsupported statements in a motion to recuse).  The

Court therefore concludes that recusal on the basis of its rulings denying Klayman's request for

an extension of time in which to file his opposition and response statement is neither warranted

nor appropriate.

> 3.      The Fact that the Court Denied Klayman's Last Minute Request to Appear
>         by Telephone at the September 16, 2009 Status Hearing Does Not Support
>         Recusal

Klayman also complains of the Court's decision to require Klayman to make an

appearance in person, rather than by telephone, at a status conference in this case.  *Id.* at 4.

Klayman speculates, without any record citations or other support, that the Court denied his

request to appear by telephone as an "apparent punishment."  *Id.*  Although Klayman has—once

again—failed to cite the specific ruling he challenges, the Court understands that he refers to its

September 15, 2008 Minute Order, in which the Court denied his Motion to Appear by

Telephone, Docket No. [236].  The Court explained its decision as follows:

> The discovery period in this case has ended, although a few matters remain
> outstanding that require the Plaintiff's participation. At the September 16, 2008 Status
> Conference, the Court will be discussing how the litigation will be proceeding,
> including setting various dates. A telephone conference call does not lend itself easily
> to such a discussion, as the issues that need to be addressed require the participation
> of all counsel and parties. Further, the Court notes that it set the September 16, 2008
> status date at the June 19, 2008 Status Conference in this matter (*i.e.*, approximately

> three months ago). Plaintiff waited until one business day before the scheduled
> conference to move for leave to appear telephonically and, other than noting that his
> assistant had been absent for the preceding week, has provided no justification for
> allowing the relief he seeks.

9/15/08 Min. Order.  Accordingly, upon review of the record, it is readily apparent that there is

no support for Klayman's bald assertion that the Court denied his request as a "punishment."

Klayman's unfounded allegation is therefore wholly insufficient.  *See In re Kaminski*, 960 F.2d at

1065, n. 3 ("unsupported or tenuous allegations" do not warrant recusal).  Moreover, the Court

finds that no reasonable and informed observer would question the judge's impartiality simply on

the basis of this ruling.  As described in the above-quoted language, the Court's decision was

based on solely administrative concerns as well as Plaintiff's failure to timely file his request.  In

light of these considerations, the Court concludes that recusal based upon this ruling is not

warranted.

    4.     <u>Klayman's Allegation that the Court has "Written Derisively" of Him
Finds No Support in the Record and is Wholly Unwarranted</u>

Finally, although Klayman has not cited to any specific ruling (or portion thereof), he also

complains that the Court has "written, derisively, that Plaintiff is trying to delay this case."  Pl.'s

Mot. at 4.  At the risk of sounding overly repetitive, the Court notes that Klayman has not

provided any factual support or citations to the record to sustain this claim.  *See id.*  Rather, once

again, Klayman's "statements are, at best, general and conclusory," and contain only "bald

allegations," which are insufficient to warrant recusal.  *Ivey,* 2008 WL 4091676, *2; *cf. In re

Kaminski*, 960 F.2d at 1065, n. 3.

Moreover, upon the Court's own independent review of its many orders and

accompanying memorandum opinion issued in this case, the Court is satisfied that Klayman's

unsupported allegations are entirely without merit.  Although the Court has, on occasion,

expressed its disapproval of Klayman's well-documented and repeated failures to comply with

court-ordered deadlines, the Court has done so using neutral, respectful language that no

reasonable observer would characterize as "derisive" of Klayman.  Such comments do not

warrant recusal. As explained above, "judicial remarks . . . that are critical or disapproving of . . .

counsel, the parties, or their cases, ordinarily do not support a bias or partiality charge" unless

they "derive[] from an extrajudicial source" or "reveal such a high degree of favoritism or

antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555.  The Court's rulings

in this case have been based solely on the record before it and contain no language that would

lead a reasonable and informed observer to conclude that fair judgment is impossible.

Accordingly, the Court concludes that recusal based on its rulings is both unwarranted and

unnecessary.

> B.     *Recusal Based on the Undersigned's Appointment by Former President Clinton*
>        *is Not Warranted*

Finally, Klayman argues that recusal is necessary because the undersigned was appointed

by former President Clinton, against whom "Plaintiff was a strong and controversial advocate."

Pl.'s Mot. at 4-5.  As Klayman cites no facts or evidence beyond the simple statement that the

undersigned was appointed by the Clinton administration, it is clear that his argument is

predicated solely on the theory that appointment by a particular president, without more, is

sufficient to create an appearance of impartiality.  This argument is nonsensical.  The instant

lawsuit has absolutely nothing to do with former President Clinton or with his administration.

According to this theory, all judges who were appointed during former President Clinton's eight

years in office would be required to disqualify themselves from any lawsuit—regardless of the

subject matter or parties involved—that may be brought by Klayman anywhere in the United

States, or indeed, by any party who claims to have been a vocal critic of the Clinton

administration.

Klayman himself provides no legal authority for support of this position, and for good

reason—the case law is clear that recusal is not warranted in this circumstance.  *See Karim-*

*Panahi*, 2004 WL 1588167, * 4 (affirming lower court's denial of motion for recusal based on

allegations that the judge was "biased because of her 'political-religious connections' and her

alleged loyalty to those who selected, confirmed and appointed her"); *see also MacDraw, Inc. v.*

*CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998), *cert. denied*, 525 U.S. 874 (1998)

(Plaintiff's[6] allegation that "a judge is not impartial solely because an attorney is embroiled in a

controversy with the administration that appointed the judge" is insufficient grounds for recusal).

As the Second Circuit has persuasively stated,

> Judges generally have political backgrounds to one degree or another but must be
> presumed, absent more, to be impartial.  At least in the federal system, judges
> separate themselves from politics when going on the bench, and their life tenure
> reduces any felt reliance on political patrons.  Indeed, a suggestion of partiality based
> on the appointing administration may often be a double-edged sword.  If a
> Democratic appointee's impartiality toward lawyers publicly identified as active
> Republicans may be questioned, a Republican appointee's impartiality toward
> lawyers' adversaries might similarly be questioned on the ground that a Republican
> judge might favor the Republican lawyers.

*MacDraw*, 138 F.3d at 38.  Indeed, courts have held that recusal is not warranted even when the

President responsible for nominating the judge is actually a ***party*** to the litigation.  *See, e.g., In re*

---

[6] The Court notes that Klayman was counsel of record for Plaintiff in this case.  *See
MacDraw*, 138 F.3d at 35.

*Executive Office of President*, 215 F.3d 25, 25 (D.C. Cir. 2000) ("Hearing a case involving the

conduct of the President who appointed me will not create in reasonable minds, with knowledge

of all relevant circumstances that a reasonable inquiry would disclose, a perception that [my]

ability to carry out judicial responsibilities with integrity, impartiality, and competence [would

be] impaired.") (internal citation and quotation marks omitted).  *Cf. Reddy v. O'Connor*, 520 F.

Supp. 2d 124, 128 (D.D.C. 2007) (JDB) (in case involving Chief Justice John Roberts,

concluding that "no reasonable and informed observer would question the impartiality of the

undersigned based on the Chief Justice's appointment of the undersigned [Judge John D. Bates]

to the [Foreign Intelligence Surveillance Court].").  Accordingly, it is clear that the mere fact that

the undersigned was appointed by the former Clinton administration—where former President

Clinton is neither a party to or otherwise involved with this lawsuit—does not warrant or require

recusal in the instant case.[7]

    The Court therefore concludes that recusal is neither warranted nor required, whether his

claims of bias are examined singly or as a whole.  Accordingly, Klayman's allegation that recusal

---

    [7] The Court notes that Klayman also alleges that recusal is warranted because the
undersigned's spouse, also a lawyer, defended a secret service agent who was allegedly
"enmeshed in the Monica Lewinsky/Clinton scandals during the 1990s."  Pl.'s Mot. at 4-5.
Klayman—once again—provides absolutely no citation to any legal support for his claim that
recusal is warranted and necessary where, a decade or more ago, the presiding judge's spouse
represented an individual, who is not a party to the instant litigation, in a matter wholly unrelated
to the current lawsuit.  Moreover, Klayman alleges no financial or personal concerns implicated
by the representation nor provides any facts or evidence that would cause a reasonable and
informed observer to question this Court's impartiality.  *Cf. Microsoft Corp. v. United States*,
530 U.S. 1301, 1301 (2000) (order by Chief Justice William H. Rehnquist denying motion to
recuse where his son's law firm represented a party but his personal and financial concerns were
unaffected).  As the D.C. Circuit has counseled, "[a] judge should not recuse himself based upon
[such] conclusory, unsupported [and] tenuous allegations."  *See In re Kaminski*, 960 F.2d at
1065, n. 3.

is warranted or that an appearance of bias against him has been created because of the Court's

rulings in this case, along with the fact that the undersigned was appointed by former President

William J. Clinton, completely lack merit.  Moreover, the Court is satisfied, upon its own

independent review of the record, that no reasonable and informed observer would question this

Court's impartiality.  Klayman's motion seeking to have this Court recuse itself pursuant to 28

U.S.C. § 455(a) is therefore denied.

## IV. CONCLUSION

For the reasons set forth above, the Court shall DENY Plaintiff's [298] Motion for

Recusal and/or Disqualification.  An appropriate Order accompanies this Memorandum Opinion.

Date:   June 25, 2009


_____*/s/*_____

COLLEEN KOLLAR-KOTELLY
United States District Judge