| Judge Koller-Kotelly's Facts | Actual Facts |
|---|---|
| Importantly, while Plaintiff's job duties occasionally require her to perform her work duties in the field, the record indicates that Plaintiff has always been assigned to the Washington, D.C. duty station; there is no indication that Plaintiff has been detailed to any other office location nor is there any evidence that she has been permitted to work remotely from another location for any extended period of time. [Opinion p. 7] | See 3rd Declaration of Sataki:<br><br>¶ 17: "Contrary to Susan Jackson's false declaration, not only do I NOT need constant supervision for the job functions I normally performed at PNN, during my time at the PNN I performed my work very independently and with very minor supervision from my superiors. In fact, quite often I voluntarily assisted fellow co-workers with the performance of their duties. I previously submitted DVD videos of many of the packages I have done for VOA, in which I wrote the script, edited and produced them. I am also submitting as Exhibit EE with this, my third sworn declaration, DVDs of videos of my live, on air appearances on VOA, in which I was a co-host, anchor and did much more than read emails, as Susan Jackson falsely stated in her declaration. I also am submitting a video of an interview I did in Sweden, when I was live by telephone reporting on an international event."<br><br>¶ 19: Susan Jackson herself wanted me to do packages from LA, as emails I previously filed with the court show. In these emails, Susan Jackson talks about my getting more training, which although I did not need, I got – so this is not an issue.<br><br>¶ 24 As stated in my earlier declarations, prior to the incidents leading to this lawsuit, PNN was in fact considering sending me to Los Angeles to prepare and report back with as many as five interview packages a month.<br><br>¶ 25 I have been to the VOA office in Los Angeles, and I have talked to the VOA employees and contract workers at that office. I am aware that if permitted to work from the Los Angeles office, I can perform essentially all of my job functions without defendants having to provide any additional equipment for my benefit. The equipment is already there and several other contractors some of whom |

1

| **Judge Koller-Kotelly's Facts** | **Actual Facts** |
|---|---|
|  | objectively have less experience then I do, use the same equipment to independently record work at the available space at the Los Angeles office of the VOA and report it back to Washington, D.C. |
| While Plaintiff disputes various statements contained in the Jackson Declaration, the Court emphasizes that she has not disputed the accuracy of her job duties description provided in Ms. Jackson's declaration nor provided any evidence on the record that would create a material issue of fact as to Plaintiff's present job duties as an International Broadcaster. Indeed, the Court observed that there was no dispute that Ms. Jackson accurately described Plaintiff's job duties in its prior Memorandum Opinion denying Plaintiff's request for a temporary restraining order, Sataki, 2010 WL 2195799, at *2, n. 4, and Plaintiff has not argued that this particular finding was in error. Moreover, as explained above, Plaintiff's general assertion, made without specific evidentiary support, that Ms. Jackson, like all of Defendants' declarants, has a "reason and motive to lie," Pl.'s Supp. Reply at 4, is insufficient to create a dispute of material fact as to the accuracy of her description of Plaintiff's job duties. [Opinion, P. 7, foot note] | Sataki's 3rd Declaration:<br><br>¶ 17  "Contrary to Susan Jackson's false declaration, not only do I NOT need constant supervision for the job functions I normally performed at PNN, during my time at the PNN I performed my work very independently and with very minor supervision from my superiors. In fact, quite often I voluntarily assisted fellow co-workers with the performance of their duties. I previously submitted DVD videos of many of the packages I have done for VOA, in which I wrote the script, edited and produced them. I am also submitting as Exhibit EE with this, my third sworn declaration, DVDs of videos of my live, on air appearances on VOA, in which I was a co-host, anchor and did much more than read emails, as Susan Jackson falsely stated in her declaration."<br><br>¶ 19: A simple review of these DVDs of my independent work will evidence that unlike what defendants claim, I am capable of working independently from the Los Angeles office. |
| PNN does not currently have any full-time employees in Los Angeles nor does it perform any on-air work in Los Angeles. Id. ¶ 8. Plaintiff does not dispute this nor has she offered any evidence to contradict Defendants' sworn assertion that PNN does not have any full time employment positions available at VOA's office in Los Angeles. Similarly, there is no evidence in the record indicating that any full-time PNN employee assigned to PNN's Washington, D.C. office has ever been permitted to work remotely from VOA's Los Angeles office for an extended period of time. [ opinion, P. 8] | Sataki's 3rd Declaration:<br><br>¶ 21: At the current time there is at least one full time contract worker at the Los Angeles office who does as many as 21 assignments a month for the VOA office in D.C. |

2

| **Judge Koller-Kotelly's Facts** | **Actual Facts** |
|---|---|
| Although Plaintiff generally asserts that many of VOA's employees "telecommute to 5 work from all around the nation on a regular basis," Pl.'s Reply at 19-20, Plaintiff has not proffered any evidence that any PNN employee assigned to the Washington, D.C. office has been permitted to work remotely from the VOA's Los Angeles office for an extended period of time.  Moreover, Plaintiff's sole support for her assertion that VOA employees regularly telecommute  is the testimony of AFGE Local 1812 President Timothy E. Shamble. See Pl.'s Reply at 20 & Ex. B (Second Declaration of Timothy E. Shamble). Importantly, however, Mr. Shamble does not indicate that any PNN employees have previously been permitted to relocate to or work from the VOA office in Los Angeles, see generally id. Indeed, Mr. Shamble now concedes that he "do[es] not personally know of any VOA employees who have been relocated or transferred to the Los Angeles office of the VOA." Pl.'s Supp. Mem. in Support of Mot., Docket No. [44], (hereinafter, "Pl.'s Supp. Mem."), Ex. DD (Third Declaration of Timothy E. Shamble) (hereinafter, "Third Shamble Decl."), ¶  5. Accordingly, even accepting Mr. Shamble's statements, there is no evidence in the record that PNN employees, like Plaintiff, who are stationed in Washington, D.C., have previously been permitted to work remotely from the VOA office in Los Angeles. [ opinion, Pp. 8-9] | Sataki's 3rd Declaration:<br><br>¶24 As stated in my earlier declarations, prior to the incidents leading to this lawsuit, PNN was in fact considering sending me to Los Angeles to prepare and report back with as many as five interview packages a month.<br><br>¶ 21: At the current time there is at least one full time contract worker at the Los Angeles office who does as many as 21 assignments a month for the VOA office in D.C.<br><br>Tim Shamble's 2nd Declaration:<br><br>¶2 I am  aware of several occasions in which the agency has allowed VOA employees to work at locations other than the VOA headquarters in Washington, D.C. The Agency routinely moves positions from one Division to another.  I am not aware of there being any bar to Agency doing this.  There does not seem to be any bar to moving positions from one location to another other than paying the employee appropriately based on the locality pay.<br><br>¶3: The Persian News Network (PNN) has a physical presence in the Los Angeles office of VOA, where it does broadcasts, packages and other network related work for PNN. Indeed, it has used and is using contractors hired by PNN in this office.<br><br>Shamble recounts several examples of PNN employees at the Washington, D.C. PNN office who have been allowed to relocate to or work from New York, see id. ¶¶ 4-6<br><br>BUT ¶5 "I not personally know of any VOA employees who have been relocated or transferred to the Los Angeles office of the VOA." |
|  |  |

3

| Judge Koller-Kotelly's Facts | Actual Facts |
|---|---|
| Finally, the Court notes that in deciding to place Plaintiff on LWOP, Defendants denied Plaintiff's request to be placed on paid administrative leave. Defendants indicate that Plaintiff's request was denied because she was found to be ineligible for paid administrative leave Pursuant to BBG policy, administrative leave is always paid leave that is not charged to 9 or taken from an employee's balance of annual or sick leave. See Second Grace Decl. ¶ 2. First Grace Decl. ¶ 6. Pursuant to BBG practice and policy, administrative leave is generally only used for court leave; labor organization activities; physical examinations when ordered by the agency; injury or illness in the performance of duty; civil activities, such as voting; conferences and conventions when attendance is ordered by the head of the agency; civil defense activities; medical examinations for enlistments in the armed forces; and attendance at funerals of relatives killed in the line of duty. Second Grace Decl. ¶ 2. Although there is discretion in granting administrative leave, BBG generally follows its policy and grants administrative leave only in the limited circumstances previously described. Id. BBG explains that, pursuant to this policy, it denied Plaintiff's request for administrative leave because her request "does not fall within any of the[se] appropriate uses of administrative leave" and "[i]t is not the agency's policy or practice . . . to place administrative employees on administrative leave based solely on unproven allegations of sexual harassment." First Grace Decl. ¶ 6; see also Second Grace Decl. ¶ 6 ("Employees who file administrative complaints of sexual harassment and/or retaliation in the workplace typically are not placed on administrative leave."). [Opinion p. 16-17] | Susan Jackson's declaration supports Sataki's position<br><br>BBG practice and policy handbook states that: administrative leave is generally only used for court leave; labor organization activities; physical examinations when ordered by the agency; **injury or illness in the performance of duty**; civil activities, such as voting; conferences and conventions when attendance is ordered by the head of the agency; civil defense activities; medical examinations for enlistments in the armed forces; and attendance at funerals of relatives killed in the line of duty. [See Second Grace Decl. ¶ 2.; see also Sataki's Mot. at 15; see also Pl.'s Supp. Reply at 6.] |
| While Plaintiff does not now seek an order requiring Defendants to place her on administrative leave as part of her request for interim injunctive relief, see Am. Compl. at 18-19, she does repeatedly point to Defendants' decision denying her | 17<br>Sataki's prayer in the original complaint requests that Defendants "Pay Plaintiff Sataki immediately her paychecks and money that is due to her and which has been" |

4

| **Judge Koller-Kotelly's Facts** | **Actual Facts** |
|---|---|
| administrative leave as an example of their allegedly discriminatory and unlawful behavior towards her. [Opinion p. 17] | |
| Plaintiff has not argued, much less shown, that she is presently receiving treatment from a physician authorized by BBG to handle workplace injuries. Moreover, as explained by Defendants, this section is intended to apply to employees who have been injured in the performance of their duties and who intend to seek workers' compensation benefits. Second Grace Decl. ¶ 4. [Opinion p. 17] | The Court accepts Defendants statement though it does not provide any basis or reference for this policy. Plaintiff has been seeing physicians authorized under her Government Blue Cross/Blue Shield insurance and the Court has accepted the medical reports as uncontested by BBG |
| Plaintiff makes much of the fact that Defendants have placed her alleged harasser on administrative leave pending completion of the investigation into Plaintiff's allegations of harassment. BBG asserts that the decision to place Plaintiff's co-worker on administrative leave is consistent with the Office of Personnel Management's guidance indicating that "[a] supervisor may use administrative leave to keep an employee away from the worksite to ensure the safety of employees while conducting further investigation and deciding a course of action." First Grace Decl. ¶ 5. In this case, BBG determined that "[i]n order to ensure the safety of other female employees while the agency investigates the[] extremely serious charges [made by Plaintiff], the agency appropriately used administrative leave." Id. ¶ 6. Plaintiff has not offered any evidence to indicate that Ms. Grace has misstated or mischaracterized the applicable policies on administrative leave. In addition, Defendants recently advised the Court that the agency's Office of Human Resources has completed its investigation into Plaintiff's allegations and has determined that the co-worker at issue is not a safety risk to other employees. Second Grace Decl. ¶ 6. He has therefore returned to the workplace. [Opinion p. 18] | The Grace declaration supports Sataki's position

BBG practice and policy handbook states that: administrative leave is generally only used for court leave; labor organization activities; physical examinations when ordered by the agency; **injury or illness in the performance of duty**; civil activities, such as voting; conferences and conventions when attendance is ordered by the head of the agency; civil defense activities; medical examinations for enlistments in the armed forces; and attendance at funerals of relatives killed in the line of duty. [See Second Grace Decl. ¶ 2.; see also Sataki's |
| | |

5

| **Judge Koller-Kotelly's Facts** | **Actual Facts** |
|---|---|
| Plaintiff would have reported directly to and been supervised by Central News Division staff. Id. The Central News Division's office does not share space with PNN, and the detail was therefore intended to separate Plaintiff from the PNN co-worker whom she alleges sexually harassed and assaulted her as well as her PNN supervisors whom she claims retaliated against her. Id. [Opinion p. 19] | See Pl.'s Reply at 13, n. 1; see also Third Sataki Decl. ¶¶ 2-10.<br><br>¶7 More importantly, I am intimately familiar with the building and the facilities where the CND and Persian News Network ("PNN") are located.<br><br>¶8. If I were to work at the CND, there is a great likelihood that on a daily basis, likely multiple times a day, I would come into contact with the very defendants who have caused me significant trauma by sexually harassing, discriminating and retaliating against me for my personal and political beliefs as well as for reporting my sexual harasser and for exposing defendant's failure to comply with the mission Congress entrusted them with. Moreover, Mehdi Felahati, my harasser is back at work in this building!<br><br>Sataki's 3rd Declaration:<br><br>¶ 9: The CND is in the same building as the PNN. CND and PNN employees use the same recording studios and facilities to record and report segments of news. The jointly used studio is inside the CND.<br><br>¶10: CND and PNN employees use the same elevators and staircases, rest areas, entrance and exit and cafeteria; also many CND and PNN employees use the same restaurants and facilities near the building around breakfast, lunch and dinner times. |
| Contrary to Plaintiff's concerns, however, the record indicates that the detail to the Central News Division would have permitted Plaintiff to continue reporting on Persian-related issues and would not have limited Plaintiff to reporting only on Arabic news stories. See, e.g., Pl.'s Mot., Ex. 11 (May 12, 2010 Letter from Donna S. Grace to Plaintiff) (indicating that under the detail to the Central News Division, Plaintiff "would continue to work on Iran-related news stories"); Brady Decl. ¶ 3 (indicating that | Sataki's 3rd Declaration:<br><br>¶5 In addition to being an English language position, the position which Defendants proposed for me at the CND relates to general reporting in the Arab world. I am not and was not hired to be an expert in Arabic politics or culture. I was hired for the Persian News Network as a Farsi speaker.<br><br>¶6 Besides there being a language barrier, because I do not speak Arabic at all, Arabs and |

6

| **Judge Koller-Kotelly's Facts** | **Actual Facts** |
|---|---|
| packages produced by Plaintiff at the Central News Division would be made available for all of the language services of VOA, including PNN). Although the evidence in the record as to Plaintiff's ability to speak English is less clear, the Court accepts, for purposes of the instant Memorandum Opinion, Plaintiff's present assertion that she cannot fluently speak English. There is also no indication that the assignment to the Central News Division requires a knowledge of Arabic; | Persians each have very strong and conflicting cultures. I am worried that my Persian background will prevent Arab interviewees from successfully opening up to me when I do not understand the culture, do not speak the language, and have a Persian background that may be disliked by Arab interviewees. In addition, at the CND there is limited to no reporting on any Iran related issues. |
| Plaintiff initially raised the issue of her fluency in English in her pleadings filed in support of her request for a temporary restraining order. She failed at that time, however, to provide any evidence in support of her position that she lacked sufficient fluency in English. See Sataki, 2010 WL 2195799, *5 (observing that Plaintiff's assertion that she lacks fluency in English was "made only in Plaintiff's pleadings, and there is no evidence to support this claim"). To the contrary, the only evidence then in the record "indicate[d] that Plaintiff is fluent in English." Id. (citing to Plaintiff's resume, which represents that Plaintiff is able to fluently speak, read and write English). In response, Plaintiff has now supplemented the record with her third declaration, in which she avers for the first time that her level of fluency in English is not sufficient to report or host a television show in that language and that she speaks English with a "distinct accent." Third Sataki Decl. ¶¶ 2, 3. Plaintiff's own evidence on this point is therefore contradictory. | Sataki's 3rd Declaration:<br><br>¶2 Although I speak, read and write in English "fluently," as English is not my first language, my caliber of fluency in the English language is not up to par with that of a native English speaker, and most certainly not even comparable at this time with that of a reporter or journalist who would report or host a TV or Radio production in the English language. My speaking ability in English is good, but my writing needs improvement.<br><br>¶3 Also, when I speak English, I have, what I have been told is a distinct accent. I cannot, and will not be a successful reporter in English at this time. The job I was hired to perform at the Persian News Network ("PNN") is as a Farsi language reporter.<br><br>¶4 Accordingly, if placed at the Central News Division ("CND") I will not able to perform my job as a reporter or journalist. In fact, I am not sure what tasks I will be able to perform at the CND or how I will be able to contribute at all.<br><br>¶ 5 In addition to being an English language position, the position which Defendants proposed for me at the CND relates to general reporting in the Arab world. I am not and was not hired to be an expert in Arabic politics or culture. I was hired for the Persian News Network as a Farsi speaker. |
|  |  |

7

| Judge Koller-Kotelly's Facts | Actual Facts |
|---|---|
| [A]lthough the Central News Division operates in the same building as PNN, such that a possibility remains that Plaintiff may encounter Defendants in the common areas of the building, BBG informed Plaintiff that access could be coordinated to ensure that there was no contact between Plaintiff and her alleged harasser; BBG also offered to work with Plaintiff, through her counsel, to ensure the arrangement worked efficiently. Brady Decl. ¶ 4. Plaintiff does not dispute this nor does she offer any evidence indicating that she responded to BBG's offer to discuss ways in which the detail to the Central News Division could be modified to respond to Plaintiff's concerns. | Sataki's 3rd Declaration:<br><br>¶7 More importantly, I am intimately familiar with the building and the facilities where the CND and Persian News Network ("PNN") are located.<br><br>¶8. If I were to work at the CND, there is a great likelihood that on a daily basis, likely multiple times a day, I would come into contact with the very defendants who have caused me significant trauma by sexually harassing, discriminating and retaliating against me for my personal and political beliefs as well as for reporting my sexual harasser and for exposing defendant's failure to comply with the mission Congress entrusted them with. Moreover, Mehdi Felahati, my harasser is back at work in this building!<br><br>¶ 9: The CND is in the same building as the PNN. CND and PNN employees use the same recording studios and facilities to record and report segments of news. The jointly used studio is inside the CND.<br><br>¶10: CND and PNN employees use the same elevators and staircases, rest areas, entrance and exit and cafeteria; also many CND and PNN employees use the same restaurants and facilities near the building around breakfast, lunch and dinner times |
| Plaintiff insists, however, that she is not asking PNN to create a new position for her in Los Angeles; rather, according to Plaintiff, she is seeking only authorization from BBG to perform her current job functions as an International Broadcaster from the Los Angeles VOA office during the pendency of her administrative and legal proceedings. See Third Sataki Decl. ¶ 22. 12 | As to this point, the Court notes that the exact nature of Plaintiff's requested accommodation has changed throughout the course of this litigation. Plaintiff initially advised the Court that she was "willing to do any work that is available in the Los Angeles office of VOA" and proposed that she be permitted to "do the work of the contractors in Los Angeles."<br><br>Sataki's Second Declaration:<br><br>¶ 9 see also id. ("These contractors, admittedly, are hired on a job by job basis so why not use a full time employee like myself do the work while I recover."). In denying Plaintiff's |

8

| Judge Koller-Kotelly's Facts | Actual Facts |
|---|---|
|  | request for a temporary restraining order, the Court observed that "BBG [] 'is not obligated to 'bump' another employee in order to create a vacancy for the disabled employee" nor is it obligated "to create a new position for the disabled employee.'" |
| There is a dispute in the record as to the Plaintiff's capability to perform her current job functions remotely from Los Angeles. [Opinion p. 22] | Tim Shamble 2nd Declaration:<br><br>¶6. With technological advances a lot of the work at VOA is portable. Employees can accomplish most, if not all, of their work by telecommuting – especially reporters who often cover stories "on the scene." There is absolutely no reason why Ms. Sataki cannot do what she would be required to do in Washington, DC, at an alternate worksite such as the VOA's Los Angeles Bureau. Se also Pl.'s Reply, Ex. C (Second Declaration of Jamchid Chalangi) ¶ 3 (stating 14 Plaintiff is capable of editing and producing packages) |
| BBG maintains, however, that Plaintiff is not qualified to produce quality packages independently and without supervision and therefore cannot perform this function of her present job from Los Angeles. See id. ¶ 7 ("There are no packages that [Plaintiff] can do from Los Angeles because [she] is not skilled enough in journalism or production to meet minimum broadcast industry standards."). | Sataki's 3rd Declaration:<br><br>¶17 Contrary to Susan Jackson's false declaration, not only do I NOT need constant supervision for the job functions I normally performed at PNN, during my time at the PNN I performed my work very independently and with very minor supervision from my superiors. In fact, quite often I voluntarily assisted fellow co-workers with the performance of their duties. I previously submitted DVD videos of many of the packages I have done for VOA, in which I wrote the script, edited and produced them. I am also submitting as Exhibit EE with this, my third sworn declaration, DVDs of videos of my live, on air appearances on VOA, in which I was a co-host, anchor and did much more than read emails, as Susan Jackson falsely stated in her declaration. I also am submitting a video of an interview I did in Sweden, when I was live by telephone reporting on an international event. As Union President Tim Shamble has |

9

| Judge Koller-Kotelly's Facts | Actual Facts |
|---|---|
| | also sworn to under oath in his declarations, I am a skilled broadcaster and always got excellent reviews. Susan Jackson, as a defendant, as I have sued her, has a motive to lie and lie she has. This court should, when all the facts come out, have her prosecuted for these lies under oath. She belongs in jail, not at VOA.<br><br>¶18  I am independently capable of and proficient at researching interviewing, recording, editing, producing and submitting my work to the Washington, D.C. office of VOA, as the videos show. In fact, attached to my prior declarations, and this one, as exhibits, and are several of the "packages" I produced independently from Los Angeles and Sweden. I did many of these interviews without the use of a teleprompter or notes. I am capable of interviewing without aids, based on my memory and expertise.<br><br>¶19 A simple review of these DVDs of my independent work will evidence that unlike what defendants claim, I am capable of working independently from the Los Angeles office.<br><br>¶20  The fact is that defendants simply wish not to accommodate my medical needs. Otherwise, the Los Angeles office is equipped to allow me to conduct my interviews and production from Los Angeles.<br><br>See Pl.'s Reply, Ex. C (Second Declaration of Jamchid Chalangi) ¶ 3 (stating 14 Plaintiff is capable of editing and producing packages);<br><br><br>Second Shamble Decl. ¶¶ 8-9 (same).<br><br>¶7. Ms. Sataki's work has been rated by the Agency itself (via the annual performance review process) as satisfactory (we are on a two tier system so satisfactory is the highest rating).  If there were problems with her performance there no was no indication of |

10

| Judge Koller-Kotelly's Facts | Actual Facts |
|---|---|
|  | them before she complained about being sexually harassed. In addition, when she first began to work for VOA, a few years ago, she was on a one year probationary period. If her work had not been good, she would neither been hired in the first place nor been approved for continued employment after her one year probationary period.<br><br>¶8. I have been in close professional contact with Ms. Sataki and he supervisors and I never heard any of these supervisors say, orally or in writing, that she was not able to do packages on her own. This claim is recently manufactured.<br><br>See also Sataki's Second Declaration ¶¶ 3-8; and ¶¶ 18-19, 23. |
| [it is] undisputed on the present record that Plaintiff cannot perform her on-air work with respect to these shows from Los Angeles. Plaintiff, however, has emphatically denied Defendants' contention that she is not presently qualified to produce independent packages from Los Angeles. [Opinion p. 24 ] | See Pl.'s Reply, Ex. C (Second Declaration of Jamchid Chalangi) ¶ 3 (stating Plaintiff is capable of editing and producing packages); Second Shamble Declaration ¶¶ 8-9 (same). Second Sataki Decl. ¶¶ 3-8; Third Sataki Decl. ¶¶ 18-19, 23. |
| There is no evidence in the record that she would be able to perform her present job duties as an International Broadcaster for PNN — whether remotely from Los Angeles or elsewhere — without having any contact whatsoever with PNN management in Washington, D.C., as she appears to indicate is necessary. To the extent Plaintiff asserts that she should be permitted to perform her work for PNN from Los Angeles without having any communication or interaction with PNN management, such a requested accommodation is clearly unreasonable. | Sataki's 3rd Declaration:<br><br>¶17 Contrary to Susan Jackson's false declaration, not only do I NOT need constant supervision for the job functions I normally performed at PNN, during my time at the PNN I performed my work very independently and with very minor supervision from my superiors. In fact, quite often I voluntarily assisted fellow co-workers with the performance of their duties. I previously submitted DVD videos of many of the packages I have done for VOA, in which I wrote the script, edited and produced them. I am also submitting as Exhibit EE with this, my third sworn declaration, DVDs of videos of my live, on air appearances on VOA, in which I was a co-host, anchor and did much more than read emails, as Susan Jackson falsely stated in |

11

| Judge Koller-Kotelly's Facts | Actual Facts |
|---|---|
| | her declaration. I also am submitting a video of an interview I did in Sweden, when I was live by telephone reporting on an international event. As Union President Tim Shamble has also sworn to under oath in his declarations, I am a skilled broadcaster and always got excellent reviews. Susan Jackson, as a defendant, as I have sued her, has a motive to lie and lie she has. This court should, when all the facts come out, have her prosecuted for these lies under oath. She belongs in jail, not at VOA.<br><br>¶18 I am independently capable of and proficient at researching interviewing, recording, editing, producing and submitting my work to the Washington, D.C. office of VOA, as the videos show. In fact, attached to my prior declarations, and this one, as exhibits, and are several of the "packages" I produced independently from Los Angeles and Sweden. I did many of these interviews without the use of a teleprompter or notes. I am capable of interviewing without aids, based on my memory and expertise.<br><br>¶19 A simple review of these DVDs of my independent work will evidence that unlike what defendants claim, I am capable of working independently from the Los Angeles office.<br><br>¶20 The fact is that defendants simply wish not to accommodate my medical needs. Otherwise, the Los Angeles office is equipped to allow me to conduct my interviews and production from Los Angeles.<br><br>See Pl.'s Reply, Ex. C (Second Declaration of Jamchid Chalangi) ¶ 3 (stating 14 Plaintiff is capable of editing and producing packages);<br><br>Second Declaration of Tim Shamble ¶¶ 8-9<br><br>¶ 7. Ms. Sataki's work has been rated by the Agency itself (via the annual performance review process) as satisfactory (we are on a |

12

| **Judge Koller-Kotelly's Facts** | **Actual Facts** |
|---|---|
| | two tier system so satisfactory is the highest rating). If there were problems with her performance there no was no indication of them before she complained about being sexually harassed. In addition, when she first began to work for VOA, a few years ago, she was on a one year probationary period. If her work had not been good, she would neither been hired in the first place nor been approved for continued employment after her one year probationary period.<br><br>¶ 8. I have been in close professional contact with Ms. Sataki and he supervisors and I never heard any of these supervisors say, orally or in writing, that she was not able to do packages on her own. This claim is recently manufactured.<br><br>See also Second Sataki Decl. ¶¶ 3-8; Third Sataki Decl. ¶¶ 18-19, 23. |
| With respect to Plaintiff's allegations that Defendants have "threat[ened] Plaintiff with 26 mutilation of her vaginal areas, severe bodily injury and death and smearing her name and reputation on pornographic internet websites," Am. Compl. at 11, Plaintiff has advised that she reported these activities to the Federal Bureau of Investigation ("FBI"), which is currently investigating her complaints. See First Sataki Decl. ¶ 42; Third Sataki Decl. ¶ 13. Such allegations are obviously of a serious and alarming nature. However, there is insufficient evidence on the record for the Court to conclude that Defendants are responsible for this alleged conduct. | See Sataki's 5th Declaration:<br><br>¶1 I am attaching eleven test messages that my sexual harasser Mehdi Falahati sent me during the time that he was continuously harassing me and soliciting me for sexual favors. These eleven text messages are attached hereto as Attachment 1 through Attachment 11. After each page of Attachment there is a true and correct Farsi translation of the text messages that were in Farsi.<br><br>¶2 I showed these text messages to Ms. Susan Jackson when I complained about being sexually harassed by Mehdi Falahati. Ms. Susan Jackson and Ms. Delia Johnson suggested that I save these text messages as evidence of the sexual harassment.<br><br>Sataki's 4th Declaration<br><br>¶3   I have reason to believe that these emails were sent by or on behalf of Mehdi Falahati, the person who sexually harassed me. They use |

13

| **Judge Koller-Kotelly's Facts** | **Actual Facts** |
|---|---|
|  | language similar to what Falahati used with Jamschid Chalangi (see Declaration of Jamschid Chalangi, Attachment 3 to Docket Item 32) which language referred to my private parts and how, in vulgar terms, he wanted to "f" me.<br><br>¶ 4  I am also attaching printouts of the internet pages which smeared me with pornographic material. A photo of me wearing a red blouse was a photo taken by Voice of America for promotional purposes and never used by it. The photo is contained in VOA's photo library and only a VOA employee could access it. The photo which appears on the fraudulent pornographic website also originally contained an image of Mehdi Falahati, my sexual harasser, but it was cut out for use on the pornographic website. [See Attachment 3.]<br><br>¶ 5  I have reason to believe that at a minimum Falahati is responsible for the above pornographic website and that and/or his friend Ali Sajjadi, Senior Managing Editor, who also has retaliated against me, accessed this non-public VOA photo to use to smear me. |