# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

    v.

JUDICIAL WATCH, INC., *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)

## MEMORANDUM OPINION
(October 13, 2010)

Currently pending before the Court is Plaintiff Larry Klayman's ("Klayman") [345] Motion to Disqualify this Court pursuant to 28 U.S.C. § 144. This represents Klayman's second attempt to disqualify this Court in this case based on the allegation that certain of the Court's rulings, combined with the fact that the undersigned was appointed by former President William J. Clinton, are evidence that the Court has an extrajudicial bias or prejudice against him. As the Court previously made clear in denying Klayman's initial request for disqualification, such allegations are legally insufficient to support a request for disqualification. Klayman's most recent filings offer no new factual or legal support to the contrary. Accordingly, upon a searching review of Klayman's motion and the parties' respective briefing, the relevant case law and statutory authority, and the entire record herein, the Court shall DENY Klayman's [345] Motion to Disqualify the Court pursuant to 28 U.S.C. § 144. In addition, the Court has conducted its own independent review of the record and is satisfied that no reasonable and informed observer would question this Court's impartiality. Accordingly, for the reasons set forth below, the Court concludes that recusal is neither required nor warranted in this case.

# I. BACKGROUND

The Court shall assume familiarity with the numerous opinions issued by both this Court and Magistrate Judge Alan Kay, which set forth in detail the factual background and allegations of this case, and shall therefore provide only a brief summary of the instant case as is necessary to provide context for resolution of the motion now before the Court. *See Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 140978 (D.D.C. Jan. 17, 2007); *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 1034936 (Apr. 3, 2007); and *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 1034937 (Apr. 3, 2007). Defendant Judicial Watch, Inc. is a 501(c)(3) organization formed under the laws of the District of Columbia and headquartered in the District of Columbia. *Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670, 2007 WL 1034937, at *2 (Apr. 3, 2007). Defendant Fitton is President of Judicial Watch, Defendant Orfanedes is the Secretary and a Director of Judicial Watch, and Defendant Farrell is a Director of Judicial Watch. *Id.* Plaintiff Larry Klayman is the self-described founder and former Chairman, General Counsel, and Treasurer of Judicial Watch, who resides in and practices law in the State of Florida. *Id.* Klayman, an attorney, is currently representing himself *pro se* in this matter.

Klayman's Second Amended Complaint and Judicial Watch's Amended Counterclaim in this action include various legal claims stemming from events that occurred after Klayman left Judicial Watch in September 2003. *Id.* Many of these claims arise out of the Severance Agreement entered into by Klayman and Judicial Watch on September 19, 2003. *Id.* The Court need not address the specifics of the parties' claims at this time, other than to note that, *inter alia*, Klayman asserts claims against the Defendants under the Lanham Act for unfair competition in

the form of false advertising and false endorsements and for breach of contract relating to the Severance Agreement. 2d Am. Compl. ¶¶ 97-106; 115-162. Judicial Watch asserts counterclaims against Klayman under the Lanham Act for trademark infringement, unfair competition in the form of false advertising and false association, and cybersquatting. Am. Count. ¶¶ 84-116.

The instant litigation was initially filed by Klayman on April 12, 2006. *See generally* Compl. Resolution of this matter has been delayed for several years, largely as a result of Klayman's own repeated failure to comply with the Court's deadlines in this matter. *See, e.g.*, May 12, 2008 Order, Docket No. [166] (describing Klayman's efforts to "stonewall" and "obstruct[]" discovery in this matter); Mar. 24, 2009 Order, Docket No. [301] (describing the "voluminous number of filings in this case resulting from Klayman's obstinance at every stage of this case"); *see also Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98, 106-08 (D.D.C. 2009) (describing Klayman's demonstrated failure to comply with Court-ordered deadlines).

The parties finally reached the summary judgment stage in late 2008. However, after the parties' cross-motions for summary judgment were ripe but before the Court had an opportunity to rule on them, Klayman filed his first request for disqualification of this Court. *See* Pl.'s Mot. for Recusal and/or Disqualification, Docket No. [298]. Klayman moved the Court to recuse itself pursuant to 28 U.S.C. § 455(a), which permits a litigant to seek recusal of a federal judge "in any proceeding in which his impartiality might reasonably be questioned." As set forth in his motion, Klayman alleged that recusal was warranted under section 455(a) for largely the same reasons he now claims require recusal under section 144, namely: (1) various rulings issued by the Court created an appearance of bias against him; and (2) that the undersigned was appointed

to the federal bench by former President Clinton, against whose administration Klayman was a self-described "strong and controversial advocate," created an appearance of bias as well. *See id.* By Order and Memorandum Opinion dated June 25, 2009, the Court denied Klayman's motion for recusal, finding that "Klayman's allegation that recusal is warranted or that an appearance of bias against him has been created because of the Court's rulings in this case, along with the fact that the undersigned was appointed by former President William J. Clinton, completely lack merit." *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98, 111 (D.D.C. 2009). The Court therefore proceeded to rule on the parties' cross-motions for summary judgment.

With the parties' dispositive motions resolved, the instant case proceeded to the pretrial stage of litigation, and the Court held an initial pretrial status conference on April 30, 2010. Because of deficiencies in the parties' Joint Pretrial Statement — particularly as concerns Klayman's portion of the statement — the pretrial status was continued until July 7, 2010, and the parties were ordered to submit an amended Joint Pretrial Statement. *See* Apr. 30, 2010 Order, Docket No. [334]. The pretrial conference and the parties' deadline for submitting their amendments were subsequently continued upon motion by Klayman for an extension of time. *See* June 6, 2010 Order, Docket No. [338]. The parties' revisions to the Joint Pretrial Statement were therefore due by no later than July 12, 2010, and the final pretrial status conference was scheduled for August 6, 2010. *Id.*

Klayman, however, did not file the required modifications to the Joint Pretrial Statement by July 12, 2010, as ordered, instead filing that same day a Motion to Stay all Proceedings Pending Adjudication of Motion to Disqualify Trial Judge. *See* Docket No. [341]. Importantly, Klayman did *not* actually file the proposed motion to disqualify at that time; he instead simply

indicated that he *intended* to file a motion to disqualify pursuant to section 144 by no later than July 16, 2010, and therefore requested a stay of all proceedings.[1]  *Id.*  However, July 16, 2010, came and went without any such motion being filed.  Rather, on July 19, 2010, three days past his own proposed deadline, Klayman instead filed a Notice with the Court repeating his intention to file a motion to disqualify and indicating that such motion would now be filed by no later than July 20, 2010.  *See* Docket No. [343].  Once again, however, Klayman failed to file the proposed motion by his own proposed deadline of July 20, 2010.  Indeed, it was not until July 26, 2010, that Klayman filed the now-pending Motion to Disqualify pursuant to 28 U.S.C. § 144.  *See* Pl.'s Mot. to Disqualify, Docket No. [345].

As set forth in the present Motion to Disqualify, Klayman contends that disqualification of this Court is necessary because: (1) judicial rulings in this case, and in a separate, unrelated civil action in which Klayman serves as counsel of record, are evidence of the Court's extrajudicial bias against him; and (2) the undersigned was appointed to the federal bench by former President Clinton and is alleged to have connections to and associations with the Democratic party, and is therefore biased against Klayman, who states that he filed numerous lawsuits against the Clinton administration and has a self-described reputation of being "anti-Democratic."  *See generally* Pl.'s Mot. to Disqualify.  Defendants filed an opposition to the Motion on August 12, 2010, asserting that it is both untimely and legally insufficient to support

---

[1] As set forth in the accompanying Order, Klayman's [341] Motion to Stay is now moot and shall be denied for that reason.  In addition, Defendants have filed a related [342] Motion to Strike, in which Defendants seek to strike Klayman's statement of the case, proposed list of witnesses, proposed list of exhibits and proposed deposition testimony, based upon Klayman's failure to comply with this Court's Orders governing the filing of the amended Joint Pretrial Statement.  The Court shall hold in abeyance Defendants' Motion to Strike and shall resolve the motion in the context of the final pretrial status conference in this case.

disqualification in this case and is yet another attempt by Klayman to further delay resolution of this matter. *See* Defs.' Opp'n, Docket No. [347]. After a delay of three weeks resulting from Klayman's multiple requests for an extension of time, *see* Docket Nos. [349]; [350]; [351]; [352], Klayman filed a reply in support of his Motion on September 15, 2010. *See* Pl.'s Reply, Docket No. [354]. Accordingly, the Motion to Disqualify is now fully briefed and ripe for this Court's resolution.

## II. LEGAL STANDARD AND DISCUSSION

To recuse a judge under section 144, a litigant must submit, along with its motion, an affidavit stating "the facts and the reasons for [its] belief that bias or prejudice exists." 28 U.S.C. § 144. Upon the filing of a "timely and sufficient affidavit," section 144 mandates that the assigned "judge shall proceed no further, but another judge shall be assigned to hear such proceeding." *Id.*; *see also Bhd. of Locomotive Firemen and Enginemen v. Bangor & Aroostook R.R. Co.*, 380 F.2d 570, 576 (D.C. Cir. 1967) ("The disqualification statute, 28 U.S.C. § 144, is mandatory and automatic, requiring only a timely and sufficient affidavit alleging personal bias or prejudice of the judge."). "Importantly, the mere fact that a party has filed a § 144 motion, accompanied by the requisite affidavit and certificate of counsel, does not automatically result in the challenged judge's disqualification." *Robertson v. Cartinhour*, 691 F. Supp. 2d 65, 77 (D.D.C. 2010); *see also United States v. Miller*, 355 F. Supp. 2d 404, 405 (D.D.C. 2005) ("disqualification is not automatic upon submission of affidavit and certificate"). Rather, recusal is required *only* upon the filing of a "timely and sufficient affidavit." 28 U.S.C. § 144.

The question of whether the motion and supporting affidavit is both timely and legally sufficient is for this Court to determine in the first instance. *United States v. Haldeman*, 559 F.2d

31, 131 (D.C. Cir. 1976) ("It is well settled that the involved judge has the prerogative, if indeed not the duty, of passing on the legal sufficiency of a Section 144 challenge."); *see also United States v. Heldt*, 668 F.2d 1238, 1272 n.69 (D.C. Cir. 1981) (noting that "under section 144 . . . the transfer to another judge for decision is 'at most permissive'") (quoting *Haldeman*, 559 F.2d at 131). First, with respect to the timeliness of the motion, section 144 is itself silent as to "what the timeliness requirement means where, as in this case, the recusal motion rests on events occurring after proceedings began." *S.E.C. v. Loving Spirit Found., Inc.*, 392 F.3d 486, 492 (D.C. Cir. 2004). In such circumstances, courts "have required the affidavit to be filed 'at the earliest moment.'" *Id.* As the D.C. Circuit has made clear, the timeliness requirement is "[c]rucial to the integrity of the judicial process," as it "ensures that a party may not wait and decide whether to file based on 'whether he likes subsequent treatment that he receives.'" *Id.* (quoting *In re United Shoe Mach. Corp.*, 276 F.2d 77, 79 (1st Cir. 1960)).

Second, in determining whether the affidavit sets forth a legally sufficient basis for disqualification, the Court "must accept the affidavit's factual allegations as true even if the judge knows them to be false." *Loving Spirit Found.*, 392 F.3d at 496; *see also United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) ("when presented with an application and affidavit such as this one, a Court may not pass upon the truth or falsity of the allegations, but must accept them as true for the purpose of determining the legal sufficiency of the affidavit"). However, the affidavit "must state facts as opposed to conclusions, and while the information and belief of the affiant as to the truth of the allegations are sufficient, mere rumors and gossip are not enough." *Hanrahan*, 248 F. Supp. at 474 (internal citations omitted). "The identifying facts of time, place, persons, occasion and circumstances must be set forth, with at least that

degree of particularity one would expect to find in a bill of particulars." *Id.* (internal citations omitted). Importantly, given the requirement that the Court accept the facts stated in the affidavit as true, the statute mandates that "the attorney presenting the motion [] sign a certificate stating that both the motion and declaration are made in good faith." *Loving Spirit Found.*, 392 F.3d at 496; *see* 28 U.S.C. § 144 (requiring that the affidavit "be accompanied by a certificate of counsel of record stating that it is made in good faith"). The certification requirement is key to the integrity of the recusal process and "guard[s] against the removal of an unbiased judge through the filing of a false affidavit." *Loving Spirit Found.*, 392 F.3d at 496.

Once it is established that the affidavit has been properly certified by counsel of record and that the facts set forth therein have been stated with sufficient particularity, the Court must then

> ascertain[] whether these facts would fairly convince a sane and reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute. It is well established that the facts must give fair support to the charge of a bent mind that may prevent or impede impartiality. The basis of the disqualification is that personal bias or prejudice exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. The factual allegations must establish by more than a prima facie case, but not beyond a reasonable doubt that the mind of the judge is closed to justice; that the judge has a personal bias or prejudice against the affiant which is of such a nature, and of such intensity, that it would render the judge unable to give the affiant the fair trial to which every litigant is entitled. Obviously, such a showing could rarely be made.

*Hanrahan*, 248 F. Supp. at 475-76 (internal citations and quotations omitted). "Importantly, to be disqualifying, the alleged bias usually 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Robertson*, 691 F. Supp. 2d at 78 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)); *see also Liteky v. United States*, 510 U.S. 540, 554 (1994) (predispositions

developed during proceedings are rarely sufficient). For the reasons set forth below, the Court

finds that the Motion to Disqualify and supporting Affidavit are both untimely and legally

insufficient to support disqualification.

A.    *The Motion to Disqualify Pursuant to Section 144 is Untimely*

As observed above, the timeliness requirement is "[c]rucial to the integrity of the judicial

process" and is intended to ensure that a party is not simply filing the motion on the basis of

subsequent unfavorable rulings or treatment by the Court. *Spirit Loving Found.*, 392 F.3d at 492.

Even the briefest review of the docket in this case confirms that Klayman's Motion to Disqualify

is far from timely. For this reason alone, the motion must fail. *See id.* (affirming dismissal of

untimely motion to disqualify under section 144).

First, to the extent the request for disqualification is based on the undersigned's alleged

association with the Democratic Party and appointment to the federal bench by former President

Clinton, it is readily apparent that Klayman did not file the instant motion at the "earliest

moment." Klayman should have been aware as early as April of 2006, when this case was

originally assigned to this Court, that the undersigned had been appointed by former President

Clinton. Moreover, the other events identified by Klayman in his Affidavit and relied upon to

support his claim of bias arising from the undersigned's alleged association with the Democratic

party, of which Klayman is reported to be critical, occurred as far back as the 1990's, *see* Pl.'s

Aff. ¶ 13 (discussing events surrounding the undersigned's nomination to the federal bench and

certain other events that occurred during the Clinton administration), with the most recent event

allegedly occurring in October 2009, *see id.* (indicating that Klayman released a book critical of

the judiciary, including the undersigned, in October of 2009). Klayman's Motion is therefore

untimely insofar as it is premised on the undersigned's alleged association with the Democratic Party and appointment to the federal bench by former President Clinton. *See Spirit Loving Found.*, 392 F.3d at 492-93 (rejecting the timeliness of section 144 affidavit for recusal where party waited more than two years after the first order of which it complained and over six months after the last).

Second, insofar as Klayman's Motion to Disqualify is premised on the Court's rulings in this case, the Motion is equally untimely. Klayman complains of decisions in this case dating as far back as 2008, with the most recent substantive ruling identified in the Affidavit having been issued in June 2009, more than a year prior to the filing of the instant Motion. *See* Pl.'s Aff. ¶ 13. In particular, Klayman identifies the following decisions by this Court as demonstrating bias and/or prejudice, listed below in chronological order:[2]

(a) the Court's decision denying his request for a protective order, Pl.'s Aff. ¶ 13, which appears to refer to the Court's April 2, 2008 Order affirming Magistrate Judge Kay's decision denying a motion by Klayman to quash certain subpoenas issued by Defendants or, alternatively, for a protective order, *see* Apr. 2, 2008 Order, Docket No. [134];

(b) the Court's discovery rulings permitting "discovery into [his] divorce," Pl.'s Aff. ¶ 13, which appears to refer to the Court's May 28, 2008 Order overruling Klayman's objections to a discovery ruling issued by Magistrate Judge Kay in this case, *see* May 28, 2008 Order, Docket No. [185]; *see also Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98, 102-04 (D.D.C. 2009) (discussing in detail the Court's rulings regarding Defendants' request to take discovery from Klayman's ex-wife);

---

[2] The Court notes that Klayman has generally failed to specifically identify by docket number or date the particular orders of which he now complains. The public docket in this case, which was initially filed more than four years ago, contains in excess of 350 entries at present. Klayman's failure to properly cite to the record or to identify the rulings of which he now complains has significantly and needlessly increased the difficulty in determining which of the hundreds of rulings in this case are now at issue. Nonetheless, to the extent the Court has been able to determine which of its rulings are likely described by Klayman in his Affidavit, the Court has identified these decisions above.

(c) the Court's order denying his requests for an extension of time to file his summary judgment briefing, Pl.'s Aff. ¶ 13, by which he appears to refer to a series of Orders issued by the Court in late <u>December 2008</u> and early <u>January 2009</u>, *see* Dec. 18, 2008 Min. Order; Dec. 23, 2008 Min. Order; Dec. 30, 2008 Order, Docket No. [293]; Jan. 7, 2009 Min. Order; *see also Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98, 105-09 (D.D.C. 2009) (discussing in detail the Court's rulings regarding Klayman's multiple requests for extensions of time);

(d) the Court's ruling "dismiss[ing] most of [his] case and barr[ing] [him] from presenting evidence on damages," Pl.'s Aff. ¶ 13, which appears to reference the Court's <u>June 25, 2009</u> Order and Memorandum Opinion resolving the parties' cross-motions for summary judgment, *see* June 25, 2009 Mem. Op., Docket No. [319]; and

(e) the Court's decision denying his initial motion for disqualification, Pl.'s Aff. ¶ 13, which was issued on <u>June 25, 2009</u>, *see* June 25, 2009 Mem. Op., Docket No. [315].

Given that Klayman's allegations of bias focus on rulings that were all issued at least one year, and in some cases more than two years, prior to the filing of his section 144 Motion, it is clear that Klayman's Motion to Disqualify is untimely insofar as it is based on the Court's rulings in this case. *See Spirit Loving Found.*, 392 F.3d at 492-93.

Such a finding is particularly warranted where, as here, Klayman has continued to actively participate in the present litigation, despite the occurrence of the events of which he now complains. In the intervening time period since the Court first issued the rulings identified by Klayman in his Affidavit, the parties have completed summary judgment briefing, the Court has ruled on the merits of those motions, and the parties have begun preparing for trial in this matter. Klayman's participation in each of these substantive stages of litigation further counsels against disqualification. *Id.* at 493 ("courts have observed that filing motions between the events complained of and submission of the affidavit weighs heavily against a finding of timeliness"). Indeed, Klayman himself alleges that this Court has acted with bias and/or prejudice towards him "over the years." Pl.'s Aff. ¶ 4. Yet, despite this claim, Klayman waited until shortly before the

final pretrial status conference in this case to file the instant Motion to Disqualify. The timing of the motion strongly suggests that this is yet another attempt by Klayman to delay final resolution of the pending litigation and to avoid rulings that may be unfavorable to his case. *Cf. S.E.C. v. Grossman*, 887 F. Supp. 649, 658 (S.D.N.Y. 1995) (finding motion to disqualify untimely where party "chose to delay any motion and gamble" on outcome of substantive rulings); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1296 (9th Cir. 1992) (affirming denial of motion to disqualify where "unexplained delay suggest[ed] that the recusal statute [was] being misused for strategic purposes").

Moreover, as to these first two allegations of bias, the Court's finding of untimeliness is further supported by the fact that these same allegations formed the basis of Klayman's first motion to disqualify this Court under 28 U.S.C. § 455(a) filed in February of 2009. *See* Mot. for Recusal and/or Disqualification, Docket No. [298]. Pursuant to 28 U.S.C. § 455(a), a judge is required to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Given that these alleged sources of bias were known to Klayman at the time of the filing of his first motion to disqualify in February 2009, it is clear that the present Motion to Disqualify — based on those same factual allegations but filed more than a year and a half later — is untimely. At a minimum, Klayman should have moved for recusal under section 144 at the same time that he moved for recusal under section 455(a), to the extent that both motions are premised on the same allegations of bias. Klayman has offered no explanation for such a lengthy delay in filing the present motion.

Accordingly, to the extent Klayman's Motion is based on the Court's alleged political affiliations and its rulings in this case, his unexplained delay in filing the Motion to Disqualify

renders the Motion untimely. Klayman's reliance on the Court's more recent rulings in *Sataki v. Broadcasting Board of Governors*, Civ. Action No. 10-534, an unrelated, separate civil action in which Klayman serves as counsel of record, does not save the Motion from this finding of untimeliness. Klayman contends that, notwithstanding the Court's allegedly long-standing bias against him, the present Motion is timely filed because such bias has "recently . . . become much more acute," as demonstrated by the Court's rulings in the *Sataki* matter. *See* Pl.'s Aff. ¶ 4. However, the Court's last substantive ruling in the *Sataki* civil action was issued on July 7, 2010 — more than two-and-a-half weeks prior to the filing of the instant Motion to Disqualify. Once again, Klayman offers no explanation for this delay. In such circumstances, D.C. Circuit precedent counsels that an unexplained delay of this length renders the filing of his Affidavit for disqualification untimely. *See Smuck v. Hobson*, 408 F.2d 175, 183 (D.C. Cir. 1969) (expressing "serious doubt" about the timeliness of an affidavit based on remarks made by the judge "more than two weeks before" and a law review published by the judge "more than a year" earlier). *See also In re Martin-Trigona*, 573 F. Supp. 1237, 1244-45 (D. Conn. 1983) (12-day delay from time movant indicated probability of recusal motion to time motion was actually filed rendered motion untimely); *Bumpus v. Uniroyal Tire Co.*, 385 F. Supp. 711, 712 (E.D. Pa. 1974) (finding section 144 motion and affidavit untimely where based on events occurring "from two weeks to as far back as two months before"). It is therefore clear that Klayman's Motion to Disqualify under section 144 is untimely. For this reason alone, Klayman's Motion to Disqualify pursuant to 28 U.S.C. § 144 must be denied.

*The Motion to Disqualify Does Not Strictly Comply with the Certification Requirement Set Forth in 28 U.S.C. § 144*

In addition, although neither party has raised the issue, the Court notes that section 144 requires that a party's affidavit submitted in support of a motion for disqualification under this statutory provision "be accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144. The certification requirement is not simply a pro forma procedural obligation but is key to the integrity of the recusal process. Because the Court must accept as true all factual allegations asserted in the affidavit, even if the Court knows such allegations to be untrue, the certification requirement is essential to "guard against the removal of an unbiased judge through the filing of a false affidavit." *Loving Spirit Found.*, 392 F.3d at 496. The certification requirement therefore serves as a "check on abuse of the recusal process," assuring the Court that the statements in the affidavit are made in good faith. *Id.* Given the importance of the certification, the failure to comply with this requirement is not simply a procedural error. *United States v. Miller*, 355 F. Supp. 2d 404, 405-06 (D.D.C. 2005) ("failure to make this certification is grounds for denying the motion").

Here, there are two problems with the certification submitted by Klayman in support of this Motion to Disqualify. First, although Klayman is himself a licensed attorney admitted to practice before this Court, he is acting as a *pro se* Plaintiff in the instant action and not as counsel of record. Whether a *pro se* litigant is in fact able to file a motion for disqualification under section 144, notwithstanding the statutory requirement that the accompanying affidavit be certified as made in good faith by the "counsel of record," appears to be one of first impression in this Circuit, and courts in other jurisdictions have varied in their treatment of *pro se* motions

14

under section 144. For example, some courts have held that a *pro se* party cannot file a motion for disqualification under section 144 as they cannot comply with the statute's explicit certification requirement. *See, e.g.*, *Buckenberger v. Reed*, Civ. Action No. 6-7393, 2010 WL 3523021, at *1 (E.D. La. Aug. 31, 2010) (concluding "that a *pro se* litigant may not use 28 U.S.C. § 144 as a means to seek recusal because of the certification requirement" and therefore denying the motion). Other courts have concluded that a *pro se* litigant may file a motion under this provision so long as the party provides a certificate of good faith signed by a member of the bar, albeit not counsel of record. *See, e.g.*, *United States v. Rankin*, 1 F. Supp. 2d 445, 450 (E.D. Pa. 1998) (holding that "§ 144 requires that, in the case of a *pro se* movant, the certificate of good faith that accompanies the § 144 affidavit be signed by any member of the bar of the court"). Still other courts have determined that it is appropriate to consider the merits of a *pro se* litigant's section 144 motion notwithstanding the lack of any certification of good faith by counsel of record and/or a member of the bar. *See, e.g.*, *Melvin v. Social Sec. Admin.*, Civ. Action No. 5:09-235, 2010 WL 3743543, at *2 (E.D.N.C. Sept. 14, 2010) (noting "that the plain language of § 144 precludes a *pro se* plaintiff bringing [] a motion [for disqualification] without a certificate of good faith signed by a member of the bar," but nonetheless " proceed[ing] to address the merits of plaintiff's motion in the spirit of the liberality afforded to *pro se* litigants"); *Williams v. New York City Housing Auth.*, 287 F. Supp. 2d 247, 249 (S.D.N.Y. 2003) (noting the insufficiency of the *pro se* movant's affidavit where it lacked the certificate of counsel, but addressing the movant's arguments). The Court ultimately finds that it need not resolve the question of whether Klayman, as a *pro se* litigant, may move for disqualification under section 144. As discussed below, the Court finds that Klayman's Affidavit, even if considered, is legally

insufficient to support disqualification under section 144.

Second, although Klayman has purported to file his own certification of good faith under section 144, he has certified therein only that the "motion is being filed in good faith;" he has not similarly certified that the accompanying Affidavit and the substantive factual allegations contained therein have also been filed in good faith. *See* Pl.'s Mot. to Disqualify at 1-2. Nor does his Affidavit itself contain any language certifying that the factual allegations set forth therein have been submitted in good faith. *See generally* Pl.'s Aff. Accordingly, even assuming that Klayman's own certification of good faith as a *pro se* litigant is sufficient under section 144, Klayman has not presented a signed "certificate stating that *both* the motion and *declaration* are made in good faith." *Loving Spirit Found.*, 392 F.3d at 496 (emphasis added). Again, however, because the Court finds that the substantive factual allegations set forth in the Affidavit, even if considered on the merits, are not legally sufficient to warrant disqualification, the Court shall proceed to consider the merits of the present Motion to Disqualify, notwithstanding Klayman's failure to submit a certification of good faith, either by himself as a *pro se* litigant or by counsel of record, as to both the motion and affidavit.[3]

C.    *The Facts Set Forth in Klayman's Affidavit are Legally Insufficient to Warrant Disqualification*

Ultimately, Klayman's Motion to Disqualify must be denied because the facts set forth in the supporting Affidavit, even if accepted as true, are legally insufficient to demonstrate actual

---

[3] The Court is also cognizant that section 455 imposes a duty upon this Court to consider recusal *sua sponte*, and, for this reason as well, shall proceed to consider Klayman's substantive allegations in support of his Motion to Disqualify. *See United States v. Barrett*, 111 F.3d 947, 955 (D.C. Cir. 1997) (recognizing that "section 455 requires judges to consider recusal *sua sponte*").

bias warranting disqualification under section 144.  Moreover, the Court has also conducted its

own independent review of the record in this case, including Klayman's present Motion and

Affidavit, and is satisfied that no reasonable and informed observer would question this Court's

impartiality.  Indeed, the Court has already ruled that allegations of bias based on the Court's

appointment by former President Clinton and the Court's judicial rulings are legally insufficient

to warrant or justify disqualification.  *See Klayman v. Judicial Watch*, *Inc.,* 628 F. Supp. 2d 98

(D.D.C. 2009).[4]  Klayman offers no new factual or legal support that would suggest the Court's

prior rulings on this point were in error, and for good reason.  The case law is clear that neither

the Court's judicial rulings nor its alleged political affiliations support disqualification.

1.      The Court's Judicial Rulings Do Not Form a Proper Basis for
        Disqualification

First, as the Court has previously made clear, "judicial rulings alone almost never

constitute a valid basis for a bias or partiality motion."  *Liteky*, 510 U.S. at 555.  Such rulings by

_____

[4] While Klayman's initial motion for disqualification and the Court's ruling denying that
motion were each based on section 455(a) — and the present motion by contrast focuses on
section 144 — the substantive standard for recusal based on alleged bias under the two sections
is largely the same.  *See, e.g.*, *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1301
(D.C. Cir. 1988) ("It is well settled that a motion for recusal under 28 U.S.C. § 144 or § 455,
must be based upon prejudice from an extra-judicial source."); *United States v. Hernandez*, 109
F.3d 1450, 1453 (9th Cir. 1997) ("The substantive standard for recusal under 28 U.S.C. § 144
and 28 U.S.C. § 455 is the same: '[W]hether a reasonable person with knowledge of all the facts
would conclude that the judge's impartiality might reasonably be questioned.'") (quoting *United
States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986)).  To the extent the standard under the
sections differ, it is that section 144 requires proof of *actual* bias whereas section 455(a) requires
only the reasonable *appearance* of bias.  *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th
Cir. 2004); *cf. Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987) (recognizing
that, while section 455(a) provides "broader grounds for disqualification than . . . § 144," "when,
as here, a party has not alleged any grounds for recusal other than those relating to the district
court's alleged bias or prejudice, those broader grounds are not implicated").  Accordingly, a
failure to show an appearance of bias under section 455(a) invariably results in a failure to show
actual bias under section 144.

themselves "cannot possibly show reliance upon an extrajudicial source" and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* Here, although Klayman complains that the Court has ruled unfavorably against him, he has failed to identify with the required degree of particularity any *extrajudicial* source of bias related to the Court's rulings. *See generally* Pl.'s Aff. As the Court's discussion above makes clear, "to be disqualifying, the alleged bias usually 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Robertson*, 691 F. Supp. 2d at 78 (quoting *Grinnell Corp.*, 384 U.S. at 583); *see also Liteky*, 510 U.S. at 554 (predispositions developed during proceedings are rarely sufficient); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1301 (D.C. Cir. 1988) ("It is well settled that a motion for recusal under 28 U.S.C. § 144 or § 455 must be based upon prejudice from an extra-judicial source."). Klayman's conclusory allegations and statements of opinion that the Court "has demonstrated an extra-judicial bias and prejudice" against him are wholly insufficient on this point. *See Hanrahan*, 248 F. Supp. at 474 (the affidavit "must state facts as opposed to conclusions" and must do so with "particularity"); *cf. Karim-Panahi v. U.S. Congress*, No. 03-5186, 2004 WL 1588167, at *4 (D.C. Cir. Jul. 14, 2004) (per curiam) (holding that under section 455, "[a] judge should not recuse himself based upon conclusory, unsupported or tenuous allegations").[5] Accordingly, while his dissatisfaction

_____

[5] The only specific allegation that could arguably be construed as asserting an extrajudicial source of bias, as is required under section 144, is Klayman's assertion that he published a book in October of 2009, in which he was "critical of [the undersigned], among other jurists and politicians and media figures." Pl.'s Aff. ¶ 6. Importantly, however, Klayman himself does *not* allege that the Court itself was actually aware of the existence of this book or the allegedly critical comments contained therein. *See id.* Therefore, even assuming the truth of the allegations in the Affidavit, as the Court must, there is no claim that this Court had

with the Court's rulings may provide a proper ground for appeal, his mere disagreement with the Court's judicial rulings does not provide a proper ground for recusal. *See Liteky*, 510 U.S. at 540; *Spirit Loving Found.*, 392 F.3d at 494 ("Indeed, we have found no case where this or any other federal court recused a judge based only on his or her rulings."); *Karim-Panahi,* 2004 WL 1588167, at *4 (where plaintiff has failed to point "to anything that would suggest that [the Court] has formed an opinion on some basis other than her participation in this case," recusal is inappropriate).

The Court has previously addressed in great detail many of Klayman's complaints regarding the Court's rulings in the instant case, and therefore need not do so again here, as it is clear that such rulings do not constitute a valid basis for recusal. *See Klayman v. Judicial Watch*, *Inc.,* 628 F. Supp. 2d 98, 101-10 (D.D.C. 2009). Moreover, to the extent Klayman complains of the Court's decisions in the *Sataki* matter, the Court notes that the plaintiff in that action has voluntarily dismissed nearly all of the substantive claims in that case, *see* Civ. Action No. 10-534, Docket No. [67] (Notice of Voluntary Dismissal), and has failed to appeal the Court's ruling denying her request for a preliminary injunction. The D.C. Circuit has cautioned that under such circumstances, "even if a particular ruling or a series of rulings revealed bias, we doubt very much that a recusal motion would be proper where, as here, the movant could have appealed the challenged decisions but failed to do so." *Spirit Loving Found.*, 392 F.3d at 494.

Thus, while it is clear that Klayman is displeased with the Court's rulings in the instant action and in the *Sataki* matter, his disagreement with the Court's decisions does not provide a proper ground for recusal. *Liteky*, 510 U.S. at 555. As the D.C. Circuit has aptly observed, "if

knowledge of this book or any of the statements allegedly made therein.

disqualification were required 'merely as a result of counsel's disagreement with judicial conclusions reached in the course of litigation, the judicial system would grind to a halt.'" *Loving Spirit Found.*, 392 F.3d at 494 (quoting *Barnett v. City of Chicago*, 952 F. Supp. 1265, 1269 (N.D. Ill. 1998)).  Klayman's allegations of bias premised on the Court's judicial rulings are therefore legally insufficient and do not warrant disqualification.[6]

> 2.    The Court's Alleged Political Affiliations and Appointment to the Federal Bench by Former President Clinton Do Not Form a Proper Basis for Disqualification

Second, as the Court has previously made clear, the fact that the undersigned was appointed to the federal bench by former President Clinton, of whom Klayman has allegedly been critical in the past, does not warrant or justify disqualification.  *See Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98, 110-11 (D.D.C. 2008) ("[I]t is clear that the mere fact that the undersigned was appointed by the former Clinton administration — where former President Clinton is neither a party to or otherwise involved with this lawsuit — does not warrant or require recusal in the instant case.").  Nor does the claim that the Court is allegedly connected to and associated with the Democratic party, even if assumed true, support recusal of this Court. The case law is clear that recusal is not warranted in this circumstance.  *See Karim-Panahi*, 2004 WL 1588167, *4 (affirming lower court's denial of motion for recusal based on allegations that the judge was "biased because of her 'political-religious connections' and her alleged loyalty to

---

[6] Cognizant that the Court is required to accept Klayman's allegations as true in evaluating the legal sufficiency of his section 144 Affidavit, the Court has not addressed herein the actual merits or veracity of such allegations regarding the Court's prior judicial rulings.  The Court only pauses here briefly to emphasize that its silence should not be read as agreement with Klayman's characterization of the record in this case; to the contrary, review of the Court's rulings demonstrates that Klayman's Motion to Disqualify is premised on a flawed and wholly inaccurate characterization of this Court's prior judicial decisions.

those who selected, confirmed and appointed her"); *see also MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998), *cert. denied*, 525 U.S. 874 (1998) (plaintiff's[7] allegation that "a judge is not impartial solely because an attorney is embroiled in a controversy with the administration that appointed the judge" is insufficient grounds for recusal). As the Second Circuit has persuasively stated,

> Judges generally have political backgrounds to one degree or another but must be presumed, absent more, to be impartial. At least in the federal system, judges separate themselves from politics when going on the bench, and their life tenure reduces any felt reliance on political patrons. Indeed, a suggestion of partiality based on the appointing administration may often be a double-edged sword. If a Democratic appointee's impartiality toward lawyers publicly identified as active Republicans may be questioned, a Republican appointee's impartiality toward lawyers' adversaries might similarly be questioned on the ground that a Republican judge might favor the Republican lawyers.

*MacDraw*, 138 F.3d at 38. Indeed, courts have held that recusal is not warranted even when the President responsible for nominating the judge is actually a *party* to the litigation. *See, e.g.*, *In re Executive Office of President*, 215 F.3d 25, 25 (D.C. Cir. 2000) ("Hearing a case involving the conduct of the President who appointed me will not create in reasonable minds, with knowledge of all relevant circumstances that a reasonable inquiry would disclose, a perception that [my] ability to carry out judicial responsibilities with integrity, impartiality, and competence [would be] impaired.") (internal citation and quotation marks omitted). *Cf. Reddy v. O'Connor*, 520 F. Supp. 2d 124, 128 (D.D.C. 2007) (in a case involving Chief Justice John Roberts, concluding that "no reasonable and informed observer would question the impartiality of the undersigned based on the Chief Justice's appointment of the undersigned [Judge John D. Bates] to the

---

[7] The Court notes that Klayman was counsel of record for plaintiff in this case. *See MacDraw*, 138 F.3d at 35.

[Foreign Intelligence Surveillance Court].").  Accordingly, neither the fact that the undersigned was appointed by the former Clinton administration nor the Court's alleged connection to the Democratic party warrant or require recusal in the instant case.[8]

### III.  CONCLUSION

In conclusion, the Court finds that Klayman has failed to submit a "timely and sufficient affidavit" as is required to support disqualification under 28 U.S.C. § 144.  First, the Motion to Disqualify and supporting Affidavit were not timely filed at the "earliest moment," and the Motion must be denied for this reason alone.  Second, Klayman has failed to comply with the certification requirement set forth in 28 U.S.C. § 144.  Third and finally, the factual allegations set forth in the Affidavit are, even if true, legally insufficient to support a finding that the Court has an actual extrajudicial bias or prejudice.  The Affidavit largely consists of conclusory assertions and opinions, which lack the necessary degree of particularity required in a section 144 affidavit.  Moreover, neither of the grounds asserted in Klayman's Affidavit warrant or require disqualification under section 144.  It is well settled that complaints regarding the Court's

---

[8] The Court notes that Klayman also alleges that recusal is warranted because the undersigned's spouse, also a lawyer, "played a role which was useful to President Clinton during the infamous Monica Lewinsky scandal."  Pl.'s Aff. ¶ 6.  It is entirely unclear from Klayman's vague and conclusory assertions how this alleged fact, even if true, would tend to foster or create an actual bias on the part of the undersigned in this case.  Nor has Klayman provided any legal support for his apparent claim that recusal is warranted and necessary where, a decade or more ago, the presiding judge's spouse represented an individual, who is not a party to the instant litigation, in a matter wholly unrelated to the current lawsuit.  Accordingly, as Klayman alleges no financial or personal concerns implicated by the representation nor provides any facts or evidence that would cause a reasonable and informed observer to question this Court's impartiality, the Court finds that this claim, even if true, is legally insufficient to support disqualification.  *Cf. Microsoft Corp. v. United States*, 530 U.S. 1301, 1301 (2000) (order by Chief Justice William H. Rehnquist denying motion to recuse where his son's law firm represented a party but his personal and financial concerns were unaffected).

judicial rulings in this case as well as in the separate, unrelated *Sataki* matter do not provide a proper ground for recusal. Although it is clear that Klayman is displeased with the substance of certain of those decisions, disqualification is not required merely because he disagrees with the Court's judicial rulings, and Klayman has failed to identify with particularity any alleged extrajudicial source of bias. It is also equally established that disqualification is not warranted or required merely because the undersigned was appointed to the federal bench by former President Clinton and is alleged to have connections to and associations with the Democratic party.

Accordingly, consistent with its obligation to determine in the first instance whether the Motion and supporting Affidavit are timely filed and legally sufficient to require disqualification, the Court finds that the instant Motion to Disqualify is both untimely and legally insufficient. Disqualification under 28 U.S.C. § 144 is therefore neither required nor warranted. The Court is also satisfied, upon its own independent review of the record, that no reasonable and informed observer would question this Court's impartiality. Klayman's [345] Motion to Disqualify this Court pursuant to 28 U.S.C. § 144 is DENIED. An appropriate Order accompanies this Memorandum Opinion.


Date:   October 13, 2010


_____*/s/*_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge