# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**LARRY KLAYMAN**,

    *Plaintiff/Counter-Defendant*,

    v.

**JUDICIAL WATCH, INC.**, *et al.*,

    *Defendants/Counter-Plaintiffs*.

Civil Action No. 06-00670 (CKK) (AK)

## MEMORANDUM OPINION
(August 10, 2011)

Over five years ago, Plaintiff Larry Klayman ("Klayman")[1] commenced this action

against Defendants—Judicial Watch, Inc. ("Judicial Watch"), a non-profit public interest

government watchdog organization; Thomas J. Fitton ("Fitton"), President of Judicial Watch;

Paul J. Orfanedes, Secretary and a Director of Judicial Watch; and Christopher J. Farrell, a

Director of Judicial Watch (collectively, "Defendants")—asserting a variety of claims, including

breach of contract, violation of the Lanham Act, and defamation, in connection with events that

occurred after Klayman, who was formerly Judicial Watch's Chairman, left the organization in

September 2003.  Judicial Watch and Fitton in turn asserted counterclaims against Klayman

sounding in breach of contract, indemnification, unfair competition, and cybersquatting.  Despite

the passage of five years, resolution of this action has been needlessly delayed, largely as a result

of Klayman's conduct in this litigation.  Presently, there is a single motion pending before the

---

[1] Although Klayman has for quite some time been proceeding in this action *pro se*, he is an experienced attorney and is therefore presumed to have knowledge of the legal system. *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009).  As a result, he is not entitled to the same level of solicitude often afforded non-attorney litigants proceeding without legal representation.  *Baird v. Snowbarger*, 744 F. Supp. 2d 279, 286 (D.D.C. 2010).

Court: Defendants' [342] Motion to Strike, in which Defendants move to strike certain aspects of

Klayman's contributions to the parties' revised[2] [337-1] Joint Pretrial Statement—specifically,

Klayman's (i) statement of the case, (ii) list of witnesses, (iii) list of exhibits, and (iv) deposition

designations—on the claimed basis that Klayman has failed to fully comply with the orders of

this Court.  For the reasons set forth below, the Court concludes that the requested sanction is

appropriate under the unique circumstances presented in this case—most notably, Klayman's

consistent pattern of engaging in dilatory tactics, his disobedience of Court-ordered deadlines,

and his disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court,

coupled with the patent failure of the Court's use of lesser sanctions in the past to have any

discernible effect on Klayman's conduct in this litigation.  Accordingly, upon a searching review

of the parties' submissions, the relevant authorities, and the record as a whole, the Court will

grant Defendants' Motion to Strike.

## I.  BACKGROUND

The Court assumes familiarity with its various prior opinions in this action, which set

forth in detail the extensive factual and procedural background of this case.  Therefore, the Court

shall limit its discussion here to setting forth those facts most germane to the pending motion.

### A.    *A Brief Overview of Klayman's Past Litigation Misconduct*

Klayman commenced this action well over five years ago—on April 12, 2006.  *See*

Compl., ECF No. [1].  Its resolution has been needlessly delayed, largely due to Klayman's

consistent pattern of engaging in dilatory tactics, his repeated disobedience of Court-ordered

---

[2]  The parties' revised [337-1] Joint Pretrial Statement dated June 11, 2010 supersedes
their prior [333] Joint Pretrial Statement dated April 2, 2010.

deadlines, and his disregard for the Federal Rules of Civil Procedure and the Local Rules of this

Court.  Unfortunately, this Court previously has had more than ample opportunity to recount the

history of Klayman's conduct in this litigation.  *See, e.g.*, *Klayman v. Judicial Watch, Inc.*, 744 F.

Supp. 2d 264, 267 (D.D.C. 2010) (Kollar-Kotelly, J.) (observing that the "[r]esolution of this

matter been delayed . . . as a result of Klayman's own repeated failure to comply with the Court's

deadlines in this matter."); *Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 261 (D.D.C. 2009)

(Kay, M.J.)[3] (taking note of the "voluminous number of filings in this case resulting from

Klayman's obstinance at every stage"); Order (May 12, 2008) (Kollar-Kotelly, J.), ECF No.

[168], at 3 (describing Klayman's efforts to "stonewall" and "obstruct[]" discovery in this

action).  Over the course of the past five years, this Court has been forced to employ a variety of

tools in an attempt to secure Klayman's compliance with the Court's orders and to promote his

respect for his litigation obligations.  Simply by way of example, those tools have included

reminding Klayman of what is expected of him, informally admonishing him, denying his

motions without prejudice with leave to re-file, striking his pleadings from the record, subjecting

him to monetary sanctions, and precluding him from introducing certain evidence at trial.

Despite these measures, Klayman's litigation misconduct has continued unabated.

Revisiting the full array of Klayman's failures in this action is neither necessary nor

desirable here.  Instead, the Court will recount three examples that have particular relevance to

the pending motion—each of which pertains to Klayman's failure to produce documents and

information responsive to Defendants' discovery requests.

---

[3]  The Court referred this case to Magistrate Judge Alan Kay for resolution of discovery-related motions.  *See* Order (Dec. 3, 2007) (Kollar-Kotelly, J.), ECF No. [85].

First, Defendants served their first set of document requests and interrogatories upon

Klayman on June 13, 2007. *See* Mem. Order (Jan. 16, 2008) (Kay, M.J.), ECF No. [98], at 4.

Klayman did not respond until one week after his responses were due, "essentially grant[ing] his

own request for an extension." *Id.* at 6. Defendants also considered the substance of the

responses to be inadequate and ultimately filed a motion to compel and a motion for sanctions.

*See id.* at 5. In the course of resolving those motions, Magistrate Judge Kay found it "clear" that

"Klayman [was] attempting to stonewall Defendants and otherwise subvert the purposes of

discovery by providing patently evasive answers, asserting boilerplate objections, and unilaterally

making determinations of relevance." *Id.* at 23. Nonetheless, and although Magistrate Judge

Kay found Klayman and his then-counsel's behavior to be "without question unacceptable,"

Magistrate Judge Kay exercised his discretion to afford Klayman and his counsel "one more

opportunity to conduct discovery in a professional and efficient manner." *Id.* However,

Magistrate Judge Kay cautioned that if Klayman's future discovery responses "evidence[d] the

same obstructionist tactics that the Court ha[d] already observed," he would consider a renewed

motion for sanctions brought by Defendants. *Id.*

Second, Defendants served their supplemental document requests upon Klayman on

November 2, 2007, requests which by and large sought documents relating to Klayman's claimed

damages and Judicial Watch and Fitton's counterclaims against Klayman. *See* Mem. Order

(Mar. 12, 2008) (Kay, M.J.), ECF No. [117], at 4, 8-9. When Klayman failed to serve a timely

response, Defendants wrote Klayman's then-counsel warning that Defendants would seek the

Court's intervention if the documents were not provided. *Id.* So prompted, Klayman served his

written responses on Defendants, in which he asserted various objections and claims of privilege,

4

but nonetheless failed to produce any responsive documents and failed to provide a privilege log

substantiating his claims of privilege. *Id.* at 4-5.  Finding Klayman's responses to be inadequate,

Defendants provided Klayman and his then-counsel an additional warning that they would seek

the Court's intervention if Klayman continued to refuse to produce responsive documents. *Id.* at

5.  Despite these warnings, Klayman failed to produce the documents, and Defendants

consequently filed a motion to compel and a motion for sanctions. *Id.*  In resolving these

motions, Magistrate Judge Kay concluded that Defendants' position was meritorious as to all but

one document request. *Id.* at 5-12.  He found that each of the relevant requests sought

information pertinent to this action and determined that Klayman had failed to demonstrate that

the requests were improper, and accordingly ordered Klayman to produce responsive documents

by no later than March 22, 2008. *Id.* at 11.  Furthermore, troubled that Klayman failed to

respond to Defendants' document requests in a meaningful manner despite having already been

informally admonished for his failure to comply with his discovery obligations in the past and

despite having "ample opportunity" to do so, Magistrate Judge Kay determined that it was

appropriate to impose monetary sanctions against Klayman—specifically, the attorneys' fees and

expenses incurred by Defendants in bringing their motion to compel.[4] *Id.*  Subsequently, this

Court affirmed Magistrate Judge Kay's order in its entirety over Klayman's objections. *See*

Order (May 12, 2008) (Kollar-Kotelly, J.), ECF No. [167].

Third, Magistrate Judge Kay held a status conference with the parties following the

scheduled close of discovery, during which it became clear that Klayman still had not produced

---

[4] Magistrate Judge Kay determined the amount of the monetary sanctions in a separate opinion. *See* Mem. Order (July 1, 2008) (Kay, M.J.), ECF No. [199].

documents responsive to Defendants' outstanding discovery requests.  *See* Order (July 9, 2008)

(Kay, M.J.), ECF No. [200].  Based on Klayman's representation during the status conference

that he would provide the documents sought by Defendants by no later than July 25, 2008,

Magistrate Judge Kay ordered Klayman to produce responsive documents by the designated date.

*Id.* at 2.  However, Magistrate Judge Kay "caution[ed] [Klayman] to be mindful of this deadline,

and [that] further noncompliance with his discovery obligations [would] expose him to the risk

of sanctions."  *Id.*  Despite this clear and unambiguous warning, Klayman failed to produce any

responsive documents, and Defendants consequently filed a motion seeking to preclude Klayman

from testifying or admitting any evidence in support of his claims for damages or in support of

his defenses to Defendants' counterclaims.  *See* Defs.' Mot. for Pl.'s Failure to Comply with

Court Order, ECF No. [218].  But Klayman did not respond in a timely manner to Defendants'

motion nor produce any responsive documents.  *See* Mem. Op. (Mar. 24, 2009), ECF No. [301],

at 6.  Indeed, at the time Magistrate Judge Kay resolved Defendants' motion more than six

months after Klayman's opposition was due, Klayman still had not responded in any way either

to the motion or to the outstanding discovery requests.  *Id.*  Reaching the merits, Magistrate

Judge Kay concluded that Klayman's failure to produce responsive documents severely

prejudiced both Defendants and the judicial system itself and found that Klayman acted willfully

and with full knowledge that his actions violated the Court's prior orders and the Federal Rules

of Civil Procedure.  *Id.* at 8-9.  While Magistrate Judge Kay acknowledged that Defendants'

proposed sanction of precluding Klayman from testifying or presenting into evidence any

documents in support of his damages claims or in support of his defenses to Defendants'

counterclaims would "go to the heart of [Klayman's] claims and defenses," he nonetheless found

the sanction to be fully appropriate.  *Id.* at 7.  In reaching this conclusion, Magistrate Judge Kay

took into account, among other things, the prejudice caused by Klayman's conduct, the

willfulness of his actions, and the fact that "[p]rior attempts to alter [Klayman's] behavior with

the lesser sanction of monetary costs and fees [] proved fruitless."  *Id.* at 9.  Subsequently, this

Court affirmed Magistrate Judge Kay's order in its entirety.  *See Klayman v. Judicial Watch, Inc.*,

628 F. Supp. 2d 84 (D.D.C. 2009) (Kollar-Kotelly, J.).  In so doing, the Court observed that even

as of that late date, Klayman still had made "no representation that he [would] ***at any point*** make

any efforts to produce the responsive documents at issue."  *Id.* at 96 (emphasis in original).  That

remains true to this day.  In fact, to date, there is no basis for this Court to assume that Klayman

even *has* any evidence either in support of his damages claims or in support of his defenses to

Judicial Watch and Fitton's counterclaims.

### B.       Klayman's Misconduct During Pretrial Proceedings

Following a series of needless delays during the course of discovery, only some of which

are described immediately above and almost all of which were attributable to Klayman's refusal

to discharge his discovery obligations, the parties finally reached the summary judgment stage in

late 2008.  On June 25, 2009, this Court issued a decision resolving the parties' cross-motions for

partial summary judgment.  *See Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112 (D.D.C.

2009) (Kollar-Kotelly, J.).  With the parties' dispositive motions resolved, the case proceeded to

the pretrial stage of litigation.

On October 20, 2009, with the three basic aims of furthering the expeditious resolution of

this action, discouraging wasteful pretrial activities, and improving the quality of trial through

thorough advance preparation by the parties, this Court issued a [330] Pretrial Scheduling and

Procedures Order (the "PSP Order") delineating the parties' responsibilities in advance of trial. Pursuant to the PSP Order, the parties were required to, *inter alia*, (a) meet and confer in person with the goal of preparing a joint pretrial statement, (b) exchange written objections relating to any part of the proposed joint pretrial statement by no later than February 5, 2010, and (c) file their final joint pretrial statement with the Court by no later than March 31, 2010. *See* PSP Order, ECF No. [330], at 3-4. The parties were expressly warned that failure to conform to the Court's directives as set forth in the PSP Order might, if appropriate, result in the imposition of sanctions pursuant to Rule 16 of the Federal Rules of Civil Procedure. *See id.* at 1 n.1.

On March 30, 2010—the eve of the parties' deadline to file a joint pretrial statement— Klayman filed a belated request for an extension of time, claiming that he was otherwise occupied with an unrelated legal action in which he served as legal counsel. *See* Pl.'s Mot. for Two-Day Extension of Time to File Joint Pretrial Stmt., ECF No. [331]. Klayman's request was problematic on a number of fronts. As an initial matter, Klayman's request was not filed at least four days prior to the first impacted deadline, as required. *See* PSP Order at 2. More importantly, however, it was apparent that despite Defendants' efforts the parties had neither met and conferred to prepare the joint pretrial statement nor exchanged written objections, as required. *See* PSP Order at 3-4. Indeed, the Court found Klayman "wholly unprepared" to meet the deadlines ordered by the Court and concluded that an extension of time would unfortunately be necessary if the parties were to prepare and submit a joint pretrial statement in compliance with the Court's PSP Order. *See* Min. Order (Mar. 31, 2010). Therefore, the Court reluctantly granted Klayman's request for an extension, affording the parties until April 2, 2010 to file a joint pretrial statement with the Court. *See id.*

8

While the parties managed to meet the extended April 2, 2010 deadline, their [333] Joint Pretrial Statement was deficient in several notable respects.  During a status conference held on April 30, 2010, the Court discussed its concerns with the parties' submission at length and directed them to revise and re-file their Joint Pretrial Statement to speak to the Court's various concerns.  Specifically, in a written order memorializing the Court's directives during the status conference, the Court identified six specific problems with the Joint Pretrial Statement that required the parties' further and prompt attention.  *See* Order (Apr. 30, 2010) (Kollar-Kotelly, J.), ECF No. [334].[5]

First, although the parties were required to submit "[a] neutral statement of the case appropriate to be read to the jury," PSP Order at 3, Klayman and Defendants submitted opposing statements of the case, *see* Joint Pretrial Stmt. at 1-6.  Accordingly, the Court directed the parties to prepare a joint and neutral statement of the case appropriate for reading to the jury at the commencement of the trial.  *See* Order (Apr. 30, 2010) at 1.

Second, the parties were required to submit a list of witnesses identifying "all witnesses the party may call if not earlier called by the other party" and "set[ting] forth a brief description of the testimony to be elicited from [each] witness."  LCvR 16.4(b)(5).  If the opposing party asserted written objections to the proposed witness list, the proponent of the witness was required to respond in writing addressing the objection and citing legal authority supporting its position.

---

[5]  In addition to these six specific problems, which the Court directed the parties to address in a future revised statement, the Court found that Klayman had waived his opportunity to object to Defendants' proposed witnesses, exhibits, and deposition designations by failing to include those objections in the parties' Joint Pretrial Statement as required, with the limited exception that Klayman was permitted to file objections on the narrow basis that the proposed matters were wholly outside of and irrelevant to the claims and counterclaims that remain extant in the action.  *See* Order (Apr. 30, 2010) at 3.

*See* PSP Order at 4.  However, Klayman's list of witnesses offered only a purportedly non-

exhaustive listing of twenty-four witnesses or groups of witnesses that would include "[a]ll

Judicial Watch employees in the last six years since Klayman left Judicial Watch."  Joint Pretrial

Stmt. at 25-26.  Furthermore, for seventeen of the witnesses or groups of witnesses identified,

Klayman unhelpfully described the subject matter of the anticipated testimony simply as "all

issues."  *Id.*  Even for the remaining witnesses, Klayman merely indicated that he intended to

elicit testimony on such vague and broad matters as "fundraising" and "accounting issues."  *Id.*

Finally, even though Judicial Watch asserted a variety of general and specific objections to

Klayman's proposed list of witnesses, *see* Defs.' Objections to Pl.'s List of Witnesses and

Exhibits, ECF No. [333-3], at 1-2, Klayman failed to provide any response whatsoever to those

objections.  In light of these failings, the Court provided Klayman the following direction:

> Plaintiff must re-file an appropriate list of his proposed witnesses that
> (a) clearly and specifically identifies the subject matter(s) on which
> he proposes each witness to testify and (b) addresses Defendants'
> objections to Plaintiff's proposed witnesses, as set forth by
> Defendants in the parties' [330] Joint Pretrial Statement.  The Court
> reminds Plaintiff that his present indication that the witnesses intend
> to testify on "all issues" is insufficient as it does not permit
> Defendants to articulate specific objections to the proposed witnesses
> nor does it allow the Court to make informed rulings on any such
> objections.

Order (Apr. 30, 2010) at 1.

Third, although the parties were required to submit a list of exhibits "set[ting] forth a

description of each exhibit the party may offer in evidence," listing each exhibit "by title and

date," LCvR 16.4(b)(6), Klayman's list of exhibits merely listed eight categories of documents

and failed to specifically identify each actual exhibit, *see* Joint Pretrial Stmt. at 30.  Nor was it

clear that Klayman was referring to documents that were actually produced during the course of

discovery.  Simply by way of example, one category of exhibits was broadly described by

Klayman as "[a]ll documents concerning payment of Klayman's health insurance for his

children," without any further elaboration.  *Id.*  Moreover, as was the case with his list of

witnesses, Judicial Watch asserted a variety of general and specific objections to Klayman's

proposed list of exhibits, *see* Defs.' Objections to Pl.'s List of Witnesses and Exhibits at 3-4, but

Klayman failed to provide any response whatsoever to those objections.  Finding this cavalier

approach to the identification of exhibits to be introduced at trial to be completely unacceptable,

the Court provided:

> Plaintiff must re-file an appropriate list of his proposed exhibits that
> clearly identifies the specific documents he intends to admit.  Again,
> Plaintiff is reminded that simply stating "all documents" or "all
> correspondence" is insufficient.  In addition, Plaintiff must provide
> Defendants with copies of all specific documents identified in his
> proposed list of exhibits (to the extent the documents have not already
> been produced to Defendants or are not already within Defendants'
> possession) . . . so that Defendants may review the proposed exhibits.

Order (Apr. 30, 2010) at 1-2.

Fourth, in crafting their lists of exhibits, the parties were required to "separately identify[]

those which the party expects to offer and those which the party may offer if the need arises."

LCvR 16.5(b)(6).  However, the parties' proposed lists of exhibits failed to make this distinction.

*See* Joint Pretrial Stmt. at 30-40.  Accordingly, the parties were directed to "amend their list of

proposed exhibits to designate those documents that they intend to offer as part of their case-in-

chief (as opposed to those documents that are likely to be used only for impeachment or

rehabilitation purposes)."  Order (Apr. 30, 2010) at 2.

Fifth, Klayman indicated in his contributions to the Joint Pretrial Statement that he

intended to introduce the entirety of the deposition taken of Louise Benson at trial.  *See* Joint

Pretrial Stmt. at 40.  Because Defendants raised an objection to this broad designation, Klayman

was directed to "provide support for his position that [the deposition] . . . which Plaintiff has

designated in its entirety[] may be offered at trial either by *de bene esse* or by other means."

Order (Apr. 30, 2010) at 2.

Sixth, and finally, the Court required Defendants to consult with Klayman and re-submit

proposed jury instructions relating to their trademark claims, relying to the greatest extent

possible on model jury instructions compiled by a neutral legal authority, providing citations for

any non-standard instructions, and clearly identifying any deviations from model instructions.

*See id.* at 2.

After identifying these six deficiencies that would require the parties' further and prompt

attention, the Court set a schedule for further proceedings in yet another attempt to move the

action towards a final resolution.  Specifically, the parties were required to exchange revised

sections of the Joint Pretrial Statement for the other side's review by no later than June 1, 2010.

*See id.* at 3.  The parties were required to file their revised Joint Pretrial Statement, along with

any relevant objections, by no later than June 11, 2010.  *See id*. at 3-4.

Consistent with the schedule set by the Court, Defendants filed a revised [337-1] Joint

Pretrial Statement on June 11, 2010.  However, because Klayman failed to propose any changes

in accordance with the deadlines set by the Court, the revised Joint Pretrial Statement was

necessarily one-sided and incorporated only Defendants' proposed revisions.[6]  In lieu of

complying with the terms of the Court's April 30, 2010 Order, Klayman filed a belated motion

---

[6]  Because Klayman failed to lodge objections to Defendants' revisions in the manner
prescribed by the Court's PSP Order, any objections he may have asserted in a timely manner are
deemed to be waived.

for an extension of time on the eve of the designated deadline—once again in violation of this

Court's repeated instruction that any motion for an extension of time must be filed at least four

business days prior to the first impacted deadline—in which he sought a one-week extension to

discharge his obligations under the terms of the Court's prior orders, again claiming that he was

otherwise occupied with an unrelated legal action in which he served as legal counsel. *See* Pl.'s

Mot. for Extension of Time, ECF No. [35].  On June 16, 2010, the Court found that Klayman

was in violation of the Court's April 30, 2010 Order by failing to (a) timely complete and provide

his revisions to Defendants by June 1, 2010, and (b) file his proposed revisions with the Court in

a revised Joint Pretrial Statement by June 11, 2011.  *See* Order (June 16, 2010) (Kollar-Kotelly,

J.), ECF No. [338], at 2.  In this regard, the Court observed that Klayman's conduct was

consistent with his "repeated unwillingness to timely comply with the Court's orders in this

case."  *Id.* at 1.  However, the Court recognized that "an adequate Joint Pretrial Statement is

essential to assisting the Court in drafting a final pretrial order."  *Id.* at 3.  For this reason, the

Court reluctantly exercised its discretion to provide Klayman with "a ***final*** opportunity to comply

with the Court's April 30, 2010 Order."  *Id.* (emphasis in original).  By the terms of the Court's

June 16, 2010 Order, Klayman was afforded until June 18, 2010 to serve his proposed revisions

on Defendants.  *Id.*  The parties' deadline to file their revised Joint Pretrial Statement, and any

relevant objections, was extended to and including July 12, 2010.  *See id.* at 3-4.  In conclusion,

the Court gave Klayman the following warning:

> Plaintiff is placed on notice that **NO FURTHER EXTENSIONS
> SHALL BE GRANTED**.  If Plaintiff fails to adhere to the schedule
> set forth herein, the Court shall **STRIKE** those portions of the Joint
> Pretrial Statement that Plaintiff was required to amend under the
> April 30, 2010 Order—namely, his proposed list of witnesses and

13

exhibits.

*Id.* at 4 (emphasis in original).

Klayman did not meet the extended deadlines set by the Court.  Instead, on June 18, 2010—the day he was required to serve his proposed revisions upon Defendants—Klayman requested yet another extension of time.  *See* Pl.'s Mot. for Extension, ECF No. [339].  This time, based entirely on Klayman's representation that he was involved in a "serious hit and run car accident" that resulted in injuries leaving him unable to work at full capacity, the Court amended its June 16, 2010 Order to afford Klayman until and including June 28, 2010, at 12:00 p.m., to serve his proposed revisions upon Defendants.  *See* Min. Order (June 18, 2010).  The Court left its June 16, 2010 Order otherwise unaffected— meaning that the parties were still required to file their revised Joint Pretrial Statement, and any relevant objections, by no later than July 12, 2010.  *Id.*   Once again, the Court warned that "NO FURTHER EXTENSIONS [would] be granted."  *Id.* (emphasis in original).

The Court's generosity proved to be misplaced.  Klayman did not (a) serve his proposed revisions upon Defendants by June 28, 2010, (b) take any steps that would allow the parties to submit their revised Joint Pretrial Statement by July 12, 2010, or (c) seek an extension of the deadlines ordered by the Court.  Instead, on July 12, 2010—two weeks *after* he was required to serve his proposed revisions upon Defendants—Klayman filed a motion requesting a stay of all proceedings in this action, indicating only that he intended to file a future motion to disqualify the undersigned (his second such motion in this action) by July 16, 2010.  *See* Pl.'s Mot. to Stay, ECF No. [341].  Thereafter, Klayman did not even meet his own self-imposed deadline to file his intended motion, but rather filed a notice with the Court three days later expressing his intention

to file his motion to disqualify by no later than July 20, 2010.  *See* Pl.'s Praecipe, ECF No. [343].

But Klayman did not meet that self-imposed deadline either; it was not until July 26, 2010 that

Klayman filed his motion to disqualify.  *See* Pl.'s Mot. to Disqualify, ECF No. [345].

Despite a three-week delay resulting from Klayman's multiple requests for extensions of

time, *see* ECF Nos. [349]-[352], the parties eventually managed to brief Klayman's motion to

disqualify, which the Court denied almost ten months ago—on October 13, 2010.  *See Klayman*

*v. Judicial Watch, Inc.*, 744 F. Supp. 2d 264 (D.D.C. 2010) (Kollar-Kotelly, J.).  At the same

time, the Court denied Klayman's request for a stay as moot.  *Id.*  At no point was this action

stayed.  Nonetheless, in the intervening ten months, Klayman has not brought anything to this

Court's attention that would suggest that he has made any effort to come into compliance with

the Court's prior orders concerning the preparation of the parties' Joint Pretrial Statement.

Defendants filed the pending Motion to Strike on July 12, 2010.  *See* Defs.' Mot. to

Strike, ECF No. [342].  Recounting much of the procedural history discussed immediately above,

Defendants ask this Court to strike certain aspects of Klayman's contributions to the parties'

revised Joint Pretrial Statement—specifically, Klayman's (i) statement of the case, (ii) list of

witnesses, (iii) list of exhibits, and (iv) deposition designations—on the basis that Klayman has

failed to fully comply with the orders of this Court, and in particular this Court's April 30, 2010

Order requiring the parties to address various deficiencies in their original Joint Pretrial

Statement and the Court's subsequent orders extending the schedule for doing so.  *See id.*  On

July 26, 2010, Klayman filed a two-sentence opposition to Defendants' Motion to Strike,

claiming in relevant part that "the sanctions requested by Defendants is [sic] not warranted."  *See*

Pl.'s Opp'n to Defs. [sic] Mot. to Strike ("Pl.'s Opp'n"), ECF No. [344].

## II.  LEGAL STANDARD

Sanctions are integral to the fair and efficacious management of litigation and a crucial instrument "entrusted to the district courts to enable [them] to discharge efficiently their front-line responsibility for operating the judicial system." *Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990).  Experience has taught that the proper deployment of sanctions permits district courts to manage and administer their dockets and to protect their calendars from "the whims of recalcitrant litigants." *Webb v. District of Columbia*, 146 F.3d 964, 974 (D.C. Cir. 1998).  While district courts have the inherent authority to impose sanctions upon litigants, there is a panoply of more specific sources for such authority.  Most notably in the present context, Rule 16 of the Federal Rules of Civil Procedure provides, in relevant part:

> On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
>
> . . .
>
> (C)      fails to obey a scheduling or other pretrial order.

FED. R. CIV. P. 16(f).  It has been recognized that this "explicit reference to sanctions reinforces the . . . intention to encourage forceful judicial management."  FED. R. CIV. P. 16 advisory committee's note to 1983 amend.

In recognition of the district court's special role in the management of litigation and its greater familiarity with the parties, "[t]he determination of an appropriate . . . sanction is left to the discretion of the trial court." *Hull v. Eaton Corp.*, 825 F.2d 448, 452 (D.C. Cir. 1987).  Rule 16, which focuses on pretrial proceedings and scheduling orders, expressly incorporates several of the sanctions enumerated in Rule 37, which focuses on discovery obligations.  *See* FED. R.

Civ. P. 16(f)(1).  Those sanctions include:

> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii)   striking pleadings in whole or in part; [and]

> . . .

> (v)     dismissing the action or proceeding in whole or in part.

Fed. R. Civ. P. 37(b)(2)(A).

When choosing among the available alternatives, "the most severe in the spectrum of sanctions must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (*per curiam*).  In appropriate circumstances, the district court "may dismiss an action . . . because of a party's failure to comply with court orders designed to ensure orderly prosecution of the case." *Bristol Petroleum*, 901 F.2d at 167 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962)).  However, when the sanction selected is dismissal—or tantamount to dismissal—the district court must undertake a more searching inquiry than may otherwise be required.  *See Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001); *Peterson v. Archstone Communities LLC*, 637 F.3d 416, 418 (D.C. Cir. 2011).

The United States Court of Appeals for the District of Columbia Circuit "has identified three justifications for the imposition of defaults or dismissals as sanctions for misconduct: (1) prejudice to the other party, (2) prejudice to the judicial system requiring the district court to modify its own docket and operations to accommodate the delay, and (3) the need to sanction

conduct that is disrespectful to the court and to deter similar conduct in the future." *Butera*, 235

F.3d at 661 (internal quotation marks omitted; citation omitted).  Without a doubt, "dismissal is a

'drastic step, normally to be taken only after unfruitful resort to lesser sanctions.'" *Ripalda v.*

*Am. Operations Corp.*, 977 F.2d 1464, 1466 (D.C. Cir. 1992) (quoting *Jackson v. Wash. Monthly*

*Co.*, 569 F.2d 119, 123 (D.C. Cir. 1977)).  However, a district court is under no obligation to

exhaust the panoply of lesser sanctions before turning to the more severe sanction of dismissal,

provided it explains its reasons for issuing a more severe sanction.  *Webb*, 146 F.3d at 971.  The

reason is simple: "if district court judges are to discharge their heavy case processing

responsibilities effectively, their power to dismiss must be more than theoretical." *Bristol*

*Petroleum*, 901 F.2d at 167 (internal quotation marks and notations omitted; citation omitted).

### III.  DISCUSSION

The Court's discussion here proceeds in two parts.  The Court will first explain why

Klayman's opposition to Defendants' Motion to Strike is so patently inadequate that it is

tantamount to a concession as to the merits of the motion.  *See infra* Part III.A.  Thereafter, the

Court will explain why, even if the Court were to reach the merits of Defendants' Motion to

Strike, the relief requested by Defendants is fully warranted under the circumstances presented.

*See infra* Part III.B.

### A.    *Klayman Has Conceded the Merits of Defendants' Motion to Strike*

Defendants filed their Motion to Strike on July 12, 2010, recounting much of the

procedural history discussed above, *see supra* Part I.B, and asking this Court to strike Klayman's

(i) statement of the case, (ii) list of witnesses, (iii) list of exhibits, and (iv) deposition

designations from the parties' revised Joint Pretrial Statement based on Klayman's failure to

comply with the Court's April 30, 2010 Order requiring him to address several deficiencies in those materials and the Court's subsequent orders extending the schedule for doing so.  Over one year ago, on July 26, 2010, Klayman responded by filing a two-sentence opposition.[7]  In the first sentence, Klayman merely stated his intention to file a future motion to disqualify—a motion that was not filed until long after the deadlines for Klayman to comply with the Court's orders had already expired and a motion which was denied on the merits almost ten months ago.  *See supra* Part I.B.  In the second sentence, which comprises the sum total of Klayman's "substantive" response to Defendants' Motion to Strike, Klayman stated only as follows:

> Under the circumstances as well, the sanctions requested by Defendants is [sic] not warranted in any event.

Pl.'s Opp'n at 1.  Such an argument hardly warrants serious attention; courts need not resolve arguments raised in a cursory manner and with only the most bare-bones arguments in support. *See Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997).

Klayman's patently inadequate opposition does not offer any meaningful rejoinder to any of the following arguments made by Defendants in their Motion to Strike: (i) "Klayman has not provided counsel for the Defendants with his proposed amendments to the Joint Pretrial Statement," Defs.' Mot. to Strike at 2; (ii) "Klayman has once again ignored the deadlines set by the Court and failed to comply with this Court's Orders," *id.* at 2-3; (iii) "Klayman has not even attempted to correct the deficiencies . . . identified by the Court in its April 30, 2010 Order despite being given multiple extensions and opportunities to do so," *id.* at 3; (iv) "[a]s a result of Klayman's failure . . . every deficiency recognized by the Court in its April 30, 2010 Order

---

[7]  Klayman has never sought leave to supplement his opposition.

remains," *id.*; (v) "[b]ased on the deficient portions . . . , Defendants are unable to determine the subject matters on which Klayman's proposed witnesses will testify, the specific documents or other evidence he intends to introduce, Klayman's position regarding the objections interposed by Defendants or the specific portions of deposition transcripts to be used as well as the reasons therefore," *id.* and (vi) an appropriate sanction is to "strike Plaintiff's Statement of the Case, proposed List of Witnesses, proposed List of Exhibits, proposed deposition testimony and [to] prohibit [Klayman] from introducing any witness[es] or exhibit[s] in this proceeding," *id.*  In this Circuit, it is well-established that when a party files an opposition to a motion and addresses only certain arguments raised by the movant, a court may treat those arguments that the party has failed to address as conceded.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *Lewis v. District of Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011).  In this case, Klayman's opposition is so completely devoid of substance that it is tantamount to no opposition at all.  Therefore, in an exercise of its discretion, the Court will treat Defendants' Motion to Strike as conceded.  *See Geller v. Randi*, 40 F.3d 1300, 1304 (D.C. Cir. 1994) (concluding that the district court properly treated defendants' motion for sanctions as conceded).

**B.      The Sanctions Requested Are Fully Warranted Under the Circumstances Presented in this Case**

Even if the Court were to reach the underlying merits of Defendants' Motion to Strike, the same result would obtain because the Court concludes that the sanctions requested by Defendants are fully warranted under the circumstances presented.  Despite having more than ample opportunity to do so, Klayman has utterly failed to discharge his obligations in the course of pretrial proceedings.  This Court has already had the occasion to find that Klayman violated

the terms of its April 30, 2010 Order by failing to (a) timely complete and provide his revisions

to the parties' Joint Pretrial Statement to Defendants by June 1, 2010, and (b) file his proposed

revisions with the Court in a revised Joint Pretrial Statement by June 11, 2011.  *See* Order (June

16, 2010) at 2.  Nonetheless, the Court generously exercised its discretion to provide Klayman

with a "***final*** opportunity to comply with the Court's April 30, 2010 Order," *id.* at 3 (emphasis in

original), and warned Klayman in no uncertain terms that if he failed to comply, the Court would

"**STRIKE** those portions of the Joint Pretrial Statement that [he] was required to amend under

the April 30, 2010 Order," *id.* at 4 (emphasis in original).  Klayman did not heed these warnings

and failed to meet the extended deadlines set by the Court.  Still, the Court gave Klayman one

last chance to comply; pursuant to its June 18, 2010 Order, Klayman was allocated until June 28,

2010 to serve his proposed revisions on Defendants and until July 12, 2010 to file a revised Joint

Pretrial Statement with the Court in consultation with Defendants.  *See* Min. Order (June 18,

2010).  And he was warned that "NO FURTHER EXTENSIONS [would] be granted."  *Id.*

(emphasis in original).  But Klayman again flouted this Court's authority; he did not (a) serve his

proposed revisions upon Defendants by June 28, 2010, (b) take any steps that would allow the

parties to submit their revised Joint Pretrial Statement by July 12, 2010, or (c) seek an extension

of the deadlines ordered by the Court.

Over a year and three months ago, this Court specifically identified several deficiencies in

Klayman's (i) statement of the case, (ii) list of witnesses, (iii) list of exhibits, and (iv) deposition

designations.  *See* Order (Apr. 30, 2010) at 1-4.  Accounting for a series of extensions and delays,

more than a year has passed since Klayman's time to act expired and, to this day, he *still* has

made no attempt to comply with the Court's directives.  This is a level and pattern of

intransigence and disrespect for the Court's authority that is not often witnessed.  Klayman's

failures to comply with this Court's orders have been repeated, flagrant, and unrepentant.

The Court has no doubt that Defendants have been prejudiced as a result of Klayman's

pattern of disobeying court orders, including his consistent failure to cooperate in the preparation

of an appropriate joint pretrial statement.  The basic function of the pretrial statement is to

"narrow the issues [to be addressed at trial] and to put both the Court and the parties on notice of

which issues of fact and law are in dispute." *Winmar, Inc. v. Al Jazeera Int'l*, 741 F. Supp. 2d

165, 185 (D.D.C. 2010).  Due solely to Klayman's recalcitrance, Defendants have been deprived

of these benefits; Klayman's proffered descriptions of the testimony, evidence, and depositions

he intends to use at trial are so vague and sweeping as to be virtually useless.  Simply by way of

example, Defendants could not be expected to derive any meaning from Klayman's statement

that he intends to call no less than seventeen separate witnesses to testify as to "all issues."  Joint

Pretrial Stmt. at 24-26.  While this cavalier approach to the preparation of a pretrial statement

would be unacceptable in any context, it is particularly so in this case because Klayman has

already been precluded from introducing certain evidence at trial in this action, *see Klayman v.

Judicial Watch, Inc.*, 628 F. Supp. 2d 84 (D.D.C. 2009) (Kollar-Kotelly, J.), and Klayman's

hopelessly vague submissions prevent Defendants and this Court from ascertaining whether he

intends to rely upon evidence that falls within the scope of the Court's prior exclusion order.  At

bottom, this prejudice to Defendants is but the latest in a long line of burdens unfairly imposed

upon Defendants as a result of Klayman's conduct in this litigation.  While this prejudice is both

palpable and significant, the Court recognizes that it is at least arguable that it could be remedied

through less onerous sanctions than those proposed here, such as requiring Klayman to

compensate Defendants for the attorneys' fees and costs directly traceable to the misconduct at issue. As a result, the Court declines to rest its decision solely on the prejudice suffered by Defendants.

Similarly undeniable is the prejudice that has resulted to this Court. With what should have been a relatively straightforward administrative task, the Court has spent countless hours attempting to secure Klayman's basic compliance with its clear and unambiguous orders. Over the course of several months, this meant, *inter alia*, (a) aborting several attempts to conduct a final pretrial conference, (b) considering countless requests for continuances and extensions of time, and (c) crafting a detailed order explaining to Klayman, an experienced litigator, his basic obligations under the PSP Order, the Federal Rules of Civil Procedure, and the Local Rules of this Court. But perhaps most critically, Klayman's intransigence and obstructionist tactics have effectively brought this action to a standstill. Even though this action has now been pending for over five years, and should have reached a final resolution long ago, it remains in essentially the same posture as it did on April 30, 2010. More broadly, this action has subsumed no small part of the Court's attention over the past five years—often with matters having no bearing upon the actual merits of the parties' claims and counterclaims—diverting its attention from other cases on its docket in which the parties have diligently and civilly sought to prosecute their claims and defenses in accordance with the Court's orders and the applicable procedural rules. Still, however real the prejudice to this Court and its docket, the Court also declines to rest its decision solely on this basis.

Instead, at the heart of the Court's concern is the message that condoning Klayman's conduct would send about the integrity of the judicial system. Based upon its years of experience

23

with this litigation, and having witnessed firsthand Klayman's long and established pattern of openly disobeying court orders, the Court finds that a severe sanction is necessary to protect the integrity of the judicial system and to deter similar misconduct in the future.  As previously mentioned, Klayman's conduct rises to a level and pattern of intransigence and disrespect for the Court's authority that is not often witnessed.  His failures to comply with this Court's orders have been repeated, flagrant, and unrepentant.  This Court has been exceedingly generous—perhaps too generous—in affording Klayman multiple opportunities to come into compliance with the Court's orders and has repeatedly warned him of the consequences that would result from non-compliance.  Ultimately, the opportunities have been squandered and the warnings left unheeded.  Klayman's flagrant disregard of this Court's authority, in face of the Court's patient efforts to secure his compliance, simply cannot stand without repercussions.

The only question that remains is the appropriate sanction.  In this regard, the Court agrees with Defendants that the most appropriate sanction under these circumstances is to strike Klayman's defective contributions to the parties' revised Joint Pretrial Statement—namely, his (i) statement of the case, (ii) list of witnesses, (iii) list of exhibits, and (iv) deposition designations—and to preclude Klayman from introducing any witnesses or exhibits at the trial in this action.  In reaching this conclusion, the Court is fully aware that this sanction precludes Klayman from presenting any affirmative evidence in support of his claims or in defense to the counterclaims asserted against him.

Without a doubt, this is a severe sanction.  Its application in this action will effectively prevent Klayman from carrying his burden of proof on his claims, thereby almost certainly *requiring* dismissal.  Similarly, if he is unable to mount a sufficient defense against Judicial

Watch and Fitton's counterclaims through cross-examination of witnesses introduced by Judicial Watch and Fitton on their case-in-chief or through opening and closing arguments, then the likelihood is high that Judicial Watch and Fitton will prevail on their counterclaims.  True, the magnitude of this particular sanction is lessened somewhat here for at least two reasons.  First, Klayman has *already* been precluded from testifying or presenting into evidence any documents in support of his damages claims or in support of his defenses to Defendants' counterclaims.  *See Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 84 (D.D.C. 2009) (Kollar-Kotelly, J.).  Second, to this day, Klayman *still* has made no representation that he would at any point make any efforts to produce documents responsive to Defendants' document requests and there is no reason for this Court to assume that Klayman even *has* any evidence either in support of his damages claims or in support of his defenses to the counterclaims asserted against him.  *See supra* Part I.A.  But the sanction is nonetheless a profound one and warrants this Court's close and careful scrutiny. Indeed, because the sanction approaches outright dismissal of Klayman's claims and the entry of default on Judicial Watch and Fitton's counterclaims, the Court considers it prudent to ask whether the application of those drastic remedies would be appropriate under the circumstances presented.  *See Butera*, 235 F.3d at 661.  For at least six reasons, the Court concludes that it is.

First, this Court expressly warned Klayman in no uncertain terms that it would "**STRIKE** those portions of the Joint Pretrial Statement that [he] was required to amend under the April 30, 2010 Order."  Order (June 16, 2010) at 2 (emphasis in original).  When a party's contributions are stricken from a pretrial statement, it is as if they never existed in the first place and they are precluded from relying on such matters at trial.  *Cf. Smith v. Wash. Sheraton Corp.*, 135 F.3d 779, 784 (D.C. Cir. 1998); *Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55, 68

(D.D.C. 2010); *Winmar, Inc. v. Al Jazeera Int'l*, 741 F. Supp. 2d 165, 185 (D.D.C. 2010). Since Klayman elected to flout this Court's orders with full knowledge of the potential repercussions, he cannot now be heard to complain when the Court imposes the sanction contemplated at the very outset.

Second, the proposed sanction is tailored to speak to the nature of the misconduct. This Court's April 30, 2010 Order specifically identified several deficiencies in Klayman's (i) statement of the case, (ii) list of witnesses, (iii) list of exhibits, and (iv) deposition designations. *See* Order (Apr. 30, 2010) at 1-4. Due to Klayman's failure to comply with this Court's order, those deficiencies remain and striking the non-compliant portions of Klayman's contributions to the parties' revised Joint Pretrial Statement is an appropriate response to the misconduct.

Third, it is pellucidly clear to the Court that Klayman has acted willfully and with full knowledge that his actions were not in accordance with this Court's orders. He was repeatedly warned of his obligations, generously afforded multiple opportunities to come into compliance, cautioned that he would be provided with no further opportunities, and warned that non-compliance would be met with sanctions. Klayman's flagrant disregard of this Court's orders, in the face of the Court's patient efforts to secure his compliance, is an affront to the authority of this Court and the federal judiciary as a whole.

Fourth, Klayman's most recent acts of disobedience are but the latest in a well-established pattern of litigation misconduct and disrespect for the Court's authority. *See supra* Part I.A. Klayman has been reminded time and time again as to his obligations as a party before this Court, but he has repeatedly failed to meet them and often openly rebuffed them. His latest misconduct is merely the culmination of a protracted course of dilatory tactics and other

26

improper behavior in a litigation that has dragged on for years.  Courts have not hesitated to order

dismissal or enter default judgment as a sanction where a litigant has engaged in a pattern of non-

compliance with court orders.  *See, e.g.*, *Bristol Petroleum Corp.*, 901 F.2d at 165; *Flynn v.*

*Thibodeaux Masonry, Inc.*, 311 F. Supp. 2d 30, 37 (D.D.C. 2004); *Secs. & Exch. Comm'n v.*

*Hollywood Trenz, Inc.*, 202 F.R.D. 3, 7 (D.D.C. 2001); *Walls v. Paulson*, No. 03 Civ. 0186

(RMU), 2008 WL 2520813, at *1 (D.D.C. June 23, 2008); *Tucker v. District of Columbia*, 115

F.R.D. 493, 496-97 (D.D.C. 1987).

Fifth, over the course of the past five years that this action has been pending, this Court

has been forced to employ a variety of tools in an attempt to secure Klayman's compliance with

the Court's orders and to promote his respect for his litigation obligations.  *See supra* Part I.A.

Those tools have included reminding Klayman of what is expected of him, informally

admonishing him, denying his motions without prejudice with leave to re-file, striking his

pleadings from the record, subjecting him to monetary sanctions, and precluding him from

introducing evidence at trial.  Despite these measures, some of them quite severe in their own

right, Klayman's litigation misconduct has continued unabated.  Based upon its years of

experience with this litigation, and having witnessed firsthand Klayman's long and established

pattern of openly disobeying court orders, the Court is convinced that the proposed sanction is

necessary to protect the integrity of the judicial system and to deter similar misconduct in the

future.

Sixth, and finally, because Klayman has long been serving as his own attorney in this

action, and was during the pretrial proceedings relevant to the pending motion, this Court has no

misgivings that the imposition of the proposed sanction would unfairly penalize the innocent

client for the sins of his counsel.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' [342] Motion to Strike.  The Court concludes that Klayman's failure to comply with this Court's orders concerning pretrial proceedings in this action warrants the imposition of sanctions and that the appropriate sanction is to strike Klayman's defective contributions to the parties' revised Joint Pretrial Statement—namely, his (i) statement of the case, (ii) list of witnesses, (iii) list of exhibits, and (iv) deposition designations—and to preclude Klayman from introducing any witnesses or exhibits at the trial in this action.  An appropriate Order accompanies this Memorandum Opinion.


Date:    August 10, 2011


_____*/s/*_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

28