# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>                Plaintiff,<br><br>        v.<br><br>JUDICIAL WATCH, INC., *et al.*,<br><br>                Defendants. | Civil Action No. 06-670 (CKK) |

## MEMORANDUM OPINION AND ORDER
(June 15, 2017)

On January 13, 2017, the Court held a continued Pretrial Hearing in this matter to discuss "the current posture of this case and how it shall proceed." Minute Order, Jan. 13, 2017. As relevant here, the Court required the parties to submit briefing regarding the types of damages that Plaintiff could pursue with respect to his five remaining claims, in light of the discovery sanctions that had previously been imposed upon Plaintiff during the course of this litigation. The purpose of this request was to assess whether the evidentiary limitations imposed on Plaintiff essentially limited him to nominal damages on the five remaining claims, all of which seek relief for breach of contract. Following receipt of the parties' briefing, the Court held a further Pretrial Hearing on April 20, 2017. Therein, Plaintiff stated an additional and unprecedented request to pursue damages for intentional infliction of emotional distress with respect to the remaining claims. *See* Hr'g Tr. 18:24-19:8, Apr. 20, 2017, ECF No. 398. Although the Court noted its reluctance to countenance either emotional distress damages, or a new claim for intentional infliction of emotion distress, in an abundance of caution the Court permitted Plaintiff: *first*, to identify those documents, solely from the materials produced by Defendants in this action, which show that Defendants were on notice of Plaintiff's emotional distress claim; and *second*, to brief

the issue of whether, as a matter of law, such damages could be recovered in the context of Plaintiff's remaining claims for breach of contract. Minute Order, April 20, 2017.

Having reviewed the parties' pleadings and supporting materials,[1] the Court is now in a position to rule on the types of damages that Plaintiff can pursue at trial. For the reasons stated below, the Court finds that Plaintiff is limited to nominal damages (or specific performance) as to all claims other than his claim that Defendants breached the non-disparagement clause in the Severance Agreement. ECF No. 14-1 ("Severance Agreement"). Accordingly, Defendants' [386] Motion Pursuant to the Court's January 13, 2017 Minute Order is **GRANTED**.

On the disparagement claim, the Court remains willing to at least consider relaxing its prior discovery sanctions and permitting Plaintiff to testify, but based on the materials furnished to date, the Court is not yet convinced that Plaintiff has made out a case for recovering reputation damages. Accordingly, Plaintiff shall be permitted to provide the Court and Defendants with documents, *solely from materials that have already been*

---

[1] The Court's consideration has focused on the following documents:

- Pl.'s Mot. for Consolidation, ECF No. 384;
- Defs.' Opp'n to Pl.'s Mot. for Consolidation, ECF No. 385;
- Pl.'s Reply to Defs.' Opp'n to Mot. to Consolidate, ECF No. 387;
- Defs.' Mot. Pursuant to the Court's Jan. 13, 2017 Minute Order, ECF No. 386;
- Pl.'s Resp. to Defs.' Mot. Pursuant to Jan. 13, 2017 Minute Order, ECF No. 388;
- Defs.' Reply in Support of Mot. to Clarify Damages, ECF No. 390;
- Pl.'s Resp. to Court's Minute Order of Jan. 13, 2017, ECF No. 389
- Defs.'s Resp. to Pl.'s Claim (5) Statement, ECF No. 391;
- Pl.'s Reply to Judicial Watch's Resp. to Pl.'s Statement Pursuant to this Court's Minute Order of Jan. 13, 2017, ECF No. 393;
- Pl.'s Resp. [to] this Court's Minute Order of Apr. 20, 2017, ECF No. 397;
- Defs.' Opp'n to Pl.'s Resp. [Docket 397] to the Court's Minute Order of Apr. 20, 2017, ECF No. 399; and
- Pl.'s Reply to Defs.' Opp'n to Pl.'s Resp. [ECF No. 399], ECF No. 400.

*produced in the course of this litigation*, evidencing the amount of monetary damages that he sustained from specific lost business opportunities that flowed from the alleged breach of the non-disparagement clause in the Severance Agreement. Absent such evidence, however, reputation damages cannot be pursued with respect to the non-disparagement claim, and Plaintiff shall consequently be limited to nominal damages as to *all* of his remaining claims in this litigation.

Finally, the Court has received and reviewed Plaintiff's Motion to Consolidate. For the reasons stated by the Court during the April 2017 Pretrial Hearing, which are memorialized below, that Motion shall be **DENIED**.

## I. DISCUSSION

### A. Plaintiff's Remaining Claims Only Seek Breach of Contract Damages

The Court previously concluded that, as to Plaintiff's "Second Amended Complaint, the following allegations of breach of contract asserted in Counts Seven and Eight remain viable": (1) Defendants' alleged failure to make a good faith effort to remove Plaintiff as guarantor of a lease for Judicial Watch's headquarters; (2) Defendants' failure to pay health insurance for Plaintiff's children; (3) Defendants' filing a motion to strike Plaintiff's appearance in a Florida litigation; (4) Defendants' failure to provide Plaintiff with access to documents regarding a client; and (5) Defendants' alleged disparagement of Plaintiff and misrepresentations of the reasons for his departure from the organization. *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 118 (D.D.C. 2009) (Kollar-Kotelly, J.). All five of these claims are styled as breach of contract claims for alleged violations of the Severance Agreement.

Claims (1), (2), and (3) are stated in paragraph 66 of the Second Amended Complaint, which lists a number of ways in which Defendants allegedly breached the Severance Agreement. Compl. ¶ 66 ("[Defendants] engaged in the following additional conduct in breach of the Severance Agreement"); ¶ 66C ("Judicial Watch failed to pay Klayman and his family for health care insurance"); ¶ 66F ("Judicial Watch failed to make a good faith effort to remove Klayman as a personal guarantor from the lease for Judicial Watch's headquarters at 501 School Street, S.W., Washington D.C."); ¶ 66G ("Judicial Watch filed false and frivolous legal pleadings"). As noted, Counts Seven and Eight are the only remaining counts associated with these three claims. Count Seven seeks breach of contract damages for the violations alleged in paragraph 66. *Id*. at 28 ("COUNT SEVEN – Breach of Contract – Damages"); ¶ 139 ("As alleged above, Judicial Watch breached the Severance Agreement as set forth in above in Paragraph 66."). Count Eight adds a demand for specific performance with respect to claim (1). *Id*. ¶ 145. Furthermore, the damages count associated with Count Seven seeks a monetary award of "a sum in excess of five-hundred thousand dollar . . . ." *Id*. at 32.

With respect to claim (4), only specific performance is sought. Compl. at 29 ("COUNT EIGHT – Breach of Contract – Specific Performance"); ¶ 146 ("Judicial Watch has failed to provide Klayman access to documents as required under the Severance Agreement."). Finally, claim (5) was not challenged by Judicial Watch in its motion for summary judgment, which sought dismissal of "[a]ll aspects of Count Seven *except for* Klayman's 'disparagement' claim arising from the allegation that Judicial Watch actively misrepresented the reasons for his departure or otherwise created the allegedly false impression that he was forced to leave the organization[.]" ECF No. 269, at 38 (emphasis

added); *see Klayman*, 628 F. Supp. 2d at 121 n.5. Accordingly, Count Seven, which seeks breach of contract damages, remains viable as to Claim (5).

In sum, claims (1) through (5) are ordinary breach of contract claims that seek either economic damages or other contract remedies, namely, specific performance. With respect to these claims, no reference is found in the complaint to punitive or emotional distress damages, or any other type of consequential damages.

## B. The Discovery Sanctions Limit Plaintiff to Nominal Damages

As relevant here, Plaintiff has on two occasions been subject to discovery sanctions by this Court for litigation misconduct. Taken together, these essentially preclude him from proffering affirmative evidence at trial either to establish damages with respect to his remaining breach of contract claims, or to defend against Defendants' counterclaims. On the first occasion, the Court affirmed the imposition of discovery sanctions by Magistrate Judge Alan Kay, which "prohibited [Plaintiff] from testifying to or introducing into evidence any documents in support of his damage claims or in support of his defenses to Defendants' counterclaims." *Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 263 (D.D.C.), *aff'd*, 628 F. Supp. 2d 84 (D.D.C. 2009) (*Sanctions I*). The basis for this sanction was the severe prejudice imposed on Defendants by Plaintiff's failure to produce "any of the documents requested by Defendants." *Id*.

Subsequently, this Court imposed additional sanctions on Plaintiff for his failure to comply with the dictates of the pretrial process delineated by the Pretrial Scheduling and Procedures Order, ECF No. 330, including by failing to identify exhibits or witnesses for trial in the manner required by that Order. *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 143 (D.D.C. 2011) (*Sanctions II*). In particular, the Court struck Plaintiff's

"defective contributions to the parties' revised Joint Pretrial Statement[,]" and precluded Plaintiff "from introducing any witnesses or exhibits at the trial in this action." *Id*. at 151. As with the sanctions imposed by Magistrate Judge Kay, the Court was guided principally by the "long line of burdens unfairly imposed upon Defendants as a result of [Plaintiff's] conduct in this litigation[,]" not least of which was the failure to abide by the pretrial process, which is essential to "put both the Court and the parties on notice of which issues of fact and law are in dispute." *Id*. at 149–50 (internal quotation marks omitted). Nor was the Court blind to the effect that this further sanction would have on Plaintiff's case, recognizing that its "application in this action will effectively prevent Klayman from carrying his burden of proof on his claims, thereby almost certainly *requiring* dismissal." *Id*. at 151. And although Plaintiff now indicates that there is an ambiguity in the sanctions decisions regarding whether he can personally testify at trial for purposes of seeking damages on his remaining claims, that is plainly not the case. *See* Pl.'s Resp. to Defs.' Mot. Pursuant to Jan. 13, 2017 Minute Order, at 1 n.1. Magistrate Judge Kay's sanctions order expressly precluded Plaintiff "from testifying to . . . in support of his damage claims . . . ." *Sanctions I*, 256 F.R.D. at 263. This Court's further sanction merely extended the scope of this order by precluding Plaintiff from introducing *any* witnesses at trial, including himself. *Sanctions II*, 802 F. Supp. 2d at 143. In sum, the sanctions previously imposed by Magistrate Judge Kay and this Court preclude Plaintiff from proffering *any affirmative evidence* at trial, including his own testimony, with respect to the damages he sustained as a result of the remaining claims for breach of contract.

Under District of Columbia law, to recover damages for a breach of contract, a plaintiff must "provide some reasonable basis upon which damages may be estimated."

*Window Specialists, Inc. v. Forney Enterprises, Inc.*, 106 F. Supp. 3d 64, 92 (D.D.C. 2015)

(citing *Mashack v. Superior Mgmt. Servs., Inc.*, 806 A.2d 1239, 1241–42 (D.C.2002)).

Although a plaintiff need not prove damages "with mathematical certainty," he must

provide "some reasonable basis on which to estimate damages." *Garcia v. Llerena*, 599

A.2d 1138, 1142 (D.C. 1991) (internal citations omitted). If the plaintiff establishes breach

of contract, but fails to "demonstrate actual damages" or its "proof of damages is vague or

speculative," then the party is "entitled to no more than nominal damages." *Window

Specialists*, 106 F. Supp. 3d at 92 (citing *Cahn v. Antioch Univ.*, 482 A.2d 120, 130

(D.C.1984)). Failure to offer a "reasonable basis for calculating" damages means that the

plaintiff "has not met its burden of proof" to recover damages for breach of contract, and

may only recover nominal damages. *Id.*

Here, even if Plaintiff is able to establish that Judicial Watch breached the

Severance Agreement with respect to his remaining claims, sanctions will preclude him

from introducing the necessary affirmative evidence to establish the amount of damages he

sustained as a consequence of that breach. For instance, the economic damages flowing

from the failure to pay his family's medical insurance can only be shown by the

introduction of billing statements for the insurance payments that he made, or the medical

expenses that he had to cover, and no such documents were produced by Plaintiff in

discovery. Likewise, economic damages stemming from the filing of false pleadings in the

Florida litigation can reasonably only be established by documentary evidence, which was

not produced by Plaintiff during discovery, showing Plaintiff's lost revenue as an attorney

in that case, or by establishing the amount of hours he spent defending against the allegedly

frivolous pleadings. Similarly, although it is difficult for the Court to conceive of what

specific economic damages flowed from Defendants' alleged failure to remove Plaintiff as a guarantor of Judicial Watch's lease of its headquarters, any such damages would need to be established with substantial testimonial and documentary evidence (e.g., if Plaintiff's ability to obtain credit was impaired), none of which, again, was produced by Plaintiff during discovery. The same is true of Plaintiff's disparagement claim—the Court cannot conceive of how Plaintiff could establish damages for this claim without substantial testimony and evidence showing how he was harmed by Defendants' allegedly disparaging conduct. Nonetheless, for the reasons detailed below, the Court has been at least willing to consider relaxing its sanctions to permit Plaintiff to testify as to his disparagement claim, with the notion that such testimony could at least theoretically establish reputation damages. Whether such testimony would suffice to establish damages as a matter of law is assessed in the following section. For the remaining claims, however, the Court finds that Plaintiff is limited to nominal damages (except for claim (4), which is limited to specific performance); and although Plaintiff seeks to pursue damages for emotional distress in connection with his remaining claims, as discussed below, that is precluded by law.

### C. Availability of Reputation Damages for Plaintiff's Disparagement Claim

As a general "rule," reputation damages are not recoverable for a breach of contract claim. *See, e.g.*, *Redgrave v. Boston Symphony Orchestra,* 855 F.2d 888, 892 (1st Cir. 1988) (explaining that Massachusetts is in agreement with "virtually all other jurisdictions" in holding that reputation damages are unavailable in contract actions); *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005) ("Damages to reputation generally are not recoverable in a breach of contract."); *Stancil v. Mergenthaler Linotype Co., a Div. of Eltra Corp.*, 589 F. Supp. 78, 85 (D. Haw. 1984) (adopting "the majority view that damages

for injury to reputation are not properly awardable in a breach of contract suit."); *O'Leary v. Sterling Extruder Corp.*, 533 F. Supp. 1205, 1209 (E.D. Wis. 1982) ("The courts seem to be in general agreement that damages for injury to reputation are not properly awardable in a breach of contract suit."); *Herrera v. Union No. 39 School District*, 917 A.2d 923, 933 (Vt. 2006) (holding that for breach of an employment contract, harm to reputation is considered to be "outside the range of foreseeable losses").

Although stated as a general rule, however, the unavailability of reputation damages actually stems from the application of two general requirements for recovering consequential damages in a breach of contract action. First, the consequential damages sought must have been "in the contemplation of both parties at the time they made the contract," *Redgrave*, 855 F.2d at 893 (stating the rule of *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854)). Second, consequential damages must be proved with reasonable certainty, beyond mere speculative loss. *See Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 287 (4th Cir. 2005); *Redgrave*, 855 F.2d at 892.

The District of Columbia applies these same two factors to determine if consequential damages are recoverable. In particular, such damages are recoverable if they "could reasonably have been in contemplation of both parties when they made the contract." *Phenix-Georgetown, Inc. v. Charles H. Thompkins Co.*, 477 A.2d 215, 225 (D.C. 1984); *see also Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 832–33 (D.C.), *cert. denied*, 409 U.S. 1049 (1972) (holding that plaintiff should have "reasonably contemplated" that a breach of contract in providing adequate air conditioning would result in loss of business income). Additionally, consequential damages may not be based on "mere speculation or guesswork." *Vector Realty Grp., Inc. v. 711 Fourteenth St., Inc.*, 659 A.2d 230, 234 (D.C.

1994) (quoting *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C. 1982)). Rather the "evidence offered must form an adequate basis for reasoned judgment." *Id.* Damages do not need to be calculated with "mathematical precision[,]" but must at least provide "reasonable certainty" that the party suffered calculable loss. *Sears*, 290 A.2d at 833.

District of Columbia and Maryland common law[2] offer no specific guidance on whether reputation damages are recoverable in a breach of contract action. As a result, the Court proceeds to analyze the availability of reputation damages in this action by applying the general requirements for obtaining consequential damages.

### 1. *Reasonable Contemplation of the Parties*

In the District of Columbia, a plaintiff "is entitled to damages that were foreseeable at the time the contract was made. Damages are foreseeable if they are the sort that the parties would have reasonably envisioned, or are the sort that would flow naturally and obviously from the breach of the contract." Standardized Civil Jury Instr. for D.C. § 11.31; *see also Sears*, 290 A.2d at 832–33 (awarding plaintiff consequential damages for "loss of business income or profits in the operation of [plaintiff's] coffeehouse" because defendants knew that plaintiff was operating a business for profit, and should have "reasonably contemplated that a breach of contract in providing adequate air conditioning would result in loss of business income or profits in the operation of the coffeehouse").

---

[2] "The District [of Columbia] derives its common law from Maryland and decisions of Maryland courts on questions of common law are authoritative in the absence of District authority." *McFadden v. Wash. Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 222 (D.D.C. 2013) (internal citations omitted).

The question before the Court is whether the parties contemplated that reputation damages would be available for a breach of the non-disparagement provision in the Severance Agreement. The Agreement provides, in relevant part, that:

> Klayman expressly agrees that he will not directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish in any manner, disparaging, defamatory, or negative remarks or comments about Judicial Watch or its present or past directors, officers, or employees. Judicial Watch expressly agrees that its present directors and officers namely Paul Orfanedes and Thomas Fitton, will not, directly or indirectly, disseminate or publish, or cause or encourage anyone else to disseminate or publish in any manner, disparaging, defamatory, or negative remarks or comments about Klayman. Nothing in this paragraph is intended to, nor shall be deemed to limit either party from making fair commentary on the positions or activities of the other following the Separation Date.

Severance Agreement ¶ 17. Plainly, a non-disparagement clause requires a different analysis than a contract provision which, for example, promises delivery of some component. It may be that if the deliverer breaches, and the buyer is unable to find an alternative supplier, he will be unable to produce his product, and will thereby suffer reputational harm among his customers and business peers. Nonetheless, absent some extenuating circumstances, reputation damages will not be recoverable because it is unlikely that the business parties contemplated that these damages would be compensable when they entered their run-of-the-mill sales contract. Here, however, the language of the Severance Agreement itself permits a reasonable inference that the parties contemplated that, if one made "disparaging, defamatory, or negative remarks or comments" about the other, he would suffer reputational harm, and that such harm would be compensable. Consequently, whether Plaintiff can recover for losses to his reputation rests on his ability to satisfy the second prong of the consequential damages analysis: proof of damages with reasonable certainty.

## 2. *Reasonably Certain Loss*

District of Columbia law requires that any consequential damages "must be proved with reasonable certainty." *Sears*, 290 A.2d at 833. In most cases, this general rule of the common law precludes a plaintiff from recovering reputation damages because such losses are "unduly speculative." *Redgrave*, 855 F.2d at 892. Nonetheless, some courts have reasoned that if a breach of contract causes the plaintiff to lose out on identifiable professional opportunities, the plaintiff may recover damages for such loss when the "monies for loss of the other employment" are "rationally calculable." *Redgrave*, 855 F.2d at 892; *see also Rice*, 203 F.3d at 289 (vacating the district court's award of consequential damages because the plaintiff's claim constituted only a "nonspecific allegation of damage to reputation").

In *Redgrave*, plaintiff argued that the Boston Symphony Orchestra's cancellation of her employment contract—due to her political affiliations—damaged her professional career because a "number of specific movie and theater performances" that would have been offered to her in the usual course of events were not offered to her as a result of the cancellation. 855 F.2d at 893. The First Circuit distinguished Redgrave's claim for consequential damages based on the "loss of *identifiable* professional opportunities[,]" from "nonspecific allegation[s] of damage to reputation," allowing recovery of the former when the plaintiff presents "sufficient evidence" that the breach of contract proximately caused the loss of professional opportunities. *Id.* at 894 (emphasis added); *see also Rice*, 203 F.3d at 290 (reversing district court for permitting plaintiff to recover reputation damages absent sufficient proof of lost business opportunities); *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. CV 10-5270 SJF AKT, 2013 WL 1335997, at *10 (E.D.N.Y. Feb. 28,

2013) (finding that under New York law, "damages to reputation may be available where a plaintiff can prove specific business opportunities lost as a result of its diminished reputation" (internal quotation marks omitted)), *report and recommendation adopted*, No. 10-CV-5270 SJF AKT, 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013).

Plaintiff claims that Judicial Watch "orchestrate[d] an effort to cause media outlets, including radio and television stations and broadcast and cable networks, to shun [Plaintiff]." Compl. ¶ 40. Plaintiff further alleges that

> [b]y threatening the media and directing media outlets that they could no longer refer to Klayman as Judicial Watch's founder and former Chairman, or ever discuss anything that concerned or related to Judicial Watch, Fitton and others breached the Severance Agreement and disparaged, defamed and portrayed Klayman in a false light.

*Id*. ¶ 44. As stated above, the disparagement claim has been described as "arising from the allegation that Judicial Watch actively misrepresented the reasons for [Plaintiff's] departure or otherwise created the allegedly false impression that he was forced to leave the organization[.]" *See supra* at 4. Though limited, the discovery record does contain facts that could support Plaintiff's recovery of damages for loss of identifiable professional opportunities, specifically a lost CNN appearance. *See, e.g.*, Klayman Dep. Tr. (Apr. 8, 2008) ("Klayman Dep."), at 103:7–8 ("Mr. Fitton interfered with an appearance of mine on CNN."); *id.* at 105:18–106:5 (Q: "You said that CNN – that Mr. Fitton had interfered with an appearance you were making on CNN. Tell me, what was the appearance with CNN?" A: "I don't remember the exact time, but CNN wanted me to come on to talk about the Cheney Energy Task Force case, which I had filed and which I had litigated for a number of years." Q: And how did you learn that Mr. Fitton had interfered with your appearance?" A: "CNN told me."); DEF-0000236 ("Just today, Thomas Fitton again

13

disparaged, defamed, and damaged my reputation, this time with CNN and the media); DEF-0003507 ("I have just been informed that JW has instructed CNN not to have me on air . . . Your interference with CNN . . . works as a disparagement, since it creates an improper impression that I left on other than good terms."); DEF-0003513 ("Mr. Hannon [CNN] responded that he could not book Mr. Klayman. He stated that Tom Fitton of Judicial Watch had requested CNN not book Mr. Klayman to discuss any aspect of the case . . . ."). Plaintiff made similar allegations regarding other media outlets. *See, e.g.*, Klayman Dep. 107:20–108:14 (claiming "same schtick same interference" that occurred with CNN also occurred with C-SPAN); *id.* at 108:19–109:7 (noting that an appearance on a Fox show was cancelled); DEF-0000253 (email from C-SPAN employee stating "Tom Fitton . . . asked that we don't schedule Larry on anything related to the case. So we won't need to talk with Larry Klayman."). These same facts put Defendants on notice of the claim, and in the Court's view, this could justify the easing of sanctions on Plaintiff, solely with respect to this claim, given that the sanctions were largely predicated on Plaintiff's failure to produce discovery and the attendant prejudice to Defendants.

The difficulty that Plaintiff faces, however, is that the materials furnished to the Court so far include no indication of the actual monetary damages that he sustained from these purported lost business opportunities. Plaintiff has not pointed the Court toward evidence tending to show what monetary benefits inured to him generally from such appearances, let alone from the specific appearances that were lost to him as a result of Defendants' allegedly disparaging conduct. Consequently, in order to finally resolve this question, the Court shall permit Plaintiff to identify such evidence, to the extent it exists, by filing a notice with the Court by June 30, 2017. *This evidence must come solely from*

*the current discovery record; no other materials shall be considered by the Court, as Plaintiff never produced evidence to support this claim during discovery.* Absent such evidence, however, the Court shall not permit Plaintiff to testify as to the reputational harms that he allegedly sustained as a result of the claimed breach of the non-disparagement clause in the Severance Agreement.

### D. Intentional Infliction of Emotional Distress

In addition to reputational damages, Plaintiff seeks to recover damages for the emotional distress allegedly caused by Defendants' alleged breaches of the Severance Agreement. In particular, Plaintiff relies upon a little-known doctrine of District Columbia common law which permits the recovery of punitive damages on a breach of contract claim "where the alleged breach of contract 'merges with, and assumes the character of, a willful tort . . . .'" *Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982) (citing *Brown v. Coates*, 253 F.2d 36, 39 (D.C. Cir. 1958)). Absent such "merger," the general rule under District of Columbia law is that punitive damages are not recoverable in breach of contract action, "even if it is proved that the breach was *willful, wanton, or malicious*." *Fed. Fire Prot. Corp. v. J.A. Jones/Tompkins Builders, Inc.*, 267 F. Supp. 2d 87, 91 (D.D.C. 2003) (emphasis added); *see also Howard Univ. v. Baten*, 632 A.2d 389, 392–93 (D.C. 1993) (precluding plaintiff from recovering damages for "mental anguish" stemming from breach of employment contract). Importantly, Plaintiff does not seek to amend his complaint, a request that would be met with extreme skepticism by this Court, given the stage of proceedings in this matter, and the likely futility of such a claim.[3]

---

[3] Pl.'s Reply to Defs.' Opp'n to Pl.'s Resp. [ECF No. 399], at 4 ("Plaintiff has not sought to amend his Second Amended Complaint. Indeed, Plaintiff's position, as it has always been, is that he can seek emotional distress damages – as well as damages for loss to

Here, Plaintiff alleges that the tort with which the breach of contract "merged" is intentional infliction of emotion distress ("IIED"), the elements of which are "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Purcell v. Thomas,* 928 A.2d 699, 711 (D.C. 2007) (internal citations omitted). The conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (internal citations omitted). "Intent or recklessness can be inferred from the outrageousness of the acts." *Id.* To succeed on a claim for punitive damages arising from an intentional tort, "the plaintiff must establish that the tortious act was committed with 'an evil motive, actual malice, deliberate violence, or oppression,' or for 'outrageous conduct in willful disregard of another's rights.'" *Calvetti*, 346 F. Supp. 2d at 108 (quoting *Robinson v. Sarisky*, 535 A.2d 901, 906 (D.C. 1988)). "[C]onclusory statements unsupported by specific facts as to the nature and extent of damages" are insufficient to support a claim for tort damages. *Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 82 (D.D.C. 2004).

The Court need not, however, reach the issue of whether the conduct alleged in the complaint and identified in the discovery record suffices to establish an IIED claim under District of Columbia law. The merger doctrine enunciated by *Sere* and *Brown* has since been "clarified" by the District of Columbia Court of Appeals in *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1090 (D.C. 2008). In particular, "*Choharis* clarified that where the actions complained of do not constitute an independent tort, the breach of

---

reputation – stemming from the causes of action originally set forth in the Complaints that have been filed.").

contract cannot merge with and assume the character of a willful tort." *Nugent v. Unum Life Ins. Co. of Am.*, 752 F. Supp. 2d 46, 57 (D.D.C. 2010). Put differently, if the alleged conduct is not tortious *independent of* the duties imposed by the contract, then punitive damages will not be available. *Choharis*, 961 A.2d at 1090 ("As we have already set forth, the actions complained of here cannot be characterized as ones that 'merge with and assume the character of a willful tort;' that is, there is no independent tort into which the actions can 'merge.'"). In *Choharis*, the District of Columbia Court of Appeals determined that the breach in that case did not constitute an independent "bad faith" tort because there was no independent duty to act in good faith, other than the duty of good faith inherent under the contract. *Id*. at 1089 ("conduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim when there are facts separable from the terms of the contract upon which the tort may independently rest and when there is a duty independent of that arising out of the contract itself, so that an action for breach of contract would reach none of the damages suffered by the tort"). For that same reason, there was no "independent tort" for the breach of contract to merge with for purposes of the *Seres* doctrine. *Id*. at 1090. Put differently, the *Choharis* court recognized that for punitive damages to be recoverable in a breach of contract action, the conduct constituting the breach must constitute an "independent tort" on its own accord; that is, it cannot be that the conduct is tortious because of some duty imposed by the contract itself. As noted by the *Nugent* court:

> the two examples provided by the local Court are illuminating. It noted that an insurance company, or its agents, which slanders or assaults an insured claimant in the course of a claims dispute could be subject to tort liability in addition to the contract claim. What is crucial in those examples is that the duty to refrain from defaming or assaulting someone is not a duty based in contract, and would exist even if the contractual relationship were absent.

752 F. Supp. 2d at 54 (citing *Choharis*, 961 A.2d at 1088) (citations omitted). Absent such an independent duty, the breach of contract is at most "willful, wanton, or malicious," which does not suffice for punitive damages to be available in a breach of contract action under District of Columbia law.

On this basis, the district court in *Nugent* dismissed a claim of intentional infliction of emotional distress, finding that plaintiff's "effort to circumvent the prohibitions on extra-contractual damages fails as a matter of law because her basic claim lies in breach of contract." 752 F. Supp. 2d at 53; *see also id.* at 55 ("Dr. Nugent fails to plead sufficient facts that might constitute an independent tort, apart from the alleged injuries that are inextricably linked with Unum's duty to perform its obligations under the contract."). The same must be held here. Three of Plaintiff's remaining claims rest on Defendants *failing* to take some action required by the contract: to remove Plaintiff as a guarantor; to pay for his insurance; to provide access to documents. There is no independent duty, apart from the Severance Agreement, to take these steps. Further, although there is an independent duty against defamation, Plaintiff's defamation claim has been dismissed, and the remaining disparagement claim is based solely on the non-disparagement clause in the Severance Agreement. *Klayman*, 628 F. Supp. 2d at 156 (granting summary judgment on "Count Nine of the Second Amended Complaint, which alleges that Defendants defamed Klayman by making allegedly false statements to JW employees and to the media"). Similarly, while the filing of allegedly fraudulent legal pleadings could at least theoretically constitute an independent tort (e.g., for defamation), the operative complaint styles Defendant's conduct only as a breach of contract, and in any event, the conduct alleged is not nearly so egregious as to establish an independent claim for intentional infliction of emotional distress, and is

almost certainly immunized by the judicial proceedings privilege. *See id.* at 138–39; *King v. Barbour*, No. CV 16-727 (CKK), --- F. Supp. 3d ---, 2017 WL 782880, at *3 (D.D.C. Feb. 28, 2017) (Kollar-Kotelly, J.) ("These claims are based entirely on statements Plaintiff made in his Complaint in this action and are accordingly protected by the judicial proceedings privilege." (citing *Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006)). Accordingly, as all of the remaining claims sound in breach of contract, and do not constitute independent torts, recovery of emotional distress damages is foreclosed by *Choharis*, the controlling authority for this purpose.

### E. Motion to Consolidate

Plaintiff has moved to consolidate the instant action ("2006 Action") and another case that he filed against Defendants earlier this year: *Klayman v. Judicial Watch, Inc.*, Case No. 1:17-cv-00034-CKK (Jan. 8, 2017) ("2017 Action"). Pl.'s Mot. for Consolidation, at 1. Plaintiff argues that both actions "arise out of Defendant Judicial Watch's breach of the Severance Agreement" and that the "underlying legal questions and facts" in both cases are "identical." *Id.* Defendants respond that there are "no questions of law or issues of fact in common between the two actions[,]" as the facts underlying each action are "separated by at least a decade." Defs.' Opp'n to Pl.'s Mot. for Consolidation, at 2–3.

Federal Rule of Civil Procedure 42(a) provides that: "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a). "The decision whether to consolidate cases under Rule 42(a) is within the broad discretion of the trial court." *Stewart v. O'Neill*, 225 F. Supp. 2d 16, 21 (D.D.C. 2002). In determining whether to exercise such discretion, "courts weigh considerations of convenience and economy against considerations of confusion and prejudice." *Chang v.*

*United States*, 217 F.R.D. 262, 265 (D.D.C. 2003). Actions that "involve the same parties" or "are likely to involve substantially the same witnesses and arise from the same series of events or facts" are "apt candidates for consolidation." *Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009). However, if "the procedural posture and the allegations in each case are different . . . consolidation is not appropriate." *Id.*; *see also Stewart v. O'Neill*, 225 F. Supp. 2d 16, 21 (D.D.C. 2002) (holding that "judicial efficiency would not be served" by the consolidation of three cases in "vastly different procedural postures"). Here, the Court does not find consolidation appropriate because the two actions rely on different factual allegations, are at vastly different procedural postures, and consolidation would unnecessarily complicate and delay both proceedings, not least because of the sanctions imposed on Plaintiff in this case.

First, the factual allegations underlying each action are distinct. Plaintiff's complaint in the 2017 Action claims a breach of the non-disparagement provision in the Severance Agreement by Judicial Watch that allegedly occurred in late-2016. In particular, Plaintiff claims that "on or about November 30, 2016," Defendants "maliciously defamed Plaintiff . . . in violation of the non-disparagement clause" to Jose Basulto, whom Plaintiff had represented in a lawsuit against Cuba while Plaintiff was still employed with Judicial Watch. Compl. ¶ 19, 2017 Action, ECF No. 1. Plaintiff's remaining non-disparagement claim in this action, however, focuses on statements Defendants allegedly made to media outlets before 2006. *See, e.g.*, Compl. ¶¶ 40, 44. Plaintiff's attempt to link the claims as a "pattern and practice of breaching the non-disparagement provision" by the Defendant is unconvincing. Pl.'s Mot. for Consolidation, at 2. Although the actions involve the same

parties, they did not "arise from the same series of facts or events" and would involve different evidence and witnesses. *Hanson*, 257 F.R.D. at 21.

Second, the two actions are at vastly different stages. Consolidation is typically favored when the relevant actions have similar procedural postures. *See, e.g.*, *Hanson*, 257 F.R.D. at 22 (granting motion for consolidation because both cases were still "in their nascent stages"); *Blasko v. Wash. Metro. Area Transit Auth.*, 243 F.R.D. 13, 16 (D.D.C. 2007) (granting motion for consolidation when "the cases were only filed one-and-a-half months apart and have similar procedural postures"). Here, the actions are separated by over a decade of judicial proceedings. A trial date has been set for this action, while the 2017 Action has yet to proceed to discovery. Consequently, consolidation would cause a significant delay to this action while the parties undertook discovery, dispositive motion practice, and pretrial proceedings for the 2017 Action. The Court shall not further delay the 2006 Action by granting Plaintiff's motion.

Third, consolidation would create inefficiency by unnecessarily complicating both actions. As previously discussed, the Court has imposed sanctions on Plaintiff for his misconduct in the 2006 Action, precluding him from presenting any affirmative evidence at trial with respect to damages. *See supra* at 5–8. The Court in this opinion has considered multiple lines of briefing pertaining to what Plaintiff may present at trial and the types of damages he may pursue for his five remaining claims, in light of these sanctions. *See supra* at 1–2. Permitting Plaintiff to consolidate the 2017 Action and the 2006 Action would further confuse this process, creating an unmanageable proceeding whereby Plaintiff would be permitted to introduce evidence on claims arising from the 2017 Action, but not the 2006 Action. As a result, "considerations of confusion and prejudice" further tip the scale

against consolidating the two actions. *Chang v. United States*, 217 F.R.D. at 265. Accordingly, in an exercise of the Court's discretion, consolidation shall not be permitted.

## II. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff shall be limited to nominal damages at trial with respect to his remaining claims, other than the non-disparagement claim, with respect to which he must submit documents, solely from the present discovery record, evidencing the amount of monetary damages that he allegedly sustained as a result of his alleged lost business opportunities. A notice attaching such documents must be filed with the Court by **JUNE 30, 2017**. Absent such evidence, Plaintiff's non-disparagement claim shall likewise be limited to nominal damages.

The Court acknowledges that because Plaintiff may still cross-examine Defense witnesses, there is a possibility that if Defendants open the door, or submit relevant exhibits, Plaintiff may be able to adduce sufficient facts to support his damages claims. In that scenario, the Court shall be amenable to reconsidering this ruling.

For the reasons already stated, Defendants' [386] Motion Pursuant to the Court's January 13, 2017 Minute Order is **GRANTED**, and Plaintiff's [384] Motion to Consolidate is **DENIED.**

**SO ORDERED.**

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge