# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>    Plaintiff,<br><br>v.<br><br>JUDICIAL WATCH, INC., *et al.*,<br><br>    Defendants. | Civil Action No. 06-670 (CKK) |

## MEMORANDUM OPINION AND ORDER
(October 5, 2017)

Pending before the Court is Plaintiff's [414] Motion to Recuse/Disqualify Judge Colleen Kollar-Kotelly, which seeks the recusal or disqualification of the undersigned pursuant to 28 U.S.C. § 455(a) and 28 U.S.C. § 144. This is Plaintiff's third motion for this purpose, and it is again opposed by Defendants. Upon a searching review of the pleadings, the record, and the relevant authorities,[1] the Court concludes that Plaintiff has failed to furnish any evidence of extrajudicial bias or prejudice. Rather, Plaintiff relies almost exclusively on his dissatisfaction with the legal rulings of this Court, which is an insufficient basis for recusal or disqualification. Accordingly, the pending motion for recusal or disqualification shall be **DENIED**.

## DISCUSSION

    A. Motion Pursuant to Section 455(a)

Plaintiff moves to recuse this Court pursuant to 28 U.S.C. § 455(a), which permits a litigant

---

[1] The Court's consideration has focused on the following documents:
- Pl.'s Mot. to Recuse/Disqualify Judge Colleen Kollar-Kotelly, ECF No. 414 ("Pl.'s Mem.");
- Aff. of Larry Klayman in Supp. of Pl.'s Mot. to Recuse/Disqualify Judge Colleen Kollar-Kotelly under 28 U.S.C. § 144, ECF No. 414-1 ("Klayman Aff.");
- Defs.' Response in Opp'n to Pl.'s Mot. to Recuse/Disqualify Judge Colleen Kollar-Kotelly, ECF No. 415 ("Defs.' Mem.");
- Pl.'s Reply to Response in Opp'n to Pl.'s Mot. to Recuse/Disqualify Judge Colleen Kollar-Kotelly, ECF No. 417 ("Reply Mem.").

to seek recusal of a federal judge "in any proceeding in which his impartiality might reasonably be questioned." "[T]o be disqualifying, the appearance of bias or prejudice must stem from an extrajudicial source." *United States v. Barry*, 961 F.2d 260, 263 (D.C. Cir. 1992). In assessing section 455(a) motions, the D.C. Circuit has applied an "objective" standard: "Recusal is required when 'a reasonable and informed observer would question the judge's impartiality.'" *SEC v. Loving Spirit Found. Inc.*, 392 F. 3d 486, 493 (D.C. Cir. 2004) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001), *cert. denied*, 534 U.S. 952 (2001)). "This standard requires that [the Court] take the perspective of a fully informed third-party observer who understands all the relevant facts and has examined the record and the law." *United States v. Cordova*, 806 F.3d 1085, 1092 (D.C. Cir. 2015). As a result, "bald allegations of bias or prejudice" do not suffice. *Karim-Panahi v. U.S. Cong., Senate & House of Representatives*, 105 F. App'x 270, 275 (D.C. Cir. 2004).

In the context of section 455(a), "unfavorable judicial rulings alone almost never constitute a valid basis for reassignment." *United States v. Hite*, 769 F.3d 1154, 1172 (D.C. Cir. 2014); *see also United States v. Microsoft Corp.,* 56 F.3d 1448, 1463 (D.C. Cir. 1995) (per curiam) ("That a judge commits error, of course, is by itself hardly a basis for imputing bias or even the appearance of partiality."). As the Supreme Court has observed, judicial rulings by themselves "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Therefore, dissatisfaction with a court's rulings "almost invariably" provides a proper ground for appeal—***not*** for recusal. *Id.* In addition, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless

they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Consequently, courts in this circuit have routinely held that a claim of bias predicated on a court's rulings do not, standing alone, warrant recusal. *See, e.g., Liberty Lobby, Inc. v. Dow Jones & Co., Inc.,* 838 F.2d 1287 (D.C. Cir. 1998) (because plaintiff's motions to recuse "were based entirely upon the district court's discovery rulings in this case, their denial was clearly proper"), *cert. denied*, 488 U.S. 825 (1988); *Cotton v. Washington Metro. Area Transit Auth.*, 264 F. Supp. 2d 39, 42 (D.D.C. 2003) (claim of bias based on court's discovery rulings did not warrant recusal).

  B. Motion Pursuant to Section 144

Under section 144, a litigant must submit, along with its motion, an affidavit stating "the facts and the reasons for [its] belief that bias or prejudice exists." 28 U.S.C. § 144. Upon the filing of a "timely and sufficient affidavit," section 144 mandates that the assigned "judge shall proceed no further, but another judge shall be assigned to hear such proceeding." *Id.*; *see also Bhd. of Locomotive Firemen and Enginemen v. Bangor & Aroostook R.R. Co.*, 380 F.2d 570, 576 (D.C. Cir. 1967) ("The disqualification statute, 28 U.S.C. § 144, is mandatory and automatic, requiring only a timely and sufficient affidavit alleging personal bias or prejudice of the judge."). "Importantly, the mere fact that a party has filed a § 144 motion, accompanied by the requisite affidavit and certificate of counsel, does not automatically result in the challenged judge's disqualification." *Robertson v. Cartinhour*, 691 F. Supp. 2d 65, 77 (D.D.C. 2010); *see also United States v. Miller*, 355 F. Supp. 2d 404, 405 (D.D.C. 2005) ("disqualification is not automatic upon submission of affidavit and certificate"). Rather, recusal is required *only* upon the filing of a "timely and sufficient affidavit." 28 U.S.C. § 144.

The question of whether the motion and supporting affidavit are both timely and legally sufficient is for this Court to determine in the first instance. *United States v. Haldeman*, 559 F.2d

31, 131 (D.C. Cir. 1976) ("It is well settled that the involved judge has the prerogative, if indeed not the duty, of passing on the legal sufficiency of a Section 144 challenge."); *see also United States v. Heldt*, 668 F.2d 1238, 1272 n.69 (D.C. Cir. 1981) (noting that "under section 144 . . . the transfer to another judge for decision is 'at most permissive'") (quoting *Haldeman*, 559 F.2d at 131). First, with respect to the timeliness of the motion, section 144 is itself silent as to "what the timeliness requirement means where, as in this case, the recusal motion rests on events occurring after proceedings began." *Loving Spirit Found.*, 392 F.3d at 492. In such circumstances, courts "have required the affidavit to be filed 'at the earliest moment.'" *Id.* As the D.C. Circuit has made clear, the timeliness requirement is "[c]rucial to the integrity of the judicial process," as it "ensures that a party may not wait and decide whether to file based on 'whether he likes subsequent treatment that he receives.'" *Id.* (quoting *In re United Shoe Mach. Corp.*, 276 F.2d 77, 79 (1st Cir. 1960)).

Second, in determining whether the affidavit sets forth a legally sufficient basis for disqualification, the Court "must accept the affidavit's factual allegations as true even if the judge knows them to be false." *Loving Spirit Found.*, 392 F.3d at 496; *see also United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) ("when presented with an application and affidavit such as this one, a Court may not pass upon the truth or falsity of the allegations, but must accept them as true for the purpose of determining the legal sufficiency of the affidavit"). However, the affidavit "must state facts as opposed to conclusions, and while the information and belief of the affiant as to the truth of the allegations are sufficient, mere rumors and gossip are not enough." *Hanrahan*, 248 F. Supp. at 474 (internal citations omitted). "The identifying facts of time, place, persons, occasion and circumstances must be set forth, with at least that degree of particularity one would expect to find in a bill of particulars." *Id.* (internal citations omitted). Importantly, given

4

the requirement that the Court accept the facts stated in the affidavit as true, the statute mandates that "the attorney presenting the motion [] sign a certificate stating that both the motion and declaration are made in good faith." *Loving Spirit Found.*, 392 F.3d at 496; *see* 28 U.S.C. § 144 (requiring that the affidavit "be accompanied by a certificate of counsel of record stating that it is made in good faith"). The certification requirement is key to the integrity of the recusal process and "guard[s] against the removal of an unbiased judge through the filing of a false affidavit." *Loving Spirit Found.*, 392 F.3d at 496.

Once it is established that the affidavit has been properly certified by counsel of record and that the facts set forth therein have been stated with sufficient particularity, the Court must then

> ascertain[] whether these facts would fairly convince a sane and reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute. It is well established that the facts must give fair support to the charge of a bent mind that may prevent or impede impartiality. The basis of the disqualification is that personal bias or prejudice exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. The factual allegations must establish by more than a prima facie case, but not beyond a reasonable doubt that the mind of the judge is closed to justice; that the judge has a personal bias or prejudice against the affiant which is of such a nature, and of such intensity, that it would render the judge unable to give the affiant the fair trial to which every litigant is entitled. Obviously, such a showing could rarely be made.

*Hanrahan*, 248 F. Supp. at 475–76 (internal citations and quotations omitted). "Importantly, to be disqualifying, the alleged bias usually 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Robertson*, 691 F. Supp. 2d at 78 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)); *see also Liteky*, 510 U.S. at 554 (predispositions developed during proceedings are rarely sufficient). Substantively, sections 144 and 455 "are quite similar, if not identical." *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1019 (5th Cir. 1981).

C. Plaintiff Chiefly Complains of this Court's Rulings, Which Do Not Evidence Any Extrajudicial Bias or Prejudice, and Do Not Warrant Recusal under Section 144 or Section 455.

Plaintiff's motion consists chiefly of complaints regarding the Court's rulings in this case, and the Court's rulings and perceived delays in other cases brought by Plaintiff or organizations affiliated with Plaintiff. These rulings do not evidence any extrajudicial bias or prejudice and are therefore insufficient to support a motion for recusal under section 144 or 455. *See, e.g., Simon v. U.S. Dep't of Justice*, No. 16-5031, 2016 WL 3545484, at *1 (D.C. Cir. June 10, 2016) (per curiam order) (affirming denial of motion for disqualification because appellant had "not alleged any basis for finding that the district judge had any personal bias against him, or that the judge's impartiality could reasonably be questioned") (citing *Liteky*, 510 U.S. 540 at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.")).

First, Plaintiff restates the same arguments the he raised in pursuit of his first motion to recuse the undersigned. *See* Pl.'s Mem. at 2 ("The First Motion was based on compelling evidence of extrajudicial bias including, but not limited to . . . ."). Plaintiff also references his second motion to disqualify, but does not pause to list the grievances contained therein. *Id*. at 1. To the extent Plaintiff raises these issues again, the Court does not deviate from its lengthy written rulings on these matters. These rulings are fully incorporated into and form part of this Memorandum Opinion. *See Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98 (D.D.C. 2009) ("*First Recusal Opinion*"); *Klayman v. Judicial Watch, Inc.*, 744 F. Supp. 2d 264 (D.D.C. 2010) ("*Second Recusal Opinion*").

Plaintiff's newly filed grievances are as follows. First, he contends that the undersigned "ha[s] already severely crippled Klayman's ability to present his case and have his day in court by denying him the right to testify or present evidence supporting his causes of action against Judicial Watch and regarding damages that he incurred as a result of Klayman's refusal to turn over

6

confidential and irrelevant financial information [to] Judicial Watch in discovery." Pl.'s Mem. at 3. This apparently references the discovery sanctions imposed upon Plaintiff by the Court in two written opinions in 2009 and 2011. *See Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 263 (D.D.C.), *aff'd*, 628 F. Supp. 2d 84 (D.D.C. 2009) ("*Sanctions I*"); *Klayman v. Judicial Watch*, *Inc.*, 802 F. Supp. 2d 137 (D.D.C. 2011) ("*Sanctions II*"); *see also Klayman v. Judicial Watch, Inc.*, --- F. Supp. 3d ---, No. CV 06-670 (CKK), 2017 WL 2592413, at *3 (D.D.C. June 15, 2017) ("*Damages Opinion*") (describing sanctions). The 2009 sanctions were imposed because of the severe prejudice imposed upon Defendants by Plaintiff's failure to produce in discovery "any of the documents requested by Defendants." *Sanctions I*, 256 F.R.D. at 263. The 2011 sanctions were likewise imposed because of the "long line of burdens unfairly imposed upon Defendants as a result of [Plaintiff's] conduct in this litigation." *Sanctions II*, 802 F. Supp. 2d at 150. Plaintiff presents no argument for how these two opinions manifest an extrajudicial bias or prejudice, other than to say that the undersigned has "crippled Klayman's ability to present his case and have his day in court . . . ." Pl.'s Mem. at 3. In the sanctions opinions, the undersigned presented in detail the legal and factual bases for why sanctions were appropriate. No extrajudicial bias or prejudice would be evident to an impartial third-party from these rulings, and mere dissatisfaction with a ruling of this Court is insufficient to warrant recusal or disqualification.

Plaintiff further contends that a more recent ruling by the Court is a "continuation of [this Court's] pattern and practice of exhibiting extrajudicial bias and animus against Klayman." Pl.'s Mem. at 3. Namely, on June 15, 2017, the Court issued a Memorandum Opinion and Order assessing "the types of damages that Plaintiff could pursue with respect to his five remaining claims, in light of the discovery sanctions that had previously been imposed upon Plaintiff during the course of this litigation." *Damages Opinion*, 2017 WL 2592413, at *1. Plaintiff contends that this ruling

7

"all but completely disposes of Klayman's claims against Judicial Watch without affording Klayman his day in court and his due process rights." Pl.'s Mem. at 3. As a factual matter, that is incorrect. In the 22-page written opinion, the Court ultimately concluded that the evidentiary limitations imposed upon Plaintiff due to the sanctions rulings "limited [him] to nominal damages (or specific performance) as to all claims *other than his claim that Defendants breached the non-disparagement clause in the Severance Agreement*." *Id*. (emphasis added). On that claim, the Court permitted Plaintiff to "provide the Court and Defendants with documents, *solely from materials that have already been produced in the course of this litigation*, evidencing the amount of monetary damages that he sustained from specific lost business opportunities that flowed from the alleged breach of the non-disparagement clause in the Severance Agreement." *Id*. at *2 (emphasis in original). In any event, as with the sanctions opinions, Plaintiff offers no evidence that the damages opinion was informed by any extrajudicial bias or prejudice, other than bald assertions to that effect, and his displeasure with the fact that the combination of the sanctions and damages opinions limit his ability to succeed at trial. Nonetheless, although Plaintiff may be displeased, the limitations imposed upon Plaintiff are the result of reasoned judicial decision-making, as evidenced by the detailed and nuanced opinions on these matters. Furthermore, the undersigned recognized that the sanctions imposed by the Court would "effectively prevent Klayman from carrying his burden of proof on his claims, thereby almost certainly *requiring* dismissal." *Sanctions II*, 802 F. Supp. 2d at 151 (emphasis in original). The undersigned observed that "the sanction is . . . a profound one and warrants this Court's close and careful scrutiny." *Id*. It noted further that "because the sanction approaches outright dismissal of Klayman's claims and the entry of default on Judicial Watch and Fitton's counterclaims, the Court considers it prudent to ask whether the application of those drastic remedies would be appropriate under the circumstances presented." *Id*. With these considerations

in mind, the Court went on to describe "at least six reasons" why the sanctions were appropriate. The Court's damages opinion is simply an extension of that decision. Accordingly, because they are the product of reasoned judicial decision-making, the sanctions and damages opinions would not evidence extrajudicial bias or prejudice to a reasonable and impartial third-party observer. Consequently, they do no warrant recusal under either section 144 or 455.

Plaintiff also takes issue with the alleged delay by this Court in ruling on a motion to dismiss in *Klayman v. Judicial Watch, Inc.*, 17-cv-34 (D.D.C.) ("*2017 Judicial Watch Case*"). That case was filed on January 8, 2017. *2017 Judicial Watch Case*, Compl., ECF No. 1. Defendant filed a motion to dismiss on February 1, 2017, on the basis of the judicial proceedings privilege, the common interest privilege, and for failure to state a claim under theories of breach of contract and tortious interference with contract. *2017 Judicial Watch Case*, Mem. in Supp. of Def.'s Mot. to Dismiss Compl., ECF No. 7-1. Briefing on the motion concluded on March 13, 2017, when Plaintiff filed a motion for leave to file surreply, which was later granted. During an April 20, 2017 pretrial hearing in this matter, the Court provided an initial assessment of the motion to dismiss. In full, the undersigned stated as follows:

> So I'm going to do a written order, but I wanted to put on notice. On the motion to dismiss, my initial reaction to it is that the contract claim is likely to remain. I think that the defendant has raised privilege of attorney/client, judicial proceedings privilege, which is very fact specific. I will look at it more carefully, but I don't think it's easily discerned from the complaint as to -- that these privileges were at issue. It's more of an issue for a motion for summary judgment. So the likelihood -- I haven't written it up, so it may turn out to be different. But my review of it is the motion to dismiss 17-cv-34 is going to be denied.

April 20, 2017 Hr'g Tr. 24:10–21, ECF No. 398. The undersigned did not rule on the motion to dismiss during this hearing, nor had the undersigned definitely determined that the motion to dismiss would be denied. Rather, the undersigned expressly stated that a final determination would come only in the form of a written order. On May 19, 2017, Plaintiff filed a praecipe requesting that

9

the Court "provide an update on the status of the pending motion to dismiss, issue the anticipated ruling on Defendant's Rule 12(b)(6) motion, and allow this matter to now proceed past the pleading stage." *2017 Judicial Watch Case*, ECF No. 13. Subsequently, on July 13, 2017, Plaintiff filed a motion for entry of default, contending that the Court had denied the motion to dismiss during another pretrial conference in this matter held on June 16, 2017. Pl.'s Mot. for Entry of Default, ECF No. 14, at 2. The full colloquy from that conference is as follows:

> MR. KLAYMAN: Yes, Your Honor. I wanted to ask you when you made the issuing decision in the other case that you did not consolidate.
>
> THE COURT: It's in the opinion. I denied it. It's in this opinion that I issued June 25th, June 15th, excuse me.
>
> MR. KLAYMAN: Okay.
>
> THE COURT: It's at the end.
>
> MR. KLAYMAN: All right. Thank you. So we can do a pretrial conference now on that. We can set up a pretrial conference?
>
> THE COURT: I don't remember -- you mean initial scheduling conference?
>
> MR. KLAYMAN: Initial scheduling conference. Can we set that now?
>
> THE COURT: I have to go back and look. I know I didn't consolidate it, okay. I'm not going to do it off the top of my head. I will go back and whatever stage it is, we will move forward with it.
>
> MR. KLAYMAN: I would just ask that we do it expeditiously.
>
> THE COURT: I'm sure everybody wants expedited. I move as fast as I can the cases. I assure you it's not being put on the back burner.
>
> MR. KLAYMAN: Thank you.

June 16, 2017 Hr'g Tr. 29:9–30:7. In his motion for entry of default, Plaintiff inserted the following alteration into the first question of the colloquy: "Yes, Your Honor. I wanted to ask you when you made the issuing decision [to deny the motion to dismiss] in the other case that you did not

10

consolidate." Pl.'s Mot. for Entry of Default, ECF No. 14, at 2. Without this alteration, the question is ambiguous. Consequently, the Court pointed Plaintiff to its then recent ruling, issued on June 15, 2017, in which it denied Plaintiff's *motion to consolidate* the 2017 action with this case. *See* Mem. Op. and Order, ECF No. 401, at 22 (denying motion to consolidate, ECF No. 384). That opinion did not rule on the motion to dismiss. In any event, the undersigned unequivocally stated that it needed to review the status of the 2017 action before advising on how that matter would proceed. Consequently, the Court denied the motion for entry of default. *2017 Judicial Watch Case*, Minute Order (July 17, 2017). Then, on August 31, 2017, the Court issued a Memorandum Opinion and Order denying the motion to dismiss. *2017 Judicial Watch Case*, Mem. Op. and Order, ECF No. 15. The 2017 matter was subsequently transferred to recently appointed United States District Court Judge Timothy J. Kelly as part of a process by which cases are randomly assigned from all judges on this district court to create caseloads for newly appointed judges. *See* Docket Entry (Sept. 18, 2017).

Plaintiff contends that the undersigned "intentionally sat on [the motion to dismiss] to prevent Mr. Klayman from taking discovery and moving this case along to discovery and trial against Judicial Watch." Pl.'s Mem. at 4. No evidence is provided in support of this assertion, other than Plaintiff's view that "[g]iven the exceedingly simple nature of this case, the fact that Judge Kotelly has allowed it to languish for eight months now is clear indication of her extrajudicial bias against Klayman and a willful deprivation of Klayman's due process rights." *Id*. Whatever may be said about the notion that delay could, in sufficient amounts, be evidence of prejudice or bias, the delay here does not rise to that level. The Court issued its opinion on the motion to dismiss less than seven months after it was fully briefed. For the 12-month period ending June 30, 2017, the median time from filing to trial in the United States District Court for the District of Columbia was 46

months (i.e., almost four years). *See Combined Civil and Criminal Federal Court Management Statistics* (June 30, 2017), *available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/06/30-1*. In this context, a period of less than seven months between the conclusion of briefing and the disposition of a motion to dismiss does not appear out of the ordinary. Furthermore, the ruling was favorable to Plaintiff, and Plaintiff has provided no evidence to support his view that the Court intentionally delayed its ruling on the motion. Nor has Plaintiff explained why the delay was prejudicial to him. All that is apparent is the unremarkable fact that litigants generally prefer that their matters be addressed before those of others. Consequently, to countenance Plaintiff's position here would be to give every aggrieved litigant a tool by which to seek recusal or disqualification. A reasonable and impartial third-party would agree.[2]

The same is true of the other perceived delay noted by Plaintiff. Namely, Plaintiff contends that the undersigned "sat" on a motion to remand in *Klayman v. Judicial Watch*, 15-cv-214 (D.D.C) ("*2015 Judicial Watch Case*"). This matter was removed from the Superior Court of the District of Columbia on February 11, 2015. A motion to remand was filed the following day, and briefing concluded on March 4, 2015. *2015 Judicial Watch Case,* ECF Nos. 4, 8. A stay was imposed from March 31, 2016 until May 4, 2016, when the Court remanded the matter by Memorandum Opinion. *2015 Judicial Watch Case*, Mem. Op., ECF No. 10. The Court notes that during the entire pendency of the 2015 action, a stay was imposed in this case because Plaintiff filed a lawsuit against the undersigned. *See* ECF No. 365; Minute Order (Oct. 11, 2011). That stay was finally lifted by Minute Order dated May 4, 2016 (i.e., the same day that the 2015 action was remanded). Under these factual circumstances, and given the ultimately favorable ruling on the motion to

---

[2] The Court notes that it presided over a lengthy criminal trial during the pendency of the motion to dismiss. Proceedings began with jury selection on July 10, 2017, and concluded with a verdict on August 10, 2017. *See United States v. Robinson*, 16-cr-98 (D.D.C.).

remand, the pendency of the 2015 action for over one year does not constitute objective evidence of extrajudicial bias or prejudice. Nor, as with the motion to dismiss the 2017 action, has Plaintiff explained how the perceived delay evidences bias, or what motives the undersigned could possibly have had in retaining the 2015 action—other than the conclusory and unsupported assertion that the undersigned sought to prevent Plaintiff from litigating that matter.

> D. Plaintiff Has Presented No Objective Evidence of the Undersigned's Alleged "Leftist Political Views"

Plaintiff alleges that the undersigned "has a well-earned reputation as a government apologist and anticonservative who wears her leftist pro-Democrat political beliefs on her sleeve." That "Judge Kotelly was appointed to the bench by former President Bill Clinton and has served as a Clinton and, subsequently, Obama loyalist from the bench." That "Judge Kotelly's appointment was bitterly opposed by conservatives and their public interest groups, such as Paul Weyrich's Free Congress Foundation, because of her extreme left - wing views and history." That "Judge Kotelly still harbors these extreme left wing views from the bench and reacts negatively and hostilely towards those who hold different beliefs, such as Klayman." And that "Judge Kotelly's husband, a lawyer himself, even played a role in effectively assisting former President Bill Clinton during the infamous Monica Lewinsky scandal, which resulted in the impeachment of Bill Clinton." Pl.'s Mem. at 5. Apart from conclusory allegations of bias and prejudice, the only purported evidence of the undersigned's alleged political biases are that she was (i) appointed by President Clinton; (ii) that her husband had some involvement in the Monica Lewinsky scandal; and (iii) that the Court ordered a lengthy production schedule in *Freedom Watch v. Bureau of Land Management et al.*, 16-cv-2320 (D.D.C) ("*Freedom Watch Case*").[3] As to the first two contentions, they were

---

[3] Plaintiff also points to the Court's issuance of a preliminary injunction in *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1 (D.D.C. 2009). Pl.'s Mem. at 6 n.3. That ruling

13

previously addressed in the context of Plaintiff's first motion to recuse the undersigned. There, the Court held the following, which is fully incorporated herein:

> As Klayman cites no facts or evidence beyond the simple statement that the undersigned was appointed by the Clinton administration, it is clear that his argument is predicated solely on the theory that appointment by a particular president, without more, is sufficient to create an appearance of impartiality. This argument is nonsensical. The instant lawsuit has absolutely nothing to do with former President Clinton or with his administration. According to this theory, all judges who were appointed during former President Clinton's eight years in office would be required to disqualify themselves from any lawsuit—regardless of the subject matter or parties involved—that may be brought by Klayman anywhere in the United States, or indeed, by any party who claims to have been a vocal critic of the Clinton administration. Klayman himself provides no legal authority for support of this position, and for good reason—the case law is clear that recusal is not warranted in this circumstance.
>
> * * *
>
> The Court notes that Klayman also alleges that recusal is warranted because the undersigned's spouse, also a lawyer, defended a secret service agent who was allegedly "enmeshed in the Monica Lewinsky/Clinton scandals during the 1990s." Klayman—once again—provides absolutely no citation to any legal support for his claim that recusal is warranted and necessary where, a decade or more ago, the presiding judge's spouse represented an individual, who is not a party to the instant litigation, in a matter wholly unrelated to the current lawsuit. Moreover, Klayman alleges no financial or personal concerns implicated by the representation nor provides any facts or evidence that would cause a reasonable and informed observer to question this Court's impartiality.

*First Recusal Opinion*, 628 F. Supp. 2d at 110, 111 n.7 (citations omitted).

As to the ordering of a lengthy production schedule, Plaintiff selectively quotes from the

---

enjoined the implementation of a Final Rule by the Department of Interior that permitted "persons to possess concealed, loaded, and operable firearms in national parks and wildlife refuges in accordance with the laws of the state in which the national park or wildlife refuge is located . . . ." *Id*. at 6. According to Plaintiff, this opinion is an example of how the undersigned has "severely prejudiced" conservatives figures; in this instance, the National Rifle Association—presumably because that organization would have favored a different result in *Brady*. Nonetheless, Plaintiff, as with his other grounds for the pending motion, has presented no evidence or argument for how the ruling in *Brady* evidences any extrajudicial bias or prejudice by the undersigned. The only evidence is that the ruling was presumably not one with which Plaintiff agreed, which is not the sort of evidence that can buttress a motion to recuse or disqualify.

record in that case, and more importantly, provides no evidence of how the rulings in that matter evidence any extrajudicial bias or prejudice, other than that these rulings were unfavorable from his perspective. In that matter, the Federal Bureau of Investigation ("FBI") proposed a production schedule of 500 pages per month. *Freedom Watch Case*, Status Report and Proposed Schedule, ECF No. 30. Due to the volume of documents responsive to Freedom Watch's Freedom of Information Act ("FOIA") request—at least 250,000 pages—the FBI estimated that it would take approximately 500 months to complete the production of responsive non-exempt materials. *Id*. The Court tentatively adopted this schedule because "Plaintiff ha[d] not furnished the Court with any reason, based in fact or law, for expediting the production of documents beyond the schedule proposed by the FBI." Minute Order (June 13, 2016). As an example, the Court noted that "Plaintiff has not responded to the FBI's proposal to pursue summary judgment on the applicability of Exemption 7(A), which if found applicable would in the FBI's estimation halve the time for completing its production." Although the Court adopted the FBI's proposed schedule, it expressly "remain[ed] amenable to receiving reasonable proposals from Plaintiff to expedite the production of responsive materials (e.g., by limiting the scope of its requests)." *Id*. No such proposal was ever received. Instead, Freedom Watch filed a motion for reconsideration that asked the Court to "either order immediate production of responsive documentation or allow Freedom Watch to take immediate discovery, within the next two weeks, of Defendants' FOIA custodians of records to determine whether Defendants have complied in good faith with the obligations under FOIA." *Freedom Watch Case*, ECF No. 34, at 4. The Court denied that motion, finding that discovery was inappropriate given the absence of any indicia of bad faith by the government defendants, and again adopted the FBI's proposed production schedule—albeit contingent on the FBI "fil[ing] a declaration of the responsible FOIA official explaining in detail why its processing is limited to 500

pages per month, and what the consequences would be if the processing speed were increased for Plaintiff's FOIA request." Minute Order (August 11, 2017). Plaintiff has presented no objective evidence of how these rulings manifest any extrajudicial bias or prejudice. Rather, as this recitation makes clear, the rulings were the product of reasoned judicial decision-making. They addressed Freedom Watch's arguments in detail, explained why the Court ruled the way it did, and provided Freedom Watch with multiple opportunities to restructure its FOIA request in a manner that would provide for a more expedited production schedule. Plaintiff, as counsel for Freedom Watch, may disagree with these rulings, but that does not warrant recusal or disqualification.

E. Plaintiff's Motion is Procedurally Defective

Plaintiff's motion is technically deficient pursuant to 28 U.S.C. § 144. First, the affidavit submitted in support of the motion consists chiefly of unsubstantiated conclusory assertions of bias and prejudice. Such assertions are not "facts" for purposes of section 144, and do not meet the requirement that "facts" be submitted in support of a motion pursuant to section 144. *Hanrahan*, 248 F. Supp. at 474. Second, the motion is not timely pursuant to section 144. A motion under that section must be filed "at the earliest moment." *Loving Spirit Found.*, 392 F.3d at 492 (internal quotation marks omitted). "Sitting en banc, this [circuit] expressed 'serious doubt' about the timeliness of an affidavit based on remarks the judge made 'more than two weeks before' and a law review article he published 'more than a year' earlier." *Id*. The Seventh Circuit has held that a delay of two months rendered an affidavit untimely. *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993).

Many of the complained of acts in the pending motion and affidavit occurred years prior. The undersigned was appointed by President Clinton more than 20 years ago. The sanctions opinions were issued in 2009 and 2011. The *Brady* opinion was also issued in 2009. The 2015

Judicial Watch Case was remanded in May 2016. Other acts occurred more recently, but likewise outside the period that is considered timely for purposes of section 144. Plaintiff filed a notice requesting that the Court issue a ruling on the motion to dismiss in May 2017. The Court first adopted the FBI's proposed production schedule in the Freedom Watch case in June 2017. The damages opinion was also issued in June 2017. Nonetheless, not until August 9, 2017—less than two months before trial was scheduled to commence in this long-running litigation—did Plaintiff choose to file his third motion for recusal or disqualification. Accordingly, Plaintiff's delay is not only technically preclusive, but it is also contrary to the core purpose of the timeliness requirement: to "ensure[] that a party may not wait and decide whether to file based on whether he likes subsequent treatment that he receives." *Loving Spirit Found.*, 392 F.3d at 492 (internal quotation marks omitted).[4]

---

[4] The Court notes two other ways in which the affidavit is deficient under the plain text of the statute. Given the other substantive and technical deficiencies already, the Court does not decide whether these individual deficiencies would suffice to preclude a motion under section 144. First, as discussed in the Second Recusal Opinion, "some courts have held that a pro se party cannot file a motion for disqualification under section 144 as they cannot comply with the statute's explicit certification requirement." *Second Recusal Opinion*, 744 F. Supp. 2d at 274. Although Plaintiff is an attorney, he is proceeding pro se in this matter, and it remains unresolved whether his certification can comply with the requirements of section 144, which requires "a certificate of counsel of record." 28 U.S.C. § 144. Second, as noted by Defendants, section 144 states that a "party may file only one such affidavit in any case." *Id*. Because Plaintiff has previously moved to disqualify the undersigned pursuant to section 144, this is his second such affidavit in this case. *Id.*; *see also Berger v. United States*, 255 U.S. 22, 35 (1921) (noting that the statute "in its care permits but 'one such affidavit'"). Plaintiff points the Court to *In re Union Leader Corp.*, 292 F.2d 381 (1st Cir. 1961). Contrary to Plaintiff's interpretation of that case, however, the First Circuit did not permit the filing of second affidavit, but rather considered additional evidence that could have "indicate[d] the judge's state of mind regarding the events set forth in the [first] affidavit . . . ." *Id*. at 388.

## **CONCLUSION AND ORDER**

For the foregoing reasons, Plaintiff's [414] Motion to Recuse/Disqualify Judge Colleen Kollar-Kotelly is **DENIED**.

**SO ORDERED.**

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge