UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

v.

JUDICIAL WATCH, INC., *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)

**MEMORANDUM OPINION**
(January 19, 2018)

Pending before the Court is Plaintiff's Motion for Leave to Amend the Second Amended Complaint ("Motion to Amend"). ECF No. 407. The Court permitted Plaintiff to seek leave to add an intentional infliction of emotional distress ("IIED") claim but cautioned that the proposed amendment "would be met with extreme skepticism by this Court, given the stage of proceedings in this matter, and the likely futility of such a claim." Order, ECF No. 402, at 3 (citing Mem. Op. and Order, ECF No. 401, at 15) (internal quotation marks omitted). Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court **DENIES** Plaintiff's Motion to Amend.

## I. BACKGROUND

This case is indeed long past its prime. It was filed nearly 12 years ago in 2006, and the first two amendments to the complaint were made shortly afterwards that year. *See* First Am. Compl., ECF No. 6; Second Am. Compl., ECF No. 12. Trial is presently scheduled for February 26, 2018. *See* Order, ECF No. 426. At least some of the events that give rise to Plaintiff's newly proposed amendment even predated the filing of this long-running case, and all of the relevant events were long ago. *See* Opp'n Mem. at 3 ("Klayman was fully aware of a potential IIED claim no later than March 19, 2004, at least 13 years ago. The stated grounds in support of his attempt to add an IIED claim consist of correspondence and documents generated between 2003 and 2005." (citation omitted)); Mot. to Amend (generally omitting dates of occurrences and specifically citing the year only for events in 2003, 2004, 2006, and 2014, the last of which refers to a letter discussing past events).

---

[1] The Court's consideration has focused on the following documents:

- Pl.'s Mot. for Leave to Amend the Second Am. Compl., ECF No. 407 ("Mot. to Amend");
- Defs.' Opp'n to Pl.'s Mot. for Leave to Amend the Second Am. Compl. [Docket 407], ECF No. 410 ("Opp'n Mem.").

Plaintiff did not submit a reply to Defendants' opposition.

Over the course of this case, Plaintiff's claims have been narrowed exclusively to concern breach of contract. "All five of [the] claims [remaining in this case] are styled as breach of contract claims for alleged violations of the Severance Agreement." Mem. Op. and Order, ECF No. 401, at 3. To be specific,

> The Court previously concluded that, as to Plaintiff's "Second Amended Complaint, the following allegations of breach of contract asserted in Counts Seven and Eight remain viable": (1) Defendants' alleged failure to make a good faith effort to remove Plaintiff as guarantor of a lease for Judicial Watch's headquarters; (2) Defendants' failure to pay health insurance for Plaintiff's children; (3) Defendants' filing a motion to strike Plaintiff's appearance in a Florida litigation; (4) Defendants' failure to provide Plaintiff with access to documents regarding a client; and (5) Defendants' alleged disparagement of Plaintiff and misrepresentations of the reasons for his departure from the organization. *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 118 (D.D.C. 2009) (Kollar-Kotelly, J.).

Mem. Op. and Order, ECF No. 401, at 3. The Court has made clear that, absent amendment, there is no room for pursuing emotional distress damages under the remaining claims. "[C]laims (1) through (5) [described above] are ordinary breach of contract claims that seek either economic damages or other contract remedies, namely, specific performance. With respect to these claims, no reference is found in the complaint to punitive or emotional distress damages, or any other type of consequential damages." *Id.* at 5; *see also id.* at 19 (rejecting Plaintiff's argument that emotional distress damages may be recovered on the breach of contract claims that remain).

With the Court's permission, Plaintiff filed a motion to add an IIED claim ("Tenth Cause of Action" or "Count 10") based on the following allegations:

> At all material times, Judicial Watch has engaged in a pattern and practice of extreme and outrageous conduct, including but not limited to: (1) failing to maintain health insurance for Klayman and his young children, thereby putting their health and lives at risk; (2) threatening Klayman without cause with public litigation to smear and harm Klayman's Senate campaign; (3) intentionally misrepresenting the reason for Klayman's departure from Judicial Watch to third parties and the media; (4) fabricating false expenses and refusing to account for or return Klayman's personal items, including but not limited to those of Klayman's children; (5) and smearing Klayman's reputation by falsely asserting "trademark and copyright infringement" claims that Klayman could not refer to himself as the founder of Judicial Watch and intentionally interfering with Klayman's attempts to appear on news outlets both during and after Klayman's Senate campaign.

[Proposed] Third Am. Compl., ECF No. 407-1, at 31-33. Defendants' re-telling adds clarity, though not without their own editorial gloss:

> The outrageous behavior that Klayman relies on consists of the following allegations:

- Termination of health insurance for Klayman and his family;
- A threatened lawsuit regarding Klayman's efforts to speak to the press on behalf of Judicial Watch after the date of this separation;
- A motion to strike Klayman's appearance in a Florida lawsuit, as agreed to in the Severance Agreement;
- The issuance of invoices to Klayman for reimbursement of personal expenses paid for by Judicial Watch, as agreed to in the Severance Agreement;
- Communications to media outlets clarifying that Klayman is no longer affiliated with Judicial Watch and does not speak on its behalf;
- Obtaining court filings in Klayman's divorce from Stephanie Luck, which was approved by Court Order; and
- Judicial Watch's use of Klayman's filings in the divorce proceeding to correct the record regarding his separation.

Opp'n Mem. at 2. Defendants summarize these as "four alleged breaches of [the Severance] Agreement, a threat of litigation concerning a fifth issue and previously unalleged issues regarding the records of Klayman's divorce." *Id.* at 8.

## II. LEGAL STANDARD

In cases where plaintiffs have already amended their complaint, Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996), *cert den.*, 520 U.S. 1197 (1997) (finding that leave to amend a complaint is within the court's discretion and "should be freely given unless there is a good reason . . . to the contrary"); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (noting that "it is an abuse of discretion to deny leave to amend unless there is sufficient reason").

"When evaluating whether to grant leave to amend, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Courts that have found an undue delay in filing [a proposed amended complaint] have generally confronted cases in which the movants failed to promptly allege a claim for which they already possessed evidence." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013). An amendment would be prejudicial if it "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation"; it would "put [the opponent] to added expense and the burden of a more complicated and lengthy trial"; or it raises "issues . . . [that] are remote from the other issues in the case." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (internal quotation marks omitted). With

respect to the futility of an amendment, a district court may properly deny a motion to amend if "the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (citing, e.g., *Foman*, 371 U.S. at 182).

"Because amendments are to be liberally granted, the non-movant bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

### III. DISCUSSION

In opposition to Plaintiff's motion, Defendants squarely address three of the factors that the Court must consider in deciding whether to grant the Motion to Amend, namely undue delay, prejudice to the opposing party, and futility of the amendment. The Court also considers previous amendments to the complaint, and need not reach the bad faith factor.

To begin with undue delay, Plaintiff offers little explanation as to why he did not seek leave previously to add the IIED claim. In prior briefing, Plaintiff admitted that "Plaintiff has not sought to amend his Second Amended Complaint," but maintained that "Plaintiff's position, as it has always been, is that he can seek emotional distress damages . . . stemming from the causes of action originally set forth in the Complaints that have been filed." Mem. Op. and Order, ECF No. 401, at 15 n.3 (quoting Pl.'s Reply to Defs.' Opp'n to Pl.'s Resp. [ECF No. 399], ECF No. 400, at 4). The Court has since concluded that Plaintiff cannot seek emotional distress damages under the Second Amended Complaint. Mem. Op. and Order, ECF No. 401, at 19. And as discussed above, the events giving rise to the proposed amendment occurred long ago. The D.C. Circuit has observed that case law from the Supreme Court and in this circuit "make clear that undue delay is a sufficient reason for denying leave to amend." *Atchinson*, 73 F.3d 418, 426 (D.C. Cir. 1996) (citing *Foman*, 371 U.S. at 182; *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977) (affirming denial of leave to amend sought more than three years after case filing), *cert. denied*, 435 U.S. 969 (1978)). "When a plaintiff seeks to file an amended complaint this tardily, it is within the sound discretion of the district court, in consideration of the potential prejudice to the other party and the interest in eventual resolution of litigation, to deny leave to amend." *McMillan*, 566 F.2d at 720. However, because "[c]onsideration of whether delay is undue . . . should generally take into account the actions of other parties and the possibility of any resulting prejudice," *Atchinson*, 73 F.3d at 426 (citing, e.g., *Sinclair v. Kleindienst*, 645 F.2d 1080, 1085 (D.C. Cir. 1981)), the Court shall not dispose of the motion based on this factor alone.

Defendants assert that they would be prejudiced because Plaintiff's new claim would raise issues about which Defendants did not have reason to conduct discovery before discovery closed.[2] *See, e.g.*, Mot. to Amend at 4 (discussing Plaintiff's health and health insurance issues, including termination of his children's health insurance); Opp'n Mem. at 5 ("Due to the absence of any

---

[2] In light of *Atchinson*, the Court also notes that Plaintiff does not argue that Defendants did anything to delay the filing of the proposed amendment.

reference to [an IIED] claim, Defendants took no discovery regarding Plaintiff's medical history, mental health history or related symptoms. . . . Similarly, Defendants did not investigate Plaintiff's relationship with his children or the existence of stress, if any, caused by the alleged facts."). Plaintiff counters with string citations to documents produced by Defendants that purportedly put them on notice of the issues raised in his proposed Third Amended Complaint. *See, e.g.*, Mot. to Amend at 4 (citing 12 pages or sets of pages of documents produced by Defendants that "evidence this behavior" allegedly pertinent to Plaintiff's claim of "intentional denial" of health insurance); *id.* at 5-6 (citing 70 pages or sets of pages of documents produced by Defendants that "evidence such behavior" allegedly pertinent to Plaintiff's claim of "harassment and disparagement"). But Plaintiff does not explain these pages, in a parenthetical or otherwise. He says nothing to suggest that the documents contain further evidence of his medical condition or his relationship with his children, for example. Context would support an inference that they contain further bald assertions of emotional distress owing to Defendants' actions. Even though Plaintiff has produced no discovery in this litigation, and these are documents produced by Defendants in response to Plaintiff's discovery, the Court expects that Plaintiff would be able to specify how they support his proposed IIED claim. *See, e.g.*, Mem. Op. and Order, ECF No. 401, at 5 (discussing "the severe prejudice imposed on Defendants by Plaintiff's failure to produce 'any of the documents requested by Defendants'" (quoting *Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 263 (D.D.C. 2009), *aff'd*, 628 F. Supp. 2d 84 (D.D.C. 2009))). Even if the documents produced by Defendants could show that Defendants were on notice of Plaintiff's eventual IIED claim, there would be no reason to expect Defendants to take discovery of emotional distress-related issues at the time if the issues were legally irrelevant under the operative complaint, and Plaintiff would have had good reason to object to such a "fishing expedition."

Plaintiff argues that the Court can only find prejudice if his proposed amendment "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation." Mot. to Amend at 8 (quoting *Djourabchi*, 240 F.R.D. at 13). As discussed above, *Djourabchi* does not limit the Court to these several grounds. The Court need not address the other options contemplated by *Djourabchi*, however, because it is clear that this amendment *would* substantially change the theory of the case: suddenly, the parties must pivot from breach of contract case law and trial preparations to IIED equivalents. Trial preparation would be complicated by the need for additional discovery, including the possibility of medical experts.[3] Defendants also raised the

---

[3] IIED is a new claim. Accordingly, there have been no discovery requests or discovery produced as to this claim. Clearly discovery would need to be reopened for Defendants, and likely for the Plaintiff as well. The Court's sanctions orders against Plaintiff relate to discovery that was already conducted and with which Plaintiff repeatedly did not comply, and to his noncompliance with the Court's requirements for the revised Joint Pretrial Statement. *See, e.g.*, *Klayman*, 628 F. Supp. 2d at 96 (Plaintiff may not "testify[ ] to or introduce[e] into evidence any documents in support of his claims for damages or in support of his defenses to Defendants' counterclaims."); *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 151 (D.D.C. 2011) (Plaintiff may not "introduc[e] any witnesses or exhibits at the trial in this action. In reaching this conclusion, the Court is fully aware that this sanction precludes Klayman from presenting

possibility that an independent medical examination would be warranted, depending on the evidence that Plaintiff produced. Opp'n Mem. at 4. While expert medical testimony may not be required under District of Columbia law in all circumstances, it is at least "necessary to demonstrate a causal link between a defendant's act and a plaintiff's harm 'in cases presenting medically complicated questions due to multiple and/or preexisting causes." *Halcomb v. Woods*, 610 F. Supp. 2d 77, 85 (D.D.C. 2009) (quoting *Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228, 1231 (D.C. 1988)). As Plaintiff admits, the stress that he suffered was attributable to multiple causes. *See, e.g.*, Mot. to Amend at 4 ("The termination of health insurance, in conjunction with Defendant Judicial Watch's disparagement and other outrageous conduct, his recent divorce, and the serious nature of his back injury, all worked in concert and gave rise to emotional distress, which Defendants intended to vindictively inflict."). Accordingly, it is quite likely that expert testimony would be necessary for Plaintiff to be able to accurately identify Defendants' actions as the proximate cause. But given the length of this case, the completion of discovery, the rapidly approaching trial, and Plaintiff's record of obstreperous behavior during discovery, the Court is not prepared to reopen discovery in order to remedy the prejudice that would be caused by these unduly delayed allegations.

Even if this motion were timely and its granting would not prejudice Defendants, Plaintiff's proposed amendment would be futile. Plaintiff makes no attempt to supply the level of factual detail necessary to sustain his allegations of IIED in the event of a motion to dismiss. Opp'n Mem. at 7-8 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Under District of Columbia law,

> Establishing a prima facie case of intentional infliction of emotional distress requires a showing of "(1) extreme and outrageous conduct on the part of the defendant[s], which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." [*Paul v. Howard Univ.*, 754 A.2d 297, 307 (D.C. 2000) (citation and internal quotation marks omitted)]. We have been exacting as to the proof required to sustain such claims "in an employment context." *Id.* The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* at 307–08.

*Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003). Indeed, "generally, employer-employee conflicts do not rise to the level of outrageous conduct." Opp'n Mem. at 8 (quoting *Duncan v. Children's Nat. Medical Ctr.*, 702 A.2d 207, 211-12 (D.C. 1997)). Plaintiff provides nowhere near the degree of specific allegations necessary to sustain a claim that Defendants engaged in behavior "outrageous" and "extreme" enough "to go beyond all possible bounds of decency." Plaintiff does not raise the possibility that the standard should be different in what may be more properly deemed a *post*-employment context, nor is the Court otherwise moved to draw such a distinction. The Court need not separately consider the intent or severity prongs of the IIED claim to conclude that Plaintiff would not prevail on a motion to dismiss.

---

any affirmative evidence in support of his claims or in defense to the counterclaims asserted against him."). If discovery were reopened to address the new IIED claim, the sanctions orders would not apply in that context.

In the Court's view, it is worthwhile, lastly, to note that there already were two amendments, one of which was with the Court's leave.  *See* Second Am. Compl., ECF No. 12; Min. Entry Order of June 1, 2006.  Like this proposed amendment, those amendments also post-dated at least a substantial portion of the events giving rise to the instant motion.  As discussed above, Plaintiff offers an unpersuasive justification as to why he did not add this claim in one of the prior amendments or in the ensuing decade.

### IV. CONCLUSION

For all of the foregoing reasons, in an exercise of the Court's discretion, the Court **DENIES** Plaintiff's Motion for Leave to Amend the Second Amended Complaint.  The following allegations of breach contract asserted in Counts Seven and Eight of Plaintiff's Second Amended Complaint remain viable:

(1) Defendants' alleged failure to make a good faith effort to remove Plaintiff as guarantor of a lease for Judicial Watch's headquarters;
(2) Defendants' failure to pay health insurance for Plaintiff's children;
(3) Defendants' filing a motion to strike Plaintiff's appearance in a Florida litigation;
(4) Defendants' failure to provide Plaintiff with access to documents regarding a client; and
(5) Defendants' alleged disparagement of Plaintiff and misrepresentations of the reasons for his departure from the organization.

An appropriate Order accompanies this Memorandum Opinion.

Dated: January 19, 2018

       /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge