UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

v.

JUDICIAL WATCH, INC., *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)

**MEMORANDUM OPINION**
(February 20, 2018)

    Plaintiff seeks reconsideration of this Court's [433] Order and [434] Memorandum Opinion denying leave to amend his Second Amended Complaint ("SAC"). ECF No. 440. Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court **DENIES** Plaintiff's [440] Motion for Reconsideration of the Court's Substantive Order of January 19, 2018 ("Motion for Reconsideration"), for the reasons set forth below and in the Court's Memorandum Opinion of January 19, 2018, ECF No. 434 ("Jan. 19, 2018 Mem. Op."), which is expressly incorporated herein.

## I. BACKGROUND

    At the risk of repetition, some of the Court's prior decision warrants repetition to emphasize certain exigencies of this case. As the Court discussed in its January 19, 2018, opinion, this case was docketed nearly twelve years ago, and trial on the parties' remaining claims is scheduled for February 26, 2018. *See* Jan. 19, 2018 Mem. Op. at 1. That opinion also recites, in part, the string of this Court's prior rulings that have found, in summary, that Plaintiff's only remaining claims in this case are certain of his allegations of breach of contract asserted in Counts Seven and Eight of his SAC. *Id.* at 2 (citing Mem. Op. and Order, ECF No. 401 ("June 15, 2017 Mem. Op. and Order"), at 3 (citing *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 118 (D.D.C. 2009) (Kollar-Kotelly, J.))). Those remaining allegations are as follows:

    (1) Defendants' alleged failure to make a good faith effort to remove Plaintiff as guarantor of a lease for Judicial Watch's headquarters;
    (2) Defendants' failure to pay health insurance for Plaintiff's children;

---

[1] The Court's consideration has focused on the following documents:

- Pl.'s Mot. for Reconsideration of the Ct.'s Substantive Order of Jan. 19, 2018, ECF No. 440 ("Pl.'s Mot.").
- Defs.' Opp'n to Pl.'s Mot. for Reconsideration [ECF 440] of the Ct.'s Substantive Order or [sic] Jan. 19, 2018, ECF No. 444 ("Opp'n Mem.");
- Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Reconsideration of the Ct.'s Substantive Order or [sic] Jan. 19, 2018, ECF No. 447 ("Reply Mem.").

1

(3) Defendants' filing a motion to strike Plaintiff's appearance in a Florida litigation;
(4) Defendants' failure to provide Plaintiff with access to documents regarding a client; and
(5) Defendants' alleged disparagement of Plaintiff and misrepresentations of the reasons for his departure from the organization.

*Id.* at 2, 7. The Court also previously determined that Plaintiff is foreclosed from pursuing damages for the tort of intentional infliction of emotional distress ("IIED") under the above-described allegations that remain. *Id.* at 2 (citing June 15, 2017 Mem. Op. and Order at 5, 19). The Court rejected Plaintiff's argument that the tort of IIED "merged" with his existing breach of contract claims, such that he could recover damages for emotional distress under the latter claims. June 15, 2017 Mem. Op. and Order at 15-19. Plaintiff's remaining allegations did not meet the threshold requirement for such a merger under District of Columbia case law, namely that they be tortious independent of the existence of the contract. *Id.* at 16-19 (citing *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080 (D.C. 2008)) (finding that Defendants would have no independent duty apart from any they may have under the Severance Agreement in this case as to allegations (1)-(5) above). "Accordingly, as all of the remaining claims sound in breach of contract, and do not constitute independent torts, recovery of emotional distress damages is foreclosed by *Choharis*, the controlling authority for this purpose." *Id.* at 19.

After the Court ruled on June 15, 2017, that Plaintiff could not recover for the tort of IIED under the operative SAC, Plaintiff sought the Court's permission to amend the SAC to add a claim for the tort of IIED. Order, ECF No. 402, at 3. Despite the Court's indication on several occasions that such a request "would be met with extreme skepticism by this Court, given the stage of proceedings in this matter, and the likely futility of such a claim," the Court granted Plaintiff's request. *Id.* (quoting June 15, 2017 Mem. Op. and Order at 15) (internal quotation marks omitted). After an extension, Plaintiff filed his [407] Motion for Leave to Amend the Second Amended Complaint ("Motion to Amend") on July 18, 2017. The Court denied Plaintiff's [407] Motion in its [433] Order and [434] Memorandum Opinion of January 19, 2018, and Plaintiff filed the present [440] Motion for Reconsideration on January 30, 2018. Plaintiff's [440] Motion for Reconsideration was opposed and fully briefed by February 12, 2018.

## II. LEGAL STANDARD

A. Motion to Amend

For ease of reference, the Court recalls the standard that it applied when ruling on Plaintiff's [407] Motion to Amend. In cases where plaintiffs have already amended their complaint, Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (finding that leave to amend a complaint is within the court's discretion and "should be freely given unless there is a good reason . . . to the contrary"), *cert den.*, 520 U.S. 1197 (1997); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (noting that "it is an abuse of discretion to deny leave to amend unless there is sufficient reason").

"When evaluating whether to grant leave to amend, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Courts that have found an undue delay in filing [a proposed amended complaint] have generally confronted cases in which the movants failed to promptly allege a claim for which they already possessed evidence." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013). An amendment would be prejudicial if it "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation"; it would "put [the opponent] to added expense and the burden of a more complicated and lengthy trial"; or it raises "issues . . . [that] are remote from the other issues in the case." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (internal quotation marks omitted). With respect to the futility of an amendment, a district court may properly deny a motion to amend if "the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (citing, e.g., *Foman*, 371 U.S. at 182).

"Because amendments are to be liberally granted, the non-movant bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

B. Motion for Reconsideration[2]

Under Federal Rule of Civil Procedure Rule 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). As it has before, the Court again shares the view in this district that a Rule 54(b) motion may be granted "as justice requires." *E.g.*, *Coulibaly v. Tillerson*, Civil Action No. 14-189, 2017 WL 4466580, at *5 (D.D.C. Oct. 5, 2017) (Contreras, J.); *United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017) (Kollar-Kotelly, J.); *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (Lamberth, J.) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (Lamberth, J.)). The proponent carries the burden of proving "that some harm, legal or at least tangible, would flow from a denial of reconsideration," and accordingly persuading the Court that in order to vindicate justice it must reconsider its decision.

---

[2] In the alternative, Plaintiff also makes "a motion for reconsideration under Federal Rule of Civil Procedure 59(e)." Mot. for Recons. at 19; *see also id.* at 2 (claiming that arguments for relief under Rules 54(b) and 59(e) are "interchangeable"). However, he does not furnish support for any argument that the Court's [433] Order and/or [434] Memorandum Opinion constitute a "judgment" subject to the kind of "motion to alter or amend a judgment" provided for under that rule. *See* Fed. R. Civ. Pro. 59(e); *see also* Fed. R. Civ. Pro. 54(a) (defining "judgment" as, *inter alia*, "any order *from which an appeal lies*" (emphasis added)). The implication of Rule 59(e)'s inclusion in Rule 59, entitled "New Trial; Altering or Amending a Judgment," is that the judgment is final. In any event, the Court proceeds to consider whether Plaintiff is entitled to his request for the same relief under Federal Rule of Civil Procedure 54(b).

3

*Dynamic Visions, Inc.*, 321 F.R.D. at 17 (quoting *Cobell*, 355 F. Supp. 2d at 540) (internal quotation marks omitted).

"In general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008) (quoting *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003)), *aff'd* No. 09-5349, 2010 WL 1632965 (D.C. Cir. Apr. 1, 2010).

However, "motions for reconsideration . . . cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 & n.4 (D.D.C. 2011)) (quoting *Secs. & Exch. Comm'n v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)) (internal quotation marks omitted).

C. Interlocutory Appeal

A district judge may certify a non-final order for appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (2016); *see also Z St. v. Koskinen*, 791 F.3d 24, 28 (D.C. Cir. 2015). The decision whether to certify a case for interlocutory appeal is within the discretion of the district court. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014), *cert. denied sub nom.*, *U.S. ex rel. Barko v. Kellogg Brown & Root, Inc.*, 135 S.Ct. 1163 (2015). "Because certification runs counter to the general policy against piecemeal appeals, this process is to be used sparingly." *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 59 (D.D.C. 2015).

### III. DISCUSSION

A. Motion for Reconsideration

*1. Plaintiff's Attempt to Recover for IIED Under the Second Amended Complaint*

At the threshold, the Court rejects Plaintiff's attempt to relitigate this Court's June 15, 2017, decision that Plaintiff is unable to pursue damages for the tort of IIED under his remaining breach of contract claims. Plaintiff's present motion instead seeks reconsideration of this Court's January 19, 2018, decision on his [407] Motion to Amend. In the course of reaching its January 19, 2018, decision, the Court found it necessary to recall the premise for Plaintiff's request to introduce an IIED claim, namely the Court's finding that he could not recover damages for the tort of IIED on the basis of the operative SAC. Justice does not require permitting Plaintiff now to use this Court's supporting reference to its June 15, 2017, decision as a lever to obtain reconsideration of that decision more than seven (now eight) months later. Even if Plaintiff's attempt to revisit that decision were timely, his re-hashing of the "merger" doctrine does not demonstrate any "clear error" of law by this Court.

### 2. *Plaintiff's Attempt to Add an IIED Claim*

Now the Court turns to Plaintiff's objection to its decision to deny his motion to amend the SAC. Of the bases for filing a motion for reconsideration, Plaintiff asserts that the Court has committed a "clear error" of law. Mot. for Recons. at 2. But again the Court is unpersuaded that it committed legal error when it considered the undue delay, prejudice, and futility of the proposed amendment, together with Plaintiff's two previous amendments, and, without reaching the bad faith factor, denied Plaintiff's motion to amend in an exercise of its discretion. *See* Jan. 19, 2018 Mem. Op. at 4-7 (quoting *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)))). Indeed, Plaintiff cites nearly the same factors back to the Court in his [440] Motion for Reconsideration, and does not take issue with any discrepancies. Mot. for Recons. at 8 ("undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility" (quoting *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999)). As best the Court understands, Plaintiff mostly disagrees with the way that the Court has applied these factors to the facts of this case.

Plaintiff quibbles about the rationale for delays in this case. *See* Mot. for Recons. at 1, 8-9. While the Court could address the long timeline in detail, in the Court's view the reasons for delays in this case are irrelevant to the present issue. The fact of the matter is that more than eleven years elapsed between Plaintiff's filing of his [1] Complaint on April 12, 2006, and his efforts to add an IIED claim in his [407] Motion to Amend on July 18, 2017. More than eleven years also elapsed from the filing of his [12] Second Amended Complaint on June 14, 2006. Plaintiff had years to seek leave to introduce an IIED claim, which is a very specific claim for which at least a substantial part of the relevant facts occurred before the filing of this case, and all occurred long ago. By the very nature of a distress claim, Plaintiff would have been intimately aware of the facts that caused his alleged distress at the time that the distress was caused.

Only briefly shall the Court address Plaintiff's comment that a stay contributed to the delay in this case. Mot. for Recons. at 1; Reply Mem. at 2. The Court must make clear that the stay was in place for less than five of the aforementioned eleven years (October 11, 2011-May 4, 2016); Plaintiff did not move to preserve his right to seek leave to amend and add the IIED claim; and it was Defendants, not Plaintiff, who ultimately sought to lift that stay. Nor did Plaintiff quickly seek to add an IIED claim once the stay was lifted. Rather, he sought leave on July 18, 2017, to amend his SAC on the eve of trial, then planned for October 2, 2017. Apr. 20, 2017 Pretrial Hr'g Tr., ECF No. 398, at 30 ("THE COURT: . . . . October 2nd we'll aim for . . . ."); *id.* at 33 ("MR. KLAYMAN: . . . . We've got an October trial date."). Discovery had long since concluded. *See* "Amended" Scheduling and Procedures Order, ECF No. 60, at 2 (providing for the completion of discovery on May 15, 2008).[3]

If the Court had granted Plaintiff's [407] Motion to Amend in January 2018, on the eve of trial rescheduled at Plaintiff's request for February 2018, *see* Order, ECF No. 426, then Defendants

---

[3] Some lingering discovery and associated disputes dragged beyond the official May 15, 2008, termination of discovery but concluded later in 2008.

5

would have been significantly prejudiced in defending against his new IIED claim. At no point has Plaintiff alleged sufficient facts to put Defendants on notice of the need for discovery into this very specific claim. *See, e.g.*, Opp'n Mem. at 5 ("There is no identification of symptoms, sources, length, resolution, effects, etc." in "three versions of the Complaint, Answers to Interrogatories, Supplemental Answers to Interrogatories, Second Supplemental Answers to Interrogatories, Initial Disclosures, and the Joint Pretrial Statement[.]"). Instead, Plaintiff mentioned a series of unfortunate events without distinguishing which part, if any, truly was caused by Defendants' actions. *See, e.g.*, Mot. for Recons. at 14 (citing unrelated back injury); Mot. for Leave to Amend the Second Am. Compl., ECF No. 407, at 4 ("The termination of health insurance, in conjunction with Defendant Judicial Watch's disparagement and other outrageous conduct, *his recent divorce, and the serious nature of his back injury*, all worked in concert and gave rise to emotional distress, which Defendants intended to vindictively inflict." (emphasis added)).

The Court accepts Defendants' quite plausible assertion that, if Plaintiff had pled an IIED claim, they would have sought a medical examination and made other efforts to test Plaintiff's claim that some cognizable portion of his emotional distress could be attributed to Defendants rather than other causes. *See* Opp'n Mem. at 5 (citing the "need for a delayed trial, additional discovery, expert designations, independent medical examinations, independent psychiatric examinations, additional exhibits and additional witnesses"). "[F]aded memories" and the likelihood of "lost records and evidence" would be among the many obstacles to investigating Plaintiff's IIED claim now. *Id.* at 6. Consequently, the Court stands by its legal ruling that the addition now of an IIED tort claim to the remaining breach of contract claims would be a substantial change in the nature of the case that would prejudice Defendants. *See* Jan. 19, 2018 Mem. Op. at 5-6 (citing *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006)).

Adding an IIED claim would be futile for similar reasons. Plaintiff does not disagree with this Court's recitation of the elements of a prima facie case of IIED: "(1) extreme and outrageous conduct on the part of the defendant[s], which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." Jan. 19, 2018 Mem. Op. at 6 (quoting *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003)) (internal quotation marks omitted); *see also* Mot. for Recons. at 14 (citing, *e.g.*, *Amobi v. D.C. Dep't of Corrs.*, 755 F.3d 980, 995 (D.C. Cir. 2014)). Rather, he selectively cites District of Columbia case law for the proposition that the "extreme and outrageous conduct" element must be put to the jury "[w]here reasonable parties may differ." Mot. for Recons. at 14 (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998), *amended on other grounds*, 720 A.2d 1152 (D.C. 1998)). But *Homan* also makes clear that the "threshold decision" of "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so" "is for the court to determine, in the first instance." *Homan*, 711 A.2d at 818 (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1316 (D.C. 1994)) (internal quotation marks omitted). "Generally, a case of intentional infliction of emotional distress is made out only if 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1965)).

6

Previously, the Court determined that Plaintiff's proposed Third Amended Complaint lacked the factual detail necessary to show that Defendants acted "outrageously." *See* Jan. 19, 2018 Mem. Op. at 6 ("Plaintiff provides nowhere near the degree of specific allegations necessary to sustain a claim that Defendants engaged in behavior 'outrageous' and 'extreme' enough 'to go beyond all possible bounds of decency.'" (quoting *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003))). Defendants ably list the kinds of factual details that one might expect in a viable claim. *See* Opp'n Mem. at 7-8. For example, with respect to his allegation that Defendants' non-payment of insurance contributed to his alleged emotional distress, Plaintiff could be expected to show, for example, "[h]ow emotional distress arose from the non-payment of insurance, whether the children went without coverage, whether there were unpaid medical bills, whether the children obtained coverage from another source, etc." *Id.* at 8.

As for the severity of Plaintiff's alleged distress, Plaintiff's admission that he "never sought a medical expert for his extreme emotional distress," Mot. for Recons. at 11, does not help him prove how outrageous Defendants' activity allegedly was. District of Columbia "case law sets a high standard, requiring 'emotional distress of so acute a nature that harmful physical consequences might be not unlikely to result.'" *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 164 (D.C. 2013) (quoting *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007)). "Unlike other intentional infliction of emotional distress plaintiffs, [Plaintiff] did not complain of any symptoms of emotional distress, like a loss of sleep or an inability to concentrate." *Id.*

The Court remains unconvinced that Plaintiff's IIED claim meets the plausibility standard for surviving a motion to dismiss. *See* Jan. 19, 2018 Mem. Op. at 6 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (other citation omitted).

In light of the foregoing, justice does not require the Court to reconsider its decision, in an exercise of its discretion, to deny Plaintiff's [407] Motion to Amend.

*3. Plaintiff's Attempt to Assert Other Claims*

The Court also must dispose of Plaintiff's last-ditch efforts to make other claims that either no longer or never were a part of his case. His proposed Third Amended Complaint would not only have added an IIED claim, but also would have re-introduced all the claims that the Court previously dismissed or on which it previously granted summary judgment. The IIED claim shows up as the tenth claim in what otherwise appears to be a copy of his nine-count SAC. *See* Third Am. Compl., ECF No. 407-1, at 31-33. As discussed above, only parts of Counts Seven and Eight of that SAC remain viable.

Only lately has Plaintiff raised the argument that he should be able to recover for alleged defamation and tortious interference with business relationships under the non-disparagement clause of the Severance Agreement. *See, e.g.*, Order, ECF No. 442, at 2 (describing January 31,

7

2018, pretrial conference). In his [440] Motion for Reconsideration, Plaintiff made no more than a passing reference to these claims. Mot. for Recons. at 6 ("When Defendant contacted C-SPAN, CNN and other media sources, and intentionally and maliciously interfered with Plaintiff's business opportunities, disparaged and lied to them about Plaintiff, and told them not to have Plaintiff as a guest on their television or radio shows, despite the breach of the non-disparagement clause in the Severance Agreement, the colorable claims of *interference with prospective business opportunities* and *defamation* exist." (emphasis added)). Like the discussion above of Plaintiff's argument that the tort of IIED "merged" with his remaining breach of contract claims, these fresh claims go beyond the scope of the Court's decision to deny him leave to add an IIED claim to the SAC. The Court nonetheless addresses these claims here in the interest of resolving issues expeditiously ahead of trial scheduled for February 26, 2018.

It is true that Paragraph 17 of the Severance Agreement, entitled "Non-Disparagement," prohibits not only "disparaging" but also "defamatory" remarks. Confidential Severance Agreement, ECF No. 265-1, at 9 ¶ 17. But the Court has already dismissed Plaintiff's separate defamation claim, Count Nine of the SAC, in which Plaintiff did not even cite this paragraph of the Severance Agreement. Mem. Op., ECF No. 319, at 70 ("In summary, the Court GRANTS both JW and the Individual Defendant's [sic] motions for summary judgment as to Count Nine of the Second Amended Complaint, which alleges that Defendants defamed Klayman by making allegedly false statements to JW employees and to the media."); Second Am. Compl., ECF No. 12, at 30-31.

At the January 31, 2018, pretrial conference, Plaintiff seemed to claim that the Court's summary judgment on the defamation claim did not reach the factual issues that Plaintiff has been including in his disparagement allegations. But this argument is new. In response to his [440] Motion for Reconsideration, Defendants (again) briefed defamation case law and summarily concluded that "[a]mong the categories of conduct alleged by Klayman, none qualify [sic] as defamation." Opp'n Mem. at 9-10. Yet, despite his own summary treatment of the latest incarnation of his defamation claim in his [440] Motion for Reconsideration, his [447] Reply supplies no support for suddenly reading defamation into his remaining non-disparagement claim based on breach of contract. Any conclusory attempt to conflate defamation with disparagement simply by referring to them in the same breath is unavailing. *See, e.g.*, Reply Mem. at 11 ("Moreover, in conjunction with Defendant's harassing defamation and disparagement, they also made misrepresentations to the media regarding the reason for Plaintiff's departure.").

Plaintiff's attempt to recover for alleged tortious interference with business relationships fares no better. One element that Plaintiff would be required under District of Columbia case law to plead is damage resulting from Defendants' conduct. *See, e.g.*, Opp'n Mem. at 10 (citing, e.g., *Banneker Ventures, LLC v. Graham*, 225 F. Supp. 3d 1, 13-14 (D.D.C. 2016) (reciting elements of claim for tortious interference with a prospective business advantage)); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). At the Court's January 19, 2018, hearing, "Plaintiff admitted that he was unable to identify, among documents produced by Defendants, any evidence of the amount of monetary damages attributable to his alleged lost business opportunities with CNN and C-SPAN." Order, ECF No. 436, at 3 (citing June 15, 2017 Mem. Op. and Order at 22 (calling for

8

Plaintiff's submission of documents to this effect "solely from the present discovery record")).[4] Moreover, Defendants briefed case law in their response to Plaintiff's cursory reference in his [440] Motion for Reconsideration, *see* Opp'n Mem. at 10, and Plaintiff made no effort to defend his claim in his [447] Reply. Again, Plaintiff does not explain in his [447] Reply why the Court should read a tortious interference claim into the non-disparagement claim proceeding shortly to trial.

Accordingly, the Court treats as conceded Defendants' opposition to Plaintiff's informal and half-hearted attempt at this late hour to recover for defamation and tortious interference with business relationships under the remaining non-disparagement allegation.

B. Interlocutory Appeal

Permitting Plaintiff to appeal this decision on an interlocutory basis would significantly delay the ultimate termination of this litigation. With a jury trial scheduled to start less than one week from issuance of this decision, Plaintiff—and Defendants—are so close to a final judgment in this nearly twelve-year-old litigation that a piecemeal appeal would keep them much longer from that goal. There have been pretrial and trial dates set at various times throughout this litigation. Defendants have not been the cause of delays as to those scheduling matters.

Moreover, the Court is not convinced that there is a "controlling question of law," 28 U.S.C. § 1292(b), amidst its January 19, 2018, decision on the [407] Motion to Amend that could support such an extraordinary measure. Perhaps Plaintiff could seek in the Court of Appeals to refine the District of Columbia's merger doctrine, but again, the Court's June 15, 2017 decision that the tort of IIED had not merged with his remaining breach of contract claims was not at issue in Plaintiff's [407] Motion to Amend, nor did the Court reconsider that decision in its [433] Order and [434] Memorandum Opinion.

With the benefit soon of a final judgment, Plaintiff (or Defendants) may take the entire case up on appeal. The interest in avoiding piecemeal litigation is at last so close to being vindicated. To permit an interlocutory appeal at this juncture would severely undermine judicial economy, including the interest of this Court in managing the remainder of its docket. Accordingly, in an exercise of its discretion, the Court denies Plaintiff's request to certify the Court's [433] Order for appeal.

## IV. CONCLUSION

For all of the foregoing reasons, the Court **DENIES** Plaintiff's [440] Motion for Reconsideration of the Court's Substantive Order of January 19, 2018. The following allegations

---

[4] For the same reason that Plaintiff cannot recover for alleged tortious interference with business relationships, he also cannot recover damages for alleged loss of reputation, which Plaintiff again appears to seek. *See* Mot. for Recons. at 7. It was to determine whether Plaintiff could support such a reputation claim that the Court previously permitted Plaintiff to try to identify any documentation of damages among discovery produced in this case. *See* June 15, 2017 Mem. Op. and Order at 2-3, 8-15. His inability to do so precludes him from pursuing damages on either claim.

of breach of contract asserted in Counts Seven and Eight of Plaintiff's Second Amended Complaint remain viable:

(1) Defendants' alleged failure to make a good faith effort to remove Plaintiff as guarantor of a lease for Judicial Watch's headquarters;
(2) Defendants' failure to pay health insurance for Plaintiff's children;
(3) Defendants' filing a motion to strike Plaintiff's appearance in a Florida litigation;
(4) Defendants' failure to provide Plaintiff with access to documents regarding a client; and
(5) Defendants' alleged disparagement of Plaintiff and misrepresentations of the reasons for his departure from the organization.

An appropriate Order accompanies this Memorandum Opinion.

Dated: February 20, 2018

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge