UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

v.

JUDICIAL WATCH, INC., *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)

**MEMORANDUM OPINION AND ORDER**
(March 5, 2018)

    Counter-Plaintiffs Judicial Watch, Inc. ("Judicial Watch") and Thomas J. Fitton seek to introduce certain exhibits in support of their counterclaims. Counter-Plaintiffs indicated on March 2, 2018, that they wanted to use Exhibits 4-31. Counter-Plaintiffs discussed these exhibits as falling into five general categories: 1) Letters sent by Counter-Defendant to donors of Judicial Watch that were in turn forwarded to Judicial Watch; 2) Letters sent by Counter-Defendant to employees of Judicial Watch; 3) the Saving Judicial Watch website; 4) an email from Counter-Defendant to Mr. Fitton; and 5) advertisements by Counter-Defendant in conservative publications.

    Counter-Defendant Larry E. Klayman raised authenticity objections to these exhibits. Accordingly, the Court called for further briefing by the parties in order to resolve these objections outside of the jury's presence and thereby facilitate an efficient trial. *See* Min. Order of Mar. 2, 2018. Upon consideration of the briefing, the relevant legal authorities, and the record as a whole,[1] the Court rules as follows on the authenticity of Counter-Plaintiffs' exhibits proposed for use at trial on March 5, 2018.

---

[1] The Court's consideration has focused on the following documents:

- Defs.' Notice Regarding Authenticity for Exs. to Be Used on Monday, Mar. 5, 2018, ECF No. 501 ("Notice");
- Defs.' Suppl. Notice Regarding Authenticity for Exs. to Be Used on Monday, Mar. 5, 2018, ECF No. 502 ("Suppl. Notice").
- Pl.'s Obj. to Defs.' Suppl. Notice Regarding Authenticity, ECF No. 503 ("Pl.'s First Resp. to Suppl. Notice");
- Pl.'s Resp. & Objs. to Defs. [sic] Notice Regarding Authenticity for Exs. to Be Used on Monday, Mar. 5, 2018 [Dkt. #501], ECF No. 504 ("Pl.'s Resp. to Notice");
- Pl.'s Resp. and Obj. to Defs.' Suppl. Notice Regarding Authenticity, ECF No. 505 ("Pl.'s Second Resp. to Suppl. Notice");
- Defs.' Notice Regarding Resp. to Pl.'s Objs. to Authenticity for Mar. 5, 2018, Exs. [ECF 504/505], ECF No. 507 ("Defs.' Resp. to Objs.").

1

# I. INTRODUCTION

Pursuant to the Court's Minute Order, Counter-Plaintiffs submitted their Notice proposing support for the authenticity of Exhibits 4-9, 11-14, and 16-30, which they intend to admit through the testimony of Paul Orfanedes. The Court interprets the omission of support for Exhibits 10, 15, and 31 from Counter-Plaintiffs' Notice as an indication that they either no longer plan to introduce these exhibits, or will not seek to introduce them through Mr. Orfanedes's testimony on Monday, March 5, 2018. In their response to Counter-Defendant's objections, Counter-Plaintiffs "agree to postpone use of [Exhibits] 10, 15 and 31." Defs.' Resp. to Objs. Nevertheless, Counter-Plaintiffs do provide support for the authenticity of Exhibit 15 in their Supplemental Notice, as discussed below, and the Court accordingly shall proceed to address its authenticity. *See infra* n.4. As to **Exhibits 10 and 31**, the Court shall not permit their introduction at trial on Monday, March 5, 2018, on this record, but Counter-Plaintiffs are not precluded from seeking to introduce them later in the trial with adequate support for their authenticity. *See* Min. Order of Mar. 2, 2018 (describing process for briefing authenticity).

Also of note, Counter-Plaintiffs' Notice does not employ the five categories discussed in open court, perhaps to some degree because they now plan to introduce them through Mr. Orfanedes, rather than in part or in full through some combination of testimony by Mr. Fitton and by deponents who are not available to testify at trial. Rather, Counter-Plaintiffs proceed one-by-one through the exhibits. Counter-Plaintiffs also argue that Counter-Defendant admitted to certain of the exhibits in his Answer and Affirmative Defenses to Amended Counterclaim of Defendants, ECF No. 91 ("Answer to Amended Counterclaim"). Notice at 5.

After submission of their Notice, Counter-Plaintiffs submitted their Supplemental Notice. They argue that other of Counter-Defendant's filings earlier in this litigation likewise represent an admission on his part. First, Counter-Plaintiffs argue that Counter-Defendant's response to their Motion for a Protective Order in 2007 did not object to the authenticity of the exhibits at issue—some of which purportedly are the same as those presently at issue—and accordingly conceded their authenticity. Suppl. Notice at 1-2 (citing ECF Nos. 73, 74). Second, Counter-Plaintiffs argue that certain of Counter-Defendant's admissions in Plaintiff's Responses to Defendants' Requests for Admission to Plaintiff, ECF No. 110 ("RFA Responses"), confirm the authenticity of specific exhibits now offered into evidence. *See* Suppl. Notice at 2-25 (attaching Plaintiff's responses to the requests reprinted therein).

Counter-Defendant responded to Counter-Plaintiffs' Notice and filed two responses to the Supplemental Notice. Pl.'s Resp. to Notice; Pl.'s First Resp. to Suppl. Notice; Pl.'s Second Resp. to Suppl. Notice. Among Counter-Defendant's objections was the timing of Counter-Plaintiffs' Supplemental Notice.[2] At the Court's further request, Counter-Plaintiffs responded to Counter-Defendant's objections. Defs.' Resp. to Objs.

---

[2] Counter-Defendant claims that "[t]he supplement is 14 hours and 2 minutes late, filed at 2:02 a.m., in violation of the Court's Order to file responsive documents by 12:00 p.m. March 3,

## II. LEGAL STANDARD

The threshold for proof of authenticity is low; Counter-Plaintiffs need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). With respect to a unique document or other item, an illustrative example of sufficient evidence is "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4).

## III. DISCUSSION

### A. Exhibits Authenticated by Counter-Defendant's RFA Responses

Counter-Defendant's responses to Counter-Plaintiffs' requests for admissions are sufficient by themselves to establish the authenticity of many of the proposed exhibits. Those responses follow a predictable pattern. *See, e.g.*, Suppl. Notice at 2 (arguing authenticity of Exhibit 9 based on Plaintiff's responses to Requests 50-55); RFA Responses at 12-13 (Plaintiff's responses to Requests 50-55). Counter-Defendant admits that he assisted in drafting a specific letter. That letter seeks contributions to Saving Judicial Watch. He admits to the return address on that letter for the contributions that it seeks. He admits to authorizing that his signature be affixed to the letter. He admits that the letter came from "Larry Klayman dba Saving Judicial Watch." And he admits that the letter was sent by U.S. Mail.[3] **Counter-Defendant's responses affirming some or all aspects of the aforementioned pattern suffice to establish the authenticity of each of the following exhibits:**

**Exhibit 6** (Requests 39, 42; *see also* Requests 40-41, 43);
**Exhibit 8** (Requests 44-47; *see also* Requests 48-49);
**Exhibit 9** (Requests 50-55);
**Exhibit 11** (Requests 57-62);
**Exhibit 12** (Requests 64-67, 69-70);
**Exhibit 14** (Requests 73-74, 77; *see also* Request 76);

---

2018." Pl.'s First Resp. to Suppl. Notice. But Counter-Plaintiffs filed their fulsome original notice on time. Their Supplemental Notice furnished additional information that the Court has found helpful. Counter-Defendant had the full amount of time to respond to Counter-Plaintiffs' original Notice, and adequate time, in light of the circumstances, to file his response to the Supplemental Notice.

[3] Counter-Defendant denies authorizing certain elements of these mailings, e.g., use of the phrase "Because No One Is Above the Law." *See, e.g.*, RFA Responses at 11 (Plaintiff's response to Request 45). However, because he admits some or all of the above pattern—e.g., assisting in drafting, authorizing signing, and authorizing mailing—the Court finds sufficient evidence that these letters are authentic.

**Exhibit 15** (Requests 78-83);[4]
**Exhibit 16** (Requests 84-89);
**Exhibit 18** (Requests 94-99); and
**Exhibit 19** (Requests 100-01, 104).

Another, even simpler pattern occurs where Counter-Defendant admits that a given advertisement attached to the Amended Counterclaim was placed in a specific edition of a specific periodical. He also admits to the return address—including "Larry Klayman d/b/a Saving Judicial Watch"—that appears in that advertisement for the contributions that it seeks. Counter-Defendant's responses affirming the first, and some instances, the second aspect of the aforementioned pattern suffice to establish the authenticity of each of the following exhibits:

**Exhibit 20** (Request 56);
**Exhibit 22** (Request 71);
**Exhibit 23** (Requests 90-91);
**Exhibit 24** (Requests 92-93); and
**Exhibit 25** (Requests 106-07).

Where there are discrepancies between Counter-Plaintiffs' proposed exhibits and the respective exhibits to the Amended Counterclaim, to which Counter-Defendant admitted, Counter-Plaintiffs should introduce the respective exhibits to the Amended Counterclaim instead. Also, with respect to proposed Exhibit 6, using Exhibit 1B to the Amended Counterclaim incorporates the reply envelope with return address that otherwise was set forth in proposed Exhibit 7, rendering the latter unnecessary. **Accordingly, the Court shall exclude Exhibit 7 on the present record.**

B. <u>Exhibits Authenticated by Cross-Reference</u>

The authenticity of other exhibits is established by distinctive characteristics made known to the Court through exhibits authenticated above and through Counter-Defendant's testimony at trial on his claims.

Exhibit 13 is an email version of Exhibit 12. Notice at 3. The content is substantially the same. The only differences in Exhibit 13 are a January 29, 2006, date rather than a January 29, 2007, date,[5] a different recipient, the combination of two paragraphs into one paragraph on page 2, adjustments to language on pages 7-8 that refer readers to a link for donations, and omission of the reply letter device and envelope. Moreover, the sender of the email in Exhibit 13 has already been deemed authentic; Exhibit 14 too is an email that comes from sender, "Larry Klayman," at

---

[4] Although Counter-Plaintiffs did not specify in their Notice that they intended to use **Exhibit 15** on Monday, March 5, 2018, their Supplemental Notice nevertheless references Exhibit 15, and the Court finds that it is authenticated for the reasons set forth above.

[5] This may point to a typo in one exhibit or the other, since the email caption in Exhibit 13 indicates that it was emailed on January 29, 2007.

4

address "listupdate@ru-lists.com". **Accordingly, the Court finds sufficient evidence that Exhibit 13 is authenticated.**

Exhibit 17 is a letter that includes on the last page several handwritten notes of different styles. Counter-Plaintiffs have offered to drop the last page. **Contingent on the deletion of the last page, the Court finds sufficient evidence that Exhibit 17 is authenticated.**

Exhibit 21 is a January 22, 2007, advertisement that is substantially the same as Exhibit 20, which has been authenticated above. It is different insofar as the footer shows that it is an advertisement in *Human Events*, rather than *Washington Times* where the Exhibit 20 advertisement appeared on an unspecified date. But the formatting in Exhibit 21 is the same as the *Human Events* advertisement published one week later in authenticated Exhibit 22 on the same page 23 of that publication. Plaintiff also admitted that the return address on this advertisement is correct, though he was not asked to admit to the advertisement itself. *See* RFA Responses at 14-16 (Requests 63, 72). Moreover, Counter-Plaintiffs have offered to produce the original publication at trial. **Accordingly, the Court finds sufficient evidence that Exhibit 21 is authenticated.**

Exhibit 26 is a May 28, 2007, *Washington Times* advertisement that is substantially the same as the Court admitted in Exhibit 25. Aside from minor formatting differences, the only apparent difference is that the advertisement in Exhibit 25 was published two weeks earlier. **Accordingly, the Court finds sufficient evidence that Exhibit 26 is authenticated.**

C. <u>Saving Judicial Watch Website Exhibits</u>

Counter-Plaintiffs also seek to introduce two exhibits, Exhibits 4 and 5, purportedly taken from Counter-Defendant's website, www.savingjudicialwatch.org. In Plaintiff's Answer to the Amended Counterclaim, he admits that he "launched the website www.savingjudicialwatch.org after the commencement of the instant litigation, to keep the public informed about his efforts to save Judicial Watch and to seek support." Answer to Am. Countercl. ¶ 34. What remains is whether the content in Exhibits 4 and 5 in fact comes from Counter-Defendant's website.

In particular, Exhibit 4 is purportedly the home page of that website. Counter-Plaintiffs represented that they retrieved this page from the Wayback Machine, a service offered by the non-profit Internet Archive. The Court called for briefing on issues specific to authentication of documents retrieved from the Wayback Machine, namely whether an affidavit or testimony from Internet Archive would be necessary to authenticate such documents. Min. Order of Mar. 2, 2018 (citing *e.g.*, *Specht v. Google Inc.*, 747 F.3d 929, 933 (7th Cir. 2014); *United States v. Bansal*, 663 F.3d 634, 667-68 (3d Cir. 2011)).

Ultimately, the parties did little to address the case law. Counter-Plaintiffs report that an affidavit could not be obtained before the expected conclusion of trial, but they argue that in any event "the organization Saving Judicial Watch was merely a d/b/a of Plaintiff Klayman, which means that the contents of the website, savingjudicialwatch.org, are admissions by Plaintiff to which Defendants may testify with, or without, the screenshot being in evidence." Notice at 1 (citation omitted). Counter-Defendant simply asserts that the affidavit is required and that "it cannot be ascertained whether the screenshot is accurate or whether it has been doctored unless the original website provider can attest to it." Pl.'s Resp. to Notice at 1.

The Court's own review of persuasive authority suggests that an affidavit or testimony may not strictly be necessary, but district courts that require an affidavit or testimony have been found to act reasonably. *See Specht*, 747 F.3d at 933 ("[T]he district court reasonably required more than memory, which is fallible; it required authentication by someone with personal knowledge of reliability of the archive service from which the screenshots were retrieved."); *Bansal*, 663 F.3d at 667-68 (finding Federal Rule of Evidence 901(b)(1) satisfied where "the government called a witness to testify about how the Wayback Machine website works and how reliable its contents are," and "[t]he witness also compared the screenshots with previously authenticated and admitted images from [Defendant's] website and concluded, based upon her personal knowledge, that the screenshots were authentic").

Counter-Plaintiffs also argue that Counter-Defendant's response to their Motion for Protective Order, ECF No. 73, failed to object to the authenticity of the attachments thereto—including an Exhibit 18 that is similar to the Exhibit 4 they have now proposed—and so conceded that argument. *See* Suppl. Notice at 1; Mot. for Protective Order, ECF No. 73, Ex. 18. The Court's review of Counter-Defendant's response confirms that it does not challenge authenticity. *See* Pl.'s Mem. of P&A in Opp'n to Defs.' Mot. for Protective Order, ECF No. 74. There are some discrepancies between the Exhibit 4 at issue now and the Exhibit 18 accompanying the Motion for Protective Order, such as a footer in the latter version showing that it is taken from the Saving Judicial Watch website on a specific date, June 20, 2007. But the versions are largely the same.

Here, the Court finds that the purported home page does evince characteristics distinctive to Counter-Defendant's language. For example, Counter-Plaintiff used the language of "True Independent Counsel" in exhibits authenticated above, and he has asserted at trial that Judicial Watch is "my baby." *See, e.g.*, Defs.' Ex. 8 at 6 ("True Independent Counsel"); Feb. 27, 2018 Tr. of Jury Trial (vol. II) at 51:10 ("my baby"). Moreover, Counter-Plaintiffs indicate that Mr. Orfanedes will attest to viewing and printing a copy of the home page. Defs.' Resp. to Objs. at 1. Their response to Counter-Defendant's objections attaches a copy of the home page with a header and footer that suggest the page comes directly from the savingjudicialwatch.org website, without indications that it comes from an internet archive. *Id.* at 5. **Contingent on Mr. Orfanedes's testimony and the offer into evidence of the version attached to Counter-Plaintiffs' response to Counter-Defendant's objections, the Court finds sufficient evidence that Exhibit 4 is authenticated.**

Exhibit 5 is a press release from the website that is supported on similar grounds. Counter-Plaintiffs indicate that Mr. Orfanedes will attest to 1) visiting the Saving Judicial Watch website, 2) clicking a link which brought him to the press release proposed as Exhibit 5, and 3) printing out that press release. Notice at 1; Defs.' Resp. to Objs. The release again includes a number of characteristics distinctive to Counter-Defendant's language, e.g., a reference to Judicial Watch as "True Independent Counsel," a reference to Counter-Defendant as "the founder" of Judicial Watch, and allegations that Mr. Fitton lied about obtaining a college degree. *See, e.g.*, Feb. 27, 2018 Tr. of Jury Trial (vol. II) at 75:23-24 ("the founder"); *id.* at 58:18-22 (Mr. Fitton "told me that he had graduated from George Washington [U]niversity. . . . [A]s I was leaving Judicial Watch for the senate I learned that was . . . a lie."). This version of the press release offers no indication that it is taken from the Saving Judicial Watch website or any other website; there is no header or footer, not even something that may be from the Internet Archive.

6

As with Exhibit 4, Counter-Plaintiffs indicate that Mr. Orfanedes will attest to viewing and printing a copy of the home page. Defs.' Resp. to Objs. at 1. Their response to Counter-Defendant's objections attaches one legible copy (and one partially cut-off copy) of the press release with a header, footer, and sidebar that suggest the page comes directly from the savingjudicialwatch.org website, without indications that it comes from an internet archive. *Id.* at 7-8. **Contingent on Mr. Orfanedes's testimony and the offer into evidence of the legible version attached to Counter-Plaintiffs' response to Counter-Defendant's objections, the Court finds sufficient evidence that Exhibit 5 is authenticated.**

D. <u>Additional Exhibits That Are Not Authenticated</u>

The Court shall briefly address some additional exhibits for which Counter-Plaintiffs represented in open court on March 5, 2018, that they lack the original copies (Exhibits 27-29) or for which there has been no discussion of an original copy (Exhibit 30). There are sufficient discrepancies between these and other exhibits that the Court has not found sufficient evidence on this record that they are authenticated.[6]

Exhibit 27 is another *Washington Times* advertisement, this time from the August 27, 2007, edition. Exhibit 27 contains frequent references to Counter-Defendant's standard language. For example, consistent with Counter-Defendant's testimony at trial, the advertisement claims that Judicial Watch never purchased their headquarters building, that he is "the founder" of Judicial Watch, that he left Judicial Watch "to run for the U.S. Senate," and that Mr. Fitton lied that he had graduated from George Washington University. *See, e.g.*, Feb. 27, 2018 Tr. of Jury Trial (vol. II) at 75:23-24 ("the founder"); *id.* at 58:18-22 (Mr. Fitton "told me that he had graduated from George Washington [U]niversity. . . . [A]s I was leaving Judicial Watch for the senate I learned that was . . . a lie.").

But Exhibit 27 has different formatting than others of the previously authenticated *Washington Times* exhibits. It is also in color, which is likewise distinguishing. Counter-Plaintiffs represent that Mr. Orfanedes printed this exhibit from the *Washington Times* website, but the www.pressdisplay.com header and footer suggest otherwise. The Court finds unavailing Counter-Plaintiffs' argument that this is a self-authenticating exhibit. Notice at 5; Fed. R. Evid. 902(b)(6) (deeming self-authenticating "[p]rinted material purporting to be a newspaper or periodical"). This advertisement, standing alone and notwithstanding some references to the *Washington Times*, is not a newspaper or periodical itself, much less with its www.pressdisplay.com designations. As noted, Counter-Plaintiffs stated on March 5, 2018, that they do not have the original copy to offer into evidence at trial. **Accordingly, at least absent a copy of the original publication, the Court shall exclude Exhibit 27 on the present record**.

Exhibit 28 is a letter that seems to contain language that Counter-Defendant has used in other, authenticated letters. However, the left-hand side of the letter is partially cut off. While Counter-Plaintiffs note that "[t]he original copy is slightly more legible," Notice at 4, that original copy is not before the Court. As noted, Counter-Plaintiffs stated on March 5, 2018, that they do

---

[6] The Court notes with respect to Exhibits 27-30 that a witness can testify to their content, and that a witness's recollection can be refreshed with these exhibits even though they are not admissible on the present record.

not have the original copy to offer into evidence at trial. **Accordingly, at least absent a copy of the original publication, the Court shall exclude Exhibit 28 on the present record.**

Exhibit 29 is a letter that purports to be from Counter-Defendant in his role at Freedom Watch. It is the only Freedom Watch exhibit in the set of documents at issue. The Court cannot recall seeing discussion of Counter-Defendant's connection to Freedom Watch in other of the exhibits that have been authenticated. While aspects of the substantive content as well as features such as the 1201 Pennsylvania Ave., Suite 300, Washington, DC 20004 address are the same as in other mailers, it is different in formatting from other letters that have been authenticated, contains a signature that is different from most, if not all, that the Court has observed in other exhibits, and has some handwriting on it. As noted, Counter-Plaintiffs stated on March 5, 2018, that they do not have the original copy to offer into evidence at trial. **Accordingly, at least absent a copy of the original publication, the Court shall exclude Exhibit 29 on the present record.**

Exhibit 30 is a Christmas-themed mailer that differs substantially from other letters authenticated above. While the mailer does include some of Counter-Defendant's stock language, such as the allegation that Mr. Fitton lied about graduating from George Washington University, distinguishing features include the Christmas tree picture, the inclusion of the Serenity Prayer, further references to Freedom Watch that the Court cannot recall seeing in other, authenticated exhibits, and a Miami, rather than Washington, DC, address for Saving Judicial Watch. Counter-Plaintiffs have made no representation about the whereabouts of the original copy, for purposes of offering that into evidence at trial. **Accordingly, at least absent a copy of the original publication, the Court shall exclude Exhibit 30 on the present record.**

E. Exhibits That the Court Does Not Reach

Above the Court indicated that it does not reach Exhibits 10 and 31 because Counter-Plaintiffs did not brief them at this time.

Counter-Plaintiffs refer to Exhibits 39-45 in their discussion of current exhibits that purportedly were attached to their Motion for Protective Order. As discussed above, Counter-Defendant did not raise an authenticity objection at that time. Apart from relying on that fact, however, the Court lacks further briefing on these exhibits that would support a finding that they can be authenticated. The Court requires further information in order to make that determination. Accordingly, the Court shall not permit the introduction of **Exhibits 39-45** at trial on Monday, March 5, 2018, on this record, but Counter-Plaintiffs are not precluded from seeking to introduce them later in the trial with adequate support for their authenticity. *See* Min. Order of Mar. 2, 2018 (describing process for briefing authenticity).

***

**ORDER**

The following exhibits have been **authenticated** on the above-cited grounds: **Exhibits 4-6, 8, 9, 11-26**. Admission of such exhibits is contingent on an adequate foundation provided by the testimony of Paul Orfanedes.

The following exhibits are **excluded** on the present record on the above-cited grounds: **Exhibits 7, 27-30**.

As noted above, Counter-Plaintiffs are **not permitted to introduce on Monday, March 5, 2018**, the following exhibits, on this record, but are not precluded from seeking to introduce them later in the trial with adequate support for their authenticity: **Exhibits 10, 31, 39-45**.

**SO ORDERED.**

Dated: March 5, 2018

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge