# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>    Plaintiff,<br><br>v.<br><br>JUDICIAL WATCH, INC., *et al.*,<br><br>    Defendants. | Civil Action No. 06-670 (CKK) |

## MEMORANDUM OPINION AND ORDER
(March 8, 2018)

Counter-Plaintiffs Judicial Watch, Inc. ("Judicial Watch") and Thomas J. Fitton seek to introduce certain further exhibits at trial on March 8, 2018, in support of their counterclaims. The Court has a standing order calling for daily briefing on authenticity in order to resolve any such objections outside of the jury's presence and thereby facilitate an efficient trial. *See* Min. Order of Mar. 2, 2018.

Pursuant to the Court's order, Counter-Plaintiffs indicate that they want to admit **Exhibits 38, 39, and 41** through Steve Andersen's testimony; **Exhibits 114, 117-21, 123, 125-28, and 176-83** through Susan E. Prytherch's testimony; and a combined version of **Exhibits 45 and 54** through Paul J. Orfanedes's testimony. Defs.' Notice Regarding Authenticity for Exs. to Be Used on Thursday, Mar. 8, 2018, ECF No. 514 ("Notice").[1] Counter-Defendant Larry E. Klayman has challenged the authenticity of the proposed exhibits, alleging in part that the authors of the respective documents must be present to authenticate. Pl.'s Objs. to Proposed Exs. ("Counter-Def.'s Resp.").

Upon consideration of the briefing, the relevant legal authorities, and the record as a whole,[2] the Court rules as follows on the authenticity of Counter-Plaintiffs' exhibits proposed for introduction at trial on March 8, 2018.

---

[1] The Notice also proposed using **Exhibit 122**, which did not appear in the bench copy of Counter-Plaintiffs' exhibit book. Subsequently, Counter-Plaintiffs indicated that it was a mistake to have listed it.

[2] The Court's consideration has focused on the following documents:

- Defs.' Notice Regarding Authenticity for Exs. to Be Used on Thursday, Mar. 8, 2018, ECF No. 514 ("Notice");

- Pl.'s Objs. to Proposed Exs. ("Counter-Def.'s Resp."). The Court has used the title of the email containing this untitled document.

1

## II. LEGAL STANDARD

The threshold for proof of authenticity is low; Counter-Plaintiffs need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

With respect to certain exhibits, the Court shall draw on the standard established by the Federal Rules for the so-called business records exception to the hearsay rule. "A record of an act, event, condition, opinion, or diagnosis" is not excluded if

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6) ("Records of a Regularly Conducted Activity").

Authentication of other exhibits relies on the testimony of a witness with knowledge that "an item is what it is claimed to be." Fed. R. Evid. 901(b)(1).

## III. DISCUSSION

A. <u>Andersen Testimony</u>

In its Memorandum Opinion and Order of March 6, 2018, the Court already concluded that **Exhibits 38, 39, and 41** were authenticated contingent on the testimony of Mr. Fitton to the conditions set forth in Rule 803(6). ECF No. 511, at 5-6. Now Counter-Plaintiffs propose to introduce this exhibit through Mr. Andersen's testimony. A similar foundation for authentication applies.

As the Court previously observed, **Exhibits 38 and 41** are emails from Steve Andersen, whom **Exhibit 41** identifies as Judicial Watch's Director of Development, to Mr. Fitton and one or more other Judicial Watch employees that document calls with Judicial Watch donors. **Exhibit 39** is a call report that further describes the call discussed in **Exhibit 38**. As indicated in these exhibits, one donor told Judicial Watch that she is "not too happy with what Tom Fitton is doing," and was "not interested" in donating further, despite her record of giving more than $9,000 to Judicial Watch. Ex. 38 (internal quotation marks omitted). Another donor cancelled her monthly donation based on concerns generated by a letter from "L. Klayman," despite her record of giving more than $500 total in frequent small gifts over nearly nine years. These are confirmed donors

with significant giving histories. Mr. Andersen passed the news of unfavorable communications with them to Mr. Fitton and other senior colleagues at Judicial Watch.

Counter-Defendant objects that the testimony of the writer of these documents is necessary to authenticate them. Counter-Def.'s Resp. Counter-Plaintiffs support these documents by noting that Mr. Andersen authored the emails in **Exhibits 38 and 41**, directed the preparation of the call report in **Exhibit 39**, and kept all three exhibits as records developed in the ordinary course of their work. Notice at 1. These points address some of the elements of the business records exception to the hearsay rule. Establishing that these records meet the requirements for the hearsay exception would give more than adequate proof of their authenticity.[3] Foundation would include testimony that Mr. Andersen worked at Judicial Watch, a description of the capacity in which Mr. Andersen worked, and a description of the employee involved in the call at issue in **Exhibits 38 and 39**. Supporting evidence would also include any policy or practice of Judicial Watch to contact and document conversations with current or prospective donors. Such evidence also would include that Mr. Andersen sent the emails and call report at issue and his process for setting up and maintaining any kind of file for keeping such communications. With respect to **Exhibits 38 and 39**, where Mr. Andersen is not the author of the underlying document, as in **Exhibit 41**, his testimony establishing the above foundation would overcome Counter-Defendant's objection that authentication of these exhibits requires testimony by the author of those documents. **Contingent on the testimony of Mr. Andersen to the conditions set forth in Rule 803(6), the Court finds sufficient evidence that Exhibits 38, 39, and 41 are authenticated.**

Counter-Defendant also objects to the Account Merge History portion of **Exhibit 41**. The Court understands that this portion is relevant at a minimum to Counter-Plaintiffs' non-competition claims, as the donor's long giving history suggests that she would have continued to give to Judicial Watch but for Counter-Defendant's Saving Judicial Watch activities. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Accordingly, Counter-Defendant's relevance objection to **Exhibit 41** is overruled.

B. Prytherch Testimony

Through Ms. Prytherch's testimony, Counter-Plaintiffs intend to introduce certain business-related documents in **Exhibits 114, 117-21, 123, 125-28, and 176-83** that they represent are maintained in the ordinary course of their business. Notice at 1-2. It appears that Counter-Plaintiffs will seek to establish foundation of the type envisioned by Federal Rule of Evidence 803(6), the business records exception to the hearsay rule. At the threshold, Ms. Prytherch should testify to her role as Office Manager, any applicable policies and practices of Judicial Watch to

---

[3] The Court does not mean to suggest that it otherwise would entertain a hearsay objection to these (or any other) exhibits proposed by Counter-Plaintiffs. Counter-Defendant waived hearsay objections. Order, ECF No. 455, at 6.

prepare and maintain records, and the types of records preparation and maintenance that she oversees.

Counter-Plaintiffs' efforts to establish a business records foundation may be most straightforward for documents created by Judicial Watch at Ms. Prytherch's own direction. Counter-Plaintiffs' Notice suggests that those conditions apply to **Exhibit 123**. This series of monthly invoices identifies the alleged accrued interest on the unpaid balance owed by "K&A," or Klayman & Associates, P.C., to Judicial Watch. The unpaid balance as of December 31, 2003, of $134,119 is consistent with outside auditor Kathy A. Raffa's calculation, contained in **Exhibit 115**, which the Court found to be authenticated contingent on Mr. Fitton's testimony. From there, the amounts appear to increase at a fixed monthly fraction of the 8% annual accrued interest provided for under provision 11.A. of the Confidential Severance Agreement in previously authenticated **Exhibit 1**. Ms. Prytherch's foundation should include a description of the reason that these invoices were prepared, the process for preparing these invoices, whether these invoices were sent to Counter-Defendant, and how Judicial Watch has maintained them since.

Counter-Defendant's objection to **Exhibit 123** may be limited to the handwriting on some of the invoices. Counter-Def.'s Resp. ("Handwriting on documents cannot be authenticated and lacks foundation documentation."). Ms. Prytherch may identify such handwriting based on her experience working with Judicial Watch staff who prepared or reviewed the invoices; failing that, Counter-Plaintiffs could seek to authenticate the handwriting through the testimony of another witness, or the handwriting could be redacted. **Contingent on the testimony of Ms. Prytherch to the conditions set forth in Rule 803(6) and contingent on testimony identifying the handwriting on the invoices, the Court finds sufficient evidence that Exhibit 123 is authenticated.**

Counter-Plaintiffs also indicate that Ms. Prytherch will testify to documents in **Exhibits 176-83** that were prepared at her direction by outside counsel or auditors. In each instance, Counter-Defendant objects that the authors of those documents must be present to testify. **Exhibit 176** consists of a letter from Judicial Watch's outside counsel to Counter-Defendant regarding Counter-Defendant's alleged shared expenses. **Exhibits 177-83** are annual financial statements from outside auditors. In each instance, Ms. Prytherch can lay adequate foundation by testifying to her instruction to the preparers of these documents, discussing any regular practice pursuant to which they did so, identifying Judicial Watch's role in contributing information used by the preparers, and indicating how Judicial Watch has maintained these records since then. Specifically with respect to **Exhibit 176**, foundation should include any regular practices of Judicial Watch for pursuing alleged unpaid balances from Counter-Defendant, such as when letters were sent to Counter-Defendant on Judicial Watch's behalf, and how this letter has been maintained in Judicial Watch's records. **Contingent on the testimony of Ms. Prytherch to the conditions set forth in Rule 803(6), the Court finds sufficient evidence that Exhibits 176-83 are authenticated.**

Counter-Plaintiffs should lay a similar foundation to establish the authenticity of **Exhibit 114**, which is another letter from Judicial Watch's outside counsel to Counter-Defendant, this time regarding certain Judicial Watch property that he allegedly had not returned. Again, Counter-

4

Defendant objects that the author of the letter need testify.  While Counter-Plaintiffs do not represent that Ms. Prytherch was involved, they do indicate that Judicial Watch directed the preparation of the letter.  Ms. Prytherch can lay adequate foundation by identifying the person responsible for directing outside counsel, whether Ms. Prytherch oversaw this person, any regular practices of Judicial Watch for pursuing alleged unreturned property from Counter-Defendant, such as when letters were sent to Counter-Defendant on Judicial Watch's behalf, and how this letter has been maintained in Judicial Watch's records.  **Contingent on the testimony of Ms. Prytherch to the conditions set forth in Rule 803(6), the Court finds sufficient evidence that Exhibit 114 is authenticated.**

**Exhibits 125-28** are invoices from outside counsel, outside auditors, and a mediation service that Counter-Plaintiffs represent show "attempted collection of personal and K&A debts." Notice at 2.  In addition to calling for testimony from the sources of this information, Counter-Defendant objects to "relevancy as these claimed fees are not at issue."  Counter-Def.'s Resp.  Plaintiff's objection is somewhat ambiguous.  There is quite a bit of information in these records that appears not to relate to this case.  But other portions of these records do appear to concern the pursuit of debts owed by Counter-Defendant.  Assuming adequate foundation, the Court ultimately shall admit the entirety of the records because of the appropriate context that they provide, such as the size of expenses related to Counter-Defendant relative to other legal or auditing services for which Judicial Watch contracted.

Turning to the authenticity objection, Ms. Prytherch can lay adequate foundation by testifying, as with other exhibits, to any regular practices of Judicial Watch for pursuing alleged unpaid debts and/or unreturned property from Counter-Defendant, the outside assistance that Judicial Watch contracted for that purpose, the billing practices associated with each type of outside assistance (legal, auditing, mediation), and how Judicial Watch has maintained these invoices in its files.  Ms. Prytherch should also indicate whether there were any disputes with these vendors regarding expenses for their services, and how those disputes were resolved.  **Contingent on the testimony of Ms. Prytherch to the conditions set forth in Rule 803(6), the Court finds sufficient evidence that Exhibits 125-28 are authenticated.**

In **Exhibits 117-21**, Counter-Plaintiffs propose to seek introduction of professional liability insurance policy coversheets through Ms. Prytherch's testimony.  Again, Counter-Defendant calls for the preparer of these documents, in this case the insurance carrier, to testify.  The Court finds this to be unnecessary.  Ms. Prytherch can testify to Judicial Watch's process of contracting for liability insurance, including the selection of an insurer, the negotiation of terms, carrier practices for sending policy coversheets with the policies to Judicial Watch, and Judicial Watch's practices for maintaining these coversheets in its files.  Specifically with respect to **Exhibit 117**, Counter-Defendant also objects to relevance based on the time period, but the September 22, 2003, date of this cover sheet strikes the Court as potentially quite relevant to expenses accrued after Counter-Defendant's departure that may impact his alleged debts to Judicial Watch; for example, this coversheet indicates that Klayman & Associates, P.C. is still listed on Judicial Watch's policy.  Accordingly, the Court overrules the objection to relevance.

**Contingent on the testimony of Ms. Prytherch to the conditions set forth in Rule 803(6), the Court finds sufficient evidence that Exhibits 117-21 are authenticated.**

    C.  Orfanedes Testimony

Counter-Plaintiffs propose to use Mr. Orfanedes's testimony to introduce an exhibit that combines those currently labeled as **Exhibits 45 and 54**. Counter-Defendant objects that there must be "testimony showing that what is claimed is true," and that [d]ocuments are confused and appear to be manipulated." Counter-Def.'s Resp. Counter-Defendant waived his objection to **Exhibit 45** by failing to raise it when **Exhibit 45** was first proposed at trial. *See* Order, ECF No. 511, at 5. Counter-Plaintiffs propose to establish through Mr. Orfanedes that these documents "were collected by Judicial Watch and retained as one exhibit[], which is shown by the original." Notice at 2. Adequate foundation also should include that "the exhibits were collected and filed pursuant to a process implemented to monitor supporter/donor responses to the Saving Judicial Watch effort by" Counter-Defendant. *Id.* To overcome Counter-Defendant's objection that the "[d]ocuments are confused," Counter-Def.'s Resp., Mr. Orfanedes should explain his intent in organizing the file as he or a colleague did. Moreover, Counter-Plaintiffs indicate that they are prepared to introduce the original version into evidence. **Contingent on the testimony of Mr. Orfanedes to the conditions set forth in Rule 803(6), the Court finds sufficient evidence that the combined version of Exhibits 45 and 54 is authenticated.**

The Court also notes that Mr. Orfanedes may testify to handwriting that other witnesses have been unable to identify.

*\*\*\**

**ORDER**

The following exhibits have been **authenticated** on the above-cited grounds. Admission of such exhibits is contingent on an adequate foundation provided by the respective witness.

    **Steve Andersen: Exhibits 38, 39, and 41.**

    **Susan E. Prytherch: Exhibits 114, 117-21, 123, 125-28, and 176-83.**

    **Paul J. Orfanedes: A combined version of Exhibits 45 and 54.**

    **SO ORDERED.**

Dated: March 8, 2018

                                             /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge