UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

v.

JUDICIAL WATCH, INC., *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)

**MEMORANDUM OPINION AND ORDER**
(March 9, 2018)

    Counter-Plaintiffs Judicial Watch, Inc. ("Judicial Watch") and Thomas J. Fitton seek to introduce certain further exhibits through the deposition testimony of Philip Zodhiates at trial on March 9, 2018, in support of their counterclaims. The Court has a standing order calling for daily briefing on authenticity in order to resolve any such objections outside of the jury's presence and thereby facilitate an efficient trial. *See* Min. Order of Mar. 2, 2018.

**I. INTRODUCTION**

    The Court begins by addressing certain exhibits that Counter-Plaintiffs sought to introduce on March 7, 2018. Pursuant to the Court's order, Counter-Plaintiffs indicated that they wanted to admit **Exhibits 62-67** through Mark Fitzgibbons's testimony pursuant to subpoena. Defs.' Notice Regarding Authenticity for Exs. to Be Used on Wednesday, Mar. 7, 2018, ECF No. 512. Counter-Plaintiffs noted that they also intended to use exhibits that already had been authenticated. *Id.* Counter-Defendant Larry E. Klayman challenged the authenticity of four of the new exhibits, alleging in part that some of them are illegible and unsigned. Defs.'-Counterclaimants' Desigation [sic] of Exs. 62-66.

    In the Court's Memorandum Opinion and Order of March 7, 2018, the Court found that **Exhibits 64 and 67** proposed for introduction through the testimony of Mark Fitzgibbons were deemed admitted without objection. The Court found **Exhibits 63, 65, and 66** to be authenticated contingent on Mr. Fitzgibbons's testimony on the grounds discussed in that Memorandum Opinion and Order. **Exhibit 62** was found not to be authenticated on the extant record. The Court shared a copy of that Memorandum Opinion and Order with the parties before trial resumed on the morning of March 7, 2018, in order to guide the parties as to the evidence necessary to lay a foundation. Ultimately, during trial, Counter-Plaintiffs solicited testimony from Paul J. Orfanedes and Mr. Fitzgibbons regarding **Exhibit 63**, and from Mr. Fitzgibbons regarding **Exhibits 64, 65, and 67**. The Court found that Counter-Plaintiffs established adequate foundation as to those exhibits for which its Memorandum Opinion and Order required specific foundation to be laid. **Ultimately, Exhibits 63-65 and 67 were admitted. Counter-Plaintiffs did not seek admission**

**of 66, nor of Exhibit 62 that the Court had found not to be authenticated.** Subsequently the Court posted its Memorandum Opinion and Order of March 7, 2018, at ECF No. 513.

At this time, the Court shall rule on the authenticity of **Exhibits 132-35, 143-50, 153-54, 156-58, 160-61, and 168-70** that Counter-Plaintiffs propose to introduce through the deposition testimony of Philip Zodhiates. Previously, with respect to all but **Exhibits 160 and 161,** the Court found these exhibits to be authenticated "[c]ontingent on Mr. Zodhiates's deposition testimony adequately identifying the documents now proposed by Counter-Plaintiffs." Mem. Op. and Order, ECF No. 511, at 6-7. The Court has since been given Mr. Zodhiates's deposition transcript and now can evaluate the authenticity accordingly.

Counter-Defendant was not present at the deposition, nor was he represented there. Counter-Plaintiffs claim that Counter-Defendant was properly noticed, which he has not disputed. He does not dispute the record showing that Counter-Plaintiffs tried several times to contact him by telephone and that he still was not present or accounted for when they started the deposition thirty-eight minutes late. Dep. of Philip Zodhiates, Klayman v. Judicial Watch, Inc., Civil Action No. 1:06-CV-00670 (AK), at 12:11-12:18 (May 15, 2008) ("Dep. of Philip Zodhiates"). Counter-Plaintiffs claim that Counter-Defendant waived any objections to authenticity of documents shown at the deposition by failing to appear. However, they do not cite any authority, nor is the Court aware of any, for their argument that a failure to object to authenticity of an exhibit shown at a deposition waives an authenticity objection to the introduction of that exhibit at trial. *See, e.g.*, Fed. R. Civ. P. 32(d) (listing grounds for waiver of objections not raised at deposition, none of which expressly addresses exhibits shown at the deposition).[1] Consequently, the Court shall proceed to consider Counter-Defendant's objections notwithstanding his failure to make them during the deposition.

Counter-Defendant objects cryptically to some of the exhibits proposed for introduction through Mr. Zodhiates to the effect that "authentication must await reading of deposition." *E.g.*, Pl.'s Resp. to Defs. [sic] Mar. 5, 2018 Designation of Exs. ("Counter-Def.'s Resp."). But with the deposition transcript now before it, the Court is in a position to evaluate the authenticity of the proposed exhibits. Turning to Counter-Defendant's objection to handwriting in **Exhibits 160 and 161**, the Court previously reserved decision on the authenticity of these exhibits while Counter-Plaintiffs were to "determine whether the handwriting was shown to Mr. Zodhiates during his deposition. *Id.* at 7. As discussed below, Counter-Plaintiffs have since indicated that Mr. Zodhiates was shown the relevant exhibits containing the handwriting to which Counter-Defendant objects. The Court shall proceed to evaluate the authenticity of **Exhibits 160 and 161**.

---

[1] An argument could be made that certain objections to exhibits would be waived if not raised. "An objection to a deponent's competence—or to the competence, relevance, or materiality of testimony—is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time." Fed. R. Civ. P. 32(d)(3)(A). In particular, one could assert that an objection to the competence of testimony about handwriting is waived if not made at the deposition. But because this attenuated point has not been briefed, in an exercise of its discretion the Court shall proceed and ultimately call for further support for authentication.

Upon consideration of the parties' briefing,[2] their further representations, the relevant legal authorities, and the record as a whole, the Court rules as follows on the authenticity of Counter-Plaintiffs' exhibits that they propose to introduce through the deposition testimony of Mr. Zodhiates.

## II. LEGAL STANDARD

The threshold for proof of authenticity is low; Counter-Plaintiffs need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

With respect to some exhibits, the Court shall draw on the standard established by the Federal Rules for the so-called business records exception to the hearsay rule. "A record of an act, event, condition, opinion, or diagnosis" is not excluded if

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6) ("Records of a Regularly Conducted Activity").

Authentication of other exhibits relies on the testimony of a witness with knowledge that "an item is what it is claimed to be," Fed. R. Evid. 901(b)(1), or testimony conveying "[a] nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation," *id.* 901(b)(2).

## III. DISCUSSION

A. **Zodhiates Testimony**

   a. **Exhibits 132-35**

---

[2] The Court's consideration has focused on the following documents:
- Defs.' Notice Regarding Authenticity for Exs. to Be Used on Tuesday, Mar. 6, 2018, ECF No. 510 ("Notice");
- Pl.'s Resp. to Defs. [sic] Mar. 5, 2018 Designation of Exs. ("Counter-Def.'s Resp.").

Through Mr. Zodhiates's deposition testimony, Counter-Plaintiffs propose to admit **Exhibits 132-35** containing a series of purchase orders from Response Unlimited, a company that Mr. Zodhiates owned and that acted as a mailing list broker and list manager supporting fundraising operations, among other things. *See* Dep. of Philip Zodhiates at 15:2-7, 16:6-20.

At the deposition, **Exhibits 132-35** were shown to Mr. Zodhiates with the labels deposition Exhibits 4-B, 4-C, 4-D, and 4-E. It is difficult to understand the testimony about these four exhibits without also reading the preceding portion about then-labeled Exhibit 4-A (which Counter-Plaintiffs have now labeled Exhibit 131 but do not propose to admit).

**Exhibit 132** is a November 14, 2006, record that appears to recode Judicial Watch and non-Judicial Watch donor lists from which Response Unlimited is drawing names for a Saving Judicial Watch mailer. **Exhibit 133** is also a November 14, 2006, record, this one identifying other lists, associated with other organizations, from which Response Unlimited also appears to draw records for a Saving Judicial Watch mailer. **Exhibit 134** is an April 26, 2007, record, likewise for a Saving Judicial Watch mailer, that Mr. Zodhiates says contains "the names used for mailing," specifically referring to a list that originally came from Judicial Watch. *Id.* at 72:7-73:2. **Exhibit 135** is a May 3, 2006, record for a Saving Judicial Watch mailer that refers again to a Judicial Watch list and this time appears to code certain donors by dollar amount.

Counter-Defendant objects that the exhibits appear to contain only portions of the relevant documents, but the Court finds no support for that argument. Rather, the Court is concerned with Mr. Zodhiates's comments that not only is he unfamiliar with the specific documents at issue, but these documents are atypical of Response Unlimited's processes. For example, when he is asked about Exhibit 131 (deposition Exhibit 4-A), he says this "[l]ooks like a purchase order," but "[w]e actually don't use them much for production," and it "is probably actually something that Larry required, I would assume." *Id.* at 70:5-70:17. The Court understands the comments to refer more broadly to the type of purchase orders also at issue in **Exhibits 132-35**. For example, Mr. Zodhiates indicates that "most of this documentation I've never seen before," clarifying that he refers to "[a]ny orders and stuff like that" in Exhibit 131/Exhibit 4-A and **Exhibits 132-35**. *Id.* at 73:14-73:19. It is hard to qualify these exhibits as business records where the purported custodian demonstrates such uncertainty.

This is a borderline instance, but ultimately, in an exercise of its discretion the Court shall deem these exhibits authenticated based on the low threshold in the general Rule 901(a). Mr. Zodhiates appears to recover from his uncertainty about the type of documents, which he finds rather unfamiliar, to clearly identify these documents as Response Unlimited documents created by Response Unlimited employees, likely one of two in particular. *Id.* at 73:20-74:12. Moreover, at trial Plaintiff may raise objections to the competence of the witness or of the testimony. Fed. R. Civ. P. 32(d)(3)(A); *see also* Order, ECF No. 486, at 4 (discussing scope of Rule 32(d)(3) waiver).

**Accordingly, the Court finds sufficient evidence that Exhibits 132-35 are authenticated.** Deposition testimony for Exhibit 4-A through 4-E should be read to supply

sufficient context before Counter-Plaintiffs move for the admission of any of the exhibits, notwithstanding that they do not intend to introduce Exhibit 131, which was deposition Exhibit 4-A.

### b. Exhibits 143-45

**Exhibits 143-45** consist of three email chains involving Mr. Zodhiates and those who appear to be his colleagues and another vendor, on the one hand, and Counter-Defendant and his wife, Diana Klayman, on the other hand. In **Exhibits 143 and 144**, the participants exchange recriminations about who owes whom money. **Exhibit 145** concerns Counter-Defendant's request for payment of the funds collected by Response Unlimited. These exhibits were shown to Mr. Zodhiates as deposition Exhibits 5-H, 5-I, and 5-J, respectively.

With respect to **Exhibit 143**, Mr. Zodhiates is a recipient of the last email, sender of the penultimate email, and at a different point in the deposition identifies Response Unlimited's accountant as the person who evidently printed this email, judging by that individual's name appearing at the top. With respect to both **Exhibits 144 and 145**, Mr. Zodhiates is the sender of the last email in the respective chain.[3] Mr. Zodhiates's recollection of the specific emails comes across in the testimony as hazy, but his responses to each of the exhibits makes clear that he is keenly aware of the underlying circumstances, namely specific issues in the company's relationship with Counter-Defendant and his wife.

Aspects of the business records exception to the hearsay rule support a finding that these emails are authentic. The emails are records contemporaneous with the relevant factual developments, which clearly have been maintained since the time at which the emails were sent. While Mr. Zodhiates cannot attest much to the specific emails, he demonstrates awareness of the circumstances, and the Court is unaware of any reason to doubt that the email chain does in fact consist of what appears in these exhibits. **Accordingly, the Court finds sufficient evidence that Exhibits 143-45 are authenticated.**

### c. Exhibits 146-50

**Exhibit 146** appears to the Court to be a partial draft and full final version (with redacted addressee) of a Saving Judicial Watch letter, reply device, and reply envelope (the last of which is addressed to "Judicial Watch"). Previously, the Court found that **Exhibit 6**,[4] which appears to be a duplicate of the full final version, was authenticated. Mem. Op. and Order, ECF No. 508, at 4.

---

[3] The last email in the chain in **Exhibit 144** has either been forwarded or replied to, but this further communication has largely been truncated.

[4] The operative version of Exhibit 6 is now the version that was attached to the Amended Counterclaim. *See* Mem. Op. and Order, ECF No. 508, at 4.

Accordingly, the Court expects here some confirmation of the draft copy and their linkage together in an exhibit attributable to Response Unlimited.

But Mr. Zodhiates was unable to say whether **Exhibit 146**, marked as separate Exhibits 6A and 6B for the deposition, reflected draft or final copy of a letter to be sent on Counter-Defendant's behalf. *See* Dep. of Philip Zodhiates at 94:13-95:8. He also was unable to confirm that he had seen Counter-Defendant's letters as mailed, or even that these were in fact Response Unlimited work product. *See id.* at 96:11-97:7. He appears to have no knowledge of any Saving Judicial Watch mailings that contained reply envelopes addressed to "Judicial Watch." *Id.* at 97:17-20 ("[Question] Is that a copy of what the envelope would look like for the return envelope for donors? [Answer] I should hope not because it says Judicial Watch."). Nor is there any explanation of why the seeming draft version is only partial. The Court finds that Mr. Zodhiates has not established sufficient foundation to authenticate this composite document. **Accordingly, the Court shall exclude Exhibit 146 on the present record.**

Mr. Zodhiates identifies **Exhibits 147-49**[5] as Response Unlimited's job approval forms for a Saving Judicial Watch mailing, indicates that a signature on such forms was required for Counter-Defendant's projects, and notes that the signature "looks like" Counter-Defendant's.[6] Dep. of Philip Zodhiates at 98:22-99:12; 101:8-101:10. Moreover, language on the document itself suggests that Mr. Zodhiates is in a position to know: "Client will sign and return (via email) all related job approval forms within one business day to *Philip Zodhiates*, Maureen Otis, *and* Joel Baugher." *E.g.*, Ex. 147 (emphasis added). While the deposition provides little further detail about these exhibits, the Court is satisfied that Counter-Plaintiffs have furnished "evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), if not also to prove these are authentic as business records under Rule 803(6). **Accordingly, the Court finds sufficient evidence that Exhibits 147-49 are authenticated.**

**Exhibit 150**, labeled deposition Exhibit 7-D, is an email thread between a Response Unlimited employee and Counter-Defendant, on which Mr. Zodhiates is copied, that solicits and obtains Counter-Defendant's sign-off on a Saving Judicial Watch letter. Mr. Zodhiates attests to the relevant elements of the email without incredulity, unlike with respect to some of the other exhibits. He cannot say whether this approval thread is specifically associated with the job approval forms in **Exhibits 147-49**. *See* Dep. of Philip Zodhiates at 100:20-101:7. But in light of the testimony regarding this exhibit and **Exhibits 146-49**, the Court finds sufficient evidence that this thread of emails is what it claims to be. **Accordingly, the Court finds sufficient evidence that Exhibit 150 is authenticated.**

---

[5] At the deposition, **Exhibits 147-49** were labeled Exhibits 7-A, 7-B, and 7-C, respectively.

[6] There is some ambiguity as to which exhibit specifically contained the signature that Mr. Zodhiates was identifying. But since the signature on each of **Exhibits 147-49** looks the same, and there is no signature on **Exhibit 150** that is also discussed at that point in the deposition, the Court interprets deponent's identification to apply to **Exhibits 147-49**.

### d. Exhibits 153 and 154

**Exhibit 153**, also labeled deposition Exhibit 8-C, is another email thread between Counter-Defendant and a Response Unlimited employee on which Mr. Zodhiates is copied and about which Mr. Zodhiates does not have specific recollection. But Mr. Zodhiates attests in reasonable detail to the subject matter, namely Counter-Defendant's recurring requests for payment from an escrow account that contained Response Unlimited's fundraising from Saving Judicial Watch. *See id.* at 101:19-104:16. The Court has no reason to find that this is not an authentic email thread concerning the subject matter to which Mr. Zodhiates testifies. **Accordingly, the Court finds sufficient evidence that Exhibit 153 is authenticated.**

**Exhibit 154**, also labeled deposition Exhibit 9-A, is likewise an email thread between Counter-Defendant and Response Unlimited on which Mr. Zodhiates is copied, and in which he participates in a discussion of targeted outreach to potential donors. The participants refer to using a Judicial Watch list of names for other clients. Mr. Zodhiates indicates that he is "vaguely" familiar with this particular thread, that he "remember[s] the idea being brought up," and notes that "obviously, we acted upon it." *Id.* at 107:22-108:5. Counter-Defendant has not raised an objection to this exhibit. **Accordingly, the Court shall deem Exhibit 154 admitted without objection.**

### e. Exhibits 156-58

**Exhibits 156-58**[7] are further email threads between Counter-Defendant and Response Unlimited staff, this time discussing preparation and sign-off on Saving Judicial Watch letters. Mr. Zodhiates does not specifically remember the email threads in **Exhibits 156 and 158**, and he is not asked that question with respect to **Exhibit 157**.

As to **Exhibit 156**, Mr. Zodhiates testifies that he generally remembers sending final copies of draft letters for Counter-Defendant's approval, and that Counter-Defendant "[t]ypically . . . would send things through me," rather than directly to Mr. Zodhiates's staff. *Id.* at 111:6-112:13. In light of the simplicity of this email thread—simply one exchange between Mr. Zodhiates and Counter-Defendant—the Court finds that the general process to which Mr. Zodhiates attested suffices to lay foundation. **Accordingly, the Court finds sufficient evidence that Exhibit 156 is authenticated.**

However, the identification of **Exhibit 157** is problematic. Mr. Zodhiates identifies it as a duplicate of **Exhibit 154**, with the inclusion of the bottom of the thread. The deposing attorney then moves on to the next exhibit. *Id.* at 112:19-113:13. But there is no discussion of what appears to be some duplication of the bottom part of the email chain (i.e., repeating the donor breakdown verbatim), and Mr. Zodhiates does not recognize that the final email or two in each thread differs. There is virtually no foundation laid beyond indicating that **Exhibit 157** is a further entry on the thread in **Exhibit 154**. **Accordingly, the Court shall exclude Exhibit 157 on the present record.**

---

[7] At the deposition, **Exhibits 156-58** were labeled Exhibits 9-C, 9-D, and 9-E, respectively.

The email thread in **Exhibit 158** concerns the separation of Saving Judicial Watch and Freedom Watch projects, and goes into further detail regarding an anticipated Saving Judicial Watch letter. Mr. Zodhiates is unable to identify the thread, specifically remember it, or recall the general context. *See id.* at 113:18-114:11. No further questioning takes place. Notwithstanding the similar context of this exhibit to others in the batch, absent some affirmative foundation laid through the deponent, the Court finds that there is insufficient evidence to authenticate this email. **Accordingly, the Court shall exclude Exhibit 158 on the present record.**

### f. Exhibits 160 and 161

On March, 6, 2018, the Court reserved decision as to the authenticity of **Exhibits 160 and 161** in order to permit Counter-Plaintiffs to determine whether the handwriting thereon was shown to Mr. Zodhiates during his deposition. Counter-Plaintiffs have since identified the relevant excerpts of the deposition transcript, which Counter-Defendant has provided in full to the Court. *See generally* Dep. of Philip Zodhiates.

It is clear that Mr. Zodhiates was shown two exhibits, marked for deposition as Exhibits 12 and 13, which Counter-Plaintiffs represent now to be the proposed **Exhibits 160 and 161**, respectively. Each exhibit consists of a November 2006 fax cover sheet and an underlying document. In each exhibit, the letterhead on the fax cover sheet is "The Klayman Law Firm, P.A." Each cover sheet also has a handwritten note; one is legibly from "Larry" and the other appears, by reference to previously authenticated exhibits, to be Counter-Defendant's signature. Each exhibit purports to convey edits to draft fundraising material that appears to be for Counter-Defendant's Saving Judicial Watch campaign.

The line of questioning assumes, and Mr. Zodhiates's responses suggest, his belief that **Exhibits 160 and 161** are documents that come from Counter-Defendant, but Mr. Zodhiates is unable to answer some of the basic questions to which the Court would expect affirmative answers to provide sufficient foundation for his testimony. For example, Mr. Zodhiates indicates that he does not remember receiving the document contained in **Exhibit 160**, that "in actuality, [he] may have never seen this" document, and that "[i]t might have never even come to my desk." *Id.* at 117:11-118:7. With respect to **Exhibit 161**, Mr. Zodhiates's comments suggest that it is typical of correspondence with Counter-Defendant but it is not clear that Mr. Zodhiates saw this particular document. *See, e.g., id.* at 118:11-118:13 ("This is a copy of approval, and he's indicating he wants to see final copy once these changes are made. . . . It was usually handwritten like this on a fax, in a fax. He would fax it.").

Mr. Zodhiates did address some of the handwriting at the deposition. As to **Exhibit 160**, the deponent was specifically asked to identify the handwriting, which he replied "looks like" Counter-Defendant's. *Id.* at 117:17. However, in light of Mr. Zodhiates's above-described general unfamiliarity with this document and apparently others that may have reached his desk, and absent a more definitive identification of Counter-Defendant's handwriting, the Court is not satisfied that Mr. Zodhiates's comments sufficiently confirm this handwriting. *See, e.g.*, Fed. R. Evid 901(b)(1) ("Testimony of a Witness with Knowledge"); *id.* 901(b)(2) ("Nonexpert Opinion About

Handwriting"). When identifying Exhibit 161, on the other hand, Mr. Zodhiates is not asked to identify the handwriting thereon, nor does Mr. Zodhiates clearly do so.

Mr. Zodhiates is not sufficiently specific in identifying the particular documents in **Exhibits 160 and 161** for the Court to find that they have been authenticated. **For the foregoing reasons, the Court shall exclude Exhibits 160 and 161 on the present record.**

The Court does not exclude the possibility that Counter-Plaintiffs could lay foundation for these exhibits through a combination of Mr. Zodhiates's deposition testimony and that of another witness who can be shown **Exhibits 160 and 161** and can better confirm Counter-Defendant's handwriting. Counter-Plaintiffs may either put on the handwriting witness first, or, if they first would like to show the exhibit during the course of reading the deposition, then they may redact the handwriting. If after reading the deposition and showing the redacted version of the exhibit, they later provide adequate foundation for the handwriting, then the unredacted exhibit may be admitted.

### g. Exhibits 168-70

**Exhibit 168**, deposition Exhibit 16, is an August 2007 email thread discussing mailing costs and cost approval forms for the "SJW Emergency Appeal" package. While Mr. Zodhiates does not recall this specific thread, he does recall discussing the use of First Class mail, and he proceeds in the deposition to elaborate on the significance of that decision for the success of the appeal. *See* Dep. of Philip Zodhiates at 122:15-124:3. Coupled with this testimony, and in light of Mr. Zodhiates's close engagement in the email thread, the Court finds adequate foundation. **Accordingly, the Court finds sufficient evidence that Exhibit 168 is authenticated.**

**Exhibit 169**, deposition Exhibit 17, contains job approval forms for the "SJW Emergency Appeal 8-07." It appears to combine **Exhibits 147-49**, which the Court above found to be authenticated. Mr. Zodhiates does not provide as much foundation this time, and he appears not to recognize that these exhibits are the same. It now appears that the job approval forms were attached to the latest email to Counter-Defendant in the **Exhibit 168** thread, so presumably they would not be signed by Counter-Defendant yet. But the approval forms in **Exhibit 169** are signed by what appears to be Counter-Defendant's hand. Accordingly, it is not clear that these are the self-same attachments included in the **Exhibit 168** email. **Due in part to redundancy and a possibility for confusion, the Court shall exclude Exhibit 169 on the present record.**

**Exhibit 170**, deposition Exhibit 170, is an email thread between Counter-Defendant and Mr. Zodhiates that the latter again does not specifically remember. But he speaks at length about his memory of the subject matter, namely that he "was floored" with the "quite spectacular" early results of the Saving Judicial Watch campaign. *Id.* at 125:5-127:18. There does appear at the bottom of the email to be an extraneous repeat of the bottom email, but this does not detract from the foundation laid. Based on the consistency of the subject matter of the email with Mr. Zodhiates's memory of discussions around that time, the Court finds adequate foundation. **Accordingly, the Court finds sufficient evidence that Exhibit 170 is authenticated.**

***

## ORDER

The following exhibit proposed for introduction through the deposition testimony of Philip Zodhiates has been **admitted without objection**: **Exhibit 154**.

The following exhibits proposed for introduction through the deposition testimony of Mr. Zodhiates have been **authenticated** on the above-cited grounds: **Exhibits 132-35, 143-45, 147-50, 153, 156, 168, and 170.**

The following exhibits are **not authenticated** on the present record: **Exhibit 146, 157-58, 160-61, and 169**.

**SO ORDERED.**

Dated: March 9, 2018

                                                /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge