UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

v.

JUDICIAL WATCH, INC., *et al.*,

    Defendants.

Civil Action No. 06-670 (CKK)

**MEMORANDUM OPINION AND ORDER**
(March 9, 2018)

      Counter-Plaintiffs Judicial Watch, Inc. ("Judicial Watch") and Thomas J. Fitton seek to introduce **Exhibits 73-76, 79, 83, 86, and 87** through the deposition testimony of Maureen Otis at trial on March 9, 2018, in support of their counterclaims.[1] Defs.' Suppl. Notice Regarding Authenticity for Exs. to Be Used on Thursday/Friday, Mar. 8-9, 2018, ECF No. 515 ("Suppl. Notice"). The Court has a standing order calling for daily briefing on authenticity in order to resolve any such objections outside of the jury's presence and thereby facilitate an efficient trial. *See* Min. Order of Mar. 2, 2018. Counter-Plaintiffs did not explain support for the authenticity of these exhibits beyond claiming that "[e]ach of these exhibits are [sic] identified and authenticated by Ms. Otis' deposition testimony. Each exhibit contains the exhibit sticker for the deposition to assist in authentication." Suppl. Notice at 1.

      In response to the filing of Counter-Plaintiffs' Supplemental Notice, Counter-Defendant made only the blanket objection that "[t]he proposed exhibits should be excluded and notification is almost 12 hours late on the morning of trial and violates the court's order. Plaintiff lacks time to review as does the court." Pl.'s Notice of Objs. Regarding Authenticity of Proposed Exs. for Mar. 8/9, 2018, ECF No. 518, at 2 ("Counter-Def.'s Resp."). However, Counter-Plaintiffs' Supplemental Notice was filed at 9:10 PM on March 7, 2018, not on the morning of trial. Counter-Plaintiffs also had given notice to the Court and Counter-Defendant on March 6, 2018, that they would be making a supplemental filing to account for exhibits that they proposed to introduce on Thursday, March 8, 2018. Lastly, these exhibits were not actually introduced on March 8, 2018, after all; Counter-Defendant has not taken the opportunity over the ensuing more than 36 hours since the Supplemental Notice was filed to provide any more definitive objections. Accordingly,

---

[1] At trial on March 9, 2018, Counter-Plaintiffs also intend to read excerpts of the deposition testimony of Stephanie DeLuca, which will involve previously admitted **Exhibit 3.** Defs.' Suppl. Notice Regarding Authenticity for Exs. to Be Used on Thursday/Friday, Mar. 8-9, 2018, ECF No. 515. At trial on March 8, 2018, Counter-Plaintiffs read excerpts of the deposition testimony of Phil Sheldon but did not seek to introduce exhibits through that testimony.

1

the Court shall deem Counter-Defendant as not having made any specific objections and in turn shall address the authenticity of the relevant exhibits in rather summary fashion.

Upon consideration of the parties' briefing,[2] the relevant legal authorities, and the record as a whole, the Court rules as follows on the authenticity of Counter-Plaintiffs' exhibits that they propose to introduce through the deposition testimony of Ms. Otis.

## I. LEGAL STANDARD

The threshold for proof of authenticity is low; Counter-Plaintiffs need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

In at least one instance, the Court shall draw on the standard established by the Federal Rules for the so-called business records exception to the hearsay rule. "A record of an act, event, condition, opinion, or diagnosis" is not excluded if

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6) ("Records of a Regularly Conducted Activity").

Authentication of at least one other exhibit relies in part on the testimony of a witness with knowledge that "an item is what it is claimed to be," Fed. R. Evid. 901(b)(1), or testimony conveying "[a] nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation," *id.* 901(b)(2).

---

[2] The Court's consideration has focused on the following documents:

- Defs.' Suppl. Notice Regarding Authenticity for Exs. to Be Used on Thursday/Friday, Mar. 8-9, 2018, ECF No. 515 ("Suppl. Notice").
- Pl.'s Notice of Objs. Regarding Authenticity of Proposed Exs. for Mar. 8/9, 2018, ECF No. 518 ("Counter-Def.'s Resp.").

## II. DISCUSSION[3]

**Exhibit 73** is an Internal Revenue Service W-9, submitted on behalf of "Larry Klayman d/b/a/ Saving Judicial Watch." Dep. of Maureen Otis, Klayman v. Judicial Watch, Inc., Civil Action No. 1:06-CV-00670, at 48:1-48:5 (July 22, 2008) ("Dep. of Maureen Otis"). Ms. Otis identifies the document, indicates that she submitted it, and notes that she received it from Counter-Defendant's office. *Id.* at 48:1-48:8, 48:16-21. Ms. Otis also identifies a second page of the document containing a copy of Counter-Defendant's driver's license as well as some handwritten notes that she assumes is the handwriting of someone in Counter-Defendant's office. *Id.* at 48:9-24. While the Court may otherwise be inclined to exclude the handwriting, Ms. Otis does identify the handwritten address as her own. **Accordingly, in light of the testimony and the document itself, the Court finds sufficient evidence that Exhibit 73 is authenticated.**

**Exhibit 74** is a signed version of an agreement between American Caging, Saving Judicial Watch, and Diener Consultants. Ms. Otis identifies the contract, indicates that she created and executed it, and explains the process of entering into this contract. *See id.* at 49:3-5, 49:14-50:10. Moreover, there is a signature above her printed name on this contract, which recognizes her title as President of American Caging. **In light of the testimony and the document itself, the Court finds sufficient evidence that Exhibit 74 is authenticated.**

Ms. Otis identifies **Exhibit 75** as a "sample" cage and code report that she "just printed out," notes that this is "the very first" cage and code report for Klayman for U.S. Senate, recognizes Counter-Defendant as a recipient of a copy of the cage and code reports, and proceeds to describe the daily process of compiling such reports based on mail received, donors, nondonors, and money collected. *Id.* at 53:16-54:8. Based on Ms. Otis's description, this record has marks of a business record under Federal Rule of Evidence 803(6), insofar as this report is evidently made by Ms. Otis or her staff; such reports were regularly produced and evidently kept; Ms. Otis is apparently a custodian of the document; and the Court does not have reason to doubt the trustworthiness of this document. As discussed above, Counter-Defendant has not identified a specific objection. **In light of the testimony and the document itself, the Court finds sufficient evidence that Exhibit 75 is authenticated.**

**Exhibit 76** is an agreement between American Caging and Saving Judicial Watch. Ms. Otis explains that the underlying document was originally an agreement between American Caging and another organization but that it is her understanding that Counter-Defendant made the handwritten edits to render "Larry Klayman d/b/a Saving Judicial Watch" as the new counterparty. *Id.* at 57:9-23 (stating, e.g., "[t]his is his handwriting"). She also observes the initials "L.K." next

---

[3] In the following discussion, the Court shall refer to the current labeling of Counter-Plaintiffs' exhibits. The deposition of Ms. Otis used different labels. Counter-Plaintiffs identified the linkage between current and deposition labeling in a copy of the deposition transcript provided to the Court and Counter-Defendant. **Exhibits 75 and 76** were not specifically identified by Counter-Plaintiffs in their copy of the deposition transcript, but the Court has subsequently confirmed that these exhibits correspond with deposition Exhibits 9 and 10, respectively.

to the change as well as at the bottom of the page. *Id.* at 58:4-8. Ms. Otis's testimony lays adequate foundation that this document is what it purports to be. *See* Fed. R. Evid. 901(a), (b)(1), (b)(2). **In light of the testimony and the document itself, the Court finds sufficient evidence that Exhibit 76 is authenticated.**

When shown **Exhibit 79**, Ms. Otis identifies it without further prompting as "the very first cage report [American Caging] prepared for Saving Judicial Watch." Dep. of Maureen Otis at 71:7-8. The Court is satisfied that Ms. Otis is familiar with the document. There are what appear to be some redactions of certain total figures, which she does not discuss. However, these do not detract from Ms. Otis's definitive identification of the document. **In light of the testimony and the document itself, the Court finds sufficient evidence that Exhibit 79 is authenticated.**

Ms. Otis is less definitive in identifying **Exhibit 83**. "It looks like it's an email from me to Larry saying here is our first reply. So it must have been the first piece of mail that we received for Saving Judicial Watch. Either that or it's the first piece of mail we received for a while . . . ." *Id.* at 77:21-78:2. She does not evince any recollection of this particular communication, but she proceeds to identify this as a sample Saving Judicial Watch reply device and credit card information that American Caging would receive. *See id.* at 78:6-78:11. She also observes a handwritten note on the reply device that she attributes to the donor, and she comments that "a lot of times that will happen" on the reply devices. *Id.* at 78:12-78:16. Although the Court has previously considered Counter-Defendant's handwriting objections, the Court shall not explore further where Counter-Defendant has not specifically raised that objection. The Court is satisfied based on her description of the process that this document is what it appears to be. *See* Fed. R. Evid. 901(a). **In light of the testimony and the document itself, the Court finds sufficient evidence that Exhibit 79 is authenticated.**

**Exhibit 86** is an email chain between Ms. Otis, Counter-Defendant, and Response Unlimited employees that discusses recent high-value donations to Saving Judicial Watch. Ms. Otis's hedges in her discussion of the email chain— e.g., "let's see, I'm attaching copies of checks"— imply that she does not recall this particular thread. *See* Dep. of Maureen Otis at 81:16-82:7. However, her further discussion of communications with Counter-Defendant and Response Unlimited about the method for handling the high-value donations demonstrates her familiarity with this circumstance. The authors of the several emails discuss some confusion they are having about the checks at issue, but that does not go to the authenticity of the email thread itself. Moreover, the email specifically identifies two of the three checks that are attached and comments that there are three total checks attached. The Court has no reason to believe that the email thread is other than it appears to be. *See* Fed. R. Evid. 901(a). **In light of the testimony and the document itself, the Court finds sufficient evidence that Exhibit 86 is authenticated.**

Ms. Otis identifies **Exhibit 87** as an invoice sent by Counter-Defendant's legal assistant in which the Klayman Law Firm seeks payment from funds raised for Saving Judicial Watch. Again, she does not appear to be familiar with this particular document, but she confirmed that the Klayman Law Firm had made such requests more than once. *See* Dep. of Maureen Otis at 84:1-84:18. Ms. Otis does not expressly discuss, however, nor does the deposition otherwise clarify,

4

why there appear to be two sets of invoices and wiring instructions, one to "The Klayman Law Firm" and the other to "Larry Klayman," for what appear to be the same activity and dollar amount. Ex. 87 at 5-7. For lack of discussion of the "Larry Klayman" version, the Court shall exclude it. **In light of the testimony and the document itself, the Court finds sufficient evidence that, with the exception of the last three pages of the document, Exhibit 87 is authenticated.**

\*\*\*

### ORDER

The following exhibits proposed for introduction through the deposition testimony of Maureen Otis have been **authenticated** on the above-cited grounds: **Exhibits 73-76, 79, 83, 86, and 87 (except last three pages).**

The Court shall **exclude the last three pages of Exhibit 87** on the present record.

**SO ORDERED.**

Dated: March 9, 2018

                                                 /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge