# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN<br><br>      Plaintiff,<br><br>v.<br><br>JUDICIAL WATCH, INC., *Et Al.*<br><br>      Defendants. | Civil No. 1:06-cv-00670-CKK |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEY FEES AND COSTS

The background of this case is well known to the Court. Plaintiff Larry Klayman ("Klayman") was the Chairman and General Counsel of Judicial Watch. Klayman separated from Judicial Watch on September 19, 2003. The parties memorialized the terms of his separation in a Confidential Severance Agreement ("CSA") on the same date. Among the CSA terms is Section 19(c), which states:

> Attorneys' Fees. The prevailing party in any legal proceeding instituted on account of a Party's breach of this Agreement shall be entitled to an award of the costs incurred in connection with such action, including reasonable attorneys' fees and suit costs.

Exhibit A at Section 19(c). After 13 long years of litigation, Judicial Watch and Fitton now move this Court for an award of their costs incurred in this case, including their reasonable attorneys' fees and expenses.

## FACTS RELEVANT TO AN AWARD OF FEES AND COSTS

This action was originally filed on April 12, 2006. After amending his complaint twice, Klayman's Second Amended Complaint (SAC") contained claims for alleged breach of the CSA, rescission, defamation and misappropriation of image against Judicial Watch and its Directors,

Thomas J. Fitton, Paul J. Orfanedes and Christopher J. Farrell. Klayman sought monetary damages and reinstatement as Chairman of Judicial Watch.

Following preliminary motions, motions to dismiss, motions for partial summary judgment and motions for summary judgment, Klayman's case was reduced to 5 limited claims for alleged breach of the CSA. Judicial Watch and Fitton filed Counterclaims for Klayman's breach of the CSA by failing to reimburse Judicial Watch for expenses, failing to pay the outstanding balance of his law firm's debt, violating the non-disparagement provision through his remarks about Judicial Watch and Fitton, and using Confidential Information. In addition, Judicial Watch filed claims against Klayman under the Lanham Act, alleging trademark infringement and unfair competition. Following a lengthy jury trial from February 26 – March 14, 2018, the jury returned a verdict for Judicial Watch and Fitton on all claims, including the Counterclaims, and awarded $2,300,000 to Judicial Watch and $500,000 to Fitton. Klayman's breach of contract claims were rejected. Klayman filed post-trial motions, which were denied, and the Court entered judgment for Judicial Watch and Fitton. Without question, Judicial Watch and Fitton are the prevailing parties in this case.

The litigation was long and tortured. The parties exchanged written discovery at the outset but Klayman's responses revealed little or no information. After Judicial Watch's document production and written discovery answers, it was apparent that Klayman's goal was to use the information to fuel his publicity campaign of misrepresentation against Judicial Watch. This forced Judicial Watch to pursue a protective order requiring that all information be used solely for purposes of the litigation. Klayman opposed the motion. Document productions were predominantly one-sided. In response to initial requests, Klayman produced a total of 1047 pages, most of which were documents that Judicial Watch previously produced to Klayman.

Klayman refused to produce documents in response to Judicial Watch's second requests for production, which resulted in the initial sanctions against him. The absence of information from Klayman caused Judicial Watch to embark on a costly and time-consuming effort to discovery facts regarding Klayman's conduct and the profits he derived from them. The effort included 16 subpoenas duces tecum and 10 depositions, including: Larry Klayman (which was noted 7 times and eventually compelled by Magistrate Kay); American Target Advertising; Mark Fitzgibbons; Response Unlimited; Phil Zodhiates; Philip Sheldon; Maureen Otis; Louise Benson, and Stephanie A. DeLucca. Many of the depositions required out of town travel to southern Virginia, Pennsylvania, California and Texas. For his part, Klayman deposed each of the Judicial Watch Directors (Thomas J. Fitton, Paul J. Orfanedes and Christopher Farrell) and its CFO Susan Prytherch. The depositions of the parties and Ms. Prytherch were contentious and were conducted before Magistrate Kay in this Courthouse to allow for disputes to be addressed immediately.

Klayman was uncooperative at every step of the discovery process. Judicial Watch filed at least 4 motions to compel. After repeated failures to produce documents in response to Judicial Watch's Supplemental Requests for Production of Documents, Judicial Watch moved for, and Magistrate Kay granted, a sanction prohibiting Klayman from "testifying to or introducing into evidence any documents in support of his damage claims or in support of his defenses to Defendants' counterclaims" (the "Discovery Sanction"). ECF No. 301, at 5-6; ECF No. 302. Depositions faired no better as 9 separate motions were filed by Judicial Watch to address scheduling and the conduct of depositions. Klayman filed appeals of Magistrate Kay's decisions at least 15 times. In addition, Klayman filed at least 30 motions seeking an extension of deadlines.

Preparation of the joint pretrial statement was also difficult and contested. Ignoring the Discovery Sanction, Klayman insisted on inclusion of witnesses and exhibits to support his damage claims. Following a series of failures to comply with this Court's Orders, and failure to timely correct the joint pretrial statement, Judicial Watch moved to strike portions of Klayman's joint pretrial statement and preclude his ability to call witnesses or present evidence. On August 10, 2010, the Court granted the motion to strike, struck portions of Klayman's pretrial statement and precluded him from "introducing any witnesses or exhibits at the trial in this action." ECF No. 361.

The imposition of further sanctions ushered in a period of repeated motions to recuse Judge Kollar Kotelly and revisit the sanctions issues. All were time consuming and unsuccessful. Finally, on February 26, 2018, trial commenced, the facts were presented, Klayman's claims were denied and a jury verdict in favor of Judicial Watch was entered. A complete description of all activities in this case is not possible due to the overwhelming volume. In lieu of such description, Judicial Watch submits a copy of the Civil Docket for this case. Exhibit B (Civil Docket for Case No. 1:06-cv-00670). In all, there are 584 docket entries in addition to the multitude of discovery requests, notices of deposition, subpoenas and communications exchanged between the parties and witnesses.

## ARGUMENT

Under Rule 54 of the Federal Rules of Civil Procedure, "[u]nless a statute or a court order provides otherwise," a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment," "specify the judgment and the statute, rule, or other grounds entitling the movant to the award," "state the amount sought or provide a fair estimate of it," and "disclose, if

the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B).

Under the so called "American Rule," litigants in the United States ordinarily bear their own attorney fees and costs regardless of the outcome of the litigation. *Fresh Kist Produce, L.L.C. v. Choi Corp., Inc.,* 362 F.Supp.2d 118, 125 (D.D.C.2005). However, the American Rule is not applied where the parties' contract provides for an award of fees and costs. *McGuire v. Russell Miller, Inc.,* 1 F.3d 1306, 1313 (2d Cir.1993); *see also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 448 (2007) (American Rule can "be overcome by an enforceable contract allocating attorney's fees"). Here, the parties' CSA provides for an exception to the American Rule:

> Attorneys' Fees. The prevailing party in any legal proceeding instituted on account of a Party's breach of this Agreement shall be entitled to an award of the costs incurred in connection with such action, including reasonable attorneys' fees and suit costs.

Exhibit A at Section 19(c). Pursuant to Rule 54 and the CSA, Judicial Watch is entitled to recover its legal fees and costs from Klayman.

## I. JUDICIAL WATCH IS THE "PREVAILING PARTY" IN THIS CASE

In the D.C. Circuit, a "prevailing party" is "one who has been awarded some relief by the court," resulting in a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 603, 605 (2001). The D.C. Circuit has adopted a three-part test for adjudicating prevailing-party status: (1) a court-ordered change in the legal relationship of the parties; (2) a judgment in favor of the party seeking the fees; and (3) a judicial pronouncement accompanied by judicial relief. *See Green Aviation Mgmt. Co. v. F.A.A.,* 676 F.3d 200, 203 (D.C.Cir.2012). "[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby,* 506 U.S.

5

103, 114 (1992). Any judgment for damages, even if merely nominal, modifies the parties' relationship by forcing the losing party to pay an amount of money he otherwise would not pay. *Id.* at 113.

Klayman's SAC contains 9 causes of action. Judicial Watch addressed each cause of action on the merits and achieved either dismissal at the preliminary stage, or summary judgment at the conclusion of discovery, with the exception of 5 claims for breach of contract that were tried. At the conclusion of the trial, the jury rejected each of Klayman's remaining claims on the merits. All of Klayman's causes of action were defeated.

In addition to prevailing on each of Klayman's claims, Judicial Watch pursued counterclaims including breach of contract, unfair competition and trademark infringement.[1] Prior to trial, Judicial Watch obtained summary judgment for $69,358.48 on its breach of contract claim for failure to reimburse personal expenses. In addition, the jury returned a monetary judgment on each counterclaim for a total judgment in the amount of $2,932,970.16. Docket No. 584.[2]

Based on the outcome of this litigation, Judicial Watch is the prevailing party under any standard. There is a court-ordered change in the legal relationship of the parties, and a judgment in favor of Judicial Watch and Fitton. As such, Judicial Watch is entitled to reasonable fees and costs.

## II.   JUDICIAL WATCH SEEKS ITS REASONABLE FEES AS CALCULATED BY THE LODESTAR METHOD

Once a party establishes its prevailing party status entitling it to attorney fees, the next inquiry is whether the fees sought are reasonable. *See Hensley v. Eckerhart,* 461 U.S. 424, 433

---

[1]   Before trial, Judicial Watch voluntarily dismissed its breach of contract for violating the non-compete provision and its cybersquatting claim.

[2]   Judicial Watch intends to move for a correction of the Judgment for omitting sanctions amounts previously awarded by the Court in the amount of $6,583.25. Docket No. 199.

(1983), *abrogated on other grounds by Gisbrecht v. Barnhart,* 535 U.S. 789, 795–805 (2002). "The usual method of calculating reasonable attorneys' fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Restaurant Employees Local 25 v. JPR, Inc.,* 136 F.3d 794, 801 (D.C.Cir.1998). The "most critical factor" in determining the reasonableness of a fee award is "the degree of success obtained." *Farrar,* 506 U.S. at 114 (quoting *Hensley,* 461 U.S. at 436). Where the purpose of litigation is to recover damages, a court should compare the amount sought with the amount awarded. *Id.* at 114.

Judicial Watch seeks an award of $1,379,920 in attorneys' fees and $24,728.60 in costs in this matter, which is reasonable based on the hours worked and applicable billing rates. Exhibit C (Summary of Legal Fees). To determine whether these fees are reasonable, the court must consider (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable—*i.e.*, did the attorneys waste or otherwise unnecessarily spend time on the matter. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011). Attorneys' fees are calculated based on the "lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *Id*. A lawyer's hourly rate is measured by its fair market value, "regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The fee requester bears the burden of establishing the reasonableness of the hourly rates. *Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) (citing *Covington v. District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995)).

Courts in this circuit have frequently employed the *Laffey* Matrix, a schedule of fees based on years of experience for lawyers who practice "complex federal litigation." *Eley v.*

*District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015). Because the *Laffey* matrix was compiled more than thirty years ago, it is periodically updated to account for inflation. *Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015). This Court has previously considered different methods for adjusting the *Laffey* matrix. *Compare Thomas v. District of Columbia.*, 908 F. Supp. 2d 233 (D.D.C. 2012) (awarding fees based on U.S. Attorney's Office Laffey matrix rates), with *Salazar v. District of Columbia*, 30 F. Supp. 3d 47 (D.D.C. 2014) (awarding fees based on LSI *Laffey* rates). Recently, the D.C. Circuit concluded that the Legal Services Index ("LSI") *Laffey* matrix is superior to the U.S. Attorney's Office *Laffey* Matrix ("USAO Matrix") because it is based on more recent market information for prevailing rates. *Salazar*, 809 F.3d at 47, 64. In *Salazar*, the D.C. Circuit noted that the USAO Matrix may reflect hourly rates that can be more than $200/hour less than rates reflected in LSI *Laffey* Matrix. *Salazar*, 991 F. Supp. 2d at 47. For example, the 2018 hourly rate for an attorney having more than 20 years' experience is $864/hour under the LSI *Laffey* Matrix, but only $563/hour under the USAO Matrix, a difference of $301/hour. *Compare* Exhibit D and Exhibit E. Therefore, using USAO Matrix rates results in a conservative value that assures the hourly rate is reasonable in this Circuit.

  To produce a reasonable and conservative fee, Judicial Watch is using the USAO Matrix calculate the lodestar amount for this case. *See* Declaration of Richard W. Driscoll ("Driscoll Decl.") ¶ 4. In the D.C. Circuit**,** "the second prong of the equation for calculating a fee award—the reasonableness of hourly rates awarded under fee-shifting statutes—consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *Am. Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148 (D.D.C. 2007) (citing *Covington v. District Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). To recover, the movant must provide "contemporaneous, complete, and standardized

time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Understandably, the billing records for this case are voluminous, but Judicial Watch is in the process of preparing redacted detailed billing records that will be submitted to the Court later this week. The PCLaw billing records are contemporaneously recorded and accurately reflect the work done by each attorney. Time entries are recorded by date, time (in 1/10-hour increments), and nature of each activity, and include details about the specific task performed. Id. Each entry is clearly labeled with the initials of the attorney performing the work, the attorney's rate, the hours of work performed on the activity, and the total amount charged for the activity. Judicial Watch's request is further supported by Declarations from the Responsible Attorney for this matter, who was directly involved from beginning to end, and Elizabeth M. Seltzer, who provided intellectual property related assistance. Driscoll Decl.; Declaration of Elizabeth M. Seltzer. Judicial Watch's request for $24,728.60 in costs is supported by the detailed Client Cost Journal for this case. Exhibit F.

Based on the 3,311.6 hours worked on this matter by D&S's attorneys and law clerks and the applicable USAO Matrix rates, the total lodestar amount for all work on this matter is $1,379,920. Exhibit C; Driscoll Decl. Accordingly, Judicial Watch requests a reasonable award of $1,379,920 for attorney fees[3] and $24,728.60 for costs in this matter.

Judicial Watch is also entitled to recover fees for its work to obtain fees in this matter. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 240 (D.D.C. 2012). To date, Judicial Watch has incurred 37.3 hours in the preparation of this submission.

---

[3]    If the Court declines to accept a lodestar calculation, Judicial Watch seeks its fees paid in the amount of $598,030, which is grossly below market rates for legal services in the D.C. Metro area.

9

Dated: April 1, 2019	Respectfully submitted,

/s/
_____
Richard W. Driscoll (436471)
Email: rdriscoll@driscollseltzer.com
DRISCOLL & SELTZER, PLLC
300 N. Washington St., Suite 610
Alexandria, Virginia 22314
703.879.2601 Telephone
703.997.4892 Facsimile

*Counsel for Defendants Judicial Watch, Inc. and Thomas J. Fitton*