**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARRY KLAYMAN,<br><br>                Plaintiff,<br>    v.<br><br>JUDICIAL WATCH, INC.,<br><br>                Defendant. | Civil Action No. 1:06-cv-00670 |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER
DENYING MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND
<u>RENEWED MOTION FOR VOLUNTARY RECUSAL OR DISQUALIFICATION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1
LEGAL STANDARD..................................................................................................................1
LEGAL ARGUMENT..................................................................................................................2
   Friends of Larry Klayman..........................................................................................................2
   The Record Does Not Support the Amount of Damages Awarded ............................................3
   The Court Failed to Address Mr. Klayman's Nominative Fair Use Argument..........................6
   Fair Comment .............................................................................................................................8
   Misappropriation of Donor or Client Lists or Client Data..........................................................9
   Bias and Prejudice With Regard to the Ninth Circuit Ruling ...................................................11
   Renewed Motion to Recuse Judge Kotelly ..............................................................................12
CONCLUSION...........................................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Soc'y for Testing & Materials v. Pub..Resource.Org, Inc.*,
 896 F.3d 437 (D.C. Cir. 2018) ................................................................................4, 5, 6, 7

*Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380
F.2d 570 (D.C. 1967) .............................................................................................................13

*Culliford v. CBS, Inc.,* 1984 U.S. Dist. LEXIS 20204 ...................................................................4

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ........................................................................8

*In re United States*, 158 F.3d 26 (1st Cir. 1998) .........................................................................14

*Jackson v. Microsoft Corp.*, 135 F. Supp. 2d 38, 40 (D.D.C. 2001) ............................................13

*Johnson Publ'g Co. v. Etched-In-Ebony, Inc.*, 1981 U.S. Dist. LEXIS 17614 ..............................4

*Liteky v. United States*, 510 U.S. 540, 555 (1994) .....................................................................13

*Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980) ...................................................................12

*Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995) ...................................................................14

*Republic of Pan. v. American Tobacco Co.*, 217 F.3d 343 (5th Cir. 2000) .................................14

*Scott v. United State*s, 559 A.2d 745 (D.C. 1989) .....................................................................12

*United States v. Blackwell*, 694 F.2d 1325 (1982) .......................................................................5

*United States v. Dandy*, 998 F.2d 1344 (6th Cir. 1993) ..............................................................14

*United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989) ................................................................14

*United States States v. Sibla*, 624 F.2d 864 (9th Cir. Cal. 1980) ................................................14

*Ward v. City of Monroeville*, 409 U.S. 57 (1972) ......................................................................12

*York v. United States*, 785 A.2d 651 (D.C. 2001) ......................................................................12

**Statutes**

Fed R. Civ. P 54(b) .........................................................................................................................1

Fed R. Civ. P 59(e) .........................................................................................................................1

Fed R. Civ. P 60(b) .....................................................................................................................1, 2

Fed R. App. P 4(a)(4(A)(vi) ...........................................................................................................2

28 U.S.C.§ 455 ..................................................................................................................12, 13, 14

28 U.S.C.§ 144 ..................................................................................................................12, 13, 14

**MEMORANDUM OF LAW**

Plaintiff Larry Klayman ("Mr. Klayman") respectfully requests that pursuant to Federal Rule of Civil Procedure 60(b), this Court reconsider its order of March 18, 2019 denying Mr. Klayman's Motion for Judgment Notwithstanding the Verdict ("JNOV Motion") pursuant to Federal Rules of Civil Procedure 54(b) and 59(e) and grant Mr. Klayman's renewed request for voluntary recusal or disqualification and vacate all of its orders in this matter.

**I.   INTRODUCTION**

Unfortunately, this Court's Order of March 18, 2019 appears to be driven by its continued extra-judicial animus manifesting itself in bias and prejudice against Mr. Klayman, and this has caused the Court to ignore the facts and the law set forth in Mr. Klayman's JNOV Motion. As set forth in detail below, this has resulted in, at a minimum, clear error that has severely prejudiced Mr. Klayman that more than satisfies the requirements for reconsideration under the Federal Rules of Civil Procedure Rule 60.

The bottom line is simple. This Court must follow the law. This Court must apply the facts to the law. It has not done either. Whether or not this was caused by its bias and animus toward Mr. Klayman, or perhaps even partially by the voluminous record in this matter, this Court has exhibited a continued pattern and practice of doing everything in its power to prejudice Mr. Klayman, to the point where it has become abundantly clear that Mr. Klayman has no chance of receiving a fair adjudication on the merits of his claims and defenses before this Court. The <u>only</u> possible solution at this point, in addition to granting Mr. Klayman's motion for reconsideration, is the voluntary recusal or disqualification of this Court so that this matter can proceed in a truly neutral forum.

**II.   LEGAL STANDARD**

Mr. Klayman seeks reconsideration of this Court's Order of March 18, 2019 denying his

JNOV Motion pursuant to Fed. R. Civ. P. 60(b), which states, in relevant part, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . (6) any other reason that justifies relief." Under part (c) of the same rule, a motion made hereunder "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."

The filing of a motion under Fed. R. Civ. P 60(b) tolls the filing of a Notice of Appeal, so long as it is filed within 28 days of the judgment that is being appealed. Fed R. App. P. 4(a)(4)(A)(vi).

### III. LEGAL ARGUMENT

#### A. Friends of Larry Klayman

The Court committed grave error by failing to go back and look at the damages found by the jury on Judicial Watch's trademark infringement claim and determine how much of the award was due to Mr. Klayman's personal actions, if any. It is undisputed that the only counter-defendant to this case is Mr. Klayman, individually. Neither Freedom Watch nor Friends of Larry Klayman ("FOLK"), both separate legal entities, were parties to this lawsuit. Thus, the only damages properly awarded to Judicial Watch would be those stemming from Mr. Klayman's personal conduct, and not conduct by Freedom Watch or FOLK.

Mr. Klayman raised this issue in his JNOV Motion and this Court fails to substantively address it, choosing instead to merely "talk around" the issue. The Court simply held that "Klayman fails to identify any evidence of alleged trademark infringement by FOLK or Freedom Watch that the jury might have mistakenly attributed to him. Instead, the jury heard sufficient evidence to attribute the alleged infringement to Klayman himself." ECF No. 581 at 13. This is

2

simply false, as set forth in Mr. Klayman's JNOV Motion. The Court allowed into the record extremely prejudicial evidence that showed that FOLK's advertising and fundraising agency, American Target Advertising ("ATA"), had raised $943,245.60 on behalf of FOLK. Defense Ex. 66. The Court also allowed the testimony of Maureen Otis ("Ms. Otis") and Defense Ex. 75, which showed the amount of money raised by Plaintiff/Counter-Defendant's U.S. Senate Campaign that went through American Caging:

> Sure. I just printed out two samples of these cage and code reports. The very first one for the "Klayman For U.S. Senate" and report No. 61. So you could see the cumulative number. So this report is prepared every day that we receive mail, and it looks like – for example, the first day we got one piece of mail but not any money. And then as of 12-23-04, that day we received 72 pieces of mail, 57 donors, 15 non-donors, and collected $1,200. But the cumulative, this is from the beginning of the campaign until 12-23-04, we had collected a total of $269,130.69. And then these codes are all the different lists that were rented, and we have it broken down by codes. So you can see for -- for this particular code, LHDR3, we had 49 donors, 11 non-donors, and raised $1,098. Official Transcript, Day 10, 3164:15-3165:4.

It is extremely telling that despite being presented with these facts, the Court still found that there was no chance the jury mistakenly attributed damages to FOLK, and without the Court even taking the effort to look back and analyze the damages specifically, this finding constitutes clear, egregious error.

### B. The Record Does Not Support the Amount of Damages Awarded

At trial, the jury awarded Judicial Watch $750,000 on Judicial Watch's trademark infringement claim. The only instance of conduct remotely attributable to Mr. Klayman personally in this regard is the one time that Mr. Klayman's direct mail provider, Response Unlimited, made an honest mistake and used Judicial Watch's name on a reply envelope. Official Transcript, Day 10, 3140:6-9. (Q: "Is that a copy of what the envelope would look like for the return envelope for donors?" A: "I should hope not because it says 'Judicial Watch.'").

3

Mr. Klayman presented to the Court both law and facts that demonstrated that minimal levels of confusion are insufficient to sustain a claim for trademark infringement. "The Court notes, however, that it is only necessary to show that an 'appreciable' number rather than a majority of reasonable buyers are likely to be confused." *Culliford v. CBS, Inc.,* 1984 U.S. Dist. LEXIS 20204, *9. "The 'likelihood of confusion' test is whether a substantial number of ordinary consumers exercising ordinary caution probably will be confused. A substantial number need not be a majority, but it must be more than a few.'" *Johnson Publ'g Co. v. Etched-In-Ebony, Inc.*, 1981 U.S. Dist. LEXIS 17614, *9-10. Furthermore, much of the so called "evidence" presented by Judicial Watch to support its claim of confusion – a few improperly authenticated if not manufactured and contrived letters amongst <u>millions</u> that were sent – do not evidence confusion, but actually demonstrate that the alleged donors were not confused, and clearly understood that Mr. Klayman was no longer affiliated with Judicial Watch. For instance:

> Mr. Thomas Fitton, I wish to be removed from your office. I now support Larry Klayman. You are a liar + a cheat. Defense Ex. 33.
> Take my name off your mailing list until Larry Klayman is brought back as president and founder. *Id.*
>
> $0.00 until Larry Klayman is back on the job. *Id.*
>
> 6/27/07 Please remove me from your mailing list. I'm not interested unless Larry Klayman returns. Defense Ex. 34.

All these letters show are that the recipients clearly understood that Mr. Klayman was no longer affiliated with Judicial Watch, and were there **not confused**.

However, when faced with this, the Court chose to eschew the facts and the law in favor of conjecture. Apparently conceding that there was little to no evidence of actual confusion, the Court instead points to the fact that *Am. Soc'y for Testing & Materials v. Pub..Resource.Org, Inc.*, 896 F.3d 437 (D.C. Cir. 2018) approved of a multi-factor test, although falling short of

actually adopting such an approach. The Court in *Am. Soc'y* found that sister circuits had adopted a multi-factor test and that "[f]actors considered include the strength of the mark, the similarity of the marks, the proximity of the goods, the similarity of the parties' marketing channels, evidence of actual confusion, the defendant's intent in adopting the mark, the quality of the defendant's product, and the sophistication of the buyers." *Id*. at 456. Notably, among the factors is still "evidence of actual confusion."

Instead of analyzing what actual factors Judicial Watch purportedly satisfied – if any – which could have resulted in the $750,000 award, the Court simply guesses that "[f]or example, the jury could have found that the Saving Judicial Watch campaign involved similar marks deployed through similar marketing channels, coupled with evidence of actual confusion." ECF No. 581 at 15. Mere conjecture in his instance does not suffice and severely prejudices Mr. Klayman. The Court needed to make an <u>actual inquiry</u> into the basis behind the jury returning an award of $750,000 based on the sending of one letter amongst millions instead of simply guessing at what the jury's rationale was. This is a clear, egregious error that has severely prejudiced Mr. Klayman and which much be remedied.

Indeed, what <u>does</u> explain the enormous award of damages is the fact that this Court erroneously allowed unauthenticated evidence in the form of letters proffered by Judicial Watch, purportedly written by donors to show alleged confusion into evidence. Under Federal Rules of Evidence Rule 901, evidence must be authenticated by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Authentication is no mere formality. It is a crucial part of ensuring that the parties to a litigation receive a fair trial. As a general rule, tangible evidence . . . must be properly identified or authenticated before being admitted into evidence at trial." *United States v. Blackwell*, 694 F.2d

5

1325, 1329 (1982). "Authentication and identification are specialized aspects of relevancy that are necessary conditions precedent to admissibility." *Id.* at 1330 (emphasis added).

Incredibly, the Court recognized the grave deficiency in allowing improperly "authenticated" letters into evidence, yet still found a way to do so in giving an improper instruction that the letters could not be used to show the truth of the matter asserted, but only to show potential or actual damage to Judicial Watch. Tr. at 2525:5-12. However, this instruction was disingenuous, at best, since the alleged damage to Judicial Watch was indeed the truth of the matter asserted. Put another way, the sole reason that Defendants/Counter-Plaintiffs wanted to introduce these purported letters from purported donors – without proper authentication – was to try and prove damages. In sum, while recognizing the clear error in allowing improperly and in practice unauthenticated documents into evidence, the Court clearly acted on its extrajudicial bias and prejudice to strain to find a way for Judicial Watch to use them. This is a clear, egregious error that has severely prejudiced Mr. Klayman. Indeed, this is one of the Court's most egregious series of what appeared then and which appear even more now to be willful errors during the trial and in adjudicating Plaintiff's post trial motions.

### C. The Court Failed to Address Mr. Klayman's Nominative Fair Use Argument

With regard to Mr. Klayman's nominative fair use argument, the Court simply glosses over it completely, apparently deciding that simply because the jury heard an instruction for nominative fair use that Mr. Klayman was not entitled to the relief sought in his JNOV Motion. It is abundantly clear that, as a matter of law, Mr. Klayman more than satisfied the elements of nominative fair use.

As set forth in the case cited by the Court, *Am. Soc'y*, "nominative" fair use of a mark, occurs when "the defendant uses the plaintiff's trademark to identify the plaintiff's own goods

6

and 'makes it clear to consumers that the plaintiff, not the defendant, is the source of the trademarked product or service.'" *Id*. The elements are "[1] the product or service in question must be one not readily identifiable without use of the trademark; [2] only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and [3] the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id*. Importantly, using another's trademark in a critical manner may still constitute nominative fair use. "Permitting such use accommodates situations where it would be 'virtually impossible to refer to a particular product for purposes of comparison, **criticism**, point of reference or any other such purpose without using the mark.'" *Id*. (emphasis added).

As set forth above, the only "use" of Judicial Watch's trademark at issue is Mr. Klayman's "Saving Judicial Watch" Campaign. From the outset, the very name of the campaign, *Saving* Judicial Watch, makes it incredibly clear that there was no sponsorship or endorsement by Judicial Watch. Any other finding would make absolutely zero sense. Why would any organization endorse negative criticism about it, specifically that it needed to be saved? Furthermore, there is no other way that Mr. Klayman could have identified the service in question without using the Judicial Watch mark. How else could Mr. Klayman have possibly identified the organization that needed saving? "A prototypical example of nominative fair use would be where 'an automobile repair shop specializing in foreign vehicles runs an advertisement using the trademarked names of various makes and models to highlight the kind of cars it repairs.'" *Id.* This is exactly the type of use contemplated by the Court in *Am. Soc'y* – simply using the mark to identify the service or good that the speaker is referring to. This is

7

classic fair use and, by failing to even address this, the Court again committed grave, egregious error.

      **D.**    **Fair Comment**

The Court also committed clear error by failing to address Mr. Klayman's arguments regarding its refusal to give a fair comment jury instruction with regard to Judicial Watch's counterclaims on the non-disparagement provision of the Severance Agreement. The Court has now further held that no fair comment instruction was given because:

> Klayman improperly sought to import a defense from tort law into the specific contractual provision at issue in this breach of contract claim. That provision includes some language about fair comment. CSA ¶ 17 ("Nothing in this paragraph is intended to, nor shall be deemed to, limit either party from making fair commentary on the positions or activities of the other following the Separation Date."). **But the jury, not the Court, was responsible for applying that contractual provision to the testimony and other evidence of Klayman's statements**. ECF No. 581 at 20 (emphasis added).

This is an egregious error. The Court apparently presumed that each member of the jury had at a minimum, gone to law school, and been taught and retained the meaning of the legal principle of "fair comment" as set forth by the Supreme Court under *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). Otherwise, the only other explanation is that the Court believed that a jury of laymen would be able to apply a legal principle that they likely had never heard of to the facts of the case. Either assumption is clearly in gross error.

It is undisputed that the provision of the Severance Agreement at issue, the non-disparagement clause, contained an exception for "fair comment." Thus, the ability to make "fair comment" was contracted for between the parties. This is not in dispute. The Court has, however, chosen to steadfastly adhere to its delineation between contract law and tort law, despite the fact that the "fair comment" defense was specifically contracted for in denying Mr. Klayman a "fair comment" jury instruction.

8

By including a "fair comment" exception in the Severance Agreement, the parties clearly intended to incorporate basic tort principles into the Agreement itself. By way of analogy, if two parties who are neighbors of adjoining properties created a contract that stated that neither party shall be allowed to trespass on the other's property, would such a clause be inoperative simply because it contained tort principles? Clearly not. In the same way, using the tort principle of "fair comment" in its contractual agreement between the parties here does not render the clause inoperative. It is therefore clear that Mr. Klayman was entitled to make "fair comment" about Judicial Watch, consistent with the well-defined tort principle, and by failing to allowing Mr. Klayman to explain to the jury what the principle of "fair comment" entailed, the Court committed serious error – essentially disallowing the defense that both parties contracted for.

### E.   Misappropriation of Donor or Client Lists or Client Data

The Court's analysis on the issue of whether Mr. Klayman "improperly accessed of used certain Judicial Watch information" constitutes further serious error because it focuses on the wrong issue. The Court mistakenly casts its analysis as to whether Mr. Klayman's alleged conduct was an "illegal taking" or "potential breach of his agreement with Judicial Watch." However, this is not Mr. Klayman's argument, and this is not the fundamental issue.

The cold, hard fact is that Judicial Watch did not own any of the donor or client lists or client data at issue. ATA did. Thus, there could be no possible breach of paragraph 4D of the Severance Agreement, which provided that "Klayman expressly agrees and acknowledges that, following the Separation Date, he shall not retain or have access to any **Judicial Watch donor or client lists or donor or client data**." (emphasis added). Any data or lists that Mr. Klayman "had access to" were ATA's, which is clearly not violative of the Severance Agreement. Mr. Klayman testified as such:

9

> Q Now, did ATA own the names that it acquired when it did donor acquisition for Judicial Watch after you signed the contract?
> A Yes, they owned those names. They had a proprietary interest in those names separate and apart from Judicial Watch.
> Q So why then did you go to American Target Advertising?
> A: Because they owned the names. I didn't take any names.
> Q And where do those names come from?
> A Based on my experience, there's a certain group of out there in the world, in the public that want to conservative groups, that want to donate to groups that are seeking justice, and those names are used by many different organizations and many different politicians. They rent the names.
> Q And how did that happen?
> A Well, Mr. Viguerie owned the names, so he could rent the names, and he could use the names.
> Q And is that why you had a contract?
> A Yes, but I didn't take any Judicial Watch names.
> Q Did you view that to be violative of the severance agreement?
> A Absolutely not. It doesn't say that I can't use names from other sources. I just can't take Judicial Watch names.

*Official Transcript*, Day 11, 3404:11-3405:12. Furthermore, the physical evidence showed that ATA owned the names and had an exclusive right to market them to any person or entity. The contract provides: "ATA shall have an exclusive license to market all names developed under the contract as part of its Agency Masterfile." Defense Ex. 62.

It is, therefore, impossible to logically reach the conclusion that Judicial Watch "owned" the information and data at issue. All the evidence points to the fact that ATA was the sole owner. The mere fact that Judicial Watch used those names as part of its list does not render it the owner. By that logic, any person that Judicial Watch sent a mailing to would become their property, preventing other people from sending them letters. This is nonsensical.

Lastly, assuming *arguendo* that Judicial Watch actually owned any of the information used – again, as set forth above, none was – it is clear that its use was not by Mr. Klayman personally, but his Senate campaign, FOLK. As set forth above, Mr. Klayman is the only counter-defendant to this lawsuit. FOLK and Freedom Watch are not, and Mr. Klayman simply

cannot be held personally liable for their actions. The Court, again, ignores this fact in its March 18, 2019 Order.

### F. Bias and Prejudice of the Court with Regard to the Ninth Circuit Ruling

At trial, the Court issued a ruling and explanation concerning U.S. Court of Appeals for the Ninth Circuit's ("Ninth Circuit") order on Mr. Klayman's application to appear *pro hac vice* in conjunction with another ruling and explanation concerning the Florida judgment against Judicial Watch. The Ninth Circuit order contained the words "patently false" when describing certain assertions made by Mr. Klayman, which clearly severely prejudiced the jury against him.

While allowing the Ninth Circuit order, the Court severely restricted Mr. Klayman's ability to present to the jury the $181,000 judgment for malicious defamation in the U.S. District Court for the Southern District of Florida. Both were being presented for essentially the same purpose – impeachment – yet the Court only allowed Judicial Watch to present evidence in this regard.

The Court's rationale in its March 18 Order is centered upon a meaningless distinction. The Court found "Judicial Watch sought to impeach Klayman with evidence bearing on his own character for truthfulness. Whereas Klayman requested permission to impeach Fitton with evidence bearing on the character for truthfulness principally of another Judicial Watch employee, and only secondarily of Fitton." ECF No. 581 at 28. It is clear that, in the Florida case, Fitton was given a chance to correct and rescind the defamatory statements at issue, and chose not to do so, meaning that he condoned and ratified the defamatory conduct. Thus, the "truthfulness" or Fitton is as much at issue than the "truthfulness" of the actual speaker. There are no levels to this. Either Fitton was truthful or he was not. By knowingly ratifying false statements, he was not.

11

**G.     Renewed Motion to Recuse or Disqualify Judge Kotelly**

Pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144, Mr. Klayman hereby renews his motion for voluntary recusal or the disqualification of the Honorable Colleen Kollar-Kotelly ("Judge Kotelly") in this matter based on her March 18 Order that, as set forth above, blatantly ignores the facts and the law due to her personal animus and extrajudicial bias and prejudice against Mr. Klayman. It is abundantly clear that Mr. Klayman cannot hope to receive fair adjudication before Judge Kotelly, and this matter must be decided by an actual neutral arbiter, in accordance with Mr. Klayman's due process and other constitutional rights.

An impartial judiciary is a fundamental component of the system of justice in the United States. The right to a "neutral and detached judge" in any proceeding is protected by the U.S. Constitution and is an integral part of maintaining the public's confidence in the judicial system. *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980) (The U.S. Constitution guarantees a party an impartial and disinterested tribunal in civil cases). To ensure that this right is protected, Congress has sought to secure the impartiality of judges by requiring them to step aside, or in some circumstances, disqualify themselves, in various circumstances.

Under 28 U.S.C. § 455, a judge " . . . shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In order to preserve the integrity of the judiciary, and to ensure that justice is carried out in each individual case, judges must adhere to high standards of conduct. *York v. United States*, 785 A.2d 651, 655 (D.C. 2001). "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . ." ABA Code of Judicial Conduct Canon 3(C)(1); *See also Scott v. United States,* 559 A.2d 745, 750 (D.C. 1989) (*en banc*). Disqualification or

recusal is required when there is even the appearance that the court's impartiality may be called into question, and "could suggest, to an outside observer, such a 'high degree of favoritism or antagonism to defendants' position that 'fair judgment is impossible.'" *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *See also Jackson v. Microsoft Corp.*, 135 F. Supp. 2d 38, 40 (D.D.C. 2001) (recusal was proper because the judge "ha[d] created an appearance of personal bias or prejudice").

Indeed, the "very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001). As such, "violations of the Code of Conduct may give rise to a violation of § 455(a) if doubt is case on the integrity of the judicial process. *Id*.

Similarly, Under 28 U.S.C. § 144:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. This statute is unambiguous – if the requirements are met, another judge must be assigned to take over the matter. *See* Exhibit 2 (Sworn Affidavit of Plaintiff Larry Klayman).

> The disqualification statute, 28 U.S.C. §144, is <u>mandatory and automatic</u>, requiring only a timely and sufficient affidavit alleging personal bias or prejudice of the judge. The judge is a silent defendant, unable to make findings on the truth or falsity of the affiant's allegations, and truth must be presumed. *United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) (Emphasis added); and the allegations may be based upon information and belief, *Berger v. United States*, 255 U.S. 22, 34, 65 L. Ed. 481, 41 S. Ct. 230 (1920).

*Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 576 (D.C. 1967) (emphasis added). As evidence of the absolute requirement of

impartiality from judicial officers, the U.S. Courts of Appeals for the Fifth, First, Sixth, Tenth, and Eleventh Circuits have said that close questions should be decided in favor of recusal. *See Republic of Pan. v. American Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000) (citing *In re Chevron*, 121 F.3d 163, 165 (5th Cir. 1997)); *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998); *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989).

"The test for personal bias or prejudice in [S]ection 144 is identical to that in section 455(b)(1), and the decisions interpreting this language in [S]ection 144 are controlling in the interpretation of section 455(b)(1)." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. Cal. 1980). In *Litecky v. United States*, the U.S. Supreme Court held that while "judicial rulings <u>alone</u> never constitute a valid basis for a bias or partiality motion," 510 U.S. at 555 (emphasis added), if the judge succumbs to extrajudicial influence, he is subject to such a motion. Even more, in the absence of an extrajudicial influence, judicial rulings coupled with the requisite "degree of favoritism or antagonism" can serve as the basis for such a motion even "when no extrajudicial source is involved." *Id*. Lastly, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" constitute a basis for such a motion if "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

As set forth in the preceding sections and in the accompanying affidavit, Kotelly has demonstrated deep-seated animus and extrajudicial bias and prejudice against Mr. Klayman that has made fair judgment impossible. In this instance, Judge Kotelly was clearly presented with the relevant facts and law, and she has simply chosen to ignore them in order to reach conclusions that support her apparent preconceived mindset about this case, and Mr. Klayman personally.

## IV.     CONCLUSION

Based on the foregoing, Mr. Klayman respectfully requests that this Court grant his Motion for Reconsideration or voluntarily recuse or disqualify itself so that a truly neutral arbiter may preside over this case moving forward. A reasonable person could only conclude given the pattern and practice of a long history of egregious and what appear to be willful errors, that the Court has purposefully ignored the facts and law presented in Mr. Klayman's JNOV Motion, and this has resulted in clear error that must be corrected forthwith. Mr. Klayman has already been severely prejudiced, and this Court must respectfully by either in good faith seriously addressing these clear errors and granting Plaintiff's motion for reconsideration or removing herself from the case in the interests of due process, fundamental fairness and justice, thereby allowing an unbiased jurist to adjudicate these issues.

Mr. Klayman has conferred with counsel for Judicial Watch and they decline consent.

Dated: April 12, 2019                                              Respectfully submitted,

*/s/ Larry Klayman*

Larry Klayman, Esq.
2020 Pennsylvania Ave NW, #800
Washington, DC, 20006
Tel: 310-595-0800
Email: leklayman@gmail.com
*Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on April 12, 2019.

/s/ Larry Klayman

## CERTIFICATE OF COUNSEL

I, Larry Klayman, Esq., am Plaintiff pro se in this matter. I hereby certify that this Motion and the accompanying affidavit and the substantive factual allegations contained therein, are being made in good faith pursuant to 28 U.S.C. § 144.

/s/ Larry Klayman