**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARRY KLAYMAN<br><br>        Plaintiff,<br><br>v.<br><br>JUDICIAL WATCH, INC., *Et Al*.<br><br>        Defendants. | Civil No. 1:06-cv-00670-CKK |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS [ECF 592]**

    Defendants Judicial Watch, Inc. and Thomas J. Fitton (jointly "Judicial Watch"), by undersigned counsel, hereby oppose the Motion for Sanctions ("Sanctions Motion") [ECF 592] filed by Plaintiff Larry Klayman ("Klayman").

### INTRODUCTION

    The Sanctions Motion is an abuse of this Court's docket. It should be viewed for what it is – a cynical attempt to prolong this litigation. Instead of filing a reply to Defendants' Opposition to his Reconsideration Motion, Klayman filed the Sanctions Motion, relying on inaccuracy and conclusory assertions, including the misrepresentation that Magistrate Kay wrongly imposed discovery sanctions. Neither Judicial Watch nor its counsel filed the Opposition to Klayman's Reconsideration Motion with any subjective bad faith. Klayman failed to satisfy the standards governing a motion for reconsideration, and Defendants' Opposition properly highlighted that failure.

## STANDARD OF REVIEW

Federal courts have certain implied powers as are necessary to exercise their authority.[1] "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). These inherent powers include the power to "impose sanctions to achieve the orderly and expeditious disposition of cases." *Id*. at 43 (internal quotation marks omitted).

Courts are expressly empowered to impose sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 but may still address egregious conduct through inherent authority and, where warranted, impose the "extreme sanction of total dismissal, but for lesser wrongdoing a court may assess attorney's fees and costs." *Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 987 F. Supp. 2d 1, 4 (D.D.C. 2013). At a minimum, the Court must find that a party engaged in subjective bad faith to impose sanctions through its inherent powers. *Id*. In particular, the Court must find that the party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons by clear and convincing evidence." *Id*. (citations and internal quotations omitted). "Thus, the D.C. Circuit requires a clear and convincing showing of subjective bad faith on the part of a litigant before a court may impose monetary sanctions against that litigant under its inherent powers." *Id*. at 5. To dismiss an action, the Court must find "first, that there is clear and convincing evidence that the fraudulent or bad faith misconduct occurred, and second, that a lesser sanction 'would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the

---

[1] Klayman cites two cases from the D.C. Court of Appeals. Neither case accurately states the standard for imposing sanctions pursuant to this Court's inherent powers.

merits.' *Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469, 1472 (D.C.Cir.1995) (default judgment reversed because district court made neither finding).

In the District of Columbia Circuit, there is further guidance on the limited scope of conduct that will justify the sanction of dismissal. *See Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C.Cir.1998). Sanctions are justified only when: "(1) the other party has been "so prejudiced by the misconduct that it would be unfair to require [the party] to proceed further in the case," (2) the party's misconduct has put "an intolerable burden" on the court by requiring the court to modify its own docket and operations in order to accommodate the delay, or (3) the court finds it necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." *Id*. at 971; *see also Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C.Cir.2001).

Therefore, Klayman must show, and the Court must find, that Judicial Watch (or its counsel): (1) acted in subjective bad faith when making the representations that Klayman alleges to be false; (2) a lesser sanction will not cure the issue; and (3) that one of the following exists:

- Klayman has been so prejudiced by the alleged misconduct that it would be unfair to require him to proceed further in the case;
- Judicial Watch's actual misconduct has put an intolerable burden on this Court by requiring it to modify the docket and operations in order to accommodate the delay; or
- It is necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future."

Klayman's Motion completely fails to meet this standard.

## ARGUMENT

Klayman is offended by Defendants' assertion that the Motion for Reconsideration failed to "present exhibits, testimony or legal authority to meet the high burden necessary to justify reconsideration." Sanctions Motion at p. 2. Plaintiff asserts that this statement, and three similar statements, are false and misleading because the Reconsideration Motion "specifically set forth, with references to uncontroverted facts and exhibits, exactly how and why this Court committed clear, egregious if not intentional error given its inherent bias and prejudice." Judicial Watch and its counsel stand by their statements as fully explained below. In each instance, Klayman omits legal authority justifying his request, omits any new exhibits/testimony, and/or recycles previous arguments. Plaintiff's failure is demonstrated by examining the Motion for Judgment as a Matter of Law, For a New Trial, or in the Alternative, For Remittitur of the Jury Verdict (the "Post-Trial Motion") [ECF 571] and the Motion for Reconsideration of the Court's Order Denying Motion for Judgment Notwithstanding the Verdict (the "Reconsideration Motion") [ECF 587].

  A. **FRIENDS OF LARRY KLAYMAN ("FOLK")**

The issue regarding FOLK was originally raised in the Post-Trial Motion [ECF 571] where Klayman argued:

> However, given the enormous amount of damages awarded by the jury for minimal, if any, conduct personally conducted by Mr. Klayman, "it is evident that the jury did improperly consider actions undertaken by non-defendants Freedom Watch and Friends of Larry Klayman, one a corporate entity and the other a political and legally distinct entity. . . . Furthermore, given the fact that there is no specific verdict form specifying what damages are attributable to Mr. Klayman, Freedom Watch, and Friends of Larry Klayman, a new trial is the only viable remedy remaining, given this obvious jury confusion."

[ECF 571 at p. 16] The issue was again raised in the Reconsideration Motion as follows:

> It is undisputed that the only counter-defendant to this case is Mr. Klayman, individually. Neither Freedom Watch nor Friends of

4

> Larry Klayman ("FOLK"), both separate legal entities, were parties to this lawsuit. Thus, the only damages properly awarded to Judicial Watch would be those stemming from Mr. Klayman's personal conduct, and not conduct by Freedom Watch or FOLK.

[ECF 587 at p. 5] The arguments are nearly identical in substance. The only distinction is Klayman contends the Court failed to "look back and analyze the damages specifically," without explaining what that request entails or why it is required by law. Sanctions Motion at p. 2. Klayman cites no rule, authority or new evidence that may compel the Court to execute a "look back" in any detail that exceeds the evaluation previously set forth in the Court's Order. [ECF 581 at pp. 12-13]

      **B.**    **TRADEMARK INFRINGEMENT DAMAGES**

In the Post-Trial Motion, Klayman challenged the award of $750,000 in damages for trademark infringement based on the likelihood of confusion test, letters admitted showing that donors were confused and the nominative fair use defense. [ECF 571 at pp. 16-18] The argument concludes with the following:

> the jury returned a verdict of $750,000 for Judicial Watch's trademark infringement claim, which is not supportable by the facts presented at trial. The only explanation for this staggering number is that the jury was not only prejudiced and confused but also improperly considered conduct from outside sources, whether it be Freedom Watch or the political campaign, Friends of Larry Klayman, and attributed it to Plaintiff/Counter-Defendant personally. As set forth above, this is incorrect and improper and there must be a new trial to remedy this grave and gross error, as the jury verdict does not specific to whom the damages are attributable.

[ECF 571 at p. 18] In the Reconsideration Motion, the foregoing arguments are repeated nearly word for word, citing the exact same testimony, exhibits and case law. Nothing new is introduced, except that Klayman objects to the Court's affirming the jury verdict based on a

reasonable interpretation of the evidence. Again, Klayman cites no rule, authority or new evidence that would justify reconsideration of this issue.

### C. NOMINATIVE FAIR USE

The Reconsideration Motion contains an argument based on the nominative fair use defense that is different than the argument in the Post-Trial Motion. Compare [ECF 587 at pp. 9-10] and [ECF 571 at p. 18]. Judicial Watch's opposition to this issue addresses Klayman's arguments, pointing out that he failed to demonstrate how any reasonable jury could reject the defense. [ECF 591 at pp. 5-6] Judicial Watch did not assert that the argument is identical to any prior argument. However, the argument is not supported by applicable rules or controlling law, and thereby fails to justify reconsideration.

### D. THE FAIR COMMENT JURY INSTRUCTION

Klayman's assertion of this argument in the Reconsideration Motion is his third attempt. [ECF 528; ECF 541; and ECF 581]. Each argument is nearly identical. The case law cited is the exactly same in each instance, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). Klayman presented no new argument, evidence, rule or case law to justify a request for reconsideration.

### E. JUDICIAL WATCH'S DONOR LISTS

On the issue of who owned the donor list maintained by American Target Advertising ("ATA"), Klayman engages in outright misrepresentation and deception. Conflating the concept of ownership and the right to market, Klayman seeks to reverse a jury verdict based that is correctly founded on the facts in evidence and law as contained in the jury instructions. Plaintiff's argument in the Post-Trial Motion and the Reconsideration Motion asserts that donor names used by Klayman were owned by ATA and not Judicial Watch. [ECF 571 at pp. 27-29; ECF at pp. 12-14] He relies on the same transcript excerpt to advance this argument, ignoring the

plain language of the applicable contract. The argument for reconsideration fails because it provides no new evidence, rule or case law.

F.     IMPEACHMENT

In the Reconsideration Motion, Klayman argues there is no distinction between the question he sought to ask Thomas Fitton (which was based on a convoluted justification) and the impeachment question Klayman was asked at trial (which was based on a reported decision from the Ninth Circuit Court of Appeals). [ECF 587 at p. 14] He does not raise a single evidentiary or legal issue to justify reconsideration. Clearly, Klayman objects to the Court's Order. However, there is neither legal authority to support this objection nor new evidence to support his recollection of the Florida trial (*e.g.*, a transcript).

G.     THE DOCUMENT PRODUCTION

In a further attempt at deception, Klayman mischaracterizes statements on-the-record to manufacture the impression that he complied with discovery requests and therefore, was wrongfully sanctioned by Magistrate Kay during the discovery phase of this case. Undeterred by facts that provide no support for his effort, Klayman asserts that the premise on which sanctions were imposed, that he failed to produce any discovery to Judicial Watch, was "a blatant lie." Motion at p. 5. Klayman is wrong and his characterization of the facts is unsupportable.

On November 2, 2007, Judicial Watch served on Klayman the Supplemental Requests for Production of Documents. Klayman provided objections and did not produce any responsive documents. Judicial Watch eventually moved to compel. On March 12, 2008, Magistrate Kay granted-in-part Judicial Watch's Motion to Compel Plaintiff's Responses to Supplemental Request for Production of Documents and ordered that Klayman supplement responses to Document Request Nos. 1-16, 18-57 and 60 within ten days. [ECF 117]. Klayman's objections to the Order were overruled by the Court on May 12, 2008. [ECF 167] Although due by May 27,

2008, Klayman did not provide supplemental responses or a production of responsive documents. [ECF 200] During a status conference, Klayman represented he would comply by July 25, 2008 and this Court cautioned that noncompliance would subject Klayman to sanctions. [ECF 200] Klayman did not comply with the Court's Order and failed to produce any documents in response to the Supplemental Requests by July 25, 2008, or at any time thereafter. On August 12, 2008, Judicial Watch moved for sanctions. [ECF 218] Klayman did not respond to the motion or produce documents. On March 24, 2009, Magistrate Kay granted the motion and imposed sanctions as follows:

> Plaintiff has failed to produce any of the documents requested by Defendants. These documents relate in large part to Defendants' counterclaims and Plaintiff's claims of damages. (See Defs.' Mot. at 14-15.) The Court is left with no choice but to grant Defendants' Motion for Sanctions. Plaintiff will be prohibited from testifying to or introducing into evidence any documents in support of his damage claims or in support of his defenses to Defendants' counterclaims.

[ECF 301 at p. 9] Klayman's objections to the Order were overruled by this Court on June 25, 2009 and the sanction was affirmed. [ECF 316/317]

Klayman's attempt to now rewrite the history of this case must be rejected. In response to the Supplemental Requests, *he did not produce any documents*. Moreover, after being ordered to produce documents, and then cautioned by the Court regarding sanctions, Klayman refused to comply in outright contempt of the Court's Orders. His actions are the sole cause of the sanction imposed. Any attempt to characterize the Court's Order as based on a lie is simply another "patent misrepresentation" by Klayman.

WHEREFORE, for all of the foregoing reasons, Judicial Watch respectfully requests that the Court DENY Plaintiff Klayman's Motion for Sanctions.

Dated: May 23, 2019                        Respectfully submitted,

/s/
_____
Richard W. Driscoll (436471)
DRISCOLL & SELTZER, PLLC
300 N. Washington St., Suite 610
Alexandria, Virginia 22314
703.822.5001 Telephone
703.997.4892 Facsimile
Email: rdriscoll@driscollseltzer.com

*Counsel for Defendants Judicial Watch, Inc. and Thomas J. Fitton*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of May 2019, a copy of the foregoing Opposition was served by the Court's ECF system upon all counsel of record listed on the Notice of Electronic Filing.

/s/
_____
Richard W. Driscoll