UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>JUDICIAL WATCH, INC., *et al.*,<br><br>  Defendants. | Civil Action No. 06-670 (CKK) |

**MEMORANDUM OPINION**[1]
(August 7, 2019)

Plaintiff/Counter-Defendant Larry Klayman seeks reconsideration of the Court's decision to deny his post-trial motions in this matter. Once again he also pursues voluntary recusal or disqualification of the Court. And lastly, Klayman makes his latest request for sanctions against Defendant/Counter-Plaintiff Judicial Watch, Inc. ("Judicial Watch") and Counter-Plaintiff Thomas J. Fitton.

For their part, Judicial Watch and Fitton want attorney's fees and costs for prevailing in this matter, and ask that Klayman's wages be garnished to ensure that they begin recovering for their favorable judgment.

Upon consideration of the briefing,[2] the relevant legal authorities, and the record as a whole, in an exercise of its discretion the Court shall **DENY** Klayman's [587] Motion for

---

[1] Although the case caption suggests that this case involves multiple defendants, only one, Judicial Watch, Inc., remained in this action by the time of trial. In addition, the case caption does not reflect Judicial Watch, Inc.'s and Thomas J. Fitton's counterclaims. However, because the Court has used this caption for most of the proceedings in this long case, the Court shall not do otherwise at this late hour.

[2] The Court's consideration has focused on the following documents:

- Pl.'s Mot. for Recons. of Ct.'s Order Denying Mot. for J. Notwithstanding Verdict and Renewed Mot. for Voluntary Recusal or Disqualification, ECF No. 587 ("Klayman's Recons. & Recusal Mot."); Defs.' Opp'n to Pl.'s Mot. for Recons. and Renewed Mot. for

1

Reconsideration of the Court's Order Denying Motion for Judgment Notwithstanding the Verdict ("Motion for Reconsideration"); **DENY** Klayman's [587] Renewed Motion for Voluntary Recusal or Disqualification; **DENY** Klayman's [592] Motion for Sanctions; **RESOLVE** Judicial Watch's and Fitton's [585] Motion for Attorney Fees and Costs; **LIFT THE STAY** on Judicial Watch's [595] Writ of Attachment on a Judgment; and **LIFT THE STAY** on Fitton's [596] Writ of Attachment on a Judgment.

## I. BACKGROUND

This is the *eightieth* substantive Memorandum Opinion, Order, or combination thereof issued by the Court or Magistrate Judge Alan Kay in this thirteen-year litigation. *See Klayman v. Judicial Watch, Inc.*, Civil Action No. 06-670 (CKK), 2019 WL 1244079, at *2 n.4 (D.D.C. Mar. 18, 2019) (listing each such decision).[3] For a discussion of recent past proceedings, the Court

---

    Voluntary Recusal or Disqualification [ECF No. 587], ECF No. 591 ("JW's Recons. & Recusal Opp'n");

- Pl.'s Mot. for Sanctions, ECF No. 592 ("Klayman's Sanctions Mot."); Defs.' Opp'n to Pl.'s Mot. for Sanctions [ECF 592], ECF No. 593 ("JW's Sanctions Opp'n"); Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Sanctions [ECF 592], ECF No. 594 ("Klayman's Sanctions Reply");

- Writ of Attachment on J., ECF No. 595 ("JW's Writ"); Writ of Attachment on J., ECF No. 596 ("Fitton's Writ"); Defs.' Resp. to July 24, 2019, Minute Order, ECF No. 597 ("JW's Garnishment Mem."); Pl.'s Opp'n to Defs.' Resp. to Ct.'s July 24, 2019 Minute Order ("Klayman's Garnishment Opp'n"); Defs.' Reply in Opp'n to Stay of Writs of Attachment by Garnishment, ECF No. 601 ("JW's Garnishment Reply");

- Mem. of P&A in Supp. of Defs.' Mot. for Attorney Fees and Costs, ECF No. 585-1 ("JW's Fees & Costs Mem."); and Suppl. Mem. in Supp. of Defs.' Mot. for Attorney Fees and Costs, ECF No. 588 ("JW's Suppl. Fees & Costs Mem.");

For purposes of the foregoing abbreviations, the Court refers to briefing by Judicial Watch and Fitton as being submitted collectively by "JW," except with respect to the Writs of Attachment on a Judgment, which were filed separately by Judicial Watch and by Fitton.

[3] That list excludes Orders issued to implement accompanying Memorandum Opinions.

2

refers the reader to its March 18, 2019, decision denying Klayman's post-trial motions. *Id.* at *2-*4.

Only certain proceedings following that March 18, 2019, decision are currently relevant. First, Judicial Watch and Fitton sought attorney's fees and costs for this litigation, but the Court stayed briefing of that motion after Klayman moved for reconsideration of the March 18, 2019, decision and for voluntary recusal or disqualification of the undersigned. *See* Min. Orders of Apr. 17, 2019, and Apr. 26, 2019. Although Judicial Watch and Fitton filed an opposition to the Motion for Reconsideration and the Renewed Motion for Voluntary Recusal or Disqualification, Klayman did not file a reply by the appointed deadline of May 6, 2019. *See* Min. Order of Apr. 15, 2019. Instead, on May 16, 2019, Klayman sought sanctions for the representations in Judicial Watch's and Fitton's opposition. Most recently, Judicial Watch and Fitton sought garnishment of Klayman's wages at Freedom Watch, Inc., pursuant to the Court's judgment of March 18, 2019. *See* Final Judgment, ECF No. 584. But the Court invited briefing regarding its proposal to hold the writs in abeyance pending its resolution of the Motion for Reconsideration and the Renewed Motion for Voluntary Recusal or Disqualification, and instructed the Clerk of Court to stay issuance of the requested Writs of Attachment on a Judgment pending the Court's further order. Min. Order of July 24, 2019.

All necessary briefing of the pending motions has concluded,[4] leaving them ripe for resolution.

---

[4] Because the Court is not granting Judicial Watch's and Fitton's request for attorney's fees and costs at this time, the Court does not need to lift the stay of the deadline for Klayman's response to their motion. *See* Min. Order of Apr. 26, 2019.

## II. LEGAL STANDARD

### A. Motion for Reconsideration of Final Judgment

Pursuant to Federal Rule of Civil Procedure 60(b), a district court is permitted to "relieve a party or its legal representative from a final judgment, order, or proceeding" on one of six enumerated grounds, including, for example, "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)-(6). The party moving under Rule 60(b) bears the burden of proving entitlement to that relief. *Norris v. Salazar*, 277 F.R.D. 22, 25 (D.D.C. 2011) (citing, e.g., *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383-84 (1992)). "The decision to grant or deny a rule 60(b) motion is committed to the discretion of the District Court." *Kareem v. FDIC*, 811 F. Supp. 2d 279, 282 (D.D.C. 2011) (quoting *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993)) (internal quotation marks omitted), *aff'd*, 482 F. App'x 594 (D.C. Cir. 2012) (per curiam); *see also Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006) (applying abuse of discretion standard to review of such a motion).

### B. Motion for Voluntary Recusal or Disqualification

#### 1. <u>Motion Pursuant to Section 455(a)</u>

Klayman moves to recuse this Court pursuant to 28 U.S.C. § 455(a), which requires a federal judge to recuse herself "in any proceeding in which [her] impartiality might reasonably be questioned." "[T]o be disqualifying, the appearance of bias or prejudice must stem from an extrajudicial source." *United States v. Barry*, 961 F.2d 260, 263 (D.C. Cir. 1992). Under the well-recognized "'objective' standard" in this Circuit, "[r]ecusal is required when 'a reasonable and informed observer would question the judge's impartiality.'" *SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001) (en banc) (per curiam), *cert. denied*, 534 U.S. 952 (2001)). "This standard

requires that [the Court] take the perspective of a fully informed third-party observer who 'understand[s] all the relevant facts' and has 'examined the record and the law.'" *United States v. Cordova*, 806 F.3d 1085, 1092 (D.C. Cir. 2015) (quoting *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008)) (second alteration in original). As a result, "bald allegations of bias or prejudice" do not suffice. *Karim-Panahi v. U.S. Cong., Senate & House of Representatives*, 105 F. App'x 270, 275 (D.C. Cir. 2004) (per curiam).

In the context of Section 455(a), "unfavorable judicial rulings alone almost never constitute a valid basis for reassignment." *United States v. Hite*, 769 F.3d 1154, 1172 (D.C. Cir. 2014); *see also United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) (per curiam) ("That a judge commits error, of course, is by itself hardly a basis for imputing bias or even the appearance of partiality."). As the Supreme Court has observed, judicial rulings by themselves "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Therefore, dissatisfaction with a court's rulings "[a]lmost invariably" provides "proper grounds for appeal, *not* for recusal." *Id.* (emphasis added). In addition, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Consequently, courts in this Circuit have routinely held that a claim of bias predicated on a court's rulings does not, standing alone, warrant recusal. *See, e.g., Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1301 (D.C. Cir. 1988) (finding that because plaintiff's motions to recuse "were based entirely upon the district court's discovery rulings in this case, their denial was clearly proper"), *cert. denied*, 488 U.S. 825 (1988); *Cotton v. Washington*

*Metro. Area Transit Auth.*, 264 F. Supp. 2d 39, 42 (D.D.C. 2003) (determining that claim of bias based on court's discovery rulings did not warrant recusal).

The Court of Appeals recognizes the trial court's discretion in handling Section 455(a) motions. *See Loving Spirit Found. Inc.*, 392 F.3d at 493 (applying abuse of discretion standard).

2. Motion Pursuant to Section 144

Under Section 144, a litigant must submit, along with its motion, an affidavit stating "the facts and the reasons for [its] belief that bias or prejudice exists." 28 U.S.C. § 144. Upon the filing of a "timely and sufficient affidavit," Section 144 mandates that the assigned "judge shall proceed no further" in the case, "but another judge shall be assigned to hear such proceeding." *Id.*; *see also Bhd. of Locomotive Firemen and Enginemen v. Bangor & Aroostook R.R. Co.*, 380 F.2d 570, 576 (D.C. Cir. 1967) ("The disqualification statute, 28 U.S.C. Sec. 144, is mandatory and automatic, requiring only a timely and sufficient affidavit alleging personal bias or prejudice of the judge."). Importantly, "the mere fact that a party has filed a § 144 motion, accompanied by the requisite affidavit and certificate of counsel, does not automatically result in the challenged judge's disqualification." *Robertson v. Cartinhour*, 691 F. Supp. 2d 65, 77 (D.D.C. 2010); *see also United States v. Miller*, 355 F. Supp. 2d 404, 405 (D.D.C. 2005) ("[D]isqualification is not automatic upon submission of affidavit and certificate . . . .").

The question of whether the motion and supporting affidavit are both timely and legally sufficient is for this Court to determine in the first instance. *United States v. Haldeman*, 559 F.2d 31, 131 (D.C. Cir. 1976) ("It is well settled that the involved judge has the prerogative, if indeed not the duty, of passing on the legal sufficiency of a Section 144 challenge."), *cert. denied sub nom. Mitchell v. United States*, 431 U.S. 933 (1977); *see also United States v. Heldt*, 668 F.2d 1238, 1272 n.69 (D.C. Cir. 1981) (noting that "under section 144 . . . the transfer to another judge for

decision is 'at most permissive'" (quoting *Haldeman*, 559 F.2d at 131)). First, with respect to the timeliness of the motion, Section 144 is itself silent as to "what the timeliness requirement means where, as in this case, the recusal motion rests on events occurring after proceedings began." *Loving Spirit Found. Inc.*, 392 F.3d at 492. " In such circumstances, some courts have required the affidavit to be filed 'at the earliest moment.'" *Id.* (quoting *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993); *James v. District of Columbia*, 191 F. Supp. 2d 44, 47 (D.D.C. 2002) (quoting *Sykes*, 7 F.3d at 1339)). As the D.C. Circuit has made clear, the timeliness requirement is "[c]rucial to the integrity of the judicial process," as it "ensures that a party may not wait and decide whether to file based on 'whether he likes subsequent treatment that he receives.'" *Id.* (quoting *In re United Shoe Mach. Corp.*, 276 F.2d 77, 79 (1st Cir. 1960)).

Second, in determining whether the affidavit sets forth a legally sufficient basis for disqualification, the Court "must accept the affidavit's factual allegations as true even if the judge knows them to be false." *Loving Spirit Found. Inc.*, 392 F.3d at 496 (citing *Berger v. United States*, 255 U.S. 22, 35-36 (1921)); *see also United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) ("[W]hen presented with an application and affidavit such as this one, a Court may not pass upon the truth or falsity of the allegations, but must accept them as true for the purpose of determining the legal sufficiency of the affidavit."). However, the affidavit "must state facts as opposed to conclusions, and while the information and belief of the affiant as to the truth of the allegations are sufficient, mere rumors and gossip are not enough." *Hanrahan*, 248 F. Supp. at 474 (citations omitted). "The identifying facts of time, place, persons, occasion and circumstances must be set forth, with at least that degree of particularity one would expect to find in a bill of particulars." *Id.* (citations omitted). Importantly, given the requirement that the Court accept the facts stated in the affidavit as true, the statute mandates that "the attorney presenting the motion . . .

7

sign a certificate stating that both the motion and declaration are made in good faith." *Loving Spirit Found. Inc.*, 392 F.3d at 496; *see* 28 U.S.C. § 144 (requiring that the affidavit "be accompanied by a certificate of counsel of record stating that it is made in good faith"). The certification requirement is key to the integrity of the recusal process and "guard[s] against the removal of an unbiased judge through the filing of a false affidavit." *Loving Spirit Found. Inc.*, 392 F.3d at 496.

Once it is established that the affidavit has been properly certified by counsel of record and that the facts set forth therein have been stated with sufficient particularity, the Court must then

> ascertain[] whether these facts would fairly convince a sane and reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute. It is well established that the facts must give fair support to the charge of a bent mind that may prevent or impede impartiality. The basis of the disqualification is that personal bias or prejudice exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. The factual allegations must establish by more than a prima facie case, but not beyond a reasonable doubt that the mind of the judge is closed to justice; that the judge has a personal bias or prejudice against the affiant which is of such a nature, and of such intensity, that it would render the judge unable to give the affiant the fair trial to which every litigant is entitled. Obviously, such a showing could rarely be made.

*Hanrahan*, 248 F. Supp. at 475-76 (citations and internal quotation marks omitted). "Importantly, to be disqualifying, the alleged bias usually 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Robertson*, 691 F. Supp. 2d at 78 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); citing *Liteky*, 510 U.S. at 554).

Because the Court of Appeals has not determined whether to apply an abuse of discretion or de novo standard of review to the denial of a Section 144 motion, this Court shall conservatively assume, arguendo, that such a motion should be handled in the first instance as a matter of law. *See United States v. Williamson*, 903 F.3d 124, 137 (D.C. Cir. 2018) (citing *Loving Spirit Found. Inc.*,

8

392 F.3d at 492).

***

The Court's substantive considerations pursuant to both recusal provisions are largely the same. *See, e.g.*, *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) ("The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is the same: '[W]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" (quoting *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986))); *Liberty Lobby, Inc.*, 838 F.2d at 1301 ("It is well settled that a motion for recusal under 28 U.S.C. § 144 or § 455, must be based upon prejudice from an extra-judicial source." (citation omitted)); *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1019 (5th Cir. 1981) (finding the substantive standards to be "quite similar, if not identical"), *cert. denied*, 456 U.S. 960 (1982). To the extent the standards under the sections differ, it is that Section 144 requires proof of "*actual bias*" whereas Section 455(a) requires only "the reasonable appearance of bias." *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004); *cf. Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987) (recognizing that, while Section 455(a) provides "broader grounds for disqualification than . . . § 144," "[w]hen, as here, a party has not alleged any grounds for recusal other than those relating to the district court's alleged bias or prejudice, those broader grounds are not implicated"). Accordingly, a failure to show an appearance of bias under Section 455(a) invariably results in a failure to show actual bias under Section 144.

**C. Motion for Sanctions**

Of the potential authorities for sanctions, only the Court's inherent authority is invoked by Klayman. Klayman's Sanctions Mot. at 1-2; Klayman's Sanctions Reply at 2-3.[5] The Court has the discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186-87 (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)) (internal quotation marks omitted). One such abuse arises from litigation tactics taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)) (internal quotation marks omitted).

"'[N]egligent, even sloppy, performance by the defense counsel,' is insufficient" to warrant an exercise of the Court's inherent authority to sanction abusive litigation conduct. *Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 987 F. Supp. 2d 1, 4 (D.D.C. 2013) (citing *United States v. Wallace*, 964 F.2d 1214, 1215 (D.C. Cir. 2013)) (making this observation with respect to monetary sanctions). Rather, the movant must make a "clear and convincing showing" that the offending party acted with "subjective bad faith." *Id.* (citing *Wallace*, 964 F.2d at 1219) (monetary sanctions context); *see also Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1476-77 (D.C. Cir. 1995) (articulating standard of proof). The Court considers whether to exercise its inherent authority with the "restraint" appropriate to strong powers "shielded from direct democratic controls." *Shepherd*, 62 F.3d at 1475 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980); citing *Chambers*, 501 U.S. at 44) (internal quotation marks omitted).

---

[5] Although Judicial Watch and Fitton refer to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, Klayman does not mention those grounds for sanctions either in his opening brief or in his reply. But even if they could be appropriate here, "their availability does not preclude the court from exercising its inherent power." *Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 987 F. Supp. 2d 1, 4 (D.D.C. 2013) (citing *Chambers*, 501 U.S. at 46-47). Accordingly, the Court does not address the availability of sanctions under those authorities.

## III. DISCUSSION

### A. Motion for Reconsideration

Of all the issues that the Court addressed in its March 18, 2019, decision, Klayman now challenges only a subset. The Court shall categorize Klayman's arguments according to the pertinent counterclaims. Separate treatment is reserved for Klayman's argument that the Court is biased and prejudiced, which is not tied to a specific counterclaim.

1. Counterclaim for Trademark Infringement

Klayman asserts that the Court erred in the way it handled his arguments about Friends of Larry Klayman ("FOLK") and Freedom Watch. Klayman's Recons. & Recusal Mot. at 2-3. But he simply recycles arguments that the Court has previously considered and rejected. *See Klayman*, Civil Action No. 06-670, 2019 WL 1244079, at *7, *9.

Next, Klayman revisits his argument that there was insufficient evidence of any likelihood of confusion to support a $750,000 jury award for trademark infringement. Klayman's Recons. & Recusal Mot. at 3-5. This issue is bundled with his challenge to the Court's handling of evidence authentication. *Id.* at 5-6. The Court previously addressed both issues, and Klayman fails to show that the Court erred or that relief is otherwise warranted. *See Klayman*, Civil Action No. 06-670, 2019 WL 1244079, at *7-*8, *10. Only one point he now raises warrants attention. It was not error for the Court to credit evidence that the jury could have relied upon. *Id.* at *8 (identifying "sufficient evidence for the jury to find that [various] factors [of a likelihood of confusion test] were satisfied"). Klayman seems to prefer that the Court would have instead made its own, post-hoc findings of fact. *See* Klayman's Recons. & Recusal Mot. at 5 (calling for "actual inquiry into the basis behind the jury returning an award of $750,000" (emphasis omitted)). But that was not the Court's role in evaluating the sufficiency of the jury verdict. *See Ortiz v. Jordan*, 562 U.S. 180, 189 (2011) (recognizing function of Federal Rule of Civil Procedure 50).

As for nominative fair use, Klayman points to one piece of evidence—the name of his "Saving Judicial Watch" campaign—to purportedly show that the standard for this defense is satisfied. Klayman's Recons. & Recusal Mot. at 6-8. The Court already addressed his nominative fair use defense, however, and his argument now does not disturb its decision. *See Klayman*, Civil Action No. 06-670, 2019 WL 1244079, at *8-*9.

### 2. Counterclaims for Disparagement of Judicial Watch and Fitton

Klayman maintains that the Court should have instructed the jury regarding a fair comment defense to a disparagement claim, and that the Court erred in relying upon a distinction between tort law and contract law. Klayman's Recons. & Recusal Mot. at 8-9. The Court has considered some form of this argument three times and found it lacking on each occasion. *See Klayman*, Civil Action No. 06-670, 2019 WL 1244079, at *11; Order (Mar. 12, 2018), ECF No. 541; Order (Mar. 9, 2018), ECF No. 528. Klayman does not raise any new authority to suggest that the Court handled it incorrectly.

### 3. Counterclaim for Improper Access to or Use of Judicial Watch Information

In defense of Klayman's use of certain donor and/or client information, he argues that this information belonged to American Target Advertising rather than to Judicial Watch. Klayman's Recons. & Recusal Mot. at 9-11. This argument was addressed and rejected previously. *See Klayman*, Civil Action No. 06-670, 2019 WL 1244079, at *13. Klayman's argument about the activities of his Senate campaign and/or FOLK does not undermine the Court's conclusion that the jury had "sufficient evidence . . . to find that Klayman [himself] breached his obligations under the Confidential Severance Agreement." *Id.*

4. Alleged Bias and Prejudice of the Court

Klayman objects to the Court's handling of certain material that the parties proposed to use for impeachment, namely decisions by the Ninth Circuit and a Florida judgment. Klayman's Recons. & Recusal Mot. at 9-11. But the Court previously considered and rejected the argument that this treatment demonstrated bias or undue prejudice. *See Klayman*, Civil Action No. 06-670, 2019 WL 1244079, at *15-*17. Nothing warrants revisiting this issue now.

**B. Renewed Motion for Voluntary Recusal or Disqualification[6]**

This is the fourth time in ten years that Klayman has sought the undersigned's voluntary recusal and/or disqualification from this case. *See* Klayman's Recons. & Recusal Mot. at 12-14; *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98 (D.D.C. 2009) ("*Klayman First Recusal Opinion*"); *Klayman v. Judicial Watch, Inc.*, 744 F. Supp. 2d 264 (D.D.C. 2010) ("*Klayman Second Recusal Opinion*"); *Klayman v. Judicial Watch, Inc.*, 278 F. Supp. 3d 252 (D.D.C. 2017) ("*Klayman Third Recusal Opinion*"). The putative basis for the latest attempt is the Court's March 18, 2019, decision denying Klayman's post-trial motions. Klayman maintains that, "as set forth" in his Motion for Reconsideration, the Court's decision "blatantly ignores the facts and the law due to [the undersigned's] personal animus and extrajudicial bias and prejudice against Mr. Klayman." Klayman's Recons. & Recusal Mot. at 12.

Klayman simply cross-references and/or reiterates his arguments in the Motion for Reconsideration. Klayman's Recons. & Recusal Mot. at 12, 14; Aff. of Larry Klayman in Supp.

---

[6] Although ordinarily the Court would address a motion for voluntary recusal or disqualification before addressing a substantive motion such as the Motion for Reconsideration, the Court does so in reverse order here for two reasons. First, this is the order in which Klayman presents the motions in his brief. Second, the Court's consideration of the Motion for Reconsideration is necessary to inform its consideration of the grounds for the Renewed Motion for Voluntary Recusal or Disqualification, which is expressly premised on the issues raised in the Motion for Reconsideration.

13

of Pl.'s Mot. to Recuse/Disqualify Judge Colleen Kollar-Kotelly Under 28 U.S.C. § 144, ECF No. 587-1 ("Klayman Aff."), ¶ 8. Maintaining that the undersigned committed "grave errors" by failing to abide by the "relevant law and facts . . . that refuted [the undersigned's] legal reasoning," Klayman furnishes the following purportedly non-exhaustive list of examples:

> a. Failing to go back and look at the damages found by the jury on Judicial Watch's trademark infringement claim and determine how much of the award was due to Mr. Klayman's personal actions, if any.
>
> b. Failing to apply the law and facts presented that demonstrated that minimal levels of confusion are insufficient to sustain a claim for trademark infringement
>
> c. Failing to consider and apply the law and facts regarding my nominative fair use argument.
>
> d. Failing to address my arguments regarding its refusal to give a fair comment jury instruction with regard to Judicial Watch's counterclaims on the non-disparagement provision of the Severance Agreement.
>
> e. Failing to address the fact that at Judicial Watch did not own any of the donor or client lists or client data at issue.
>
> f. Only allowing Judicial Watch to present impeachment evidence, while denying me the same right, as well as other matters set forth in the accompany motion for reconsideration, which facts and law are incorporated herein by reference.

*Id.* ¶¶ 6, 8.

The Court finds that Klayman's Motion for Voluntary Recusal or Disqualification lacks merit under either the Section 455(a) or 144 standards. Perhaps even more than Klayman's prior attempts, this one is transparently attributable to "his displeasure with the substance of the Court's rulings against him." *Klayman First Recusal Opinion*, 628 F. Supp. 2d at 101. And just as the case law previously maintained, so it remains "clear . . . that 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" *Id.* (quoting *Liteky*, 510 U.S. at 555). These rulings do not evidence any extrajudicial bias or prejudice and are therefore insufficient to support a motion for recusal under Sections 455(a) or 144. *See, e.g.*, *Simon v. U.S. Dep't of Justice*,

No. 16-5031, 2016 WL 3545484, at *1 (D.C. Cir. June 10, 2016) (per curiam) (citing both sections in affirming denial of motion for disqualification because appellant had "not alleged any basis for finding that the district judge had any personal bias against him, or that the judge's impartiality could reasonably be questioned"), *cert. denied*, 137 S. Ct. 593 (2016) (Mem.). "[I]f disqualification were required 'merely as a result of counsel's disagreement with judicial conclusions reached in the course of litigation, the judicial system would grind to a halt.'" *Loving Spirit Found. Inc.*, 392 F.3d at 494 (quoting *Barnett v. City of Chicago*, 952 F. Supp. 1265, 1269 (N.D. Ill. 1997)); *see also Karim-Panahi*, 105 F. App'x at 274-75 (indicating that, where plaintiff has failed to point "to anything that would suggest that [the Court] has formed an opinion on some basis other than her participation in this case," recusal is inappropriate).

Moreover, the Court again observes that Klayman's Motion for Voluntary Recusal or Disqualification is likely "technically deficient" under 28 U.S.C. § 144 for a number of reasons. *Klayman Third Recusal Opinion*, 278 F. Supp. 3d at 264. In his affidavit, Klayman frequently reiterates that the undersigned's March 18, 2019, decision demonstrates "continued extrajudicial animus and bias against [him]." Klayman Aff. ¶ 5; *see also id.* ¶¶ 3, 7, 9, 10 (making similar allegations). "Such assertions are not 'facts' for purposes of [S]ection 144, and do not meet the requirement that 'facts' be submitted in support of a motion pursuant to [S]ection 144." *Klayman Third Recusal Opinion*, 278 F. Supp. 3d at 264 (citing *Hanrahan*, 248 F. Supp. at 474). That said, Klayman does allege the aforementioned list of specific issues with the Court's resolution of his post-trial motions, which might be considered "facts" for Section 144 purposes. Even if so, the affidavit may not be timely either, as Klayman filed it nearly four weeks after the Court issued its March 18, 2019, decision. As the Court has previously discussed, Circuit precedent suggests that a few as two weeks may be too slow for a Section 144 motion, for which timeliness is critical.

15

*Klayman Third Recusal Opinion*, 278 F. Supp. 3d at 264 (citing *Loving Spirit Found.*, 392 F.3d at 492 (doubts about two weeks' delay); *Sykes*, 7 F.3d at 1339 (two months is tardy)). The affidavit also runs into other problems that the Court has explored before. *See id.* at 264 n.4 (discussing *pro se* filing of motion for disqualification, and the repeated filing of Section 144 affidavits in a single case). Lastly, Klayman fails to certify that his affidavit is submitted in "good faith." 28 U.S.C. § 144.

Klayman also briefly incorporates by reference his prior grounds for seeking recusal. Klayman Aff. ¶ 9. To the extent Klayman raises these issues again, the Court does not deviate from its lengthy written rulings on these matters. These rulings are fully incorporated into and form part of this Memorandum Opinion. *See Klayman First Recusal Opinion*, 628 F. Supp. 2d 98; *Klayman Second Recusal Opinion*, 744 F. Supp. 2d 264; *Klayman Third Recusal Opinion*, 278 F. Supp. 3d 252.

Under Section 455(a), the Court finds that Klayman has not established the appearance of bias or extrajudicial prejudice, and accordingly he has not shown actual bias under Section 144 either. Accordingly, in an exercise of its discretion, the Court need not, and should not, voluntarily recuse or disqualify itself under either Section 455(a) or Section 144.

### C. Motion for Sanctions

Lastly, Klayman requests that the Court sanction Judicial Watch and Fitton for their characterization of his arguments in their opposition to his Motion for Reconsideration.[7] This motion was filed on May 16, 2019, ten days after Klayman's reply to Judicial Watch's and Fitton's

---

[7] Although Klayman observes that Judicial Watch's and Fitton's opposition brief also responded to his Renewed Motion for Voluntary Recusal or Disqualification, his arguments appear to focus on their opposition to his Motion for Reconsideration.

16

opposition was due—but was not submitted. This appears to be a belated attempt to respond to Judicial Watch's and Fitton's arguments. *See* Klayman's Sanctions Reply at 8 (asking that the Court "now carefully read and digest Plaintiff's memorandum of points and authorities in support of his motion for judgment as a matter of law, for a new trial, or in the alternative, for remittitur of the jury verdict [Dkt. # 571] and make a determination based on the arguments presented and the applicable legal standards and law," and then requesting sanctions for Judicial Watch's and Fitton's alleged mischaracterizations).[8]

The Court is not persuaded that Judicial Watch and Fitton have mischaracterized the arguments in his opening brief in any material way. It is true that Klayman's brief generally consists of recycled issues and arguments; to the extent it includes new reasoning, that reasoning is not materially different from what the Court already has considered and addressed in its March 18, 2019, decision. The Court need not parse Judicial Watch's and Fitton's opposition brief to decide whether it agrees with their characterization of each of Klayman's arguments, because even if the Court did not, Klayman has not shown that their arguments were made in "subjective bad faith." *Priority One Servs., Inc.*, 987 F. Supp. 2d at 4 (citing *United States v. Wallace*, 964 F.2d at 1219).

Klayman's Motion for Sanctions also raises the document production issue that the Court squarely addressed and rejected in its March 18, 2019, decision. *See Klayman*, Civil Action No. 06-670, 2019 WL 1244079, at *21-*22. The Court incorporates that reasoning here.

Klayman's reply in support of his Motion for Sanctions effectively tries to reargue various issues that are included—or could have been included—in his Motion for Reconsideration and/or

---

[8] For the avoidance of doubt, the Court makes clear that it very carefully reviewed Klayman's brief in support of his post-trial motions before the Court issued its March 18, 2019, decision.

Renewed Motion for Voluntary Recusal or Disqualification. Those arguments are too late and, in any event, lack merit for the reasons set forth in the Court's March 18, 2019, decision and the Court's other decisions culminating therein. *See generally Klayman*, Civil Action No. 06-670, 2019 WL 1244079. To the extent necessary, the Court incorporates that reasoning here.

### D. Further Proceedings

Now that the Court has denied Klayman's Motion for Reconsideration and Renewed Motion for Voluntary Recusal or Disqualification, the Court shall **LIFT THE STAY** on the Clerk's issuance of the requested Writs of Attachment on a Judgment. *See* Min. Order of July 24, 2019.

The Court also **RESOLVES** Judicial Watch's and Fitton's [585] Motion for Attorney Fees and Costs by extending time until after any timely appeal has concluded and the mandate from any such appeal has been issued. By doing so, the Court preserves Judicial Watch's and Fitton's right to pursue fees and costs if appropriate after any such appeal. Resolving the present motion in this way ensures that the Court would have a more complete record on which to decide any appropriate fees and costs. Moreover, any future motion after appeal presumably would factor in the fees and costs associated with motions practice that followed the filing of Judicial Watch's and Fitton's [585] Motion for Attorney Fees and Costs and predates this decision.

### IV. CONCLUSION

For the foregoing reasons, in an exercise of its discretion the Court shall **DENY** Klayman's [587] Motion for Reconsideration of the Court's Order Denying Motion for Judgment Notwithstanding the Verdict; **DENY** Klayman's [587] Renewed Motion for Voluntary Recusal or Disqualification; **DENY** Klayman's [592] Motion for Sanctions; **RESOLVE** Judicial Watch's and Fitton's [585] Motion for Attorney Fees and Costs; **LIFT THE STAY** on Judicial Watch's [595]

18

Writ of Attachment on a Judgment; and **LIFT THE STAY** on Fitton's [596] Writ of Attachment on a Judgment.

An appropriate Order accompanies this Memorandum Opinion.

Dated: August 7, 2019

                                                /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge