**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARRY KLAYMAN,<br><br>          Plaintiff,<br>     v.<br><br>JUDICIAL WATCH, INC.,<br><br>          Defendant. | Civil Action No. 1:06-cv-00670 |

**PLAINTIFF'S MOTION TO STAY ENFORCEMENT OF JUDGMENT PENDING
APPEAL WITHOUT BOND**

Plaintiff Larry Klayman ("Mr. Klayman") hereby moves this Court for an order, as a matter of fundamental fairness and in good faith, staying enforcement of Defendants' judgment until Mr. Klayman has had an opportunity to have his appeal heard before the U.S. Court of Appeals for the District of Columbia Circuit. Mr. Klayman further respectfully requests that this Court expeditiously issue the order staying enforcement without requiring Mr. Klayman to post bond, for the compelling reasons set forth below.

It is indisputable that a District Court has the authority to exercise its discretion where it considers appropriate to order a stay of enforcement of judgment without requiring the posting of a supersedeas bond. "[W]e find more persuasive the contrary view that Rule 62(d) only operates to provide that an appellant in all cases may obtain a stay as a matter of right by filing a supersedeas bond, and does not prohibit the district court from exercising a sound discretion to authorize unsecured stays in cases it considers appropriate." *Fed. Prescription Serv. v. Am. Pharm. Ass'n*, 205 U.S. App. D.C. 47, 636 F.2d 755, 757-58 (1980). The Court must respectfully

exercise this discretion to insure that Mr. Klayman is not prejudiced any more than he has already been from the very outset of this litigation.

There is a very highly likelihood that the jury verdict and judgment will be reversed in whole or in part on appeal, which would obviously eliminate or at least reduce the prohibitive jury verdict financial awards and therefore also remove any need for bond. This is based on the errors and resulting severe prejudice as set forth below and in prior pleadings during and after trial that have directly resulted in the jury verdict and judgment against Mr. Klayman.

One of the main principal errors resulted from the extreme prejudice from false testimony of the Defendants against Mr. Klayman. The Court allowed the jury to hear highly prejudicial testimony that lacked relevance to Defendants/Counterclaimants' counterclaims or Plaintiff's claims in chief; namely testimony that Plaintiff had in effect sexually harassed a Judicial Watch office manager and physically assaulted his ex-wife. This highly prejudicial testimony obviously turned the jury against Plaintiff. And what is most remarkable is that the subject Severance Agreement itself admits, based on the signed agreement of Judicial Watch president Tom Fitton and another Judicial Watch director Paul Orfanedes, that Plaintiff voluntarily left Judicial Watch on September 19, 2003, "to pursue other endeavors." The Severance Agreement also praises Mr. Klayman's time at Judicial Watch as its founder, general counsel and chairman – hardly praise which would be given to a sexual harasser and a wife abuser – and clearly states:

> Judicial Watch announced today that Larry Klayman has stepped down as Chairman and General Counsel of Judicial Watch, to pursue other endeavors. Tom Fitton, who is President of Judicial Watch, said: "Larry conceived, founded and helped build Judicial Watch to the organization it is today, and we will miss his day to day involvement. Judicial Watch now has a very strong presence and has become the leading non-partisan, public interest watchdog seeking to promote and ensure ethics in government, and Larry leaves us well positioned to continue our important work. Judicial Watch agrees that Klayman shall be permitted to use, publish and otherwise disseminate to third parties the following additional statement of Judicial Watch: "Larry was the creator and founder of Judicial

Watch, and helped build it to be a stable, successful and widely respected organization. We thank him for his service." Klayman agrees that Judicial Watch shall be permitted to use, publish and otherwise disseminate to third parties the following statement of Klayman: "I have left Watch in good hands and will continue to support it, and I hope you will too." The Parties agree that they will limit any statements to third parties regarding Klayman's leaving Judicial Watch to be consistent with the Press Release and statements contained in his paragraph, except as may be required by law.

Yet, the Court erroneously allowed false testimony that Mr. Klayman had been ousted from Judicial Watch because he had abused his wife and committed sexual harassment. Even if these allegations were remotely true – they are not – they had absolutely no bearing on Judicial Watch's counterclaims or defenses. They were introduced for the sole purpose of poisoning the jury against Mr. Klayman.

This was an improper and unethical attempt by Defendants/Counterclaimants to use the backdoor to introduce inadmissible and improper character and other evidence, and it completely disregarded the rationale behind Federal Rule of Evidence 403's balancing test. Regrettably, this Court permitted this in large part, allegedly as a result of its bias and prejudice towards Plaintiff.

In this regard, in addition to the testimony being highly prejudicial and of no probative value, it was also irrelevant. The fact is that Plaintiff never sued on the issue of whether he was forced out because of a sexual harassment complaint or Defendants/Counterclaimants ousted him from Judicial Watch because of an alleged assault on his wife. It is a proven fact that after Plaintiff left Judicial Watch, he ran for the U.S. Senate. This is undisputed. Even Judicial Watch's Count V of the amended counterclaim only alleged that Plaintiff made false or misleading statements concerning the "nature, characteristics, qualities or geographic origin of Klayman and/or Klayman d/b/a Saving Judicial Watch's goods or services, as well as those of Judicial Watch." Similarly, Count VI alleged that "Klayman's false and/or misleading statements and representations are likely to cause the public and consumers to believe that Saving Judicial

Watch is associated with, affiliated with, and/or sponsored by Judicial Watch." Neither one of the counts addressed any alleged misrepresentation by Plaintiff about the reasons for his departure from Judicial Watch. They only concerned Plaintiff's and Saving Judicial Watch's goods and services and Plaintiff allegedly trying to associate himself with Judicial Watch.

Federal appellate courts have thrown out jury verdicts on this basis alone. For example, in *United States v. Hands*, 184 F.3d 1322 (11th Cir. 1999), the court stated that "few would doubt that evidence of violent spousal abuse" falls into a category of evidence "particularly likely to incite a jury to an irrational decision." *Id*. at 1328-29 (emphasis added). The alleged spousal abuse in Hands, inflicted by a defendant charged with drug-related offenses, was held to be unduly prejudicial and therefore inadmissible because of its "inflammatory nature" and tendency to produce "visceral reactions." *Id.* at 1329. The U.S. Court of Appeals for the Eleven Circuit reversed and remanded. *Id.* at 1335. The Hands court found that not only was the alleged abuse irrelevant but even if it were relevant, the "the evidence did not meet the balancing test set out in Federal Rule of Evidence 403." *Id.* at 1328. "[D]omestic violence evidence's prejudicial nature so heavily outweigh[s] its probative value that [a] district court should have excluded it." *United States v. Church*, 955 F.2d 688, 703 (11th Cir. 1992); *see also State v. Zamudio*, 57 Ore. App. 545, 645 P.2d 593, 596 (1982) ("The public stigma attached to a husband who beats his wife is significant. The inflammatory nature of such a characterization is arguably more substantial than the purchase of marijuana discussed in [another case]."). However, the Court still allowed for this extremely prejudicial testimony to be introduced. This likely to be reversed in whole or in part on appeal.

Another error, among many that have been previously set forth, that will likely be reversed in whole or in part on appeal was allowing counsel for Defendants to make

misstatements about the amount of "damages" suffered in order to confuse the jury into issuing a higher award. Mr. Steven Anderson testified (albeit without any evidentiary support) that Judicial Watch's donations went from $4.8 million in 2005 to $4.3 million in 2006 to $3.4 million in 2007. This would be a $500k drop in 2006 and a $900k drop in 2007. Even if these numbers were true – they are not – Mr. Driscoll falsely stated to the jury that Judicial Watch suffered a $1.4 million dollar drop in 2007. Mr. Driscoll attempted to "double dip" by re-claiming the "loss" suffered in 2006 in 2007 as well. The Court witnessed Mr. Driscoll misrepresentations to the jury and but then also refused to remit the jury verdict in an appropriate amount when it was pointed out in Mr. Klayman's post-judgment pleadings. This too is likely to be reversed in whole or in part on appeal.

These are just a few of the numerous errors which infected the jury verdict and now judgment. It is because of the alleged bias and prejudice by the Court toward Mr. Klayman that was forced to move to disqualify this Court on three occasions, as it became ever more evident that as this case continued, he would not be given a fair shake. Thus, at the very least, the Court can now exercise fairness by allowing Mr. Klayman his right to appeal the clear errors that were allegedly committed without having to post bond, which would ruin him financially.

Defendant Judicial Watch is extremely wealthy, with net assets reaching nearly $90,000,000.00 dollars as of 2017, and nearly $93,000,000.00 dollars as of 2018. They are likely to exceed $100,000.000.00 in 2020. The current unappealed judgment amount against Mr. Klayman would just be a "drop in the bucket" for them, and simply allowing Mr. Klayman to exercise his constitutional appellate rights without bond would have absolutely no impact on their ability to operate as normal, so there is absolutely no prejudice to Judicial Watch if the bond requirement is waived for the brief duration of the pending appeal. On the other hand, however,

Mr. Klayman simply cannot afford to post bond for a $2.8-million-dollar judgment that is likely to be reversed in whole or in part.

Forcing Mr. Klayman to even be subject to the $2,800,000.00 judgment against him at this time prior to having his day in the appellate court will cripple his ability to operate his law firm and his public interest group, and last but hardly least, severely harm his family

With regard to Defendants' calculated red herring argument that pending bar proceedings would potentially interfere with Mr. Klayman's ability to pay the judgment, it is clear that there have been no final findings against him, and there almost certainly will not be until at least three to five year down the line – well after any appeals in this matter have been disposed of. Thus, pending bar proceedings should have no impact on the issue at hand. As an aside, Plaintiff has continuously been a member in good standing of the District of Columbia Bar for 39 years .In any event, Mr. Klayman has other avenues of income that do not invoke his status as an attorney, so the bar proceedings are a non-issue.

Lastly, Mr. Klayman's ties to this jurisdiction remain strong, which should alleviate any concerns as a matter of fundamental fairness for this Court to forego the posting of a supersedeas bond under these circumstances.

WHEREFORE, for the foregoing compelling reasons and in good faith, Mr. Klayman respectfully requests that this Court expeditiously order a stay of enforcement of the jury verdict and judgment pending appeal, which will be filed by September 5, 2019, without requiring the posting of a supersedeas bond.

Dated: August 28, 2019                                Respectfully submitted,

                                                      */s/ Larry Klayman*

                                                      Larry Klayman, Esq.
                                                      2020 Pennsylvania Ave NW, #800
                                                      Washington, DC, 20006

Tel: 561-558-5336
Email: leklayman@gmail.com

*Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on August 28, 2019.

*/s/ Larry Klayman*