IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

                              Plaintiff,

                v.

JUDICIAL WATCH, INC.,

                              Defendant.

Civil Action No. 1:06-cv-00670

## INTERIM OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE MICHAEL HARVEY

Plaintiff Larry Klayman ("Mr. Klayman") hereby submits the following interim objections to the October 25, 2022, Report and Recommendation of Magistrate Judge G. Michael Harvey (the "Report and Recommendation"). ECF No. 657.

*First*, on November 3, 2022, Mr. Klayman had filed in person a Motion for Extension of Time seeking a very reasonable two-week extension of time to file objections to the Report and Recommendation, as Judge Kotelly has refused to allow Mr. Klayman the basic ability to file electronically in this case. The requested extension was due to Mr. Klayman having recently had to travel extensively for client matters, causing him to need additional time to respond in this critically important matter where the Defendants have dishonestly sought over $1.6 million dollars in fees and costs on top of a $2.8 million dollar fraudulently obtained judgment. However, because the Court has refused to allow Mr. Klayman the ability to even file electronically in this case. Mr. Klayman's motion for extension filed on November 3, 2022 was not docketed by the clerk until today, November 8, 2022 – five days later. This delay was created by the Court's refusal to allow for electronic filing, something that every other judge in this Court has permitted when Mr. Klayman is a pro se plaintiff. Mr. Klayman still seeks the two-

1

RECEIVED

NOV 0 8 2022

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

week extension of time to file final objections but is filing this interim response in an abundance of caution until the Court gets around to considering his motion for extension of time.

Thus, as an interim response Mr. Klayman hereby incorporates by reference his prior brief in this matter, Plaintiff's Renewed Motion To Transfer And To Recuse And/Or Disqualify Hon. Colleen Kollar-Kotelly And Opposition To Defendant Judicial Watch's Motion For Attorney Fees And Costs. ECF No. 642 and reserves the right to supplement under the circumstances. Exhibit 1.

*Second*, the fact that Magistrate Harvey recommended to cut the amount of attorneys fees sought by Defendants by nearly $1 million dollars – from $1,638357 to $682,265.30 – clearly shows that there was, at a minimum, attempted fraud committed by the Defendants' counsel, as he, with his clients complicity,  patently and intentionally  hyper-inflated their requested fees. A full evidentiary hearing is therefore still required in this matter to unearth and uncover the full extent of the Defendants' fraud with regard to the fees that they are seeking, and to address the attempted fraud on this Court and Plaintiff Klayman. The record will reflect, as has reflected, that during the underlying sixteen (16) year saga, that this is not the first time that Defendants and their counsel have made false statements to this Court, which of course fell on deaf years when they were presented to Judge Colleen Kollar-Kotelly, given her enmity and bias and prejudice toward Plaintiff Klayman. Indeed, it is well settled that the Court has power to set aside even a final judgment for fraud on the Court, much less an award of attorneys fees. "… [T]he Supreme Court recognized that courts have the power, rooted in equity, to set aside judgments that would be manifestly unconscionable to enforce." *P'ship Placements v. Landmark Ins. Co.*, 722 A.2d 837, 844 (D.C. 1998). "[A] court has inherent authority to reexamine and vacate judgments arrived at by fraud, and that one who corrupts the processes of government

"is fortunate if he loses no more than the rights he seeks to obtain." *Teleprompter Cable Sys., Inc. v. Fed. Commc'ns Com.*, 178 U.S. App. D.C. 66, 543 F.2d 1379, 1384 (1976).

Thus, Mr. Klayman respectfully requests that an independent Court issue an order setting a full evidentiary hearing before it makes any determination as to whether to adopt, whether in full or in part, the Report of Magistrate Harvey, as Judge Kotelly is clearly conflicted, as a March 17, 2022 complaint before the Judicial Counsel remains pending and is being supplemented.

Dated: November 8, 2022

Respectfully submitted,

Larry Klayman, Esq.
2020 Pennsylvania Ave NW, #800
Washington, DC, 20006
Tel: 561-558-5336
Email: leklayman@gmail.com

*Pro Se*

## CERTIFICATE OF SERVICE

I, Larry Klayman, hereby certify that on this day, November 8, 2022 a copy of the foregoing filed in person with the clerk of the Court and served via email to counsel of record at:

rdriscoll@driscollseltzer.com

Larry Klayman

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

LARRY KLAYMAN

              Plaintiff,

v.

JUDICIAL WATCH, INC.

              Defendants.

Civil Action No.: 06-cv-670

**PLAINTIFF'S RENEWED MOTION TO TRANSFER AND TO RECUSE AND/OR
DISQUALIFY HON. COLLEEN KOLLAR-KOTELLY AND OPPOSITION TO
DEFENDANT JUDICIAL WATCH'S MOTION FOR ATTORNEY FEES AND COSTS**

# **TABLE OF CONTENTS**

STATEMENT OF FACTS ................................................................................................ 1

    Facts Showing Why Recusal and/or Disqualification and/or Transfer is Absolutely
    Required ....................................................................................................................... 1

    Facts Pertaining to Defendants' Attorney's Fees Motion ................................. 10

THE LAW .................................................................................................................. 11

    Before This Case Proceeds Any Further, it Must be Transferred and Judge Kotelly
    Recused and/or Disqualified.................................................................................... 11

        Judge Kotelly's Repeated Highly Prejudicial and Inflammatory Statements
        Concerning Mr. Klayman Show Clear Extrajudicial Bias and Prejudice............. 14

        The Sanctions Orders Entered By The Court Were Overly Broad, Draconian,
        Intentionally Factually and Legally Grossly in Error,  and Too Severe and Show
        Extrajudicial Bias and Prejudice ........................................................................ 20

        The Court's Allowance of Highly Prejudicial, Inflammatory Statements Into
        Evidence Shows Extrajudicial Bias and Prejudice ................................................ 22

        The Court's Decision to Allow Unauthenticated "Evidence" in Favor of
        Defendants Shows Extrajudicial Bias and Prejudice............................................ 24

    Defendants' Motion for Attorneys Fees and Costs Must be Denied ................................ 25

        It Is Premature To Consider Defendants' Motion ................................................ 26

        A Full Evidentiary Hearing and Discovery Must be Granted Because The Amount
        of Fees Sought By Defendants Are Hyper Inflated if Not Fraudulent ................. 26

            The Defendants' Hourly Rate is Unreasonable ......................................... 28

            Defendants Improperly Seek Fees Outside the Scope of the Severance
            Agreement ....................................................................................................... 29

            Defendants' Affidavits Are Insufficient, Hyperinflated, and Likely
            Fraudulent ...................................................................................................... 30

CONCLUSION ........................................................................................................... 30

## TABLE OF AUTHORITIES

### STATUTES

Code of Conduct for United States Judges ....................................................................3, 6, 7, 15

28 U.S. Code § 453 ...............................................................................................................3, 7, 15

28 U.S.C. § 455 ..............................................................................................3, 4, 6, 12, 13, 14

28 U.S.C. § 144 ........................................................................................1, 2, 4, 6, 12, 13,  14

Federal Rules of Evidence Rule 901 ...................................................................................24

### CASES

*Bell v. Chandler*, 569 F.2d 556 (10th Cir. 1978) ..................................................................10, 31

*Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570 (D.C. 1967)..........................................................................................................13

*Bonds v. D.C.*, 93 F.3d 801 (D.C. Cir. 1996) ......................................................................21

*Founding Church of Scientology, Inc. v. Webster*, 802 F.2d 1448 (D.C. 1986) ............................21

*In re United States*, 158 F.3d 26 (1st Cir. 1998) ....................................................................13

*Jackson v. Microsoft Corp.*, 135 F. Supp. 2d 38 (D.D.C. 2001) ..........................................13

*Liteky v. United States*, 510 U.S. 540 (1994) .......................................................................12

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ....................................................................12

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 219 U.S. App. D.C. 94 (1982) .............26, 30

*Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995)......................................................................14

*Republic of Pan. v. American Tobacco Co.*, 217 F.3d 343 (5th Cir. 2000) ................................14

*Scott v. United States,* 559 A.2d 745 (D.C. 1989) ................................................................12

*State v. Miranda*, 407 P.3d 1033, 1042-43 ..........................................................................23

*State v. Zamudio*, 57 Or. App. 545 (1982) ..........................................................................23

*United States v. Blackwell*, 694 F.2d 1325  (D.C. Cir. 1982).................................................14

*United States v. Dandy*, 998 F.2d 1344 (6th Cir. 1993) .......................................................14

*United States v. Hands*, 184 F.3d 1322  (11th Cir. 1999). ....................................................23, 28

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001)...........................................13

*Ward v. City of Monroeville*, 409 U.S. 57 (1972) ................................................................12

*York v. United States*, 785 A.2d 651 (D.C. 2001) ................................................................12

**MEMORANDUM OF LAW**

Plaintiff Larry Klayman ("Mr. Klayman") hereby (1) renews his motion to transfer this case to another jurist and recuse and/or disqualify the Honorable Colleen Kollar-Kotelly ("Judge Kotelly") and (2) opposes Defendant Judicial Watch's Inc.'s Motion for Attorney Fees and Costs.

I.      **STATEMENT OF FACTS**

     A.      **Facts Showing Why Recusal and/or Disqualification and/or Transfer is Absolutely Required.**

Judge Kotelly has demonstrated a clear pattern and practice of bias and prejudice against Mr. Klayman that has directly resulted in the highly flawed jury verdict and judgment against Mr. Klayman in this case. This bias and prejudice were shown in not only clearly erroneous legal decisions and rulings, but also intentional acts meant to prejudice Mr. Klayman whenever possible. As just the latest example, Judge Kotelly is the only judge in this Court who will not even permit Mr. Klayman to file electronically in this case, for no other apparent reason than to vindictively make it more difficult and expensive for Mr. Klayman to file pleadings. This same basic courtesy and ability was granted by the Honorable Reggie Walton in *Klayman v. Porter et al*, 20-cv-3109, and the Honorable Christopher Cooper in *Klayman v. Rao et al*, 21-cv-2473. This is set forth in Mr. Klayman's affidavit under 28 U.S.C. § 144, Exhibit A, and which is set forth in full here:

       1.      I, Larry Klayman, hereby declare and attest that the following is true and correct and based on my personal knowledge and belief.

       2.      I am over the age of 18 and mentally and legally competent to make this affidavit, sworn under oath.

       3.      The Honorable Colleen Kollar-Kotelly ("Judge Kotelly") has engaged pattern and practice of making highly prejudicial statements and issuing severely prejudicial rulings and orders against me, which are so legally devoid of

rational, legal or ethical bases that  can only be explained by and evidence  a deep-seeded extrajudicial bias and animus against me.

4.      This pattern and practice is set forth in my prior motions to disqualify Judge Kotelly: the (1) February 2, 2009 Motion for Recusal and/or Disqualification, ECF No. 298, (2) February 26, 2010 Motion to Disqualify Judge, ECF No. 345, (3) August 9, 2017 Motion to Disqualify Judge, ECF No. 414, and April 12, 2019 Motion for Reconsideration of the Court's Order Denying Judgment Notwithstanding the Verdict and Renewed Motion for Voluntary Recusal or Disqualification, ECF No. 587, which are incorporated herein by reference, were completely warranted. These newest examples are just the "icing on the cake" and complete confirmation of decades of extrajudicial bias and prejudice towards me. Indeed, now, Judge Kotelly is not even attempting to hide her extrajudicial disdain and vindictiveness towards me, and has sought to harm me, my colleagues and my family throughout the unfortunate and unconscionable sixteen (16) saga of this case, as also set forth in prior pleadings, which are also incorporated herein by reference. *See* Plaintiff's Motion for Judgment As a Matter of Law, For a New Trial, or in the Alternative, for Remittitur of the Jury Verdict and Leave to Exceed Page Limit by One Page. ECF No. 571.

5.      This pattern and practice is ongoing, as recently, Judge Kotelly even denied me the basic ability to file electronically in this case, for no reason other than the further prejudice me and force me to expend my limited time and resources to file everything in hard copy with the clerk of the court.

6.      Judge Kotelly's order denying my motion for leave to file electronically was admittedly done at her "discretion." There was no rational basis for her to deny me this basic right. Judge Kotelly wrote "Plaintiff has demonstrated sufficient ability to file pleadings on the docket." This is not even reasoning. Of course, I can file using hard copies submitted to the clerk. So can anyone else. This is a not a basis to deny me  the courtesy and  ability to file electronically, or else no one would be allowed to file electronically, when I have been doing so for decades, as this Court knows full well.

7.      In contrast, other jurists of this Court, Judge Kotelly's colleagues, exercising their discretion in a non-prejudicial manner on this issue,   summarily granted me this courtesy ability to file electronically. This was routinely ordered by the Honorable Reggie Walton in *Klayman v. Porter et al*, 20-cv-3109 [Minute Order of February 9, 2022] and the Honorable Christopher Cooper in *Klayman v. Rao et al*, 21-cv-2473 [Minute Order of September 30, 2021] Exhibit 1.

8.      This completely arbitrary and capricious act by Judge Kotelly— made for absolutely no reason other than to prejudice and harm me—clearly stems from her vindictiveness towards me and is the textbook type of "extrajudicial bias and prejudice" that mandates disqualification. There is absolutely no reason why she would choose not to allow me this simple courtesy,

like her fellow jurists did without any issue, if she did not have some "axe to grind" with Mr. Klayman, as was set forth appropriately in the above-mentioned motions to disqualify, which were summary denied in violation of 28 U.S.C. § 144 and 28 U.S.C. § 455 as well as prior pleadings. ECF No. 298, ECF No. 345, ECF No. 414, ECF No. 587, ECF No. 571.

9.      Allowing me to e-file does not affect her in any way, nor does it make her role as a jurist any more difficult—if anything forcing me to continue to file papers in person only compounds the amount of work that needs to be done by courthouse employees to scan everything in and manually enter everything on the docket. And, without the ability to file electronically Judge Kotelly then is presented with a pdf document that is image only and not text-searchable, which would actually make her job more difficult—to the extent that she actually reads and considers what I file. In short, there is no rational basis for this petty and discriminatory conduct, other than a continuing deep seated animus against me.

10.      Judge Kotelly is well aware that every time that I need to file something in this case, I must spend hundreds of dollars to use a legal service to physically take the documents to the courthouse—even for a pleading that is but a few pages long. This is obviously her only motivation behind denying me the basic right to file electronically on this case, to harass me and run up costs.

11.      And there is even more recent evidence of extra-judicial bias and prejudice, confirming the prior extra-judicial bias and prejudice. By way of yet another egregious example is Judge Kotelly status as a Defendant in a case styled *Klayman v. Rao et al*, 21-5269 (D.C. Cir.) that is currently on appeal at the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), which as a matter of law and ethics does not allow her to continue to sit as a jurist on this case. Judge Kotelly therefore has a clear conflict of interest which prevents her from presiding over this case, as it involves the same subject matter as the *Rao* case. *See* Code of Conduct for United States Judges 3(C)(1)(a), which states that a judge may not preside over a case where "the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding"; *see also* Code of Conduct for United States Judges 2(A) ("A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.") Code of Conduct for United States Judges 1 ("An independent and honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved.") Judge Kotelly has also clearly violated 28 U.S. Code § 453 - Oaths of justices and judges:

Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I, ___ ___, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully

and impartially discharge and perform all the duties incumbent upon me as ___ under the Constitution and laws of the United States. So help me God.

12.    In contrast, the D.C. Circuit has followed ethics and the law and transferred and had assigned the *Rao* appeal to judges in other circuits, as it recognized the clear conflict of interest it would have in presiding over the appeal. Exhibit 2.

13.    In doing so, the D.C. Circuit wrote, "[t]he Chief Judge of the United States Court of Appeals for the District of Columbia Circuit has certified that there is a necessity for the designation and assignment of a judge from another circuit to perform judicial duties [in this case.]" Exhibit 2. Yet, Judge Kotelly has steadfastly refused to do so, further evidencing her deep-seated animus and bias against me. The only reason that Judge Kotelly would ignore the Code of Conduct for United States Judges, her oath of office as well as other legal and ethical provisions, is that she is intent on prejudicing and harming me as she continues to harbor a deep seated animus and exhibited rank extra-judicial prejudice against me.

14.    These new instances of extrajudicial bias and prejudice underscore and clearly expose further and confirm the numerous other highly prejudicial and biased actions from this Court previously, as set forth in my previous affidavits in support of recusal and/or disqualification. ECF No. 298, 345, 414, 587.

15.    Accordingly, Judge Kotelly must be disqualified under 28 U.S.C. § 144 and 28 U.S.C. § 455, and vacate all prior orders which she has entered, including the final judgment in this case, and related orders, as she has been exposed once again, now without even a reasonable doubt, for her extra-judicial bias and prejudice against me, all intended not just to harm me but also my colleagues and family, as previously briefed and set forth on the over sixteen year old record of this case, which makes a mockery of the judicial system.

     I hereby swear under oath and penalty of perjury that the foregoing facts are true and correct to the best of my knowledge and belief.

                          Larry Klayman

As set forth in Mr. Klayman's sworn affidavit, for no reason other than extra-judicial personal animus and bias, Mr. Klayman has been denied even this, using completely baseless and irrational reasoning that "Plaintiff has demonstrated sufficient ability to file pleadings on the docket." This is not even reasoning, much less rational in any way. Of course, Mr. Klayman can file using hard copies submitted to the clerk. So can anyone else. This is a not a basis to deny

the courtesy and ability to file electronically, or else no one would be allowed to file electronically. This just further and conclusively demonstrates the deep extra-judicial personal animus and bias against Mr. Klayman held by this Court that makes fair adjudication impossible.

This completely arbitrary and capricious decision by Judge Kotelly—made for absolutely no reason other than to prejudice and harm Mr. Klayman—clearly stems from her vindictiveness towards Mr. Klayman and is the textbook type of "extrajudicial bias and prejudice" that mandates recusal and/or disqualification  There is absolutely no reason why she would choose not to allow Mr. Klayman this simple courtesy, like her fellow jurists did without any issue, if she did not have some "axe to grind" with Mr. Klayman, as she is well aware that otherwise  he needs to file something in this case, he must spend hundreds of dollars to use a legal service to physically take the documents to the courthouse—even for a pleading that is but a few pages long. Allowing Mr. Klayman to e-file does not affect her in any way, nor does it make her job any more difficult—if anything forcing him to continue to file papers in person only compounds the amount of work that needs to be done by courthouse employees to scan everything in and manually enter everything on the docket.  And, without the ability to file electronically Judge Kotelly then is presented with a pdf document that is image only and not text-searchable, which would actually make her job more difficult—to the extent that she actually reads and considers what Mr. Klayman files.

Tellingly, Judge Kotelly's order denying Mr. Klayman's motion for leave to file electronically, Exhibit A-1, was admittedly done at her "discretion." As set forth above, there was no actual basis for her to deny this, and Judge Kotelly's abuse of her "discretion" is simply to further punish Mr. Klayman for appearing in her Court. This decision simply proves that Mr. Klayman's prior motions to disqualify Judge Kotelly: the (1) February 2, 2009 Motion for

Recusal and/or Disqualification, ECF No. 298, (2) February 26, 2010 Motion to Disqualify Judge, ECF No. 345, (3) August 9, 2017 Motion to Disqualify Judge, ECF No. 414, and April 12, 2019 Motion for Reconsideration of the Court's Order Denying Judgment Notwithstanding the Verdict and Renewed Motion for Voluntary Recusal or Disqualification, ECF No. 587, which are incorporated herein by reference, were completely warranted. These newest examples are just the "icing on the cake" of decades of extrajudicial bias and prejudice towards Mr. Klayman, Indeed, now, Judge Kotelly is not even attempting to hide her extrajudicial disdain and vindictiveness towards Mr. Klayman, and fellow jurists will not be able to hide or justify it either when she is called to legal and ethical task. This mandates recusal under both 28 U.S.C. § 144 and 28 U.S.C. § 455, for which Mr. Klayman timely moves for recusal and/or disqualification.

This is further underscored by the fact that this Judge Kotelly is a Defendant in a case styled *Klayman v. Rao et al*, 21-5269 (D.C. Cir.) that is currently on appeal at the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). Judge Kotelly therefore has a clear conflict of interest which prevents her from presiding over this case, as it involves the same subject matter as the *Rao* case, and involves her conduct presiding over this instant case. *See* Code of Conduct for United States Judges 3(C)(1)(a), which states that a judge may not preside over a case where "the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding"; *see also* Code of Conduct for United States Judges 2(A) ("A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."); Code of Conduct for United States Judges 1 ("An independent and honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the

integrity and independence of the judiciary may be preserved.") Judge Kotelly has also clearly violated 28 U.S. Code § 453 - Oaths of justices and judges:

> Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I, ___ ___, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as ___ under the Constitution and laws of the United States. So help me God.

Indeed, The D.C. Circuit has followed ethics and the law and transferred and assigned the *Rao* appeal to judges in other circuits, as it recognized the clear conflict of interest it would have in presiding over the appeal. Exhibit A-2. In doing so, the D.C. Circuit ruled, "[t]he Chief Judge of the United States Court of Appeals for the District of Columbia Circuit has certified that there is a necessity for the designation and assignment of a judge from another circuit to perform judicial duties [in this case.]" Exhibit A-2. Yet, Judge Kotelly has steadfastly refused to do so, further evidencing her extra-judicial deep-seated animus and bias against Mr. Klayman. The only reason that Judge Kotelly would ignore the Code of Conduct for United States Judges, as well as other ethical provisions, is that she is intent on prejudicing Mr. Klayman as much as possible, and wishes to further harm him, his colleagues and his family, as also set forth in the post-trial motions in this sixteen-year old poorly and discriminatorily administered case, which has taken on the mantle of being a miscarriage of justice, much less having made a mockery of the judicial and legal system.

Regrettably, these are but two of the most recent instances of the long-standing deep-seated animus, extra-judicial bias and prejudice openly exhibited by Judge Kotelly over the years. long-standing extra-judicial deep-seated animus, bias and prejudice has resulted in countless intentional errors of both fact and law that directly caused the highly flawed jury

verdict and judgment against Mr. Klayman in this case that is pending appeal to the Supreme Court. These highly prejudicial errors include, *inter alia*:

a. Making highly prejudicial and inflammatory statements concerning Mr. Klayman during trial, and even before trial.

b. Allowing highly prejudicial, inflammatory statements and an irrelevant court order into evidence, in contradiction of both the Federal Rules of Evidence as well as the parol evidence rule.

c. Entering an overly broad, draconian sanctions order preventing Mr. Klayman from introducing evidence or calling witnesses at trial.

d. Usurping and extinguishing the fact-finding role of the jury, as provided for in the Seventh Amendment to the Constitution, by weighing competing affidavits to grant partial summary judgment to Judicial Watch with regard to Mr. Klayman's (1) Lanham Act claims, (2) rescission claim, and (3) defamation claims.

e. Usurping and extinguishing as provided for in the Constitution the fact-finding role of the jury by weighing competing affidavits to grant partial summary judgment on Judicial Watch's counterclaim for repayment of personal expenses when Mr. Klayman submitted a sworn affidavit countering each and every claimed expense by Judicial Watch.

f. Orally reading jury instructions that were erroneous, confusing, and highly prejudicial to Mr. Klayman, refusing to provide other jury instructions that would have stated the correct law and prevented the confusion, and then

failing to disclose any written instructions that were provided to the jury, if any.

g. Failing to require authentication of documents submitted by Judicial Watch that purported to show "confusion" with regard to Judicial Watch's trademark infringement and related claims.

h. Failing to provide a jury instruction that a few instances of alleged confusion, notwithstanding that there were no authenticated and admissible documentary evidence to show such confusion, do not constitute trademark infringement, in contravention of well-established case law.

i. Failing to remit the damage award based on the actions of non-parties and the false representations to the jury by witnesses and counsel for Judicial Watch.

j. Entering judgment on the jury verdict where Judicial Watch clearly failed to prove that Mr. Klayman took and used donor information owned solely by Judicial Watch, but rather was owned by American Target Advertising.

These are set forth in Plaintiff's Motion for Judgment As a Matter of Law, For a New Trial, or in the Alternative, for Remittitur of the Jury Verdict and Leave to Exceed Page Limit by One Page. ECF No. 571, and Appellant's Initial Brief, Appellant's Reply Brief, and Appellant's Petition for Rehearing En Banc at D.C. Circuit, which are incorporated herein by reference. *Klayman v. Judicial Watch, Inc et al*, 19-7105 (D.C. Cir.).

Given this pattern and practice of exhibiting a long-standing deep-seated animus, bias and prejudice against Mr. Klayman, there is absolutely no way that Mr. Klayman will receive a fair adjudication on Defendant Judicial Watch's Motion for Attorneys Fees and Costs, where they are seeking over $1.5 million dollars in hyper-inflated and unreasonable "attorneys fees," on

9

top of $2.8 million as a result of the flawed judgment, resulting in an award of $4.3 million against Mr. Klayman This is more than enough to bankrupt and ruin Mr. Klayman and his family, notwithstanding the completely flawed jury verdict and judgment issued under Judge Kotelly's supervision. Given the Court's history in "rubber stamping" Defendants' motions, it must recuse and/or disqualify itself and transfer this matter to a neutral and unbiased adjudicator in another judicial district, since each and every jurist in this Court would have a conflict of interest due to Judge Kotelly's personal involvement. Indeed, Judge Kotelly likely feels emboldened to continue to harm and prejudice Mr. Klayman because she believes that he fellow jurists in this Court and the D.C. Court of Appeals will protect and shield her. This is why transfer to another judicial district is essential moving forward.

Lastly, in addition to recusal and/or disqualification, each and every one of Judge Kotelly's prior orders, including the jury verdict and judgment, must be vacated, as they have been the direct product of illegal and improper extrajudicial bias and prejudice. *See Bell v. Chandler*, 569 F.2d 556, 560 (10th Cir. 1978) ("The judgment of the court is that the writ of mandamus and prohibition shall issue compelling the disqualification of Judge Chandler in the underlying Civil Action....**It is further ordered that the district court vacate the order** to produce entered July 25, 1977....")

**B.**      **Facts Pertaining to Defendants' Attorney's Fees Motion**

On April 1, 2019, Defendants filed their Motion for Attorneys Fees and Costs, ECF No. 585-1. This issue was then stayed by the Court, and it prematurely lifted the stay on November 10, 2021. ECF No. 631. As set forth above, the underlying matter is pending appeal to the Supreme Court, and therefore it is entirely premature, and would constitute another miscarriage of justice,  to reach the issue of attorneys' fees particular given the amount requested, which

increases the jury verdict and award against Mr. Klayman to $4.3 million dollars. Thus, at a bare minimum, this issue must be stayed pending the outcome of Mr. Klayman's Supreme Court Petition.

This is particularly true given the fact that the sole basis for Defendants' claimed attorneys' fees and costs is found in section 19(c) of the Severance Agreement, which states:

> <u>Attorneys' Fees</u>. The prevailing party in any legal proceeding instituted on account of a Party's breach of this Agreement shall be entitled to an award of the costs incurred in connection with such action, including reasonable attorneys' fees and suit costs.

Since this matter is still pending appeal to the Supreme Court, it is premature to determine the "prevailing party." Doing so at this time would be a waste of judicial resources and work a manifest injustice, particularly since Mr. Klayman is confident that he will prevail at the Supreme Court, given the litany of extra-judicial biased and prejudicial manifest errors committed by the Court in this case.

In any event, the amount of fees claimed by Defendants is patently inflated if not fraudulent and unbelievable, as set forth below. Furthermore, Defendants are seeking attorneys fees outside the scope of what is permitted under the Severance Agreement, which is impermissible even if they were the "prevailing party," which they are not. This is the textbook definition of seeking a windfall from what Defendants know is a favorable forum. Thus, before any determination on attorneys fees is made, there must be a full evidentiary hearing with witnesses placed under oath so that inflated claimed fees if not fraud is rubber stamped  by the Court in Defendants' favor, as has occurred previously in various matters.

## II.    THE LAW.

### A.    Before This Case Proceeds Any Further, it Must be Transferred and Judge Kotelly Recused and/or Disqualified.

Pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144, Mr. Klayman hereby renews his motion for the recusal and/or disqualification of Jude Kotelly in this matter. It is abundantly clear that Mr. Klayman cannot hope to receive fair adjudication before Judge Kotelly, and this matter must be decided by an actual neutral arbiter, in accordance with Mr. Klayman's due process and other constitutional rights..

An impartial judiciary is a fundamental component of the system of justice in the United States. The right to a "neutral and detached judge" in any proceeding is protected by the U.S. Constitution and is an integral part of maintaining the public's confidence in the judicial system. *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980) (The U.S. Constitution guarantees a party an impartial and disinterested tribunal in civil cases). To ensure that this right is protected, Congress has sought to secure the impartiality of judges by requiring them to step aside, or in some circumstances, disqualify themselves, in various circumstances.

Under 28 U.S.C. § 455, a judge " . . . shall disqualify himself in any proceeding in which his [or her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In order to preserve the integrity of the judiciary, and to ensure that justice is carried out in each individual case, judges must adhere to high standards of conduct. *York v. United States*, 785 A.2d 651, 655 (D.C. 2001). "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . ." ABA Code of Judicial Conduct Canon 3(C)(1); *See also Scott v. United States,* 559 A.2d 745, 750 (D.C. 1989) (*en banc*). Disqualification or recusal is required when there is even the appearance that the court's impartiality may be called into question, and "could suggest, to an outside observer, such a 'high degree of favoritism or antagonism to defendants' position that 'fair judgment is impossible.'" *Liteky v. United States*, 510 U.S. 540,

555 (1994)); *See also Jackson v. Microsoft Corp.*, 135 F. Supp. 2d 38, 40 (D.D.C. 2001) (recusal

was proper because the judge "ha[d] created an appearance of personal bias or prejudice").

Indeed, the "very purpose of § 455(a) is to promote confidence in the judiciary by

avoiding even the appearance of impropriety whenever possible." *United States v. Microsoft*

*Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001). As such, "violations of the Code of Conduct may give

rise to a violation of § 455(a) if doubt is case on the integrity of the judicial process. *Id.*

Similarly, Under 28 U.S.C. § 144:

Whenever a party to any proceeding in a district court makes and files a timely
and sufficient affidavit that the judge before whom the matter is pending has a
personal bias or prejudice either against him or in favor of any adverse party, such
judge shall proceed no further therein, but another judge shall be assigned to hear
such proceeding.

28 U.S.C. § 144. This statute is unambiguous – if the requirements are met, another judge must

be assigned to take over the matter. *See* Exhibit 2.

The disqualification statute, 28 U.S.C. §144, is <u>mandatory and automatic</u>,
requiring only a timely and sufficient affidavit alleging personal bias or prejudice
of the judge. The judge is a silent defendant, unable to make findings on the truth
or falsity of the affiant's allegations, and truth must be presumed. *United States v.*
*Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) (Emphasis added); and the
allegations may be based upon information and belief, *Berger v. United States*,
255 U.S. 22, 34, 65 L. Ed. 481, 41 S. Ct. 230 (1920).

*Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380

F.2d 570, 576 (D.C. 1967) (emphasis added). As evidence of the absolute requirement of

impartiality from judicial officers, the U.S. Courts of Appeals for the Fifth, First, Sixth, Tenth,

and Eleventh Circuits have said that close questions should be decided in favor of recusal. *See*

*Republic of Pan. v. American Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000) (citing *In re*

*Chevron*, 121 F.3d 163, 165 (5th Cir. 1997)); *In re United States*, 158 F.3d 26, 30 (1st Cir.

1998); *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989).

"The test for personal bias or prejudice in [S]ection 144 is identical to that in section 455(b)(1), and the decisions interpreting this language in [S]ection 144 are controlling in the interpretation of section 455(b)(1)." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. Cal. 1980). In *Litecky v. United States*, the U.S. Supreme Court held that while "judicial rulings <u>alone</u> never constitute a valid basis for a bias or partiality motion," 510 U.S. at 555 (emphasis added), if the judge succumbs to extrajudicial influence, he is subject to such a motion. Even more, in the absence of an extrajudicial influence, judicial rulings coupled with the requisite "degree of favoritism or antagonism" can serve as the basis for such a motion even "when no extrajudicial source is involved." *Id*. Lastly, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" constitute a basis for such a motion if "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

Just a few of these instances of "deep-seated  favoritism or antagonism" are set forth below.

  i.    **Judge Kotelly's Repeated Highly Prejudicial and Inflammatory Statements Concerning Mr. Klayman Show Clear Extrajudicial Bias and Prejudice.**

It is beyond doubt that the relationship between this Court and Mr. Klayman has been difficult. Through the years, various motions to disqualify have been filed (all not coincidentally denied) and Mr. Klayman has not been shy about his perception that the Court is inherently against him as a result of extra-judicial bias and prejudice, which has now been conclusively proven by her decisions to (1) exercise her "discretion" to deny him the right to e-file, and (2)

refuse to get off the case despite a clear conflict of interest. This is a violation of Code of Conduct for United States Judges 3(C)(1)(a), Code of Conduct for United States Judges 2(A), Code of Conduct for United States Judges 1, and 28 U.S. Code § 453 - Oaths of justices and judges, as set forth above.

This was also definitively shown through Judge Kotelly's numerous highly prejudicial and inflammatory statements, many of which were made or conveyed orally and visually before the jury, concerning Mr. Klayman at trial that evidenced a clearly extrajudicial bias, prejudice, and simple dislike for Mr. Klayman. These statements show Judge Kotelly's ongoing mindset, and explain how she was simply able to intentionally commit so many factual and legal "errors" in this case, not surprisingly, all in favor of the Defendants. Even during *voir dire* – before the trial had even begun – the Court made certain statements in front of potential jurors that cast Mr. Klayman in a negative light.

> MR. KLAYMAN: Did you find for the plaintiff?
> THE COURT: No, don't ask those questions.
> MR. KLAYMAN: I can't ask those questions?
> THE COURT: No. It's also a criminal case. You cannot ask the verdict. It's **inappropriate**.

*Official Transcript*, Day 1, 96:3-7.

> MR. KLAYMAN: I have another question.
> THE COURT: Sure.
> MR. KLAYMAN: Have you ever heard of Cliven Bundy, a rancher in Nevada? [who Plaintiff represents]
> THE COURT: It's **inappropriate**.
> MR. KLAYMAN: Why?
> THE COURT: It's **inappropriate**. You're bringing something in that's not part of the case here. You don't need to answer that one. Anything else?
> MR. KLAYMAN: No, that's all. Thank you.

*Id*. at 97:3-13 (emphasis added). After the second reprimand in the presence of a potential juror, Mr. Klayman raised the issue with the Court.

MR. KLAYMAN: If you would do me a favor when we're doing this, if you think my question is not appropriate, if you can just say "you don't have to answer that question" rather than saying "that's inappropriate" because that –
THE COURT: Well, I brought it up, and then you asked the question a second time, which is why I cut you off.
MR. KLAYMAN: Well, I asked two different questions.
THE COURT: I will be happy –
MR. KLAYMAN: **It can taint the juror's feeling toward me**.
THE COURT: All right. Let's go.

*Id*. at 98:16-25; 99:1-4 (emphasis added). After being interrupted, Mr. Klayman pointed out: "I just ask don't necessarily – I am also concerned, Your Honor, about the jury's perception with you breaking in with me. I understand that sometimes you feel like you have to do that, but I don't want them to feel that you and I are adversaries here." *Id*. at 446:14-19.

On February 27, 2018, the first day of trial after *voir dire*, the Court showed its true colors when it responded to Mr. Klayman's "story of this case, from [his] perspective." *Id*. at 576:10-11.

THE COURT: Okay. You view it as **revenge** or whatever . . .
THE COURT: – as to whether you have met your burden of proof on your claims.
MR. KLAYMAN: The facts. And by the way, **I never used the word "revenge," Your Honor. That's how you take it.**
THE COURT: Okay. That was my term.
MR. KLAYMAN: I simply said that they were trying to take the resources away from me so I couldn't compete.
THE COURT: Okay. Well, whatever.
MR. KLAYMAN: Okay. And, you know, obviously – I mean, somebody is going to react to that, even Larry Klayman is going to react to that.
I just put it in context, Your Honor. So I would like to be able to say -- and I appreciate your looking at it -- that this is what I communicated to Judicial Watch, and I was always trying to resolve things, and I was not seeking revenge, to the contrary.
THE COURT: Okay. That was – I misspoke with using that word. And I'm not suggesting that that's what you were doing. I'm just pointing out to you that you obviously have strong feelings as to their motivations. I'm just pointing out that motivations, frankly, are not going to do it in terms of the burden of proof.

*Id*. at 576:12-13, 577:1-23 (emphasis added). The Court's unfounded use of the word "revenge" further evidences its extrajudicial bias and prejudice against Mr. Klayman.

Next, during Mr. Klayman's examination of Paul Orfanedes and at side bar, Mr.

Klayman gives the Court another example of the Court indirectly prejudicing the jury:

> MR. KLAYMAN: Let me give you an example. I'm doing this to try to get things
> to go better, not to criticize you, but with the Illinois code, you know, you kind of
> raised your eyebrows and you said, "Oh, so you didn't find it in the Illinois code."
> That tells the jury something. It tells me what side you're on.
> THE COURT: I perhaps should not have said that, but I have to say that as a
> practical matter, you were talking about the D.C. – they don't know what we're
> talking about finding. To switch when we're in the D.C. code, clearly, you didn't
> – I will agree with you that I was a little surprised that you were raising something
> when he clearly has to go by the D.C. Bar, not by what Illinois has.

*Id.* at 1162:25; 1163:1-13. Each day there was an unnecessary fight to allow the testimony of Mr.

Klayman into the record. Discussing whether it would be appropriate to represent to the jury that

Judicial Watch paid for Mr. Klayman's health insurance between September 2002 and

September 2003, the Court had this to say:

> MR. KLAYMAN: No. 2, if you bring extraneous stuff before the jury and put
> your own finding –
> THE COURT: It's not extraneous. There is a finding, and you didn't do a good
> job, frankly, on the motion for summary judgment in responding to it, which is
> why you're left with this judgment in terms of the health care.
> Let me think in terms of whether there is an issue – let me go back and look at
> what I had made as a finding, which may limit your argument on the children's
> health care.
> I will look at it.
> MR. DRISCOLL: Okay.
> THE COURT: All right. In terms of the rest –
> MR. KLAYMAN: By the way, with regard to your last statement, Your Honor, I
> didn't do a good job. I submitted affidavits, contra affidavits to what they were
> saying with letters that I had written to ones that I referred to itemizing each
> expense and refuting that, and I put that in the affidavits. You weighed the
> affidavits improperly and granted summary judgment.
> THE COURT: Well, that may be, and you can take it up on appeal.

*Id.* at 3511:18-3512:15.

Thus, the Court castigates Mr. Klayman for not "d[oing] [] a good job" when he

"submitted affidavits, contra affidavits to what they [Defendants/Counter-Plaintiffs] were saying

with letters that [he] had written to ones that [he] referred to itemizing each expense and refuting that, and [he] put that in the affidavits. You weighted the affidavits improperly and granted summary judgment." *Id.* at 3512:7-13. Mr. Klayman requested several times that the Court maintain a balance: " . . . but I'm also asking you, Your Honor, in good faith just to be careful about what you say in front of the jury, not making it look like you're taking one side against another." *Id.* at 737:2-5.

Again, during the examination of Defendant Fitton, during a bench conference, Mr. Klayman raised the issue of extrajudicial bias and prejudice again:

> MR. KLAYMAN: I disagree. He's not giving any answers. It's ad hominem attacks against me. That's what it is primarily, but I'm not going to show my feelings to the jury, and I ask you not to do that because you have done that a number of times in this case.
> THE COURT: I'm not showing any feelings to the jury at all. As far as I'm concerned, the two of you are arguing, and I told the jury he isn't allowed to argue back either. He's not to make any comments.
> MR. KLAYMAN: If I was sitting there, honestly – I don't mean this in any lack of respect throughout this trial – I would think that you were siding with the defense and not me.
> THE COURT: That may be your perception.

*Id.* at 1722:4-17. Some other examples include:

> MR. KLAYMAN: Your Honor, the reason I'm getting beyond [this] is I'm trying to get a response, and I'm not getting a response.
> THE COURT: Well, you're getting a response, **but it may not be the response that you would like.**
> MR. KLAYMAN: You're right because it's not responsive to my question. I'm trying to get him to focus on a question, part by part.

*Id.* at 1155:16-23 (emphasis added) (The Court telegraphed what kind of response Mr. Klayman "would [not] like" directly in front of the jury, insinuating that the response provided by Orfanedes harmed Mr. Klayman.).

> MR. DRISCOLL: Your Honor, at this point, I would like to move for the admission of Defendant's Exhibit 8.
> THE COURT: All right. I, by Court order, found that it was authentic, so I will

admit Exhibit No. 8.
MR. DRISCOLL: Okay.
BY MR. DRISCOLL:[SEP]Q Mr. Fitton, could you now turn to –
MR. KLAYMAN: Your Honor, could I approach the bench here? Sidebar?
(Bench conference.)[SEP]
MR. KLAYMAN: I didn't say anything about authenticity to the jury, and it was already entered so when you say that it's authentic, you're signaling to the jury that that is to be given weight. They don't understand what happened.

*Id.* at 1990:6-20.

Q Okay. So I'm making it clear that I'm no longer with Judicial Watch?
A You're making clear that, in your view, at least, Judicial Watch used to be great and no longer is under its present leadership, which I think is a disparaging statement by you.
Q That's not my question.
A I don't care. That's my answer.
Q So you care to defy court rules?
THE COURT: **Since when have you become the judge, Mr. Klayman?**
MR. KLAYMAN: No. But if you ask a question, I deserve an answer. I'm not talking about you, Your Honor.

*Id.* at 2126:23-2127:1-10 (emphasis added) (The jury heard the scoffing comment by the Court.).

One of the most serious examples of prejudice, which influenced the jury, came on

March 7, 2018 when Mr. Klayman cross-examined Orfanedes. Mr. Klayman began:

Q I'm entitled to my opinion, aren't I?
A No. Under the agreement, you're not. You're not supposed to disparage us.
Q You are aware that it's my position that I'm not disparaging you when I tell the truth?
MR. DRISCOLL: I'm going to object.
THE COURT: I'll sustain it. You're getting into a legal issue, and, frankly, that's not totally correct.
MR. KLAYMAN: Can I approach the bench?
THE COURT: Sure.

*Id.* at 2407:10-19. When the Court said in front of the jury that Mr. Klayman got into a legal

issue which was "not totally correct[,]" it left the jury with one impression: Larry Klayman is

wrong about the facts and the law; Judicial Watch and Tom Fitton are right; the Court agrees with Judicial Watch and Tom Fitton; and so too should the jury.[1]

Indeed Judge Kotelly's extrajudicial biased and prejudiced statements were not limited to trial . For instance, in her April 3, 2007 memorandum opinion, Judge Kollar-Kotelly wrote that Klayman is the "self-described founder and former Chairman and General Counsel of Judicial Watch." There is no dispute that Klayman is the founder of JW. There was simply no reason for Judge Kollar-Kotelly to take an *ad hominem* cheap shot at Mr. Klayman's credentials other than out of extra-judicial spite, bias, and prejudice. This would be like Mr. Klayman referring to Judge Kotelly as a "self-described" judge. There's just no reason for it other than deep-seated extra-judicial animus and bias and prejudice.

> ii. **The Sanctions Orders Entered By The Court Were Overly Broad, Draconian, and Too Severe and Show Extrajudicial Bias and Prejudice.**

Nothing demonstrates the Court's clear extrajudicial bias and prejudice against Mr. Klayman as the sanction orders that precluded Klayman from presenting any evidence in support of his claims and defenses for alleged violations of discovery and pre-trial obligations. The effect of these sanctions resulted not only in a bizarre and mockery of a trial that confused the jury but essentially Judge Kotelly *de facto* a default judgment or directed verdict against Klayman. Indeed, how can a litigant expect to have any chance at trial when he is barred from presenting any witnesses or evidence, and to make matters worse, the Court refuse to even give a jury instruction in this regard, leading the jury to reach the false conclusion that Mr. Klayman simply had no witnesses or evidence?

---

[1] The sidebars that either opposing counsel or the Court continually requested during the trial and in the front of the jury by their quantity prejudiced Mr. Klayman's cause. They were intentional interruptions which put his testimony to a halt and broke up the flow of evidence.

In *Founding Church of Scientology, Inc. v. Webster*, 802 F.2d 1448, 1457 (D.C. 1986), the court found that in "cases of dismissal imposed as a sanction, the applicable standard of review confines appellate inquiry to whether the district court abused its discretion." In doing so, the focus on appellate review is "to ensure that the district court does not abuse its discretion in imposing too severe a discovery sanction." *Bonds v. D.C.*, 93 F.3d 801, 807 (D.C. Cir. 1996), *reh'g denied*, 105 F.3d 674 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1274 (1997).

In *Scientology*, 802 F.3d at 1459, the court found that dismissal of a claim "is an extremely harsh sanction." In *Bonds*, the principal issue was whether the court abused its discretion in precluding a party from offering any fact witnesses at trial as a discovery sanction where that party failed to respond in a timely manner to an interrogatory requesting the names of all persons with knowledge of relevant events regarding the civil action and then providing an inadequate response. *Bonds*, 93 F.3d at 804. In *Bonds*, the court held that

> The central requirement of [F. R. Civ. P. 37] is that any sanction must be 'just,' which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation. *Id*. at 808.

"Considerations relevant to ascertaining when dismissal, rather than a milder disciplinary measure, is warranted include the effect of a plaintiff's contumacious conduct on the court's docket, whether the plaintiff's behavior has prejudiced the defendant, and whether deterrence is necessary to protect the integrity of the judicial system." *Id*. A discovery sanction "that results in a one-sided trial," "is a severe one." *Id*. at 809.

As even further conclusive evidence of the Court's strong extrajudicial bias against Mr. Klayman, it entered this "severe" sanction against Mr. Klayman despite the fact that he <u>did produce 1047 pages of documents</u>, contrary to the repeated lies told by counsel for Judicial Watch, Mr. Richard Driscoll, that Mr. Klayman had produced no documents in discovery. The

Court's decision to prevent Mr. Klayman from using the documents he produced, and even documents already in Defendants' possession, was so legally and factually off-base that it conclusively shows extrajudicial bias and prejudice.

### iii. The Court's Allowance of Highly Prejudicial, Inflammatory Statements Into Evidence Shows Extrajudicial Bias and Prejudice.

At trial, Judge Kotelly further demonstrated her unmitigated extrajudicial bias and prejudice against Mr. Klayman by allowing highly prejudicial, inflammatory statements and an irrelevant court order into evidence, in contradiction of both the Federal Rules of Evidence as well as the parol evidence rule. These false, inflammatory, prejudicial, and irrelevant statements included (1) an alleged effort to pursue an improper relationship with a JW employee, (2) claiming he effectively sexually harassed her, (3) Mr. Klayman's alleged admission that he was in love with the employee, had purchased gifts for her and had kissed her, and (4) Mr. Klayman's alleged acknowledgment of an incident with his wife that provided the basis for his wife's allegation that he physically assaulted her in front of their children. *Official Transcript*, Day 10, 3184:23-24. Indeed, this highly prejudicial, inflammatory, and false testimony was introduced, with Judge Kotelly's consent, by Judicial Watch to perpetuate the falsity that Mr. Klayman did not voluntarily leave to run for the Senate; rather, they forced him out due to this alleged misconduct. However, this ignores the plain fact that the Severance Agreement between the parties, which was undeniably signed and agreed to by all the parties, unequivocally stated that Mr. Klayman left Judicial Watch voluntarily to pursue other endeavors:

> Judicial Watch announced today that Larry Klayman has stepped down as Chairman and General Counsel of Judicial Watch, [sic] to pursue other endeavors.

Thus, this purported "evidence" should never have been admitted because it was a violation of the parol evidence rule, and Mr. Klayman's departure from Judicial Watch should never have been allowed to become at issue during the trial. This was the first clear legal error.

Furthermore, even if this evidence was relevant, which it clearly was not, it should have been excluded under the balancing test of Fed. R. Evid 403:

> **Some types of extrinsic acts are particularly "likely to incite a jury to an irrational decision," few would doubt that violent spousal abuse falls into this category.** *United States v. Hands*, 184 F.3d 1322, 1328 (11th Cir. 1999).

> **Moreover, we believe the public stigma attached to a husband who beats his wife is significant. The inflammatory nature of such a characterization is arguably more substantial than the purchase of marijuana discussed in *State v. Hockings, supra*. It is probable that portrayal of defendant as a "wife-beater" so blackened his character in the mind of the jury, that it was natural to infer that he was readily capable of rape, sodomy and sexual abuse. In short, we find that the slight probative value of the evidence was outweighed by its inflammatory and prejudicial impact.** *State v. Zamudio*, 57 Or. App. 545, 551 (1982).

> **In this case, the risk of unfair prejudice, given the nature of the proffered evidence, was high. The evidence the State sought to introduce was extremely inflammatory: that Defendant physically abused Mother, that Defendant used cocaine, that Defendant looked at pornography, and that Defendant had been involved in "emotional" affairs. Many jurors would likely not look kindly on individuals who engage in these activities. There can be no question that this sort of evidence has the potential to cause unfair prejudice. .... Such evidence...should have been excluded here.** *State v. Miranda*, 407 P.3d 1033, 1042-43.

These cases all stand for the same undeniable, bedrock, irrefutable legal principle—testimony that an individual engaged in domestic violence, that is beat his wife, is highly prejudicial and inflammatory, and its admission—even in criminal cases where violence is at issue—is still in error. Here, this type of testimony was allowed in a <u>civil</u> case, and where it was entirely irrelevant. It cannot be overstated how egregious, glaring and clear of an error the admission of this testimony was. This testimony clearly poisoned the jury to Mr. Klayman, and in conjunction with the other egregious misapplications of the law by Judge Kotelly, ensured that Mr. Klayman had no real chance at a fair trial.

iv.    **The Court's Decision to Allow Unauthenticated "Evidence" in Favor of Defendants Shows Extrajudicial Bias and Prejudice.**

Under Federal Rules of Evidence Rule 901, evidence must be authenticated by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Authentication is no mere formality. It is a crucial part of ensuring that the parties to a litigation receive a fair trial. "Authentication and identification are specialized aspects of relevancy that are **necessary conditions precedent to admissibility**." *United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982) (emphasis added).

The Court exhibited its deep-seated extrajudicial bias and prejudice against Mr. Klayman when it allowed into evidence letters proffered by Judicial Watch, purportedly written by donors to show alleged confusion in regard to their Lanham Act claim, without proper authentication. *Official Transcript*, Day 8, 2524:14-16; *see* Defense Exs. 33, 36, 40, 42. Egregiously, the Court even recognized this deficiency, but was undeterred by the law and still strained to give an improper instruction that the letters could not be used to show the truth of the matter asserted, but only to show potential or actual damage to Judicial Watch. The Court stated, "these documents go to the effect of counter defendant's – Klayman's campaign – not potential donors, insofar as they clearly have not included any donation." *Id*. at 2525:14-17. However, this instruction was disingenuous, at best, since the alleged damage to JW **was the truth of the matter asserted**. Put another way, the sole reason that JW wanted to introduce these letters from purported donors – without authentication – was to prove trademark confusion and damages.

The Court's most fatal error concerning the authenticity and admission of the alleged handwriting occurred on March 7, 2018 during Defendant Fitton's examination. Judicial Watch moved for the admission of Defense Exhibit 42. The Court responded (in front of and direct to the jury): "I will admit it, however not for the truth of the matter in terms of who wrote it or the

contents of it, but simply for you to consider **whether or not the counter-defendant's campaign had an effect on Judicial Watch's donors**." *Id.* at 2531:8-12 (emphasis added). But, considering whether Klayman's campaign had an effect on donors is **precisely** admitting the handwriting for the truth of the matter asserted – that Klayman's campaign resulted in confusion and loss of profits to Appellees. This "heads I win, tails you lose" instruction was prejudicial to the jury that worked against Klayman.

Informing the jury that it could not view the letters for the truth of the matter asserted, yet allowing the jury to consider them with regard to trademark confusion and as a measure of damages is, frankly, talking out of both sides of the Court's mouth. Indeed, even at the time, Mr. Klayman recognized that this was a fatal error and objected vehemently to no avail. Judicial Watch had **ten years** to locate, depose and subpoena for trial, these allegedly confused donors, yet failed to do so despite having tens of millions of dollars in their accounts. This grave and extremely prejudicial error by the Court caused the jury to improperly weigh unauthenticated and unreliable evidence in order to determine the measure of damages to award to Appellees. Given the $2.8 million dollar verdict that was awarded to Defendants, it is clear that this egregious misapplication of basic rule of law severely harmed and prejudiced Mr. Klayman. *See* Plaintiff's Motion for Judgment As a Matter of Law, For a New Trial, or in the Alternative, for Remittitur of the Jury Verdict and Leave to Exceed Page Limit by One Page. ECF No. 571, and Appellant's Initial Brief, Appellant's Reply Brief, and Appellant's Petition for Rehearing En Banc at D.C. Circuit, which are incorporated herein by reference.

**B.     Defendants' Motion for Attorneys Fees and Costs Must Be Denied.**

As shown conclusively above, this matter must be reassigned to another jurist so that Mr. Klayman is at least afforded a fair adjudication of the Defendants' Motion for Attorneys' Fees

and Costs. In any event, however, the Defendants' motion is so patently frivolous, and the amount of fees claimed so hyper-inflated if not fraudulent that at a minimum, full discovery and an evidentiary hearing must be granted. *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 219 U.S. App. D.C. 94 (1982).

### i.    It Is Premature To Consider Defendants' Motion.

As a threshold matter, it is premature to even consider Defendants' motion, as Petition. the sole basis for Defendants' claimed attorneys' fees and costs is found in section 19(c) of the Severance Agreement, which states:

> Attorneys' Fees. The prevailing party in any legal proceeding instituted on account of a Party's breach of this Agreement shall be entitled to an award of the costs incurred in connection with such action, including reasonable attorneys' fees and suit costs.

Here, since this matter is still pending appeal to the Supreme Court, it is premature to determine the "prevailing party." Doing so at this time would be a waste of judicial resources, particularly since Mr. Klayman is confident that he will prevail at the Supreme Court, given the litany of manifest errors committed by the Court in this case. Thus, at a minimum, this issue must be stayed pending resolution from the Supreme Court.

### ii.   A Full Evidentiary Hearing and Discovery Must be Granted Because The Amount of Fees Sought By Defendants Are Hyper Inflated if Not Fraudulent.

"The key issue in establishing the proper lodestar is to determine the reasonable hourly rate "prevailing in the community for similar work." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1324 (1982). "An applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award. For example, affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases provide prevailing community rate information. Recent

fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate." *Id.* at 1325. "In addition, counsel for applicants may be required to submit specific evidence of his or her actual billing practice during the relevant time period." *Id.* at 1326.

Furthermore, "[a]n applicant for attorneys' fees is only entitled to an award for time reasonably expended. Thus the fee application must also contain sufficiently detailed information about the hours logged and the work done. This is essential not only to permit the District Court to make an accurate and equitable award but to place government counsel in a position to make an informed determination as to the merits of the application." *Id.* at 1327.

Importantly, "Accordingly, the opponent is entitled to the information it requires to appraise the reasonableness of the fee requested and in order that it may present any legitimate challenges to the application to the District Court." *Id.* at 1329. This equates to discovery of the billing documentation submitted by the Defendants.

Lastly, "procedural fairness requires that a  hearing be held where in the District Court's view material issues of fact that may substantially affect the size of the award remain in well-founded dispute. If a hearing is held it should, of course, be sharply focused upon those issues which the District Court believes will materially affect the award in light of the submissions of the parties as supplemented by appropriate discovery." *Id.* at 1330.

Here, given the Defendants' and their counsel's pattern and practice of making false statements to the Court, perhaps none more so obvious than when they lied about the computation of damages at trial, double dipping for an extra $500,000 in alleged damages,[2] a full

---

[2] Notwithstanding the hard fact that JW provided no evidence to back up or support these "loss" claims with the exception of a call log record from *one* donor in Florida, *see* Appellees' Exhibit 39, a $500,000 loss for 2006 and a $1.4 million dollar loss for 2007 is simply bad math.  In this

evidentiary hearing and discovery is required on Defendants' instant motion, as that is the only way to ensure that they are providing truthful numbers in terms of hours worked, and the amount billed. It is the Court's duty to ensure that "[a]n applicant for attorneys' fees is only entitled to an award for time reasonably expended." *Id.* at 1327. During discovery each and every one of the billing records submitted by the Defendants will be under review, as well as during the evidentiary hearing where Defendants and their counsel will be put under oath.

### a.   The Defendants' Hourly Rate is Unreasonable.

In Defendants' initial motion, Richard Driscoll's affidavit states that when it was retained, the hourly rate was $175/hour for partners and $125/hour for associates, and that this arrangement was made through Defendants' insurance carrier. ECF No. 585-9 at 2. Then, in the fall of 2016, the rates were adjusted reflected a $100/hour increase for partners and a $50/hour increase for associates, which would have resulted in a rate of $275/hour for partners and $175/hour for associates. ECF No. 585-9 at 3. However, Defendants are seeking at least $563/hour for fees incurred up to 2019, and up to $665/hour for fees incurred up to 2021. ECF No. 638-3 This is approximately triple to quadruple the amount stated in Mr. Driscoll's affidavit.

---

regard, in its closing argument, JW's counsel stated, in relevant part, "[a]nd during 2006, there was a $500,000 drop; and in 2007, there was a $1,400,000 drop. We're going to ask you for those damages too.

This is blatantly false. "It is a fundamental tenet of the law that attorneys may not make material misstatements of fact in summation." *United States v. Hands*, 184 F.3d 1322 (11th Cir. 1999). Even assuming the numbers Andersen testified to were accurate – which Plaintiff vehemently disputes – the alleged $1.4 million dollar loss for 2007 is a made up number. If donors donated a total of about $4.8 million in 2005 and the next year it slipped to $4.3, that accounts for the alleged $500,000 loss in 2006. But again, assuming Andersen is accurate, even if in 2007 donations slipped to $3.4 million from $4.3 million, the total loss for 2007 would be $900,000, not $1.4 million. What JW craftily attempted to do here was persuade the jury to consider the alleged 2007 losses as a whole and in conjunction with the $500,000 alleged loss in 2006. In other words, the **total** alleged loss is $1.4 million for both years; not just for the year 2007. Therefore, the jury inappropriately considered $500,000 "extra dollars," assuming the testimony was accurate

Indeed, Mr. Driscoll openly admits this, writing in his affidavit "The lodestar amount is more than the actual dollar amount paid to date, but as between Judicial Watch and Klayman, it should not be Klayman who benefits from Judicial Watch's insurance coverage." ECF No. 585-9 at 7. This is the textbook definition of seeking a windfall from the Court

Given this clear inflated if not fraudulent conduct, Defendants' motion should be summarily denied and sanctions issued. At a minimum, there must be a full discovery process and evidentiary hearing to determine the amount, if any, that was <u>actually billed and paid</u> by Defendants, notwithstanding the figures in the billing statements submitted by Mr. Driscoll, who has shown a propensity to be dishonest with the Court.. Discovery from Defendants' insurance carrier is needed to determine amount actually billed and paid, to prevent the Defendants and their counsel from receiving a windfall payment.

> **b.      Defendants Improperly Seek Fees Outside the Scope of the Severance Agreement.**

As set forth above, the sole basis for Defendants' claimed attorneys' fees and costs is found in section 19(c) of the Severance Agreement, which states:

> <u>Attorneys' Fees</u>. The prevailing party in **any legal proceeding instituted on account of a Party's breach of this Agreement** shall be entitled to an award of the costs incurred in connection with such action, including reasonable attorneys' fees and suit costs. (emphasis added).

Thus, as per the clear, uncontradicted language of the Severance Agreement, the only fees recoverable are those related to a legal proceeding instituted **on account of a Party's breach of the Severance Agreement**. Thus, any claims and defenses not directly related to the breach of the Severance Agreement are expressly excluded from the determination of fees. Mr. Driscoll has essentially conceded that this was the nature of the agreement between the parties, as he made it very clear in his affidavit that "[t]he overwhelming majority of these claims were

based on a breach of the Confidential Severance Agreement between the parties." ECF No 585-9 at 7. Mr. Driscoll clearly wrote this with the express limiting language of the Severance Agreement in mind.

This would, notably, exclude all attorneys fees arising out of the Lanham Act, which undoubtedly comprised a majority of the fees sought by the Defendants, as there is nothing in the Severance Agreement pertaining to the Lanham Act.

And, it is clear that the bills sought by the Defendants include work done in relation to the Lanham Act. In the affidavit of Elizabeth Seltzer, she writes, "[d]uring 2017 and 2018, I billed a total of 13.7 hours to this matter in connection with trademark related analysis, motions and responses to defenses raised by Plaintiff Klayman." ECF No. 585-10 at 2. This is just the tip of the iceberg, and further underscores the need for a full discovery and evidentiary hearing to determine the amount of fees that were improperly claimed by Defendants that fall outside the scope of the Severance Agreement.

### c. Defendants' Affidavits Are Insufficient, Hyperinflated and Likely Fraudulent.

As set forth above, in *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (1982):

> An applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award. For example, affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases provide prevailing community rate information. Recent fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate.

The affidavits provided by the Defendants are devoid of this required information, and their motion must be denied on this basis as well.

### III. CONCLUSION

Based on the foregoing, Judge Kotelly must recuse and/or be disqualified and this matter must first be transferred to another a jurist in  another circuit so that Mr. Klayman is, at a minimum, afforded a fair adjudication going forward on the issue of attorney's fees and costs. This is what the D.C. Circuit properly and ethically ordered, in  following the ethics and the law. Exhibit A-2.

Furthermore, it is premature to even consider this issue, since there is a pending Petition before the Supreme Court that Mr. Klayman is confident will reverse the lower courts given the litany of egregious errors committed in this matter. And, even if the issue was properly considered at this time, full discovery and evidentiary hearing must be held because the amount of claimed fees by the Defendants are hyper inflated, fraudulent, and constitute a gross miscarriage of justice.

But the bottom line is this—Judge Kotelly simply cannot be allowed to preside over this case any longer, as her extrajudicial bias and prejudice towards Mr. Klayman are so patently obvious that she no longer even attempts to render a façade of impartiality. All of Judge Kotelly's prior orders must be vacated, including the completely flawed jury verdict and judgment and this matter must be reassigned and transferred to another judicial circuit. *Bell  v. Chandler*, 569 F.2d 556 (10th Cir. 1978)

Dated: March 4, 2022

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
561-558-5336
Email: leklayman@gmail.com

*Plaintiff Pro Se*

### CERTIFICATE OF SERVICE

I, Larry Klayman, hereby certify that on this day, March 4, 2022 a copy of the foregoing

was filed in person at the office of the clerk, and sent to counsel for Defendants via email at:

**Richard Wayne Driscoll**
**rdriscoll@driscollseltzer.com**
DRISCOLL & SELTZER, PLLC
2000 Duke Street
Suite 300
Alexandria, VA 22314

/s/ Larry Klayman_____
Larry Klayman

## CERTIFICATE OF COUNSEL

I, Larry Klayman, Esq., am Plaintiff pro se in this matter. I hereby certify that this Motion

and the accompanying affidavit and facts contained therein, made pursuant to 28 U.S.C. § 144, is

being made in good faith.

/s/ Larry Klayman_____
Larry Klayman

EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

LARRY KLAYMAN

               Plaintiff,

v.

JUDICIAL WATCH, INC.

               Defendant.

Civil Action No.: 1:06-cv-670

---

**<u>AFFIDAVIT OF LARRY KLAYMAN IN SUPPORT OF PLAINTIFF'S MOTION TO
RECUSE/DISQUALIFY JUDGE COLLEEN KOLLAR-KOTELLY UNDER 28 U.S.C. §
144</u>**

1.    I, Larry Klayman, hereby declare and attest that the following is true and correct and based on my personal knowledge and belief.

2.    I am over the age of 18 and mentally and legally competent to make this affidavit, sworn under oath.

3.    The Honorable Colleen Kollar-Kotelly ("Judge Kotelly") has engaged pattern and practice of making highly prejudicial statements and issuing severely prejudicial rulings and orders against me, which are so legally devoid of rational, legal or ethical bases that can only be explained by and evidence a deep-seeded extrajudicial bias and animus against me.

4.    This pattern and practice is set forth in my prior motions to disqualify Judge Kotelly: the (1) February 2, 2009 Motion for Recusal and/or Disqualification, ECF No. 298, (2) February 26, 2010 Motion to Disqualify Judge, ECF No. 345, (3) August 9, 2017 Motion to Disqualify Judge, ECF No. 414, and April 12, 2019 Motion for Reconsideration of the Court's Order Denying Judgment Notwithstanding the Verdict and Renewed Motion for Voluntary

1

Recusal or Disqualification, ECF No. 587, which are incorporated herein by reference, were completely warranted. These newest examples are just the "icing on the cake" and complete confirmation of decades of extrajudicial bias and prejudice towards me. Indeed, now, Judge Kotelly is not even attempting to hide her extrajudicial disdain and vindictiveness towards me, and has sought to harm me, my colleagues and my family throughout the unfortunate and unconscionable sixteen (16) year old saga of this case, as also set forth in prior pleadings and appellate briefs, which are also incorporated herein by reference. *See* Plaintiff's Motion for Judgment As a Matter of Law, For a New Trial, or in the Alternative, for Remittitur of the Jury Verdict and Leave to Exceed Page Limit by One Page, ECF No. 571, and Mr. Klayman's Appellant Brief, Reply Brief, and Petition for Rehearing En Banc filed at the U.S. Court of Appeals for the District of Columbia Circuit in this case.

5.      This pattern and practice is ongoing, as recently, Judge Kotelly even denied me the basic courtesy and ability to file electronically in this case, for no reason other than the further prejudice me and force me to expend my limited time and resources, at great expense and inconvenience, to file everything in hard copy with the clerk of the court.

6.      Judge Kotelly's order denying my motion for leave to file electronically was admittedly done at her "discretion," which was a gross abuse of discretion. There was no rational basis for her to deny me this. Judge Kotelly wrote "Plaintiff has demonstrated sufficient ability to file pleadings on the docket." This is not even reasoning. Of course, I can file using hard copies submitted to the clerk. So can anyone else. This is a not a basis to deny me the courtesy and ability to file electronically, or else no one would be allowed to file electronically, when I have been doing so for decades, as this Court knows full well.

7.     In contrast, other jurists of this Court, Judge Kotelly's colleagues, exercising their discretion in a non-prejudicial manner on this issue,   summarily granted me this courtesy ability to file electronically. This was routinely ordered by the Honorable Reggie Walton in *Klayman v. Porter et al*, 20-cv-3109 [Minute Order of February 9, 2022] and the Honorable Christopher Cooper in *Klayman v. Rao et al*, 21-cv-2473 [Minute Order of September 30, 2021] Exhibit 1.

8.     This completely arbitrary and capricious act by Judge Kotelly—made for absolutely no reason other than to prejudice and harm me—clearly stems from her vindictiveness towards me and is the textbook type of "extrajudicial bias and prejudice" that mandates recusal and/or disqualification. There is absolutely no reason why she would choose not to allow me this simple courtesy, like her fellow jurists did without any issue, if she did not have some "axe to grind" against me, as was set forth appropriately in the above-mentioned motions to disqualify, which were summary denied in violation  of 28 U.S.C. § 144 and 28 U.S.C. § 455 as well as prior pleadings.  ECF No. 298, ECF No. 345, ECF No. 414, ECF No. 587, ECF No. 571.

9.     Allowing me to e-file does not affect her in any way, nor does it make her role as a jurist any more difficult—if anything irrationally forcing me to continue to file papers in person only compounds the amount of work that needs to be done by courthouse employees to scan everything in and manually enter everything on the docket.  And, without the ability to file electronically Judge Kotelly then is presented with a pdf document that is image only and not text-searchable, which would actually make her job more difficult—to the extent that she actually reads and considers what I file.  In short, there is no rational basis for this petty and discriminatory conduct, other than a continuing deep seated animus against me.

10.     Judge Kotelly is well aware that as a result of her arbitrary, capricious and irrational order I must file pleadings by hand. This has caused me to spend hundreds if not

thousands of dollars to use a legal service to physically take the documents to the courthouse—even for a pleading that is but a few pages long, as I am not even located in Washington, D.C., where I could do it myself. This is obviously her only motivation behind denying me the basic right to file electronically on this case, to harass me and run up my time and costs.

11.     And there is even more recent evidence of extra-judicial bias and prejudice, confirming the prior extra-judicial bias and prejudice. By way of yet another egregious example is Judge Kotelly status as a Defendant in a case styled *Klayman v. Rao et al*, 21-5269 (D.C. Cir.) that is currently on appeal at the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), which as a matter of law and ethics does not allow her to continue to sit as a jurist on this case.  Judge Kotelly therefore has a clear conflict of interest which prevents her from presiding over this case, as it involves the same subject matter as the *Rao* case. *See* Code of Conduct for United States Judges 3(C)(1)(a), which states that a judge may not preside over a case where "the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding"; *see also* Code of Conduct for United States Judges 2(A) ("A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.") Code of Conduct for United States Judges 1 ("An independent and honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved.") Judge Kotelly has  also clearly violated 28 U.S. Code § 453 - Oaths of justices and judges:

> Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I, ___ ___, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully

and impartially discharge and perform all the duties incumbent upon me as ___ under the Constitution and laws of the United States. So help me God.

12.     In contrast, the D.C. Circuit has followed ethics and the law and transferred and had assigned the *Rao* appeal to judges in other circuits, as it recognized the clear conflict of interest it would have in presiding over the appeal. Exhibit 2.

13.     In doing so, the D.C. Circuit wrote, "[t]he Chief Judge of the United States Court of Appeals for the District of Columbia Circuit has certified that there is a necessity for the designation and assignment of a judge from another circuit to perform judicial duties [in this case.]" Exhibit 2. Yet, Judge Kotelly has steadfastly refused to do so, further evidencing her deep-seated extra-judicial animus and bias against me. The only reason that Judge Kotelly would ignore the Code of Conduct for United States Judges, her oath of office as well as other legal and ethical provisions, is that she is intent on prejudicing and harming me as she continues to harbor a deep-seated animus and exhibited rank extra-judicial prejudice against me.

14.     These new instances of extrajudicial bias and prejudice underscore and clearly expose further and confirm the numerous other highly prejudicial and biased actions from this Court previously, as set forth in my previous affidavits in support of recusal and/or disqualification. ECF No. 298, 345, 414, 587. That is why I am forced to again timely move to disqualify Judge Kotelly.

15.     Accordingly, Judge Kotelly must be disqualified under 28 U.S.C. § 144 and 28 U.S.C. § 455, and vacate all prior orders which she has entered, including the final judgment in this case, and related orders, as she has been exposed once again, now without even a reasonable doubt, for her extra-judicial bias and prejudice against me, all intended not just to harm me but also my colleagues and family, as previously briefed and set forth on the over sixteen year old

record of this case, which the poor and intentionally flawed and irrational harmful administration of makes a mockery of the this Court and the judicial system generally.

I hereby swear under oath and penalty of perjury that the foregoing facts are true and correct to the best of my knowledge and belief.

Executed March 4, 2022

/s/ *Larry Klayman*
Larry Klayman

EXHIBIT 1

| 02/04/2022 | | MINUTE ORDER. In his <u>639</u> Motion, Plaintiff seeks "leave to file electronically" in this case. Pursuant to Local Rule of Civil Procedure 5.4(b), a "pro se party may obtain a CM/ECF user name and password from the Clerk with leave of Court." The decision whether to grant the motion "is within the discretion of the judge to whom the case is assigned." The Motion must describe the party's access to the internet and certify that he "either has successfully completed the entire Clerk's Office on-line tutorial or has been permitted to file electronically in other federal courts." LCvR 5.4(b)(2). The Court DENIES WITHOUT PREJUDICE Plaintiff's Motion. Plaintiff has demonstrated sufficient ability to file pleadings on the docket. Each of the Court's Orders and Minute Orders in this case will specify that the Clerk shall mail a copy of the order to Plaintiff at his address of record. Defendants similarly must ensure that each filing is properly served upon Plaintiff in accordance with the Federal and Local Rules. The Clerk shall mail a copy of this Minute Order to Plaintiff at his address of record. Signed by Judge Colleen Kollar-Kotelly on 2/4/22. (lckk3) (Entered: 02/04/2022) |

| 09/30/2021 | MINUTE ORDER granting 3 Motion for CM/ECF Password. The Court expects all electronic filings by pro se litigants to comply with the Court's Local Rules. Signed by Judge Christopher R. Cooper on 9/30/2021. (lccrc1) (Entered: 09/30/2021) |

District of Columbia live database

| 02/09/2022 | | MINUTE ORDER. Upon consideration of the plaintiff's <u>68</u> Motion for CM/ECF User Name and Password, and for good cause shown, it is hereby ORDERED that the plaintiff's <u>68</u> Motion for CM/ECF User Name and Password is GRANTED. It is further ORDERED that the Clerk of Court shall forthwith ISSUE a CM/ECF user name and password to the plaintiff. It is further ORDERED that the Clerk of Court shall forthwith mail a copy of this Minute Order to the plaintiff's address on record. Signed by Judge Reggie B. Walton on February 9, 2022. (lcrbw3) (Entered: 02/09/2022) |
|---|---|---|

EXHIBIT 2



HONORABLE ROSLYNN R. MAUSKOPF
Director

LEE ANN BENNETT
Deputy Director

## ADMINISTRATIVE OFFICE OF THE
## UNITED STATES COURTS

ELIZABETH A. SMITH
Associate Director
Department of Program Services

DAN JACKSON
Acting Chief
Judicial Services Office

February 15, 2022

Mr. Lyle Cayce
Clerk, United States Court of Appeals for the Fifth Circuit
F. Edward Hebert Federal Building
600 South Maestri Place, Room 206
New Orleans, LA 70130

Mr. Mark J. Langer
Clerk, United States Court of Appeals for the District of Columbia Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, N.W., Room 5509
Washington, DC 20001

Dear Mr. Cayce and Mr. Langer:

    Enclosed is the Chief Justice's designation of the Honorable Stephen A. Higginson of the United States Court of Appeals for the Fifth Circuit to perform judicial duties in the United States Court of Appeals for the District of Columbia Circuit in No. 21-5269, Larry Klayman v. Neomi Rao, et al.  Pursuant to 28 U.S.C. § 295, please file and enter this assignment on the minutes of your respective courts.

    Please feel free to contact me at (202) 502-1177 if you have any questions or concerns.

Sincerely,

Anne McKenna
Senior Attorney
Judicial Programs

Enclosures:   (Clerk of Lending Court, Mr. Cayce - Original Designation)
                (Clerk of Borrowing Court, Mr. Langer - Certified Copy of Designation)

cc:   Honorable Stephen A. Higginson
      Ms. Lorie Robinson
      Betsy Paret

### DESIGNATION AND ASSIGNMENT
### OF AN ACTIVE UNITED STATES JUDGE
### FOR SERVICE IN ANOTHER CIRCUIT

The Chief Judge of the United States Court of Appeals for the District of Columbia

Circuit has certified that there is a necessity for the designation and assignment of a judge from

another circuit or another court to perform judicial duties in the United States Court of Appeals

for the District of Columbia Circuit in Larry Klayman v. Neomi Rao, et al., 21-5269. The Chief

Judge of the United States Court of Appeals for the Fifth Circuit has consented to the designation

and assignment of the

### HONORABLE STEPHEN A. HIGGINSON

a Judge of the United States Court of Appeals for the Fifth Circuit for such service.

NOW, THEREFORE, pursuant to the authority vested in me by Title 28, United States

Code, section 291(a), I do hereby designate and assign the Honorable Stephen A. Higginson to

perform judicial duties in the United States Court of Appeals for the District of Columbia Circuit

for the period or purpose stated and for such time as needed in advance to prepare and to issue

necessary orders, or thereafter as required to complete unfinished business.

**CHIEF JUSTICE OF THE UNITED STATES**

Washington, D.C. 2/8/22

A True copy SCOTT S. HARRIS
Test:
Clerk of the Supreme Court of the United States
By _____
                                    Deputy



HONORABLE ROSLYNN R. MAUSKOPF
Director

LEE ANN BENNETT
Deputy Director

# ADMINISTRATIVE OFFICE OF THE
# UNITED STATES COURTS

ELIZABETH A. SMITH
Associate Director
Department of Program Services

DAN JACKSON
Acting Chief
Judicial Services Office

February 15, 2022

Ms. Catherine Wolfe
Clerk, United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Centre Street, Room 1704
New York, NY 10007-1501

Mr. Mark J. Langer
Clerk, United States Court of Appeals for the District of Columbia Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, N.W., Room 5509
Washington, DC 20001

Dear Ms. Wolfe and Mr. Langer:

Enclosed is the Chief Justice's designation of the Honorable Robert D. Sack of the United States Court of Appeals for the Second Circuit to perform judicial duties in the United States Court of Appeals for the District of Columbia Circuit in No. 21-5269, Larry Klayman v. Neomi Rao, et al. Pursuant to 28 U.S.C. § 295, please file and enter this assignment on the minutes of your respective courts.

Please feel free to contact me at (202) 502-1177 if you have any questions or concerns.

Sincerely,

*Anne McKenna*

Anne McKenna
Senior Attorney
Judicial Programs

Enclosures:   (Clerk of Lending Court, Ms. Wolfe - Original Designation)
              (Clerk of Borrowing Court, Mr. Langer - Certified Copy of Designation)

cc:   Honorable Robert D. Sack
      Mr. Michael Jordan
      Betsy Paret

A TRADITION OF SERVICE TO THE FEDERAL JUDICIARY

### DESIGNATION AND ASSIGNMENT
### OF A SENIOR UNITED STATES JUDGE
### FOR SERVICE IN ANOTHER CIRCUIT

The Chief Judge of the United States Court of Appeals for the District of Columbia

Circuit has certified that there is a necessity for the designation and assignment of a judge from

another circuit or another court to perform judicial duties in the United States Court of Appeals

for the District of Columbia Circuit in Larry Klayman v. Neomi Rao, et al., 21-5269.  The

### HONORABLE ROBERT D. SACK

a Senior Judge of the United States Court of Appeals for the Second Circuit has consented to

such designation and assignment.

NOW, THEREFORE, pursuant to the authority vested in me by Title 28, United States

Code, section 294(d), I do hereby designate and assign the Honorable Robert D. Sack to perform

judicial duties in the United States Court of Appeals for the District of Columbia Circuit for the

period or purpose stated and for such time as needed in advance to prepare and to issue necessary

orders, or thereafter as required to complete unfinished business.

**CHIEF JUSTICE OF THE UNITED STATES**

Washington, D.C. _2/8/22_

A True copy SCOTT S. HARRIS
Test:
Clerk of the Supreme Court of the United States
By _____
                                    Deputy



HONORABLE ROSLYNN R. MAUSKOPF
Director

LEE ANN BENNETT
Deputy Director

### ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

ELIZABETH A. SMITH
Associate Director
Department of Program Services

DAN JACKSON
Acting Chief
Judicial Services Office

February 15, 2022

Mr. Michael Gans
Clerk, United States Court of Appeals for the Eighth Circuit
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, Room 24.329
St. Louis, MO 63102-1116

Mr. Mark J. Langer
Clerk, United States Court of Appeals for the District of Columbia Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, N.W., Room 5509
Washington, DC 20001

Dear Mr. Gans and Mr. Langer:

Enclosed is the Chief Justice's designation of the Honorable Ralph R. Erickson of the United States Court of Appeals for the Eighth Circuit to perform judicial duties in the United States Court of Appeals for the District of Columbia Circuit in No. 21-5269, Larry Klayman v. Neomi Rao, et al.  Pursuant to 28 U.S.C. § 295, please file and enter this assignment on the minutes of your respective courts.

Please feel free to contact me at (202) 502-1177 if you have any questions or concerns.

Sincerely,

Anne McKenna
Senior Attorney
Judicial Programs

Enclosures:   (Clerk of Lending Court, Mr. Gans - Original Designation)
              (Clerk of Borrowing Court, Mr. Langer - Certified Copy of Designation)

cc:   Honorable Ralph R. Erickson
      Ms. Millie Adams
      Betsy Paret

A TRADITION OF SERVICE TO THE FEDERAL JUDICIARY

## DESIGNATION AND ASSIGNMENT
## OF AN ACTIVE UNITED STATES JUDGE
## FOR SERVICE IN ANOTHER CIRCUIT

The Chief Judge of the United States Court of Appeals for the District of Columbia Circuit has certified that there is a necessity for the designation and assignment of a judge from another circuit or another court to perform judicial duties in the United States Court of Appeals for the District of Columbia Circuit in Larry Klayman v. Neomi Rao, et al., 21-5269.  The Chief Judge of the United States Court of Appeals for the Eighth Circuit has consented to the designation and assignment of the

### HONORABLE RALPH R. ERICKSON

a Judge of the United States Court of Appeals for the Eighth Circuit for such service.

NOW, THEREFORE, pursuant to the authority vested in me by Title 28, United States Code, section 291(a), I do hereby designate and assign the Honorable Ralph R. Erickson to perform judicial duties in the United States Court of Appeals for the District of Columbia Circuit for the period or purpose stated and for such time as needed in advance to prepare and to issue necessary orders, or thereafter as required to complete unfinished business.

**CHIEF JUSTICE OF THE UNITED STATES**

Washington, D.C. 2/8/22

A True copy SCOTT S. HARRIS
Test:
Clerk of the Supreme Court of the United States
By _____
                                    Deputy